

COHEN & GRESSER LLP

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

January 3, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:  *United States v. Samuel Bankman-Fried*, 22 Cr. 673 (LAK)

Dear Judge Kaplan:

On behalf of defendant Samuel Bankman-Fried, we respectfully submit this letter motion to request limited modification to one portion of the bail conditions ordered by Magistrate Judge Gorenstein at Mr. Bankman-Fried's initial appearance on December 22, 2022.  Specifically, we request an order from the Court directing that the names and other identifying information of Mr. Bankman-Fried's two remaining bail sureties (1) be redacted on the bonds they will sign, and (2) not be publicly disclosed by the Government.  Pursuant to the Order Setting Conditions of Release (ECF No. 14), the deadline for the two additional sureties to sign their bonds is this Thursday, January 5, 2023.  We have conferred with the Government on this issue and have been informed that the Government takes no position on the request.

As explained below, although the Second Circuit has recognized a qualified right of public access to judicial documents under the common law and the First Amendment, the requested relief here is fully justified.  We seek to protect from public disclosure only the identities of the additional sureties.  All information relevant to the Court's oversight of the bail proceedings is or will be publicly available:  the bail conditions themselves are contained in the publicly filed Order Setting Conditions of Release, and surety bonds are typically available to the press and public.  Accordingly, none of the factors recognized by courts in this Circuit as weighing in favor of public disclosure – including the role of the information in the court's performance of its Article III duties and the public's ability to monitor the court's function, and whether the information affects the court's determination of the defendant's substantive rights – would be served by revealing the identities of the additional sureties.  In addition, the limited relief sought herein is narrowly tailored to protect interests that courts widely recognize as justifying an exception to the qualified right of public access, namely, the privacy and safety of the sureties.

The Honorable Lewis A. Kaplan
January 3, 2023
Page 2

1.  **Factual Background**

    The strict bail conditions were jointly proposed on consent by the Government and defense and were accepted and so ordered by Magistrate Judge Gorenstein at Mr. Bankman-Fried's initial appearance on December 22, 2022. The conditions included a requirement that Mr. Bankman-Fried's parents co-sign his $250 million personal recognizance bond and that two additional sureties sign separate bonds in lesser amounts. *See* Order Setting Conditions of Release (ECF No. 14). Mr. Bankman-Fried's parents co-signed his personal recognizance bond on December 22, 2022. The two remaining sureties have yet to sign their individual bonds, the amounts of which have not yet been determined with the Government, but they intend to do so by January 5, 2023, the deadline set in the order.[1] Executed bonds are typically available to the press and the public from the Magistrate Court clerk's office.

    In recent weeks, Mr. Bankman-Fried's parents have become the target of intense media scrutiny, harassment, and threats. Among other things, Mr. Bankman-Fried's parents have received a steady stream of threatening correspondence, including communications expressing a desire that they suffer physical harm. Consequently, there is serious cause for concern that the two additional sureties would face similar intrusions on their privacy as well as threats and harassment if their names appear unredacted on their bonds or their identities are otherwise publicly disclosed.

2.  **The Qualified Right of Access to Judicial Documents Does Not Preclude the Requested Relief.**

    The Second Circuit has recognized a "common law right of public access to judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). In considering whether the right of access applies, courts first determine whether "the documents at issue are indeed 'judicial documents'" to which the presumption in favor of public access attaches. *Id*. If so, courts determine "the weight of that presumption" and then balance the presumption against "countervailing factors," including "the privacy interests of those resisting disclosure." *Id*. at 119-20 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (*"Amodeo II"*)).

---

[1] The Court's Individual Rules of Practice require parties seeking to redact material from publicly filed documents to (a) publicly file the document with the proposed redactions, and (b) electronically file under seal a copy of the unredacted document with the redactions highlighted. However, the additional bonds will not be created until an agreement is reached as to the amount. In addition, such bonds usually are not electronically filed through the ECF system or even reviewed by the Court. Once the bond is created, we will work with the Government to follow the procedure set forth in the Court's Individual Rules of Practice or follow any other process directed by the Court.

