MCM7BANA

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                           22 CR. 673 (RA)

SAMUEL BANKMAN-FRIED,


                Defendant.
                                       Presentment
------------------------------x

                                       New York, N.Y.
                                       December 22, 2022
                                       1:05 p.m.


Before:

            HON. GABRIEL W. GORENSTEIN,

                                       U.S. Magistrate Judge

                      APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  NICOLAS T. ROOS
     Assistant United States Attorney

COHEN & GRESSER
     Attorneys for Defendant
BY:  MARK S. COHEN
     CHRISTIAN R. EVERDELL

Also Present:
Francesca Tessier-Miller, Pretrial Services
Laura Gialanella, Pretrial Services
Jonathan Lettieri, Pretrial Services
Kristin Allain, FBI Special Agent
Luke Booth, FBI Special Agent
```

1      (Case called)

2      MR. ROOS:  Good afternoon, your Honor.  Nick Roos for the United States.  I'm joined at counsel table by Kristin Allain and Luke Booth, both special agents with the Federal Bureau of Investigations.  At the end of the table are representatives from Pretrial Services.  I'm going to let them introduce themselves.

8      MS. TESSIER-MILLER:  Good afternoon, your Honor.  Francesca Tessier-Miller.  Here with me are Laura Gialanella and our location monitoring specialist, Jonathan Lettieri.

11      MR. COHEN:  Good afternoon, your Honor.  Mark Cohen, Cohen & Gresser, for Mr. Bankman-Fried.  I'm joined by my partner, Chris Everdell.

14      MR. EVERDELL:  Good afternoon, your Honor.

15      THE COURT:  May I have the time and date of arrest?

16      MR. ROOS:  Yes, your Honor.

17      The defendant was arrested on December 12, 2022, in the Bahamas on a provisional arrest warrant issued to effect a United States arrest warrant that was signed by one of your colleagues.  He consented to extradition on December 22 -- I'm sorry, I believe the 21st, 2022, and was taken into U.S. custody last in night and transported by the Federal Bureau of Investigations the same day.  He first arrived in the United States in this district last night in Westchester.

25      THE COURT:  All right.  I'm Judge Gorenstein.  We're

here to conduct an initial appearance under Rule 5 of the Federal Rules of Criminal Procedure.  Also, if an application were made to detain the defendant and the defendant were permitted by 18 U.S.C. 3142(f) to be detained, we would hold a detention hearing at this time unless the parties sought to adjourn it.

Let me begin by informing the defendant that you are not required to make any statements to the authorities.  Anything that you said to them could be used against you.  If you are not a United States citizen, you may request that a government attorney or a law enforcement official notify a consular officer from your country that you've been arrested.  Even without a request, notification may be required by treaty or to national agreement.  You have the right to be represented by an attorney.  If you could not afford an attorney, you have the right to request that the Court appoint one for you.  I understand that you have retained counsel in this case.

I have before me an indictment that contains the charges in this case.  The charge in Count One is that, between 2019 and November 2022, you and others conspired to commit the crime of wire fraud, specifically by agreeing with others to defraud customers of FTX.com by misappropriating those customers' deposits and using the deposits to pay expenses and debts of an entity called Alameda Research, identified as your proprietary crypto hedge fund, and to make investments.

The charge in Count Two is that in that same time period you committed the crime of wire fraud, specifically, that you, along with others, engaged in a scheme to defraud customers of FTX.com by misappropriating those customers' deposits and using the deposits to pay expenses and debts of Alameda Research and to make investments.

The charge in Count Three is, from June 2022 to November 2022, conspiracy to commit wire fraud, this time involving lenders.  Specifically, the charge is that you agreed with others to defraud lenders to Alameda Research by providing false and misleading information to those lenders regarding Alameda Research's financial condition.

The charge in Count Four is actually for the time period of 2019 to November 2022, and the charge is that you, along with others, engaged in a scheme to defraud lenders to Alameda Research by providing false and misleading information to the lenders regarding Alameda Research's financial condition.

The charge in Count Five is conspiracy to commit commodities fraud.  It's alleged to have occurred between in or about 2019 up to and including through November 2022.  It's alleged that it was an object of the conspiracy that you agreed with others to defraud customers of FTX.com, trading or intending to trade swaps by misappropriating those customers' deposits and using the deposits to pay expenses and debts of

