N133banc

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

             v.                          22 Cr. 673 (LAK)

SAMUEL BANKMAN-FRIED,

                Defendant.

------------------------------x    Arraignment

                                         New York, N.Y.
                                         January 3, 2023
                                         2:00 p.m.

Before:

                    HON. LEWIS A. KAPLAN,

                                      District Judge


                         APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
DANIELLE R. SASSOON
NICOLAS ROOS
ANDREW ROHRBACH
SAMUEL RAYMOND
     Assistant United States Attorneys

COHEN & GRESSER, LLP
     Attorneys for Defendant
MARK S. COHEN
CHRISTIAN R. EVERDELL
```

N133banc

```
 1              THE DEPUTY CLERK:  United States v. Samuel
 2   Bankman-Fried.
 3              Government, are you ready?
 4              Can you please put your appearances on the record.
 5              MS. SASSOON:  Yes.  Good afternoon, your Honor.
 6   Danielle Sassoon, Nick Roos, Sam Raymond, and Andrew Rohrbach
 7   for the United States.
 8              THE COURT:  Good afternoon.
 9              MR. COHEN:  Good afternoon, your Honor.  Mark Cohen,
10   Cohen & Gresser, for the defendant Samuel Bankman-Fried.
11              MR. EVERDELL:  Christian Everdell for
12   Mr. Bankman-Fried.
13              THE COURT:  Good afternoon.
14              THE DEPUTY CLERK:  Mr. Cohen, have you received a copy
15   of the indictment?
16              MR. COHEN:  Yes.
17              THE DEPUTY CLERK:  Have you reviewed it with your
18   client?
19              MR. COHEN:  Yes.
20              THE DEPUTY CLERK:  Does he waive the public reading?
21              MR. COHEN:  Yes, we do.
22              THE DEPUTY CLERK:  How does he plead?
23              MR. COHEN:  He pleads not guilty to all counts.
24              THE DEPUTY CLERK:  Thank you, sir.
25              THE COURT:  Thank you.
```

Now, I received early this morning a motion from defendant's counsel to redact on the bonds that are to be signed by two remaining bail sureties the names and what's described as other identifying information.

Mr. Cohen, first of all, what do you have in mind when you say "other identifying information"?

MR. COHEN:  I think just the address, your Honor. Just the name and address.

THE COURT:  Okay.  Thank you.

Now, what I think I will do with this, which I gather the government is taking no position on.  Is that right?

MS. SASSOON:  That's correct, your Honor.

THE COURT:  Is the following:  I understand the argument put forth by the defense.  And put to one side for the moment the question of standing.  But I'm going to grant the application, but I do so without prejudice to any application to release the names and addresses.  Unless otherwise ordered, any such application shall be made by motion filed no later than January 12.

I do this because I understand that there has not been any adversarial determination of whether this application should be granted, and I anticipate the possibility that members of the media or others may wish to contest the sealing of that information, and they're entitled to have that opportunity.

N133banc

    Any objection to my doing that, Ms. Sassoon?

    MS. SASSOON:  No, your Honor.

    THE COURT:  Mr. Cohen?

    MR. COHEN:  No, your Honor.

    THE COURT:  That takes care of that.

    So Ms. Sassoon, I've read the indictment.  What does the government have to say beyond it about the nature of the case, the discovery, the schedule, the usual?

    MS. SASSOON:  Yes, your Honor.  As you know, the defendant is charged in an eight-count indictment that arises from a wide-ranging fraud on customers of the defendant's cryptocurrency exchange FTX, investors in that exchange, and on lenders to his cryptocurrency hedge fund Alameda Research.

    Would your Honor like a factual overview of the case?

    THE COURT:  Whatever you'd like to do.

    MS. SASSOON:  Yes, your Honor.

    The government expects that the evidence in this case will show that the defendant operated this FTX cryptocurrency exchange, and that from the outset, it had a unique and concealed relationship with his cryptocurrency hedge fund Alameda Research.

    From the outset, customer deposits were deposited into bank accounts controlled by Alameda, and from the early days of the exchange, Alameda was using that customer money for Alameda operational expenses.

