

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Jeremy A. Chase**
jeremychase@dwt.com

**Alexandra Settelmayer**
alexandrasettelmayer@dwt.com

212-489-8230 tel.
212-489-8340 fax

January 12, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re:    <u>Unsealing Request in *U.S. v. Samuel Bankman-Fried*, 22-cr-673 (LAK)</u>

Dear Judge Kaplan:

      This firm writes on behalf of various news organizations, including The Associated Press, Bloomberg L.P., The Financial Times Ltd., CNBC LLC, Reuters News & Media Inc., Dow Jones & Co., Inc., publisher of The Wall Street Journal, Insider, Inc., and WP Company LLC, publisher of The Washington Post (collectively, the "News Organizations") in response to the Court's January 3, 2023 Minute Entry granting the letter application of Defendant Samuel Bankman-Fried for leave to redact the names and identifying information of his two non-parental bail sureties (Dkt. No. 29) without prejudice to any application to release such names and addresses. We now write to respectfully request that the Court release the names and identifying information of Mr. Bankman-Fried's bail sureties to the public, as well as to reiterate the compelling public interest in maintaining the greatest transparency possible in these proceedings, and the specific public interest implicated by Mr. Bankman-Fried's request for denial of public access here.

      The public's interest in this matter cannot be overstated. Mr. Bankman-Fried stands accused of perpetrating one of the largest financial frauds in history, misappropriating multiple-billions of dollars from his investors, and using customer funds to purchase personal properties, backstop trades at his hedge fund Alameda Research, and fund extensive political donations.[1] In the wake of these charges—which have roiled financial markets and, as it pertains to the charges of violation of campaign finance laws, cast doubt on the democratic process and governmental institutions—Mr. Bankman-Fried was released on a $250 million bond. As a condition of his December 22, 2022 release, Mr. Bankman-Fried was required to have "two non-parent sureties" sign bonds by January 5, 2023. Dkt. No. 14. On January 3, 2023, he filed a letter motion requesting

---

[1] As pointed out in the Affirmation of Assistant U.S. Attorney Danielle R. Sassoon, "FTX was one of the world's largest cryptocurrency exchanges with more than one million users," and "FTX could owe money to more than one million people, which principally consists of retail customers on FTX's exchange." Dkt. No. 33 ¶ 4.

Hon. Lewis A. Kaplan
January 12, 2023
Page 2

that the identities of his non-parental bail sureties be shielded from the watchful eye of the public. Dkt. No. 29. The public, however, has an interest in knowing who it is that provided Mr. Bankman-Fried with financial backing following this alleged massive fraud and political scandal, particularly given Mr. Bankman-Fried's close relationships with leaders of the financial industry, investors, prominent Silicon Valley billionaires, and elected representatives.

The public has a right of access to the bail sureties grounded in both the First Amendment and the common law.

The United States Supreme Court has made clear that the First Amendment provides a "presumption of openness" to judicial proceedings and documents that "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Supreme Court of California*, 464 U.S. 501, 510 (1984). The constitutional presumption in favor of access requires "the most compelling circumstances" to justify any restriction upon that right, *In re Application of Nat'l Broadcasting Co.*, 635 F.2d 945, 952 (2d Cir. 1980), and requires "specific, on the record findings" that sealing "is essential to preserve higher values and is narrowly tailored to serve that interest" under the First Amendment. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (citations and internal marks omitted).[2]

The common law right to inspect and copy judicial records is likewise beyond dispute. This common law presumption is intended to promote accountability in the judicial process and to encourage public confidence in the administration of justice. *See*, *e.g.*, *Lugosch*, 435 F.3d at 119. The common law presumption of access attaches to any "judicial document." *Id*. (defining "judicial document" as any material presented to the court "relevant to the performance of the judicial function and useful in the judicial process") (citation and internal marks omitted). The weight of the common law presumption turns on "the role of the material at issue in the exercise of Article III judicial power" and "the resultant value of such information to those monitoring the federal courts." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (citation and internal marks omitted). Once the right of access attaches and the appropriate weight of the presumption determined, it may be overcome only where "competing considerations" such as "the privacy interests of those resisting disclosure" outweigh the presumption. *Id.* (quoting *Lugosch*, 435 F.3d at 119–20).

Here there is no dispute that the names of bail sureties are judicial records to which the presumption of openness applies: Mr. Bankman-Fried explicitly concedes that the bonds containing the names and identifying information of his bail sureties are "judicial documents" subject to the presumption of access under both the common law and the First Amendment. *See* Dkt. No. 29, at 2–3. As set forth below, Mr. Bankman-Fried cannot overcome the presumption of openness.

