USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/01/2023__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

               -against-                                 22-cr-0673 (LAK)

SAMUEL BANKMAN-FRIED, et al.,

                         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER

Lewis A. Kaplan, *District Judge.*

              This matter now is before the Court on the government's application to modify the release conditions of defendant Samuel Bankman-Fried by adding as additional conditions of his continued release that he shall not (1) contact or communicate with current or former employees of FTX or Alameda (other than immediate family members) except in the presence of counsel, unless the government or Court exempts an individual from this rule, or (2) use any encrypted or ephemeral call or messaging application, including but not limited to Signal.[1]  (Dkt 50)  The defendant, who was arrested in the Bahamas and then extradited on December 21, 2022, opposes the government's proposed additional bail conditions and cross-moves to eliminate the existing bail condition that defendant is prohibited from accessing or transferring any FTX or Alameda assets or cryptocurrency, including assets or cryptocurrency purchased with funds from FTX or Alameda.

---

[1]               For the purposes of this order, the Court defines "FTX" to include FTX.com, FTX US, FTX Digital Markets Ltd., and all affiliated, subsidiary, and successor entities, and "Alameda" to include Alameda Research and any affiliated, subsidiary, and successor entities. *See* Dkt 50, at 1.

2

(Dkt 51)  Briefing is complete on the government's application but not yet complete on the defendant's cross-application.  Nor has the Court yet held oral argument, which hereby is set for February 7, 2023 at 2 p.m.

        Both the government and defendant have made proffers in support of their motions. The defendant does not contest any of the material historical facts with respect to the two additional release conditions proposed by the government.   Rather, he merely disputes the proper characterization of those facts.  For the purposes of this order, the Court accepts as established all undisputed historical facts in the parties' proffers.[2]  Accordingly, the following facts are accepted as true for purposes of this order:

- Defendant directed that FTX and Alameda business be conducted on Slack and Signal, two encrypted messaging applications that permit users to implement settings that cause messages to automatically delete on the devices of others with whom they are communicating.  In or about 2021, the defendant directed also that Slack and Signal communications between FTX and Alameda employees – including his own business communications – be set to automatically delete after 30 days or less.[3]

- Defendant indicated to Caroline Ellison – the former chief executive of Alameda who has pleaded guilty pursuant to a cooperation agreement with the government – in substance and in part, that many legal cases turn on documentation and it is more

---

[2]

        *See United States v. Martir*, 782 F.2d 1141, 1147 (2d Cir. 1986) (citing *United States v. Acevedo-Ramos*, 755 F.2d 203, 208–09 (1st Cir. 1985) ("[Defendant's] failure to question the reliability of the government's proffer . . . tends to justify the [district court's] acceptance of the proffer as accurate."); *see also id.* (citing *United States v. Delker*, 757 F.2d 1390, 1396 (3d Cir. 1985) ("[Defendant] did not challenge the proffer in any way.  In the absence of such an attack, we cannot say that [the presiding judge] erred in failing to demand further elaboration from the government.  In the informal evidentiary framework of a detention hearing, the methods used to scrutinize government proffers for reliability must lie within the discretion of the presiding judicial officer, informed by an awareness of the high stakes involved."); *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (no abuse of discretion where presiding judge accepted government's uncontradicted proffer, which was corroborated by extrinsic evidence).

[3]

        Dkt 50, at 3.

difficult to build a legal case if information is not written down or preserved.[4]

- In November 2022, the general counsel of FTX US ("Witness-1") was one of a group of FTX insiders who participated with defendant in a series of Signal and Slack communications in which defendant directed the transfer of $45 million of Alameda funds to remedy a hole in FTX's balance sheet.[5]

- Defendant was released on bond on December 22, 2022.  His bond does not presently impose limitations on the defendant's ability to contact any prospective witnesses in the case.[6]

- After defendant's release, he has initiated direct communications with at least one prospective witness.[7]

- On January 15, 2023, defendant initiated contact with Witness-1 – who the government identifies as a potential witness at trial – without the presence of either defendant's or Witness-1's counsel.  Defendant contacted Witness-1 over the encrypted messaging application Signal, as well as by email, and wrote, in relevant part:  "Hey [Witness-1], I know it's been a while since we've talked.  And I know things have ended up on the wrong foot.  I would really love to reconnect and see if there's a way for us to have a constructive relationship, use each other as resources when possible, or at least vet things with each other.  I'd love to get on a phone call sometime soon and chat."[8]

- Since his release, defendant has contacted other current and former FTX employees.[9]

Section 3142(c)(3) of the Bail Reform Act permits the Court to "amend the order

[releasing a defendant on conditions] to impose additional or different conditions of release [at any

---

[4]
    *Id.*

[5]
    *Id.* at 2.

[6]
    *Id.* at 1.

[7]
    *Id.*

[8]
    *See id.*; Dkt 53 Ex. 1.

[9]
    Dkt 50, at 1.

