# Exhibit 13

```
 1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
 2

 3   IN RE:                         .   Chapter 11
                                    .   Case No. 22-11068 (JTD)
 4   FTX TRADING LTD. et al.,       .
                                    .   (Jointly Administered)
 5              Debtors.            .
                                    .
 6   . . . . . . . . . . . . . . . .
                                    .
 7   AUSTIN ONUSZ, CEDRIC KEES      .   Adversary Proceeding
     VAN PUTTEN, NICHOLAS J.        .   No. 22-50513 (JTD)
 8   MARSHALL and HAMAD DAR, on     .
     behalf of themselves and all   .
 9   others similarly situated,     .
                                    .
10              Plaintiffs,         .
                                    .
11       v.                         .
                                    .
12   WEST REALM SHIRES INC., WEST   .
     REALM SHIRES SERVICES INC.     .
13   (D/B/A FTX US), FTX TRADING    .
     LTD., ALAMEDA RESEARCH LLC,    .
14   SAM BANKMAN-FRIED, ZIXIAO      .
     WANG, NISHAD SINGH and         .
15   CAROLINE ELLISON,              .
                                    .
16              Defendants.         .
                                    .
17   . . . . . . . . . . . . . . . .
                                    .
18   ALAMEDA RESEARCH LTD.; FTX     .   Adversary Proceeding
     TRADING LTD.,                  .   No. 23-50084 (JTD)
19                                  .
                Plaintiffs,         .
20                                  .
         -against-                  .
21                                  .
     VOYAGER DIGITAL, LLC; HTC      .   Courtroom No. 5
22   TRADING, INC.,                 .   824 Market Street
                                    .   Wilmington, Delaware 19801
23              Defendants.         .
                                    .   Wednesday, April 12, 2023
24   . . . . . . . . . . . . . . . .   1:01 p.m.

25                              (CONTINUED)
```

1   MR. DIETDERICH:  Thank you.  Good afternoon, Your
2  Honor.  Andy Dietderich for the debtors; with me is my
3  partner Brian Glueckstein.
4   I think we have a presentation.  Does it -- do I
5  press it forward?  That's not it.
6       (Laughter)
7   THE COURT:  Remove that person from Zoom, please.
8  Thank you.
9   Can we bring that up for everybody in the
10 courtroom?
11      (Pause)
12  MR. DIETDERICH:  There is it.  Good.  So, thank
13 you.
14  Your Honor, it's been three months since we were
15 before you at an omnibus hearing.  We'd like to thank Your
16 Honor for the efficient manner in which the cases have been
17 conducted so far.  The Court has entered more than 38 orders
18 on certification of counsel, including 30 orders that
19 reflected negotiated solutions with stakeholders.  As a
20 result, the debtors have been able to focus almost entirely
21 on the business of the case, rather than court appearances.
22  The first months of the case have been
23 extraordinarily busy and productive.  There's an overwhelming
24 number of ongoing workstreams and novel issues in every
25 discipline.  Today, the situation has been stabilized and the

1  dumpster fire is out, and as I will explain in a moment, we
2  anticipate filing a plan of reorganization in July.
3        I would like to spend some time on a case update
4  for the Court.  First, and perhaps most important, our assets
5  available for stakeholder recovery.  Our estate consists of
6  many investments, businesses, and causes of action that have
7  not yet been monetized.  Valuing these now is impossible;
8  however, we are tracking distributable assets:  Cash, Class
9  A, or Category A cryptocurrency, which we defined in previous
10 submissions, and securities.
11       Here's a chart of these assets at petition date
12 value, including cash receivables from the settlements and
13 transactions recently approved by the Court.  We now stand at
14 $6.2 billion, an increase of $800 million from my update to
15 the Court in January.  This increase in value is more
16 significant if we take into account current asset pricing.
17       On this next slide, at current prices, our
18 distributable assets have increased to $7.3 billion, a $1.9
19 billion increase from my January briefing.  What goes up can
20 go down.  Prices will fluctuate during these cases.
21       As we will discuss in a moment, one of the
22 important tasks of the debtors is being a good and prudent
23 custodian of $7.3 billion of asset value.  We will be
24 increasing distributable assets, hopefully dramatically, as
25 the case progresses, but it's also important for us not to

1 lose what we have now.

