UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- x
: 
UNITED STATES OF AMERICA :
: S5 22 Cr. 673 (LAK)
v. :
:
SAMUEL BANKMAN-FRIED, :
:
Defendant. :
:
---------------------------------------- x

# DECLARATION OF HONOURABLE JAMES LEWIS KC

**I, the Honourable James Lewis KC, declare pursuant to 28 U.S.C. § 1746 as follows:**

1. I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration. The evidence set out in the foregoing Declaration is based on my personal knowledge.

## I. SUMMARY OF OPINION

2. I have been retained by Cohen & Gresser to give an opinion on the application of the rule of specialty and the dual criminality requirement in the case of Sam Bankman-Fried. The exhibits referenced in this Declaration are attached hereto.

3. I have been asked by counsel to opine on (1) whether Mr. Bankman-Fried waived his specialty and dual criminality objections by consenting to simplified extradition under the Extradition Treaty between the United States and The Bahamas signed at Nassau on 9 March 1990 (the "Treaty") (attached as Ex. A at SDNY_03_01098058 to -8080) and the Bahamian Extradition Act Ch. 96. ("the Extradition Act") (attached as Ex. B); (2) whether Article 14 of the Treaty regarding the rule of specialty creates a standing objection on the behalf of The Bahamas to any new offences on which he has not been extradited charged after extradition; and (3) whether detaining, trying or punishing Mr. Bankman-Fried for Counts 9, 10, 12 and 13 of the Superseding Indictment, Mar. 28, 2023, ECF No. 115 (the "S5 Indictment") violates the Treaty's rule of specialty provision.

4. In summary for the reasons given below I am of the opinion that:

    a. Article 14 of the Treaty remains extant and in full effect notwithstanding Mr. Bankman-Fried's extradition to the United States pursuant to simplified extradition procedures. This is because the Minister of Foreign Affairs (the "Minister") could not order Mr. Bankman-Fried's extradition unless he determined that the Treaty incorporates the rule of specialty. During the extradition proceedings in The Bahamas, it was the understanding of all parties in court, *coram judice,* and the Court itself, that the specialty provisions applied notwithstanding the use of the

simplified procedure. There was no waiver of the rule of specialty. To the contrary, there was an express acknowledgment that it applied.

b. From the Bahamian perspective, Mr. Bankman-Fried can only be tried consistently with the Treaty on (1) a new charge grounded in the facts disclosed in the extradition proceedings and in the offences for which he surrendered (this could include charging a lesser offence so grounded); or (2) on any other offence to which The Bahamas has expressly consented in accordance with the procedure set out in Article 14(1)(b) of the Treaty. The procedure under Article 14(1)(b) requires determination by The Bahamas of whether the conduct would be an extradition offence under Bahamian law (*i.e.*, satisfying the dual criminality requirement).

c. Mr. Bankman-Fried was extradited under the Treaty on the offences identified in the Warrant of Surrender. Notably, the Warrant of Surrender did not include Count 8 of the Original Indictment (now, Count 12 of the S5 Indictment) charging campaign finance conspiracy, indicating the Minister's apparent determination that Count 8 was not an extraditable offence under Bahamian law or lacked sufficient information to make that determination and declined to extradite Mr. Bankman-Fried on that basis. Since extradition was not granted on Count 8 of the Original Indictment, detaining, trying or punishing Mr. Bankman-Fried for campaign finance conspiracy violates Article 14 of the Treaty.

d. Article 14(1)(b) of the Treaty creates a standing objection on the behalf of The Bahamas to any new offences charged after extradition to which Article 14(1)(b) applies. This is not only because consent by The Bahamas must in each case be express, but also because such consent can only be given under Article 14 and section 7(4)(a)(iii) of the Extradition Act after the Minister determines that the conduct charged constitutes a Bahamian extradition offence within the meaning of Section 5 of the Extradition Act; and the procedures in Article 8 of the Treaty have been satisfied.

e. My understanding is that the United States has not provided the information necessary to enable the Minister to make the requisite determination as to Counts 9, 10 and 13 here.

f. In the absence of consent granted by The Bahamas under Article 14(1)(b) of the Treaty and section 7(4)(a)(iii) of the Extradition Act, Counts 9, 10 and 13 of the S5 Indictment violates the Treaty. And, as discussed above, Count 12 of the S5 Indictment also violates the Treaty, because the Minister declined to grant extradition with respect to that offence.

## II. EXPERT QUALIFICATIONS

5. I was called to the Bar of England and Wales in 1987 and have practiced as a barrister continuously since that date. I am presently Head of Chambers at 3 Raymond Buildings, Gray's Inn, London which specialises in international law and extradition. In 2000, I was appointed a Recorder of the Crown Court[1] and, in 2002, I was appointed Queen's Counsel.[2] In 2008, I was elected to the bench as a Master of Gray's Inn.[3] In 2013, I was appointed a Deputy High Court Judge of England and Wales. In 2018, I was appointed Chief Justice of four British Overseas Territories[4]: The Falkland Islands; British Indian Ocean Territories; British Antarctica; and South Georgia and the South Sandwich Islands. I have been called *ad hoc* to the bars of The Bahamas, Gibraltar, Cayman Islands, Brunei, Trinidad and Tobago and Ireland. I have advised and acted for over 20 different foreign governments in extradition matters; including the United States of America and the Department of Justice for whom I have advised, and acted for, in extradition matters on more than 100 separate occasions. I have acted in extradition matters in all courts of The Bahamas up to and including the Judicial Committee of the Privy Council (the "Privy Council"), the highest court of appeal for The Bahamas. An example of acting for the Government of the United States in an extradition appeal from the Court of Appeal of The Bahamas to the Privy Council can be seen at https://www.jcpc.uk/watch/jcpc-2017-0095/130521-pm.html

6. I have previously given expert evidence in the courts of the United States. I am an expert in the extradition law of The Bahamas.

## III. FACTUAL BACKGROUND

### A. The Original Indictment

7. On the 9th December 2022, a grand jury sitting in the Southern District of New York ("SDNY") returned an indictment against Mr. Bankman-Fried. *See* Indictment, Dec. 9, 2022, ECF No. 1 (the "Original Indictment").

8. The Original Indictment charges Mr. Bankman-Fried with two counts of wire fraud, two counts of conspiracy to commit wire fraud, one count of conspiracy to commit commodities fraud, one count of conspiracy to commit securities fraud, one count of

---

[1] A Recorder is a judge of the Crown Court (which is part of the Supreme Court which hears jury trials and appeals from the Magistrates' Court and other tribunals) who sits on a part time basis, usually for a number of weeks a year. The next tier up from the Crown Court is the Court of Appeal.

[2] The rank of Queen's Counsel or now King's Counsel is awarded by The Queen or The King on advice from the Lord Chancellor who recommends only those he regards as leaders of the profession.

[3] Gray's Inn is one of the four Inns of Court. Each Inn is controlled by its Masters of the Bench, elected mainly from among its members who are also senior members of the judiciary or Queen's or King's Counsel. The Masters of the Bench are responsible for admission to the Inn, student discipline and have exclusive right to call men and women to the Bar of England and Wales.

[4] This is a lifetime appointment but only requires limited time.

money laundering conspiracy and one count of conspiracy to defraud the United States by violating the campaign finance laws. *See id.*

9. The Original Indictment generally repeats the statutory language on which the criminal charges are based. The factual allegations in the Original Indictment are relatively limited and relate only to the misappropriation of FTX customer deposits, the provision of false and misleading information to Alameda's lenders regarding Alameda's financial condition, the provision of false and misleading information to FTX's investors regarding FTX's financial condition and corporate contributions to candidates and committees that were reported in the name of another person. *See id.* ¶¶ 2-3, 5-6, 8-9, 11-12, 20.

### B. The Government's Provisional Arrest Request and Extradition

10. On the 12th December 2022, Mr. Bankman-Fried was arrested by officers of the Royal Bahamian Police Force pursuant to a provisional warrant of arrest issued on behalf of the United States District Court for the SDNY which had issued a domestic arrest warrant upon the return of the Original Indictment. *See* Ex. C (Bankman-Fried Affidavit) ¶ 1.

11. On the 13th December 2022, Mr. Bankman-Fried was taken to Magistrates' Court Number 9, Nassau Streets Courts where he appeared before Chief Magistrate Joyann Ferguson-Pratt. At Court he was informed by the Chief Magistrate that he was there in relation to extradition proceedings. He was remanded in custody. *Id.* ¶ 2.

12. On the 20th December 2022, Mr. Bankman-Fried swore an affidavit that was presented to the Bahamian Court that said, in material part:

    "That:

    (1) having considered the charges set out in the said Diplomatic Note and arrest warrant,

    (2) and having considered the Rule of Speciality set out in article 14 of the extradition treaty between the Government of the Commonwealth of The Bahamas and the Government of The United States of America,

    (3) and having a desire to make the relevant customers whole,

    (4) and having been informed by the said Chief Magistrate of my right to formal extradition proceedings under the Extradition Act (ch 96 The Statute Law of The Bahamas),

    (5) and being aware of my right to be extradited without formal extradition proceedings,

    I hereby consent, in writing, to be extradited without formal extradition proceedings - such extradition being to The United States of America."

    *Id.* ¶ 3.

13. On the 21st December 2022, the Magistrate committed Mr. Bankman-Fried to custody for extradition pursuant to the simplified extradition procedure set out in section 17 of the Extradition Act. *See* Ex. B (Extradition Act). A transcript of the Magistrate's hearing is attached as Ex. D (page numbers added for convenience). Following the hearing, the Bahamian Minister of Foreign Affairs, Frederick Mitchell, issued on the 21st December 2022 a warrant of surrender for Mr. Bankman-Fried, which attached a copy of the Treaty. *See* Ex. A (December 21, 2022 Warrant of Surrender).

14. My understanding is that, in considering the Government's request for Mr. Bankman-Fried's extradition, the Bahamian Government was presented with a diplomatic note requesting Mr. Bankman-Fried's provisional arrest and the domestic arrest warrant. *See* Ex. C at Ex. SBF1 (the "Diplomatic Note"); *id.* at Ex. SBF2. I have seen no documents indicating that the Bahamian Government received or reviewed a copy of the Original Indictment.

15. The Diplomatic Note states that Mr. Bankman-Fried has been indicted in the Southern District of New York on two counts of wire fraud, two counts of conspiracy to commit wire fraud, one count of conspiracy to commit commodities fraud, one count of conspiracy to commit securities fraud, one count of money laundering conspiracy and one count of conspiracy to defraud the United States. Ex. C at Ex. SBF1. The Diplomatic Note does not specify the violation on which the last count is based, though the domestic arrest warrant states that the offence charged is for "conspiracy to defraud the United States and violate the campaign finance laws." *Id.*; Ex. C at Ex. SBF2.

16. The Diplomatic Note also outlines certain alleged facts on which the Original Indictment was based, though it does not include any allegations regarding political donations or campaign finance-related activity. Moreover, neither the Original Indictment nor the Diplomatic Note reference any U.S. bank accounts, including any bank accounts affiliated with FTX or Alameda, any transfers of funds through the U.S., any U.S. regulatory licenses that any FTX entity was purportedly required to obtain, the freezing of Alameda's accounts on Chinese cryptocurrency changes or any payments Alameda allegedly made to unfreeze those accounts.

17. In contrast to the counts listed in the Diplomatic Note, the Warrant of Surrender lists only the first seven counts of the Original Indictment and omits Count 8 (now Count 12 of the S5 Indictment), conspiracy to defraud the United States by violating U.S. campaign finance laws. Thus, Count 8 (now Count 12) was not a basis for granting Mr. Bankman-Fried extradition to the United States.

  C. **The Superseding Indictments**

18. Following Mr. Bankman-Fried's extradition, the Government has obtained two superseding indictments against Mr. Bankman-Fried.

19. The S3 Superseding Indictment, which was unsealed on February 23, 2023, added, in relevant part, charges for bank fraud and operation of an unlicensed money transmitting business (Counts 9 and 10) and factual allegations regarding the use of U.S. bank accounts

to handle FTX customer deposits. See Superseding Indictment ¶¶ 13-20, 80-86, Feb. 23, 2023, ECF No. 80 (the "S3 Indictment").

20. The Court subsequently unsealed the S5 Superseding Indictment on March 28, 2023, adding a Foreign Corrupt Practices Act (the "FCPA") charge (Count 13) and factual allegations regarding payments Mr. Bankman-Fried allegedly authorized with the intent to induce Chinese government officials to unfreeze Alameda trading accounts on a Chinese cryptocurrency exchange. See S5 Indictment ¶¶ 28-31, 102-05.

21. As noted above, the allegations underlying Counts 9, 10 and 13 were not referenced in the Diplomatic Note or the Original Indictment. And the indictments postdating the Original Indictment retained the campaign finance charge (now Count 12 in the S5 Indictment), notwithstanding its omission in the Warrant of Surrender.

## IV.    THE BAHAMIAN EXTRADITION FRAMEWORK

22. In determining whether The Bahamas's rights under the Treaty have been violated, it is necessary to consider the Treaty, the Extradition Act, and any decided case law.

23. Extraditions from The Bahamas to the United States are made pursuant to the Extradition Act and the Treaty. In the United States, treaties are self-executing and thus become part of the "law of the land" upon ratification. *See* U.S. CONST. art. VI, cl. 2; *Valentine v. United States ex re Neidecker*, 299 U.S. 5, 10 (1936) (a treaty is "to be regarded in courts of justice as equivalent to an act of the legislature, whenever it operates of itself, without the aid of any legislative provision.") (citation and quotation marks omitted).

24. Unlike in the United States, the Treaty is not directly incorporated into Bahamian law. Rather, The Bahamas must pass an Act incorporating or enabling the provisions of the Treaty. The Bahamas did so with the Extradition Act, which went into effect on September 19, 1994, just three days before the Treaty entered into force. *See* Ex. B at 3; Ex. A at SDNY_03_01098060. Pursuant to section 3 of the Extradition Act, on the 20th September 1994, the Minister by Order applied the Treaty to the Act enabling extradition between The Bahamas and the United States of America to take place.[5]

25. Thus, given the relationship between the Treaty and the Extradition Act, non-compliance with the Extradition Act may constitute a specialty violation of the Treaty in The Bahamas's view. As further explained below, where, as here, there are violations of the dual criminality and specialty provisions of the Extradition Act, such breaches constitute violations of the Treaty.

---

[5] Lord Steyn said in *Rey v Switzerland* [1999] 1 AC 54, an appeal to the Privy Council from the Bahamian Court of Appeal: "Except in so far as the Act of 1994 incorporates by reference provisions of the Treaty into section 5(1)(b)(i) (list of offences) and section 10(4) (period for production of documents) of the Act of 1994, the Treaty is not part of the domestic law of The Bahamas. The Act of 1994 is the code governing extradition. A request for extradition must therefore be considered exclusively in accordance with the provisions of the Act." Ex. E at 63.

### A. The Treaty

26. Article 14 (Rule of Speciality) of the Treaty provides that a person extradited under the Treaty may only be tried on "the offense for which extradition was granted" or, as relevant here, on "offenses in respect of which the executive authority of the Requested State in accordance with its laws, has consented to the person's detention, trial, or punishment," as long as such consent is given in compliance with the extradition procedures set forth in Article 8 of the Treaty. *See* Ex. A at SDNY_03_01098074 to -8076.

27. Article 8 (Extradition Procedures and Required Documents) of the Treaty provides, in relevant part, that requests for extradition shall be supported by, *inter alia*, "a statement of the facts of the case," and "such evidence as would justify the committal for trial of the person if the offense had been committed in the Requested State or as would justify the committal for extradition of the person in accordance with the laws of the Requested State." *See id.* at SDNY_03_01098067 to -8069.

28. Article 15 (Simplified Extradition) of the Treaty provides "If the person sought agrees in writing to be surrendered to the Requesting State after being advised by a competent judicial authority of his right to formal extradition proceedings, the Requested State may surrender the person without formal proceedings." *See id.* at SDNY_03_01098076.

### B. The Extradition Act

29. Section 5(1)(b) of the Extradition Act defines extradition offences to include (i) "an offence which is provided for by the extradition treaty with that State; <u>and</u> (ii) the act or omission constituting the offence, or the equivalent act of omission, would constitute an offence against the law of The Bahamas if it took place within The Bahamas or, in the case of an extra- territorial offence, in corresponding circumstances outside The Bahamas." This concept is known as the "dual criminality" requirement in extradition law.

30. Section 7(4)(a) of the Extradition Act provides in relevant part:

> A person shall not be extradited to an approved State or be committed to or kept in custody for the purposes of such extradition, unless provision is made by the law of that State, or by an arrangement made with that State, for securing that he will not — . . . be tried or detained with a view to trial for or in respect of any offence committed before his extradition under this Act other than —
>
> (i) the offence in respect of which his extradition is requested; . . . . or
>
> (iii) any other offence being an extraditable offence in respect of which the Minister consents to his being so dealt with; . . .
>
> unless he had first been restored to The Bahamas, or had had an opportunity of leaving the approved State.

"Extraditable offence" is understood to mean the offences for which extradition is permitted under Section 5(1)(b) of the Extradition Act (*i.e.*, offences that satisfy the dual criminality requirement).

31. Section 17 of the Extradition Act provides for a simplified process of extradition whereby a fugitive can consent to extradition without formal extradition proceedings:

    (1) Where a fugitive [provisionally] arrested . . . indicates that he is willing to be extradited he shall be brought before a magistrate who shall inform him of his right to formal extradition proceedings under this Act.

    (2) If the fugitive, upon being informed of his right to extradition proceedings, consents in writing to be extradited without such proceedings, the magistrate shall commit him to custody to await his extradition under this Act.

    (3) Subject to subsection (4), where a fugitive is committed to custody to await his extradition pursuant to subsection (2), the Minister may, notwithstanding the provisions of section 11, order him to be extradited forthwith to the approved State by which the request for extradition was made.

    (4) In making an order under subsection (3) the Minister shall have regard to the provisions of section 7 and to the requirements of section 12(2), (3), (4) and (5) relating to the making of an order under that section.

**V.      SIMPLIFIED EXTRADITION**

32. The use of simplified extradition processes did not waive Mr. Bankman-Fried's rule of specialty rights under Article 14 of the Treaty and section 7(4)(a) of the Extradition Act.

33. Mr. Bankman-Fried was extradited to the United States pursuant to the simplified extradition process provided for under Article 15 of the Treaty and Section 17 of the Extradition Act. Pursuant to Section 17(1), he was informed of his right to formal extradition proceedings by a magistrate. *See* Ex. C ¶ 3. Mr. Bankman-Fried provided the written consent to extradition as required under Section 17(2) of the Extradition Act. *Id.* And, on 21st December 2022, a Bahamian magistrate judge committed Mr. Bankman-Fried to custody pursuant to Section 17(2) of the Extradition Act. Ex. D at 10:44-11:7. Following the Magistrate's order, the Minister issued a Warrant of Surrender pursuant to Section 17(3) of the Extradition Act. Ex. A.

34. The simplified procedure set out in section 17 of the Extradition Act requires the Minister to have regard to section 7(4)'s specialty provision, which precludes the Minister from ordering Mr. Bankman-Fried's extradition unless the rule of specialty was incorporated into the Treaty. Extradition Act §§ 7(4)(a)(iii), 17(4). There is no language in the Extradition Act or Treaty suggesting that a defendant waives his right to assert the rule of specialty by availing himself of the simplified extradition procedure.

35. Further, the affidavit of Mr. Bankman-Fried, as indicated at paragraph 12 above, expressly recognizes the rule of specialty and nowhere waives its protections.

8

36. The Bahamian magistrate judge also acknowledged during the 21st December 2022 extradition hearing that the rule of specialty continued to apply following simplified extradition procedures. *See* Ex. D at 9:34-10:11.

37. As discussed above, the Warrant of Surrender did not include the campaign finance conspiracy charge. In Bahamian law, as in English law, the presumption of regularity applies.[6] It follows it must be presumed the Minister acted lawfully and carefully in his decision to omit Count 8 from the offences on which Mr. Bankman-Fried was to be surrendered. Indeed, an obvious reason may be that no doubt the dual criminality requirement was not satisfied or the Minister lacked sufficient information to determine whether it was or could be satisfied. This omission indicates the Minister's apparent determination that he could not order Mr. Bankman-Fried's extradition based on Count 8 and intended for specialty and Article 14 of the Treaty to be honoured by the United States in prosecuting Mr. Bankman-Fried. It appears the Treaty was attached by the Minister to the Warrant of Surrender which further shows that the Minister intended to require adherence to all the Treaty provisions.

38. Finally, in connection with the S3 Indictment and the S5 Indictment, the Government sought to notify The Bahamas of the new charges in those indictments. *See* Letter from Nicolas Roos et al. to the Honorable Lewis A. Kaplan, February 22, 2023, ECF No. 84; Sealed Order at 1, Mar. 28, 2023, ECF No. 114. Had the Treaty's and Extradition Act's specialty provisions not been in full force and effect such notification would have been unnecessary, suggesting that the Government is aware of the Treaty's requirement that The Bahamas's consent be obtained for offenses charged after extradition.

39. It follows as a matter of jurisdiction and comity that Mr. Bankman-Fried is protected by the principle of specialty as set out in Article 14 of the Treaty.

## VI. RULE OF SPECIALTY

40. The doctrine of specialty is a principle of international law that is included in most extradition treaties, whereby a person who is extradited to a country to stand trial for certain criminal offenses may be tried only for those offenses and not for any other pre-extradition offenses. The specific terms of specialty is generally formulated in the applicable extradition treaty.

41. Most international law systems accept as a correct formulation of specialty that as described by the United States Supreme Court in *United States v. Rauscher*, 119 U.S. 407, 430, 7 S. Ct. 234 (1886), whereby the doctrine of specialty limits the court's jurisdiction over the defendant, allowing the court to enter judgment only on charges encompassed by

---

[6] The maxim is: "*omnia praesumuntur rite et solemniter esse acta*". In *R v Inland Revenue Commissioners, ex p T.C.Coombs & Co.* [1991] 2 AC 283, 299H (" where acts are of an official nature, or require the concurrence of official persons, a presumption arises in favour of their due execution") attached as Ex. F; *R v Inland Revenue Commissioners, ex p Rossminster* [1980] AC 952, 1013F-H (" Where Parliament has designated a public officer as decision-maker for a particular class of decisions the High Court … must proceed on the presumption *omnia praesumuntur rite esse acta* until that presumption can be displaced…"), attached as Ex. G.

9

the extradition treaty and included in the foreign government's extradition order or warrant of surrender.

### A. Analysis of Rule of Specialty Objections under the Treaty and Bahamian Law

42. In determining whether a charge added by the United States following extradition complies with the Treaty and the Extradition Act, Bahamian law requires consideration of two questions:

    a. Whether the new charge is grounded in the alleged facts disclosed in the extradition proceedings and in the offences for which the defendant was surrendered? (This could include charging a lesser offence so grounded).

    b. In any other case, whether the new charge is an offence to which The Bahamas has expressly consented in accordance with the procedure set out in Article 14(1)(b) of the Treaty (which requires determination of whether the conduct would be an extradition offence under Bahamian law (dual criminality))?

43. As noted above, the Treaty has been implemented in The Bahamas through the Extradition Act and thus judicial opinions interpreting the Extradition Act or analogous statutes (including the decisions of UK courts) are relevant to answering these questions.[7]

44. Further proceedings over Count 12 amount to a violation of the Treaty as conspiracy to defraud the United States and violate the campaign finance laws was omitted from the Warrant of Surrender. Thus, Mr. Bankman-Fried's extradition was not granted with regard to that count.

45. Separately, as explained below, Counts 9, 10 and 13 are different offences than those on which Mr. Bankman-Fried was extradited because they are premised on facts that were not included in the Original Indictment or the Diplomatic Note and thus could not have formed a basis for The Bahamas's Warrant of Surrender. Pursuant to Article 14(1)(b) of the Treaty and Section 7(4)(a)(iii) of the Extradition Act, the United States must obtain The Bahamas's express consent before detaining, trying or punishing Mr. Bankman-Fried on Counts 9, 10 and 13 to avoid violation of the Treaty. Indeed, the absence of The Bahamas's affirmative consent on Counts 9, 10 and 13 should be viewed as an objection on its behalf under Article 14 of the Treaty.

46. In order for The Bahamas to properly consider whether to consent to additional charges, the United States must provide to The Bahamas evidence showing that the conduct underlying Counts 9, 10 and 13 would constitute an offence if the conduct occurred in The Bahamas. As I understand it, the United States has not provided the requisite

---

[7] The Bahamas is a former colony of the United Kingdom and incorporated its laws on Independence (save where its own laws were inconsistent). It adopted the common law of the United Kingdom. Therefore, while the decisions of UK courts are not strictly binding on it, they are held to be persuasive authorities.

information to The Bahamas to make this determination. Instead, the United States has moved forward in prosecuting Mr. Bankman-Fried for Counts 9, 10 and 13 without The Bahamas's consent.

### 1. Whether the new charge is grounded in the alleged facts disclosed in the extradition proceedings and in the offences for which the defendant was surrendered?

47. Since the Extradition Act, and its provisions, are derived from the Imperial Extradition Acts 1870 and 1873 passed by the United Kingdom parliament, the interpretation of the specialty protection conferred by these Acts informs to some extent the construction of the Extradition Act's specialty provisions.

48. In practice, the court of trial typically examines the documents in the extradition proceedings to determine whether the crime charged satisfies the rule of specialty and considers whether the crime charged was "disclosed by the facts alleged in the extradition proceedings."[8] Thus, at the very least, any charge added after extradition must be based on the alleged facts on which extradition was based. However, courts may impose an even higher standard where, as here, the relevant treaty provision allows for prosecution only on offences for which the defendant was extradited or to which the requested state consented, not for prosecution based simply on the same facts alleged in the extradition proceeding.

49. Courts will always consider the Warrant of Surrender issued by the requested state as the definitive document identifying the offences on which the fugitive was returned to the requesting state.

50. Courts typically determine that the rule of specialty is satisfied if the charges added after extradition are for comparable crimes that are established by the facts in the original request and are extradition offences within the treaty. See M. Cherif Bassiouni in *International Extradition: United States Law and Practice* Chap. VII, § 6.4, attached as Ex. H; *Decorte v Société Anonyme Groupe* 69 ILR 216 (noting that requesting states may charge defendants with offences not in the extradition request if the facts remain the same and the new offence is within the treaty), attached as Ex. I.

---

[8] In *R -v- Aubrey-Fletcher, ex parte Ross Munro* [1968] 1 QB 620, Lord Parker CJ said:

One comes, therefore, to the important words which have to be construed, namely that he may only be tried in this country for "such of the said crimes as may be proved by the facts on which the surrender is grounded." Admittedly they are not easy words to construe; in the first place "proved" cannot mean "proved" as ordinarily understood. Proof will only arise if and when the defendant is committed, and the matter is dealt with by a jury. "Proved" cannot there mean proved in the ordinary sense of the word. In the second place "facts" are clearly not the same as "evidence." In my judgment the words, however, are capable of being read and should be read as meaning "such of the crimes as may be disclosed by the facts alleged in the extradition proceedings."

Ex. J at 628.

51. Under this standard, the Treaty and the Extradition Act allow Mr. Bankman-Fried to be prosecuted in the United States for Counts 9, 10 and 13 only if such offences are extraditable offences under Bahamian law that are comparable crimes established by the facts in the original request.

52. As the factual allegations underlying Counts 9, 10 and 13 were not included in the Diplomatic Note or the Original Indictment, they do not satisfy this standard and thus prosecuting Mr. Bankman-Fried for them breaches the rule of specialty until permitted under Article 14(1)(b) of the Treaty.

53. Moreover, the campaign finance conspiracy offence (now Count 12) was excluded from the Warrant of Surrender and thus prosecuting Mr. Bankman-Fried on that count violates the Treaty. Indeed, the exclusion of the offence from the Warrant of Surrender amounts to an affirmative objection by The Bahamas to detaining, trying or punishing Mr. Bankman-Fried for that offence.

### 2. Whether the new charge is an offence to which The Bahamas has expressly consented in accordance with the Treaty?

54. Pursuant to Article 14(1)(b) of the Treaty and Section 7(4)(a)(iii) of the Extradition Act, The Bahamas can consent to new charges for offenses other than the offenses on which extradition was granted. However, it is clear, in my opinion, that the consent of The Bahamas to new charges cannot be implied from The Bahamas's silence.

55. Article 14(1)(b) and Section 7(4)(a)(iii) expressly require The Bahamas's affirmative consent to the addition of new charges by the United States. Absent that consent, neither the Treaty nor the Extradition Act permit the United States to detain, try or punish Mr. Bankman-Fried on such charges. *See R v Shepherd* [2019] EWCA Crim 1062 (the UK Court of Appeal overturned a conviction for a bail offence because it found that Georgia had not consented to the additional offence), attached as Ex. K. Thus, Article 14 of the Treaty essentially functions as a standing objection to the new charges unless and until The Bahamas consents to the new charges after following the procedure required under the Treaty and the Extradition Act. Silence of The Bahamas, even if informed of the new charges, does not overcome this standing objection. Rather, affirmative consent is required to do so.

### a. The dual criminality requirement further demonstrates that consent cannot be implied from The Bahamas's silence.

56. Moreover, a prerequisite to obtaining The Bahamas's consent is that any new offence must be an <u>extradition offence under Bahamian law</u>, *i.e.*, the "dual criminality" requirement. *See* Extradition Act, § 7(4)(a)(iii); Treaty, art. 14(1)(b) (Bahamian executive must follow procedures set forth in Article 8 before consenting to new charges); *id.*, art. 8(3)(b) (request for consent to additional charges must be supported by, *inter alia*, "such evidence as would justify the committal for trial of the person if the offense had been committed in the Requested State or as would justify the committal for extradition of the person in accordance with the laws of the Requested States.").

57. Since the Treaty is not part of Bahamian Law, the question of what is an "extradition offence under Bahamian law" is determined by Section 5 of the Extradition Act. As discussed in paragraph 29 *supra*, an offence is extraditable under Section 5 if "(i) it is an offence which is provided for by the extradition treaty with that State; and (ii) the act or omission constituting the offence, or the equivalent act of omission, would constitute an offence against the law of The Bahamas if it took place within The Bahamas. . . ."

58. The Privy Council held in *Rey v Switzerland* [1999] 1 AC 54 (Ex. E), a case in which I appeared for the Swiss Government, that the requirement under section 5(1)(b)(ii) of the Extradition Act that "the act or omission constituting the offence . . . constitute an offence against the law of The Bahamas" is satisfied if the accused's conduct in Switzerland would amount to an offence in The Bahamas if committed there.

59. A defendant is liable to be extradited from The Bahamas to the United States of America if the conduct of which he is accused amounts to both of (1) an offence which is provided for by the Treaty and (2) the conduct constituting the American offence would constitute an offence against the law of The Bahamas if it took place within The Bahamas or, in the case of an extra-territorial offence, in corresponding circumstances outside The Bahamas.

60. The Minister is not able to give consent to any offence pursuant to Article 14(1)(b) of the Treaty which would not be an extraditable offence within the meaning of section 5 of the Extradition Act.

61. To enable the Minister to determine whether the new charges are extraditable offences, Articles 8 and 14(1)(b) of the Treaty require The Bahamas be provided by the United States evidence establishing that the conduct underlying the new charges would also be considered an offence in The Bahamas. *See* Treaty, arts. 8(3)(b), 14(1)(b). Thus, the Minister cannot consent to the new charges until there has been a dual criminality determination. My understanding is that the information required under Article 8 for Counts 9, 10 and 13 has not been provided to the Minister and thus he is unable to make the requisite dual criminality determination.

62. Typically, after considering any representations for the surrendered person, the Minister will make a determination whether or not to consent on behalf of The Bahamas to any new charges sought. Rights of challenge will then exist on public law grounds for the defendant or the requesting state to test the legality of the Minister's decision.

63. Since Section 7(4)(a)(iii) of the Extradition Act and Article 14(1)(b) of the Treaty require the Minister to determine that the new charges are extraditable offences, it is not possible in my opinion to assume consent by silence.

64. Take for example the FCPA charge, Count 13, added by the S5 Indictment. In *The Superintendent of Her Majesty's Foxhill Prison, The Government of the United States of America v Viktor Kozeny* [2012] UKPC 10 (Ex. L), a case in which I appeared for the defendant, on appeal from the Bahamian Court of Appeal to the Privy Council. The Court held that Count 1, a conspiracy to violate the FCPA did not amount to an extradition

offence under Bahamian law. Accordingly, if the Minister here were asked to consent to Count 13, unless distinguishable on its facts, he would not be able to do so under *Kozeny*.

65. This highlights the potential harm posed by construing The Bahamas's silence as consent to the new charges (not only to defendants extradited from The Bahamas to the United States, but in any extradition arrangement where a similar consent provision has been agreed to). Such an interpretation may encourage requesting states to seek extradition based on charges that they know the requested state considers to be extraditable offences and then, after the defendant is extradited, add charges for non-extraditable offences, knowing that the requested state is unlikely to devote the resources to lodging a formal objection to the additional charges.

## VII. CONCLUSIONS

66. For the reasons stated above, Mr. Bankman-Fried was extradited pursuant to the simplified extradition process under Article 15 of the Treaty and Section 17 of the Extradition Act. Such process did not disentitle or waive Article 14 of the Treaty.

67. Count 8 of the Original Indictment (now Count 12 of the S5 Indictment) was not included in the Minister's Warrant of Surrender, presumably because he determined that the campaign finance conspiracy charge did not satisfy the dual criminality requirement under the Treaty and the Extradition Act (or lacked the information to do so) and objected to extraditing Mr. Bankman-Fried on that basis. Thus, Mr. Bankman-Fried's extradition was not granted as to campaign finance conspiracy and detaining, trying or punishing him on Count 12 is in violation of the Treaty.

68. Counts 9, 10 and 13 are offences separate from those on which Mr. Bankman-Fried's extradition was granted, to which The Bahamas has asserted a standing objection as reflected in Section 7(4)(a)(iii) of the Extradition Act and Article 14(1)(b) of the Treaty. The Bahamas's consent cannot be inferred from its silence. To overcome this standing objection, the United States must obtain The Bahamas's *affirmative* consent to detain, try or punish Mr. Bankman-Fried for the new counts by following the procedures set forth in the Treaty and the Extradition Act.

69. Moreover, the Treaty and the Extradition Act require the Minister to determine whether the dual criminality requirement is satisfied before consenting on behalf of The Bahamas and my understanding is that the information necessary for the Minister to make such a determination has not been provided to him and thus he could not have made the requisite determination.

70. Because the procedures set forth in the Treaty and the Extradition Act have not been followed, prosecution of Mr. Bankman-Fried for Counts 9, 10, 12 and 13 violates the Treaty.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed May 8, 2023

London

Signature

The Honourable James Lewis KC