# Exhibit F

A
[HOUSE OF LORDS]

REGINA v. INLAND REVENUE COMMISSIONERS and Another,
*Ex parte* T. C. COOMBS & CO.

1990  Nov. 5, 6, 9;                    Lord Mackay of Clashfern L.C.,
1991  Feb. 14          Lord Oliver of Aylmerton, Lord Goff of Chieveley,
B                      Lord Jauncey of Tullichettle and Lord Lowry

*Judicial Review—Inland Revenue—Statutory notice—Inspector of taxes*
*issuing notice requiring production of documents—Presumption*
*that issue of notice justified—Evidence necessary to rebut*
*presumption—Onus of proof in judicial review applications—*
*Taxes Management Act 1970 (c. 9), s. 20(3)(7) (as substituted by*
C  *Finance Act 1976 (c. 40), s. 57, Sch. 6)*

The Inland Revenue issued a notice under section 20(3)[1] of
the Taxes Management Act 1970 requiring the applicants, a firm
of stockbrokers, to deliver or make available for inspection
documents in their possession relevant to the tax liability of the
taxpayer, a former employee, in connection with various named
companies. The applicants disclosed information relating to four
D  companies with which the taxpayer had been associated, but
claimed that he had not been associated with seven of the
companies and refused to disclose any documents relating to
them. They later purported, however, to disclose all information
relating to one of those companies, H. The revenue then issued
a second, revised notice under section 20(3) limited to the
taxpayer and the seven companies with which it had been
claimed the taxpayer had no association. The applicants sought
E  judicial review of the second notice, asking for a declaration
that it had been complied with so far as it had related to H. and
the taxpayer and for an order quashing it in relation to the six
other companies. Before the judge the revenue deposed that
the information which had led them to believe that the
documents sought under the notice relating to the companies
contained or might contain information relevant to the tax
F  liability of the taxpayer could not be disclosed to the court on
grounds of confidentiality, but that all such evidence had been
laid before the commissioner before consent had been given by
him under section 20(7) of the Act to serve the notice. The
judge refused to grant the orders sought. On the applicants'
appeal the Court of Appeal declared that the applicants had
complied with the notice in relation to H. and the taxpayer and,
by a majority, quashed the notice in relation to the six
G  companies, on the ground that the applicants' evidence had
established a prima facie case, which the revenue by refusing to
give evidence had failed to rebut, that the inspector giving the
notice could not reasonably have held the opinions stated therein.
On appeal by the revenue:—
*Held,* allowing the appeal, that when seeking a commissioner's
consent under section 20(7) the revenue were absolutely bound
H  to make full disclosure to the commissioner of all the facts
within their knowledge which could properly influence the
commissioner against giving his consent to a section 20(3)

[1] Taxes Management Act 1970, s. 20(3)(7): see post, p. 292c–d, f.

A

notice, and failure to do so would almost inevitably vitiate the consent and nullify the notice given pursuant thereto; that since a commissioner acting under section 20(7) was an independent officer designated by Parliament to supervise the issue of notices under section 20(3) of the Act there was a presumption that his consent had been given on the basis that he had been satisfied that the inspector seeking the notice reasonably held the opinion that the documents sought under the notice contained or might contain information relevant to the tax liability under inquiry; that although such a presumption could be displaced by evidence that at the time of the notice the inspector could not reasonably have held such opinion, a failure by the revenue to give evidence in rebuttal that could be credibly explained by a general duty of confidentiality did not show that the inspector's opinion had been unreasonable; that the applicants had not shown that it was unreasonable for the inspector to hold the opinion that the documents sought might contain information relevant to a tax liability of the taxpayer or that there were documents relating to H. which the applicants had not disclosed; and that, accordingly, they were not entitled to the orders sought (post, pp. 288B, F–G, 289C–D, F, 300C–E, H–301C, D–F, 302H–303A, 305E–F).

B

C

Dicta of Lord Diplock in *Reg. v. Inland Revenue Commissioners, Ex parte Rossminster Ltd.* [1980] A.C. 952, 1013, H.L.(E.) applied.

D

Decision of the Court of Appeal [1989] S.T.C. 520 reversed.

The following cases are referred to in the opinion of Lord Lowry:

*Derby (Earl of) v. Bury Improvement Commissioners* (1869) L.R. 4 Exch. 222

*Reg. v. Inland Revenue Commissioners, Ex parte Rossminster Ltd.* [1980] A.C. 952; [1980] 2 W.L.R. 1; [1980] 1 All E.R. 80, H.L.(E.)

E

*Rex (Martin) v. Mahony* [1910] 2 I.R. 695

*Rex v. Nat Bell Liquors Ltd.* [1922] 2 A.C. 128, P.C.

*Rex v. Northumberland Compensation Appeal Tribunal, Ex parte Shaw* [1952] 1 K.B. 338; [1952] 1 All E.R. 122, C.A.

The following additional cases were cited in argument:

F

*Abrath v. North Eastern Railway Co.* (1883) 11 Q.B.D. 440, C.A.

*Associated Provincial Picture Houses Ltd. v. Wednesbury Corporation* [1948] 1 K.B. 223; [1947] 2 All E.R. 680, C.A.

*Brady v. Group Lotus Car Cos. Plc.* [1987] 3 All E.R. 1050; 60 T.C. 359, C.A.

*Brink's Mat Ltd. v. Elcombe* [1988] 1 W.L.R. 1350; [1988] 3 All E.R. 188, C.A.

G

*Crompton (Alfred) Amusement Machines Ltd. v. Customs and Excise Commissioners (No. 2)* [1974] A.C. 405; [1973] 3 W.L.R. 268; [1973] 2 All E.R. 1169, H.L.(E.)

*Dixon and Gaunt Ltd. v. Inland Revenue Commissioners* [1947] 1 All E.R. 723; 29 T.C. 289

*Monarch Assurance Co. Ltd. v. Income Tax Special Commissioners* (1986) 59 T.C. 594

H

*Norwest Holst Ltd v. Secretary of State for Trade* [1978] Ch. 201; [1978] 3 W.L.R. 73; [1978] 3 All E.R. 280, Foster J. and C.A.

*Padfield v. Minister of Agriculture, Fisheries and Food* [1968] A.C. 997; [1968] 2 W.L.R. 924; [1968] 1 All E.R. 694, C.A. and H.L.(E.)

A    Reg. v. Epsom Justices, Ex parte Bell [1989] S.T.C. 169
     Reg. v. Inland Revenue Commissioners, Ex parte National Federation of
          Self-Employed and Small Businesses Ltd. [1982] A.C. 617; [1981] 2
          W.L.R. 722; [1981] 2 All E.R. 93; 55 T.C. 133, H.L.(E.)
     Reg. v. Inland Revenue Commissioners, Ex parte Preston [1985] A.C. 835;
          [1985] 2 W.L.R. 836; [1985] 2 All E.R. 327; 59 T.C. 1, H.L.(E.)
     Reg. v. Secretary of State for Trade and Industry, Ex parte Lonrho Plc.
          (unreported), 23 January 1989; Court of Appeal (Civil Division)
B         Transcript No. 42 of 1989, C.A.; [1989] 1 W.L.R. 525; [1989] 2 All
          E.R. 609, H.L.(E.)
     Wilover Nominees Ltd. v. Inland Revenue Commissioners [1974] 1 W.L.R.
          1342; [1974] 3 All E.R. 496; 49 T.C. 559, C.A.


     APPEAL from the Court of Appeal.
C         This was an appeal by the Commissioners of Inland Revenue and Ian
     Hopkins, an inspector of taxes, from the order of Court of Appeal
     (Parker and Taylor L.JJ., Bingham L.J. dissenting) [1989] S.T.C. 520
     allowing an appeal by the applicants, T. C. Coombs & Co., a firm of
     stockbrokers, from the order of Schiemann J. [1989] S.T.C. 104 refusing
     their application by way of judicial review for orders (1) quashing a
     notice directed to them issued by the revenue under section 20(3) of the
D    Taxes Management Act 1970, in so far as it related to Rosary Holdings
     Ltd., Logica (Overseas) S.A., Danville Management & Properties S.A.,
     Van Nuys Investors S.A., Topanga S.A. and Eversholt Finance Securities
     S.A.; (2) declaring that the notice had been complied with by them in
     so far as it related to Hereford Securities & Management S.A. and
     Mr. T. P. Ramsden; and (3) prohibiting the revenue from commencing
E    penalty proceedings against them under sections 98 to 100 of the Act in
     respect of alleged non-compliance with the notice.
          The facts are set out in the opinion of Lord Lowry.


          Philip Vallance Q.C. and Launcelot Henderson for the revenue. The
     revenue owe a duty of confidence to those who supply information to
     help them in tracing and charging undeclared sources of taxable income:
F    see per Bingham L.J. [1989] S.T.C. 520, 531. Public interest immunity
     attaches to documents recording confidential information for the
     Commissioners of Customs and Excise: Alfred Crompton Amusement
     Machines Ltd. v. Customs and Excise Commissioners (No. 2) [1974]
     A.C. 405. It is in the public interest that the channels of communication
     between the revenue and those who disclose information to them should
G    be kept open. Moreover, it is the revenue's long standing practice to
     reveal as little information as possible to a third party concerning a
     taxpayer's affairs: see Reg. v. Inland Revenue Commissioners, Ex parte
     National Federation of Self-Employed and Small Businesses Ltd. [1982]
     A.C. 617, 654E, 662F, and Reg. v. Inland Revenue Commissioners, Ex
     parte Preston [1985] A.C. 835, 864F. The inspector was under no
     obligation to disclose his reasoning at the time the notice was given. To
H    do so would be undesirable and might impede his own inquiry and also
     impact unfairly upon the taxpayer: see Wilover Nominees Ltd. v. Inland
     Revenue Commissioners [1974] 1 W.L.R. 1342, 1348 and Norwest Holst
     Ltd. v. Secretary of State for Trade [1978] Ch. 201, 230. The appeal falls

within the principle of *Reg. v. Inland Revenue Commissioners, Ex parte*     A
*Rossminster Ltd.* [1980] A.C. 952, 1013.

To discharge the legal burden of proof and show that they were
entitled to certiorari, it was necessary for the applicants to adduce
evidence of facts that could not be reconciled with the inspector's
opinion being reasonable. Contrary to the view of the Court of Appeal,
it was not enough to show a prima facie case. [Reference was made to
*Abrath v. North Eastern Railway Co.* (1883) 11 Q.B.D. 440; *Brady v.*     B
*Group Lotus Car Cos. Plc.* [1987] 3 All E.R. 1050; *Associated Provincial*
*Picture Houses Ltd. v. Wednesbury Corporation* [1948] 1 K.B. 223, 228;
*Dixon and Gaunt Ltd. v. Inland Revenue Commissioners* [1947] 1 All
E.R. 723 and *Reg. v. Epsom Justices, Ex parte Bell* [1989] S.T.C. 169.]

As to the revenue's reticence during the judicial review proceedings,
that cannot warrant the drawing of an adverse inference against the     C
revenue or otherwise buttress the applicants' case: see *Reg. v. Secretary*
*of State for Trade and Industry, Ex parte Lonrho Plc.* (unreported), 23
January 1989; Court of Appeal (Civil Division) Transcript No. 42 of
1989; [1989] 1 W.L.R. 525. In assessing the significance of reticence, the
court should consider all the circumstances of the case, including the
validity or otherwise of all the reasons for reticence, the weight of the evi-
dence adduced by the applicant, and the nature of the decision being     D
impugned: see *Padfield v. Minister of Agriculture, Fisheries and Food*
[1968] A.C. 997. Commonsense and fairness suggest that an applicant's
task, in a case where the decision maker would be expected to disclose
his reasoning but does not, is different from that where the decision
maker is justifiably inhibited. There was ample justification for the
inspector's reticence.                                                 E

*David Goldberg Q.C.* and *Edward Bailey* for the applicants. The
power to issue a notice pursuant to section 20(3) of the Act of 1970 may
be validly exercised only if the issuing inspector has a reasonable
opinion that the documents in question contain or may contain
information relevant to the liability of a taxpayer. Section 20(3) is an
immensely intrusive power that requires strict control: the *Rossminster*
case [1980] A.C. 952, 997–998. The consent of the commissioner to the     F
issue of the notice does not preclude an application for judicial review
of the inspector's opinion: *Monarch Assurance Co. Ltd. v. Income Tax*
*Special Commissioners* (1986) 59 T.C. 594. Since the applicant has had
no knowledge of the ex parte proceedings before the commissioner, he
cannot sensibly seek judicial review of the commissioner's decision to
give the consent. If the revenue's arguments on the burden of proof and     G
reticence were valid, no evidence would ever be able to satisfy a court
that the revenue have acted unreasonably.

The commissioner can only give consent on being satisfied that "in
all the circumstances" the inspector is justified in proceeding under
section 20(3): section 20(7). When applying ex parte for consent to the
issue of a notice, the inspector has duties similar to those of a party
applying ex parte for interim relief in civil proceedings: see *Brink's Mat*     H
*Ltd. v. Elcombe* [1988] 1 W.L.R. 1350, 1356–1357. It would appear
from the evidence filed by the revenue that when obtaining the
commissioner's consent to the second notice, the revenue did not make

A    a full and fair disclosure of all the material facts by appraising the
commissioner of the applicants' case. The failure to give the commissioner
a balanced view vitiated his consent and invalidated the notice.

On an application for judicial review the onus is on the applicant to
show either that the inspector did not hold the opinion he claims to
have held (which does not arise here) or that that opinion was not
reasonable. The applicant must prove on a balance of probabilities that
B    the inspector did not have a reasonable opinion: not whether he could
not have held a reasonable opinion. That would be the same as asking
whether the applicant has established that it was impossible for the
inspector to hold a reasonable opinion. The former is also the right
question because (1) neither as a matter of law nor as a matter of fact
or policy are the revenue prevented from giving reasons; (2) the
C    wording, nature and impact of the exercise of the power to issue a
notice clearly require that a reviewing court must be able to police
effectively any exercise of the power; and (3) the second question
effectively excludes the ability of the reviewing court to police the
power: it makes the administrator's silence an effective answer to the
application for review.

D    In determining whether or not an applicant has discharged the onus
on him the correct approach is for the court to consider (1) whether the
applicant has, by evidence, raised a prima facie case that the inspector,
on the balance of probabilities, did not have a reasonable opinion, and
(2) if so, to treat the onus as having passed to the revenue and to
consider whether the revenue have, by evidence, supported the exercise
of the power to issue the notice or shown that in all the circumstances of
E    the case the public interest permits them to be silent. The burden which
is imposed on the revenue is no greater, and, indeed, is less, than that
which would be imposed on them in penalty proceedings against the
applicants taken under section 98(1) of the Act of 1970. [Reference was
made to *Monarch Assurance Co. Ltd.* v. *Income Tax Special
Commissioners*, 59 T.C. 594 and *Abrath* v. *North Eastern Railway Co.*,
F    11 Q.B.D. 440, 456.]

In the face of the prima facie case made out by the applicants, it is
no answer to their claim that the revenue are bound by duties of
confidentiality. As is apparent from Schedule 1 to the Act of 1970 these
duties are very loose and it is, in any event, easy to imagine disclosure
which would support the exercise of the inspector's power without
G    (a) infringing the taxpayer's right to confidentiality about his affairs
which is, in any event, infringed by service of the notice, or (b) disclosing
the identity of the confidential source. At the very least the revenue
should give some reason why they believe records relating to the second
notice companies may be relevant to the taxpayer's affairs. Liability to
tax does not exist in gross: it is unusual for one person to have liability
to pay tax on another's profits. The revenue could, without the least
H    detriment to them or without breach of confidentiality owed to the
taxpayer, indicate the grounds on which they believe the taxpayer may
be liable for tax on profits which prima facie belong to others, and
should do so. It is not enough for the revenue merely to seek to justify

Reg. v. I.R.C., Ex p. Coombs & Co. (H.L.(E.))    [1991]

their silence by reliance on the maxim omnia praesumuntur rite et    A
solenniter esse acta donec probetur in contrarium.

*Vallance Q.C.* replied.

Their Lordships took time for consideration.

14 February 1991.    LORD MACKAY OF CLASHFERN L.C.    My Lords, I    B
have had the advantage of reading in draft the speech prepared by my
noble and learned friend, Lord Lowry. For the reasons he has given, I
would allow the appeal and award to the Inland Revenue the costs of
the second judicial review proceedings, both here and below, but allow
the costs of the first judicial review proceedings to the applicants.

On two matters dealt with by my noble and learned friend, I wish to
add my own comment. First, Mr. Vallance, for the revenue, submitted    C
that the recipient of a notice had the same task whether he was seeking
judicial review or challenging, on the same grounds, the validity of the
notice by way of defence to penalty proceedings. This question was not
argued before your Lordships and, therefore, like my noble and learned
friend, I would be most reluctant to come to a definite conclusion upon
it.    D

A second issue to which I wish to turn is of great general importance.
My noble and learned friend, Lord Lowry, has quoted the terms of
section 20(7) of the Taxes Management Act 1970 in which it is provided
that consent of a general or special commissioner is required to the
giving of a notice by an inspector under section 20 and that the
commissioner is to give his consent only on being satisfied that in all
the circumstances, and I emphasise "all the circumstances," the inspector    E
is justified in proceeding under this section. Section 20B(1), which my
noble and learned friend has also quoted, requires that the person who
is to receive the notice must, before the notice is given, have been given
a reasonable opportunity to deliver or make available, the documents in
question and the inspector must not apply to the commissioner for
consent until the person had been given that opportunity. It follows
that one of the circumstances into which the commissioner must inquire,    F
when an application is made to him, is whether such a reasonable
opportunity has been given and any correspondence that passes in that
connection between the inspector and the person to whom he wishes to
give notice should be placed before the commissioner. The obligation
on the commissioner to consider all the circumstances implies a duty on
the officer of the Inland Revenue who appears before the commissioner    G
to lay before the commissioner all the information he has about the
relevant circumstances including any which might be unfavourable to the
giving of the notice.

Where an application for judicial review is made in circumstances
such as the present, I would regard it as appropriate for the revenue
affidavit to include a statement of the way in which the sitting before the
commissioner was conducted, with as much detail of the subject matter    H
placed before him as is possible. For example, I cannot see any reason
why it should not be stated that all correspondence passing between the
revenue and the person to whom the notice is proposed to be given

A   relating to the notice was placed before the commissioner if that had taken place.

In enacting these provisions Parliament obviously placed great weight on the position of the independent commissioner and the need for the commissioner's consent. It is important that this be given full effect. I do not wish to suggest in any way that the revenue practice hitherto has not been consistent with this view but the affidavit in the present case

B   relating to the proceedings before the commissioner could have dealt more explicitly than it did with some of the matters that have been in issue. It would be a great benefit to the court in any similar proceedings for judicial review in the future to have a full affidavit on this aspect of the matter.

C   Lord Oliver of Aylmerton. My Lords, I have had the advantage of reading in draft the speech prepared by my noble and learned friend, Lord Lowry. I agree with it and would allow the appeal for the reasons which he has given.

Lord Goff of Chieveley. My Lords, for the reasons given in the speech to be delivered by my noble and learned friend, Lord Lowry, I

D   would allow the appeal.

Lord Jauncey of Tullichettle. My Lords, I have had the advantage of reading in draft the speech of my noble and learned friend, Lord Lowry. I agree with it and for the reasons which he gives therein I would allow the appeal. I wish only to add a few words of my own on

E   two matters.

Section 20B of the Taxes Management Act 1970, as amended, provides that before a notice is served on a person under subsections (1) or (3) of this section the person must be given a reasonable opportunity to deliver or make available the documents in question. It follows that when an inspector seeks to obtain the consent of a commissioner under subsection (7) the attitude of the person to the Inland Revenue's request

F   for documents is likely to be known to the inspector. It is, in my view, essential that at this stage the inspector places before the commissioner all the material which is relevant to the application for consent including any observations made or documents delivered by that person. Only when all such material is before the commissioner can he properly exercise his statutory function.

G   The revenue have a heavy responsibility when seeking to exercise their powers under section 20 of the Act of 1970 and they must only hide behind a cloak of confidence when this is absolutely necessary and not as a matter of course. If a person to whom a request for documents has been made asks reasonable questions or raises reasonable objections the revenue should deal with these matters unless there are compelling reasons for adopting a wall of silence. In the case of Hereford Securities

H   & Management S.A. the applicants maintained that they had handed over all the documents which they possessed. By letter of 27 January 1988 to the applicants' solicitors the revenue stated that they did not accept they had received all documents relating to Hereford. When the

solicitors asked the revenue what documents they thought had not been    A
delivered the revenue on 16 February 1988 gave the following singularly
unhelpful reply:

> "With regard to the second notice, it is for your clients to decide to
> what extent they have complied with their obligations in regard to
> Hereford Securities & Management S.A. (all accounts) and
> T. P. Ramsden and with respect the revenue are entitled to receive    B
> their response under a notice the scope of which, is not so far as I
> am aware challenged on grounds of construction."

Counsel for the revenue agreed that in the event of the revenue
initiating penalty proceedings in relation to the Hereford documents it
would be necessary to establish that there were such documents in the
possession of the applicants which had not been produced. In these    C
circumstances it is very difficult to justify the unhelpful attitude adopted
by the revenue in their letter of 16 February 1988. Indeed I understood
their counsel to accept that his clients were unreasonable to answer in
this manner. While my observations on this matter do not affect the
result of this appeal it is important that the revenue should bear these
observations in mind when exercising their section 20 powers on other
occasions.                                    D

LORD LOWRY.    My Lords, this appeal arises out of the service by an
inspector of taxes on behalf of the Commissioners of Inland Revenue
upon a firm of stockbrokers, T. C. Coombs & Co. ("the applicants") of
two notices under section 20 of the Taxes Management Act 1970
respectively dated 1 April 1987 ("the first notice") and 6 January 1988    E
("the second notice") and requiring the applicants to deliver or to make
available for inspection such documents as were in their possession or
power and as "in the inspector's reasonable opinion," contained or
might contain information relevant to the tax liability of a businessman
("the taxpayer") who was employed by the applicants on a commission
basis as a trader from 12 November 1979 until June 1984 on the terms    F
that he would trade for certain specified clients only and would be paid
20 per cent. of the net income generated by him through those clients.
    The first notice required the applicants to deliver or make available:

> "All client account files operated by [the taxpayer] to include all
> books of account and accounting records and all other documents
> or records whatsoever relating to any business operated covering
> the period 6 April 1980 to 5 April 1986 inclusive or which may    G
> contain entries within the period 6 April 1980 to 5 April 1986
> inclusive and in particular for the period specified all client account
> statements in account with [12 named companies] and in addition
> all correspondence files, all commission statements, all contract
> notes, notification forms to the Mutual Reference Society."

Of the 12 companies, four, Gantillion (Hong Kong) Ltd., Hereford    H
Securities Account 99, Privatbank & Trust Co. Zurich A.G. and D. F.
Gaggiari & Co., were clients of the taxpayer and of the applicants and
shortly before he left the applicants the taxpayer became a principal in

A  respect of Hereford Securities Account 99. Another company, Inshala Foundation, was not a client of the applicants and, they stated, was unknown to them. A sixth company, Hereford Securities & Management S.A., acted on behalf of undisclosed principals. The remaining six companies were clients of the applicants but, according to the applicants, had no connection with the taxpayer.

B  In response to the first notice the applicants supplied what are taken to be all the documents in their possession or power relating to the four companies which were clients of the taxpayer. They also supplied documents relating to Hereford Securities & Management S.A. ("Hereford"), but the revenue have not conceded that these represented all the Hereford related documents in the applicants' possession or power. The revenue did not further pursue their inquiries in regard to

C  Inshala Foundation and so the second notice required production of:

"All client account statements, books of accounts, accounting records, correspondence, commission statements, contract notes, notification forms to the Mutual Reference Society and all other documents or records whatsoever relating to all business transactions in the period 6 April 1980 to 5 April 1986 inclusive"

D  concerning the six remaining companies ("the six companies"), Hereford and the taxpayer. The first notice was signed by an authorised inspector, Mr. Price, who was a "group leader," and was given with the consent of a General Commissioner for the Division of Kensington. The second notice was signed by a different authorised inspector, Mr. Hopkins (who had succeeded Mr. Price) and was given with the consent of another

E  General Commissioner for Kensington. The "named officer" for the purpose of section 20(3) was in each notice Mr. Allcock.

The applicants were originally given leave on 6 November 1987 to apply by judicial review for (1) a declaration that they had complied with the first notice and (2) an order prohibiting the revenue from commencing penalty proceedings for alleged non-compliance. That notice, however, was then withdrawn and the second notice was served,

F  and, accordingly, after service of the second notice, the applicants sought, and on 8 March 1988 obtained, leave to apply by judicial review for (1) an order quashing the second notice in so far as it required the applicants to deliver documents relating to the affairs of the six companies, (2) a declaration that the applicants had complied with the second notice in so far as it required them to deliver documents relating

G  to the affairs of Hereford and the taxpayer and (3) an order prohibiting the revenue from commencing penalty proceedings for alleged non-compliance with the second notice.

The judicial review proceedings in the High Court were heard by Schiemann J. [1989] S.T.C. 104, who dismissed the application with costs. The Court of Appeal (Parker and Taylor L.JJ., Bingham L.J. dissenting) [1989] S.T.C. 520 allowing by a majority the applicants'

H  appeal with costs, set aside the order of Schiemann J., quashed the second notice "in so far as it relates to the six companies" and declared that, in relation to Hereford and the taxpayer, the applicants had complied with that notice. Bingham L.J. would have dismissed the

A

appeal in so far as it related to the six companies (and, by necessary
implication, also to the taxpayer), but agreed with the majority on
Hereford. Schiemann J. had refused to give the applicants their costs of
obtaining leave to seek judicial review of the first notice, but the Court
of Appeal unanimously reversed him on that point. By a subsequent
order the Court of Appeal refused the revenue leave to appeal to this
House, but leave to appeal was granted by your Lordships. There are,
accordingly, three issues for decision: (1) the validity of the second
notice in relation to the six companies; (2) the correctness of the Court
of Appeal's declaration in regard to Hereford; and (3) the question
concerning the costs of challenging the first notice.

B

Section 20 of the Act of 1970 (as substituted by section 57 of and
Schedule 6 to the Finance Act 1976), so far as directly material,
provides:

C

"(3)  Subject to this section, an inspector may, for the purpose of
enquiring into the tax liability of any person ('the taxpayer'), by
notice in writing require any of the persons who in relation to the
taxpayer are subject to this subsection to deliver to the inspector or,
if the person to whom the notice is given so elects, to make
available for inspection by a named officer of the Board, such
documents as are in his possession or power and as (in the
inspector's reasonable opinion) contain, or may contain, information
relevant to any tax liability to which the taxpayer is or may be, or
may have been, subject, or to the amount of any such liability.
(4) The persons so subject are—(a) the taxpayer's spouse, and any
son or daughter of his; (b) in so far as the inspector's inquiries
relate to liability of the taxpayer in respect of income, profits or
gains that were, or may have been, derived from—(i) any business
(past or present) carried on by the taxpayer or his spouse, or
(ii) any business (past or present) with whose management either of
them was concerned at a material time, any person who is carrying
on a business, or was doing so at a material time, and any company
whether carrying on a business or not. . . . (7) Notices under this
section are not to be given by an inspector unless he is authorised
by the Board for its purposes; and—(a) a notice is not to be given
by him except with the consent of a general or special commissioner;
and (b) the commissioner is to give his consent only on being
satisfied that in all the circumstances the inspector is justified in
proceeding under this section. (8) The references in subsections (1),
(2) and (3) above to documents are to those specified or described
in the notice in question; and—(a) The notice shall require them to
be delivered or (as the case may be) made available within such
time as may be there specified; and (b) the person to whom they
are delivered or made available may take copies of, or extracts
from them; and a notice under subsection (3) shall name the
taxpayer with whose liability the inspector (or, as the case may be,
the Board) is concerned. (9) To the extent specified in section 20B
below, the above provisions are subject to the restrictions of that
section."

D

E

F

G

H

A    Certain provisions of section 20B may also be noted:

"(1) Before a notice is given to a person by an inspector under section 20(1) or (3), or under section 20A, the person must have been given a reasonable opportunity to deliver (or, in the case of section 20(3), to deliver or make available) the documents in question; and the inspector must not apply for consent under
B    section 20(7) or, as the case may be, section 20A(3), until the person has been given that opportunity. . . . (3) An inspector cannot under section 20(1) or (3) . . . give notice to a barrister, advocate or solicitor, but the notice must in any such case be given (if at all) by the Board; . . ."

Subsection (4) permits the delivery of facsimile copies of documents
C    instead of the originals, provided the originals are made available for inspection. Subsection (5) limits the obligation to deliver or make available any document or documents the whole of which originates not more than six years before the date of the notice. Subsection (6) provides:

"But subsection (5) does not apply where the notice is so expressed as to exclude the restrictions of that subsection; and it can only be
D    so expressed where—(a) the notice being given by an inspector with consent under section 20(7), the commissioner giving consent has also given approval to the exclusion; (b) the notice being given by the Board, they have applied to a general or special commissioner for, and obtained, that approval. For this purpose the commissioner gives approval only if satisfied, on the inspector's or the Board's
E    application, that there is reasonable ground for believing that tax has, or may have been, lost to the Crown owing to the fraud of the taxpayer."

Because they specified the period 6 April 1980 to 5 April 1986, both the first notice dated 1 April 1987 and the second notice dated 6 January 1988 were "so expressed *as to exclude* the restrictions of [section
F    20B(5)]" (emphasis added). Therefore, no point having been taken, it can be assumed that the commissioner gave his approval to the notices in that form in accordance with section 20B(6)(a) cited above. It may be noted that for the purpose of subsection (6) the commissioner gives approval:

"only if satisfied, on the inspector's or the Board's application, that there is reasonable ground for believing that tax has, or may have
G    been, lost to the Crown owing to the fraud of the taxpayer."

It is fair to say that this point was not canvassed before your Lordships and I do not propose to attribute significance to it in favour of either party.
      Subsection (8) requires the client's consent before a barrister, advocate or solicitor is obliged to deliver or make available a privileged
H    document. Penalty proceedings for non-compliance with a notice under section 20 are dealt with in sections 98 to 100 of the Act of 1970.
      Schiemann J. [1989] S.T.C. 104, 106, dismissing the entire application, pointed out that the main challenge to the second notice was based on a

submission that there was no material available to the inspector on     A
which he could form the reasonable opinion that the documents which
the applicants admittedly had in their possession in relation to the six
companies contained or might contain information relevant to any tax
liability to which the taxpayer was or might be, or might have been,
subject or to the amount of any such liability. Counsel for the
applicants had accepted that the inspector was not obliged to state in the
notice the factual basis for his opinion. Counsel for the revenue had,     B
for his part, accepted that the inspector, before serving the notice, must
be in possession of facts from which he could and did form the relevant
opinion. The judge pointed out that a prerequisite of service of a notice
is the consent of an independent commissioner, who needs to be
satisfied that the inspector is justified in proceeding under section 20,
which involves the commissioner being satisfied on the material placed     C
before him that the inspector's opinion is reasonable. He further
observed that the applicants' counsel accepted that the applicants had to
put before the court some evidence from which the court could conclude
that there was no material from which the inspector could form the
"reasonable opinion" which was needed to justify service of the notice.
Counsel for the revenue, while conceding in principle that judicial
review would lie, contended that the evidential requirements for quashing     D
the notice were not satisfied. The judge continued, at p. 107:

> "In my judgment the proper approach for the court to such a case
> as this is to consider whether the applicant has satisfied the court
> that on the material before the administrator, at the time when he
> took the decision (whether or not that material is before the court)
> the administrator could not reasonably have come to the conclusion     E
> to which he asserts he came. If the administrator puts before the
> court all the material which was before him, then no difficulty
> arises. If he puts before the court none or only some of the
> material before him, then the court must draw inferences as best it
> can from whatever material on either side it has before it. The
> court will, however, bear in mind that it is for the applicant to     F
> persuade the court that the administrator acted illegally."

First pointing out the possible effect of non-disclosure by an
administrator whose action is challenged and adverting to the reasons
for confidentiality which could militate against disclosure, the judge
reviewed, at pp. 108–109, the evidence adduced on each side. He then
posed the question, "Have the applicants satisfied the court that on the     G
material before the administrator the administrator could not reasonably
have come to the conclusion to which he asserts he did come?" and
answered that question in the negative.

The following passage contains the judge's reasoning, at p. 110:

> "Counsel for the applicants submitted that the Crown, by failing to
> set forth its evidential material, was in effect, though not in form,
> asserting that his clients had no right to have the reasonableness of     H
> the Crown's decision tested by judicial review. On the facts of this
> case, and on the ground of challenge I have so far examined in this
> judgment, that seems to me a justified submission. But the question

A   I have to ask myself is whether the legislature intended the courts
to have a wider power of review than I have recognised in this
judgment. Counsel for the applicants submitted that the word
'reasonable' in section 20(3) points to that conclusion. There is
force in his point. However, it seems to me that the statutory
requirement of the approval of the commissioners in private before
the notice is issued and the general undesirability of the revenue
B   revealing a taxpayer's affairs to third parties—who may, as the
taxpayer asserts in the present case, be totally unconnected with
him, or may only be distantly connected, or may be trade
competitors—reduce the force of counsel for the applicants'
submission."

C   As to Hereford (in relation to which the applicants had supplied
documents, although not in such measure as to satisfy the revenue), the
applicants had submitted that there was no evidence of failure on their
part to provide documents, but the judge held that so to declare would
be inappropriate and that it should be left to the revenue to proceed for
penalties under section 98, which would provide a means of deciding the
point. He also refused to give the applicants their costs of challenging
D   the first notice, because the substance of their objection to it was the
same as their unsuccessful complaint against the second notice.
The majority in the Court of Appeal disagreed with Schiemann J. on
all issues, but Bingham L.J. would have upheld him on the first, which
related to the six companies. The dispute depended, as Parker L.J. put
it [1989] S.T.C. 520, 523:

E   "partly on the construction of certain provisions of the Taxes
Management Act 1970 as substituted by section 57 of and Schedule
6 to the Finance Act 1976, partly on the application of such
provisions to the evidence and partly on the extent of the burden
on an applicant who seeks judicial review of action such as is
exemplified in the present case by the giving of the notices."

F   Having commented on the width of the power conferred by section
20(3), Parker L.J. listed, at p. 524, the safeguards provided by the Act
and commented, at p. 525, that the fact of the commissioner's consent
to the giving of the notice was "a significant matter when the effect of
the evidence is being considered."
Having reviewed the evidence on both sides and analysed the
decision of this House in *Reg. v. Inland Revenue Commissioners, Ex
G   parte Rossminster Ltd.* [1980] A.C. 952, on which the revenue had
strongly relied and about which I shall have something to say presently,
Parker L.J. stated his conclusions [1989] S.T.C. 520, 530–531:

"That evidence, unanswered as it is, certainly establishes, in my
view, a prima facie case that Mr. Hopkins cannot have formed the
reasonable opinion required. Indeed, even without the support of
H   any inference from the failure to give reasons, it states facts which
cannot be reconciled with there having been the required reasonable
opinion on the part of Mr. Hopkins. I consider, however, that an
inference can in this case be drawn. The Crown has not only

declined to give reasons, it has not sought leave to cross-examine          A
the applicants' affidavit evidence. It has, in addition, not given any
evidence as to the basis on which it is contended that the applicants
are subject to section 20(3). It is not known whether its case is that
its inquiries relate to income, profits or gains derived from a busi-
ness carried on by the taxpayer or his spouse and, if so, what
business or whether it is that they relate to profits etc. from a
business with whose management the taxpayer was associated. If it          B
is the latter and the case is that the taxpayer or his spouse was
associated with the management of each of the six companies, the
affidavits of the taxpayer and the representatives of the companies,
being unanswered, establish that this was not the case and the
application must succeed on that ground alone. No public immunity
can, in my view, arise on this matter. It is not a question of          C
opinion. It is a question of fact on which the onus is on the Crown.
Furthermore, although I accept that the Crown is entitled to protect
the identity of its sources, it by no means follows that all information
from all sources is confidential. An informant might, for example,
in the case of an English company, advise the revenue to make
company searches in respect of six companies. If it did so and
found that in each case the company was owned by a seventh of          D
which the taxpayer was a director, I can see no reason why they
should not, when challenged, so state. Here we are faced with a
blank wall which impedes the administration of justice."

Having reviewed the evidence on both sides and analysed the
decision of this House in *Reg. v. Inland Revenue Commissioners, Ex*
*parte Rossminster Ltd.* [1980] A.C. 952, on which the revenue had          E
strongly relied and about which I shall have something to say presently,
Parker L.J. stated his conclusions [1989] S.T.C. 520, 530–531:

"That evidence, unanswered as it is, certainly establishes, in my
view, a prima facie case that Mr. Hopkins cannot have formed the
reasonable opinion required. Indeed, even without the support of
any inference from the failure to give reasons, it states facts which          F
cannot be reconciled with there having been the required reasonable
opinion on the part of Mr. Hopkins. I consider, however, that an
inference can in this case be drawn. The Crown has not only
declined to give reasons, it has not sought leave to cross-examine
the applicants' affidavit evidence. It has, in addition, not given any
evidence as to the basis on which it is contended that the applicants          G
are subject to section 20(3). It is not known whether its case is that
its inquiries relate to income, profits or gains derived from a busi-
ness carried on by the taxpayer or his spouse and, if so, what
business or whether it is that they relate to profits etc. from a
business with whose management the taxpayer was associated. If it
is the latter and the case is that the taxpayer or his spouse was
associated with the management of each of the six companies, the          H
affidavits of the taxpayer and the representatives of the companies,
being unanswered, establish that this was not the case and the
application must succeed on that ground alone. No public immunity

A    can, in my view, arise on this matter. It is not a question of opinion. It is a question of fact on which the onus is on the Crown. Furthermore, although I accept that the Crown is entitled to protect the identity of its sources, it by no means follows that all information from all sources is confidential. An informant might, for example, in the case of an English company, advise the revenue to make company searches in respect of six companies. If it did so and

B    found that in each case the company was owned by a seventh of which the taxpayer was a director, I can see no reason why they should not, when challenged, so state. Here we are faced with a blank wall which impedes the administration of justice.

"On judicial review the court is not, of course, a court of appeal. It is not, therefore, entitled to look at the evidence and

C    form its own view of the conclusion to draw from it. Unless, however, it has access to that evidence, it cannot carry out that which is its function, namely to see whether any inspector could reasonably have formed the required opinion. In the case of a pending prosecution and conflicting evidence of fact, it may temporarily be prevented from doing so. In the present case, it is not, in my judgment, so prevented. I would allow the appeal and

D    quash the second notice in so far as it relates to the six companies, and I would declare in relation to Hereford Securities & Management S.A. (all accounts) and T. P. Ramsden that the applicants have complied with the notice. I see no reason to grant any further relief.

"As to the first notice it has not been pursued and, in the light

E    of that fact alone, the applicants should have the costs incurred in challenging it. This is the more so when it follows from the above that it would, if pursued, have failed in respect of all accounts save the four as to which there is not any issue."

Taylor L.J. concurred in regard to each issue. Observing that the presumption of regularity applies to the commissioner's exercise of his

F    function under section 20(7), he continued, at p. 535:

"If, as is conceded, the inspector's decision can still be challenged despite the commissioner's consent, then the court has in my view to conduct its review on the same principles as it applies generally in its supervisory jurisdiction. The commissioner's consent is one fact to be taken into account. But it must be stressed that the hearing before the commissioner is ex parte. The recipient of the

G    notice is not heard nor does he have the opportunity to place any material he might wish to adduce before the commissioner."

Taylor L.J. further said, at p. 535:

"Evidential problems are at the heart of this case. The applicants do not deny the inspector held the opinion he claims to have held.

H    Their challenge is to its reasonableness. The burden is therefore on the applicants to show that the inspector's opinion was not reasonable."

And, at p. 536:

"The issues here are (1) have the applicants by evidence raised a         A
prima facie case that the inspector's opinion was unreasonable;
(2) if yes, what is the effect of the Crown's failure to adduce
evidence in reply?"

As to (1) he said, "The burden on the applicants is accepted by both
parties to be that defined by Lord Diplock in [the *Rossminster* case]"
and then cited the passage at [1980] A.C. 952, 1013:                      B

"Where Parliament has designated a public officer as decision-
maker for a particular class of decisions the High Court, acting as a
reviewing court under Order 53, is not a court of appeal. It must
proceed on the presumption omnia praesumuntur rite esse acta until
that presumption can be displaced by the applicant for review—
upon whom the onus lies of doing so. Since no reasons have been        C
given by the decision-maker and no unfavourable inference can be
drawn [from] this fact because there is obvious justification for his
failure to do so, the presumption that he acted intra vires can only
be displaced by evidence of facts which cannot be reconciled with
there having been reasonable cause for his belief that the documents
might be required as evidence . . ."
                                                                          D
He concluded, giving his reasons, that the applicants had satisfied that
test.
    Commenting on the revenue's failure to answer the applicants'
evidence by giving reasons for the opinion held by the inspector, Taylor
L.J. [1989] S.T.C. 520, 537 observed that ordinarily, if a prima facie
case is made out by an applicant that a respondent has acted           E
unreasonably or taken a decision without good reason, his failure to
answer the case or give reasons may lead to the inference that he had
no good reasons. He adverted to the revenue's claim that their reticence
was justified by the duty of confidentiality and stated that, while no
adverse inference adding weight to the applicants' case should be drawn
from failure to disclose reasons where such failure is justified by
confidentiality, the plea of justified silence is not a positive answer to  F
the applicants' case, which, not having been rebutted, retains what
weight it has on its own merits. He concluded that the applicants had
made out a positive case that the inspector's opinion was not reasonable.
    Bingham L.J. dissented concerning the six companies and on this
issue would have affirmed Schiemann J. In his view the case fell
"squarely within the principle laid down by Lord Diplock" in the
*Rossminster* case [1980] A.C. 952, 1013. He said [1989] S.T.C. 520,       G
532:

"I do not think the right approach to this case is to ask whether the
applicants have raised a prima facie case which causes the onus of
rebutting it to shift to the Crown, and then to ask whether the
Crown has discharged the onus of rebutting it. If, as I think, the
case is one in which the inspector could not be expected to give         H
reasons for his opinion either at the time he gave the notice or
when the reasonableness of his opinion was challenged, there is
only one question to be asked. It is: do the applicants show that

A the inspector did not hold the opinion he claims to have held or, if he did hold it, that that opinion was not reasonable? In a case covered by Lord Diplock's ruling, the applicant must adduce evidence of facts which cannot be reconciled with there having been reasonable cause for the inspector's belief that the documents contained or might contain information relevant to the taxpayer's liability. The onus is on the applicant for judicial review. His task

B is, I think, the same whether he is seeking judicial review or challenging, on the same grounds, the validity of the notice by way of defence to penalty proceedings."

He then set out six facts or groups of facts to which he paid attention in reaching that conclusion. It is convenient to reproduce what he said

C under his fifth heading since it deals with matters which have been strongly relied on against the revenue, at pp. 533–534:

D "(5) When the inspector gave the second notice he knew that Mr. Mahon for the applicants had deposed: 'We have raised the matter of the [first] notice with the managers/directors of these six clients. They deny any involvement with Mr. Ramsden and see no reason why the documents the applicants have relating to their affairs should be disclosed as part of an inquiry into the tax liability of Mr. Ramsden.' We now have an affidavit from Mr. Sum, the manager of Rosary, who deposes:

'I am able to state that to the best of my knowledge and belief, Mr. T. P. Ramsden has never had any dealings with that company. Furthermore I am aware who the beneficial owner of the account is

E and can confirm that it is not Mr. Ramsden or any person connected with Mr. Ramsden.' Similar statements are made on behalf of the remaining five companies, all Panamanian, by Swiss directors apparently resident in Geneva. These directors were also directors of Hereford, through one of whose accounts the taxpayer admittedly dealt. If these statements showed the beneficial ownership of the companies in a manner which convincingly excluded any beneficial

F interest in the taxpayer, that might be compelling evidence that the inspector could not reasonably have held a contrary view when he gave the second notice. But the means of knowledge and the degree of involvement of Mr. Sum and the Swiss directors are wholly unclear. No detail is disclosed of the beneficial ownership of these companies. There is no reason why these companies, who are

G not themselves the subject of any notice, should give this information, but in its absence the possibility that the taxpayer has an interest in the companies through agents, trusts, nominees or fronting companies cannot in my view be excluded."

Dealing with the 67-minute hearing at which the general commissioner gave consent to the second notice, Bingham L.J. said, at p. 534:

H "The revenue are, in my view, entitled to rely on the rule that, where acts are of an official nature, or require the concurrence of official persons, a presumption arises in favour of their due execution: omnia praesumuntur rite et solemniter esse acta donec

probetur in contrarium (*Broom's Legal Maxims*, 10th ed. (1939),     A
p. 642). The contrary has not been proved. It has not been
contended that, by seeking to challenge the inspector's decision to
give the notice rather than the general commissioner's decision to
give his consent, the applicants have adopted a wrong procedure.
It does, however, as I think, make it very hard for the applicants to
show that the inspector's opinion must have been unreasonable
when a responsible commissioner who saw the material on which     B
the inspector relied plainly considered it to be reasonable."

On Hereford and on the costs point the Bingham L.J., without giving
reasons, agreed with the majority and differed from Schiemann J.
     My Lords, I find myself in agreement with Schiemann J. on the
substantive issues.                                               C
     The case for the validity of the second notice, or any section 20(3)
notice, is supported by the presumption of regularity, which is strong in
relation to the function of the commissioner under section 20(7). He is
an independent person entrusted by Parliament with the duty of
supervising the exercise of the intrusive power conferred by section
20(3) and "in the absence of any proof to the contrary, credit ought to
be given to public officers, who have acted prima facie within the limits     D
of their authority, for having done so with honesty and discretion:" *Earl
of Derby v. Bury Improvement Commissioners* (1869) L.R. 4 Exch. 222,
226. The commissioner must be taken to be satisfied that the inspector
was justified in proceeding under section 20 and hence that the inspector
held, and reasonably held, the opinion required by section 20(3). The
presumption that that opinion was reasonable and that the commissioner
was right to be satisfied can be displaced only by evidence showing that     E
at the time of giving the second notice the inspector could not reasonably
have held that opinion. In order to decide whether the applicants
succeed in this task, the court must consider all the evidence on both
sides and all the available facts, one of which is that the commissioner,
having heard an application, consented to the giving of the notice.
     Another fact is the sparseness of the evidence adduced by the     F
revenue. In our legal system generally, the silence of one party in face
of the other party's evidence may convert that evidence into proof in
relation to matters which are, or are likely to be, within the knowledge
of the silent party and about which that party could be expected to give
evidence. Thus, depending on the circumstances, a prima facie case
may become a strong or even an overwhelming case. But, if the silent     G
party's failure to give evidence (or to give the necessary evidence) can
be credibly explained, even if not entirely justified, the effect of his
silence in favour of the other party, may be either reduced or nullified.
Schiemann J. and all the members of the Court of Appeal have
commented with varying emphasis on what appears to me also to be the
excessive degree of reticence of the revenue in this case, but three
comments must in fairness be made.                                 H
     (1) Part of the evidence is that an express undertaking (the
observance of which is dictated by morality and expediency alike) was
given to an important source not to reveal either the source or the

A     information obtained from it. (2) Without knowing the facts a court
cannot tell what evidence, if given, may indirectly betray a source.
(3) The revenue have relied on their general duty of confidentiality as a
justification for their reticence.

Provided they are not shown to be acting in bad faith, their attitude
at least explains, if it may not entirely justify, their reticence, and
thereby reduces its effect in favour of the applicants. I do not wish to
B     discourage the revenue from observing due confidence, much less from
keeping promises, once made, but even their statutory declarations
contemplate that officers will make disclosure for the purposes of their
duties. If, therefore, a strong case is made for quashing a section 20(3)
notice, it may be the duty of the revenue to meet that case with
something more cogent than silence, however understandable or
C     justifiable. They should, of course, maintain silence if disclosure would
be unnecessary or unavailing or if a promise of silence has been given.

Applying the principles to the instant case, I consider the evidence
summarised in the judgments below. Does it show that the inspector's
opinion, when he gave the second notice, was unreasonable? I think
not, for the following reasons.

D     (1) Possibly the best evidence for the applicants was that reviewed by
Bingham L.J. under his fifth heading to which I have referred, but its
reliability must not be assumed when it cannot be tested against the
information, some of it confidential, which the inspector could have put
before the commissioner. (2) Even if I hazard a guess—and it can be
little more—that the revenue could, and perhaps should, have made
fuller disclosure, there was still evidence, obtained from the informant
E     and presumably given to the commissioner, which the revenue could not
tell the court. (3) The fact that the commissioner in the circumstances
gave his consent is of paramount importance. (4) The applicants purport
to prove facts about the six companies. What they need to do is prove
facts which are inconsistent (or irreconcilable) with the inspector's
having had a reasonable (not necessarily a correct) opinion when he
gave the second notice that the applicants had documents relating to the
F     six companies which contained or might contain information relevant to
any tax liability to which the taxpayer was or might be or might have
been subject.

To support their case the applicants, as a reductio ad absurdum,
submitted that, if the revenue's arguments were sound, the quashing of
a section 20(3) notice, though available in theory, could never be
G     achieved in practice. My Lords, this prospect does not fill me with
alarm when I reflect that Parliament has subjected an intrusive and
potentially oppressive (but presumably necessary) power to what I
suggest to be the effective supervision of section 20(7). Nor should the
difficulty of achieving a remedy cause surprise when one considers the
following points.

H     (1) The applicant has to prove a negative. (2) What he has to prove
is not a fact within his own knowledge but the absence of a reasonable
opinion on the part of someone else, namely, the inspector. (3) The
inspector's opinion has to have been reasonable but need not have been
correct. (4) The resolution of the question will usually depend in large

measure on evidence which is not before the court. (5) By reason of the    A
principle of confidentiality (which the applicants concede), the general
rule for taking account of a party's silence does not fully apply and, for
the same reason, the court cannot assess the extent to which in each
case it does not apply. (6) Proceedings in which affidavit evidence is
the general rule are not well suited to resolving factual questions.

I hope that these observations will also help to show how much
better a position the commissioner is in to make a just appraisal under    B
section 20(7) than a court conducting a judicial review. They may also
illustrate what I regard as the fallacy of relying on readily understandable
silence as a means of converting into proof an inconclusive prima facie
case. It is idle to suggest, as the applicants have done, that the court
should be able to police effectively the revenue's power under section
20(3), if that involves abrogating accepted rules of evidence. Another    C
suggestion was that the use of the word "reasonable" in section 20(3)
meant that the court must be put in a position to assess the
reasonableness of the inspector's opinion by being given access to the
relevant evidence and by having a wider power of review than is
commonly recognised: see [1989] S.T.C. 104, 110, *per* Schiemann J.
I can see no warrant for this proposition either on principle or in the
words of the Act. I consider that the expression "reasonable opinion"    D
sets the standard for the commissioner and, like Schiemann J., that
section 20(7) is the real and intended safeguard.

Parker L.J. distinguished the *Rossminster* case [1980] A.C. 952 on its
facts both accurately and effectively, whereas Bingham L.J. considered
that the present case fell "squarely within the principle laid down by
Lord Diplock in that case." (I have, when commenting on the judgment    E
of Taylor L.J., already cited the passage in question, at p. 1013 of
*Rossminster*.) While I appreciate the distinctions drawn between that
case and the present, I agree with Bingham L.J. on the principle.
Parliament designated the inspector as the decision-maker and also
designated the commissioner as the monitor of the decision. A
presumption of regularity applied to both. No unfavourable inference
can be drawn from the silence of the revenue because there is (to put it    F
no higher) an obvious explanation for their silence, and the presumption
that the inspector acted intra vires when giving the notice can only be
displaced by evidence which cannot be reconciled with the inspector's
having had the required reasonable opinion.

Bingham L.J., however, agreed with the majority on Hereford.
Taylor L.J. went further and, having expressed a firm view about    G
Hereford, made what he regarded as the revenue's unreasonable
approach on Hereford a touchstone of their attitude regarding the six
companies. I have shared with some of your Lordships the temptation
to endorse the Court of Appeal's view on Hereford, influenced by the
uncommunicative intransigence of the revenue in correspondence which,
admittedly without knowing all the facts, I found difficult to reconcile
with the reasonable attitude which ought to characterise a government    H
department in its dealings with the public. But the question is the same
about Hereford as about the six companies: have the applicants proved
that when giving the second notice the inspector's opinion that there

A   remained in the applicants' power or possession relevant documents which they had not disclosed was not reasonable? On the same principles as those which I have tried to bring to my consideration of issue 1, my answer must be "No." In this connection I have taken note of the contrast between the revenue's attitude of acceptance towards the disclosure made in respect of four of the original 12 companies and their scepticism, for which I feel there is bound to be a rational explanation,
B   with regard to Hereford. In my opinion your Lordships ought not to be satisfied on the evidence available at this stage that the inspector's opinion about Hereford on 6 January 1988 was unreasonable.

I would advert here to four points which were mentioned but not strenuously pursued.

(1) The group leader when the first notice was given was Mr. Price
C   and when the second notice was given was Mr. Hopkins. It was their respective opinions, as the inspectors giving the notice, which the commissioners must have found to be reasonable, but Mr. Allcock was the officer who attended on the commissioner. Parker L.J. [1989] S.T.C. 520, 526 queried the validity of this procedure, but with respect I consider that the commissioner could properly be informed by Mr. Allcock of his superior officer's opinion and the grounds thereof.
D   Conceivably the commissioner might have required the requesting inspector to attend on him before giving his consent to the notice, but I cannot see a parallel between the procedure under section 20(7) and, for example, the issue of a warrant by a magistrate on the sworn information of a complainant who must attend before him.

(2) It was suggested that the revenue could have applied to cross-
E   examine the applicants' witnesses on their affidavits, with the implication that failure to do so weakened their case. With respect I do not consider that this suggestion amounts to a significant argument, since the applicants' averments could be contradicted only by putting to the deponents material in the possession of the revenue and this could be done effectively only at the cost of the confidentiality which the revenue wished, and in one case had promised, to maintain. Moreover, it can
F   with a greater show of reason, be submitted that the applicants could have made a similar application in order to find out how far the revenue had informed the commissioner when seeking consent for the second notice and what kind of link they were alleging between the taxpayer and the six companies.

(3) Another query was whether the applicants might have attacked
G   the commissioner's decision to give consent as well as or instead of the inspector's notice. The point was not argued and did not become relevant but, for my own part, I consider that the notice was the appropriate target. If the inspector's opinion was not reasonable, then a condition precedent to giving the notice was lacking and the act of giving the notice was ultra vires. If the commissioner's consent could have been quashed in this case, it would have been on the same ground
H   that would have caused the notice to be ultra vires but, assuming the commissioner's function under section 20(7) to be judicial, a challenge to his decision would in addition have to meet the argument that a judicial decision, if otherwise competent, will not be quashed for

unreasonableness or for want of evidence not apparent on the face of    A
the record: see *Rex (Martin) v. Mahony* [1910] 2 I.R. 695; *Rex v. Nat
Bell Liquors Ltd.* [1922] 2 A.C. 128; and *Rex v. Northumberland
Compensation Appeal Tribunal, Ex parte Shaw* [1952] 1 K.B. 338. Of
course, different considerations could arise if the commissioner's decision
were to be attacked on other grounds, such as want of jurisdiction, bias
or disregard of natural justice.

(4) Reference was made from time to time to the penalty proceedings    B
which the revenue can bring under sections 98 to 100 of the Act of 1970
before a general or special commissioner or in the High Court for
failure to comply with a section 20(3) notice. Mr. Vallance for the
revenue, with whom Bingham L.J. [1989] S.T.C. 520, 532 appeared to
concur, submitted that the recipient of a notice had the same task
whether he was seeking judicial review or challenging, on the same      C
grounds, the validity of the notice by way of defence to penalty
proceedings. The applicants had, for the purpose of this appeal, no
particular interest in refuting this statement and the question was not
argued before your Lordships. I therefore do not propose to discuss the
proposition. It is, however, clear that the issue in penalty proceedings
will be not, or not only, whether the service of the notice on the
recipient was intra vires but whether the recipient (who may have no     D
relevant documents despite the inspector's opinion to the contrary) is in
default. On that issue the revenue will have to produce enough
evidence to prove their case: onus ei incumbit qui affirmat.

My Lords, despite the length of this opinion, I feel that I must
mention before I conclude a point which featured only briefly in the
present appeal but which is of general importance. The applicants      E
asked the Court of Appeal to infer that the proceedings before the
general commissioner may have been a formality, in which case small
reliance should be placed on his consent. The revenue then, pursuant
to leave, put in a new affidavit by Mr. Allcock showing that on 1 April
1987 he attended before a commissioner for 37 minutes and "laid before
him all the documentary evidence to which I have referred." He also
deposed that he attended before a different commissioner on 6 January    F
1988 and continued:

> "Once again I laid all the documentary evidence, to which I have
> referred, before the commissioner. He asked me for clarification
> on a number of points, and after one hour and seven minutes he
> signed the notice, referred to as the 'second notice' in these judicial
> review proceedings."                                                  G

The applicants contended in their printed case that the protection
given by section 20(7) should not be overstated, particularly because
the revenue had not shown (as it was said they ought to have done)
that they had made full disclosure to the commissioner, when seeking
consent to the second notice, of what had already passed between
them and the applicants. Before your Lordships Mr. Goldberg            H
reinforced and refined his argument by emphasising that the second
application was made to a different commissioner and by submitting
that Mr. Allcock's choice of language led to the clear inference that

A   in his second application he had relied exclusively on the evidence tendered to the first commissioner and had not revealed the later correspondence. Thus what had been an ancillary contention designed to weaken the efficacy of the commissioner's consent was elevated into a new point of substance to the effect that the commissioner's consent to the second notice (and consequently the notice itself) had been vitiated by the revenue's non-disclosure of vital facts. Your

B   Lordships, in order to clarify the issues, invited Mr. Goldberg, if he meant to rely on the new point, to apply for leave to amend his printed case; and, Mr. Goldberg having somewhat tentatively decided to seek, and then having formulated, an amendment, your Lordships sought the views of Mr. Vallance. He suggested that, if he had the opportunity to show Mr. Goldberg certain notes relating to the second

C   hearing before the commissioner (which presumably would provide an indication of what had been disclosed), the application to amend might be abandoned. Counsel conferred but this step failed to produce the result foreseen by Mr. Vallance and eventually your Lordships refused leave since to allow the amendment would open a new issue of fact which had not played a part in any of the earlier proceedings.

D       In these circumstances it would seem that the only fair and practical course is neither to draw the adverse inference from Mr. Allcock's affidavit which Mr. Goldberg has pressed upon your Lordships nor, on the other hand, to make the assumption, which would greatly help the revenue, that they told the second commissioner of everything which passed between the parties since the giving of the

E   first notice.
        I suggest that, for the immediate purpose of this appeal, the point has now been disposed of, but I take the opportunity of stating my clear view that, when seeking a commissioner's consent under section 20(7), the revenue are absolutely bound to make full disclosure to the commissioner of all facts within their knowledge which could properly influence the commissioner against giving his consent to a section 20(3)

F   notice. I do not by any means wish to imply that the revenue have heretofore proceeded on any other basis, but it may be worth emphasising that failure to make full disclosure will, if it comes to light, almost inevitably vitiate the consent and nullify the notice given pursuant thereto.
        It will be difficult for an applicant for judicial review to demonstrate

G   such a failure if it should occur. Nevertheless, the principle of full disclosure being made and being seen to be made, so far as those objects can be reconciled with the proper claims of confidentiality, is important and may on appropriate occasions be safeguarded by an application to cross-examine.
        The last issue concerns the applicants' costs of challenging the first notice. On this point I agree with the Court of Appeal because the

H   revenue abandoned the first notice and thereby surrendered to the applicants in the proceedings arising from it. The fact that the revenue turned out to be right in principle is not a reason for refusing the applicants their costs of the earlier proceedings.

Accordingly, my Lords, I would allow the revenue's appeal and    A
restore the order of Schiemann J. except in regard to the costs of the
first judicial review proceedings which I would award to the applicants.

> *Appeal allowed with costs.*
> *Costs of first judicial review*
> *application to applicants.*

B

*Solicitors: Solicitor of Inland Revenue; Edwin Coe.*

C. T. B.

C

――――――

[HOUSE OF LORDS]

D

FOSTER AND OTHERS     .     .     .     .     .     .     .     APPELLANTS

AND

BRITISH GAS PLC.     .     .     .     .     .     .     .     RESPONDENT

E

1991 March 13;                     Lord Keith of Kinkel, Lord Templeman,
     April 18                       Lord Ackner and Lord Jauncey of Tullichettle

*Discrimination, Sex—Employment—Retirement—British Gas Corpora-
tion employees retired on reaching pension age—Different ages
for men and women—Whether corporation state authority—
Whether unlawful discrimination—Council Directive (76/207/
E.E.C.), art. 5(1)*

F

Under their contracts of employment the applicants, who
were female employees of the British Gas Corporation (the
controlling body of a nationalised industry), had been required
to retire at an earlier age than their male colleagues. Relying
on article 5(1) of Council Directive (76/207/E.E.C.)[1] they
complained to an industrial tribunal that they had accordingly
been discriminated against on the ground of sex contrary to       G
section 6(2) of the Sex Discrimination Act 1975.[2] The tribunal
dismissed their complaints on the ground that the corporation
fell to be treated, for the purposes of the Directive, as a private
individual against whom the Directive could not be enforced.

[1] Council Directive (76/207/E.E.C.), art. 5(1): "Application of the principle of equal
treatment with regard to working conditions, including the conditions governing dismissal,    H
means that men and women shall be guaranteed the same conditions without discrimi-
nation on grounds of sex."
[2] Sex Discrimination Act 1975, s. 6(2): "It is unlawful for a person, in the case of a
woman employed by him at an establishment in Great Britian, to discriminate against
her . . . (*b*) by dismissing her, or subjecting her, to any other detriment."