# Exhibit H

# Ch.VII Substantive Requirements: Dual Criminality, Extraditable Offenses, Specialty, and Non-Inquiry

From: International Extradition: United States Law and Practice (6th Edition)
M Cherif Bassiouni

**Content type:** Book content
**Product:** Oxford Scholarly Authorities on International Law [OSAIL]
**Published in print:** 01 February 2014
**ISBN:** 9780199917891

**Subject(s):**

Rule of law — Writings of publicists — State practice — Comity — Conflicts between — Consistent interpretation — Dualism — Act of state — Judicial review — Freedom from torture and cruel, inhuman, or degrading treatment — Customary international law — General principles of international law

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

International Extradition: United States Law and Practice, Ch. VIII, § 5, Grounds Relating to the Penalty: The Death Penalty and Cruel and Unusual Punishment at 735–744 (4th ed.2002) (problems of enforceability of conditional extraditions; discussion of leading international cases); 3 The Dept. of Justice Manual at 9–15, 500 (2d ed. loose leaf current) (post extradition considerations); 4 The Dept. of Justice Manual at 1 ff. (2d ed. loose leaf current) (survey of death penalty cases in the federal courts).[290]

### 6.4. Variance in Prosecution and the Principle of Specialty

In cases of extradition from the United States to another state, the crimes for which a relator may be tried by a requesting state are determined by the extradition warrant signed by the secretary of state or his/her designee. If there is a variance between the U.S. extradition warrant and the finding of the U.S. extradition magistrate or judge, the warrant will control in the requesting state until such time as it may be amended to conform to the decision of the extradition judge. The United States may waive variances by express authorization from the secretary of state, but only to the extent that the new crimes are based on the same facts that were presented at the relator's extradition hearing, the new crimes satisfy dual criminality, and probable cause can be found. The relator is entitled to challenge this determination in court. This is usually raised in the context of ongoing criminal proceedings.

(p. 557) With respect to the interpretation and application of the principle of specialty in the United States, it is a confused and unsettled part of extradition law. The reasons are in part because it poses several difficult legal questions that the circuits have approached in different ways. They are:

> 1. in the last twenty years the United States has enacted complex criminal statutes that for the most part have no counterpart in other legal systems; [291]

> 2. prosecutorial practice in United States frequently resorts to the use of superseding indictments whose substantive charges and factual recitations may vary from the original indictment on which extradition was secured;

> 3. federal prosecutors in the ninety-four federal districts may be unfamiliar with this area of the law and more so with respect to the set of issues involved in specialty (even though it should be noted the Office of International Affairs [OIA] of the United States Department of Justice provides valuable assistance and advice to the United States Attorneys' offices throughout the country);

> 4. some federal prosecutors tend to occasionally stretch the rules of permissibility with regard to their representations to the OIA, which are communicated to the requested state, and also stretch the limits of proper conduct in making representations to U.S. courts before which these issues are raised;

> 5. as a consequence of all these factors, there is inconsistency and uncertainty among the circuits as to what constitutes a variance and how to deal with it, and the distinction between preclusion of prosecution under specialty and the use of evidence for proving other legal propositions than guilt of the precluded crime; and

> 6. the conflicting positions of the circuits as to who can raise the issue of specialty, when, and how. [292]

The Ninth Circuit, in *United States v. Khan*, established an important requirement of unambiguousness, whereby if the surrendering state is not unambiguous about the charges for which extradition has been granted, then the U.S. courts would be required to determine whether it was the intention of the surrendering state to allow extradition for a particular offense, and in so doing, to determine whether that offense exists in the

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

surrendering state. By implication, the Ninth Circuit suggested that U.S. courts, in cases of ambiguity, put themselves in the place of the surrendering state's courts to determine first the existence of dual criminality and second, based on the first determination, what the limits of specialty are. The court held:

> As a matter of international comity, "[t]he doctrine of 'specialty' prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering state agreed to extradite." *Van Cauwenberghe*, 827 F.2d at 428 (quoting *Quinn*, 783 F.2d at 783). *See United States v. Rauscher*, 119 U.S. 407, 419–421, 7 S.Ct. 234, 240–241, 30 L.Ed. 425 (1886).

> Khan contends that Pakistan agreed to extradite him on the basis of Count II, but not on Count VIII of the superceding indictment. Khan contends that the Pakistani extradition documents do not specifically refer to the allegations of Count VIII and therefore his conviction on Count VIII should be dismissed.

> The parties have provided two Pakistani documents, an Enquiry Report from a Deputy Commissioner Enquiry Officer dated February 14, 1990 ("commissioner's report") and a judgment (p. 558) from the Lahore High Court at Lahore dated March 4, 1990 (this document is incomplete). The commissioner's report refers three times to 21 U.S.C. § 963 (the violation alleged in Count II) and makes no reference to 21 U.S.C. § 843 or 18 U.S.C. § 2 (the violations alleged in Count VIII). The Lahore judgment refers once to 21 U.S.C. § 963 and makes no reference to 21 U.S.C. § 843 or 18 U.S.C. § 2.

> The Pakistani commissioner's report lists the documents received from the United States in connection with the extradition request. These documents included copies of the Stewart affidavit, which described the charges in Counts II and VIII, and the superceding indictment. The list in the report specifically noted that "the indictment relating to [Khan] is with regard to count No. II and VIII." In addition, the commissioner's report reviews the factual background of the extradition request including the various telephone calls between Khan and his codefendants throughout the course of the conspiracy. The commissioner stated that he had carefully examined the evidence presented by the prosecution.

> The magistrate judge determined that the Pakistani commissioner had considered all the evidence presented by the United States, including the Stewart affidavit and Count VIII in the superceding indictment. Relying on *United States v. Sensi*, 879 F. 2d 888, 896 (D.C Cir. 1989), the magistrate judge found the reference to the evidentiary materials sufficient to satisfy the doctrine of specialty. The district court found that it was "quite clear that the United States Government requested extradition on Count VIII, and that the Magistrate in Pakistan considered extradition on Count VIII and granted it."

> The opinion in *United States v. Sensi* is not dispositive. In *Sensi*, 879 F.2d at 896, the D.C. Circuit focused on the evidence submitted with the United States' request for extradition and found it sufficient to support each count of the indictment. The British magistrate (England was the surrendering country) had not delineated the United States counts for which the defendant was extraditable, but had concluded that the defendant was extraditable. The magistrate found that 18 charges of theft were made out by the evidence under United Kingdom law. *Id.* at 892. The British magistrate had received a copy of the United States indictment. *Id.* at 896.

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

In *Sensi*, however, the operative extradition treaty contained the following language: "'A person extradited shall not be [prosecuted]…for any offense other than *an extraditable offense established by the facts in respect of which his extradition has been granted*.'" *Id.* at 895 (quoting 28 U.S.T. 233). The operative treaty in this case contains the following language: "A person surrendered can in no case be [prosecuted]…for any other crime or offence, or on account of any other matters, than those for which the extradition shall have taken place." Extradition Treaty, December 22, 1931, art. 7, 47 Stat. 2124. We are not convinced that the doctrine or specialty is satisfied under all treaties as long as the prosecution is based on the same facts as those set forth in the request for extradition.

Language from our opinions in *Van Cauwenberghe* and *Quinn*, "for any offense other than that for which the surrendering state agreed to extradite," suggests the need for an affirmative statement by the surrendering country of the counts upon which extradition is based. In *United States v. Merit*, 962 F.2d 917, 923 (9th Cir.), *cert. denied*, 506 U.S. 85, 113 S.Ct. 244, 121 L.Ed.2d 178 (1992), the South African Supreme Court affirmatively found the defendant extraditable on Count 1 and Count 14 of the indictment. The South African Supreme Court's ruling was initially ambiguous regarding the other 12 counts for which the defendant was indicted. The United States requested clarification and the South African Department of Justice confirmed that the defendant was extraditable on Counts 1 and 14. *Id.* at 920. We found that the United States had adhered to the specialty requirement of the treaty because the defendant was tried and convicted of *only those two counts*. *Id.* at 923.

The extradition materials do not indicate that Pakistan unambiguously agreed to extradite Khan on both Counts II *and* VIII. The magistrate judge found it persuasive that "the commissioner's report does not suggest that Khan ought not to be extradited on the charge contained in Count VIII." But we will not infer an agreement to extradite from Pakistan's silence concerning Count VIII. [Citation omitted.]

(p. 559) The government notes that the Pakistani commissioner directed that Khan could be "surrendered over to the authorities in the U.S.A. for trial under the relevant American Law." It is possible that the Pakistani commissioner was referring to the relevant American law of 21 U.S.C. § 963 (in Count II). It is also possible that Pakistan did not find the charges in Count VIII worthy of extradition. *See generally United States v. Rauscher*, 119 U.S. 407, 420–21, 7 S.Ct. 234, 241, 30 L.Ed. 425 (1886) (defendant extradited on murder charges could not be prosecuted for lesser offense of cruel and unusual punishment, which was not listed in the extradition treaty).

Because Pakistan did not unambiguously agree to extradite Khan on the basis of Count VIII, the doctrine of specialty has not been satisfied. Khan's conviction on Count VIII should be reversed and dismissed.[293]

Another factor that adds to the present state of confusion is that U.S. judicial decisions frequently combine several issues arising under specialty without clearly distinguishing them for purposes of the ruling. Some cases also confuse issues of dual criminality and evidence in the context of specialty, while also discussing standing without clearly separating these different legal questions. The discussion of relevant cases that follows in this section reveals the extent to which these issues can are interrelated.

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

As stated above, in order to prosecute a relator in the United States for an offense at variance with the offense for which the extradition request was granted, the United States must obtain the consent of the requested state while the relator is still in U.S. custody for the offense for which extradition was granted.[294] But the United States does not proceed that way. Instead, it proceeds with prosecution based on other charges arising out of superseding indictments, and then argues that these charges satisfy specialty and dual criminality. It is this unfortunate hasty practice that brings about so many problems. The better practice would be for the prosecutor to convey his/her intentions to the Department of Justice's OIA, and let that office seek a supplemental extradition request or ask the surrendering state for clarification and authorization to proceed. That additional procedural demarche would clearly improve judicial economy and prevent unnecessary delays.

In *United States v. Diwan*,[295] the court held that the relator could be prosecuted on a conspiracy count notwithstanding her original extradition for only theft-related offenses, as the record of the case showed that the United Kingdom consented to the prosecution for the other lesser or related offenses. The Magistrates' Court in London had dismissed the conspiracy charge after conducting an evidentiary hearing to determine whether the offenses charged were triable (p. 560) offenses in the United Kingdom. The magistrate rejected the United States' argument that the conspiracy alleged in the indictment would justify committal in the United Kingdom if the offenses charged had been committed there. The extradition was, however, granted after the magistrate determined that the offense of mail fraud is analogous to the crime of theft.

The relator challenged prosecution on the conspiracy charges by arguing that the offenses for which she was extradited did not include conspiracy, as the UK magistrate had only detained her for the theft-related offenses. The court found this argument to be without merit because diplomatic correspondence between the two states indicated that the United Kingdom did not regard the prosecution of Diwan on the conspiracy count a breach of the extradition treaty. A letter from the UK's Secretary of State for the Home Office, who had the ultimate authority to determine whether extradition would be allowed, responded to a request for confirmation that the United Kingdom did not object to the prosecution of the defendant on all counts in the indictment by stating:

> I can therefore confirm your understanding of that decision and of the surrender warrant subsequently signed by the Secretary of State. Accordingly…I am able to confirm that the United Kingdom has no objection to the indictment of Ms. Diwan as proposed.[296]

The court held that the diplomatic correspondence between the two states unequivocally showed that the United Kingdom consented to the prosecution of Diwan on the conspiracy count. Therefore, the government could proceed with the prosecution of the relator on all counts in the original indictment.

A 2009 case elucidating this practice was *United States v. Iribe*,[297] where the relator challenged his prosecution under a second superseding indictment. The Mexican Supreme Court granted the relator's extradition for conspiracy to maim a person in a foreign country, but not for conspiracy to kill and kidnap a person in a foreign country insofar as those crimes carried the potential for a life sentence.[298] Nonetheless, a U.S. federal grand jury returned a second superseding indictment including conspiracy to kidnap and attempted kidnapping.[299] The government of Mexico delivered a diplomatic note in which it specified that:

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

> The Foreign Ministry does not object to the reclassification of the crime pursuant to Article 17.2, paragraphs a) and b) of the Extradition treaty between the United Mexican States and the United States of America.[300]

The court read this diplomatic note and the Mexican Supreme Court decision to show that Mexico had explicitly agreed to prosecution on the new charges, which did not carry a life sentence.

Specialty also means that if the relator is acquitted of the extradition offense, he/she must be allowed to leave the country without hindrance, and he/she cannot be charged or even served with additional criminal charges while in the country.[302] The relator must be given a reasonable amount of time to leave voluntarily, and cannot be denied the right to return to his/her (p. 561) country of nationality, the state from which he/she was extradited if that state gives him/her permission, or any other state of his/her choice that gives him/her permission. The individual cannot be forced to go to a state that he/she does not wish to go to, nor can the United States use immigration laws to deport him/her or force "involuntary departure" upon him/her to send him/her to a country that may be seeking him/her for further prosecution.[303] The same rules apply to situations where the relator was tried and convicted for the extradition offense and has served the required sentence and been released. In these cases, he/she must be given the opportunity to leave the requesting state before he/she can be detained or tried for another offense, except for any offense he/she may have committed while in the United States after his/her surrender. In either case, when the relator has served the required sentence or been acquitted of the extradition offense, the requested state loses jurisdiction over the relator. Thus, if the requesting state seeks to obtain consent after acquittal or after completion of the sentence to prosecute the relator for an unrelated offense, such consent would be invalid as the requested state can no longer exercise any authority over the relator. Even in cases in which a timely request for the consent of the requested state is made, the requesting state should determine whether consent has been granted by the appropriate authority of the requested state. Thus, if the proper authority in the originally requested state is a judicial one, the authorization cannot be granted by an administrative authority. For example, the appropriate authority in France is the *chambre de mises en accusation* of the Court of Appeals, and in Italy it is the counterpart chamber of the Court of Appeals of the judicial district where the relator was found. Only that judicial authority can grant a supplemental extradition request. But in one case, involving Italy, the United States requested and obtained a purported supplemental authorization from an official in the ministry of justice to prosecute the relator in formal extradition proceedings for another crime after the relator was acquitted of the original charges. But because the official, a judge in the ministry, was not the appropriate legal authority, the purported authorization was deemed invalid and the relator was allowed to leave the country.[304]

A question arises, however, as to whether the requesting state may, subsequent to the prosecution of an accused surrendered for a particular crime, re-extradite such a person to another state that may request his/her extradition, without seeking permission from the state that originally extradited him/her.[305] In other words, if *State* A requests the extradition of an individual from *State* B for *crime* X and extradition is granted, can *State* A re-extradite such a person to *State* C, which requests his/her extradition from *State* A for *crime* Y, without first securing the permission of *State* B? The answer depends on whether *State* B has a continuing interest in the accused. Such an interest could be that he/she is a citizen of *State* B or that *State* B granted the request of *State* A even though it could have prosecuted that individual for a crime in *State* B, or that *State* B waived its opportunity to retain jurisdiction over him/her for a criminal investigation or as a witness in another trial. Presumably once the individual is extradited, *State* B loses jurisdiction over him/her and its only surviving interest is to ensure that its processes have been used in a manner that

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

complies with the principle of specialty. However, as extradition depends on a treaty and the requested state may grant it on the basis of certain policy considerations in those interests described above, its interest in such a person may survive with respect to re-extradition. However, such a survival of interest theory should depend on the condition that *State* A knew (p. 562) or had reasonable grounds to know that *State* C would ask it for the re-extradition of the relator at the time it made its request to *State* B. Otherwise the process of re-extradition would always be subject to the approval of the originally requested state, which would render the process of re-extradition too cumbersome. A better approach would be to regulate such practices by treaty, which is not the case under existing U.S. extradition treaties.

Another problem arises with respect to cases involving extradition by comity, in whole or in part. In 1972, the Second Circuit in *Fiocconi v. Attorney General of the United States*[306] affirmed the specialty principle even in cases of surrender by comity, by holding that the principle "reflects a fundamental concern of governments that persons who are surrendered should not be subject to indiscriminate prosecution by the receiving government."[307] But the Second Circuit held that the application of the principle, when surrender is by comity, is primarily designed to inure to the benefit of the requested state. Thus, in such cases (in the Second Circuit) the surrendered person lacks standing to raise the issue unless the surrendering state protests, or when the prosecution breaks faith with the purposes of the surrender by comity. In that case, appellants, both French nationals, were originally indicted in the District Court of Massachusetts for conspiring to import heroin in violation of 21 U.S.C. § 171. Warrants at that time could not be executed, but the appellants were later found in Italy. The appellants were extradited from Italy to the United States on charges of importing heroin into the United States. Acknowledging that there was no provision for narcotic offenses in the 1868 Extradition Convention with Italy, 15 Stat. 269 and subsequent amendments, the Italian government granted extradition as an act of comity, independent of the treaty.

After the appellants were returned to the United States and released on $250,000 bail in the District of Massachusetts, they were subpoenaed to appear before a grand jury in the Southern District of New York. When they appeared, they were arrested under an indictment issued that day charging them with receiving, concealing, selling, and facilitating the transportation, concealment, and sale of thirty-seven kilograms of heroin in New York. Bail was set at $100,000, which neither could post. Appellants filed a petition for a writ of habeas corpus on the ground that their detention was on charges other than those for which they were extradited. The Southern District of New York, meanwhile, returned a superseding indictment charging appellants with conspiracy to violate the narcotics laws and two other substantive offenses. The petition for their release was denied, and they were tried on these charges and found guilty.

When the Second Circuit revisited the Supreme Court's decision in *United States v. Rauscher*,[308] it stated:

> (p. 563) Rauscher's conviction of an offense for which he was not and could not have been extradited did not violate the treaty, which was silent as to the rights of a person extradited thereunder; it violated a rule of what we would now call United States foreign relations law devised by the courts to implement the treaty.[309]

Judge Henry Friendly saw no reason in principle to apply specialty when extradition has been granted by an act of comity by the surrendering nation, unless the prosecuting state acted in a way that would be deemed a breach of an implicit or explicit understanding between the United States and the surrendering state.

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

The court found that the remedy enunciated in *Rauscher*[310] must be applied in the context for which it was designed, in that the principle of specialty imposes limitations upon the requesting state not to prosecute the relator for any offense other than that for which he was surrendered in the context of extradition. The object of this rule is to prevent the requesting state from violating its international obligations vis-à-vis the surrendering state. By analogy, therefore, it was essential in *Fiocconi*[311] to determine whether the surrendering state would regard the prosecution at issue as a breach of its relations with the United States. In the absence of any affirmative protest from Italy, the court did not believe that the government would regard as a breach of faith by the United States the prosecution of appellants for subsequent offenses of the same character as the crime for which they were extradited.

Although the United States had not made a preliminary showing in Italy with respect to the New York indictment, as it did concerning the one in Massachusetts, the court noted:

> [W]e presume the United States is willing to submit such proof if Italy desires it, and with appellants now having been found guilty, there can scarcely be doubt that sufficient proof to warrant extradition exists.[312]

*Fiocconi* was later followed by the Fifth Circuit in *United States v. Kaufman*. In that case, two relators, the Franks brothers, were originally brought to the United States after an arrest in Mexico by DEA agents and Mexican federal judicial police to face charges in Louisiana under a January 1986 indictment for participating in a drug conspiracy. After a trial conviction of one brother and dismissal of charges against the other, both brothers were transferred to Texas to face charges pursuant to a July 1986 indictment for various other drug offenses.

As in *Fiocconi*, the relators argued their detention and trial on the second Texas indictment were in violation of the CIL principle of specialty. The Franks brothers argued that because they had been extradited to the United States for the Louisiana charge, the district court in Texas lacked personal jurisdiction to detain or prosecute them, as Mexico had not granted extradition on the basis of these offenses. The court rejected this contention and followed *Fiocconi* for the basic principle that specialty preserves the requesting state from a breach of faith by the requested state whether or not the surrendering state acted pursuant to a treaty. The remedy required a determination of whether Mexico would regard the prosecution for the Texas indictment a breach of the United States' international obligations toward Mexico.

The court held that, given the nature of the charges alleged in Louisiana, the indictment was identical in character to the nature of the charges alleged in the Texas indictment. Given that (p. 564) Mexico made no protest against the prosecution of the Franks brothers in Texas, the court concluded that no basis existed to conclude that Mexico was or had reason to be offended by the Texas prosecution, and therefore no breach of the treaty's provisions existed.

This view of specialty fails to take into account the relator as a participant in the extradition process and his/her right to uphold such a doctrine when a requested state acts at variance with an extradition order, regardless of whether the surrendering state deems such actions a breach of trust, or a breach of international relations. But it is important to note that if the relator is given the right (i.e., standing) to raise the question, and the Court's legal standard is whether the variance constituted a breach of faith with the surrendering state or of a rule of CIL, then the rights of the relator are properly guaranteed.[314] Thus, *Fiocconi* stands for

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

the proposition that comity can supplement existing treaty practice, but by implication, comity does carry with it the same limitations as does treaty-based extradition.

*United States v. Najohn*[315] is a further example of a case in which specialty did not bar the prosecution of the defendant for an additional offense not contained in the original indictment, but to which the surrendering state agreed. Indeed it is well-established that a surrendering state can waive specialty without the relator's consent or knowledge unless the law of the surrendering state requires it. In *Najohn* the defendant was convicted in Pennsylvania on the charges for which he was extradited, namely interstate transportation of stolen property in violation of 18 U.S.C § 2314. While serving his sentence, the Northern District of California indicted Najohn for the same charge as well as for the receipt of stolen property and conspiracy.[316] The defendant moved to dismiss the indictment, arguing that the California charges were barred by the extradition treaty between the United States and Switzerland, as well as by specific language in the Swiss court's extradition order.

The principle of specialty, as contained in the extradition treaty between the United States and Switzerland, however, contained a specific provision relating to specialty, which defeated the defendant's argument, namely that "[T]he extradited party may be tried for a crime other than that for which he was surrendered *if the asylum country consents*."[317] Two letters regarding the original charge from the Magistrate of the District Court of Zurich and from the Swiss Embassy to the United States asking and agreeing that the principle of specialty be suspended were deemed to have authorized the waiver of the rule. In response to the defendant's argument that this was not sufficient proof of consent, the court stated: "Najohn suggests no reason why the requirement for Swiss consent to prosecution for these crimes should be more rigorous now that he is already in United States custody."[318] The defendant's motion was thus denied.

The legislative requirement that the United States grant extradition only by virtue of a treaty provides a guarantee to the relator that the provisions of the treaty will be applied. This position was developed in *United States v. Rauscher*.[319] The rule in the United States is that the (p. 565) principle of specialty is a part of CIL as recognized and applied in the United States.[320] In *United States v. Paroutian*,[321] the court held that "[T]he test whether trial is for a 'separate offense' should not be some technical refinement of local law, but whether the extraditing country would consider the offense actually tried 'separate.'"[322] As further stated in *Fiocconi v. Attorney General*:[323] "The 'principle of specialty' reflects a fundamental concern of governments that persons who are surrendered should not be subjected to indiscriminate prosecution by the receiving government…"[324]

Evidentiary issues are also raised as a part of specialty in connection with dual criminality and double jeopardy. In *United States v. Saccoccia*[325] an interlocutory appeal before the Ninth Circuit was dismissed because the issues could be raised on appeal. Because the case had originated in Rhode Island, the appeal was before the First Circuit, which summarily rejected these claims, confusing the requirements of dual criminality and specialty. The First Circuit held that:

> Although the principles of dual criminality and specialty are closely allied, they are not coterminous. We elaborate below.
>
>> 1. *Dual Criminality.* The principle of dual criminality dictates that, as a general rule, an extraditable offense must be a serious crime (rather than a mere peccadillo) punishable under the criminal laws of both the surrendering and the requesting state. See *Brauch v. Raiche*, 618 F.2d 843, 847 (1st Cir. 1980). The current extradition treaty between the United States and Switzerland

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

embodies this concept. See Treaty of Extradition, May 14, 1900, U.S.–Switz., Art. II, 31 Stat. 1928, 1929–30 (Treaty).

The principle of dual criminality does not demand that the laws of the surrendering and requesting states be carbon copies of one another. Thus, dual criminality will not be defeated by differences in the instrumentalities or in the stated purposes of the two nations' laws. See *Peters v. Egnor*, 888 F.2d 713, 719 (10th Cir. 1989). By the same token, the counterpart crimes need not have identical elements. See *Matter of Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986). Instead, dual criminality is deemed to be satisfied when the two countries' laws are substantially analogous. See *Peters*, 888 F.2d at 719; *Brauch*, 618 F.2d at 851. Moreover, in mulling dual criminality concerns, courts are duty bound to defer to a surrendering sovereign's reasonable determination that the offense in question is extraditable. *See Casey v. Department of State*, 299 U.S. App. D.C. 29, 980 F.2d 1472, 1477 (D.C. Cir. 1992) (observing that an American court must give great difference to a foreign court's determination in extradition proceedings); *United States v. Van Cauwenberghe*, 827 F.2d 424, 429 (9th Cir. 1987) (similar) cert. denied, 484 U.S. 1042, 98 L. Ed. 2d 859, 108 S. Ct. 773 (1988).

(p. 566) Mechanically, then, the inquiry into dual criminality requires courts to compare the law of the surrendering state that purports to criminalize the charged conduct with the law of the requesting state that purports to accomplish the same result. If the same conduct is subject to criminal sanctions in both jurisdictions, no more is exigible. See *United States v. Levy*, 905 F.2d 326, 328 (10th Cir. 1990), cert. denied, 498 U.S. 1049, 112 L. Ed. 2d 778, 111 S. Ct. 759 (1991); see also *Collins v. Loisel*, 259 U.S. 309, 312, 66 L. Ed. 956, 42 S. Ct. 469 (1992) ("It is enough [to satisfy the requirement of dual criminality] if the particular act charged is criminal in both jurisdictions.").

2. *Specialty.* The principle of specialty—a corollary to the principle of dual criminality, see *United States v. Herbage*, 850 F.2d 1463, 1465 (11th Cir. 1988), *cert. denied*, 489 U.S. 1027, 103 L. Ed. 2d 217, 109 S. Ct. 1158 (1989)—generally requires that an extradited defendant be tried for the crimes on which extradition has been granted, and none other. See *Van Cauwenberghe*, 827 F.2d at 428; *Quinn v. Robinson*, 783 F.2d 776, 783 (9th Cir.) cert. denied, 479 U.S. 882, 93 L. Ed. 2d 247, 107 S. Ct. 271 (1986). The extradition treaty in force between the United States and Switzerland embodies this concept, providing that an individual may not be "prosecuted or punished for any offense committed before the demand for extradition, other than that for which the extradition is granted...." Treaty, Art. IX.

Enforcement of the principle of specialty is founded primarily on international comity. See *United States v. Thirion*, 813 F.2d 146, 151 (8th Cir. 1987). The requesting state must "live up to whatever promises it made in order to obtain extradition" because preservation of the institution of extradition requires the continuing cooperation of the surrendering state. *United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir.) (per curiam), cert. denied, 479 U.S. 1009, 93 L. Ed. 2d 707, 107 S. Ct. 652 (1986). Since the doctrine is grounded in international comity rather than in some right of the defendant, the principle of specialty may be waived by the asylum state. See id.

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

Specialty, like dual criminality, is not a hidebound dogma, but must be applied in a practical, commonsense fashion. Thus, obeisance to the principle of specialty does not require that a defendant be prosecuted only under the precise indictment that prompted his extradition, see *United States v. Andonian*, 29 F.3d 1432, 1435-36 (9th Cir. 1994), cert. denied, 130 L. Ed. 2d 883, 115 S. Ct. 938 (1995), or that the prosecution always be limited to specific offenses enumerated in the surrendering state's extradition order, see *Levy*, 905 F.2d at 329 (concluding that a Hong Kong court intended to extradite defendant to face a continuing criminal enterprise charge despite the court's failure specifically to mention that charge in the deportation order). In the same vein, the principle of specialty does not impose any limitation on the particulars of the charges lodged by the requesting nation, nor does it demand departure from the forum's existing rules of practice (such as rules of pleading, evidence, or procedure). *See United States v. Alvarez-Moreno*, 874 F.2d 1402, 1414 (11th Cir. 1989), cert. denied, 494 U.S. 1032 (1990); *Thirion*, 813 F.2d at 153; *Demjanjuk v. Petrovsky*, 776 F.2d 571, 583 (6th Cir. 1985), cert. denied, 475 U.S. 1016, 89 L. Ed. 2d 312, 106 S. Ct. 1198 (1986).

In the last analysis, then, the inquiry into specialty boils down to whether, under the totality of the circumstances, the court in the requesting state reasonably believes that prosecuting the defendant on particular charges contradicts the surrendering state's manifested intentions, or, phrased another way, whether the surrendering state would deem the conduct for which the requesting state actually prosecutes the defendant as interconnected with (as opposed to independent from) the acts for which he was extradited. *See Andonian*, 29 F.3d at 1439; *United States v. Cuevas*, 847 F.2d 1417, 1427–28 (9th Cir. 1988), *cert. denied*, 489 U.S. 1012, 103 L. Ed. 2d 185, 109 S. Ct. 1122 (1989); *United States v. Paroutian*, 299 F.2d 486, 490–91 (2d Cir. 1962).

A district court's interpretation of the principles of dual criminality and specialty traditionally involves a question of law and is, therefore, subject to plenary review in the court of appeals. See *Andonian*, 29 F.3d at 1434; *United States v. Khan*, 993 F.2d 1368, 1372 F.2d 1168, 1173 (10th Cir. 1991), *cert. denied*, 113 S. Ct. 107 (1992). Marching beneath this banner, appellant urges that his conviction must be set aside for three related reasons. (There is some dispute whether alleged violations of the principle of specialty can be raised by a criminal defendant. See, e.g., *Demjanjuk*, 776 F.2d at 583–84 (questioning whether the person being extradited (p. 567) "has standing to assert the principle of specialty"); *Kaiser v. Rutherford*, 827 F. Supp. 832, 835 (D.D.C. 1993) (asserting that "the rule of specialty is not a right of the accused but is a privilege of the asylum state and therefore [the defendant] has no standing to raise this issue") (internal quotation marks omitted). We need not probe the matter of standing for three reasons.

First, while we take no view of the issue, we realize that there are two sides to the story, and the side that favors individual standing has much to commend it. See, e.g., *United States v. Rauscher*, 119 U.S. 407, 422-24, 30 L. Ed. 425, 7 S. Ct. 234 (1886) (referring to specialty as a "right conferred upon persons brought from a foreign country" via extradition proceedings); *Thirion*, 813 F.2d at 151 & n. 5 (to like effect); see also *United States v. Alvarez-Machain*,

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

> 504 U.S. 655, 659–60, 119 L. Ed. 2d 441, 112 S. Ct. 2188 (1992) (suggesting the continuing vitality of the Rauscher decision).
>
> Second, the government has advised us that, for policy reasons, it does not challenge appellant's standing in this instance. Third, appellant's asseverations are more easily dismissed on the merits. See *Norton v. Mathews*, 427 U.S. 524, 532, 49 L. Ed. 2d 672, 96 S. Ct. 2771 (1976) (explaining that jurisdictional questions may be bypassed when a ruling on the merits will achieve the same result). None has merit." [326]

In these cases, the defendants, Stephen and Donna Saccoccia, were extradited from Switzerland on money laundering and RICO charges, but the requested state refused to grant extradition on CTR violations. In the Rhode Island prosecution, the government introduced evidence of CTR violations to prove the necessary predicates for RICO. The question therefore was whether evidence that cannot be used to prove guilt can be used to prove a predicate crime without which conviction of the more serious crime cannot be obtained. The defense argued against it, in part in reliance upon *United States v. Najohn*. The prosecution relied on *United States v. Thirion*, *United States v. Kember*, *United States v. Archhold-Newball*, *United States v. Flores*, and more particularly *United States v. Alvarez-Moreno*. *Thirion* held that "the doctrine of specialty does not purport to regulate the scope of proof admissible in the judicial forum of the requisitioning state."

It is indeed entirely valid that specialty does not control the admissibility of evidence needed to prove a crime for which extradition was granted. To hold otherwise would unjustifiably burden extradition requests with details of evidence intended to be introduced at trial. But there is nonetheless a distinction to be drawn between evidence needed to prove a crime for which extradition was granted and evidence of criminality for a crime that has been specifically excluded from the extradition granted by the requested state.[334] This is particularly significant (p. 568) with respect to RICO prosecutions, which are predicated on other crimes whose exclusion from prosecution by specialty should also be excluded from being used as evidence to *prove* a predicate offense, because the predicate offense cannot be charged as a crime. But without proof of guilt the legal elements of the ultimate crime cannot be proven. This situation is due to the nature and peculiarity of RICO, which relies on predicate offenses to create a new crime that is, ultimately, only a legislative fiction designed to enhance the penalties for persons who engage in multiple crimes of a certain type.

Applying specialty to evidentiary matters, the district court in *United States v. Kember*[335] found no requirement that evidence admitted at the trial of a relator extradited from the United Kingdom to the United States be limited to the evidence presented at the relator's extradition hearing. The *Kember* court noted that the scope of proof admissible into evidence in the requesting state was broadly interpreted in *United States v. Flores*,[336] which did not bar admissibility of evidence of prior offenses even though prosecution for such offenses was barred by the principle of specialty or other preclusions to prosecution.

The complexity of statutes such as RICO, money laundering, CTR requirements, and CCE in drug-related crimes frequently causes the government to issue superseding indictments after the surrender of a relator. In those cases, the United States can make a supplemental request to the requested state in order to obtain permission to prosecute on the new, additional, or altered charges. More commonly, these superseding indictments add newly discovered facts or refine the charges on the basis of which extradition was requested. These situations present mixed questions of law and fact. Where only questions of fact and supporting evidence arise, they usually are found not to be in violation of specialty. If the superseding indictment alters the charges to lesser ones, though still in reliance on the same substantial or essential facts, specialty is also not deemed to be violated. But, if the

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

charges or facts are substantially different, then there is a violation of specialty. Because of the mixed question of law and fact, and also because treaty provisions differ, court decisions vary. *United States v. Andonian*[337] reviews some of these problems:

> We review de novo the district court's determination that the prosecution on the superseding indictment did not violate the doctrine of specialty. *United States v. Khan*, 993 F.2d 1368, 1372 (9th Cir. 1993).
>
> "The doctrine of 'specialty' prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering state agreed to extradite." (p. 569) *United States v. Van Cauwenberghe*, 827 F.2d 424, 428 (9th Cir. 1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).[338] The doctrine is based on principles of international comity: to protect its own citizens in prosecutions abroad, the United States guarantees that it will honor limitations placed on prosecutions in the United States. *United States v. Cuevas*, 847 F.2d 1417, 1426 (9th Cir. 1988), *cert. denied*, 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989). Our concern is with ensuring that the obligations of the requesting nation are satisfied. *United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir.), *cert. denied*, 479 U.S. 1009, 107 S.Ct. 652, 93 L.Ed.2d 707 (1986). "Because of this, the protection exists only to the extent that the surrendering country wishes." *Id*. An extradited person may raise whatever objections the extraditing country is entitled to raise. *Cuevas*, 847 F.2d at 1426; *Najohn*, 785 F.2d at 1422.
>
> We look to the language of the applicable treaty to determine the protection an extradited person is afforded under the doctrine of specialty. The treaty with Uruguay, pursuant to which Vivas was extradited, provides:
>
>> A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted…unless…the requested Party has manifested its consent to his detention, trial or punishment for an offense other than that for which extradition was granted….
>
> Treaty on Extradition and Cooperation in Penal Matters, April 6, 1973, U.S.–Uru., art. 13, T.I.A.S. No. 10850 at 17–18 [hereinafter "Treaty"]. An extradited person, in any case, "may be tried for a crime other than that for which he was surrendered, *if the asylum country consents.*" *Najohn*, 785 F.2d at 1422 (quoting *Berenguer v. Vance,* 473 F.Supp. 1195, 1197 (D.D.C.1979) (emphasis in original)).
>
> …
>
> We agree with the government that the appropriate test for this case is "whether the extraditing country would consider the acts for which the defendant was prosecuted as independent from those for which he was extradited." *Cuevas*, 847 F.2d at 1428 (citing *United States v. Paroutian*, 299 F.2d 486, 491 (2d Cir. 1962)).[339]
>
> …
>
> Vivas argues that the doctrine of specialty was further violated because he was not tried on the same facts as those presented to the government of Uruguay. Specifically, he asserts that the United States convinced Uruguay with insufficient and false evidence that Vivas was involved in drug trafficking and that the United States then tried him on different evidence.
>
> The doctrine of specialty has been interpreted as requiring that "the prosecution be based on the same facts as those set forth in the request for extradition." *United States v. Sensi*, 879 F.2d 888, 895-96 (D.C.Cir.1989) (quotation omitted). The defendant in *Sensi* argued that he could not be tried on a 26-count indictment naming offenses that had not been listed before the magistrate of the surrendering

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

country. The court found that the language of the treaty required that the charges against the defendant be established "by the facts in respect of which his extradition [was] granted." *Id*. at 896 (quoting the relevant treaty).

…

Second, we note that the doctrine of specialty "has never been construed to permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state, as distinguished from limiting the jurisdiction of domestic courts to try or punish the fugitive for any crimes committed before the extradition, except the crimes for which he was extradited." *United States v. Thirion*, 813 F.2d 146, 153 (8th Cir. 1987) (quotations omitted). The doctrine of specialty is satisfied if the extraditing country honors the limitations placed on the prosecution by the (p. 570) surrendering state. *See Cuevas*, 847 F.2d at 1426. The government is not required, under the auspices of specialty, to try a defendant on the same *evidence* that was presented to the surrendering state, so long as it satisfies the requirement that trial is for the same offenses arising out of the same allegations of fact.[340]

In *United States v. Thirion*, mentioned above, the Eighth Circuit held that this principle is not violated when the prosecution provides evidence at trial establishing a defendant's membership in a conspiracy even when the requested state claims that conspiracy is neither provided for under its laws nor included on the list of extraditable offenses. In this case, the United States requested extradition from Monaco for the return of Thirion to face charges relating to an advance fee loan scheme. Monaco agreed to Thirion's extradition for every offense except for conspiracy, as this crime is not provided for under the laws of Monaco, and is not included in the list of offenses giving rise to extradition under Article II of the bilateral Treaty. At trial, inclusion of the conspiracy count was sustained over the defendant's objections. However, the court instructed the jury not to return a verdict on this count. Consequently, on appeal the issue was whether the principle of specialty prohibits the government from establishing Thirion's membership in the conspiracy as an evidentiary fact to prove guilt in other substantive offenses. In stating that the principle does not prohibit the introduction and use of evidence of a crime for which extradition was denied, the court held that the principle is not construed to permit alteration of existing rules of evidence or procedure "as distinguished from limiting the jurisdiction of domestic courts to try or punish the fugitive for any crimes committed before the extradition, except the crimes for which he was extradited." The Eleventh Circuit has relied on *Thirion* as an analog with regard to a defendant's challenge to a *Pinkerton* instruction with respect to a charge where the relator was extradited as a principal, and ruled "that the doctrine of specialty did not prohibit the government from seeking to establish a defendant's membership in a conspiracy as an 'evidentiary fact to prove guilt' in connection with the offenses for which he had been extradited."

In another case, the court held that the surrendering government's silence regarding prosecution of the defendant on all the charges in the extradition request did not provide a basis to conclude that prosecution of the relator on all such charges in the extradition request was not indiscriminate. The court in *Khan*[345] would not infer from Pakistan's silence concerning a particular count an agreement to extradite the relator on all counts in the extradition request where the extradition documents did not specifically refer to allegations of that count. The court held that the operative language of the treaty between the United States and Pakistan did not create a presumption that the principle of specialty would be satisfied in all cases where the prosecution is based on the same facts as those set forth in the request for extradition. The relevant provision of the treaty stated:

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

> A person surrendered can in no case be [prosecuted]…for any other crime or offence, or on account of any other matters, than those for which the extradition shall have taken place.[346]

The court concluded that this language suggests the need for an affirmative statement by the surrendering country on the counts upon which the extradition is based. Because Pakistan did not unambiguously agree to extradite Khan on the basis of the particular count in question, (p. 571) the principle of specialty had not been satisfied, and the court reversed Khan's conviction on this count.

An earlier Second Circuit case, *Shapiro v. Ferrandina*,[348] excluded prosecution in the requesting state for crimes committed before the request for extradition had been granted by the requesting state, if such crimes were not part of the extradition order. Nothing, however, precludes a requesting state from amending its request and including new offenses, provided they are within the meaning of the treaty and are offenses for which extradition can be granted. Similarly, nothing precludes a requesting state, which has received custody of an accused, from presenting a new request to the originally requested state for prosecuting the accused for another crime, and it would be the decision of the requested state to grant or deny it. In the United States such a procedure might require a new hearing, unless the new request is for a crime related to the one for which the original request was granted. This is particularly true with respect to any included offense.[349]

In *Berenguer v. Vance*,[350] where the United States was the extraditing state, the court consented to an expansion of an extradition order without a hearing before the final disposition of the accused's original case in Italy. Berenguer was extradited to Italy on a murder and aggravated battery charge, was acquitted, and subsequently arrested and detained following the U.S. government's consent to an expansion of the extradition order to include illegal possession of a military firearm. The court, in holding that a second hearing following extradition was not required, noted that "the rule of specialty is not a right of the accused but is rather a privilege of the asylum state by which its interests are protected."[351] Thus, the court stated that:

> Although the charges on which petitioner was extradited differ from that under which he stands accused, the Court cannot say that he has been deprived of his due process rights. As long as petitioner, who is a French national, was within the jurisdiction of the United States, this judicial system acted to protect the full panoply of his rights as vigorously as it would the rights of any citizen. Once his extradition was accomplished, however, he became subject to the judicial process of the receiving nation and could no longer claim a right to a judicial hearing on due process grounds.… This is not to say that a defendant could never successfully argue that he has a right to a hearing before expansion of an extradition order. If, for instance, a judicial officer refused to find probable cause on a specific charge and the requesting country thereafter sought to obtain the asylum country's consent to try the defendant on that same charge after accomplishing his extradition for a different offense, a court's determination might be very different. Such a situation would raise the possibility of a deliberate effort to evade the safeguards established to protect the defendant's rights.[352]

(p. 572) Additionally, the court noted that the doctrine of separation of powers compelled its decision, noting that:

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.

Judge Friendly's observation in *Shapiro v. Ferrandina*, in commenting upon the American practice of refusing to try an extradited party for a crime other than one enumerated in a relevant treaty, seems particularly appropriate here:

> This self-imposed restraint, however, need not necessarily imply that in the converse situation, when courts of this country are examining an extradition request from a foreign nation, we should seek to impose limits on the scope of subsequent prosecution of a person who is to be extradited for at least one crime in any event. *Since such a ruling can only be advisory in character, and in certain circumstances might cause embarrassments to the executive branch in the conduct of foreign affairs, arguably it should be left to the Secretary of State to determine whether to seek to impose any limitations since he alone will have the duty of making a response if the requesting state chooses not to follow our limitations.*[353]

In any such event, the record of the original extradition hearing should contain evidence of probable cause that such a crime had been committed, as is required by legislation or by treaty.

The requirement of a new hearing to determine probable cause for an included or related offense depends on the applicable treaty or the legislation. No hearing is required in states that do not have a similar statutory requirement, such as the United States' § 3184, or that do not consider the principle of specialty as the prerogative of the requested state.[354]

## 6.5. Use of Evidence for Crimes for Which Extradition Was Not Granted and for Purposes of Sentencing Enhancement[355]

The Eleventh Circuit held in *United States v. Garcia* that a sentence enhancement was outside the purview of the principle of specialty and that specialty does not control evidentiary rules in U.S. courts.[356] The rule is not violated by the admission of evidence of crimes that an individual was not extradited for if it is relevant to the crime charged. The Court held:

> Thus, evidence of money-laundering (for which extradition was specifically refused) was nevertheless admissible as evidence within the trial court's discretion for the purpose of proving a drug conspiracy (the crime for which extradition was granted). *United States v. Alvarez-Moreno*, 874 F.2d 1402, 1413–14 (11 Cir.1989). Similarly, even in the face of a refusal by a foreign government to extradite for aiding and abetting a drug conspiracy under 18 U.S.C. § 2, the doctrine of specialty was held not to preclude the instruction of the jury on the theory of vicarious liability approved in *Pinkerton v. United States*, 328 U.S. 640 66 S. Ct. 1180, 90 L. Ed. 1489 (1946), *United States v. Gallo-Chamorro*, 48 F.3d 502 (11th Cir. 1995).[357]

(p. 573) The *Garcia* court continued:

> The doctrine of specialty, as interpreted in our law, does not call for the extradition crime to be handled in a vacuum, in any of its phases. Thus, for example, an indictment in existence at the time of extradition can be lawfully superseded after extradition by an indictment charging larger quantities of drugs. *United States v. Puentes*, 50 F.3d 1567 (11th Cir. 1995). *See also United States v. Abello-Silva*, 948 F.2d 1168 (10th Cir.1991); *United States v. Rossi*, 545 F.2d 814 (2d Cir.1976); *United States v. Paroutian*, 299 F.2d 486 (2d Cir.1962).

> With respect to the doctrine of specialty and U.S. law governing sentencing, the doctrine of specialty does not restrict the scope of proof of other crimes that may be considered in the sentencing process. The distinction is thus drawn between proof of other crimes as a matter germane to the determination of punishment for the

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2023. All Rights Reserved.