# Exhibit J

1967
Nov. 7, 8, 10

LORD
PARKER C.J.,
SALMON L.J.
and
WIDGERY J.

REGINA v. AUBREY-FLETCHER, Ex parte ROSS-MUNRO

*Extradition—Person surrendered by foreign state—Committal proceedings—" Crimes ... proved by ... facts on which the surrender is grounded "—Whether " crimes ... disclosed by ... facts alleged in extradition proceedings "—" Proved "—" Facts "—Charges same as surrender charges—Evidence—Documents—Whether warrant in extradition proceedings for consideration —Evidence by witnesses deposing in extradition proceedings—Whether further evidence admissible—Extradition Act, 1870 (33 & 34 Vict. c. 52), s. 19.*

*Justices—Examining justices—Evidence—Person surrendered by foreign state—Whether evidence and procedure affected by s. 19 of Extradition Act, 1870—Facts and crimes alleged in extradition proceedings—Whether further evidence in support receivable.*

Consequent on extradition proceedings begun in England, the defendant was surrendered in and extradited from France on a warrant supported by depositions charging him with forging and uttering transfers and causing money to be transferred on forged transfers knowing them to be forged. He was brought before a magistrate for committal on those charges, and witnesses who had deposed in the extradition proceedings gave evidence. The prosecution sought to adduce further evidence relating to the charges, and the defendant objected that that evidence was inadmissible by virtue of section 19 of the Extradition Act, 1870 [1]; he applied for orders requiring the magistrate to examine the extradition documents and prohibiting him from receiving and considering evidence relating to facts other than the facts on which the surrender was grounded.

On the contention that a surrendered person could not be put in peril of conviction on any facts other than those put forward to secure his surrender: —

*Held,* that, on the true construction of section 19 of the Extradition Act, 1870, the words " such of the said crimes as may be proved by the facts on which the surrender is grounded " meant " such of the crimes as may be disclosed by the facts alleged in the extradition proceedings " (post, pp. 628F, 629B); that the facts alleged in the extradition proceedings against the defendant were of forging, uttering and causing money to be transferred on forged transfers (post, p. 628F); that there was no reason why further evidence in support of those facts and crimes could

---

[1] Extradition Act, 1870, s. 19: " Where, in pursuance of any arrangement with a foreign state, any person accused ... of any crime which, if committed in England, would be one of the crimes described in schedule I to this Act is surrendered by that foreign state, such person shall not ... be triable ... for any offence ... other than such of the said crimes as may be proved by the facts on which the surrender is grounded."

1967

Reg.
v.
Aubrey-
Fletcher,
Ex parte
Ross-Munro

not be adduced in the committal proceedings; and that, accordingly, the applications would be dismissed.

*Rex* v. *Corrigan* [1931] 1 K.B. 527; 47 T.L.R. 27, C.C.A. considered.

*Per curiam*: Section 19 is not concerned with procedure (post, pp. 627G, 629B). The magistrate must have before him the warrant in the extradition proceedings to be certain that he is not being asked to commit for a crime other than that on which the extradition proceedings were founded (post, pp. 628G, 629G—630A). Where the committal proceedings are for the charges on which the defendant was surrendered, it is unnecessary to consider the depositions in the surrender documents (post, pp. 629A, 630B).

APPLICATIONS for orders of mandamus and prohibition.

The applicant, James Alastair Ross-Munro, was surrendered in and extradited from France on a warrant containing six charges as follows. First, that in January, 1965, in London, with intent to defraud, he forged a valuable security namely a request for cable transfer of £55,977 3s. 1d. contrary to section 2 (2) (*a*) of the Forgery Act, 1913. The second and third charges, in connection with the same sum as in the first charge, related respectively to uttering a forged document purporting to be a request for cable transfer, contrary to section 6 (1) (2) of the Act of 1913, and, with intent to defraud, causing the sum to be transferred upon a forged instrument knowing it to be forged, contrary to section 7 of the Act of 1913. The fourth, fifth and sixth charges similarly concerned the sum of £55,908 12s. 6d. The warrant was supported by depositions.

The applicant was brought before the metropolitan magistrate (Mr. Aubrey-Fletcher) in committal proceedings on the six charges in respect of which he had been surrendered and extradited. On September 2 and 11, 1967, he was formally remanded in custody. On September 18 evidence was given by witnesses who had deposed in support of the warrant leading to his surrender and arrest. The magistrate indicated that the case was insufficiently strong for committal, and the prosecution sought and obtained an adjournment. On October 17, 1967, the applicant was again brought before the magistrate, further witnesses gave evidence, and the prosecution sought to tender the evidence of another witness. The applicant objected that that evidence should not be received, it was taken de bene esse, and the committal of the applicant was adjourned pending this application.

Further facts are stated in the judgment of Lord Parker C.J.

The applicant applied for an order of mandamus directed to the magistrate requiring him to examine the documents relating to

the extradition of the applicant with a view to ascertaining the facts on which his surrender was grounded, and orders prohibiting the magistrate from proceeding with the committal proceedings until he had examined those documents in order to ascertain those facts, and from receiving and, alternatively or, considering evidence relating to facts other than the facts on which the surrender of the applicant was grounded. The grounds for seeking relief were that the magistrate had refused to examine those documents and had not informed himself of the facts on which the surrender was grounded; and that, contrary to the provisions of section 19 of the Extradition Act, 1870, the magistrate had admitted, and had stated that he would take into account in determining whether there was evidence on which to commit on all or any of the charges, evidence relating to facts not being facts on which the surrender of the applicant was grounded.

*Sebag Shaw* Q.C. and *Richard Du Cann* for the applicant. The principle of section 19 of the Extradition Act, 1870, is that no defendant extradited to this country is to be put in peril of being committed for trial or convicted on any facts other than those which were put forward to procure his surrender. That section creates a special status for the person concerned, and gives him an immunity from being proceeded against for crimes based on other facts. The immunity is a kind of diplomatic immunity; it depends on status, albeit a degraded status. That is consonant with the section being based on reciprocal treaties between sovereign states who mutually contract to surrender accused persons subject to certain conditions and limitations.

The principle is reflected in the corresponding section, namely, section 3 (2) in respect of extradition from this country. Whereas in section 3 (2) the word used is " proved," the wording of section 19 is " may be proved " which means " capable of being proved."

*Rex* v. *Corrigan*[2] shows that the person can be tried, for example, for false pretences if extradited for fraudulent conversion, and vice versa so long as he is tried for an extraditable crime on the same facts. But the magistrate must, therefore, inform himself of the facts on which the person concerned was surrendered; unless the magistrate so informs himself he is not in a position to decide what his jurisdiction is. No objection could be taken if the further evidence sought to be adduced by the prosecution

---

[2] [1931] 1 K.B. 527; 47 T.L.R. 27, C.C.A.

1967

Reg.
v.
Aubrey-
Fletcher,
Ex parte
Ross-Munro

A  was merely corroborative, because corroboration goes merely to the quality of the evidence.

In section 19 "triable" means that the person surrendered cannot be put through the process of committal. "Facts" are facts to be inferred from the evidence; the accusation is not a fact within the section. Section 10 refers to "evidence," and there is B  a difference between facts and evidence; see section 2 (2) proviso of the Administration of Justice Act, 1933, in which reference is made to "facts or evidence disclosed."

Since section 19 of the Act of 1870 refers to facts which may be proved, and that means "capable of being proved," the trial court would be limited to the same facts as are admissible in the C  committal proceedings. On the facts alleged in the extradition proceedings and in evidence before the magistrate in the committal proceedings, the case established little more than opportunity; no actual conversion was shown. The magistrate is under a duty to look at the surrender documents to apprise himself of the facts to which the evidence he is empowered to consider can be directed.

D  The submissions for the applicant may be summarised in the following propositions. The only offences which are recognisable by the magistrate are those extradition crimes which are capable of being proved by the facts on which the surrender was grounded. Extradition crimes which can by proved only by establishing facts other than those on which the surrender was granted are outside E  the jurisdiction of the magistrate. It therefore follows that the consideration of facts or the reception of evidence relating to facts other than those in the surrender documents is not within the jurisdiction of the court. An extradited accused cannot be put in peril other than in the circumstances which have been stated F  unless he is first given the opportunity of returning to the country from which he is extradited. If new facts emerge, the process of extradition must be set in train again on the wider basis which includes the new facts.

*Paul Wrightson Q.C.* and *Henry Pownall* for the Crown. The arguments for the applicant are based on a misconception of the G  Act of 1870. He is not a fugitive criminal. The general scheme of the Act applies to fugitive criminals, who are persons wanted abroad, and the means by which this country sends them there. This case is the converse and within the only section, namely, section 19, which is the only exception to the general scheme in the Act.

Section 19 applies the treaties in reverse, and points out that

1967
Reg.
v.
Aubrey-
Fletcher.
Ex parte
Ross-Munro

no person who has been surrendered to this country shall be tried for an offence prior to his surrender; that is a cardinal rule of the treaties.

No special status is conferred by the section. The words " other than such of the said crimes as may be proved by the facts on which the surrender is grounded " merely define what are the offences prior to the surrender. The offences in the warrant are prior to the surrender, and unless the last 20 words were included, the section would render nugatory the whole object of the treaties. Those words do not purport to day down any form of procedure in this country for committal or at trial.

There is no separate section in the Act of 1870 on procedure in respect of a person surrendered, and committal and trial are according to the general law of this country.

Section 19 is aimed at regulating the type of charge on which a surrendered person may be committed. It would be proper for the applicant to require the magistrate to look at the surrender documents to establish the extraditable offence and so determine that, for example, he is not being asked to commit for murder when the surrender was for false pretences: see *Rex* v. *Corrigan*.[3]

In section 19 the words " other than such of the said crimes ", mean " other than the crimes proved to support the warrant " or " other than the crimes as disclosed on the facts." " Proved " in effect means " facts disclosing a prima facie offence."

*Du Cann* replied.

LORD PARKER C.J. In these proceedings Mr. Sebag Shaw moves on behalf of James Alastair Ross-Munro, the applicant, first for an order of mandamus directed to Mr. Aubrey-Fletcher, the metropolitan magistrate, requiring him to examine the documents relating to the extradition of the applicant with a view to ascertaining the facts upon which his surrender was grounded; secondly an order prohibiting the metropolitan magistrate from proceeding with the committal proceedings until he has examined those documents, and also from receiving and from considering evidence relating to facts other than the facts on which the surrender of the applicant was grounded. The real relief as I understand the point is the last that I have mentioned, namely a prohibition from receiving or considering evidence relating to facts other than the facts on which the surrender of the applicant was grounded.

The short facts here were that extradition proceedings were

[3] [1931] 1 K.B. 527.

1967

Reg.
v.
Aubrey-
Fletcher,
Ex parte
Ross-Munro

LORD
PARKER C.J.

commenced for the return to this country of the applicant from France. The warrant alleged six offences in two batches of three, in each case that he forged a valuable security, namely a cable transfer; secondly that with intent to defraud he uttered that forged document; and thirdly that with intent to defraud he caused the sum involved to be transferred upon a forged instrument knowing the same to be forged. The warrant was supported by depositions which disclosed that a company called S.A. Industrial Suppliers Ltd. from time to time issued request transfers to their bankers to transfer money to companies abroad. Those transfers had to be signed by a director and the secretary of the company and the request transfers would have attached to them invoices so that the director and secretary could see what the documents related to before signing the request transfer. The evidence quite shortly in the depositions was that two transfers of very large sums of money, in each case over £55,000, had been prepared by the applicant, who was head of the accounts department, the transfers had been signed in blank by the director and purported later to have been signed by the secretary. The secretary, looking at the signature, said that the signature appeared to be his, but for various reasons in regard to the manner in which the request transfer had been drawn up, he felt that it was not his signature.

The case therefore was one of opportunity, and grave suspicion in that the applicant, within a day or two of this, absented himself for a holiday and never returned. It was on that sort of evidence that the foreign state, France, surrendered the applicant to this country. He was then brought before the metropolitan magistrate with a view to committal. The matter came before the magistrate on September 2 and 11, and again on September 18.

The charges on which the magistrate was asked to commit were the very same charges the subject of the extradition proceedings, and I assume that the warrant in the extradition proceedings was before the magistrate. Evidence was then called in the form of witnesses who had deposed in the extradition proceedings, and having heard that evidence, which varied somewhat from the evidence in the depositions, the magistrate indicated that he did not think that a sufficiently strong case had been made out for committal. At that point the prosecution asked for an adjournment, and when the matter came before the magistrate again on October 17, the prosecution tendered further evidence. It is unnecessary to go through it in detail, but they desired to call as

1967
Reg.
v.
Aubrey-Fletcher,
Ex parte
Ross-Munro

Lord
Parker C.J.

a witness a banker from Zurich who gave evidence that these cable transfers had resulted in money coming forward to an account at his bank in the name of Viscotal, and that the applicant in person turned up with what I take it purported to be general authority of Viscotal, and was handed personally many hundreds of thousands of dollars representing the proceeds of these cable transfers. Objection was at once taken by the applicant's representative. In fact as the witness was only here for a short time, his evidence was given de bene esse.

The point involved here is a novel one in so far as no previous decision appears to have been given on the point. It depends upon the true construction of section 19 of the Extradition Act, 1870; that section reads:

> "Where, in pursuance of any arrangement with a foreign state, any person accused or convicted of any crime which, if committed in England, would be one of the crimes described in schedule I to this Act is surrendered by that foreign state, such person shall not, until he has been restored or had an opportunity of returning to such foreign state, be triable or tried for any offence committed prior to the surrender in any part of Her Majesty's dominions other than such of the said crimes as may be proved by the facts on which the surrender is grounded."

It is convenient at once to state that that section is complementary to section 3 (2) of the Act which is dealing with the case of a fugitive criminal, that is the foreigner, when he is surrendered by this country to the foreign state, and there it is provided that he shall not be surrendered to a foreign state unless provision is made by the law of that state, or by arrangement, that the fugitive criminal shall not, until he has been restored or had an opportunity of returning to Her Majesty's dominions, be detained or tried in that foreign state for any offence committed prior to his surrender other than the extradition crime proved by the facts on which the surrender is grounded.

The argument for the applicant is put very concisely by Mr. Shaw in this form: that the person concerned who is surrendered to this country cannot be committed and put in peril of conviction on any facts other than those put forward to secure his surrender.

Be it observed that the argument is not that all that the magistrate can do is to look at the evidence in the depositions and the surrender documents, and to decide whether to commit or not on that evidence alone. Indeed that would be quite an untenable proposition, if only because the legislation would have stated that if that were the intention.

1967

Reg.
v.
Aubrey-Fletcher,
Ex parte
Ross-Munro

LORD
PARKER C.J.

A   The way it is put, however, is this: that you must look at the surrender documents, not merely the warrant, but the depositions, to see what the "facts" were that the evidence and the depositions dealt with. It is conceded that once you find these facts, it is right and proper to supplement the evidence by calling further evidence so long as it relates to these facts—a typical illustration
B   would be a corroborative witness—but where, as here, the evidence sought to be put in is as to facts which were not specifically dealt with in the depositions, then it is said that that evidence is inadmissible.

This is a novel point and, if it be right, it has an alarming consequence. It would mean that not only is this a restriction
C   on the procedure on committal, a restriction on the receiving of evidence, but indeed logically it would affect the trial, because no evidence would be admissible at the trial unless it was in regard to facts raised in the surrender documents. Another alarming consequence would be that if, when the person concerned arrives in this country after being surrendered by the foreign state, he is
D   arrested, cautioned and questioned by a police officer, evidence of what he said, whether for him or against him, would be quite inadmissible.

In my judgment Parliament cannot have intended any such thing in this section. Two things are quite clear, as it seems to me. One is that that section is designed to prevent a man from
E   being tried after his surrender for a crime other than that for which he has been extradited. That is putting the matter quite generally, because, as *Rex* v. *Corrigan*[1] shows, it may be that a committal can take place for, let me say, fraudulent conversion when the crime alleged in the warrant was false pretences or vice versa. But, broadly speaking, the object is to ascertain the type of crime
F   for which he can be tried in this country after surrender. The words which have to be construed are words intended to define and describe that crime for which he can be committed and tried.

Secondly, as it seems to me, the section is not in any way intended to interfere with the ordinary procedures and laws of evidence in this country whether in committal proceedings or at
G   the trial. Indeed, it is to be observed that this is the only section in the Extradition Act, 1870, which is dealing with surrender by a foreign state of someone to this country. The Act, apart from the section, is dealing with what is referred to as fugitive criminals who are defined as persons accused or convicted of an

---

[1] [1931] 1 K.B. 527; 47 T.L.R. 27, C.C.A.

1967

Reg.
v.
Aubrey-
Fletcher,
Ex parte
Ross-Munro

Lord
Parker C.J.

extradition crime committed within the jurisdiction of a foreign state, and who are in or suspected of being in some part of Her Majesty's dominions. All the sections of the Act except section 19 are dealing with that position, and lay down an elaborate code of procedure dealing with what is to happen in this country in deciding whether this country will extradite a fugitive criminal.

Section 19 is alone dealing with the converse position, and is something which by treaty would clearly have to be provided for, to set out the reciprocal position. That being so, and bearing in mind that this is defining a particular crime for which he can be charged, it seems to me that the words must be read, if capable of being read, as merely meaning that, provided the crime for which he is charged is based on the same allegations as the crime set out in the warrant, once he is in this country he can be dealt with on committal and on trial according to the ordinary procedure and laws of this country. It is, I am quite satisfied, in no sense intended to be a restriction, for instance, on the evidence which can be called in this country, whether it be in the committal proceedings or in the trial itself.

One comes, therefore, to the important words which have to be construed, namely that he may only be tried in this country for "such of the said crimes as may be proved by the facts on which the surrender is grounded." Admittedly they are not easy words to construe; in the first place "proved" cannot mean "proved" as ordinarily understood. Proof will only arise if and when the defendant is committed, and the matter is dealt with by a jury. "Proved" cannot there mean proved in the ordinary sense of the word. In the second place "facts" are clearly not the same as "evidence." In my judgment the words, however, are capable of being read and should be read as meaning "such of the crimes as may be disclosed by the facts alleged in the extradition proceedings." Here the facts that were alleged were that this man had forged two cable transfers, had uttered those two cable transfers, had caused money to be transferred on those cable transfers, and the depositions described the manner in which it was alleged that these facts were carried out. In those circumstances I can see no reason whatsoever why further evidence in support of those facts and those crimes cannot be called before the magistrate in the committal proceedings, or indeed at the trial itself.

I would only add that in my judgment the magistrate must, as I see it, have at any rate the warrant in the extradition proceedings before him, because he must be certain that he is not being asked to commit for a crime other than that on which the

1967

Reg.
v.
Aubrey-
Fletcher,
Ex parte
Ross-Munro

A  extradition proceedings were founded. But save in regard to that, I think that the magistrate was quite right in refusing to look at the depositions; they are not evidence in our courts, it must be for the prosecution to call, as they did, the witnesses who deposed, and in my judgment the magistrate was quite right in agreeing to admit the further evidence which the prosecution desired to call.

B  Accordingly I would dismiss this application.

SALMON L.J. I entirely agree. In my judgment section 19 of the Extradition Act, 1870, is in no way concerned with procedure but solely with jurisdiction. It does not seek to limit or prescribe the evidence which may be called at a criminal trial. It is con-
C  cerned solely with the type of crime for which our courts have the power to try a man who has been extradited to this country. The clear object of the section is to prevent, for example, a man who has been surrendered on a warrant charging him with forgery, being tried in this country for a murder that he is alleged to have committed before the surrender.

D  When, as in this case, the man who has been surrendered is being charged in this country with the very offences in respect of which the warrant was issued, and for the trial of which he was surrendered by the foreign country, it seems to me that it would be putting a very strained, artificial and indeed ridiculous construction on section 19, to interpret it in the sense suggested
E  by Mr. Shaw. It might mean that these courts would have no power to try the man for the very crime in respect of which he was extradited, or at any rate that most material evidence might be excluded.

I entirely agree with Lord Parker C.J. that the last few words of the section are not very easy to construe. Whatever may be
F  their exact meaning, it seems to me fairly plain that when, as in the present case, a man has been surrendered for forgery, the fact upon which the decision of a foreign court to surrender him is grounded must be that he dishonestly made or altered the document in question. Obviously I think that the foreign court decided that he should be surrendered so that those facts should be investi-
G  gated in our courts to see whether he was guilty of the type of offence with which he was charged.

It may well be that in cases such as *Rex* v. *Corrigan*,[2] where a man is charged after extradition with an offence which is different from the offence in the warrant, it will be necessary to

[2] [1931] 1 K.B. 527; 47 T.L.R. 27, C.C.A.

630 QUEEN'S BENCH DIVISION [1968]

1967
Reg.
v.
Aubrey-Fletcher,
Ex parte
Ross-Munro

SALMON L.J.

look at the surrender documents to see whether the facts on which the surrender was grounded were such that they might constitute the offence with which it is proposed to charge him.

But where, as here, the charge which is preferred in this country is the very charge in respect of which he has been extradited, the very charge which the foreign court has surrendered him to this country to meet, it becomes entirely unnecessary in my view even to consider the surrender documents. I agree that this application should be dismissed.

WIDGERY J. I agree with both judgments.

*Applications dismissed.*

Nov. 8. *Certificate under s. 1 (2) of the Administration of Justice Act, 1960, that point of law of general public importance involved; question whether in committal proceedings in respect of the charge on which he was surrendered it is open to the prosecution to lead evidence of facts other than those deposed to in the surrender documents.*

Nov. 10. *Sebag Shaw Q.C.* applied to the court to consider widening the scope of the question in the certificate.

LORD PARKER C.J.: You may certainly tell their Lordships that we would not object to the question being framed in some other way, or additional questions.

Nov. 30, 1967. The Appeal Committee of the House of Lords (Lord Guest, Lord Wilberforce and Lord Pearson) dismissed the applicant's petition for leave to appeal.

Solicitors: *Kingsley, Napley & Co.; Director of Public Prosecutions.*

L. N. W.