UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                         :

UNITED STATES OF AMERICA       :
                         :   S5 22 Cr. 673 (LAK)

       v.                 :

                         :

SAMUEL BANKMAN-FRIED,     :

             Defendant.   :

------------------------------------------------------------------x

 

**MEMORANDUM OF LAW IN SUPPORT OF
SAMUEL BANKMAN-FRIED'S MOTION FOR DISCOVERY
ON THE BASIS THAT FTX IS A MEMBER OF THE PROSECUTION TEAM**

**<u>PRETRIAL MOTION NO. 5</u>**

Mark S. Cohen
Christian R. Everdell
S. Gale Dick
Sri K. Kuehnlenz
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, NY  10022
(212) 957-7600
mcohen@cohengresser.com
ceverdell@cohengresser.com
sgdick@cohengresser.com
skuehnlenz@cohengresser.com

*Attorneys for Samuel Bankman-Fried*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT...................................................................................................... 1

ARGUMENT................................................................................................................................... 3

I.      THE GOVERNMENT'S DISCOVERY OBLIGATIONS ENCOMPASS
        MATERIAL IN THE POSSESSION, CUSTODY, AND CONTROL OF THE
        PROSECUTION TEAM ........................................................................................................ 3

II.     THE FTX DEBTORS ARE PART OF THE PROSECUTION TEAM ............................... 5

        A.      The FTX Debtors' Collaboration and Engagement with the Prosecution Has
                Gone Far Beyond Typical Company Cooperation.................................................... 5

                1.      The Government Has Effectively Deputized FTX and Its Counsel as
                        Investigating Agents to Analyze and Synthesize Evidence........................ 5

                2.      The Government Has Outsourced Its *Brady* Obligations to the FTX
                        Debtors...................................................................................................... 11

                3.      The FTX Debtors Have Served as the Public Mouthpiece of the
                        Prosecution............................................................................................... 13

        B.      The Court Should Order Discovery or, in the Alternative, an Evidentiary
                Hearing............................................................................................................... 14

CONCLUSION ............................................................................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brady v. Maryland*,
    373 U.S. 83, 83 S. Ct. 1194 (1964)................................................................ *passim*

*Giglio v. United States*,
    405 U.S. 150, 92 S. Ct. 763 (1972)....................................................................1, 3

*Gov't of the V.I. v. Martinez*,
    780 F.2d 302 (3d Cir. 1986)..................................................................................16

*Kyles v. Whitley*,
    514 U.S. 419, 115 S. Ct. 1555 (1995)....................................................................3

*United States v. Barcelo*,
    628 F. App'x 36 (2d Cir. 2015) .............................................................................4

*United States v. Bin Laden*,
    397 F. Supp. 2d 465 (S.D.N.Y. 2005)....................................................................3

*United States v. Blaszczak*,
    308 F. Supp. 3d 736 (S.D.N.Y. 2018)..............................................................5, 15

*United States v. Connolly*,
    16 CR. 0370 (CM), 2019 WL 2120523 (S.D.N.Y. May 2, 2019) .........................15

*United States v. Ghailani*,
    687 F. Supp. 2d 365 (S.D.N.Y. 2010)....................................................................3

*United States v. Meregildo*,
    920 F. Supp. 2d 434 (S.D.N.Y. 2013)................................................................4, 5

*United States v. Stewart*,
    433 F.3d 273 (2d Cir. 2006)........................................................................4, 5, 15

**Page(s)**

**Statutes and Rules**

11 U.S.C. § 330 ....................................................................................................6

15 U.S.C. Ch. 2B § 78a *et seq.* ("FCPA") ..........................................................10

18 U.S.C. § 3500 ("Jencks Act") ......................................................................1, 3

S.D.N.Y. Local Crim. R. 23.1.............................................................................14

Fed. R. Crim. P. 16 ..........................................................................................1, 3


**Other Authorities**

U.S. Dep't of Justice, Justice Manual, JM 9-28.700 (2018).............................10

U.S. Dep't of Justice, Justice Manual, JM 9-28.720 (2018).............................10

Defendant Samuel Bankman-Fried respectfully submits this pretrial motion for discovery. As discussed below, the FTX Debtor Entities ("FTX Debtors" or "FTX") should be considered part of the "prosecution team" for purposes of the discovery obligations of the U.S. Attorney's Office for the Southern District of N.Y. (the "Government"). Thus, we respectfully request that the Court order the Government to review the files that are in the possession, custody, or control of the FTX Debtors and to disclose any materials that are discoverable pursuant to Rule 16, *Brady*, *Giglio*, and the Jencks Act.

## PRELIMINARY STATEMENT

Since November 2022, the FTX Debtors have been working hand-in-glove with the Government to investigate and prosecute Mr. Bankman-Fried. A few days before FTX declared bankruptcy on November 11, 2023, and while FTX was trying to raise money to make all customers whole, FTX's legal advisors went to the Government to accuse Mr. Bankman-Fried behind his back without knowing the full facts, and ultimately forced him to step down as CEO. Within just a few days of taking charge of FTX at the recommendation of those same legal advisors, the new CEO, John Ray III, publicly stated his conclusion that Mr. Bankman-Fried, alone, was responsible for the problems at FTX. Since then, Mr. Ray and the FTX Debtors' counsel have acted as a public mouthpiece for the Government by continuing to make disparaging remarks about Mr. Bankman-Fried in the FTX bankruptcy proceedings and have assumed the role of prosecutor by publicly labeling him "the villain."

But Mr. Ray and the FTX Debtors have done far more for the prosecution than simply painting Mr. Bankman-Fried as the villain in the public domain. The Government has effectively deputized Mr. Ray, the FTX Debtors, and their counsel as federal agents to review and synthesize the evidence for them. The FTX Debtors control FTX's internal documents, not the Government. Rather than collecting and reviewing the FTX documents itself, the

Government sends the FTX Debtors voluntary requests for targeted material that the Government believes will be inculpatory, and the FTX Debtors produce whatever materials they deem relevant.  In doing so, the Government is outsourcing its *Brady* obligations to a private party that has no *Brady* obligation to find and produce exculpatory material.  Indeed, the FTX Debtors have the *opposite* incentive because they have already determined that Mr. Bankman-Fried is guilty and prematurely staked their reputations on it.  The defense therefore has grave concerns that the documents in the possession of the FTX Debtors contain undisclosed *Brady* material that the defense has no practical way to obtain.

Meanwhile, the FTX Debtors and their outside counsel continue to make extraordinary efforts to help the prosecution that go far beyond mere cooperation with a criminal investigation, even though as debtors in bankruptcy, FTX's actual risk of prosecution is extremely low. Among other things, they have (i) interviewed witnesses, gathered facts, and reviewed documents in conjunction with and at the direction of the Government; (ii) synthesized information and provided analysis for the Government to support the charges in the Superseding Indictment, Mar. 28, 2023, ECF No. 115 ("S5 Indictment") and prior indictments; (iii) assisted the Government in developing its strategy, including identifying and suggesting further areas of investigation; (iv) analyzed potential legal claims at the Government's request; and (v) selectively waived attorney-client privilege to better assist the Government's investigation.  All told, they have provided tens of millions of dollars of free work to the prosecution.

As such, under established case law from this Circuit, including this Court, the FTX Debtors are part of the "prosecution team" for purposes of the Government's discovery obligations under Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1964), *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763 (1972), and 18 U.S.C.

§ 3500 (the "Jencks Act").  The Court should therefore order the Government to review the documents in the possession, custody, or control of the FTX Debtors and produce any discoverable material.

## ARGUMENT

The Government's discovery obligations under Rule 16, *Brady*, *Giglio*, and the Jencks Act extend to materials in the possession, custody, and control of the "prosecution team."  In this case, the FTX Debtors have worked so extensively with the Government, and are so enmeshed in the investigation, analysis, and strategy of the Government's case, that they must be considered part of the "prosecution team" for purposes of the Government's discovery obligations.

## I.     THE GOVERNMENT'S DISCOVERY OBLIGATIONS ENCOMPASS MATERIAL IN THE POSSESSION, CUSTODY, AND CONTROL OF THE PROSECUTION TEAM

Prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case."  *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567 (1995) (discussing prosecutors' obligations under *Brady* and its progeny).  "A prosecutor has constructive knowledge of any information held by those whose actions can be fairly imputed to him—those variously referred to as an 'arm of the prosecutor' or part of the 'prosecution team.'" *United States v. Bin Laden*, 397 F. Supp. 2d 465, 481 (S.D.N.Y. 2005) (collecting cases).  Courts in this District have applied the "arm of the prosecution" doctrine to the Government's discovery obligations under Rule 16 and the Jencks Act, as well as *Brady* and *Giglio*.  *See United States v. Ghailani*, 687 F. Supp. 2d 365, 372 (S.D.N.Y. 2010) (Rule 16); *Bin Laden*, 397 F. Supp. 2d at 484-85 (Jencks Act, *Brady*, and *Giglio*).

Whether someone is part of the prosecution team "does not turn on the *status* of the person with actual knowledge, such as a law enforcement officer, prosecutor, or other government official.  In other words, the relevant inquiry is what the person *did*, not who the

person *is*." *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006) (emphasis in original); *see also id.* ("[T]he propriety of imputing knowledge to the prosecution is determined by examining the specific circumstances of the person alleged to be an 'arm of the prosecutor.'" (quoting *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975))). As Judge Pauley explained in *United States v. Meregildo*:

> [U]nder the totality of the circumstances, the more involved individuals are with the prosecutor, the more likely they are team members. *Stewart*, 323 F. Supp. 2d at 616–18. Among many others, these circumstances include whether the individual actively investigates the case, acts under the direction of the prosecutor, or aids the prosecution in crafting trial strategy. *See, e.g.*, *United States v. Diaz*, 176 F.3d 52, 106–07 (2d Cir. 1999). In some cases, when an individual is significantly involved with the prosecution, the presence of a single factor may warrant imputation. *Cf. United States v. Stein*, 488 F. Supp. 2d 350, 364 (S.D.N.Y. 2007) (holding that materials in corporation's files are within government's "control" for Rule 16 purposes because of cooperation agreement).

920 F. Supp. 2d 434, 442, (S.D.N.Y. 2013), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015). Thus, "[i]ndividuals who perform investigative duties or make strategic decisions about the prosecution of the case are considered members of the prosecution team." *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (summary order).

Courts have drawn a distinction between circumstances where "witnesses and agents perform separate functions"—*i.e.*, where "[a]gents investigate," and "[w]itnesses relate information they observe"—and circumstances where "the Government uses an informant as a government agent and directs him to gather information," and thus "a court may hold the [g]overnment responsible for his actions." *Meregildo*, 920 F. Supp. 2d at 444. In most cases, "[p]rosecutors do not direct witnesses to investigate, and witnesses do not advise prosecutors on trial strategy," and thus "cooperating witnesses are rarely members of the prosecution team." *Id.* However, as this Court has noted, the Second Circuit has suggested that it would be appropriate

to find a witness is part of the prosecution team if the witness was "involved with the investigation, . . . interviewed witnesses or gathered facts, or reviewed documents or developed prosecutorial strategy." *United States v. Blaszczak*, 308 F. Supp. 3d 736, 741-42 (S.D.N.Y. 2018) (Kaplan, J.) (alterations and internal quotations omitted) (describing *Stewart*, 433 F.3d at 298).

## II.     THE FTX DEBTORS ARE PART OF THE PROSECUTION TEAM

The FTX Debtors must be considered a member of the prosecution team because the Government is relying on them to identify and produce *Brady* material from FTX's own documents.  Moreover, the FTX Debtors and their counsel have become an integral part of the Government's investigation team by reviewing and synthesizing documents, interviewing witnesses, developing strategy, identifying further areas of investigation, and analyzing potential legal claims at the prosecution's request.  *See Meregildo*, 920 F. Supp. 2d at 442.

### A.     The FTX Debtors' Collaboration and Engagement with the Prosecution Has Gone Far Beyond Typical Company Cooperation.

#### 1.     *The Government Has Effectively Deputized FTX and Its Counsel as Investigating Agents to Analyze and Synthesize Evidence.*

The FTX Debtors' work for the prosecution goes so far above and beyond standard company cooperation that the Government has effectively deputized the company to aid the prosecution.  According to Mr. Ray, FTX has been working "night and day" as part of an "ongoing exercise" to provide information to the prosecutors upon request. Ex. 9 (Excerpt of Transcript of Feb. 6, 2023 Hearing, *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.) (hereafter "Feb. 6 Tr.")) at 53:21-54:7, 66:5-9.[1]  From November 2022 to February 2023, the FTX Debtors' counsel has dedicated hundreds of attorney hours exclusively

---

[1]  Citations to "Ex. _" refer to exhibits attached to the Declaration of Christian R. Everdell in Support of Samuel Bankman-Fried's Pretrial Motions dated May 8, 2023.

to assisting federal prosecutors, including over 150 hours on calls and correspondence with the Government. *See generally* Bankr. Dkt. 648-2; Bankr. Dkt. 721-1; Bankr. Dkt. 818-2; Bankr. Dkt. 1221-2.[2] FTX has conducted interviews of at least 19 employees of FTX Group—and later gave "read outs" of interview memoranda to the prosecution[3]—and continues to "identify, interview, and collect information from potentially relevant witnesses." Bankr. Dkt. 1242-1 at 10. And FTX Debtors' counsel have spent countless hours collecting, reviewing, and analyzing documents. This work, according to FTX Debtors' counsel, has cost FTX "tens of millions of dollars"—labor provided free of charge to the Government. Ex. 9 (Feb. 6 Tr.) at 113:12-15.[4]

Indeed, Mr. Ray testified in the bankruptcy proceedings that FTX and its counsel spent most of his first 90 days as CEO of FTX responding to requests from the Government and updating them in real time to assist the prosecution:

> Our teams have been involved with, you know, virtually daily requests. . . . [W]e've had over 150 requests from the Southern District, produced substantial amounts of information, and provided substantial cooperation relative to instances where they wanted specific information related to certain actions, prehistoric actions, for the company. So, it's virtually an ongoing exercise, but the last, you know, roughly 90 days have been an extremely intense effort to provide the information that the Government has requested which, obviously, you know, yielded substantial results in record time.

---

[2] Citations to "Bankr. Dkt. _" refer to docket entries in *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.).

[3] *See* Bankr. Dkt. 818-2 at 529, 531 (billing for a 1.4-hour meeting with the Government "re: interview readouts" and internal correspondence "re: read out of former FTX US personnel memo to SDNY").

[4] Consistent with the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, FTX's counsel has filed its bills with applications for compensation in the bankruptcy proceeding. Those bills reflect that FTX has employed over 120 attorneys, including several former Assistant U.S. Attorneys, and it is evident that a meaningful number of those attorneys have been deployed as part of the prosecution team.

Ex. 9 (Feb. 6 Tr.) at 53:21-54:7.  The FTX Debtors' work has been integral to the prosecution, and Mr. Ray has proudly claimed the lion's share of the credit for the prosecution's "success" to date:  "[T]he role of [FTX's counsel] . . . in contacting federal prosecutors . . . has been of critical importance to the speed with which federal prosecutors have been able to charge and arrest Mr. Bankman-Fried and charge (and obtain guilty pleas from) Ms. Ellison and Mr. Wang." Bankr. Dkt. 509 ¶ 2.

But the FTX Debtors and their counsel are not simply collecting documents for the Government and responding to information requests.  At the direction of the prosecutors, they are synthesizing and analyzing evidence and providing their interpretation of the facts on critical issues of case strategy, including what crimes to charge.  Mr. Ray has described this as a "circular effort" to gather and analyze information of interest to the Government, whereby FTX "get[s] questions, we provide information, that information gets synthesized, that turns into new inquiries, new questions, and we're continuing to evolve in the process."  Ex. 9 (Feb. 6 Tr.) at 66:2-9.

FTX's iterative and collaborative fact-finding process with the Government is evident in emails disclosed in discovery and attorney bills filed in the bankruptcy proceeding.  These documents reflect that the FTX Debtors and their counsel not only search for information responsive to the Government's requests; they take direction from Government as to investigation "priorities," furnish the prosecution with detailed analysis and work product related to those "priorities," and offer their strategic opinions about whether the evidence supports additional charges.

For example, in January 2023—before the filing of the Third Superseding Indictment, Feb. 23, 2023, ECF No. 80 ("S3 Indictment"), which added, among other things, a charge of

operating an unlicensed money transmitting business—the prosecutors sent FTX Debtors' counsel a long list of the Government's current "top priorities." *See* Ex. 10 (Email re: FTX – Priority Requests for Documents and Presentations) at SDNY_03_00568321-322. Among the many priority items was a request to FTX Debtors' counsel for "[a] presentation on anything you can determine with respect to whether FTX.com, Alameda Research, and/or North Dimension were acting as an unlicensed money transmission business." *Id*. at SDNY_03_00568322. FTX Debtors' counsel responded that it needed to complete its review of approximately "6000 documents" before it could make the requested presentation. *Id*. at SDNY_03_00568321. In mid-February 2023, a little over a month after this email exchange and presumably after FTX Debtors' counsel gave the prosecutors the requested presentation concerning the viability of the charge, FTX voluntarily agreed to waive attorney-client privilege as to these topics and sent the Government documents containing legal advice from FTX outside counsel to further "assist in [its] investigation." *See* Ex. 10 (Email re: FTX – Priority Requests for Documents and Presentations) at SDNY_03_00568314-315. One week later, the Government superseded the Indictment and added the unlicensed money transmitting count. *See* S3 Indictment ¶¶ 83-86. This is just one of many examples of the FTX Debtors and their counsel synthesizing evidence and providing strategic advice to the prosecution. *See, e.g*., Bankr. Dkt. 721-2 at 459 ("[a]nalyz[ing] FTX database and account/transaction records from post-shutdown period in response to SDNY inquiries and related investigative workstreams"); *id.* at 438 ("analyz[ing] trading data and related materials in response to SDNY priority requests"); *id.* at 482 ("correspondence to J. Bromley and N. Roos (SDNY) re: China evidence"); Bankr. Dkt. 818-2 at 5 ("analyz[ing] potential asset forfeiture strategies and areas for collaboration with SDNY");

*id.* at 9, 18 (calls with "SDNY" "re: asset recovery strategies and proposed workstreams" and "re: coordinating asset recovery").

The FTX Debtors and their counsel have also gone beyond simply responding to the Government's requests and have affirmatively identified additional avenues of investigation. In an email dated December 16, 2022, FTX's counsel wrote that they "wanted to draw [the prosecutor's] attention to" certain data "that resembles a transfer discussed by Sam Bankman-Fried in Signal chats to address the $45 million 'hole' in the FTX.us balance sheet." *See* Ex. 11 (Email re: FTX) at SDNY_02_00449361. FTX Debtors' counsel linked that data to Signal chats they had previously produced to the Government which referenced this purported "$45M deficit in customer assets." *Id*. The Government adopted the FTX Debtors' mistaken version of these events and, not surprisingly, allegations concerning this alleged $45 million "hole" in the FTX.US balance sheet appeared in the S3 Indictment filed on February 23, 2023. *See* S3 Indictment ¶ 6.

FTX Debtors' counsel has also provided "interview readouts" to the Government, apparently referring to the practice of reading aloud a memorandum summarizing a witness interview to disclose its contents without sending the memorandum itself, to avoid disclosure by the recipient. *See* Bankr. Dkt. 818-2 at 529, 531 (billing for a 1.4-hour meeting with the Government "re: interview readouts" and internal correspondence "re: read out of former FTX US personnel memo to SDNY"). These actions go above and beyond what is expected of corporate cooperation. Indeed, the Justice Manual specifies that "prosecutors may not request protected notes or memoranda generated by the interviews conducted by counsel for the corporation." U.S. Dep't of Justice, JM 9-28.720 n.2.

The FTX Debtors have also selectively waived privilege only on certain topics to aid the Government in its prosecution. The waivers have conspicuously related to topics that ultimately led to additional charges against Mr. Bankman-Fried. For example, as noted above, the FTX Debtors waived privilege as to legal advice concerning whether FTX, Alameda, or entities other than FTX.US needed to register as a money services business ("MSB") or have money transmitting licenses, which is central to Count 10. Ex. 10 (Email re: FTX Priority Requests for Documents and Presentations) at SDNY_03_00568314-315. The FTX Debtors also waived privilege as to legal advice provided by Chinese attorneys and the unfreezing of certain cryptocurrency accounts held by Alameda, which is central to the FCPA charge in Count 13.[5] The FTX Debtors did this even though DOJ's Justice Manual expressly provides that "a corporation is not required to waive its attorney-client privilege or attorney work product protection to be eligible to engage in cooperation or satisfy any threshold" of evaluating cooperation. U.S. Dep't of Justice, JM 9-28.700 Cmt. B; *see also id.* at 9-28.720 ("Eligibility for cooperation credit is not predicated upon the waiver of attorney-client privilege or work product protection."). By contrast, when the FTX Debtors have been asked to waive privilege on topics that might assist Mr. Bankman-Fried's defense or offer a contrary narrative, they have steadfastly refused.[6]

---

[5] The Government confirmed by letter dated May 1, 2023 that FTX either did not assert privilege, or agreed to waive privilege, as to legal advice on this subject.

[6] According to former FTX in-house counsel Dan Friedberg, who asked the FTX Debtors to waive privilege so that he could discuss certain topics with the FBI and the regulators, the FTX Debtors refused to waive privilege because Mr. Friedberg was critical of legal services FTX's outside counsel had provided FTX in the past. Bankr. Dkt. 530 ¶ 45 ("[FTX's counsel] repeatedly refused this request and attempted to muzzle me in an effort to avoid me raising issues adverse to [itself].").

### 2. The Government Has Outsourced Its Brady Obligations to the FTX Debtors.

By using the FTX Debtors' outside lawyers effectively as a work force of deputized federal agents to review, analyze, and produce what the FTX Debtors believe is relevant evidence in the criminal case against Mr. Bankman-Fried, the Government has outsourced its *Brady* obligations to an entity that has no *Brady* obligations whatsoever. As discussed above, the FTX Debtors and their counsel control access to FTX's documents and act as gatekeepers for the Government. They are providing documents to the Government in response to specific, targeted requests designed to elicit inculpatory material that fits the Government's pre-existing theory of the case. The FTX Debtors have no incentive to look for or provide exculpatory material to the Government, which is the only practical way the defense will ever receive it. This has allowed the Government to build its case without acquiring and thus having to disclose potentially exculpatory *Brady* materials.

Indeed, Mr. Ray, the FTX Debtors, and FTX's counsel have the exact *opposite* incentive. It is self-evident from their public comments that they already believe Mr. Bankman-Fried to be the "villain" and are doing their utmost to lay blame at his feet and assist the Government in his prosecution. The FTX Debtors have made no secret of the fact that their interests are united with the Government's in prosecuting Mr. Bankman-Fried. According to FTX Debtors' counsel and Mr. Ray, one of the express goals of the FTX Debtors' investigation is to identify "fraud" and "malfeasance" by "insiders," so that the FTX Debtors may pursue recovery in avoidance actions. *See* Ex. 9 (Feb. 6 Tr.) at 65:3-23, 113:24-114:21. Moreover, the role of FTX's in-house counsel in collaborating with the Government both before and after Mr. Ray assumed control of FTX raises significant additional concerns. While Mr. Bankman-Fried was still CEO of FTX and at a time when he was trying to resolve the crisis with new funding to make FTX customers whole,

FTX's in-house counsel approached the Government to accuse Mr. Bankman-Fried, despite not knowing the full facts, and deflect blame from themselves. These same lawyers have played a significant role in the FTX Debtors' assistance in the Government's investigation, despite the apparent conflicts of interest. This casts further doubt on the likelihood that the FTX Debtors will identify and disclose possible *Brady* material.

The defense has reason to be concerned that the FTX Debtors have exculpatory evidence that has not been disclosed to us. For example, Mr. Bankman-Fried is accused of having "caused the creation of secret loopholes in the computer code that powered FTX." S5 Indictment ¶ 4. But despite the defense's requests, the Government has not provided the codebase history, which would elucidate exactly who wrote any alleged loopholes and when. The codebase history exists and is in the possession of the FTX Debtors, which have already produced millions of pages of documents and terabytes of data to the prosecution. The defense is entitled to review it.

Similarly, FTX's legal bills from outside counsel Fenwick & West include many hours billed for work spent reviewing and advising FTX on its document retention policy and specifically providing advice on the use of ephemeral messaging apps. *See* Ex. 12 (Excerpt of Fenwick & West LLP Legal Bills dated Jan. 26, 2021) at SDNY_03_00208375. This document reflects that the FTX Debtors have in their possession documents reflecting that FTX sought legal advice from counsel about the use of ephemeral messaging apps. *See id.* To our knowledge, the defense has not received these documents in discovery. This evidence bears directly on the allegation that Mr. Bankman-Fried "instructed employees to communicate over Signal, and directed that employee Signal messages be set to auto-delete after brief periods of time, in part to prevent the preservation of evidence that could be used against him." S5 Indictment ¶ 60. Moreover, if the reason these documents have not been produced is that the

FTX Debtors are asserting privilege, it is yet another example of the FTX Debtors' selective waiver of privilege only when it may assist the Government, not when it may be favorable to the defense.

### 3. The FTX Debtors Have Served as the Public Mouthpiece of the Prosecution.

The FTX Debtors have also used their public platform in the bankruptcy proceedings to advance the prosecution's narrative in the press. Although not necessary to the bankruptcy process, Mr. Ray began gratuitously attacking Mr. Bankman-Fried within a week of taking control of FTX, blaming him for the problems at FTX and calling him the "villain." Bankr. Dkt. 511 ¶ 9. In numerous public remarks that were repeated in the media, Mr. Ray and the FTX Debtors' counsel asserted Mr. Bankman-Fried's guilt in matters that go to the heart of the allegations in the S5 Indictment.

Among many other examples, Mr. Ray told Congress that FTX's former executives engaged in "old-fashioned embezzlement."[7] Mr. Ray accused Mr. Bankman-Fried of "repeatedly, pervasively, and often persuasively, lying to stakeholders and the customers and creditors in order to maintain the digital con game." Ex. 13 (Excerpt of Apr. 12, 2023 Hear'g Tr., *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.)) at 9:5-8. Mr. Ray further asserted that the failures that occurred at FTX were due to "hubris, incompetence, and greed." Bankr. Dkt. 1242-1 at 7. Mr. Ray has also eagerly taken credit for Mr. Bankman-Fried's indictment, remarking that "[t]he villains are being pursued by the appropriate criminal

---

[7] *See* David McCabe & Ephrat Livni, *FTX Chief: Company Appeared to Use 'Old-Fashioned Embezzlement'*, N.Y. TIMES (Dec. 13, 2022), https://www.nytimes.com/2022/12/13/technology/ftx-crypto-hearing.html.

authorities largely as a result of the information and support they are receiving at my direction from [FTX's] advisors." Bankr. Dkt. 511 ¶ 9.[8]

Such gratuitous ad hominem attacks are unnecessary to the bankruptcy proceedings and appear to serve no purpose other than generating headlines. The FTX Debtors' remarks are so inflammatory that the Attorney General of the Bahamas has criticized the FTX Debtors' "intemperate statements" and urged "prudence and accuracy in all future filings."[9] The FTX Debtors' public dart-throwing and extraordinary assistance to the prosecution are particularly curious given the fact that, as a debtor in bankruptcy that has replaced its prior management, the FTX Debtors' actual risk of prosecution is extremely low. Nor, to our knowledge, have the FTX Debtors indicated in public filings or statements that they are a target (or even a subject) of any criminal investigation by DOJ. Rather, these statements reflect that the FTX Debtors' interests are aligned with the Government in prosecuting Mr. Bankman-Fried.

**B.      The Court Should Order Discovery or, in the Alternative, an Evidentiary Hearing**

In sum, the Government has effectively deputized the FTX Debtors to identify facts and legal theories to support the prosecution of Mr. Bankman-Fried. Had the Government conducted these investigatory steps on its own, it would have to review responsive materials from FTX and disclose to the defense any discoverable material, including any exculpatory *Brady* information. By deputizing the FTX Debtors to conduct this review, however, the Government is able to

---

[8] Indeed, had one of the prosecutors spoken these same words publicly, the defense would be well within its rights to seek relief from the Court under Local Criminal Rule 23.1. *See* Local Criminal Rule 23.1(a) ("It is the duty of . . . government agents and police officers, not to release or authorize the release of non-public information or opinion . . . if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."). Should the Court find that the FTX Debtors are part of the prosecution team, we reserve our rights to request such relief in the future.

[9] *See* Thomas Barrabi, *Bahamas Shreds New FTX CEO John Ray Over 'Extremely Regrettable' Accusations*, N.Y. POST (Nov. 28, 2022), https://nypost.com/2022/11/28/bahamas-shreds-ftx-ceo-john-ray-extremely-regrettable-accusations/.

obtain incriminating information cherry-picked by the FTX Debtors, which have no obligation or incentive to provide any exculpatory information.

Under similar circumstances, a company's cooperation with the government's criminal investigation has been found so substantial as to render that company "*de facto* the [g]overnment" for purposes of the defendant's constitutional rights in criminal proceedings. *United States v. Connolly*, 16 CR. 0370 (CM), 2019 WL 2120523, at *2 (S.D.N.Y. May 2, 2019) (finding conduct of company and its outside counsel during internal investigation was fairly attributable to the government for purposes of *Garrity v. New Jersey*, 385 U.S. 493 (1967)). In *Connolly*, "Deutsche Bank and its outside counsel coordinated extensively with the three Government agencies . . . that were looking into possible LIBOR manipulation. Indeed, it is apparent that the Government was kept abreast of developments on a regular basis, and that the federal agencies gave considerable direction to" Deutsche Bank's counsel, "both about what to do and about how to do it." *Id.* The court expressed concern "with the constitutional implications . . . of such outsourcing" by the Government of its investigation. *Id.* at *14.

Here too, FTX's collaboration with the prosecution renders it "*de facto*" the Government for purposes of the Government's discovery obligations. Under the circumstances of this case, the FTX Debtors are an "arm of the prosecution" and part of the prosecution team because the FTX Debtors are closely "involved with the investigation" and have "interviewed witnesses," and shared interview information with prosecutors, "gathered facts" and "reviewed documents" for the Government, and "developed prosecutorial strategy." *Cf. Blaszczak*, 308 F. Supp. 3d at 741-42; *Stewart*, 433 F.3d at 298.

Accordingly, the Court should order the Government to produce any relevant written or recorded statements by Mr. Bankman-Fried, and all documents and data that is material to

preparing the defense or that the Government intends to use in its case-in-chief at trial, all exculpatory and impeachment evidence, and witness interview notes that are in the possession, custody, or control of the FTX Debtors.

Should the Court find that the record is not sufficiently developed to conclude that the FTX Debtors are part of the prosecution team, Mr. Bankman-Fried respectfully requests that the Court hold an evidentiary hearing to determine (1) the extent of cooperation between the Government and the FTX Debtors, (2) the extent to which the FTX Debtors have granted the Government access to its work product and files, and (3) the extent of the FTX Debtors' role in crafting prosecution strategy. *See Gov't of the V.I. v. Martinez*, 780 F.2d 302, 306 (3d Cir. 1986) ("Where a factual question is raised as to whether a *Brady* violation occurred, the defendant is 'entitled to have it determined by the district court in a hearing appropriate to the factual inquiry.'") (quoting *United States v. Alexander*, 748 F.2d 185, 193 (4th Cir. 1984)).

## CONCLUSION

For the reasons set forth above, Mr. Bankman-Fried respectfully requests that the Court order the Government to produce exculpatory and other discoverable materials from documents in the possession of the FTX Debtors on the grounds that they are a member the "prosecution team."[10]

Dated: May 8, 2023
      New York, New York

                                              Respectfully submitted,

                                              */s/ Mark S. Cohen*
                                              Mark S. Cohen
                                              Christian R. Everdell
                                              S. Gale Dick
                                              Sri K. Kuehnlenz
                                            **COHEN & GRESSER LLP**
                                              800 Third Avenue, 21st Floor
                                              New York, NY  10022
                                              (212) 957-7600
                                              mcohen@cohengresser.com
                                              ceverdell@cohengresser.com
                                              sgdick@cohengresser.com
                                              skuehnlenz@cohengresser.com

                                              *Attorneys for Samuel Bankman-Fried*

---

[10] Should this information raise further concerns, the defense reserves the right to submit a supplemental motion promptly after receiving the relevant discovery.