UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                        :

UNITED STATES OF AMERICA             :
                                          :     S5 22 Cr. 673 (LAK)

            v.                     :

                                          :

SAMUEL BANKMAN-FRIED,           :

                                          :

                        Defendant.     :

------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF SAMUEL BANKMAN-FRIED'S
MOTION FOR A BILL OF PARTICULARS AND PRETRIAL DISCLOSURES**

**<u>PRETRIAL MOTION NO. 6</u>**

Mark S. Cohen
Christian R. Everdell
S. Gale Dick
Sri K. Kuehnlenz
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, NY 10022
(212) 957-7600
mcohen@cohengresser.com
ceverdell@cohengresser.com
sgdick@cohengresser.com
skuehnlenz@cohengresser.com

*Attorneys for Samuel Bankman-Fried*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

I.      MOTION FOR BILL OF PARTICULARS ................................................... 3

        A.      Legal Standard ................................................................................. 5

        B.      A Bill of Particulars Is Necessary to Identify the Contours of the
                Government's Case. ......................................................................... 7

                1.      Particulars Are Necessary to Identify Any of the Key Events
                        Underlying the Securities Fraud Charges (Counts 5 and 6). .................... 7

                2.      Particulars Are Necessary to Ascertain the Basis of the "Money or
                        Property" Objects of the Charges of Wire Fraud on Alameda's
                        Lenders (Counts 7 and 8) and FTX Customers (Counts 1 and 2). .............. 8

                3.      Particulars Are Necessary to Understand the Nature of the Alleged
                        Conspiracy to Violate Campaign Finance Laws (Count 12). .................... 9

                4.      Particulars Are Necessary to Identify a Key Detail Underlying the
                        FCPA Conspiracy Charge (Count 13) ...................................................... 10

                5.      Particulars Are Necessary to Discern the Identities of the Alleged
                        Co-Conspirators and Witnesses. .............................................................. 11

II.     MOTION FOR IMMEDIATE DISCLOSURE OF *BRADY* AND *GIGLIO*
        MATERIAL ................................................................................................ 12

III.    MOTION FOR ACCELERATED DISCLOSURE OF WITNESS STATEMENTS ....... 14

IV.     MOTION FOR A LIST OF GOVERNMENT WITNESSES ......................................... 16

V.      MOTION FOR ACCELERATED DISCLOSURE OF FRE 404(B) EVIDENCE .......... 17

CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland*,
    373 U.S. 83, 83 S. Ct. 1194 (1963)........................................................1, 12, 13, 14

*Giglio v. United States*,
    405 U.S. 150, 92 S. Ct. 763 (1972).......................................................1, 12, 13, 14

*Kyles v. Whitley*,
    514 U.S. 419, 115 S. Ct. 1555 (1995)...................................................................12

*United States v. Akhavan*,
    S3 20-CR-188(JSR), 2020 WL 2555333 (S.D.N.Y. May 20, 2020)....................11

*United States v. Bagley*,
    473 U.S. 667, 105 S. Ct. 3375 (1985)............................................................12, 13

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987).........................................................................5, 6, 7, 2

*United States v. Cannone*,
    528 F.2d 296 (2d Cir. 1975).........................................................................11, 16

*United States v. Nachamie*,
    91 F. Supp. 2d 565 (S.D.N.Y. 2000).....................................................................6

*United States v. Percevault*,
    490 F.2d 126 (2d Cir. 1974)..................................................................................14

*United States v. Rajaratnam*,
    No. 09 CR. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010) .................6

*United States v. Rodriguez*,
    496 F.3d 221 (2d Cir. 2007)..................................................................................13

*United States v. Savin*
    No. 00 CR. 45 (RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001)...................5, 6

*United States v. Shellef*,
    507 F.3d 82 (2d Cir. 2007).....................................................................................9

*United States v. Shkreli*,
    No. 15-CR-637 (KAM), 2016 WL 8711065 (E.D.N.Y. Dec. 16, 2016) .................5

*United States v. Shteyman*,
　　No. 10 CR 347 SJ, 2011 WL 2006291 (E.D.N.Y. May 23, 2011) ........................................10

*United States v. Strawberry*,
　　892 F. Supp. 519 (S.D.N.Y. 1995) ........................................................................................5

*United States v. Turkish*,
　　458 F. Supp. 874 (S.D.N.Y. 1978) ...................................................................................16, 17

**Statutes**

15 U.S.C. § 78dd-2 ("Foreign Corrupt Practices Act") ........................................... *passim*

18 U.S.C. § 3500 ("Jencks Act") ...................................................................2, 14, 15

52 U.S.C. § 30118 ........................................................................................................9

52 U.S.C. § 30122 ......................................................................................................10

**Other Authorities**

Fed. R. Crim. Proc. 7(f) .........................................................................................3, 5

Fed. R. Crim. Proc. 15 ................................................................................................5

Fed. R. Crim. Proc. 16 .........................................................................................13, 16

Fed. R. Crim. Proc. 26.2 ............................................................................................14

Fed. R. Evid. 404(b) ............................................................................................1, 2, 17

Fed. R. Evid. 801(d)(2)(e) ...........................................................................................6

This Memorandum of Law is submitted in support of Samuel Bankman-Fried's Motion for a Bill of Particulars and Pretrial Disclosures seeking a bill of particulars with respect to certain counts charged in the Superseding Indictment, Mar. 28, 2023, ECF No. 115 ("S5 Indictment") and disclosure of *Brady* and *Giglio* material, witness statements, a list of Government witnesses, and accelerated disclosure of Rule 404(b) material.

## PRELIMINARY STATEMENT

The S5 Indictment does not contain fundamental information about several of the crimes alleged against Mr. Bankman-Fried that are necessary for him to prepare his defense.

Alameda and FTX serviced and dealt in literally *trillions* of dollars in financial transactions before their operations ceased, and the U.S. Attorney's Office for the Southern District of New York (the "Government") has to date produced millions of pages of documents and multiple terabytes (each comprising a trillion bytes) of data. Yet in the case of numerous charges, the Government has not identified, or has declined to identify, to Mr. Bankman-Fried even the most basic aspects of the case that it has charged and intends to prove. Without further particulars and pre-trial disclosures from the Government, Mr. Bankman-Fried will unfairly be left to guess about the case that he needs to defend against.

Mr. Bankman-Fried requests a bill of particulars with respect to several of the fraud-based counts in the S5 Indictment, as well as the alleged conspiracies to violate campaign finance laws and the Foreign Corrupt Practices Act ("FCPA"). The allegations relevant to these counts fail in key respects to identify the transactions, misrepresentations or omissions, or other information claimed to give rise to the counts charged. In addition, neither the S5 Indictment nor other material provided by the Government during the (still-incomplete) document discovery process includes information that would enable Mr. Bankman-Fried to glean—even in general terms—where and how to locate or identify the basic details missing from the fraud allegations.

By way of example, Counts 7 and 8 accuse Mr. Bankman-Fried of wire fraud on lenders, but the S5 Indictment nowhere identifies which lenders were allegedly defrauded, or any of the loans or transactions that were involved. Similarly, Counts 5 and 6 accuse Mr. Bankman-Fried of securities fraud, but the S5 Indictment nowhere identifies what allegedly false or misleading statements were made, when they were made, who made them, which purchases of securities (if any) were in connection with those misstatements, or why they were false. Nor does the S5 Indictment provide information sufficient to ascertain the legal theory underlying the alleged conspiracy to violate campaign finance laws (Count 12). The allegations of conspiracy to violate the anti-bribery provisions of the FCPA likewise lack sufficient information to allow Mr. Bankman-Fried to prepare his defense to that charge (Count 13). Despite multiple requests to the Government to disclose key information necessary to understand these charges, the Government has refused to do so. Requiring Mr. Bankman-Fried to scour an unfathomably large document and data dump in hopes of deciphering the Government's case is no answer. In addition to being unreasonably difficult, if not impossible, to know whether crucial information is missing, this would impermissibly shift the burden of proof to the Defense. The Government should be required to supplement its S5 Indictment with a bill of particulars.

Similarly, it is clear that much of the proof likely to be presented by the Government will primarily come from statements from the Government's witnesses. Accordingly, it is critical that Mr. Bankman-Fried receive Jencks Act material and the Government's witness list, as well as Rule 404(b) and exculpatory evidence, well in advance of trial so that he can conduct an adequate investigation. Given the S5 Indictment's breadth, covering a three-year period of alleged conduct and involving numerous unidentified individuals, this information must be turned over on an accelerated basis so Mr. Bankman-Fried has sufficient time to investigate and

prepare his defense.  This is particularly appropriate where, as here, the S5 Indictment alleges conduct that took place abroad, potentially requiring further legal process, and conduct reflected in a digital environment that will require complex and detailed analysis.

For the reasons set forth below, the Court should grant Mr. Bankman-Fried's request for a bill of particulars and his other requests for pretrial disclosures.[1]

## I. MOTION FOR BILL OF PARTICULARS

Mr. Bankman-Fried respectfully requests that the Court direct the Government to file a bill of particulars, pursuant to Rule 7(f) of the Federal Rules Criminal Procedure, because the S5 Indictment does not sufficiently inform him of the nature of several of the charges against him.  Mr. Bankman-Fried's ability to prepare for trial has been—and without a bill of particulars will continue to be—significantly impaired by the lack of specificity in the S5 Indictment.  Mr. Bankman-Fried is also at risk of facing surprise at trial, should his guesses about the nature of the charges brought by the Government's case prove mistaken.

Since hastily arresting and extraditing Mr. Bankman-Fried five months ago, the Government has issued three successive indictments against him.  The operative S5 Indictment asserts thirteen separate counts concerning widely disparate forms of alleged misconduct relating to a sprawling, complex network of business entities.  These include Alameda Research LLC, a holding company registered in Delaware; Alameda Research Ltd. ("Alameda"), a hedge fund with operations in Hong Kong and the Bahamas; and FTX Trading Ltd. ("FTX"), which was one of the largest digital asset exchanges in the world, was regulated in dozens of jurisdictions outside of the United States, serviced trillions of dollars of transactions, and had approximately

---

[1] To the extent that subsequent disclosures reveal additional grounds for pretrial relief, Mr. Bankman-Fried respectfully requests leave to file supplemental motions within a reasonable time after receipt of such materials.

one hundred affiliated entities. *See* S5 Indictment ¶¶ 10, 12, 62. The S5 Indictment alleges conduct taking place in different countries over three years and numerous unidentified witnesses and purported co-conspirators. Faced with the need to defend against these sprawling allegations, Mr. Bankman-Fried is left to guess what the Government believes may constitute essential elements of numerous alleged offenses, including the charges alleging substantive securities fraud and securities fraud conspiracy on investors (Counts 5 and 6), substantive wire fraud and wire fraud conspiracy on lenders (Counts 7 and 8), substantive wire fraud and wire fraud conspiracy on customers (Counts 1 and 2), conspiracy to violate campaign finance laws (Count 12), and conspiracy to violate the anti-bribery provisions of the FCPA (Count 13).

The Government takes the position that the S5 Indictment and the voluminous discovery—which includes terabytes of data and millions of pages of documents—are sufficient to equip the Defense to prepare for trial.[2] As further explained below, this is incorrect. To be clear, Mr. Bankman-Fried is not seeking an order that the Government disclose the precise manner in which the alleged offenses were committed or reveal its evidence. Nor is he making a generalized request for particulars concerning each count of the S5 Indictment. He is simply requesting what the law requires the Government to provide, namely, sufficient specificity to enable him to understand the nature of certain of the charges against him and prepare his defense. As set forth below, neither the S5 Indictment nor the limited information provided by the Government satisfies this obligation. Further, the huge volume of discovery produced to date, far from filling in necessary detail that is absent from the S5 Indictment, further undercuts

---

[2] Mr. Bankman-Fried, through counsel, has requested these and other particulars from the Government, but the Government, while providing very limited information on other issues, has declined to provide them. *See* Declaration of Christian R. Everdell in Support of Samuel Bankman-Fried's Pretrial Motions, dated May 8, 2023 ("Everdell Decl.") ¶ 15.

Mr. Bankman-Fried's ability to prepare a defense and avoid surprise at trial. Bills of particulars are necessary and appropriate in exactly these circumstances.

### A.     Legal Standard

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars "in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). In assessing whether to exercise their discretion to order a bill of particulars, courts consider "whether the information sought has been provided elsewhere, such as in other items provided by discovery, responses made to requests for particulars, prior proceedings, and the indictment itself." *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995).

In cases involving financial crimes, particularly fraud, courts have found a bill of particulars is warranted when basic identifying information about the "specific documents and transactions the [g]overnment contends are fraudulent" is not alleged in the indictment and has not otherwise been provided by the government. *United States v. Shkreli*, No. 15-CR-637 (KAM), 2016 WL 8711065, at *4 (E.D.N.Y. Dec. 16, 2016) (citing *Bortnovsky*, 820 F.2d at 574-75). In *Bortnovsky*, the Second Circuit reversed the defendants' fraud convictions for failure to grant a bill of particulars, primarily because the allegations did not provide the dates of key events and referred to numerous transactions without specifying which ones the government believed to be fraudulent. 820 F.2d at 574-75. In particular, the court concluded the government's failure to "reveal crucial information" "hindered [defendants] in preparing their defense." *Id.* at 574. Similarly, in *United States v. Savin*, the government was ordered to provide a bill of particulars in part because the defendant, an investment advisor, was alleged to

have "pilfered his client's money through an unspecified series of 'intercompany transfers,'" but the government had not identified "the amounts, dates, means, corporate entities, or co-conspirators involved." No. 00 CR. 45 (RWS), 2001 WL 243533, at *3 (S.D.N.Y. Mar. 7, 2001).

Moreover, the Government may not rely on voluminous discovery to fill in the gaps of an otherwise insufficient indictment. *See United States v. Rajaratnam*, No. 09 CR. 1184 (RJH), 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010) (noting that it is "'not sufficient simply to refer defense counsel to discovery,' because 'dumping vast quantities of documents and information on one's opposing party does not always elucidate what is going on, so that the [d]efendant can adequately prepare for trial'") (alteration in original and internal citations omitted); *United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000) (ordering bill of particulars where government had produced "200,000 pieces of paper in hundreds of boxes and files" of Medicare claim information without identifying which of the claims were claimed to be false and how they were claimed to be false). Indeed, the Second Circuit has held that, in the absence of a bill of particulars, "providing mountains of documents to defense counsel" when the indictment contained general allegations of fraud "impermissibly . . . shifted" the burden of proof to the defendants. *See Bortnovsky*, 820 F.2d at 575; *see also Savin*, 2001 WL 243533, at *3 (ordering bill of particulars where, "[a]bsent further information," defendant would "be forced to comb through this veritable mountain of documents and to attempt to guess which of the numerous transactions documented therein, and conducted over a six-year period, are alleged by the government to have been improper").

**B. A Bill of Particulars Is Necessary to Identify the Contours of the Government's Case.**

There can be no question that Mr. Bankman-Fried would be hindered in preparing his defense and face surprise at trial without further information about the charges levied against him for securities fraud, wire fraud on lenders, wire fraud on customers, campaign finance violations, and FCPA violations.

*1.       Particulars Are Necessary to Identify the Key Events Underlying the Securities Fraud Charges (Counts 5 and 6).*

The S5 Indictment alleges that, over a three-year period from 2019 through November 2022, Mr. Bankman-Fried conspired with unspecified "others" to commit and did commit securities fraud on investors of FTX (Count 5 and Count 6). The S5 Indictment alleges that Mr. Bankman-Fried raised over $1.8 billion from investors in four separate fundraising rounds between August 2019 and January 2022, and that Mr. Bankman-Fried "continued efforts to fundraise for FTX at least up to and including November 2022." S5 Indictment ¶ 13. However, the S5 Indictment is devoid of information that would enable the Defense to ascertain which statements the Government contends were false or misleading or why they were false or misleading, or even which of the fundraising rounds the Government will contend are at issue.

It is no answer to point to the huge volume of discovery produced to date by the Government. In fact, the opposite is true: absent adequate particularity in the S5 Indictment or other guidance, Mr. Bankman-Fried can only guess at the nature and location of documents that could help in trial preparation. To require him to undertake this exercise in the face of massive amounts of data and millions of pages of documents to ascertain this fundamental information while leaving Mr. Bankman-Fried "unguided" as to which documents are alleged to evidence fraud would "impermissibly . . . shift[]" the burden of proof, thus further tilting the scales in favor of requiring a bill of particulars. *See Bortnovsky*, 820 F.2d at 575. For example, equipped

only with the limited information in the S5 Indictment, Mr. Bankman-Fried will be required to track down and scrutinize every disclosure that could be characterized as having been made in connection with all offerings by FTX and then guess at the events the Government may believe form the basis of the alleged securities law violations. This task is rendered even more unreasonable by the inclusion of conspiracy charges, which could be based not on Mr. Bankman-Fried's own conduct, but that of unidentified "others." *See* S5 Indictment ¶¶ 75-76. Moreover, it may be impossible even to ascertain whether pertinent information may be missing from the discovery.

Without the requested particulars, Mr. Bankman-Fried cannot hope to prepare his defense against these charges and will very likely confront unfair surprise at trial as to the nature of the charges and the fraud the Government seeks to prove.

> **2.      *Particulars Are Necessary to Ascertain the Basis of the "Money or Property" Objects of the Charges of Wire Fraud on Alameda's Lenders (Counts 7 and 8) and FTX Customers (Counts 1 and 2).***

The S5 Indictment fails to provide adequate information to understand the nature of the charges of conspiracy to commit wire fraud on Alameda's lenders and wire fraud on Alameda's lenders (Count 7 and Count 8). These counts identify a relevant time period between June and November 2022, S5 Indictment ¶¶ 81, 84, and the S5 Indictment alleges that "together, [Mr. Bankman-Fried] and [Caroline] Ellison provided false and misleading financial statements to creditors" at some point after June 2022. *See id.* ¶¶ 32, 36. Here, too, the S5 Indictment fails to identify what misleading information was provided, to which lenders, which loans were affected, or what rights, if any, of the lenders under the loan agreements were affected—information that is essential to preparing Mr. Bankman-Fried's defense and avoiding unfair surprise at trial.

Additionally, as discussed in the Memorandum of Law in Support of Samuel Bankman-Fried's Motion to Dismiss Counts 7 through 9 and Counts 1 through 2 of the S5 Indictment for

Failure to Allege a Valid Property Right (Pretrial Motion No. 2) (hereafter "Pretrial Motion No. 2") at 11-13, the S5 Indictment fails to identify the money or property the Government claims Mr. Bankman-Fried obtained or conspired to obtain from Alameda's lenders, a required object of the alleged scheme or fraud under the wire fraud statute. *See United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007). Without further information regarding the loans the Government will contend are at issue, Mr. Bankman-Fried cannot understand the contours of the Government's charges as to how lenders were defrauded, and he should not be made to guess.

Likewise, as discussed in Mr. Bankman-Fried's Pretrial Motion No. 2 at 14-17, the S5 Indictment fails to identify what money or property the Government claims Mr. Bankman-Fried obtained or conspired to obtain from FTX's customers, which is necessary to understand the nature of the charges of conspiracy to commit wire fraud on FTX's customers and wire fraud on FTX's customers (Count 1 and Count 2). The nature of the Government's fraud charges is therefore unclear, including whether the conspiracy and substantive charges are premised on the alleged misappropriation of customer funds, violations of the terms of an agreement with customers, fraudulent inducement of the customers to take certain actions, or something else entirely. Without knowing what property rights the Government contends were impaired by the alleged wire fraud, Mr. Bankman-Fried is significantly hindered in preparing a defense to these charges.

### 3. *Particulars Are Necessary to Understand the Nature of the Alleged Conspiracy to Violate Campaign Finance Laws (Count 12).*

The S5 Indictment also does not provide sufficient information to prepare a defense to the alleged conspiracy to violate campaign finance laws (Count 12). The Government asserts the objects of the alleged conspiracy included violating 52 U.S.C. § 30122, which prohibits straw

donor or conduit contributions, and *id.* § 30118, which prohibits, *inter alia*, contributions by corporations in connection with federal elections. S5 Indictment ¶¶ 98-99.

Illustrating the need for a bill of particulars on this charge, the S5 Indictment alleges the "co-conspirators made over 300 political contributions, totaling tens of millions of dollars, that were unlawful because they were made in the name of a straw donor or paid for with corporate funds." *Id.* ¶ 46. However, as alleged, the only specific contributions described in the S5 Indictment were not, in fact, in violation of federal campaign finance laws. *See* Memorandum of Law in Support of Samuel Bankman-Fried's Motion to Dismiss or, in the Alternative, Sever Counts 12 and 13 in the S5 Indictment (Pretrial Motion No. 4) (hereafter "Pretrial Motion No. 4") at 3-13. As a result, Mr. Bankman-Fried is left to guess which of the hundreds of alleged contributions the Government contends are unlawful. Courts have required bills of particulars in precisely this kind of circumstance, because such an indictment "does not apprise [the defendant] with sufficient precision as to enable him to prepare a defense and avoid unfair surprise at trial." *United States v. Shteyman*, No. 10 CR 347 SJ, 2011 WL 2006291, at *5 (E.D.N.Y. May 23, 2011) (requiring bill of particulars where indictment alleged that "all" of the Medicare claims submitted by the defendant were fraudulent).

### 4. Particulars Are Necessary to Identify a Key Detail Underlying the FCPA Conspiracy Charge (Count 13).

The S5 Indictment alleges that Mr. Bankman-Fried participated in an effort to make payments to "one or more Chinese government officials" to "regain access to Alameda trading accounts that had been frozen by Chinese law enforcement authorities." S5 Indictment ¶ 1; *see also id.* ¶¶ 28-31; 102-05. However, the S5 Indictment is silent as to the identities, positions, agencies, and official duties of the alleged recipients of the payments. Indeed, it is not even clear from the allegations or discovery materials that the Government knows who was allegedly

bribed.  As discussed in Pretrial Motion No. 4 at 14-20, the identity of the alleged bribe recipient

is central to essential elements of the alleged conspiracy to violate the FCPA.  Namely, the effort

to make payments to a "foreign official" and the intent to induce that "foreign official" to take or

refrain from taking particular actions are essential elements of an FCPA anti-bribery

violation.  Moreover, this count is alleged to involve "others known and unknown."

S5 Indictment ¶ 103.  Without even basic information to enable the Defense to investigate and

discern the nature of the Government's allegations as to these essential elements, Mr. Bankman-

Fried cannot adequately prepare his defense to Count 13 or avoid unfair surprise at trial.

> **5.** ***Particulars Are Necessary to Discern the Identities of the Alleged Co-Conspirators and Witnesses.***

Mr. Bankman-Fried has also been left to speculate about many of the alleged co-

conspirators and witnesses referenced in the S5 Indictment, and the Government should confirm

the identities of these individuals.  The Court has the inherent authority to compel pretrial

disclosure of the identities of government witnesses and unnamed co-conspirators, and it should

do so here.  *See United States v. Cannone*, 528 F.2d 296, 300 (2d Cir. 1975);[3] *United States v.*

*Akhavan*, S3 20-CR-188 (JSR), 2020 WL 2555333, at *2 (S.D.N.Y. May 20, 2020) (ordering

government to disclose identity of unnamed co-conspirators where the charged conspiracy lasted

three years and the indictment suggested several distinct co-conspirators, creating "the possibility

that different co-conspirators may have been involved at different times").  As in *Akhavan*,

"[t]his is precisely the type of conspiracy count covering a complex series of events over a

number of years where a bill of particulars identifying the co-conspirators is appropriate."  2020

WL 2555333 at *2 (cleaned up).

---

[3] In *Cannone*, the Second Circuit reversed for abuse of discretion the district court's order to compel disclosure of witness identities under the circumstances of that case.  528 F.2d at 300-02.  Nevertheless, *Cannone* recognized the district courts' ability to compel disclosure of the identity of government witnesses in appropriate cases.  *Id.* at 300.

* * *

Without the information requested above, Mr. Bankman-Fried has been forced to make assumptions about the events purportedly underlying the charges against him and attempt to investigate these allegations blindly. If one of the purposes of a bill of particulars is to "prevent surprise," *Bortnovsky*, 820 F.2d at 574, there could be no greater surprise than for Mr. Bankman-Fried to learn shortly before—or even during—trial that the guesses he made to fill in these gaps were not, in fact, correct. And forcing Mr. Bankman-Fried to speculate and guess on these issues, especially in the face of a vast volume of complicated discovery material (with more to come, even at this late date), is impermissibly limiting his ability to adequately prepare for trial.

Accordingly, we respectfully request the particulars as set forth above as to Count 1 (conspiracy to commit wire fraud on customers of FTX), Count 2 (wire fraud on customers of FTX), Count 5 (conspiracy to commit securities fraud on investors of FTX), Count 6 (securities fraud on investors of FTX), Count 7 (conspiracy to commit wire fraud on lenders to Alameda), Count 8 (wire fraud on lenders to Alameda), Count 12 (conspiracy to make unlawful political contributions and defraud the Federal Election Commission ("FEC")), Count 13 (conspiracy to violate the anti-bribery provisions of the FCPA), and the unnamed co-conspirators and witnesses.

## II.   MOTION FOR IMMEDIATE DISCLOSURE OF *BRADY* AND *GIGLIO* MATERIAL

Mr. Bankman-Fried moves for an order, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963) and its progeny, *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555 (1995), *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375 (1985), and *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763 (1972), compelling the Government to immediately disclose all potentially favorable evidence having a reasonable probability to affect the outcome of the proceedings. It is further requested that the Court direct the Government to disclose such

information immediately upon its discovery to enable Mr. Bankman-Fried sufficient time to use it effectively in his defense.[4]

It is well settled that pursuant to *Brady* and its progeny, the Government must disclose material evidence, information, and facts that could exculpate the accused or be used to impeach the Government's witnesses. *See United States v. Rodriguez*, 496 F.3d 221, 225 (2d Cir. 2007); *accord Bagley*, 473 U.S. at 674, 676, 105 S. Ct. at 3379-80. This requirement extends to evidence of a witness' prior crimes or acts of moral turpitude, prior inconsistent statements, and statements demonstrating a lack of knowledge or a denial of the facts of the case or the alleged guilt of the defendant, and specific instances of conduct from which it can be inferred the witness is untruthful.[5]

Because of the highly complex nature of the alleged facts underlying the charges against Mr. Bankman-Fried, the Defense should be allowed to examine the exculpatory evidence as soon as possible to assess and prepare to defend against the charges. Moreover, as set forth in the Memorandum of Law in Support of Samuel Bankman-Fried's Motion for Discovery on the Basis that FTX is a Member of the Prosecution Team (Pretrial Motion No. 5), the Defense is aware of exculpatory materials that are accessible to the prosecution team but that have not been disclosed. For example, Mr. Bankman-Fried is accused of having "caused the creation of secret

---

[4] On May 5, 2023, shortly before the filing date for the instant motions, the Defense received a 60-page disclosure letter from the Government containing excerpts of notes and reports of witness interviews and attorney proffers, along with a 118-page attachment containing the notes and reports themselves. The Government does not concede that these materials are *Brady* material and instead claims that they are being provided "in an abundance of caution." Counsel have not had the opportunity to review this material before filing.

[5] The Government takes the position that *Giglio* material is not discoverable under Rule 16, and states that it will produce such materials in a timely manner prior to trial. In doing so, the Government erroneously implies that *Giglio* material is something other than *Brady* material. The Supreme Court has made clear that impeachment evidence "falls within the *Brady* rule." *Bagley*, 473 U.S. at 676, 105 S. Ct. at 3380 (citing *Giglio*, 405 U.S. at 154, 92 S. Ct. at 766). Mr. Bankman-Fried requires immediate production of *Brady* and *Giglio* material to make effective use of these materials at trial.

loopholes in the computer code that powered FTX," S5 Indictment ¶ 4, but despite the Defense's requests, the Government has not provided the codebase history, which would elucidate exactly who wrote any alleged loopholes and when. The codebase history exists and is in the possession of the FTX debtor entity—which has produced millions of pages of documents and terabytes of data to the prosecution. In order to mount an effective defense, Mr. Bankman-Fried must receive this material in sufficient time to investigate and develop it for effective use before and during trial.

Accordingly, we respectfully request that the Court order the Government to immediately disclose all exculpatory evidence (*Brady* and *Giglio* material) within its possession and to immediately disclose all such material upon future discovery or receipt, to provide the Defense sufficient opportunity to make use of it at trial.

## III.   MOTION FOR ACCELERATED DISCLOSURE OF WITNESS STATEMENTS

The Defense moves for accelerated disclosure of witness statements, pursuant to 18 U.S.C. § 3500 ("Jencks Act") and Rule 26.2 of the Federal Rules of Criminal Procedure. The Court has the discretion to order the production of Jencks Act material in advance of trial in the interests of judicial economy to avoid unnecessary delays during the course of the trial. *See United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974). The Defense respectfully submits that the Court should exercise that discretion here.

The allegations in this case concern an extraordinarily broad range of conduct—including allegations of conspiracy and substantive counts of wire fraud and commodities fraud on FTX customers, conspiracy and substantive counts of securities fraud on FTX investors, and conspiracy and substantive counts of wire fraud on Alameda's lenders, as well as conspiracy to commit bank fraud, to operate an unlicensed money transmitting business, to commit money laundering, to violate the campaign finance laws and defraud the FEC, and to violate the FCPA.

On all of these fronts, the Government's claims center in large part on conversations with, and observations of, multiple witnesses and actions and communications as to which Mr. Bankman-Fried himself is not alleged to have been party. The Government will therefore almost inevitably seek to present numerous witnesses and rely on their testimony as core evidence at trial. Further, the conduct alleged in the S5 Indictment purportedly took place in other states and in foreign countries over a three-year period. Statements pertaining to witnesses who are located outside the United States will potentially require international travel to investigate and, potentially, depositions pursuant to Rule 15 of the Federal Rules of Criminal Procedure for witnesses outside the subpoena power of a U.S. court, along with translation services and foreign counsel.

The circumstances of this case and the complex nature of the records at issue justify the accelerated disclosure of Jencks Act material. Accordingly, we ask the Court to order the Government to disclose all Jencks Act material immediately, including, but not limited to the following:

1. Any and all rough notes of witness interviews taken or obtained in any investigation of Mr. Bankman-Fried, including federal, state, local, and other investigations, whether or not the contents thereof have been incorporated in official reports (for the avoidance of doubt, this includes notes from "readouts" of interview memoranda provided to the Government by FTX or its counsel and any interview notes or memoranda prepared by or in the possession, custody, or control of the prosecution team);

2. Any notes or memoranda made by Government counsel, staff, the prosecution team, or law enforcement agents during the interview of any witnesses intended to be called by the Government in its direct case;

3. Any emails, texts, chats, or voicemails (in original, transcribed, and summary form) from the witness and from the witness's counsel containing information derived from any witness that the Government intends to call in its direct case;

4. Any emails, texts, chats, or voicemails (in original, transcribed, and summary form) between and among Government counsel and law enforcement officers containing information derived from any witness intended to be called by the Government in its direct case; and

5. Any declarations in furtherance of the alleged conspiracy that the Government intends to introduce under Federal Rule of Evidence 801(d)(2)(E).

## IV. MOTION FOR A LIST OF GOVERNMENT WITNESSES

In conjunction with Mr. Bankman-Fried's request for early disclosure of Jencks Act material, the Defense also respectfully requests that the Government provide a list of the witnesses it intends to call at trial. Although Rule 16 does not require the Government to disclose its witnesses prior to trial, the Court should in its discretion order such disclosure because Mr. Bankman-Fried's need for disclosure outweighs the Government's need for concealment such that disclosure would be in the interests of justice. *See Cannone*, 528 F.2d at 300-02 (discussing authority of trial courts to exercise their discretion to order such disclosures upon a finding that the defendant's request is material to preparation of the defense and is otherwise reasonable).

Courts assess the materiality and reasonableness of a request for a list of witnesses by applying the six-factor test set forth in *United States v. Turkish*, 458 F. Supp. 874, 881 (S.D.N.Y. 1978): (1) whether the alleged offense involved a crime of violence; (2) whether the defendants were arrested or convicted for crimes involving violence; (3) whether the evidence in the case will "largely consist of testimony relating to documents (which by their nature are not easily altered);" (4) whether there is a "realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial;" (5) whether the indictment alleges offenses "occurring over an extended period of time," making preparation of the defense "complex and difficult;" and (6) whether the defendants have "limited funds with which to investigate and prepare their defense."

Here, the *Turkish* factors favor early disclosure of the identities of the Government's witnesses. The S5 Indictment does not allege crimes of violence, Mr. Bankman-Fried has no criminal history, and the Government has conceded that he is not a danger to the community. The broad scope of the charged offenses over a period of three years and the complex financial and digital data necessary to establish the factual record makes investigation and preparation of this case complex and difficult. Disclosure of the Government's witness list is material to the preparation of the defense and reasonable in light of the circumstances surrounding this case.

## V.     MOTION FOR ACCELERATED DISCLOSURE OF RULE 404(B) EVIDENCE

The Defense respectfully requests that the Court direct the Government to disclose any and all acts and any evidence it intends to introduce under Rule 404(b) of the Federal Rules of Evidence or as background of the conspiracies charged in the S5 Indictment.

Mr. Bankman-Fried should be provided notice as soon as possible of the exact nature of any Rule 404(b) evidence, the witnesses pertaining thereto, the documents in support thereof, and the theory upon which the Government's assertion of admissibility rests. By providing prompt notification, the Defense can investigate the allegations and file appropriate motions to permit the Court to make pretrial determinations regarding the admissibility of any potential Rule 404(b) evidence proffered by the Government.

We have conferred with the Government and requested disclosure of Rule 404(b) evidence by June 16, 2023, but the Government denied this request. The Government's position is that it will make these disclosures on a schedule ordered by the Court for the filing of motions *in limine*, proposed jury instructions, and other pretrial disclosures and filings. We therefore request that the Court order the Government to produce all Rule 404(b) evidence immediately.

## CONCLUSION

For the reasons set forth above, we respectfully request that the Court grant the motions presented in their entirety. To the extent that subsequent disclosures reveal additional grounds for pretrial relief, Mr. Bankman-Fried additionally seeks leave to file supplemental pretrial motions within a reasonable time after receipt of such materials.

Dated: May 8, 2023
      New York, New York

Respectfully submitted,

*/s/ Mark S. Cohen*
Mark S. Cohen
Christian R. Everdell
S. Gale Dick
Sri K. Kuehnlenz
**COHEN & GRESSER LLP**
800 Third Avenue
New York, NY 10022
212-957-7600
mcohen@cohengresser.com
ceverdell@cohengresser.com
sgdick@cohengresser.com
skuehnlenz@cohengresser.com

*Attorneys for Samuel Bankman-Fried*