UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

SAMUEL BANKMAN-FRIED,
a/k/a "SBF,"

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

22 Cr. 673 (LAK)

**THE GOVERNMENT'S OPPOSITION TO DEFENDANT SAMUEL BANKMAN-FRIED'S MOTION TO DISMISS BASED ON THE RULE OF SPECIALTY**

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

GLENN S. LEON
Chief, Fraud Section
Criminal Division

Danielle Kudla
Samuel Raymond
Thane Rehn
Andrew Rohrbach
Nicolas Roos
Danielle R. Sassoon
Assistant United States Attorneys
Jil Simon
Trial Attorney
- *Of Counsel* -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ... 1
FACTUAL BACKGROUND ... 2
ARGUMENT ... 3
I. Specialty Is Not a Basis for Dismissal of Charges Pretrial in this Case ... 3
II. The Bahamas' Decision on Waiver Will Be Dispositive ... 4
III. The Defendant Lacks Standing to Raise the Rule of Specialty ... 5
IV. There Is No Basis to Dismiss Count Twelve on Specialty Grounds ... 8
V. The Defendant's Request for Discovery Pertaining to Extradition Should Be Denied ... 11
CONCLUSION ... 13

# TABLE OF AUTHORITIES

## CASES

*Powell v. United States*,
946 F. Supp. 2d 320 (S.D.N.Y. 2013)............ 10
*United States v. Armstrong*,
517 U.S. 456 (1996)............ 13
*United States v. Barinas*,
865 F.3d 99 (2d Cir. 2017)............ 4, 6, 7
*United States v. Flores*,
538 F.2d 939 (2d Cir. 1976)............ 11
*United States v. Guzman Loera*,
24 F.4th 144 (2d Cir. 2022) ............ 4, 5, 6, 7
*United States v. Khan*,
993 F.2d 1368 (9th Cir. 1993) ............ 10, 11
*United States v. Levy*,
25 F.3d 146 (2d Cir. 1994)............ 11
*United States v. Levy*,
905 F.2d 326 (10th Cir. 1990) ............ 11
*United States v. Loera*,
09 Cr. 466 (BMC), 2017 WL 2821546 (E.D.N.Y. June 29, 2017)............ 12
*United States v. Nosov*,
153 F. Supp. 2d 477 (S.D.N.Y. 2001)............ 6
*United States v. Ralston*,
19 Cr. 774 (JSR), 2022 WL 769257 (S.D.N.Y. Mar. 14, 2022)............ 5
*United States v. Rauscher*,
119 U.S. 407 (1886)............ 6
*United States v. Sensi*,
879 F.2d 888 (D.C. Cir. 1989)............ 11
*United States v. Stokes*,
726 F.3d 880 (7th Cir. 2013) ............ 5
*United States v. Suarez*,
791 F.3d 363 (2d Cir. 2015)............ 5

## RULES

Fed. R. Crim. P. 16(a)(1)(E)(i) ............ 13

## TREATIES

Extradition Treaty Between the Government of the United States of America and the Government of the Commonwealth of The Bahamas, U.S.-Bah., Mar. 9, 1990, S. TREATY Doc. No. 102-17............ 1, 3, 4, 7

# PRELIMINARY STATEMENT

The Government submits this memorandum in opposition to defendant Samuel Bankman-Fried's motion to dismiss Counts Nine, Ten, Twelve, and Thirteen of the indictment S5 22 Cr. 673 (the "S5 Indictment") on the basis of the rule of specialty, and for related discovery. (Dkt. 139). The defendant's motions should be denied.

There is no basis for dismissal of any counts at this stage of the proceedings because the United States' treaty with The Bahamas does not place limits on charging a defendant with new offenses post-extradition. The treaty expressly reflects only an agreement between the two countries that the extradited person will not be "detained, tried, or punished" without the consent of the executive authority of the extraditing country. Extradition Treaty Between the Government of the United States of America and the Government of the Commonwealth of The Bahamas, U.S.-Bah., Mar. 9, 1990, S. TREATY DOC. NO. 102-17 (the "Extradition Treaty"), Art. 14. Accordingly, the mere fact that the S5 Indictment contains new charges cannot violate the rule of specialty.

The Government has notified The Bahamas—which is the only party that would have standing to object on specialty grounds to trying, punishing, or detaining the defendant on new charges—of the additional charges in the S5 Indictment, and is seeking a specialty waiver from The Bahamas. The country's response will be dispositive: the Government will proceed on the new charges in the S5 Indictment if The Bahamas consents to trial on these charges, and will not proceed on those counts if The Bahamas denies the Government's request. Because the decision whether to waive the rule of specialty is for the extraditing country to make, the Second Circuit has long held that a defendant lacks standing to assert the rule of specialty.

With respect to Count Twelve of the S5 Indictment, which charges the defendant with conspiring to make unlawful campaign contributions and to defraud the Federal Election

Commission, the defendant seeks dismissal because this charge was not listed in the Bahamian surrender warrant. This count, however, was included as Count Eight in the original indictment for which the defendant was extradited by The Bahamas in December 2022. Taking the extradition record as a whole, including the fact that the defendant specifically consented in Bahamian court to be extradited on this charge, it would not violate the rule of specialty to proceed to trial on this charge and, in any event, the defendant lacks standing to raise this issue.

## FACTUAL BACKGROUND

On December 9, 2022, a grand jury in this district returned an eight-count indictment against the defendant, charging him with two counts of conspiracy to commit wire fraud, two counts of wire fraud, one count each of conspiracy to commit securities fraud and conspiracy to commit commodities fraud, one count of conspiracy to commit money laundering, and one count of conspiracy to make unlawful campaign contributions and to defraud the Federal Election Commission. (Dkt. 1). On or about December 10, 2022, the United States submitted to The Bahamas a request for the provisional arrest of Bankman-Fried based on the charges in the indictment in a diplomatic note that listed all eight counts of the indictment and was accompanied by the arrest warrant from this district listing all eight counts in the indictment. (Dkt. 137-1, at 4-12). On or about December 12, 2022, the defendant was arrested in The Bahamas on that provisional arrest request.

On December 20, 2022, the defendant executed a written consent to extradition, in which he stated his consent to be extradited on the counts listed in the United States' diplomatic note and the arrest warrant. (Dkt. 137-1, at 1-2). The following day, on December 21, 2022, the defendant appeared in court in The Bahamas to enter his consent to extradition. The Bahamian judge accepted the defendant's consent and ordered him detained for extradition on the counts set forth in the

United States' diplomatic note. (Dkt. 137-4, at 10-11). After the court proceeding, the Bahamian Minister of Foreign Affairs issued a "Warrant of Surrender" that authorized The Bahamas Department of Corrections and the Bahamian Commissioner of Police to deliver the defendant into the custody of the United States for extradition. (Dkt. 137-2, at 1). The Bahamas then surrendered the defendant to the United States, and he was brought to this district and presented on the charges in the indictment on December 22, 2022. (Dkt. 13).

On March 27, 2023, a grand jury returned the S5 Indictment, which includes certain additional charges that were not in the original indictment on which the defendant was extradited. (Dkt. 115). These include charges for conspiracy to commit bank fraud (Count Nine), conspiracy to operate an unlicensed money transmitting business (Count Ten), and conspiracy to violate the Foreign Corrupt Practices Act (Count Thirteen).[1] The S5 Indictment also renumbers certain of the charges in the original indictment, so that the campaign contributions conspiracy charge, which was originally listed as count eight, is Count Twelve in the S5 Indictment.

## ARGUMENT

### I. Specialty Is Not a Basis for Dismissal of Charges Pretrial in this Case

First, there is no basis to dismiss any count of the S5 Indictment at this stage of the proceedings because the Extradition Treaty prohibits only detention, trial, and punishment on new charges post-extradition, and does not proscribe indictment of a defendant on new charges. Article 14 of the Extradition Treaty provides, in relevant part, that: "A person extradited under this Treaty

[1] The S5 Indictment also adds substantive charges of commodities fraud (Count Four) and securities fraud (Count Six), in addition to the charges of conspiracy to commit these crimes that were in the original indictment. In his motion, the defendant does not challenge the inclusion of these counts. However, the United States is also seeking a waiver of the rule of specialty from The Bahamas with respect to these counts and will proceed only if The Bahamas consents.

may only be *detained, tried, or punished* in the [country requesting extradition] for the offense for which extradition was granted, or … (b) any offense for which the executive authority of the [extraditing country], in accordance with its laws, has consented to the person's detention, trial, or punishment[.]" Extradition Treaty, Art. 14 (emphasis added); *see generally United States v. Barinas*, 865 F.3d 99, 104 (2d Cir. 2017) ("[T]he principle of specialty means that an extradited defendant can only be tried for one of the offences described in the treaty under which he is extradited, and for the offence with which he is charged in the proceedings for his extradition.").[2] The plain language of the Extradition Treaty thus does not prohibit indicting a defendant post-extradition with new charges. The mere filing of a superseding indictment does not run afoul of the treaty—the only question is whether the Government can now proceed to trial against the defendant, who is present in this country as a result of his extradition from The Bahamas, on the additional charges included in the S5 Indictment. And on that question, the United States is seeking the consent of The Bahamas before proceeding to trial on the additional charges in the S5 Indictment, as contemplated by the Extradition Treaty.

**II. The Bahamas' Decision on Waiver Will Be Dispositive**

The Second Circuit has repeatedly held that an extraditing country's decision on a request to waive the rule of specialty is dispositive. *See United States v. Guzman Loera*, 24 F.4th 144, 152 (2d Cir. 2022) ("[T]o the extent there is any disagreement among the circuits about a defendant's standing to raise a specialty objection in the absence of a waiver by the extraditing nation, there is no support for granting such standing in a case like this, in which [the extraditing country] has explicitly consented to having [the defendant] tried on the instant indictment."); *see also id.* at 151-

[2] Unless otherwise noted, case quotations omit internal quotation marks, citations, and previous alterations.

52 (collecting cases from the Third, Sixth, and Eleventh Circuits). This is so because any individual right that the defendant could possibly have "under the terms of his extradition is only derivative through the state." *United States v. Suarez*, 791 F.3d 363, 367 (2d Cir. 2015); *see also United States v. Stokes*, 726 F.3d 880, 890 (7th Cir. 2013) (explaining that an extraditing country's "waiver of the Rule of Specialty is conclusive" and that any "[f]urther inquiry is unnecessary"); *id.* at 889-90 (collecting cases from the First, Eighth, Ninth, and Eleventh Circuits).

Just last year, a similar situation arose in *United States v. Ralston*, 19 Cr. 774 (JSR), 2022 WL 769257 (S.D.N.Y. Mar. 14, 2022). In *Ralston*, the Government obtained a superseding indictment after two defendants had been extradited from the United Kingdom and Spain, and then sought waivers of specialty from the extraditing countries. The defendants moved to dismiss the new charges, and the court denied the motion without prejudice, noting that "the decision of the extraditing countries as to waiver of the rule of specialty will be dispositive." 2022 WL 769257, at *4. The same result is warranted here. The Government is seeking a waiver from The Bahamas, and while that request is pending, the Court should deny the defendant's motion to dismiss Counts Nine, Ten, and Thirteen on specialty grounds.

## III. The Defendant Lacks Standing to Raise the Rule of Specialty

The defendant's motion should also be denied because he lacks standing to raise specialty objections under binding Second Circuit precedent. This precedent, reaffirmed by the Second Circuit just last year, holds that the rule of specialty can be invoked only by the extraditing country—here, The Bahamas—and not the individual extradited defendant. *See Guzman Loera*, 24 F.4th at 151 (2d Cir. 2022). In *Guzman Loera*, the Court of Appeals reiterated the longstanding principle that "international treaties establish rights and obligations between States-parties—and generally not between states and individuals, notwithstanding the fact that individuals may benefit

because of a treaty's existence." 24 F.4th at 151; *see also Barinas*, 865 F.3d at 105 (noting precedents holding that "as a matter of international law, the principle of specialty has been viewed as a privilege of the asylum state, designed to protect its dignity and interests, rather than a right accruing to the accused"). Put another way, "[a]bsent an express provision in the agreement between the states, any individual rights are only derivative through the states, and absent protest or objection by the offended sovereign, a defendant has no standing to raise the violation of international law." *Barinas*, 865 F.3d at 105.[3]

The defendant repeatedly quotes a sentence from *Barinas* that the extraditee has a "remedy only if the surrendering government would object, since the underlying substantive wrong, which grows out of international law, is only to the latter." *Id.* He argues that this means that he has standing if The Bahamas "would object" to trial on the new charges. But his argument ignores that the very next sentence in *Barinas* makes clear that an "extraditee lacks standing to complain of noncompliance with an extradition treaty unless the treaty contains language indicating that the intent of the treaty drafters was that such benefits could be vindicated through private enforcement." *Id.* And the defendant also ignores the recent holding in *Guzman Loera* altogether. The language in *Barinas* about whether the surrendering government "would object" is not an invitation for this Court to speculate about what a foreign sovereign hypothetically "would" do.

[3] The defendant relies heavily on *United States v. Rauscher*, 119 U.S. 407 (1886), a case involving the interpretation of an 1842 treaty with Great Britain, to argue that he has standing. But that argument is squarely at odds with decades of precedent in this Circuit finding *Rauscher* to be no obstacle to the conclusion that a defendant does not have standing to assert the rule of specialty. *See, e.g.*, *United States v. Nosov*, 153 F. Supp. 2d 477, 480 & n.2 (S.D.N.Y. 2001) (distinguishing *Rauscher*, which "has not been viewed as determinative" about whether "a defendant would have standing to raise the specialty doctrine," and noting that "[d]ecisions from the Second Circuit—the binding authority for this court—suggest that a defendant would not have standing to invoke the rule of specialty").

Rather, this language simply means that the right to object is held by the surrendering government, not by the individual defendant.

In his motion, the defendant does not cite any provision in the Extradition Treaty conferring standing on him, nor can he. Instead, the defendant argues that Article 14(1)(b) of the Extradition Treaty, which permits a defendant to be tried on additional charges if the extraditing country consents to the charges, should be construed as a "standing objection" by The Bahamas to any new charges being brought. (Dkt. 139 at 18). That reading of the treaty, however, only serves to confirm the understanding of international law that has been repeatedly recognized by the Second Circuit; namely, that the right to invoke the rule of specialty is held by the extraditing country, not by the individual defendant who was extradited. *Barinas*, 865 F.3d at 105.

Finally, the defendant makes a policy argument against the rule in the Second Circuit, arguing that denying him standing could lead to "prosecutorial overreach," and he cites decisions from other circuits that have recognized individual standing to assert the rule of specialty in certain circumstances. But the law in this Circuit is clear, and the Second Circuit reaffirmed the law just last year in *Guzman Loera*, rejecting a defendant's request for the court to revisit circuit precedent that forecloses the defendant from raising this claim. *Guzman Loera*, 24 F.4th at 151 (declining to revisit *Barinas* and reaffirming that defendants lack standing to raise specialty). Additionally, this case does not raise the policy concerns asserted by the defendant, as the Government is seeking a waiver of specialty from The Bahamas in accordance with the Extradition Treaty.[4]

[4] The defendant also makes a "dual criminality" argument against just one of the new counts, the FCPA count. That is exactly the sort of argument that the defendant lacks standing to make, but in addition to that, his argument is meritless. The defendant cites a 2012 Bahamian case that denied extradition for an FCPA charge on the ground that the Bahamian bribery law at that time defined "public officials" to include only Bahamian officials, and thus did not criminalize "foreign

## IV. There Is No Basis to Dismiss Count Twelve on Specialty Grounds

In his motion, the defendant separately seeks dismissal of Count Twelve of the S5 Indictment (what was count eight of the original indictment), which charges him with conspiring to make unlawful campaign contributions and to defraud the Federal Election Commission. He argues that The Bahamas has not extradited him for trial on that count. In making that argument, however, the defendant relies on a selective reading of certain portions of the record, while ignoring other aspects of the record that undermine his claim.

By way of background, in the original indictment in this case, the unlawful campaign contributions conspiracy count was listed as Count Eight and was included in the United States' diplomatic note conveying its request to The Bahamas for the defendant's arrest. (Dkt. 137-1, at 4-5). The United States also transmitted to The Bahamas the arrest warrant from this District, which listed the campaign contributions conspiracy as one of the charges for which the defendant was to be arrested. (*Id.* at 12). The defendant was arrested and detained in The Bahamas pursuant to the United States' provisional arrest request based on these charges. He then signed an affidavit in which he consented to be extradited on the counts listed in the diplomatic note and arrest warrant, including count eight of the original indictment. (*Id.* at 2 ("[H]aving considered the charges set out in the said Diplomatic Note and arrest warrant, … I hereby consent, in writing, to be extradited without formal extradition proceedings.")).

The defendant then appeared in court in The Bahamas and reiterated his consent to be

---

bribery." (Dkt. 139, at 25). In 2014, however, the Bahamian legislature amended the Prevention of Bribery Act to expressly prohibit bribery of a "foreign public official." The Prevention of Bribery (Amendment) Act, 2014, § 3 (Bah.), available at http://laws.bahamas.gov.bs/cms/images/LEGISLATION/AMENDING/2014/2014-0003/PreventionofBriberyAmendmentAct2014.pdf. The defendant makes no mention of the 2014 Amendment to the Prevention of Bribery Act, which undermines his entire argument based on the earlier case law.

extradited on these counts. (Dkt. 137-4). At that proceeding, all of the counts in the Indictment were individually identified (*id.* at 6-7), and the Bahamian judge specifically noted that the extradition applied to "the charges outlined on a diplomatic note that Mr. Bankman-Fried is appreciative of that he will have to answer to" (*id.* at 10), before ordering the defendant detained for extradition on those charges (*id.* at 10-11). The Bahamian Minister of Foreign Affairs then issued a "Warrant of Surrender" instructing the Bahamian Department of Corrections and the Bahamian police to surrender the defendant to the United States. (Dkt. 137-2). The surrender warrant notes that the defendant had consented to extradition and that the Bahamian judge had ordered him detained pending his extradition. The surrender warrant also attaches a "Schedule of Charges" that lists the counts in the original indictment except for the unlawful campaign contributions count. (*Id.* at 2).

In his motion, the defendant ignores almost the entirety of this background and focuses exclusively on the fact that the attachment to the surrender warrant does not identify the campaign contributions conspiracy charge as one of the counts for which he was being extradited. Based on that, he argues that this count must be dismissed. That motion should be denied. First, as already noted, the defendant lacks standing to raise a challenge based on the rule of specialty and his motion should be denied on that basis alone. Indeed, with respect to this count, the defendant's general lack of standing to raise the rule of specialty is reinforced by the fact that he consented in writing to be extradited on this count. The defendant's consent to extradition was signed with the assistance of legal counsel, and he was allocuted on his consent and confirmed in open court that he understood the import of the consent. As the judge in The Bahamas explained, the defendant's consent encompassed all the charges in the diplomatic note and memorialized his understanding that "he will have to answer to" these charges upon his extradition. (Dkt. 137-4, at 10). Having

knowingly and voluntarily consented to extradition and trial on this charge, the defendant should not now be heard to challenge his own consent. *Cf., e.g.*, *Powell v. United States*, 946 F. Supp. 2d 320, 323 (S.D.N.Y. 2013) (noting that courts will enforce waivers in plea agreements "as long as the record clearly demonstrates that the waiver was knowing—in the sense that the petitioner understood the consequences of the waiver—and voluntary—in the sense that the petitioner was not coerced or threatened into agreeing to the waiver").

Second, the extradition record as a whole suggests that the defendant was extradited on all counts in the original indictment. As noted, the record is replete with references to all the counts. The United States provided The Bahamas with a diplomatic note and arrest warrant identifying all the charges in the indictment, the defendant consented to extradition on all these counts, and the Bahamian judge accepted his consent and ordered him detained for extradition on all these counts. The only thing that the defendant points to in the record is the attachment to the surrender warrant. While it is true that the attachment to the surrender warrant does not list the campaign contributions conspiracy charge, there is nothing in the record that supports the defendant's argument that the omission of this count reflected a deliberate decision to limit the terms of the extradition. Indeed, the surrender warrant on the whole can, and should, be read to include this count, because it refers to the defendant's consent and to the Bahamian court's detention order, both of which encompassed all the counts that were listed in the indictment at the time.

The defendant's citation to *United States v. Khan*, 993 F.2d 1368, 1374-75 (9th Cir. 1993) is inapposite. There, the defendant had not consented to extradition, and the extradition documents included a report from a Pakistani commissioner and a judgment from a Pakistani court on the United States' extradition request. Because neither of those documents made refence to the contested count, the Ninth Circuit concluded that proceeding to trial on that count violated the rule

of specialty. *Khan*, 993 F.2d at 1374-75. Here, in contrast, with the context of the defendant's consent and the Bahamian court's order including all counts, nothing in the record suggests that the omission of this count in the attachment to the surrender warrant reflected a deliberate decision to limit the terms of the extradition, as the defendant argues.

In fact, under similar circumstances, when confronting an extradition record containing multiple documents and an ostensibly inadvertent omission, the Second Circuit has declined to find a violation of the rule of specialty. *See United States v. Levy*, 25 F.3d 146, 159 (2d Cir. 1994) (where arrest warrant submitted to foreign country only listed one of five counts on indictment, and diplomatic note from extraditing country referred generally to the "charges" in the indictment, no violation of rule of specialty to proceed on all five counts); *see also United States v. Levy*, 905 F.2d 326, 329 (10th Cir. 1990) (no violation of rule of specialty where surrender order "neither mentioned [the contested charge] by name nor recited all the elements of the crime" because "totality of circumstances" showed that "the Hong Kong courts clearly considered whether [the defendant] could be extradited on that charge") (quoting *United States v. Flores*, 538 F.2d 939, 945 (2d Cir. 1976)); *United States v. Sensi*, 879 F.2d 888, 895 (D.C. Cir. 1989) (no violation of rule of specialty where United States sought extradition on a 26-count indictment and the British magistrate judge's extradition order only set out 18 counts of theft). The Court should do likewise in this case.[5]

**V. The Defendant's Request for Discovery Pertaining to Extradition Should Be Denied**

The defendant's final argument is that the Government should be ordered to produce all

[5] In an abundance of caution, the United States has conveyed to The Bahamas its understanding that the omission of the campaign finance charge was inadvertent, and informed The Bahamas that, absent timely information to the contrary from The Bahamas, the United States intends to proceed on this charge. If The Bahamas objects, the Government will not proceed on this charge.

diplomatic correspondence and notes relating to his extradition. He cites no authority for his sweeping request, and merely argues that such records may be "material" to his arguments regarding the rule of specialty. That argument fails for three reasons. First, as the defendant lacks standing in any event to assert the rule of specialty, he is not entitled to documents pertaining to that issue. Moreover, even if the defendant could raise the specialty issue, the only relevant document would be The Bahamas' response to a request for a waiver of specialty, which will be dispositive of this issue. *See United States v. Loera*, 09 Cr. 466 (BMC), 2017 WL 2821546, at *6 (E.D.N.Y. June 29, 2017) (denying request for discovery of "material precipitating [an extraditing country's] provision of the waiver" because, in light of the extraditing country's waiver, "extradition documents are unnecessary and immaterial").

Second, the defendant is not entitled to communications with The Bahamas because those communications are not in the possession of the prosecution team. To the extent that the Department of State and the Department of Justice's Office of International Affairs have engaged in diplomatic communications with The Bahamas, those entities "are not part of the prosecution team and therefore not subject to Rule 16." *Loera,* 2017 WL 2821546at *7.

Finally, to the extent that the defendant argues that affidavits of law enforcement agents or prosecutors in connection with a request transmitted to The Bahamas are disclosable under Rule 16, he is wrong. Those materials constitute "internal government documents" that are expressly shielded from disclosure by Rule 16(a)(2). *See Loera*, 2017 WL 2821546, at *7 (where extradition treaty "requires the United States to detail at length its case against a defendant, … providing that material to defendant amounts to an improper disclosure of the Government's order of proof" and is shielded from discovery by Rule 16(a)(2)). In any event, these are not subject to production under Rule 16(a)(1)(E)(i), the provision which the defendant relies. The Supreme Court has held

that the catch-all provision for items "material to preparing the defense," Fed. R. Crim. P. 16(a)(1)(E)(i), authorizes production only of items that tend to "refute the Government's arguments that the defendant committed the crime charged." *United States v. Armstrong*, 517 U.S. 456, 462 (1996). The defendant's request for discovery pertaining to extradition should be denied.

**CONCLUSION**

For the reasons set forth above, the defendant's motions relating to purported violations of the rule of specialty should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

GLENN S. LEON
Chief, Fraud Section
Criminal Division

By: /s/ Thane Rehn
Thane Rehn
Danielle Kudla
Samuel Raymond
Andrew Rohrbach
Nicolas Roos
Danielle R. Sassoon
Assistant United States Attorneys
Jil Simon
Trial Attorney
(212) 637-1115

Dated: May 29, 2023
New York, New York