UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                                 :
UNITED STATES OF AMERICA                                         :
                                                                 :        S5 22 Cr. 673 (LAK)
                v.                                                :
                                                                 :
SAMUEL BANKMAN-FRIED,                                            :
                                                                 :
                              Defendant.                         :
-----------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF SAMUEL BANKMAN-FRIED'S
MOTION TO COMPEL THE GOVERNMENT TO PRODUCE DOCUMENTS AND
FOR AN ORDER AUTHORIZING A SUBPOENA TO FENWICK & WEST LLP**

Mark S. Cohen
Christian R. Everdell
S. Gale Dick
Sri K. Kuehnlenz
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, NY  10022
(212) 957-7600
mcohen@cohengresser.com
ceverdell@cohengresser.com
sgdick@cohengresser.com
skuehnlenz@cohengresser.com


*Attorneys for Samuel Bankman-Fried*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

I.      BACKGROUND ........................................................................................................... 1

II.     STATUS OF DISCUSSIONS........................................................................................ 5

III.    THE REQUESTED DOCUMENTS.............................................................................. 5

ARGUMENT ..................................................................................................................... 10

I.      THE COURT SHOULD DIRECT THE GOVERNMENT TO PRODUCE THE
        DOCUMENTS REQUESTED BY THE SUBPOENA UNDER RULE 16..................... 11

        A.     Legal Standard .................................................................................................. 11

        B.     The Requested Materials are Within the Government's Control......................... 12

        C.     The Requested Documents Are Material to Preparing the Defense under
               Rule 16(a)(1)(E)(i). .......................................................................................... 15

II.     IN THE ALTERNATIVE, THE COURT SHOULD AUTHORIZE THE
        SUBPOENA UNDER RULE 17(C)(1). ......................................................................... 17

        A.     Legal Standard .................................................................................................. 17

        B.     The Requested Materials are Relevant and Admissible. ..................................... 18

        C.     The Requests Are Specific................................................................................... 18

        D.     The Requested Materials are Not Otherwise Procurable. .................................... 18

        E.     Mr. Bankman-Fried Cannot Properly Prepare for Trial Without Receiving
               the Requested Materials in Advance of Trial. ..................................................... 19

CONCLUSION.................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brady v. Maryland*,
  373 U.S. 83, 83 S. Ct. 1194 (1963) ...................................................................5, 16

*United States v. Barnes*,
  560 Fed. Appx. 36 (2d Cir. 2014) ................................................................... 17-18

*United States v. Kilroy*,
  523 F. Supp. 206 (E.D. Wis. 1981) ................................................................ *passim*

*United States v. Nixon*,
  418 U.S. 683, 94 S. Ct. 3090 (1974) ........................................................... 10-11, 18

*United States v. Ruth*,
  495 F. Supp. 3d 161 (W.D.N.Y. 2020) ..................................................................17

*United States v. Scully*,
  877 F.3d 464 (2d Cir. 2017) ..................................................................... 16-17, 18

*United States v. Stein*,
  488 F. Supp. 2d 350 (S.D.N.Y. 2007) ............................................................ *passim*

*United States v. Stevens*,
  985 F.2d 1175 (2d Cir. 1993) ..............................................................................12

*United States v. Tucker*,
  249 F.R.D. 58 (S.D.N.Y. 2008) ...........................................................................19

**Rules and Regulations**

31 C.F.R. 1010.100(ff) ....................................................................................... 6-7

Federal Rules of Criminal Procedure Rule 16 ..................................................... *passim*

Federal Rules of Criminal Procedure Rule 17 ..................................................... *passim*

Federal Rules of Evidence Rule 803 .........................................................................18

Mr. Bankman-Fried respectfully submits this memorandum of law in support of his motion (i) to compel the Government pursuant to Rule 16 of the Federal Rules of Criminal Procedure to produce the documents specifically identified in Exhibit A to the subpoena attached hereto (the "Subpoena"), and (ii) in the alternative, for an order under Rule 17(c)(1) of the Federal Rules of Criminal Procedure authorizing his counsel to issue the Subpoena to the law firm of Fenwick & West LLP ("Fenwick") directing Fenwick to produce these same documents to the defense by no later than June 20, 2023, or such other date as the Court may order.

## PRELIMINARY STATEMENT

Mr. Bankman-Fried seeks the production of documents in the possession of Fenwick that are potentially exculpatory and material to preparing his defense.

## I.     BACKGROUND

Mr. Bankman-Fried has been charged in a thirteen-count indictment alleging that from in or about 2019 through in or about November 2022, Mr. Bankman-Fried committed fraud and other misconduct at FTX.com ("FTX"), a cryptocurrency exchange, and Alameda Research ("Alameda"), a cryptocurrency hedge fund, each co-founded by Mr. Bankman-Fried.  Alameda was founded in 2017 in Berkeley, California, and FTX was founded in 2019 in Hong Kong. Both were start-up companies in the newly emerging cryptocurrency sector.  Early in their development, FTX and Alameda engaged Fenwick, a law firm headquartered in Silicon Valley specializing in providing legal advice to start-up companies in the technology sector, as its primary outside counsel.  As Fenwick advertises on its law firm website, "Unlike traditional law firms, we move at our clients' speed and have earned the reputation as a go-to law firm for

growing companies that need insightful, strategic counsel to help tackle the challenging issues that arise when the law cannot keep up with their pace of innovation."[1]

Fenwick remained outside counsel to FTX and Alameda throughout the period charged in the Fifth Superseding Indictment ("S5 Indictment") up until both companies filed for bankruptcy in November 2022. Indeed, the relationship with Fenwick was so close that, over time, several Fenwick attorneys including Dan Friedberg and Can Sun transitioned to senior in-house counsel positions at FTX, where they continued to liaise regularly with their former colleagues at Fenwick. While Mr. Bankman-Fried was CEO of Alameda and later FTX, the companies regularly consulted attorneys at Fenwick on legal issues. As is often the case with start-ups, Fenwick represented not only FTX and Alameda, but also represented Mr. Bankman-Fried personally and as part of joint representations with FTX and Alameda.

Because Fenwick was so deeply involved with FTX and Alameda from their inception, Fenwick provided legal advice on many of the issues that are at the core of the Government's allegations in the S5 Indictment. The defense is aware that Fenwick provided advice on these topics because, among other reasons, we received in the criminal discovery a limited number of invoices and other documents sent by Fenwick to FTX and Alameda, which reflect that Fenwick spent significant attorney time addressing these issues. A sample of these invoices and documents are included as attachments to the Subpoena, but we believe that other similar documents were not produced, including invoices from February 22, 2022 to November 30, 2022, which are at the center of the Government's allegations. As a result, Fenwick's communications with Mr. Bankman-Fried and others at FTX and Alameda during the period relevant to the S5 Indictment are critical and material to preparing the defense.

---

[1] *See* https://www.fenwick.com/firm.

For example, Count 9 of the S5 Indictment charges Mr. Bankman-Fried with conspiracy to commit bank fraud by providing false information to "Bank-1" to open a U.S. bank account in the name of a company called "North Dimension" to receive FTX customer deposits.  *See* S5 Indictment ¶¶ 14-21, 85-87.  Relatedly, Count 10 of the S5 Indictment charges Mr. Bankman-Fried with conspiracy to operate an unlicensed money transmitting business on the grounds that, by using the North Dimension bank account to receive FTX customer deposits, FTX was required to register with FinCEN as a money services business, but failed to do so.  *See* S5 Indictment ¶¶ 14-21, 88-90.  Based on the limited number of invoices and other documents we received in discovery, it is clear that Fenwick provided real-time legal advice to FTX about both the opening of the North Dimension bank account and whether or not FTX needed to register as a money services business.  *See* Subpoena, Exhibit A, Attachments 3-10.  Indeed, based on the documents we have received in discovery, which include legal memoranda and analysis, Fenwick's advice was that FTX.com, the international exchange, did *not* need to register as a money services business but that FTX.US, the U.S.-based exchange that serviced U.S. customers, did need to register.  *See* Subpoena, Exhibit A, Attachments 4-7.[2]  Tellingly, as the S5 Indictment notes, Mr. Bankman-Fried did, in fact, "register FTX.US as a money services business in 2020."  S5 Indictment ¶ 17.  Accordingly, the advice given by Fenwick directly contradicts the Government's theory underlying Count 10.

As another example, the Government alleges in the S5 Indictment that Mr. Bankman-Fried directed FTX employees to use ephemeral messaging applications like Signal to facilitate the alleged fraud scheme by ensuring that potentially incriminating messages would be deleted. *See* S5 Indictment ¶ 4 ("At relevant times, BANKMAN-FRIED required his co-conspirators and

---

[2] We note that the U.S. Attorney's Office for the Southern District of New York has indicated to counsel for Mr. Bankman-Fried that FTX and Alameda have waived privilege regarding this particular topic.

others who worked for him to communicate using encrypted and ephemeral messaging platforms that self-deleted, thereby preventing regulators and law enforcement from later obtaining a record of his misdeeds."); ¶ 60 ("BANKMAN-FRIED had previously instructed employees to communicate over Signal, and directed that employee Signal messages be set to auto-delete after brief periods of time, in part to prevent the preservation of evidence that could be used against him."). The Government also featured this point in its arguments concerning Mr. Bankman-Fried's bail conditions as a reason that his communications needed to be severely restricted. In fact, the limited number of invoices received in discovery make clear that Fenwick advised FTX in real time on the use of ephemeral messaging applications and document retention policies. *See* Subpoena, Exhibit A, Attachments 11-12. If Mr. Bankman-Fried believed he could use ephemeral messaging applications for business communications on the advice of Fenwick, that directly contradicts the Government's allegations on this point, which are featured in the S5 Indictment as an indication of Mr. Bankman-Fried's allegedly fraudulent intent.

As a final example, the Government alleges in the S5 Indictment that Mr. Bankman-Fried directed Alameda to make improper loans to himself and other FTX executives consisting of misappropriated FTX customer funds to carry out a scheme to violate the U.S. campaign finance laws. *See* S5 Indictment ¶¶ 47-48. The invoices reflect that Fenwick routinely reviewed and provided tax advice concerning loan agreements. *See* Subpoena, Exhibit A, Attachments 4, 23. If Fenwick provided advice that it was preferable to structure payments from Alameda to FTX executives as loans for tax purposes, that would rebut the Government's position that the loans were structured this way for improper purposes.

Accordingly, the requested documents held by Fenwick are potentially exculpatory and material to the preparation of Mr. Bankman-Fried's defense.

## II.    STATUS OF DISCUSSIONS

The defense contacted Fenwick to obtain documents, but Fenwick has represented that it cannot provide any documents without the consent of counsel for the FTX debtor entities in bankruptcy (the "FTX Debtors").  The defense also contacted the FTX Debtors' counsel regarding the documents requested by the Subpoena, as well as additional requests, and is currently in negotiations with the FTX Debtors' counsel about whether the FTX Debtors will contest the requests and/or assert privilege.

Although the FTX Debtors may refuse to waive privilege, that should not preclude the production of documents in the possession of Fenwick to the defense.  Fenwick's files will likely contain other documents that can be produced, including (i) non-privileged information like additional invoices, in particular invoices from February 22, 2022 to November 30, 2022; (ii) information related to topics for which the FTX Debtors have already waived privilege, including whether or not FTX needed to register as a money services business; and (iii) documents that were produced as part of any joint representation or individual representation of Mr. Bankman-Fried.  Moreover, to the extent the FTX Debtors assert privilege, it is their burden to establish that the relevant documents are, in fact, privileged and to provide a privilege log justifying the assertion of privilege for each document.  *See United States v. Stein*, 488 F. Supp. 2d 350, 367 (S.D.N.Y. 2007) (Kaplan, J.) ("[T]he burden of establishing the existence of an attorney-client privilege, in all of its element*s*, rests with the party asserting it.").

## III.    THE REQUESTED DOCUMENTS

Mr. Bankman-Fried seeks documents from Fenwick relating to critical topics that are material to preparing the defense and which the defense believes will contain potentially exculpatory *Brady* material.  Specifically, the Subpoena seeks the following materials, which are

reflected in the attached invoices and other documents sent by Fenwick to FTX and Alameda during the relevant period:

- **Request No. 1**:  We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda, dated November 2017 through November 2022, concerning the formation and incorporation of FTX, FTX US, or Alameda, including jurisdictional and regulatory considerations and determinations of applicable law, such as reflected in the following invoices:

  - Attachment 1:  SBF_GOOGLE_SW_00192150 ("draft futures exchange documents; emails regarding Antigua entity . . . jurisdictional futures trading regulation survey . . . Review options to launch futures exchange . . . Call with Alameda and Fenwick team; A&O on proposed approach to establishing new foreign exchange . . . emails with A&O regarding multi-jurisdictional futures trading regulation survey; confer with D. Friedberg regarding same")

  - Attachment 2:  SBF_GOOGLE_SW_00177562 ("read through relevant no action letters and policy statements regarding foreign exchange registration . . . research and analyze effect of CFTC's rules regarding exchanges not located in the United States . . . legal research on subsidiaries of U.S. companies trading on foreign futures exchanges . . .  Review news articles regarding CFTC enforcement actions against foreign exchanges . . . Research and analyze [CFTC] regulations for foreign board of trade as applied to foreign crypto futures exchange")

  - Attachment 3:  SDNY_03_00054152 ("regulatory advice on foreign jurisdictions")

- **Request No. 2**:  We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda in connection with the formation and incorporation of North Dimension Inc. and North Wireless Dimension Inc. in Delaware and North Dimension Ltd. in the British Virgin Islands, such as reflected in the following invoices:

  - Attachment 4:  SDNY_03_00208210 ("Attention to incorporation of North Dimension Inc[.] and North Wireless Dimension Inc. . . Draft certificate of incorporation for subsidiary . . . North Dimension Inc. formation and North Wireless Dimension Inc. formation")

  - Attachment 3:  SDNY_03_00054152 ("Confer with Silvergate; prepare material; regulatory advice on foreign jurisdictions")

- **Request No. 3**:  We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda concerning whether FTX, Alameda or North Dimension were required to register as a Money Services Business as defined in 31 C.F.R. 1010.100(ff),

such as reflected in the following invoices and memoranda:

- o <u>Attachment 4</u>:  SDNY_03_00208253 ("MTL project . . . orientation meeting with I. Voloshin and team members regarding money transmitter licensing project . . . MTL Project:  Daily check-in with FTX team")

- o <u>Attachment 5</u>:  SDNY_02_00416556 (Memorandum from Fenwick to Dan Friedberg re: "West Realm Shires Services, Inc. dba FTX.US ("FTX.US") Exemption under Federal and State Money Transmission Rules re FTX US")

- o <u>Attachment 6</u>:  SDNY_03_00056209 ("Compliance training for MSB matters . . . Money transmission related support")

- o <u>Attachment 7</u>:  SDNY_03_00567632 (email from Igor Voloshin to Dan Friedberg re "Tether Gold Analysis")

- **Request No. 4**:  We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda, dated May 2019 through November 2022, concerning a banking relationship between the FTX Group, Alameda or North Dimension and Silvergate Bank, specifically in connection with (i) opening bank accounts at Silvergate Bank, (ii) using such accounts to process deposits and withdrawals on behalf of FTX customers, (iii) using such accounts to conduct OTC trading and processing on behalf of FTX customers, and (iv) responding to compliance inquiries from Silvergate Bank, such as reflected in the following invoices:

- o <u>Attachment 8</u>:  SBF_GOOGLE_SW_00137561 ("Draft Silvergate letter")

- o <u>Attachment 9</u>:  SDNY_03_00208162 ("Call with Silvergate; draft follow up email")

- o <u>Attachment 10</u>:  SDNY_03_00208309 ("Draft response to Silvergate . . . Draft Silvergate EDD responses")

- o <u>Attachment 3</u>:  SDNY_03_00054152 ("Prepare material for Silvergate submission . . . Confer with Silvergate; prepare material . . . update Silvergate material")

- **Request No. 5**:  We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda, concerning data retention policies at FTX, including the use of auto-delete policies and ephemeral messaging applications, such as reflected in the following invoices:

- o <u>Attachment 11</u>:  SDNY_03_00208353 ("research retention issues for ephemeral messaging and confer internally re same . . . draft retention policy and schedule")

- o <u>Attachment 12</u>:  SDNY_03_00697055 ("Prepare for D. Friedberg call through review of prior draft retention policy")

- **Request No. 6**:  We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to the FTX Group or Alameda concerning FTX's or FTX US's margin lending program and liquidity requirements, such as reflected in the following invoices:

    o Attachment 13:  SDNY_03_00208054 ("Advice to C. Richman on margin lending program … Draft ECP only US margin agreement")

    o Attachment 14:  SDNY_03_00208087 ("Review new CFTC guidance on actual delivery for FTX margin program")

- **Request No. 7**:  We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group concerning (i) FTX Terms of Service, (ii) FTX customer agreements, (iii) FTX user agreements, and (iv) FTX master agreement, such as reflected in the following invoices:

    o Attachment 15:  SDNY_03_00694422 ("Draft terms of use for FTX Exchange . . . drafting terms of use/service")

    o Attachment 9:  SDNY_03_00208162 ("pull and evaluate FTX terms of service per D. Friedberg request . . . consider revisions to same")

    o Attachment 16:  SBF_GOOGLE_SW_00199432 ("Draft cryptocurrency exchange master agreement")

    o Attachment 17:  SDNY_03_00694438 ("Draft user agreements")

    o Attachment 18:  SBF_GOOGLE_SW_00180328 ("Draft FTX customer agreement")

- **Request No. 8**:  We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda concerning certain intercompany agreements between FTX and Alameda Research Ltd., specifically:

    i.   The Payment Agent Agreement, dated June 1, 2019

    ii.  The Intercompany Treasury Management Agreement, dated June 1, 2019

    iii. The fiat integration agreement, dated sometime in or around November 2020

    iv.  The intercompany services agreement, pursuant to which Alameda provided certain services to FTX

    v.   The cost allocation agreement

    vi.  Token exchange agreements

8

vii.    The Cash Management Agreement

such as reflected in the following invoices:

- o  <u>Attachment 19</u>:  SDNY_03_00056230 ("Draft intercompany services agreement")

- o  <u>Attachment 15</u>:  SDNY_03_00694422 ("confer with C. Richman on user agreement/liquidity provider agreement")

- o  <u>Attachment 20</u>:  SDNY_03_00208024 ("Review exchange agreement . . . Attend to intercompany agreements")

- o  <u>Attachment 3</u>:  SDNY_03_00054152 ("revise intercompany cash management agreement; research in connection with the same")

- **Request No. 9**:  We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group concerning planned or actual statements or representations made on the FTX.com or FTX.us websites, such as reflected in the following invoices:

  - o  <u>Attachment 21</u>:  SDNY_03_00208123 ("review FTX website for terms of service")

  - o  <u>Attachment 13</u>:  SDNY_03_00208054 ("Review online disclosures regarding equity financing")

  - o  <u>Attachment 9</u>:  SDNY_03_00208162 ("confer regarding FTT and FTX disclosures")

- **Request No. 10**:  We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to the FTX Group or Alameda, in connection with any documents, materials, statements or representations made or contemplated to be made to actual or prospective investors in FTX, FTX US, or lenders to Alameda, including loans, pitch decks, prospectuses, offering documents and disclosure schedules thereto, such as reflected in the following invoices:

  - o  <u>Attachment 15</u>:  SDNY_03_00694422 ("Revise FTX deck . . . review FTX deck, plan structuring for exchange and leveraged tokens)

  - o  <u>Attachment 22</u>:  SDNY_03_00056076 ("Edit Series B-1 financing documents, address due diligence questions, and related correspondence")

  - o  <u>Attachment 17</u>:  SDNY_03_00694438 ("Draft prospectus")

  - o  <u>Attachment 23</u>:  SDNY_03_00208108 ("Research seed round docs")

- o   <u>Attachment 13</u>:  SDNY_03_00208054 ("comments to FTX offering documents; confer regarding same; prepare comments to same . . . Confer regarding global offering and current Reg D and Reg S compliance")

- **Request No. 11**:  We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda concerning intercompany loans or lines of credit, loans or lines of credit to individuals including but not limited to the founders and other executives, such as reflected in the following invoices:

  - o   <u>Attachment 4</u>:  SDNY_03_00208210 ("attention to employee loan documents . . . attention to manager loans")

  - o   <u>Attachment 23</u>:  SDNY_03_00208108 ("draft loan agreement")

For the reasons set forth below, the Court should direct the Government to produce the requested documents to the defense under Rule 16.  In the alternative, the Court should approve the issuance of the Subpoena to Fenwick under Rule 17(c)(1) and order that Fenwick produce the requested documents to the defense by no later than June 20, 2023, or such other date as the Court may order, to permit resolution of any outstanding privilege issues and avoid unnecessary delays.

## **ARGUMENT**

As discussed in our pretrial motions, the FTX Debtors have given the Government full access to its documents, without the need to issue subpoenas, and are so enmeshed in the Government's investigation that they must be considered part of the "prosecution team" for purposes of the Government's discovery obligations.  *See* Dkt. 143 (Pretrial Motion #5: Motion for Discovery on the Basis that FTX Is a Member of the Prosecution Team).  For these two independent reasons, the documents requested by the Subpoena are within the Government's control and must be produced to the defense under Rule 16(a)(1)(E)(i).  Alternatively, the requested documents are targeted and specific and satisfy the requirements of Rule 17 and

*United States v. Nixon*, 418 U.S. 683, 94 S. Ct. 3090 (1974).  The Court should therefore

authorize the issuance of the Subpoena under Rule 17(c)(1).

## I.     THE COURT SHOULD DIRECT THE GOVERNMENT TO PRODUCE THE DOCUMENTS REQUESTED BY THE SUBPOENA UNDER RULE 16

### A.     Legal Standard

Rule 16 provides in relevant part that, upon the defendant's request, "the government

must permit the defendant to inspect and to copy or photograph books, papers, documents, data,

photographs, tangible objects … within the government's possession, custody, or control" where

"the item is material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E)(i).  When the

requested materials are held by third parties, but are nevertheless within the Government's

"control," the Court may direct the Government or the third party to produce the requested

materials to the defendant pursuant to Rule 16.  *See Stein*, 488 F. Supp. 2d at 360-64 (holding

that documents in the possession of a cooperating company subject to a Deferred Prosecution

Agreement were within the Government's "control" and directing the Government and the third

party to produce the requested documents to the defendant under Rule 16); *United States v.

Kilroy*, 523 F. Supp. 206, 215 (E.D. Wis. 1981) (holding that documents in the possession of a

cooperating company, which produced any records requested by the Government on demand,

were "practically speaking, within the Government's control").

"The term 'control' is broadly construed."  *Stein*, 488 F. Supp. 2d at 361 & n.45

(collecting authority).  Documents are deemed to be in the Government's "control," if the

Government has "the legal right to obtain the documents requested upon demand."  *Id*. (cleaned

up).  For example, this Court has directed the Government to produce documents in the

possession of a cooperating company that was subject to a Deferred Prosecution Agreement.  *Id*.

at 364.  Similarly, when the cooperating company's practice is to make available to the

Government "any records" it wants, even without a written agreement and without requiring the Government to issue a subpoena, courts have found the company's records to be in the Government's control for the purposes of Rule 16. *See Kilroy*, 523 F. Supp. at 215 (E.D. Wis. 1981) ("Since [the company] is cooperating with the Government in the preparation of the case and is making available to the Government for retention in the Government's files any records which [the company] has and which the Government wants … it is not unreasonable to treat the records as being within the Government's control[.]").

Materiality under Rule 16 "is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Stein*, 488 F. Supp. 2d at 356-57. "Evidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense." *Id.* at 357 (citing *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)). Materiality is assessed in light of "the logical relationship between the information and the issues in the case, but also the importance of the information in light of the evidence as a whole." *Stevens*, 985 F.2d at 1180.

**B.     The Requested Materials are Within the Government's Control.**

Mr. Bankman-Fried seeks to compel the production of documents material to his defense that are in the possession of Fenwick but are within the Government's control due to (i) the unrestricted access that the FTX Debtors have given the Government to its documents, and (ii) the far-reaching cooperation the FTX Debtors are providing to the criminal investigation.

The circumstances of this case bear a striking similarity to the facts of *United States v. Kilroy*, which this Court cited with approval in its opinion in *United States v. Stein*. *See* 488 F. Supp. 2d at 362 (citing *Kilroy*). In *Kilroy*, the defendant sought the production of certain bank

records that were material to his defense and that were in the possession of his former employer, Standard Oil.  *See Kilroy*, 523 F. Supp. at 214-15.  Standard Oil had been voluntarily cooperating with the Government and, although it was not "a party" to the case and had "no obligation to turn over any of its records to the defendant or to the Government except at trial pursuant to a valid trial subpoena," it was nevertheless "making available to the Government for retention in the Government's files any records which Standard Oil has and which the Government wants."  *Id*. at 215.  Standard Oil was doing so without a written agreement with the Government requiring its cooperation and was providing documents pursuant to voluntary document requests, not subpoenas.  *Id*.  Under these circumstances, the court held that it was "not unreasonable to treat the records as being within the Government's control at least to the extent of requiring the Government to request the records on the defendant's behalf."  *Id*.; *see also id*. (requested records were "practically speaking, within the Government's control").

Here, as in *Kilroy*, the FTX Debtors have not been served with subpoenas and have no obligation (written or otherwise) to produce documents to the Government but are nonetheless voluntarily providing the Government with full access to any and all documents or information in the possession of the FTX Debtors upon the Government's request.  Indeed, as set forth more fully in our pretrial motions, the FTX Debtors and their outside counsel have been working "night and day" as part of an "ongoing exercise" to provide information to the prosecutors in response to over 150 requests, and have spent countless hours collecting, reviewing, and analyzing documents for the Government at a cost of tens of millions of dollars.  *See* Dkt. 143 (Pretrial Motion #5: Motion for Discovery on the Basis that FTX Is a Member of the Prosecution Team) at 5-7.  Furthermore, the FTX Debtors have publicly committed to providing the Government with whatever documents and information it wants immediately and without

exception.  In a hearing before the District of Delaware Bankruptcy Court, the CEO of the FTX

Debtors, John Ray, testified as follows:

> Q:    Are you familiar with the cooperation that's been given to the U.S.
> Attorney's Office for the Southern District of New York and the
> Department of Justice's National Crypto-Currency Enforcement Team?
>
> A    Yes. Our teams have been involved with, you know, virtually daily
> requests. As you can see, we've had over 150 requests from the Southern
> District, produced substantial amounts of information, and provided
> substantial cooperation relative to instances where they wanted specific
> information related to certain actions, prehistoric actions, for the company
>
> *    *    *
>
> Q:    And have you ever – are you aware of any instances where full
> cooperation was not given immediately?
>
> A:    That wouldn't be tolerated.

*See* Everdell Decl. Ex. 1.  Under these circumstances, where the Government has full access to

the FTX Debtors' documents upon request without the need for a subpoena or other process, the

documents are "practically speaking, within the Government's control."  *Kilroy*, 523 F. Supp. at

215.

      This Court's opinion in *Stein* supports this conclusion.  In *Stein*, the cooperating

company, KPMG, was subject to a Deferred Prosecution Agreement ("DPA") which gave the

Government an unqualified right to require KPMG to produce any documents it wanted.

*See Stein*, 488 F. Supp. 2d at 362-64.  This Court found that the KPMG's discovery obligations

in the DPA gave the Government effective control over KPMG's documents.  *See id.*  Although

the FTX Debtors are not subject to a DPA like KPMG, that is likely because the FTX Debtors

filed for bankruptcy.  Had FTX and Alameda continued as going concerns, it is likely that the

Government would have required the companies to enter into similar DPAs.  Notwithstanding

the absence of a DPA, the Government's control over the FTX Debtors' documents is no less

complete than its control over the KPMG documents in *Stein*.

Separately, as discussed more in more detail in our pretrial motions, the FTX Debtors

have become so enmeshed in the Government's investigation that they must be considered part

of the "prosecution team" for purposes of the Government's discovery obligations.

*See generally* Dkt. 143 (Pretrial Motion #5: Motion for Discovery on the Basis that FTX Is a

Member of the Prosecution Team).  Should the Court determine that the FTX Debtors are a

member of the "prosecution team," then the Government would be deemed to have constructive

knowledge of the FTX Debtors' documents and would have an obligation to produce any Rule

16 discovery materials contained within those documents.  *See id*. at 3.

For these reasons, documents in the possession, custody, or control of the FTX Debtors

related to the events in the S5 Indictment, including then requested documents located in the

FTX Debtors' client files at Fenwick, should be considered within the Government's "control"

for the purposes of Rule 16.  *See Kilroy*, 523 F. Supp. at 215; *Stein*, 488 F. Supp. 2d at 367

(applying Rule 16 to a request for production from a cooperating company to the extent that the

subpoena seeks documents that "are material to the preparation of the defense and within the

possession, custody or control of the government").

    **C.**    **The Requested Documents Are Material to Preparing the Defense under
Rule 16(a)(1)(E)(i).**

The requested documents are material to preparing the defense because they relate to

legal advice Fenwick provided to FTX and Alameda that pertains directly to the factual

allegations and charges in the S5 Indictment.  As discussed above, according to the invoices and

other documents provided in discovery, Fenwick advised FTX and Alameda on numerous issues

that are central to the Government's case, including (1) the formation of FTX as a foreign

cryptocurrency exchange and whether U.S. laws and regulations applied to it; (2) FTX's banking relationship with "Bank-1," the incorporation of the North Dimension entities, and the opening of the North Dimension bank account at Bank-1, which are directly relevant to the bank fraud conspiracy (Count 9); (3) whether FTX was required to register as a money services business, which is directly relevant to whether Mr. Bankman-Fried operated an unlicensed money transmitting business (Count 10); (4) FTX's use of ephemeral messaging applications, which the Government claims were used as a means to conceal the alleged fraud; (5) FTX's terms of service and user agreements, which bear directly on what FTX customers were told about the use of their funds; (6) pitch decks, prospectuses and offering documents that were shown to actual or prospective investors in FTX, FTX US, or lenders to Alameda, which are directly relevant to the fraud counts involving FTX investors and Alameda's lenders (Counts 5-8); and (7) loans made to the founders of FTX and other FTX employees, which the Government claims were improper.

The documents requested by the Subpoena are therefore material to preparing the defense because "there is a strong indication that [they] will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal," *Stein*, 488 F. Supp. 2d at 356-57, and they can be used "to counter the government's case or to bolster a defense." *Id.* at 357 (citing *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)). Moreover, the documents are material because they may include important exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1197 (1963). Each of the charges against Mr. Bankman-Fried requires the Government to prove willfulness. Fenwick's analysis and advice on legal issues pertinent to the conduct charged in the S5 Indictment may rebut that Mr. Bankman-Fried had the requisite state of mind to commit the charged crimes. *See United States v. Scully*, 877 F.3d 464, 474-76 (2d Cir. 2017) (holding

that it was reversible error to exclude evidence of legal advice the defendant received and which he argued negated criminal intent).

Although some of the requested materials may have previously been subject to attorney-client privilege protections, the Government has represented to the defense that FTX has waived privilege as to at least one topic; namely, whether FTX, Alameda, or entities other than FTX US needed to register as a MSB or have money transmitting licenses.  To the extent certain materials remain subject to legal privilege, the appropriate procedure is to require Fenwick and the FTX Debtors to respond to the proposed Subpoenas and permit Mr. Bankman-Fried to challenge any privilege designations.  *See United States v. Ruth*, 495 F. Supp. 3d 161, 166 (W.D.N.Y. 2020) (holding in the context of a Rule 17 subpoena that "[t]he Court will not limit the scope of the subpoena simply because some documents responsive to it may be privileged" and stating that the receiving party should have asserted any applicable privilege and produced a privilege log); *see also Stein*, 488 F. Supp. 2d at 367 ("[T]he burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it.").

## II.    IN THE ALTERNATIVE, THE COURT SHOULD AUTHORIZE THE SUBPOENA UNDER RULE 17(C)(1).

### A.    Legal Standard

Should the Court determine that the documents requested by the Subpoena are not discoverable under Rule 16, the Court should, in the alternative, issue an order pursuant to Rule 17 authorizing the issuance of the Subpoena compelling the production of "books, papers, documents, data, or other objects" prior to trial.  Fed. R. Crim. P. 17(c)(1).  Under Rule 17, the party requesting the information "must make a preponderance showing that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence."  *United States v. Barnes*, 560 Fed. Appx. 36, 39-40 (2d Cir. 2014);

*accord Stein*, 488 F. Supp. 2d at 365-66 (citing *Nixon*, 418 U.S. at 699-700, 94 S. Ct. at 3103).

Additional relevant factors include whether the defendant otherwise could not properly prepare

for trial without such production, which may tend unreasonably to delay trial, and the applicant's

good faith.  *See Stein*, 488 F. Supp. 2d at 365-66 (citing *Nixon*).

> **B.     The Requested Materials are Relevant and Admissible.**

The materials sought by the Subpoena are relevant and amissible at trial.  *See Nixon*, 418

U.S. at 699-700, 94 S. Ct. at 3103.  As discussed above, the documents are relevant because they

will tend to negate that Mr. Bankman-Fried acted with the requisite criminal intent.  Moreover,

the documents will be admissible as, among other things, evidence of Mr. Bankman-Fried's state

of mind.  *See Scully*, 877 F.3d at 474 (legal advice offered as circumstantial evidence of the

defendant's state of mind is not offered for the truth and is therefore not inadmissible hearsay).

Furthermore, any written work product that Fenwick produced will be admissible as a business

record under Rule 803(6) of the Federal Rules of Evidence.  *See* Fed R. Evid. 803(6).

> **C.     The Requests Are Specific.**

The Subpoena seeks a specific set of documents and is "not intended as a general fishing

expedition."  *Stein*, 488 F. Supp. 2d at 377 (citing *United States v. Nixon* 418 U.S. 683, 94 S. Ct.

3090 (1974) and *United States v. Iozia*, 13 F.R.D. 335 (S.D.N.Y. 1952)).  The Subpoena seeks

documents concerning a limited set of topics on which Fenwick advised that are central to the

Government's allegations.  Compliance would not be "unreasonable or oppressive."  *Stein*, 488

F. Supp .2d at 364 (citing Rule 17(c)).

> **D.     The Requested Materials are Not Otherwise Procurable.**

The requested materials are not otherwise procurable by Mr. Bankman-Fried.  While the

criminal discovery contains a small set of materials received from Fenwick pursuant to a grand

jury subpoena and from the FTX Debtors pursuant to voluntary productions, including some

limited examples of legal advice provided by Fenwick, most of the requested materials likely
still exist in the possession of Fenwick or the FTX Debtors.  Mr. Bankman-Fried is only seeking
materials not previously produced to the Government.

The defense asked the Government to request additional documents and information from
Fenwick, but the Government declined, taking the position that it had no obligation to obtain or
produce communications between FTX or Alameda and any third party such as Fenwick.  Thus,
to the extent that additional relevant materials exist, such materials cannot be obtained through
alternate means.  *See United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008) (denying
Government's motion to quash Rule 17 subpoena seeking materials that were only in the
possession of cooperating witnesses).

> **E.     Mr. Bankman-Fried Cannot Properly Prepare for Trial Without Receiving
>          the Requested Materials in Advance of Trial.**

The legal analysis and advice the firm gave to FTX and Alameda is directly relevant to
crimes charged in the S5 Indictment—each of which requires the Government to prove the
Mr. Bankman-Fried acted with the requisite criminal intent.  Given the significance of this
evidence to the case, it is therefore imperative that Mr. Bankman-Fried receive these materials in
advance of trial to permit the interested parties to resolve any potential privilege issues and avoid
unnecessary delays, and to allow Mr. Bankman-Fried sufficient time to use the documents to
prepare his defense.  *See Stein*, 488 F.Supp.2d at 370 (ordering KPMG to produce documents to
the defendants and the Government four months before trial); *see also* Fed. R. Crim. P. 17(c)(1)
("The court may direct the witness to produce the designated items in court before trial[.]").  We
therefore request the Court to order Fenwick to produce the requested documents to the defense
by no later than June 20, 2023, or such other date as the Court may order.

## **CONCLUSION**

For the reasons set forth above, we respectfully request the Court (i) to compel the

Government to produce pursuant to Rule 16 the documents specifically identified in Exhibit A to

the Subpoena, and (ii) in the alternative, to issue an order under Rule 17(c)(1) authorizing the

issuance of the Subpoena directing Fenwick to produce these same documents to the defense by

no later than June 20, 2023, or such other date as the Court may order.

Dated:  May 30, 2023
        New York, New York

                                         Respectfully submitted,

                                      */s/ Mark S. Cohen*
                                      Mark S. Cohen
                                      Christian R. Everdell
                                      S. Gale Dick
                                      Sri K. Kuehnlenz
                                      **COHEN & GRESSER LLP**
                                      800 Third Avenue, 21st Floor
                                      New York, NY  10022
                                      (212) 957-7600
                                      mcohen@cohengresser.com
                                      ceverdell@cohengresser.com
                                      sgdick@cohengresser.com
                                      skuehnlenz@cohengresser.com

                                      *Attorneys for Samuel Bankman-Fried*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2023, I served via Federal Express overnight delivery, pursuant to Federal Rule of Criminal Procedure 49 and Local Civil Rule 5.3 and Local Criminal Rule 1.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the attached memorandum of law, and any accompanying exhibit and attachments thereto upon the following non-party:

> Fenwick & West LLP
> c/o Nancy Hart, Esq.
> Gibson, Dunn & Crutcher LLP
> 200 Park Avenue
> New York, New York 10166
> nhart@gibsondunn.com

_____
Christian R. Everdell