UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                               :

UNITED STATES OF AMERICA

                               :

              - v. -

                               :   22 Cr. 673 (LAK)

SAMUEL BANKMAN-FRIED,
    a/k/a "SBF,"                     :

                    Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION TO COMPEL THE GOVERNMENT TO PRODUCE DOCUMENTS AND FOR AN ORDER AUTHORIZING A SUBPOENA TO FENWICK & WEST LLP

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

Danielle Kudla
Samuel Raymond
Thane Rehn
Nicolas Roos
Danielle R. Sassoon
Assistant United States Attorneys
    *- Of Counsel -*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND .......................................................................................................... 2

ARGUMENT ............................................................................................................... 3

I.      The Government Has No Obligation to Produce Records in the Possession of Fenwick .. 3

II.     The Court Should Deny the Defendant's Request for a Rule 17(c) Subpoena .................. 8

        A.      Legal Standard ......................................................................................... 8

        B.      The Proposed Subpoena Does Not Seek Specifically Identified, Admissible
                Evidence ................................................................................................ 10

III.    The Defendant Must Produce to the Government All Materials Obtained Pursuant to
        Subpoenas ............................................................................................................ 16

CONCLUSION .......................................................................................................... 18

# **TABLE OF AUTHORITIES**

Page(s)

*AngioDynamics, Inc. v. C.R. Bard, Inc.*,
No. 17 Civ. 598 (BKS/CFH), 2022 WL 2643583 (N.D.N.Y. July 8, 2022) ............................... 13

*Bowman Dairy Co. v. United States*,
341 U.S. 214 (1951) .......................................................................................................... 8

*In re Lyondell Chem. Co.*,
No. 9-10023, 2016 WL 6108526 (Bankr. S.D.N.Y. Oct. 19, 2016) ........................................ 13

*Morisseau v. DLA Piper*,
532 F. Supp. 2d 595 (S.D.N.Y. 2008) .................................................................................. 13

*S.E.C. v. Lek Sec. Corp.*,
No. 17 Civ. 1789 (DLC), 2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019) .................................. 13

*United States v. Bah*,
No. 06 Cr. 243 (LAK), 2007 WL 1032260 (S.D.N.Y. Mar. 30, 2007) ................................... 12

*United States v. Barnes*,
No. 04 Cr. 186 (SCR), 2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008) ...................... 9, 10, 11, 15

*United States v. Blaszczak*,
308 F. Supp. 3d 736 (S.D.N.Y. 2018) ................................................................................ 3, 4

*United States v. Buske*,
No. 09 Cr. 65, 2011 WL 2912707 (E.D. Wis. July 18, 2011) ................................................ 6

*United States v. Canniff*,
521 F.2d 565 (2d Cir. 1975) ................................................................................................ 4

*United States v. Carroll*,
No. 19 Cr. 545 (CM), 2019 WL 6647871 (S.D.N.Y. Nov. 8, 2019) ........................................ 9

*United States v. Chalmers*,
410 F. Supp. 2d 278 (S.D.N.Y. 2006) .................................................................................. 3

*United States v. Cherry*,
876 F. Supp. 547 (S.D.N.Y. 1995) ....................................................................................... 9

*United States v. Cole*,
No. 19 Cr. 869 (ER), 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) ......................................... 8

*United States v. Cuthbertson*,
630 F.2d 139 (3d Cir. 1980) ............................................................................................... 10

*United States v. Donziger*,
No. 11 Civ. 691 (LAK), 2021 WL 1865376 (S.D.N.Y. May 10, 2021) .................................. 11

*United States v. Ferber*,
   966 F. Supp. 90 (D. Mass. 1997) ............................................................. 13

*United States v. Fitzsimmons*,
   No. 02 Cr. 1066 (HB), 2003 WL 1571708 n.8 (S.D.N.Y. Mar. 26, 2003) ............................ 12

*United States v. Hutcher*,
   622 F.2d 1083 (2d Cir. 1980) ................................................................. 4

*United States v. Kilroy*,
   523 F. Supp. 206 (E.D. Wis. 1981) ........................................................... 6

*United States v. Litos*,
   No. 12 Cr. 175, 2014 WL 806022 (N.D. Ind. Feb. 24, 2014) .................................... 17

*United States v. Londonio*,
   No. 17 Cr. 89 (CS) (S.D.N.Y. Jan. 3, 2019) ................................................. 17

*United States v. Marchisio*,
   344 F.2d 653 (2d Cir. 1965) ................................................................. 10

*United States v. Meregildo*,
   920 F. Supp. 2d 434 (S.D.N.Y. 2013) ......................................................... 6

*United States v. Middendorf*,
   No. 18 Cr. 36 (JPO), 2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018) ............................... 4

*United States v. Milton*,
   No. 21 Cr. 478 (ER), 2022 WL 4110256 (S.D.N.Y. Sept. 8, 2022) .............................. 7

*United States v. Nektalov*,
   No. 03 Cr. 828 (PKL), 2004 WL 1574721 (S.D.N.Y. July 14, 2004) ............................. 8

*United States v. Neumann*,
   No. 21 Cr. 439 (NSR), 2022 WL 3445820 (S.D.N.Y. Aug. 17, 2022) ............................. 12

*United States v. Ng Chong Hwa*,
   No. 18 Cr. 538 (E.D.N.Y. Sept. 3, 2021) .................................................... 12

*United States v. Nixon*,
   418 U.S. 683 (1974) ...................................................................... 1, 9

*United States v. Parnas*,
   No. 19 Cr. 725 (JPO), 2021 WL 2981567 (S.D.N.Y. July 14, 2021) ............................. 7

*United States v. Pena*,
   No. 15 Cr. 551 (AJN), 2016 WL 8735699 (S.D.N.Y. Feb. 12, 2016) ............................. 15

*United States v. Sawinski*,
   No. 00 Cr. 499 (RPP), 2000 WL 1702032 (S.D.N.Y. Nov. 14, 2000) ............................. 10

*United States v. Scully*,
   877 F.3d 464 (2d Cir. 2017) ................................................................................. 13

*United States v. Shah*,
   No. 19 Cr. 833 (SHS), 2022 WL 1284550 (S.D.N.Y. Apr. 29, 2022) ...................................... 11

*United States v. Shah*,
   No. 19 Cr. 833 (SHS), 2022 WL 1422252 (S.D.N.Y. May 5, 2022) ........................................ 1

*United States v. Skelos*,
   No. 15 Cr. 317 (KMW), 2018 WL 2254538 (S.D.N.Y. May 17, 2018) .......................... 8, 9, 10

*United States v. Stein*,
   488 F. Supp. 2d 350 (S.D.N.Y. 2007) .................................................................... 5, 7

*United States v. St. Lawrence*,
   No. 16 Cr. 259 (CS) (S.D.N.Y. Dec. 22, 2016) ......................................................... 17

*United States v. Tomasetta*,
   No. 10 Cr. 1205 (PAC), 2012 WL 896152 (S.D.N.Y. Mar. 16, 2012) .............................. 5, 6, 7

*United States v. Weissman*,
   No. 01 Cr. 529 (BSJ), 2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) .................................... 8

*United States v. Wells Fargo Bank*,
   132 F. Supp. 3d 558 (S.D.N.Y. 2015) ..................................................................... 7

## PRELIMINARY STATEMENT

The defendant has moved (i) to compel the Government to produce documents that are in the possession of the law firm of Fenwick & West LLP ("Fenwick"), and (ii) in the alternative, for an order authorizing the issue of a Rule 17(c) subpoena to Fenwick for documents falling into eleven broad categories. (Dkt. 151). Both motions should be denied. The FTX Debtors have been responding to the Government's document requests voluntarily, without any form of agreement, and nothing about the parties' interactions justifies the defendant's unprecedented demand that the Government obtain largely privileged documents in the possession of the FTX Debtors' prior outside counsel, Fenwick. Indeed, the Government's discovery and disclosure obligations do not extend to materials in the possession of third parties, or to privileged materials not in the actual possession of the prosecution team, and Rule 16 and *Brady* do not require the disclosure of privileged materials just because the defendant believes they could be material to his defense.

Additionally, the defendant's request for a Rule 17(c) subpoena to Fenwick is an impermissible attempt to circumvent discovery rules. The Government has already produced to the defendant all the materials it received from the FTX Debtors, as well as records seized from Google accounts belonging to the defendant and others, and as a result he already has access to many of the materials sought by the proposed subpoena. The subpoena as written, however, is plainly improper under *United States v. Nixon*, 418 U.S. 683 (1974), inasmuch as it fails to seek only relevant, admissible, and specific evidence—that is, identified evidence that the defendant intends and is able to introduce as exhibits at trial. The defendant's requests fail to satisfy this "strict standard." *United States v. Shah*, No. 19 Cr. 833 (SHS), 2022 WL 1422252, at *3 (S.D.N.Y. May 5, 2022). As an example of the subpoena's unreasonable breadth, it seeks all of Fenwick's work over a five-year period concerning in any way the "formation and incorporation" of any

entity that is a subsidiary or affiliate of Alameda Research or FTX, and it requests all work concerning "planned or actual statements or representations made on the FTX.com or FTX.us websites" regardless of whether they relate to the subject matter of this case. The Court should deny the defendant's request for the subpoena.

## **BACKGROUND**

The defendant was charged in the S5 superseding indictment on March 27, 2023. (Dkt. 115 (the "Indictment")). As is relevant to the defendant's motion, Count Nine of the Indictment alleges that the defendant conspired to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349, by making false representations that a bank account in the name of North Dimension would be used for trading and market making, when in fact it would be, and was, used to receive and transmit FTX customer funds. (Indictment ¶¶ 16–21, 85–87). Count Ten alleges that the defendant conspired to operate an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 371 and 1960. (Indictment ¶¶ 14–15, 21, 88–91). According to the defendant, "Fenwick provided real-time legal advice to FTX about both the opening of the North Dimension bank account and whether or not FTX needed to register as a money services business." (Dkt. 151 at 3). The Indictment also describes the defendant's use of ephemeral messaging applications and the structuring of certain transactions as "loans." (Indictment ¶¶ 4, 47-48, 60). The defendant claims that Fenwick also provided legal advice on those topics. (Dkt. 151 at 3-4).

The defendant proffers that he has made document requests to Fenwick, which indicated it could not provide documents without the consent of its clients, and to the FTX Debtors, with whom he continues to negotiate. (Dkt. 151 at 5). The defendant acknowledges the possibility that many documents may be protected by the attorney-client privilege, and that "the FTX Debtors may refuse to waive privilege." (*Id.*). Nonetheless, the proposed subpoena seeks all records in response to eleven broad requests. (Dkt. 151-1). Those requests to Fenwick are for documents relating to:

(1) "formation and incorporation" of FTX and Alameda Research entities, (2) "formation and incorporation" of North Dimension entities, (3) whether FTX, Alameda Research, or North Dimension were required to register as a money services business, (4) Silvergate Bank, (5) "data retention policies" and related policies, (6) FTX's margin lending program and liquidity requirements, (7) several FTX customer agreements, (8) intercompany agreements between FTX and Alameda Research, (9) "planned or actual statements or representations" on FTX's website, (10) statements and representations to investors, and (11) loans and lines of credit. (Dkt. 151 at 6-10). As the defendant's motion makes clear, the Government has previously produced the documents responsive to each of these requests in its possession, including records obtained from the FTX Debtors, from other third parties, or pursuant to search warrants.

## ARGUMENT

### I.    The Government Has No Obligation to Produce Records in the Possession of Fenwick

The Government has no *Brady* or discovery obligation to obtain and produce materials in the sole possession of the FTX Debtors or their outside counsel at Fenwick. As this Court has recognized, and as stated in the Government's opposition to the defendant's pretrial motions, "the *Brady* obligations of the prosecutors extend only to materials within prosecutors' possession, custody or control," or in appropriate cases and with respect to particular materials, other components of government involved in the prosecution. *United States v. Blaszczak*, 308 F. Supp. 3d 736, 742 (S.D.N.Y. 2018). Likewise, Rule 16 extends only to materials "within the prosecutor's possession, custody or control." Fed. R. Crim. P. 16(a)(1)(E); *see also United States v. Chalmers*, 410 F. Supp. 2d 278, 289-90 (S.D.N.Y. 2006) ("the Court is not persuaded that the 'government' for purposes of Rule 16 should be any broader than the 'prosecution team' standard that has been adopted in the *Brady* line of cases"). "Clearly the government cannot be required to produce that

which it does not control and never possessed or inspected." *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) (quoting *United States v. Canniff*, 521 F.2d 565, 573 (2d Cir. 1975)).

The defendant's motion is based on the same faulty theory that underlies his prior motion, arguing that the Government must produce materials in the possession of the FTX Debtors, and should be denied for the reasons articulated in the Government's opposition to that motion. (Dkt. 149 at 56-67). The Government does not have actual possession of the materials sought by the defendant. Rather, to justify his unprecedented request that the Government compel an outside law firm, without its client's consent, to produce materials, the defendant argues that the requested materials are within the Government's "control" because the FTX Debtors have provided "cooperation" and "unrestricted access" in response to the Government's document requests. (Dkt. 151 at 12). As the Government argued in its prior opposition, the argument is incorrect in several respects.

First, the Debtors' cooperation (in the informal rather than technical sense) is routine in criminal investigations and does not mean that the Government has "control" over their materials. (Dkt. 149 at 57–58). This is even more the case with Fenwick, which like the FTX Debtors and their counsel did not participate in witness interviews, review documents "gathered only by the prosecution" such as Rule 6(e) material or search warrant returns, develop "prosecutorial strategy," or select charges or present them to the grand jury. *Blaszczak*, 308 F. Supp. 3d at 742-43 (examining relevant considerations in determining whether a "joint investigation" occurred); *see also United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (same). In fact, the Government's interactions have been limited with Fenwick, and the only documents obtained from Fenwick—pursuant to a subpoena—relate to a matter not covered by the defendant's proposed subpoena.

Second, the Government does not have "unrestricted access" to materials in the possession of Fenwick or the FTX Debtors. The FTX Debtors have produced materials pursuant to written document requests, and Fenwick produced records pursuant to a subpoena. As the defendant concedes in his motion, the FTX Debtors "have no obligation (written or otherwise) to produce documents to the Government." (Dkt. 151 at 13). Both the FTX Debtors and Fenwick have declined to produce certain materials on privilege grounds, have redacted materials from productions, and have in some cases attempted to narrow the scope of Government requests. The materials in the possession of both the Debtors and Fenwick are, therefore, outside the control of the Government. *See United States v. Tomasetta*, No. 10 Cr. 1205 (PAC), 2012 WL 896152, at *5 (S.D.N.Y. Mar. 16, 2012) (the government was not in "control" of materials in the possession of a third party's outside counsel where it had to subpoena records).

The defendant cites this Court's decision in *United States v. Stein*, 488 F. Supp. 2d 350, 363 (S.D.N.Y. 2007), but that case only proves the Government's point. In *Stein*, this Court held that documents were in the "control" of the government because the defendants' former employer, KPMG, had entered into a deferred prosecution agreement with the government that gave the government "the legal right to obtain … documents." *Id.* at 362-63. Here, unlike there, as the defendant notes, "the FTX Debtors are not subject to a DPA like KPMG" that gave the government "effective control over KPMG's documents." (Dkt. 151 at 14). Attempting to downplay that clear distinction between this case and *Stein*, the defendant speculates that the FTX may have entered into a deferred prosecution agreement had it not gone bankrupt. (*Id.* at 14-15). FTX's hypothetical legal obligations in a theoretical alternative reality are not a basis to find the Government "controls" FTX's records in this case. The absence of any legal right of the Government to obtain documents is yet another reason why documents in the possession of the FTX Debtors and Fenwick

are not in the "control" of the Government. *See Tomasetta*, 2012 WL 896152, at *5; *United States v. Buske*, No. 09 Cr. 65, 2011 WL 2912707, at *9 (E.D. Wis. July 18, 2011).[1]

The defendant relies heavily on *United States v. Kilroy*, 523 F. Supp. 206 (E.D. Wis. 1981), but that case had different facts, did not order the relief sought by the defendant in this motion, and has not been followed by courts to have considered the issue more recently. The defendant in *Kilroy* merely sought documents that were in his office at the time he was fired by his employer, while the defendant here seeks eleven broad categories of records, spanning years, and implicating many documents that are privileged and were likely never in his custody. And the court in *Kilroy* did not compel production, but required the government only to make its "best efforts" to obtain the requested documents, while noting—contrary to the defendant's position here—that the employer had "no obligation to turn over any of its records to the defendant or to the Government." *Id.* Moreover, subsequent case law makes clear that *Kilroy*'s order to the government to make its "best efforts" to collect information from third parties is inconsistent with *Brady* and Rule 16. "*Brady* . . . does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel." *United States v. Meregildo*, 920 F. Supp. 2d 434, 445 (S.D.N.Y. 2013). It is thus no surprise that *Kilroy* is an outlier that courts both in that district and this district have declined to follow. *See Buske*, 2011 WL 2912707, at *9 (declining to order Government to produce records in the possession of a cooperating company and its outside counsel, and declining to follow *Kilroy* which "did not purport to require a third

---

[1] Courts have also taken the view that unlike with respect to the Federal Rules of Civil Procedure, "control" as used in Rule 16 of the Federal Rules of Criminal Procedure requires "actual custody or control" and not simply a "legal right to obtain." *See United States v. Ng Chong Hwa*, No. 18 Cr. 538 (E.D.N.Y.) (MKB), Dkt. No. 84 at 131 (Sept. 3, 2021) (Redacted Order). Because the Government is not in actual control of the requested records, that is also a basis to deny the motion.

party [to] turn [records] over"); *Tomasetta*, 2012 WL 896152, at *5 (distinguishing *Kilroy* and declining to order Government to "discover or obtain" materials in the possession of a law firm).[2] *Kilroy* does not provide a basis to compel the Government to produce records in the possession of Fenwick.

Finally, unlike in the cases cited by the defendant, here the requested records undoubtedly are largely privileged. The vast number of privileged records that the defendant seeks are plainly not within the Government's possession, custody, or control. The Government is not a party to FTX's or Alameda's corporate privilege; the Government has never been privy to confidences shared by either company with Fenwick; there has been no broad privilege waiver; and both Fenwick and the FTX Debtors have refused to produce privileged documents to the Government without a waiver. Privileged documents not available to the Government are not in its possession, custody, or control. *See United States v. Parnas*, No. 19 Cr. 725 (JPO), 2021 WL 2981567, at *9 (S.D.N.Y. July 14, 2021) (records in the possession of the filter team and special master were not in the "possession, custody, and control" of the Government such that they were subject to discovery). Regardless of whether the defendant believes privileged materials would be helpful to him, they do not "become discoverable simply because a defendant wishes to use those communications in his defense." *United States v. Milton*, No. 21 Cr. 478 (ER), 2022 WL 4110256, at *6 (S.D.N.Y. Sept. 8, 2022) (declining to require corporation to produce privileged records to its former CEO in response to a subpoena); *United States v. Wells Fargo Bank*, 132 F. Supp. 3d 558, 565 (S.D.N.Y. 2015) (same in civil suit). The defendant responds that, if materials are privileged, the FTX Debtors and Fenwick should be required to create a privilege log. (Dkt. 151

---

[2] This Court cited *Kilroy* in its decision in *Stein*, but as noted, the decision in *Stein* rested on a deferred prosecution agreement that gave the Government "the legal right to obtain these documents," a circumstance not present here. *Stein*, 488 F. Supp. 2d at 363.

at 17). But that contention conflates the issue in the defendant's first motion—whether the Government "controls" the privileged documents—with the issue in the second—whether the FTX Debtors should be required to produce the documents.

The FTX Debtors and their outside counsel at Fenwick are not an arm of the prosecution, and the Government does not have possession, a legal right to obtain, or the practical ability to collect the largely privileged documents sought by the defendant. The motion to compel should be denied.

## II.   The Court Should Deny the Defendant's Request for a Rule 17(c) Subpoena

The motion to issue a Rule 17(c) subpoena to Fenwick should be denied because the proposed subpoena cannot satisfy *Nixon*'s requirements that the evidence be specifically identified, and that it be relevant and admissible at trial.[3]

### A.   Legal Standard

Federal Rule of Criminal Procedure 17(c)(1) authorizes subpoenas for "any books, papers, documents, data, or other objects." "Rule 17(c) was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *see also United States v. Skelos*, No. 15 Cr. 317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018) ("a criminal subpoena should not be used as a discovery device, but instead should be used only as a

---

[3] As a party to this case, and because the defendant moved for a Rule 17(c) subpoena, the Government has standing to oppose the subpoena to Fenwick. *See United States v. Nektalov*, No. 03 Cr. 828 (PKL), 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004). The Government understands, additionally, that the FTX Debtors will be filing an opposition to the defendant's request for a subpoena. The Court can resolve the propriety of a Rule 17 subpoena on the Government's motion even if the Government lacks standing "because it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)." *United States v. Weissman*, No. 01 Cr. 529 (BSJ), 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002); *see also United States v. Cole*, No. 19 Cr. 869 (ER), 2021 WL 912425, at *2 (S.D.N.Y. Mar. 10, 2021) ("Preventing the undue harassment of a cooperating witness is a legitimate governmental interest giving rise to standing in this context . . . ." (citations omitted)).

mechanism for obtaining specific admissible evidence" (citations omitted)). "Because of this, 'courts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Rule 16.'" *United States v. Barnes*, No. 04 Cr. 186 (SCR), 2008 WL 9359654, at *2 (S.D.N.Y. Apr. 2, 2008) (citing *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995)). As such, Rule 17 subpoenas are held to a "strict standard" announced by the Supreme Court in *United States v. Nixon*, 418 U.S. 683 (1974):

> In order to obtain documents prior to trial, the party making the request must demonstrate that:
> (1) the documents sought are evidentiary and relevant;
> (2) the materials are not otherwise procurable in advance of trial by the exercise of due diligence;
> (3) the party seeking documents cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial; and
> (4) the application is made in good faith and is not intended as a general fishing expedition.

*United States v. Carroll*, No. 19 Cr. 545 (CM), 2019 WL 6647871, at *1 (S.D.N.Y. Nov. 8, 2019) (quoting *Nixon*, 418 U.S. at 699-700 (citation omitted)). To show that the documents are "evidentiary and relevant," *Nixon* held that the party requesting the subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Nixon*, 418 U.S. at 700. "This test is the hallmark of Rule 17(c)(2) analysis, and courts in this jurisdiction and elsewhere have repeatedly and consistently applied it to determine whether third-party subpoenas served by defendants must be quashed as unreasonable or oppressive." *Barnes*, 2008 WL 9359654, at *2 (collecting cases); *Skelos*, 2018 WL 2254538, at *1 ("courts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties"). Under this test, "[t]he defendant has the

burden of specifically identifying the materials sought, and showing that they are relevant and admissible." *Barnes*, 2008 WL 9359654, at *3.

"In order to satisfy the specificity requirement of *Nixon*, the party seeking production of the materials must 'reasonably specify the information contained or believed to be contained in the documents sought' rather than 'merely hope that something useful will turn up." *Id.* at *4 (quoting *United States v. Sawinski*, No. 00 Cr. 499 (RPP), 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000) (cleaned up)). In other words, the subpoena must be targeted at obtaining "identified evidence" rather than serve as a "general fishing expedition." *Id.* (quoting *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980)). In order to satisfy the relevancy and admissibility requirement, "the document[s] sought must *at that time* meet the tests of relevancy and admissibility." *United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965) (emphasis added). They cannot "merely be potentially relevant or admissible." *Barnes*, 2008 WL 9359654, at *3. Importantly, "Rule 17(c) subpoenas cannot be used to obtain documents that would be excluded on hearsay grounds or would otherwise be inadmissible as evidence at trial." *Skelos*, 2018 WL 2254538, at *2.

### B.    The Proposed Subpoena Does Not Seek Specifically Identified, Admissible Evidence

The defendant's proposed subpoena does not seek specifically identified admissible materials. Rather, it bears the hallmarks of a generalized fishing expedition that fails to meet the specificity, relevance, and admissibility requirement set forth in *Nixon*. Specifically:

*Requests 1 and 2.* Requests 1 and 2 collectively seek all documents from over a five-year period reflecting any research, assessment, analysis, guidance, or legal advice that Fenwick provided concerning "the formation and incorporation" of FTX, FTX US, Alameda, North Dimension Inc., North Wireless Dimension Inc., North Dimension Ltd., and their subsidiary and

affiliate entities. (Dkt. 151-1 at 6-7). The requests, however, do not identify any specific documents or communications. Rather, it is clear from the examples contained in the proposed subpoena that these requests are virtually limitless when applied to Fenwick's work for FTX and Alameda. The subpoena would require the production of not just incorporation paperwork, but effectively all documents about the creation of any entity including anything about "jurisdictional and regulatory considerations"; anything about drafting "futures exchange documents"; anything about "futures trading regulation"; anything about regulators' "no action letters and policy statements regarding foreign exchange registration"; any "regulatory advice on foreign jurisdictions"; and any "news articles regarding CFTC enforcement actions against foreign exchanges." (Dkt. 151-1 at 6).

As a result, the requests will certainly sweep in entirely irrelevant materials that have nothing to do with the charged offenses or the defendant's state of mind (which is the only potentially relevant basis proffered by the defendant in his motion (Dkt. 151 at 18)). For that reason, courts in this Circuit routinely quash subpoenas that "blindly seek" broad categories of documents like those sought here. *Barnes*, 2008 WL 9359654, at *4 ("[s]uch a blanket request implicates all of the problems associated with a classic 'fishing expedition'"); *Shah*, 2022 WL 1284550, at *2 ("The request for 'all' such documents and communications without a whiff of specificity as to why she requires them is nothing more than an impermissible 'fishing expedition.'"). And because the first two requests in the proposed subpoena lack the requisite specificity, it is impossible for the defendant to make the required showing that the documents to be produced would have a relevant non-hearsay purpose. *See United States v. Donziger*, No. 11 Civ. 691 (LAK), 2021 WL 1865376, at *7 (S.D.N.Y. May 10, 2021) ("It is [the defendant's] burden to prove that the evidence he seeks is admissible, not [the government's] burden to prove it is not.").

11

*Requests 3.* Request 3 seeks all Fenwick documents concerning whether FTX, Alameda, or North Dimension were required to register as a Money Services Business as defined in 31 C.F.R. 1010.100(ff). (Dkt. 151-1 at 7). There are at least three problems with this request. First, it fails to specifically identify what documents exist in Fenwick's files that have not already been produced by the FTX Debtors. As the defendant acknowledges in his motion, the FTX Debtors waived privilege over whether FTX, Alameda, and North Dimension needed to register as money services businesses, and the FTX Debtors have already responded to the Government's request for them to produce documents on this issue, including but not limited to those cited in the defendant's motion. (*Id.* at 17). Because the FTX Debtors' privilege waiver covers exactly the issue that the defendant contends is relevant to his defense, by definition any documents that have not already been identified and produced pursuant to that waiver are irrelevant, and the request is also too broad.

Second, because 18 U.S.C. § 1960 is a "general intent crime," *United States v. Neumann*, No. 21 Cr. 439 (NSR), 2022 WL 3445820, at *4 (S.D.N.Y. Aug. 17, 2022), "the defendant's state of mind with respect to the need for a State license [is] irrelevant," *United States v. Bah*, No. 06 Cr. 243 (LAK), 2007 WL 1032260, at *1 (S.D.N.Y. Mar. 30, 2007). Because an "advice-of-counsel defense is … inappropriate for general intent crimes," evidence as to whether FTX and Alameda received legal advice from Fenwick as to whether FTX, Alameda, or North Dimension were required to register is irrelevant. *United States v. Fitzsimmons*, No. 02 Cr. 1066 (HB), 2003 WL 1571708, at *3 n.8 (S.D.N.Y. Mar. 26, 2003). Likewise, the absence of a willfulness requirement in Section 1960 means that evidence of the defendant's supposed good faith, based on the involvement of attorneys, is also irrelevant.

Third, even if the defendant were correct that communications to him from Fenwick attorneys about the need to register were relevant to his state of mind, documents and

communications that do not involve the defendant have no relevance to any fact in dispute. In other words, to prove that documents are relevant to *his* state of mind, the defendant must first establish that *he* received, read, or viewed those documents. Documents in Fenwick's possession which were never shared with the defendant are irrelevant to the defendant's state of mind, and therefore inadmissible. *See S.E.C. v. Lek Sec. Corp.*, No. 17 Civ. 1789 (DLC), 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019) ("legal advice given to another does not establish good faith as a matter of law"); *accord United States v. Scully*, 877 F.3d 464, 475 (2d Cir. 2017) (reversing decision precluding evidence of legal advice provided to the defendant himself).

The defendant also argues that these communications and documents would be admissible as business records. (Dkt. 151 at 18). Not so. The case law is clear that "[a]n email 'created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule.'" *AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 17 Civ. 598 (BKS/CFH), 2022 WL 2643583, at *16 (N.D.N.Y. July 8, 2022) (quoting *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 621 n.163 (S.D.N.Y. 2008)). The same would be true for other documents in Fenwick's possession. Otherwise, "virtually any document found in the files of a business which pertained in any way to the functioning of that business would be admitted willy-nilly as a business record." *United States v. Ferber*, 966 F. Supp. 90, 99 (D. Mass. 1997). For Fenwick's documents to be admissible as business records, there must be an indication that the particular "activity occur[red] regularly," such as "weekly update" emails, and not "one-off" statements, like those that would likely be at issue here. *In re Lyondell Chem. Co.*, No. 9-10023, 2016 WL 6108526, at *2-5 (Bankr. S.D.N.Y. Oct. 19, 2016). The defendant has not made such a showing, and therefore the requested documents are inadmissible hearsay. Of course, the claim that the documents requested are not barred by the rule against hearsay is no answer to the fact that the documents are irrelevant, and it is therefore

meaningless to argue, as the defendant does, that "any written work product that Fenwick produced will be admissible as a business record under Rule 803(6) of the Federal Rules of Evidence." (Dkt. 151 at 18). The business records exception to the rule against hearsay—even if it did apply here—does not provide a basis for admissibility of otherwise irrelevant materials.

**Requests 4 and 6.** Request 4 seeks all Fenwick documents spanning a three-year period relating to (i) the opening of bank accounts at Silvergate Bank by FTX, Alameda, or North Dimension, (ii) the use of such accounts to process deposits and withdrawals on behalf of FTX customers; (iii) the use of such accounts to conduct over-the-counter trading and processing on behalf of FTX customers, and (iv) responses by FTX, Alameda, and North Dimension to compliance inquiries from Silvergate Bank. Request 6 seeks all Fenwick documents concerning FTX's or FTX US's margin lending program and liquidity requirements. Like the prior requests, these requests are not sufficiently specific in their identification of relevant, admissible evidence. There is no indication in the defendant's motion as to which specific documents he is seeking. Rather, as the invoices cited by the defendant illustrate, Fenwick did a substantial amount of work that may relate to the banking relationship with Silvergate or the lending and liquidity requirements of FTX. These requests appear to be a broad fishing expedition aimed at finding something about Silvergate or FTX's lending program that could be relevant to the charged offenses. But the defendant's failure to articulate which specific documents he is seeking, why they are relevant to the charged offenses, and why they are admissible, is a basis to deny these requests in the proposed subpoena.

**Requests 5, 7, and 8.** Requests 5, 7, and 8 seek Fenwick materials relating to the following documents: data retention policies, auto-delete policies, ephemeral messaging application policies, FTX's terms of service, FTX's customer agreements, FTX's user agreements, FTX's master

14

agreement, and various intercompany agreements. To the extent these requests seek emails and documents that were never sent to or received by the defendant, they do not appear to have any relevant non-hearsay purpose, and therefore fail the *Nixon* standard.

**Requests 9 and 10.** Request 9 seeks Fenwick documents relating to "planned or actual statements or representations made on the FTX.com or FTX.us websites," and Request 10 seeks "representations made or contemplated to be made to actual or prospective investors in FTX, FTX US, or lenders to Alameda." (Dkt. 151-1 at 9-10). These requests are overbroad because they target documents concerning *all* representations made on the FTX website or to investors and lenders, and are not tailored to the types of representations at issue in the case, as alleged in the Indictment. As a result, not only do these requests fail *Nixon*'s first requirement, but many of the requested materials are sure to be irrelevant and therefore inadmissible. The defendant has also failed to identify specific documents sought by these requests, or articulate how they are likely to be relevant to negating proof of his guilt at trial. Finally, as was the case with Request 3, Fenwick's documents that were not shared with the defendant are not relevant to the defendant's state of mind, and therefore have no relevant non-hearsay purpose and are inadmissible.

**Request 11.** Request 11 seeks documents from Fenwick concerning intercompany loans or lines of credit, or loans or lines of credits to FTX's founders and other executives. Once again, this request is overly broad and inadequately tailored, and further, as described above, to the extent this request seeks materials that were never sent to or received by the defendant, they do not have a relevant non-hearsay purpose, and therefore fail the *Nixon* standard.

Finally, each of the proposed requests, propounded on a law firm that performed hours of work on behalf of its clients, is certain to call for privileged information. Privileged information, without a waiver, is inadmissible. *United States v. Pena*, No. 15 Cr. 551 (AJN), 2016 WL 8735699,

at *2 (S.D.N.Y. Feb. 12, 2016); *Barnes*, 2008 WL 9359654, at *4. It is up to the FTX Debtors to determine whether to waive the privilege.  Accordingly, beyond the subpoena's facial failure under the other elements of *Nixon*, as described above, the defendant must establish that each proposed request calls for non-privileged information for it to satisfy *Nixon*'s admissibility requirement. The defendant argues that Fenwick's files will "likely contain" non-privileged documents such as "additional invoices," documents over which "the FTX Debtors have already waived privilege," or "documents that were produced as part of any joint representation or individual representation of Mr. Bankman-Fried." (Dkt. 151 at 5). None of those categories of materials satisfy *Nixon*'s requirements. Starting with "additional invoices," the defendant has not established that they would be relevant to an advice of counsel or good faith defense. With respect to the documents over which the FTX Debtors have already waived, the defendant has not established that Fenwick is likely to have relevant, admissible documents that have not already been produced by the FTX Debtors. The defendant's suggestion that these could be non-privileged by virtue of a "joint representation or individual representation" is baseless: he has proffered no facts that there was ever a joint or individual representation of the defendant by Fenwick that related to the topics of the proposed subpoena requests: a fact that would obviously be within his own personal knowledge.

III.     **The Defendant Must Produce to the Government All Materials Obtained Pursuant to Subpoenas**

Were the Court to authorize the defendant to serve any Rule 17(c) subpoenas in this case, including the proposed subpoena to Fenwick in some form, the defendant should be required to promptly produce to the Government any subpoena returns received in response. Rule 17(c)(1) makes no reference to *ex parte* review of subpoena returns and instead contemplates that subpoenaed documents will be returned to the Court, which may permit "the parties and their

attorneys to inspect all or part of them." Because the Court's authority should not be invoked to permit a party to engage in trial by ambush, "[i]t is the majority view of the courts that the structure of Rule 17 requires the court to allow both parties to view the documents returned under the subpoena." *United States v. Litos*, No. 12 Cr. 175, 2014 WL 806022, at *5 (N.D. Ind. Feb. 24, 2014). Thus, while courts permit Rule 17 subpoenas to be returnable to the issuing party instead of the court, "Rule 16 would oblige the party to make the materials available to the other side anyway." *United States v. St. Lawrence*, No. 16 Cr. 259 (CS), ECF. No. 66 (S.D.N.Y. Dec. 22, 2016); *see also United States v. Londonio*, No. 17 Cr. 89 (CS) (S.D.N.Y.), 1/3/2019 Tr., at 77-78 ("[I]f either side has used 17(c) and gets materials, they have to be turned over to the other side. . . . [I]f either side has been properly using Rule 17(c) subpoenas, which are intended to obtain specific materials that the party expects to offer at trial, that's Rule 16 material.").

Therefore, the defendant should be required to promptly produce to the Government any subpoena returns he obtains as a result of the issuance of any Rule 17(c) subpoena in advance of trial.

## **CONCLUSION**

Accordingly, the Government respectfully requests that the Court deny the defendant's motion to compel and to issue a Rule 17(c) subpoena to Fenwick. Additionally, if the Court were to authorize any Rule 17 subpoena, the Court should order the defendant to produce all Rule 17 subpoena returns to the Government.

Dated: June 9, 2023
      New York, New York

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York


By: /s/ Nicolas Roos
    Nicolas Roos
    Danielle Kudla
    Samuel Raymond
    Thane Rehn
    Danielle R. Sassoon
    Assistant United States Attorneys
    (212) 637-2421