Courts have also recognized a "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents." *Id*. at 120 (internal quotation marks and citation omitted). Courts apply two different approaches for determining whether this First Amendment right attaches. Under the "'experience and logic' approach," courts consider "whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Id*. (citation and internal quotation marks omitted). The second approach "considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id*. (citation and internal quotation marks omitted).

If the First Amendment right of access does apply, information may still be withheld from public disclosure "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. (citation and internal quotation marks omitted).

We assume for purposes of this submission that the Court would deem the sureties' individual bonds to be "judicial documents" subject to the "presumption of access under both the common law and the First Amendment."[2] *Id.* at 124. As set forth below, however, we respectfully submit that "'countervailing factors' in the common law framework and 'higher values' in the First Amendment framework" amply justify protecting the names of the additional sureties from public disclosure. *Id.*

  a. *The Common Law Presumption of Access Should Be Given Little Weight and Is Outweighed by Countervailing Factors*.

<u>The Weight of the Presumption.</u> As noted, in applying the common law presumption of public access, courts initially assess the weight of the presumption under the circumstances at issue. The weight of the presumption depends upon "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (quoting *Amodeo II*, 71 F.3d at 1049). "[D]ocuments that 'play only a negligible role in the performance of Article III duties' are accorded only a low presumption that 'amounts to little more than a prediction of public access

---

[2] While as a technical matter the individual bonds are not filed with the court (but in the normal course are made available in the clerk's office), they may still constitute "judicial documents" under the controlling standard. As this Court noted in *United States v. Gatto*, No. 17-cr-686 (LAK), 2019 WL 4194569, at *3 (S.D.N.Y. Sept. 3, 2019),
> While the relevant case law often has addressed materials *filed* with the Court, we do not consider this to be a necessary condition to qualify as a judicial document. Rather, a document still can be a "judicial document" if its contents affected a party's substantive legal rights, even if it was never formally filed with the Court.

The Court then assumed without deciding that certain exhibits which had been offered into evidence as to which the Court had made substantive determinations with regard to admissibility were "judicial documents" for purposes of its analysis. *Id.* at *4.

The Honorable Lewis A. Kaplan
January 3, 2023
Page 4

absent a countervailing reason.'" *Brown v. Maxwell*, 929 F.3d 41, 49-50 (2d Cir. 2019) (quoting *Amodeo II*, 71 F.3d at 1050).

Here, the bonds themselves will play little to no role in the Court's exercise of its Article III powers. Instead, the Court's oversight of Mr. Bankman-Fried's bail conditions will be governed by the Order Setting Conditions of Release, which is and will remain available on the public docket. *See* ECF No. 14. Further, the present application applies solely to the names and identifying information of the additional sureties – information which is even further removed from the Court's "exercise of Article III judicial power" and of no discernible value "to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119. The bonds themselves are or will be publicly available. In addition, the identities of the additional sureties are known to the Government and will be disclosed to Pretrial Services and, if necessary or requested, to the Court.

The Second Circuit's decision in *United States v. Graham*, 257 F.3d 153 (2d Cir. 2001) provides an instructive contrast to the present case regarding the weight of the presumption of public access. There, the Second Circuit affirmed a district court's ruling that a "strong presumption" of public access should apply to certain information presented during a pretrial detention hearing. The central facts on which that ruling was premised are absent in this case. In particular, the materials at issue in *Graham* had been presented in open court during a pretrial detention hearing and "were the primary basis for the district court's decision to detain the defendants pending trial." *Id.* at 154. As such, the materials "clearly 'directly affect[ed] an adjudication' and were material to the district court's determination of the defendants' 'substantive rights.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1050).

Here, in contrast, per the bail conditions agreed upon by the Government and defense, as of the time of the hearing, the identities of the additional sureties were not known by Magistrate Judge Gorenstein when he imposed the bail conditions on Mr. Bankman-Fried, and thus could not have been material to any determination of the defendant's substantive rights. As noted, the Order Setting Conditions of Release – which imposed certain parameters on the additional sureties and will largely form the basis of the Court's supervision of the bail proceedings – is and will remain publicly available, as will be the bond itself once executed. Because the names and other identifying information regarding the additional sureties – the only information we seek to protect from public disclosure – will not "serve as the basis for a substantive determination," the qualified presumption of access "is appreciably weaker." *Id.* at 151. *Cf. Gatto*, 2019 WL 4194569, at *8 (concluding that the presumption of access to redacted information in a sentencing memorandum was "minimal" because the memorandum was "utterly immaterial" to the sentence the Court imposed and offered little value to those monitoring the federal courts).

Countervailing Factors. In addition to being entitled to little, if any, weight, the presumption of access here is vastly outweighed by the privacy and safety interests implicated by the documents at issue. *See id.* at *6 ("[T]he privacy interests of innocent third parties . . . should

The Honorable Lewis A. Kaplan
January 3, 2023
Page 5

weigh heavily in a court's balancing equation. Such interests are a venerable common law exception to the presumption of access.") (quoting *Amodeo II*, 71 F.3d at 1050-51) (internal quotation marks omitted)). If the two remaining sureties are publicly identified, they will likely be subjected to probing media scrutiny, and potentially targeted for harassment, despite having no substantive connection to the case. Consequently, the privacy and safety of the sureties are "countervailing factors" that significantly outweigh the presumption of public access to the very limited information at issue. *See id.* at *9 (finding that the privacy interests of third parties named in documents not admitted at trial and in redacted portions of the defendant's sentencing memorandum outweighed the presumption of access to the information).

Similar privacy interests have led other courts in this District to permit the redaction of materials submitted in connection with bail. For example, in *United States v. Nejad*, Judge Carter ordered defense counsel and the Government to redact attachments to bail submissions involving numerous co-signers because they contained "sensitive private information with respect to a whole series of individuals." Transcript of Proceedings as to Ali Sadr Hashemi Nejad, at 25, *United States v. Nejad*, 18 Cr. 224 (S.D.N.Y. Apr. 18, 2018), ECF No. 21. Similarly, in *United States v. Maxwell*, Judge Nathan ordered that the defendant could redact in her bail submission the names and identifying information of third-party sureties and others who wrote letters on her behalf, due to concerns regarding privacy and safety. Order as to Ghislaine Maxwell, at 2, *United States v. Maxwell*, 20 Cr. 330 (S.D.N.Y. Dec. 3, 2020), ECF No. 81. The privacy interests at stake here are equally strong, particularly in light of the intense, ongoing media scrutiny of this case and even peripherally involved parties.

  b. *The Qualified First Amendment Right of Access Does Not Justify Public Disclosure.*

For similar reasons, the qualified First Amendment right of public access to judicial documents does not warrant the release of the additional sureties' identities.

*First*, under the "experience and logic" approach articulated by the Second Circuit, the qualified First Amendment right of public access does not apply to the additional bonds or the identities of the sureties. *Lugosch*, 435 F.3d at 120. Again, the bonds themselves are not part of the bail proceedings, and the bail conditions – including the parameters Magistrate Judge Gorenstein deemed necessary for the additional bonds and sureties – are contained in the Order Setting Conditions of Release, which is publicly available. *See* ECF No. 14. While the press and the public typically can obtain access to the bonds, public access to the names of the sureties will not play "a significant positive role in the functioning" of the Court's oversight of the bail conditions. *Lugosch*, 435 F.3d at 120.

*Second*, with respect to the second approach taken by courts in this Circuit to assessing the applicability of the qualified First Amendment right, the public's access to the identities of

The Honorable Lewis A. Kaplan
January 3, 2023
Page 6

the additional sureties does not "derive[] from," nor are they "a necessary corollary of," the public's capacity to attend the bail proceedings. *Id*.

*Finally*, for the reasons discussed above, redacting the names of the sureties on their bonds and withholding the public release of their identities "is essential to preserve higher values and is narrowly tailored" to protect their significant safety and privacy interests. *Id*.

\* \* \*

For the reasons set forth above, we respectfully request that the Court issue an order directing that the names and identifying information of the two remaining sureties be redacted on their bonds and not be publicly disclosed by the Government.

Respectfully submitted,

/s/ Mark S. Cohen
Mark S. Cohen
Christian R. Everdell
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, New York  10022
(212) 957-7600
mcohen@cohengresser.com
ceverdell@cohengresser.com

cc:   All counsel of record (via ECF)