Alameda Research and to make investments.

The charge in Count Six is, from May 2022 to November '22, that you conspired with others to commit the crime of securities fraud, in that it was an object of the conspiracy that you or others would engage in a scheme to defraud investors in FTX.com by providing false and misleading information to those investors regarding FTX.com's financial condition.

The charge in Count Seven is a conspiracy to commit money laundering. The charge is that in or about 2020 up to and including through November 2022 you conspired with others to conduct -- attempt to conduct monetary transfers that involve the proceeds of the wire fraud charged in Count Two of the indictment and that you knew the transfers were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the wire fraud. It also charges that you conspired with others to engage in or attempt to engage in a monetary transaction of criminally derived property of a value greater than $10,000 and was derived from the wire fraud charged in Count Two.

The charge in Count Eight is conspiracy to defraud the United States to violate campaign finance laws, specifically to commit offenses against the United States by engaging in violations of law involving the making, receiving, and reporting of contributions, donations, or expenditures. It

1  lists a number of objects of that conspiracy.
2       Counsel, let me ask if you have seen this indictment.
3       MR. COHEN:  We have, your Honor.
4       THE COURT:  Have you reviewed it with your client?
5       MR. COHEN:  We have.
6       THE COURT:  Are you waiving the public reading?
7       MR. COHEN:  We do waive.
8       THE COURT:  All right.  An arraignment is going to
9  occur at a later date, so I'm going to go to the next issue,
10 which would be to hear from the government next as to bail,
11 detention, or release.
12      MR. ROOS:  Yes, your Honor.
13      Under the Bail Reform Act, pretrial release, as your
14 Honor knows, is favored unless the Court finds by a
15 preponderance of the evidence that no reasonable set of
16 conditions could assure the defendant's appearance in court.
17 In making that analysis, as the Court knows, the factors in
18 18 U.S.C. 3142(g) help guide the analysis.  The first two that
19 I'll speak to are the nature and circumstances of the offense
20 and the weight of the evidence.
21      Mr. Bankman-Fried perpetrated a fraud of epic
22 proportions, stealing billions of dollars from customers,
23 lenders, and defrauding investors.  The evidence in this case
24 and the evidence that will be presented at trial is very
25 strong.  It would include and consist of testimony from

multiple cooperating witnesses, over a dozen other FTX and Alameda Research witnesses, encrypted text messages, and tens of thousands of pages of financial records and documents.

If the test for whether or not the defendant should be detained was simply the seriousness of the offense and the weight of the evidence, detention would likely be appropriate in this case. But as your Honor knows, there are other factors and considerations.

So on the other side of the scale is the fact that the defendant voluntarily consented to extradition and to submit himself to the jurisdiction of the United States. As the Court knows, when a voluntary return to the United States occurs, this is typically a consideration that's given great weight both by the government and the courts in determining what sort of pretrial release, if any, is appropriate versus detention.

I'll note that if the defendant had resisted extradition, had not consented, and had this been a lengthy and drawn-out process, there is a near certainty that the government would have opposed any form of pretrial release. But here, the defendant did consent. He has no history of flight that the government's aware of. He has family and community ties. And he has his financial assets, which were once in the billions but have diminished significantly based on the information in the Pretrial Services report.

I'll note that I've been talking so far about the risk

of flight, appropriately, I think.  But the other, of course, consideration for the Court is safety to the community.  This is a financial crime.  The defendant no longer works for FTX or Alameda Research.  So in our assessment of pretrial release, risk to the community is a marginal consideration.  Really, the analysis here is the risk of flight.

In light of those considerations that I just outlined and having examined some of the terms, while this case is of course different in many ways, we've looked at bail packages in other cases and, in light of all of that, the government is proposing what we view as a highly restrictive bail package. I'll walk through the proposed specific conditions in a moment, but let me just say sort of as the headline, we believe this is the largest ever pretrial bond, at least that I'm aware of.  It will require home detention.  It will require electronic monitoring.  It will require multiple suretors.  It will require surrender of passports.  It will severely restrict the defendant's ability to move.  And there are several other conditions.

So that's the government's proposal.  If the Court would like, I can now walk through the specific conditions we're proposing.

THE COURT:  Go ahead.

MR. ROOS:  So first, a $250 million personal recognizance bond signed by the defendant and cosigned by his

MCM7BANA

parents;

Additionally, the bond will be secured by the parents' equity interest in their home;

Third, two other sureties, at least one of whom is not a close family member, to sign separate bonds in amounts to be determined that are meaningful relative to their net worth;

Fourth, Mr. Bankman-Fried will live in his parents' home in Palo Alto;

Fifth, strict pretrial supervision in the Northern District of California;

Sixth, home detention enforced by location monitoring technology, as determined by Pretrial Services, with additional leave from the home permitted for exercise, as approved by Pretrial Services;

Seventh, surrender of passport——and I believe that's already been surrendered——no new applications for travel documents;

Eighth, travel restricted to the Northern District of California, and will be permitted within the Southern District and Eastern District and any intervening district solely for the purposes of traveling to and from court;

Ninth, mental health and substance abuse treatment, as directed by Pretrial Services;

Tenth, no new lines of credit and no financial transactions in excess of $1,000 without pre-approval by the

1  government except to pay for legal costs and fees;

2  Eleventh, surrender firearms, if any;

3  Twelfth, Mr. Bankman-Fried will be released his
4  signature, the signature of his parents, and the surrender of
5  his travel documents today;

6  Thirteenth, he would be directed to report to the
7  Northern District of California by 10 a.m. tomorrow,
8  December 23rd, for installation of the electronic monitoring.
9  If he is unable to travel to the Northern District of
10 California before then, he will report to the Southern District
11 of New York Pretrial for location monitoring equipment to be
12 installed by 10 a.m. tomorrow;

13 Two other sureties must sign the bond within two weeks
14 of the initial appearance;

15 And finally, 15, posting of the equity interest of the
16 parents' home within three weeks.

17 I understand that defense counsel has consented to
18 this. I believe, if your Honor has additional questions about
19 the ties to the community and the family ties, that defense
20 counsel probably is in the best position to answer those.

21 THE COURT:  Before you go on, I'll hear from Pretrial
22 Services.

23 MS. TESSIER-MILLER:  Your Honor, our officers will be
24 able to place the location monitoring equipment today prior to
25 his release.

1    THE COURT: If I were to agree to such a condition,
2 you're able to do it today?
3    MS. TESSIER-MILLER: That is correct, your Honor.
4    MR. ROOS: So then in that instance, your Honor, the
5 government would modify its proposal to make the technology
6 installed today.
7    THE COURT: Anything else from Pretrial Services
8 before I hear from defense counsel?
9    MS. TESSIER-MILLER: No.
10    MR. COHEN: Thank you, your Honor.
11    As Mr. Roos pointed out, we agree with the bail
12 conditions. We have worked them out with the government. And
13 we would ask the Court to accept them.
14    I'd like to emphasize three points for the Court.
15    One, as Mr. Roos mentioned, my client voluntarily
16 consented to come to face these charges here in New York. He
17 wants to address them. As the Court is aware, extradition can
18 take many months. Extradition proceedings can take many
19 months, if not years, in the Bahamas and other jurisdictions,
20 but certainly in the Bahamas. Soon after being contacted by
21 the government, my client consented to come here and face the
22 charges here in New York. We think that's a very compelling
23 factor.
24    Second, we would echo what the government said, that
25 this is a very strong package, your Honor. We agree with the

1   15 conditions that were just listed.  We would note that he's
2   going to be living with both of his parents who are professors
3   of law Stanford Law School and would pledge their house to
4   secure his appearance.
5           Third, just to emphasize a point made by Mr. Roos,
6   this investigation, the existence of this investigation has
7   been public for many months, and my client remained where he
8   was.  He made no effort to flee.  And in fact, when the arrest
9   came down, he consented to jurisdiction.
10          So we think the conditions laid out by Mr. Roos are
11  conditions that satisfy the 3142 standard to secure his
12  appearance, and we ask that the Court would accept them.
13          THE COURT:  All right.  Under 3142(b) of the Bail
14  Reform Act, I am required by law to order the pretrial release
15  of a defendant after execution of an appearance bond unless I
16  make the determination that the release will not reasonably
17  assure the appearance of the person as required or will
18  endanger the safety of any other person or community.  There's
19  no discretion. Unless that showing is made, I must release the
20  individual.  Even if I find that the defendant poses a risk of
21  flight, I must release the defendant subject to the least
22  restrictive further condition or combination of conditions that
23  will reasonably assure the appearance of the person.
24          In determining whether any condition or combination of
25  conditions is sufficient, I am obligated to consider four

factors:

One is the nature of the offense; second is the weight of the evidence; third is the history and characteristics of the defendant; and finally, the nature of the seriousness of the danger.

So to go through those factors, at this point, we have an indictment, which means a grand jury has found probable cause to believe that this defendant committed all eight of the crimes that are listed in the indictment. So that certainly weighs against a finding that would permit release. The weight of the evidence as described by the government—and I certainly have no contrary evidence at this point—is strong. Presumably, this is going to rely on matters that are already in the government's hands, having secured an indictment.

But weighing against that is the history and characteristics of the defendant. This individual has no prior criminal record of any kind, has very strong ties to this country in terms of growing up here and having family who currently lives here. Apparently, his closest family lives in this country. There's no record of any violence in the defendant's past. Defendant is a citizen, of course, of this country.

Given that this is a first arrest and the conditions that have been proposed here, I cannot make a finding that there is no combination of conditions that would reasonably

1    assure the appearance of the defendant in court or the safety
2    of the community.  I don't think there's any concern about
3    safety in terms of the potential for further financial crimes.
4    I think I can take judicial notice that the defendant has
5    achieved sufficient notoriety that it would be impossible to
6    conduct any transactions, even if the defendant wanted to avoid
7    the restrictions that are going to be placed on him by virtue
8    of requiring permission from Pretrial Services.  So the danger
9    is certainly not an issue.
10           The bail package proposed, in particular, the fitting
11   of a bracelet and an electronic monitor with location
12   monitoring, is going to go very far to providing assurance that
13   the defendant can be kept track of, and we will know at all
14   times that he's being kept track of.  The notoriety, I think,
15   also goes to risk of flight, and it will be very difficult for
16   this defendant to hide without being recognized.  So I believe
17   that the risk of flight is appropriately mitigated by all the
18   things that I've talked about here.
19           So I am going to permit release in accordance largely
20   with the terms, but I do have a couple minor issues.  Pretrial
21   Services suggests that there be no new financial accounts or
22   businesses started without prior approval.  That seems to make
23   perfect sense to me.
24           Any objection from the defendant?
25           MR. COHEN:  No, your Honor.

1  THE COURT: Okay.

2  All right. Let me go over the conditions as I
3  understand them. If someone thinks—particularly Pretrial—I
4  left something out, if there's something that's inconsistent
5  with the parties' agreement, I'm prepared to hear from you
6  before I finally determine if those are the conditions.

7  All right. The proposal then, or what I'm prepared to
8  order, is that the defendant will be released on a $250 million
9  personal recognizance bond. It will be cosigned by four
10 financially responsible persons. The parents will sign today.
11 There will be two additional sureties to sign bonds in lesser
12 amounts to be agreed to. If there is no agreement, obviously,
13 I'll settle it. One of the four financially responsible
14 persons has to be a nonfamily member. It is to be secured by
15 the parents' home in Palo Alto, California.

16 Travel will be restricted to the Northern District of
17 California and to the Southern and Eastern Districts of New
18 York solely for court appearances.

19 There will be a surrender of travel documents, such as
20 passports, and he can't make any new applications for a
21 passport. I understand the passport was already surrendered;
22 is that correct?

23 MS. TESSIER-MILLER: Correct, your Honor.

24 THE COURT: Okay. I'm going to require strict
25 Pretrial supervision; mental health treatment and evaluation as

1   directed by Pretrial Services.
2           Were you seeking the defendant to have urinalyses or
3   drug treatment?
4           MS. TESSIER-MILLER:  No, your Honor.
5           THE COURT:  Okay.  Then I'm not going to include that.
6           Home detention with location monitoring technology as
7   directed by Pretrial Services.  The monitor is to be -- the
8   bracelet is to be put on him today before he leaves this
9   courthouse.
10          Defendant is not to possess any firearms, or
11  destructive device, or other weapon.
12          The defendant is required to live in his parents' home
13  in Palo Alto and will be supervised from that district.  I'm
14  going to allow the Pretrial Services officer to exercise
15  discretion to allow him to leave the home for exercise,
16  obviously only in the neighborhood.
17          Defendant is not to open new lines of credit, open a
18  business, or enter into financial transactions in excess of
19  $1,000 without pre-approval of Pretrial Services except to pay
20  for legal fees and costs.
21          The defendant would be released on his own signature
22  today, provided we get the signature of his parents, the
23  surrender of passport, which has already happened, and the
24  installation of the electronic monitor.  The remaining
25  conditions, meaning the non-parent sureties, are to occur by

1  January 5, 2023, the equity interest in the parents' home to be
2  posted by January 12, 2023.
3          Does Pretrial Services want to make any change in what
4  I just suggested?
5          MS. TESSIER-MILLER:  Just the excess of $1,000 of
6  transactions to be approved by the government.
7          THE COURT:  I couldn't hear you.  Start again.
8          MS. TESSIER-MILLER:  So the excess transactions of
9  $1,000 to be approved by the government or the Court.
10         THE COURT:  Not by you, you mean?
11         MS. TESSIER-MILLER:  Correct, your Honor.
12         THE COURT:  Okay.  That's fine.
13         Anything else from Pretrial Services?
14         MS. TESSIER-MILLER:  That will be all, your Honor.
15         THE COURT:  Okay.  Anything else from the government
16 on what I just said?
17         MR. ROOS:  No.  Thank you, your Honor.
18         THE COURT:  Mr. Cohen, anything else?
19         MR. COHEN:  Yes, your Honor.  One small detail.  I
20 think it's condition six, about mental health treatment.
21         My client has a private therapist that he sees, and I
22 believe Pretrial would be okay with him seeing that person as
23 per the condition.
24         THE COURT:  I'll let Pretrial Services deal with that.
25         MR. COHEN:  Okay.

|   |   |
|---|---|
| 1 | THE COURT:  If there's a problem, someone can come |
| 2 | back to me. |
| 3 | MR. COHEN:  Thank you. |
| 4 | THE COURT:  All right.  Then the conditions I just |
| 5 | listed are so ordered. |
| 6 | I assume you're aware there's a conference before |
| 7 | Judge Abrams January 3 at 2 p.m.  Were you informed of that? |
| 8 | MR. ROOS:  I'm sorry? |
| 9 | THE COURT:  Were you informed of the conference before |
| 10 | Judge Abrams? |
| 11 | MR. ROOS:  Yes.  You do have the date right, and it's |
| 12 | in courtroom 318. |
| 13 | THE COURT:  At 2 p.m. |
| 14 | MR. COHEN:  Your Honor, it may be appropriate for us |
| 15 | to take this up with Judge Abrams, but we will ask if our |
| 16 | client can attend remotely for that conference, given that |
| 17 | he'll be in California. |
| 18 | THE COURT:  You can take that up with Judge Abrams. |
| 19 | MR. COHEN:  Okay.  Thank you. |
| 20 | THE COURT:  Anything else from the government? |
| 21 | MR. ROOS:  Your Honor, I would make a speedy trial |
| 22 | application, unless there's anything else from any other |
| 23 | parties.  I'm prepared to do that now. |
| 24 | THE COURT:  Go ahead and make your application. |
| 25 | MR. ROOS:  Thank you, your Honor. |

1    The government moves for the exclusion of time under
2 the Speedy Trial Act between today's date and the date of the
3 initial conference, January 3, 2023. The reasons for the
4 exclusion are the complexity of the case, so that the
5 government can begin producing discovery, and defendant may
6 begin reviewing discovery. The ends of justice, the government
7 submits, are served by the exclusion and outweigh the interests
8 of the public and the defendant in a speedy trial.
9    THE COURT: Mr. Cohen, do you wish to be heard on the
10 application?
11    MR. COHEN: We have no objection to it, your Honor.
12    THE COURT: I grant the exclusion because I find the
13 ends of justice outweigh the best interests of the public and
14 the defendant in a speedy trial based on the need to produce
15 the discovery.
16    Let me conclude.
17    Mr. Bankman-Fried, you're going to be released on the
18 conditions that I mentioned. Let me warn you that if you fail
19 to appear in court or if you violate any of the conditions of
20 the release, a warrant will be issued for your arrest, you and
21 anyone who signed the bond would be responsible for paying the
22 full amount of the bond, that is $250 million—at least in the
23 case of your parents—or any amount up to that, and you will be
24 separately charged with the crime of bail jumping.
25    Do you understand that, sir?

MCM7BANA

1              THE DEFENDANT:  Yes, I do.
2              THE COURT:  All right.  Anything further from the
3    government?
4              MR. ROOS:  No, your Honor.
5              THE COURT:  From defense counsel?
6              MR. COHEN:  No, your Honor.
7              THE COURT:  Okay.  Thank you, everyone.
8              (Adjourned)