Over the lifetime of the exchange, the defendant directed that Alameda receive certain preferential treatment on the exchange that was built into the exchange's code and software. Some of those preferences included an allow negative flag that allowed Alameda to accrue a negative balance on the exchange. There was also code that permitted Alameda to essentially have an unbounded line of credit on the exchange, even without sufficient collateral for that borrowing.

This culminated in June of 2022 with Alameda borrowing billions of dollars off of FTX, which necessarily included FTX customer money. This was used in part to repay billions of dollars in loans taken out by Alameda that were being recalled by the lenders, and which Alameda otherwise had no ability to repay.

Customer funds were also used and laundered through political donations, charitable donations, and a variety of venture investments by the defendant and his associates.

The evidence we expect will also show that even after Alameda borrowed billions of dollars to repay loans, the defendant directed continued borrowing for other additional investments in the hundreds of millions of dollars.

This all occurred with the defendant's knowledge and at his direction. And after this borrowing took place, when the defendant was aware that Alameda had no ability to repay this borrowing, the defendant attempted to solve the problem by

raising billions of dollars from equity investors.

In November, when there was a surge in customer withdrawals from FTX in response to the leaking of Alameda's balance sheet and tweets from the CEO of Binance, the defendant tried to staunch the withdrawals by raising additional investments, and also by lulling FTX's customers with false information, including tweets that FTX's assets were fine, and other messages along those lines that he knew were false, as he was aware that there was a hole in FTX's balance sheet in the billions of dollars as a consequence of Alameda's borrowing and the misappropriation of customer money.

That's a brief overview of the case, your Honor.

With respect to discovery, we anticipate submitting a protective order to the Court to govern the production of discovery within the next few days.  We also anticipate making a first production to the defense this week that will consist of search warrants and other legal process.  Within the next two weeks we anticipate making a large production of hundreds of thousands of documents that includes materials from the FTX debtors, from investors in FTX, from political campaigns, from banks, from internet service providers, and from individual employees of Alameda and FTX.

THE COURT:  This is material coming other than from the companies with which the defendant was affiliated; is that right?

1     MS. SASSOON: So FTX is now in bankruptcy, and they've
2  made numerous productions to us of company e-mails and
3  documents.
4     THE COURT: So that will be included in this second
5  wave. Is that right?
6     MS. SASSOON: In this first large production, after we
7  produce the search warrants and other legal process.
8     We do anticipate, however, that discovery will
9  continue on a rolling basis. Given the speed at which this
10 case was charged, we have a number of pending subpoenas and
11 voluntary document requests. We continue to investigate and to
12 execute additional legal process. And so, as we receive
13 discovery, we will work quickly to produce it to the defendant.
14    We also have executed searches on a number of accounts
15 and devices which are still being extracted, reviewed for
16 privilege and responsiveness, and we're working quickly to get
17 those reviews completed, but those are not yet complete.
18    Finally I wanted to flag that one more complicated
19 piece of the discovery is going to be the AWS database of FTX.
20 Basically, FTX had --
21    THE COURT: AWS?
22    MS. SASSOON: So that stands for Amazon Web Services.
23 And FTX hosted a database on AWS that included transaction
24 history for customers of the exchange. We do not have custody
25 of the entire database, but we've received access to it from

|  |  |
|---|---|
| 1 | the FTX debtors, and we will work with defense counsel to |
| 2 | figure out a way to get them the necessary access so that we |
| 3 | can comply with our discovery obligations. |
| 4 |         THE COURT:  Outside date? |

1   the FTX debtors, and we will work with defense counsel to
2   figure out a way to get them the necessary access so that we
3   can comply with our discovery obligations.
4            THE COURT:  Outside date?
5            MS. SASSOON:  I think the bulk of discovery will be
6   produced within the next few weeks, but with respect to
7   incoming productions, that's going to be ongoing and it's
8   difficult to say when we'll receive the last drips and drabs.
9   But, as I said, as we receive things, we'll produce them
10  promptly.
11           THE COURT:  Well, you've said the bulk in the next few
12  weeks.  Given what you have in hand now, when do you finish?
13           MS. SASSOON:  In terms of what we have now, I would
14  say the bulk within two weeks, and all of it within four.
15           THE COURT:  What is the government's views on a
16  motions schedule?
17           MS. SASSOON:  We touched on that with defense counsel.
18  I think the parties would like to propose a trial date and then
19  back into a motion schedule in light of the trial date, if that
20  works for your Honor.  But we're happy to take it --
21           THE COURT:  You can propose.
22           MS. SASSOON:  I don't want to speak for defense
23  counsel, but we had discussed a potential trial date in
24  September or October of this year, your Honor.
25           MR. COHEN:  Your Honor, if I might.  We of course

1  defer to the Court's schedule.  But if the Court has time for
2  us in September, October, we would like to have a trial date
3  then.
4          If I'm hearing, and I wasn't exactly sure, if I'm
5  hearing that discovery will be completed in four weeks, then we
6  would defer to the Court about setting a schedule that sort of
7  gears back to September, if that's a period the Court can --
8          THE COURT:  I didn't hear completion in four weeks.  I
9  heard completion of what they have in hand now.
10         MR. COHEN:  Yes.
11         THE COURT:  With other things to follow.
12         MR. COHEN:  The key to us is what does the other
13  things to follow mean.
14         THE COURT:  Yes.  And I understood it to be materials
15  received pursuant to outstanding legal process and future legal
16  process, devices and accounts that need to be rendered
17  intelligible, and access to the complete AWS databases of FTX.
18  Those three categories.
19         Did I get that right, Ms. Sassoon?
20         MS. SASSOON:  Yes, your Honor.  With respect to
21  warrants that might form the basis for motions, we're going to
22  get that out this week.
23         THE COURT:  All right.
24         How long a trial do you anticipate, Ms. Sassoon?  I'll
25  hear from you first.

|   |   |
|---|---|
| 1 | MS. SASSOON:  Approximately four weeks, your Honor. |
| 2 | THE COURT:  Okay.  Mr. Cohen? |
| 3 | MR. COHEN:  Very hard to say today, your Honor.  We |
| 4 | haven't gotten any of the discovery.  But I would put down two |
| 5 | weeks, two to three weeks, potentially. |
| 6 | THE COURT:  Let me take a look here. |
| 7 | October 2, 2023, for trial.  I may move that a day or |
| 8 | so later or a few days earlier, but that's what I'm shooting |
| 9 | for.  Unless you hear otherwise, that's when we're going to try |
| 10 | it. |
| 11 | So, now let's talk about this motion schedule.  Don't |
| 12 | all speak at once. |
| 13 | MS. SASSOON:  Your Honor, we're happy to let the |
| 14 | defense propose a date for the filing of their motions. |
| 15 | THE COURT:  Okay.  Mr. Cohen? |
| 16 | MR. COHEN:  Your Honor, it really depends on when we |
| 17 | get all the discovery.  But, assuming we do, say by the end of |
| 18 | February, we were going to suggest perhaps the end of April for |
| 19 | defense motions, if that works for the Court. |
| 20 | THE COURT:  Let's say April 3.  Any objection? |
| 21 | MS. SASSOON:  No, your Honor. |
| 22 | THE COURT:  How much time do you need, Ms. Sassoon? |
| 23 | MS. SASSOON:  Without knowing the scale of the |
| 24 | motions, we'd ask for three weeks. |
| 25 | THE COURT:  You can make a fair assumption. |

N133banc

1         MS. SASSOON:  Three weeks, your Honor.

2         THE COURT:  Okay.  April 24.

3         A week for reply, counselor?

4         MR. COHEN:  Would it be possible to have two weeks,
5 your Honor?

6         THE COURT:  May 8.

7         We'll set it for argument or conference on May 18 at
8 10 a.m.

9         Is there any time gone on the clock?

10        MS. SASSOON:  Time is excluded through today, so we'd
11 move to exclude time between now and the trial date of
12 October 2, 2023, so that the government can produce discovery,
13 the defense can review it, prepare motions, so the parties can
14 litigate the motions, and the parties can prepare for trial.

15        THE COURT:  Any objection, Mr. Cohen?

16        MR. COHEN:  No, your Honor.

17        THE COURT:  Time is excluded from now to and including
18 October 2, 2023.  I find that the interests of justice served
19 thereby outweigh the interests of the public and the defendant
20 in a speedy trial for the reasons articulated by Ms. Sassoon,
21 and also the extensive character of the discovery and the
22 defense's need for a significant period of time to review it
23 and make any necessary motions.

24        Is there anything else we can usefully accomplish
25 today?

1       MS. SASSOON:  Couple things, your Honor.  The first is
2  with respect to victim notification.  FTX was the second
3  largest cryptocurrency exchange, and the number of victims is
4  potentially above 1 million.  At least as estimated in a filing
5  by the FTX debtors, they said there could be as many as over 1
6  million victims.  So we intend to file a motion with the Court
7  in the next couple days asking to provide notice to victims
8  through a website rather than individually.
9       THE COURT:  Okay.
10      MS. SASSOON:  And then with respect to the defendant's
11 bail conditions.  The parties proposed an agreed-upon package
12 to Judge Gorenstein, which was entered at the presentment.  But
13 we would like to propose an additional bail condition that we
14 think would have been supported at the time of the presentment,
15 but in light of some recent events, we believe it's necessary
16 to add this condition.
17      Specifically, we'd like to add a condition that the
18 defendant be prohibited from accessing or transferring any FTX
19 or Alameda assets, including cryptocurrency, and including
20 assets or cryptocurrency purchased with FTX or Alameda funds.
21      THE COURT:  Mr. Cohen?
22      MR. COHEN:  Yes, your Honor.  We've been discussing
23 this with the government.  We spoke with them about it
24 yesterday.
25      Just as context for the Court, on Friday, there was I

guess a tweet alleging that Mr. Bankman-Fried had in fact transferred assets when he had not. We called the government right away, we notified them about this, we offered to help Friday and through the weekend. And I think there was a concern on the government's part that the standard conditions and the strict conditions already in place be supplemented, although I think this is probably just duplicative of those conditions.

So we have spoken to them about potential language to address this. We have not, in fairness to the government, had a chance to fully vet it with them. We've exchanged drafts. We think we can come to terms with them.

We would suggest that the Court give us a day or two to see if we can, and we can make a joint submission, if the Court would allow us to.

THE COURT: Ms. Sassoon, what do you say?

MS. SASSOON: A few things, your Honor.

First, we appreciate the defense is working with us toward agreed-upon language. That said, it was reported on December 28, 2022, that some Alameda wallets had been accessed and money was transferred. We don't have evidence at this time that it was the defendant. We are investigating it. But this money is now inaccessible for purposes of government seizure for forfeiture. And we do have concerns that even within a period of a few days, that additional assets could be accessed

and become inaccessible.

Assuming that it was not the defendant, it's hard to understand why they would have an issue with entering such a condition with the possibility of modifying the language if we have further discussion.

But, in terms of the defendant's tweet that it was not him and the representation it was not him, we don't put full stock in that simply because our investigation has revealed that he has tweeted knowing false statements before, including as I described earlier.

In addition, while we don't know whether it was the defendant who made these transfers, he did at one point have access to these wallets, and we also have evidence that after FTX entered bankruptcy and declared bankruptcy and he stepped down as CEO, he worked with foreign regulators to transfer assets to those foreign regulators when he knew that the U.S. bankruptcy was also interested in those assets.  And he did it expressing to a co-conspirator that he knew there was competition between the U.S. bankruptcy and the foreign regulators, but that he wanted to stall with the U.S. bankruptcy, get the assets to the foreign regulators, in part because he thought they would essentially be more lenient with him, and he might have a possibility of regaining control of his business.  That's in sum and substance what he said.

So, for these reasons we do think such a condition is

justified, and that no harm would come of entering a condition now with the possibility of proposing a modification to the Court within a few days, if there are concerns about the language.

THE COURT: And the operative language, which I acknowledge you're speaking of is interim language in the absence of a subsequent agreement, is accessing or transferring exactly what?

MS. SASSOON: That the defendant be prohibited from accessing or transferring any FTX or Alameda assets or cryptocurrency, including assets or cryptocurrency purchased with funds from FTX or Alameda. With FTX defined to include FTX.com, FTX U.S., FTX Digital Markets Ltd., and all affiliated subsidiary and successor entities. And Alameda defined to include Alameda Research and any affiliated subsidiary and successor entities.

THE COURT: All right. Unless otherwise ordered by the Court, the requested condition as just stated by Ms. Sassoon is made a condition of the defendant's bail as of this moment.

I hope you can work out language that's mutually acceptable. But it seems to me that that condition is warranted in all the circumstances.

MR. COHEN: If I might be heard. I understand the Court's ruling. I just would like to respond to a few things

the government attorney said, because they could be relevant if we're back before your Honor on this issue, which I hope we're not.

         THE COURT:  Why don't we save it for when you're back before the Court, if that should happen, which I hope isn't necessary.

         MR. COHEN:  But, just for your Honor's benefit, Mr. Bankman-Fried did not make these transfers.  We reached out to the government telling them that.  And the proceedings she referred to, Ms. Sassoon referred to before the Bahamians, he was actually ordered by a court in the Bahamas to make those transfers.

         THE COURT:  None of that is material to the ruling which I have made already.  I understand you and Ms. Sassoon may have different views about what did or didn't happen.  But in all the circumstances, I can see no legitimate objection to the condition that I have just imposed.  And unless you can work out something that's mutually acceptable in its place, that's the condition that will stand.

         MR. COHEN:  Your Honor, and what would be the Court's preferred way to come back to you if we have to?

         THE COURT:  Letter.

         MR. COHEN:  Okay.

         THE COURT:  Just docket it on ECF.

         MR. COHEN:  Okay.

Case 1:22-cr-00673-LAK   Document 38   Filed 01/10/23   Page 17 of 18      17
N133banc

1          THE COURT:  Okay.  I have one or two remaining
2  questions.
3          What's the status of any agreement or lack of
4  agreement with respect to the amounts of the bonds to be signed
5  by the two additional financially responsible persons?
6          MS. SASSOON:  Your Honor, there is no agreement yet
7  because we have scheduled interviews with those cosigners, and
8  the amount will be dependent on what we learn about their
9  financial circumstances in those interviews.  But I imagine
10 we'll come to a consensus about that.
11         THE COURT:  When?
12         MS. SASSOON:  Likely in the next day or two.
13         THE COURT:  Okay.  All right.  Thank you.
14         Which of the two insolvency proceedings was filed
15 first, Delaware or the Bahamas?
16         MR. COHEN:  The Bahamas, your Honor.
17         THE COURT:  Does that make any difference?
18         MR. COHEN:  That was the point I was trying to make
19 before, your Honor.
20         THE COURT:  Well, sure.
21         MS. SASSOON:  Your Honor, I'm no bankruptcy expert and
22 I'm not sure in what respect you're asking if it makes a
23 difference.  But, my understanding is that the Bahamian
24 proceeding was filed in contemplation of a U.S. bankruptcy
25 proceeding.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

N133banc

1        THE COURT:  Okay.  Anything else?
2        MS. SASSOON:  Nothing from the government, your Honor.
3        THE COURT:  Okay.
4        MS. SASSOON:  Thank you.
5        THE COURT:  Thank you.
6        (Adjourned)