---

[2] The Court has not made the requisite "specific, on the record findings" supporting the denial of access here. *Press Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 8–14 (1986). For this additional reason, the requirements for barring public access to these judicial documents have not been satisfied.

Hon. Lewis A. Kaplan
January 12, 2023
Page 3

      **A.**      **The Common Law Right of Access Mandates Unsealing the Identities of the Bail Sureties**

      *First*, contrary to Mr. Bankman-Fried's assertions in his letter application, the identities of the bail sureties are not divorced from the Court's Article III function and most certainly impacts Mr. Bankman-Fried's substantive rights. "[T]he bail decision is one of major importance to the administration of justice, and openness will help to assure the public that the decision is properly reached." *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984). Indeed, "[t]he detention of criminal defendants pending trial is a quintessential exercise of a court's Article III judicial power, and the public has a legitimate interest monitoring a court's use of that power." *United States v. Graham*, 257 F.3d 143, 154 (2d Cir. 2001) (citing *In re Globe*, 729 F.2d at 52). For documents like the sureties' individual bonds that "are usually filed with the court and are generally available, the weight of the presumption is *stronger* than where filing with the court is unusual or is generally under seal." *United States v. Basciano*, 2010 WL 11679716, at *3 (E.D.N.Y. May 12, 2010) (emphasis added) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049–50 (2d Cir. 1995)). Mr. Bankman-Fried's argument—that since the additional sureties were not known to Magistrate Judge Gorenstein when he imposed the bail conditions (Dkt. No. 14), they therefore could not have been material to any determination of Mr. Bankman-Fried's substantive rights—ignores that the Order Setting Conditions of Release is not static. The bail decision is not final, and nothing prevents the Court from rejecting Mr. Bankman-Fried's additional sureties,[3] amending the conditions of release, or revoking bail. *See*, *e.g.*, *United States v. Dzhamgarova*, 2021 WL 3113036, at *1 (S.D.N.Y. Jul. 21, 2021) (quoting 18 U.S.C. § 3142(c)(3) for the proposition that the court "may at any time amend [its] order to impose additional or different conditions of release."). While Mr. Bankman-Fried attempts to separate the identities of the bail sureties from the bonds posted by those bail sureties, they are inextricably linked. The effectiveness of bail—which ensures Mr. Bankman-Fried's appearance before this Court and the ultimate administration of justice—entirely depends on the sureties themselves. To be an effective surety, the individuals must have a sufficient relationship to Mr. Bankman-Fried to deter any flight-risk. Accordingly, both the bonds and the sureties are subject to a strong presumption of access.

      *Second*, the competing considerations Mr. Bankman-Fried offers—the privacy and safety interests of third parties implicated by the documents at issue—are simply insufficient to overcome the strong presumption of access here. "While the privacy interests of innocent third parties are entitled to significant weight, judicial documents entitled to a strong presumption of public access must remain public 'absent the most compelling reasons.'" *Basciano*, 2010 WL 11679716, at *3 (citing *Lugosch*, 435 F.3d at 123). Mr. Bankman-Fried has failed to offer any such compelling reason. Mr. Bankman-Fried suggests that sealing is appropriate because his parents, who co-signed his personal recognizance bond, have "in recent weeks" become the subject of "intense media scrutiny, harassment, and threats" and that the presently unidentified non-parental bail sureties will suffer similar harassment and threats if their identities are publicly disclosed. Dkt. No. 29, at 2. But "[s]hielding third parties from unwanted attention arising from an issue that is

---

[3] *See*, *e.g.*, *United States v. Nebbia*, 357 F.2d 303, 304 (2d Cir. 1966) ("If the court lacks confidence in the surety's purpose or ability to secure the appearance of a bailed defendant, it may refuse its approval on a bond even though the financial standing of bail is beyond question.").

Hon. Lewis A. Kaplan
January 12, 2023
Page 4

already public knowledge is not a sufficiently compelling reason to justify withholding judicial documents from public scrutiny." *Basciano*, 2010 WL 11679716, at *4; *see also Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 626 (S.D.N.Y. 2011) (holding on a party's request to redact names of individuals whose conduct had been investigated in relation to alleged harassment and discrimination complaints, "[w]hile the conduct at issue may be potentially embarrassing to these employees (and JPMC) and may negatively impact their career prospects, any injury the employees may suffer by release of the information is insufficient to rebut the strong presumption of access to the information at issue here"). In any event, Mr. Bankman-Fried's parents garnered scrutiny for their involvement with FTX well before co-signing his bail bond.[4] Indeed, his father was a paid employee of the company for nearly a year prior to FTX's collapse, connected FTX with at least one major investor, and participated in FTX's meetings with policy makers and officials. *See supra*, n.4. It is far from clear that co-signing their son's bail bond had any impact whatsoever on the level of scrutiny his parents felt, and Mr. Bankman-Fried's letter application stops short of making such a claim.[5] Thus, Mr. Bankman-Fried's assertion that his non-parental bail sureties would suffer comparable media scrutiny, harassment, and threats is wholly speculative.

Furthermore, Mr. Bankman-Fried's reliance on *United States v. Maxwell*, 20-cr-330 (S.D.N.Y.) in support of the purported appropriateness of redacting materials submitted in connection with bail misses the mark. In *Maxwell*, the Court permitted the redaction of bail guarantors for Ghislaine Maxwell who was charged in connection with her involvement with Jeffrey Epstein in one of the most notorious child sex trafficking rings in history. The unique stigma of association with Epstein, Maxwell, and their ring of pedophilia, sexual abuse of minors, and sex trafficking no doubt animated the Court's decision to permit the names of those proposing to post her bail—which was ultimately denied—a secret. None of these concerns are present here. While Mr. Bankman-Fried is accused of serious financial crimes, a public association with him does not carry nearly the same stigma as with the Jeffrey Epstein child sex trafficking scandal. Indeed, the list of individuals associated with FTX and Mr. Bankman-Fried in one way or another

---

[4] *See e.g.*, Justin Baer and Kardika Singh, *Sam Bankman-Fried's Parents Were There for FTX's Rise, and Now Its Fall*, THE WALL STREET JOURNAL (Dec. 12, 2022), https://www.wsj.com/articles/sam-bankman-frieds-parents-were-there-for-ftxs-rise-and-now-its-fall-11670841001; Allison Morrow, *Parents of Sam Bankman-Fried face scrutiny over their roles in FTX*, CNN (Dec. 14, 2022), https://www.cnn.com/2022/12/14/business/bankman-fried-parents/index.html; Erik Larson and Annie Massa, *Sam Bankman-Fried's Stanford Professor Parents Tangled in FTX Probes*, BLOOMBERG (Dec. 13, 2022), https://www.bloomberg.com/news/articles/2022-12-13/sam-bankman-fried-s-stanford-law-professor-parents-tangled-in-ftx-probes.

[5] It bears noting that the sureties affirmatively chose to guarantee Mr. Bankman-Fried's bond with full knowledge that this was a high-profile case. In essence, they have voluntarily assumed the risk of a certain amount of publicity.

is a who's who of the most well-known and respected names in investing,[6] entertainment,[7] politics,[8] and public life in general. While they have faced media attention and scrutiny, it does not approach the level of public reprobation of those associated with Maxwell and Epstein.[9]

Put simply, Mr. Bankman-Fried has failed to identify competing considerations sufficient to overcome the strong common law presumption of access here. As such, the identities of his bail sureties should be made available to the public.

### B. The First Amendment Right of Access Also Mandates Unsealing the Identities of the Bail Sureties

The First Amendment right of access applies to the judicial documents at issue here for similar reasons.

Initially, while Mr. Bankman-Fried admits that the bond sureties are judicial documents and "the press and public typically can obtain access to the bonds," *see* Dkt. No. 29, at 5, he also argues that public access to the identities of the bond sureties will not play a significant positive role in the administration of justice. *Id.* Not so. Courts have long held that "pretrial release

---

[6] FTX's investors included NEA, IVP, Iconiq Capital, Third Point Ventures, Tiger Global, Altimeter Capital Management, Lux Capital, Mayfield, Insight Partners, Sequoia Capital, SoftBank, Lightspeed Venture Partners, Ribbit Capital, Temasek Holdings, BlackRock and Thoma Bravo. *See* Erin Griffith and David Yaffe, *Investors Who Put $2 Billion Into FTX Face Scrutiny, Too*, N.Y. TIMES (Nov. 11, 2022), https://www.nytimes.com/2022/11/11/technology/ftx-investors-venture-capital.html#:~:text=FTX's%20list%20of%20investors%20spans,Holdings%2C%20BlackRock%20and%20Thoma%20Bravo.

[7] FTX's celebrity spokespeople included Tampa Bay Buccaneers quarterback Tom Brady, supermodel Gisele Bundchen, Golden State Warriors guard Stephen Curry, "Curb Your Enthusiasm" star Larry David, and others. Minyvonne Burke, *Tom Brady, Larry David and other celebrities named in FTX lawsuit*, NBC NEWS (Nov. 16, 2022), https://www.nbcnews.com/business/business-news/ftx-crypto-investors-sue-founder-sam-bankman-fried-celebrity-promoters-rcna57453.

[8] Mr. Bankman-Fried personally contributed the individual maximum of $5,800 to Sens. Debbie Stabenow (D., Mich.), John Boozman (R., Ark.), Kirsten Gillibrand (D., N.Y.), Cory Booker (D., N.J.), Lisa Murkowski (R., Alaska) and Susan Collins (R., Maine), among others, as well as dozens of House candidates. Separately, he gave millions of dollars to Political Action Committees aligned with Senate Majority Leader Chuck Schumer (D., N.Y.), former House Speaker Nancy Pelosi (D., Cal.), and various others. *See*, *e.g.*, Paul Kiernan and Stephanie Stamm, *Sam Bankman-Fried, FTX Team Among Top Political Donors Before Bankruptcy*, THE WALL STREET JOURNAL (Nov. 21, 2022), https://www.wsj.com/articles/sam-bankman-fried-ftx-team-among-top-political-donors-before-bankruptcy-11668949205. Likewise, Mr. Bankman-Fried attracted former heads of state Tony Blair and Bill Clinton to his conferences in the Bahamas. *See FTX founder agrees to extradition to US, attorney says*, ASSOCIATED PRESS (Dec. 19, 2022), https://apnews.com/article/business-extradition-bahamas-83360ee8736d2fd3ae8247d8987fe8ef.

[9] Mr. Bankman-Fried also relies on *United States v. Nejad*, 18-cr-224 (S.D.N.Y), where the defendant was charged with violating economic sanctions with Venezuela and the court permitted the redaction of private financial information of 36 friends and family members who offered to put up collateral for a bond. However, unlike the present case, where the information sought is the names and identifying information of two sureties, the sealed information in *Nejad* was significantly more extensive. Moreover, the requested sealing was made without any sort of on the record finding supporting the denial of access to these documents as is required by the Second Circuit's decision in *Lugosh*, (Dkt. No. 21, Tr. 25:11–26:4), nor was the sealing ever challenged. Had the sealing been challenged in *Nejad*, there is little doubt that the identities of the bail sureties would fail to survive scrutiny.

Hon. Lewis A. Kaplan
January 12, 2023
Page 6

decisions benefit from public scrutiny." *Seattle Times Co. v. U.S. Dist. Ct. for Western Dist. Of Washington*, 845 F.2d 1513, 1517 (9th Cir. 1988); *see generally* Fenner & Koley, *Access to Judicial Proceedings: to Richmond Newspapers and Beyond,* 16 Harv.C.R.—C.L.L.Rev. 415, 436 n. 109 (1981) (quoting Zion, *High Court v. The Press*, N.Y. TIMES (Nov. 18, 1979), § 6 (Magazine), at 45) ("It has been noted that 'the whole uncovering [of the Watergate Scandal] might have been cut off at the pass by closing the original bail hearing to the press. That way, reporters Bob Woodward and Carl Bernstein could hardly have noticed that high-priced lawyers were representing third-rate burglars.'"). Mr. Bankman-Fried takes an exceedingly narrow view of the judicial function at hand, neglecting the fact that the Court's oversight of the bail conditions is ongoing and did not conclude upon entry of the Order Setting Conditions of Release (Dkt. No. 14). He also completely ignores the greater context surrounding these proceedings. As discussed above, Mr. Bankman-Fried has been criminally charged with fraud and campaign finance violations on a multi-billion-dollar scale, eroding public confidence in our government institutions and political leaders. Given Mr. Bankman-Fried's relationships and access to some of the most wealthy, powerful, and politically connected individuals, including elected officials, access to the identity of the bond sureties will bolster trust in the judicial process here.

Finally, for the same reasons that Mr. Bankman-Fried fails to articulate any competing considerations that could overcome the common law right of access, he is unable to articulate any "higher value" sufficient to overcome the First Amendment presumption of access here.

\*   \*   \*

In sum, the News Organizations respectfully request that the Court order that the names and identifying information of Defendant's bail sureties be unsealed. If it would assist the Court in reaching its decision, counsel for the News Organizations respectfully requests to be heard at any hearing on this matter. We thank the Court for its consideration in that matter.

Respectfully Submitted,

Davis Wright Tremaine LLP

Jeremy A. Chase
Alexandra Settelmayer

cc:   Attorneys of Record (via ECF)