4

time].”[10]  It does not explicitly establish a legal standard that must be satisfied in order to warrant such action.  However, courts in this district have found that judicial "authorization to amend a release order" under section 3142(c) arises where there is "a changed situation or new information [that] warrant[s] altered release conditions."[11]

"When considering an application to modify a defendant's bail conditions, the Court considers 'the statutory standards applicable to the setting of bail.'"[12]  Specifically, in determining what conditions to impose, and whether to modify those conditions, the Court shall "take into account the available information" regarding "the nature and circumstances of the offense charged," "the weight of the evidence against the person," "the history and characteristics of the person," and the "nature and seriousness of the danger . . . that would be posed by the person's release."[13]

While the Court has not yet heard counsel orally on that application, which it plans to do on February 7 when it hears also defendant's cross-application, briefing has been completed on the government's application.  Nevertheless, it is appropriate to consider whether defendant's continued release on the present conditions, which do not limit his ability to contact potential witnesses nor his use of electronic means of communication capable of auto-deleting messages, should be altered in view of the undisputed facts proffered by the government – at least pending oral

---

[10]

18 U.S.C. § 3142(c)(3).

[11]

*United States v. Rains*, No. 22-CR-18 (NSR), 2022 WL 4534540, at *2 (S.D.N.Y. Sept. 28, 2022) (quoting *United States v. Dzhamgarova*, No. 21 Cr. 58 (MKV), 2021 WL 3113036, at *1 (S.D.N.Y. July 21, 2021) (internal quotation marks and citations omitted)).

[12]

*Dzhamgarova*, 2021 WL 3113036, at *1 (quoting *United States v. Zuccaro*, 645 F.2d 104, 106 (2d Cir. 1981)).

[13]

18 U.S.C. § 3142(g).

argument next week and a final decision on the government's application.

      As noted, defendant's January 15 message to the general counsel of FTX stated:

      "Hey [Witness-1], I know it's been a while since we've talked.  And I know things have ended up on the wrong foot.  I would really love to reconnect and see if there's a way for us to have a constructive relationship, use each other as resources when possible, or at least vet things with each other.  I'd love to get on a phone call sometime soon and chat."[14]

      While defendant's counsel seeks to have the Court interpret that message in a benign way, that does not appear, on a preliminary basis, to be a persuasive reading.  The message is addressed to Witness-1 and seeks a reconciliation of an apparently damaged personal relationship.  It invites a "constructive" repaired relationship.  It proposes that the defendant and Witness-1 "vet things with each other."  Subject to hearing counsel's argument, the message in its entirety seems to be an invitation for Witness-1 to align his views and recollections with defendant's version of events and thus make their relationship "constructive."  In perhaps more colloquial terms, it appears to have been an effort to have both the defendant and Witness-1 sing out of the same hymn book.

      A possible motive for such an attempt is evident from the fact that Witness-1 undisputedly was a witness to some events likely to be at issue in this case, and defendant is facing the possibility of a long prison term.  Coupled with the apparently most plausible reading of the communication to Witness-1, the directions to employees to use Slack and Signal, the statement to Ms. Ellison referred to above, and the fact that defendant's message to Witness-1 invited a telephonic rather than written response, the question arises whether further measures now should be imposed to assure the safety of the community from efforts by this defendant to influence or

---

[14] Dkt 53 Ex. 1.

6

tamper with prospective witnesses.[15]

        This question – whether to tighten for a very limited period the conditions under which defendant remains at liberty – is very narrow.  The Court considers it to be analogous to an application for a temporary restraining order.  There, the Court considers whether there is a threat of irreparable injury and, if so, the strength of the applicant's case for a more lasting injunction as well as the equities.

        Here, the undisputed information available to the Court regarding the "nature and seriousness of the danger . . . posed by [defendant's continued] release" on the existing conditions has changed substantially since he was released, and there appears to be a material threat of inappropriate contact with prospective witnesses.  That risk, the Court finds, is clearly and convincingly sufficient to warrant the imposition of additional conditions pending the full argument of the cross-applications.  That is particularly true given the very limited constraint on defendant's actions that a tightening of his conditions of release pending oral argument on February 7 would impose.

        The Court will hear argument on this matter on February 7, 2023 at 2 p.m.  In the interim, pending the outcome of that hearing, I hereby amend the conditions of defendant's release, effective immediately, to add the government's proposed additional conditions that (1) the defendant shall not contact or communicate with current or former employees of FTX or Alameda (other than

---

[15]

    *See LaFontaine*, 210 F.3d at 127, 134–35 ("[O]bstruction of justice by a white-collar criminal, even where it does not involve violence or threat of violence, may support a finding of danger to the community."); *see also United States v. Stein*, No. S1-05-cr-0888 (LAK), 2005 WL 8157371, at *2 (S.D.N.Y. Nov. 14, 2005) (citing *LaFontaine*, 210 F.3d at 132) ("The Court agrees in principle that nonviolent witness tampering and obstruction poses a danger to the community and that the risk of such activities, in an appropriate case, would support pretrial detention.")

7

immediate family members) except in the presence of counsel, unless the government or Court exempts an individual from this rule and (2) the defendant shall not use any encrypted or ephemeral call or messaging application, including but not limited to Signal.  The terms "FTX" and "Alameda" are defined as indicated above.

SO ORDERED.

Dated:          February 1, 2023

/s/ Lewis A. Kaplan

_____
Lewis A. Kaplan
United States District Judge