2 Next, Your Honor, I'd like to review some
3 significant events by subject matter. The first is our
4 investigative work. In addition to everything else, the
5 debtors are conducting an extraordinarily complicated
6 forensic investigation, in coordination with multiple law
7 enforcement agencies in the United States and around the
8 world. Early on in this case, the Board of Directors decided
9 it was in the interests of the estate to expend the resources
10 necessary to create a centralized collection of information
11 under the debtors' control and to make this information
12 available to law enforcement agencies in a transparent and
13 reliable manner. The debtors believe that this cooperation
14 has, and will continue to benefit the estates economically,
15 especially as we approach the formation of a plan and the
16 coordination of the distribution of estate property with a
17 distribution of property subject to criminal forfeiture.
18 Government cooperation is in our financial interests.

19 The investment has been substantial. Over 1.3
20 terabytes of data has been collected and compiled. Much of
21 the information has been provided only to government
22 authorities, sometimes directly and sometimes in summary
23 presentations. The debtor is limited in what it can say
24 publicly and provide to certain parties in interest because
25 of the pending government investigations; however, the

1 debtors were able to publish earlier this week, the first
2 interim report of Mr. Ray, the independent director; a report
3 that focuses on control failures at the FTX Group prior to
4 filing.
5 　　　　　The gist of this report is clear:  Mr. Bankman-
6 Fried repeatedly, pervasively, and often persuasively, lied
7 to stakeholders and the customers and creditors in order to
8 maintain the digital con game.  The FTX exchanges appeared to
9 the user as legitimate, in fact, superficially, they appeared
10 to process trades and information more quickly and
11 conveniently than competitors.  The app worked beautifully,
12 but in truth, it was a facade, a digital Potemkin village, or
13 perhaps more apt, a video game.  Behind the user interface,
14 there was no correspondingly sophisticated reality, no
15 equivalent process for segregating assets or reconciling
16 trades, no reliable relationship between the positions
17 reflected in the online game and the underlying positions
18 held in the real world.
19 　　　　　The debtors are working on a second report that
20 will focus on the violation of basic principles of asset
21 segregation.  The debtors will endeavor to make these reports
22 available on a rolling basis and hope they will facilitate
23 the common understanding necessary for productive plan
24 discussions.
25 　　　　　Other developments include the guilty pleas of

1 Mr. Singh, joining Mr. Wang Ms. Ellison. Those who have pled
2 guilty also have agreed to provide assistance to the
3 government and Mr. Wang, in particular, has provided material
4 assistance to the debtors, as well, helping us locate
5 additional assets. And we've seen additional charges against
6 Sam Bankman-Fried.
7 We also appreciate the U.S. criminal authorities
8 working in parallel with us to secure assets. This includes
9 approximately 100 million in cash in the name of FTX Digital
10 Markets, as well as the often-discussed HOOD stock.
11 From the debtors' perspective, Your Honor, we see
12 no tension between the debtors and the U.S. Attorney as to
13 whether particular assets are recovered by the U.S. Attorney
14 or by the debtors. In this case, we believe victims entitled
15 to restitution and creditors entitled to a distribution in
16 Chapter 11 are functionally equivalent. We will continue to
17 work with the U.S. Attorney on this basis.
18 Operationally, we reconciled customer balances
19 across an incredible 10 million accounts. We have a
20 considerable cost and expense fortified, the AWS security
21 environment. We've retained a core team of continuing
22 employees and Your Honor has approved a KERP. We've
23 rationalized our use of office space and our footprint and,
24 importantly, we have returned cryptocurrency to customers in
25 Japan by opening for withdrawals.

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ William J. Garling    April 12, 2023

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable