**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| United States of America | |
| v. | Case No. 1:22-cr-00673-LAK |
| Samuel Bankman-Fried | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY MOVANT**
**FTX DEBTORS' MOTION TO INTERVENE AND FOR A PROTECTIVE ORDER**

Steven R. Peikin
Nicole Friedlander
Shane R. Yeargan
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

*Counsel for Third-Party Movant*
*FTX Debtors*

## TABLE OF CONTENTS

*Page*

**Preliminary Statement**..................................................................................................................1

**Background** .................................................................................................................................2

**Argument** ....................................................................................................................................3

    I.      The Court Should Allow the FTX Debtors to Intervene for the Limited Purpose of Opposing the Motion and Seeking a Protective Order. ..........................5

    II.     The Court Should Prohibit The Disclosure of Materials Protected By the FTX Debtors' Attorney-Client Privilege ................................................................5

          A.     The Documents Bankman-Fried Seeks Are Protected by the Attorney-Client Privilege........................................................................5

          B.     Bankman-Fried's Right to Present a Defense Does Not Override the FTX Debtors' Attorney-Client Privilege ...............................................9

    III.    The Requests Also Fail to Satisfy the Strict Standards Applied to Rule 17(c) Subpoenas.................................................................................................10

**Conclusion** ................................................................................................................................11

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Bowman Dairy Co.* v. *United States*,
  341 U.S. 214; 71 S.Ct. 675 (1951) ...................................................................................10

*In re County of Erie*,
  473 F.3d 413 (2d Cir. 2007) ........................................................................................... 5-6

*Freedman* v. *Weatherford Int'l Ltd.*,
  No. 12 Civ. 2121, 2014 WL 3767034 (S.D.N.Y. July 25, 2014) .............................................7

*Roseman* v. *Bloomberg L.P.*,
  2016 WL 3866375 (S.D.N.Y. June 17, 2016) ......................................................................9

*Seyler* v. *T-Sys. N.A., Inc.*,
  771 F. Supp. 2d 284 (S.D.N.Y. 2011) ..................................................................................7

*Swidler & Berlin* v. *United States*,
  524 U.S. 399; 118 S.Ct. 2081 (1998) ..............................................................................2, 9

*United States* v. *Barnes*,
  No. S9 04 CR 186, 2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008) .............................................10

*United States* v. *Crawford Enters., Inc.*,
  735 F.2d 174 (5th Cir. 1984) ...............................................................................................5

*United States* v. *Cuthbertson*,
  651 F.2d 189 (3d Cir. 1981) ................................................................................................5

*United States* v. *Martoma*,
  962 F. Supp. 2d 602 (S.D.N.Y. 2013) ..................................................................................5

*United States* v. *Milton*,
  2022 WL 4110256 (S.D.N.Y. Sept. 8, 2022) ....................................................................9, 10

*United States* v. *Nixon*,
  418 U.S. 683; 94 S.Ct. 3090 (1974) ...............................................................................2, 10

*United States* v. *Skelos*,
  2018 WL 2254538 (S.D.N.Y. May 17, 2018) ....................................................................10

*United States* v. *Wells Fargo Bank, N.A.*,
  132 F. Supp. 3d 558 (S.D.N.Y. 2015) ..................................................................................9

**Other Authorities**

Federal Rule of Criminal Procedure 17(c)..............................................................................1, 2, 10

Third-party movants FTX Trading Ltd., West Realm Shires Inc., Alameda Research LLC, Alameda Research LTD and their subsidiaries and affiliates (the "FTX Debtors") respectfully submit this Memorandum of Law in Support of their Motion to Intervene and for a Protective Order, and in opposition to Defendant Samuel Bankman-Fried's Motion to Compel the Government to Produce Documents and for An Order Authorizing A Subpoena to Fenwick & West LLP ("Fenwick") (Dkt. 150). As set forth below, the relief that Bankman-Fried seeks would invade the FTX Debtors' attorney-client privilege and fails to comply with the requirements of Federal Rule of Criminal Procedure 17(c). The FTX Debtors therefore seek permission to intervene and seek a protective order from this Court prohibiting disclosure of the materials sought by Bankman-Fried that are protected by the FTX Debtors' attorney-client privilege.

## PRELIMINARY STATEMENT

Bankman-Fried improperly seeks the disclosure of several broad categories of documents from the FTX Debtors' primary outside counsel (Fenwick) that fall squarely within the attorney-client privilege. Indeed, the 11 requests for documents proposed by Bankman-Fried ("Requests") expressly call for "Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda." (Mem. of Law in Supp. of Samuel Bankman-Fried's Mot. to Compel the Government to Produc. Docs. and for an Order Authorizing a Subpoena to Fenwick & West LLP ("Motion") at 6-10.) Because the Requests on their face clearly call for privileged materials as to which the FTX Debtors have not waived attorney-client privilege, the Motion should be denied to the extent it seeks such materials, and this Court should enter a protective order prohibiting the disclosure of the privileged material sought.

That Bankman-Fried contends that the privileged materials are relevant to his potential defenses has no impact on the protections provided by the attorney-client privilege. The

-1-

Supreme Court has held that, even where privileged materials are "of substantial importance" to a criminal proceeding (which Bankman-Fried has not shown in any event), there is no exception to the privilege. *Swidler & Berlin* v. *United States*, 524 U.S. 399, 409; 118 S.Ct. 2081, 2087 (1998).

Finally, the Motion should also be denied for the independent reason that the proposed Requests fail to satisfy the strict standards applied to Rule 17(c) subpoenas under *United States* v. *Nixon*, 418 U.S. 683; 94 S.Ct. 3090 (1974).

## BACKGROUND

The Superseding Indictment of Bankman-Fried charges in 13 counts that Bankman-Fried, "[f]rom at least in or about 2019 up to and including in or about November 2022," engaged in "a pattern of fraudulent schemes," "stole FTX customer deposits," and "used billions of dollars in stolen funds for a variety of purposes, including, among other things, to support the operations and investments of FTX and Alameda; to fund speculative venture investments; to make charitable contributions; and to enrich himself." (Motion at 1.)  On May 30, 2023, Bankman-Fried moved this Court to compel the Government to produce, or in the alternative, authorize a subpoena compelling the production of, materials in the possession of Fenwick, primary outside counsel to the FTX Debtors. (*Id.*)

According to the Motion, Bankman-Fried "co-founded" Alameda Research and FTX.com in 2017 and 2019, respectively. (Motion at 1.)  Both Alameda and FTX "engaged Fenwick, a law firm headquartered in Silicon Valley specializing in providing legal advice to start-up companies in the technology sector" as "primary outside counsel" (*Id.*)  "Fenwick remained outside counsel to FTX and Alameda throughout the period charged" in the superseding indictment. (*Id.* at 2.)  Bankman-Fried contends that "Fenwick provided legal advice on many of the issues that are at the core of the Government's allegations" and that Fenwick's communications are therefore "critical and material to preparing the defense." (*Id.*)

The documents as to which Bankman-Fried seeks to compel disclosure include broad categories of material that are protected from disclosure by the attorney-client privilege. Specifically, the Motion seeks an order (or subpoena) compelling disclosure of "Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda" concerning several topics. (Motion at 6-10.)

The FTX Debtors have agreed with the Government to a limited waiver of the attorney-client privilege with respect to documents relating to (1) legal advice regarding the formation and incorporation of North Dimension Inc., (2) legal advice concerning whether FTX.com, Alameda or other entities other than FTX US needed to register as a money services business ("MSB") or obtain money transmitting licenses, and (3) legal advice regarding (i) the preparation of a draft Intercompany Treasury Management and Loan Agreement, (ii) the preparation of a draft Intercompany Treasury Management and Subordination Agreement, and (iii) the preparation and execution of a Payment Agent Agreement, dated June 1, 2019.

## ARGUMENT

For the reasons provided below, the FTX Debtors respectfully request that this Court deny Bankman-Fried's Motion or, in the alternative, issue a protective order prohibiting the disclosure of the privileged materials called for in the Requests, with the limited exceptions of the following:

Request 2 seeks "Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda in connection with the formation and incorporation of North Dimension Inc. and North Wireless Dimension Inc. in Delaware and North Dimension Ltd. in the British Virgin Islands."

-3-

(Motion at 6.) To the extent that that documents responsive to Request 2 concern legal advice regarding the formation and incorporation of North Dimension Inc., the FTX Debtors would not assert their privilege as to those documents.

Request Number 3 seeks "Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda concerning whether FTX, Alameda or North Dimension were required to register as a Money Services Business as defined in 31 C.F.R. 1010.100(ff)." (Motion at 6.) To the extent documents responsive to Request 3 concern legal advice as to whether FTX.com, Alameda or entities *other than FTX US* needed to register as an MSB or have money transmitter licenses, the FTX Debtors would not assert their privilege as to those documents.

Request 8 seeks Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda concerning certain intercompany agreements between FTX and Alameda Research Ltd., specifically" "The Payment Agent Agreement, dated June 1, 2019," "The Intercompany Treasury Management Agreement, dated June 1, 2019," "The fiat integration agreement, dated sometime in or around November 2020," "The intercompany services agreement, pursuant to which Alameda provided certain services to FTX," "The cost allocation agreement," "Token exchange agreements," and "The Cash Management Agreement." (Motion at 8-9.)[1] To the extent that documents responsive to Request 8 concern legal advice regarding (i) the preparation of a draft Intercompany Treasury Management and Loan Agreement, (ii) the preparation of a draft Intercompany Treasury Management and Subordination Agreement, and (iii) the preparation and

---

[1] We have seen internal FTX documents that refer to the Payment Agent Agreement as the Cash Management Agreement. We are not aware that there is any actual agreement called a Cash Management Agreement

-4-

execution of the Payment Agent Agreement, dated June 1, 2019, the FTX Debtors would not assert their privilege as to those documents.

**I.    THE COURT SHOULD ALLOW THE FTX DEBTORS TO INTERVENE FOR THE LIMITED PURPOSE OF OPPOSING THE MOTION AND SEEKING A PROTECTIVE ORDER.**

It is appropriate for this Court to allow the FTX Debtors to intervene in this case for the limited purpose of opposing the Motion and seeking an order to protect privileged materials from disclosure. "[I]t is settled law that persons affected by the disclosure of allegedly privileged materials may intervene in pending criminal proceedings." *United States* v. *Martoma*, 962 F. Supp. 2d 602, 605-6 (S.D.N.Y. 2013) (holding that a "third-party's reasonable assertion of privilege with respect to documents to be produced in a criminal action is sufficient grounds on which to grant the third-party's motion to intervene"); *see also United States* v. *Cuthbertson*, 651 F.2d 189, 193 (3d Cir. 1981) ("[A] third party may intervene in a criminal trial to challenge production of subpoenaed documents on the ground of privilege and may appeal from an order granting less protection than that claimed."); *United States* v. *Crawford Enters., Inc.*, 735 F.2d 174, 176 (5th Cir. 1984) ("As a general proposition, persons or corporations which are adversely affected by the disclosure of privileged material have the right to intervene, assuming standing, in pending criminal proceedings to seek protective orders.").

**II.   THE COURT SHOULD PROHIBIT THE DISCLOSURE OF MATERIALS PROTECTED BY THE FTX DEBTORS' ATTORNEY-CLIENT PRIVILEGE.**

A.  <u>The Documents Bankman-Fried Seeks Are Protected by the Attorney-Client Privilege.</u>

Each of the Requests, on its face, calls for materials protected from disclosure by the FTX Debtors' attorney-client privilege. Attorney-client privilege applies to any communication (1) between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. *In re County*

*of Erie*, 473 F.3d 413, 419 (2d Cir. 2007).  Each of the Requests in Bankman-Fried's Motion seeks documents that reflect "research, assessment, analysis, guidance, or legal advice" conducted for or provided to the FTX Group (which the proposed subpoena attached to the Motion defines as FTX Trading Ltd., West Realm Shires Inc., and their subsidiaries) or Alameda (which the proposed subpoena defines as Alameda Research LLC, Alameda Research LTD, and their subsidiaries and affiliates).  (*See* Dkt 151-1 at 1.)  Such "research, assessment, analysis, guidance, or legal advice" of counsel are at the core of what is protected by the attorney-client privilege, and they should be protected from disclosure here.

    The Motion acknowledges that the Requests call for privileged materials, and that the FTX Debtors "may refuse to waive privilege," but contends that Fenwick may also possess "(i) non-privileged information like additional invoices . . . ; (ii) information related to topics for which the FTX Debtors have already waived privilege . . . ; and (iii) documents that were produced as part of any joint representation or individual representation of Mr. Bankman-Fried."  (Motion at 5.)  Notably, additional non-privileged Fenwick invoices is the only specific category of potentially non-privileged documents mentioned in the Motion.  To the extent the Motion seeks the production of such invoices, the Requests should be narrowed to such non-privileged invoices.  And to the extent the Motion seeks documents related to advice that Fenwick provided in the context of an attorney-client relationship with Bankman-Fried in his personal capacity, he may obtain those documents simply by asking Fenwick for his client file, and no subpoena is necessary.

    With respect to documents "related to topics for which the FTX Debtors have already waived privilege" (Motion at 5.), as discussed above the FTX Debtors will not assert privilege as to three limited categories for which they have agreed to waiver privilege.  (*See supra*

at 3-4.)  However, the Requests that concern the topics over which the FTX Debtors have waived privilege also seek documents that are outside of the scope of the limited waivers. [2]

The FTX Debtors have also waived privilege as to legal advice concerning the formation and incorporation of North Dimension, Inc.  In addition to documents concerning North Dimension Inc., Request 2 seeks legal advice Fenwick provided in connection with the formation and incorporation of North Wireless Dimension Inc. and North Dimension Ltd.—entities not included in the Debtors' limited waiver.  Accordingly, to the extent this Court is inclined to allow disclosure of materials concerning the formation of these entities, such disclosure should be limited to documents concerning such advice as to North Dimension, Inc..

The FTX Debtors have waived privilege as to legal advice concerning whether FTX.com, Alameda or other entities other than FTX US needed to register as a MSB or obtain money transmitting licenses.  Request Number 3 calls for "Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice . . . concerning whether FTX, Alameda or North Dimension were required to register as a Money Services Business as defined in 31 C.F.R. 1010.100(ff)"  (Motion at 6-7.)  Although some materials responsive to Request 3 are within the scope of the FTX Debtors' limited waiver, the Request extends to materials outside of the waiver as well because, as the Motion concedes, the waiver was limited to advice concerning "entities

---

[2]   The FTX Debtors' limited waivers of privilege does not provide a basis to find a broader subject matter waiver.  The application of a subject matter waiver is "limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner."  *Seyler* v. *T-Sys. N.A.*, *Inc.*, 771 F. Supp. 2d 284, 288 (S.D.N.Y. 2011) (quoting Fed. R. Evid. 502(a) advisory committee's notes); *see also Freedman* v. *Weatherford Int'l Ltd.*, No. 12 Civ. 2121, 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014) (denying to find subject matter waiver where there was no indication of "selective, manipulative and strategic use of evidentiary privileges") (quoting *Gruss* v. *Zwirn*, No. 09 Civ. 6441, 2013 WL 3481350, at *11 (S.D.N.Y. July 10, 2013)).  There is no evidence to suggest that the FTX Debtors, who are not parties in this case, sought to gain any advantage by waiving privilege as to the money transmitter issue, and thus, no basis to find that this waiver should be extended to other topics.

other than FTX US." (Motion at 17.)  Accordingly, to the extent this Court is inclined to allow disclosure of materials concerning the topic of whether FTX Debtor entities were required to register as an MSB, such disclosure should be limited to documents concerning such advice as to entities other than FTX US.

The FTX Debtors have waived privilege as to legal advice concerning (i) the preparation of a draft Intercompany Treasury Management and Loan Agreement, (ii) the preparation of a draft Intercompany Treasury Management and Subordination Agreement, and (iii) the preparation and execution of the Payment Agent Agreement, dated June 1, 2019.  Request 8 seeks the disclosure of documents concerning several intercompany agreements, including four that are not covered by the FTX Debtors' waiver.  Accordingly, to the extent this Court is inclined to allow disclosure of materials concerning these agreements, such disclosure should be limited to documents concerning such advice as to the draft Intercompany Treasury Management and Loan Agreement, the draft Intercompany Treasury Management and Subordination Agreement, and the Payment Agent Agreement, dated June 1, 2019.

Where, as here, it is necessary to protect privileged materials from disclosure, it is appropriate for a court to issue a protective order in a criminal proceeding.  *See United States* v. *Milton*, 2022 WL 4110256, at *5 (S.D.N.Y. Sept. 8, 2022) (holding the protection of documents covered by the attorney-client privilege constitutes "good cause" for the issuance of a protective order in the civil context, and that there is "no reason to hold differently in the criminal context").  Bankman-Fried argues that, in order to assert their privilege, the FTX Debtors must produce a privilege log listing each privileged document.  (*See* Motion at 17.)  But Courts impose no such requirement.  Rather, Courts have found that "the protection of documents covered by the attorney-client privilege" constitutes "good cause" to justify a protective order.  *Milton*, 2022 WL 4110256,

at *3; *see also Roseman* v. *Bloomberg L.P.*, 2016 WL 3866375 (S.D.N.Y. June 17, 2016) (finding "good cause for the issuance of a protective order" where the information sought "appear[ed] certain to involve privileged communications").

      **B.**      <u>Bankman-Fried's Right to Present a Defense Does Not Override the FTX Debtors' Attorney-Client Privilege.</u>

That Bankman-Fried contends that privileged materials in the possession of Fenwick are important to his anticipated defenses in this case has no impact on the privilege analysis. The right to present a defense is not absolute, "even in criminal cases, where the right is at its strongest." *United States* v. *Wells Fargo Bank, N.A.*, 132 F. Supp. 3d 558, 561 (S.D.N.Y. 2015). As the Supreme Court has recognized, an exception to the privilege for cases where the protected materials are "of substantial importance" to a criminal proceeding would ultimately undermine the purposes of the attorney-client privilege by introducing "uncertainty into the privilege's application." *Swidler*, 524 U.S. at 408-09 (holding that the potential relevance of privileged information to a criminal proceeding does not justify overriding the attorney-client privilege, even after the client's death).

In *Wells Fargo*, the court held that an employee could not pursue an advice-of-counsel defense where doing so required disclosure of privileged communications as to which the defendants' employer refused to waive privilege. 132 F. Supp. 3d at 566. The Court recognized that allowing a former employee defendant to force disclosure of an entity's privileged information would "essentially transform a corporate entity's attorney-client privilege into a qualified privilege." *Id*. at 563. Accordingly, a criminal defendant has no right to present a defense that relies on its employer's privileged communications. *See Milton*, 2022 WL 4110256, at *6 (rejecting argument that "privileged communications become discoverable simply because a defendant wishes to use those communications in his defense").

## III. THE REQUESTS ALSO FAIL TO SATISFY THE STRICT STANDARDS APPLIED TO RULE 17(C) SUBPOENAS.

This Court should also reject Bankman-Fried's request to authorize a Rule 17(c) subpoena because the proposed Requests fail to satisfy the strict standards applied to Rule 17(c) subpoenas under *Nixon*. Rule 17(c) "was not intended to provide an additional means of discovery." *Bowman Dairy Co.* v. *United States*, 341 U.S. 214, 220; 71 S.Ct. 675, 679 (1951). Rather, it "should be used only as 'a mechanism for obtaining specific admissible evidence.'" *United States* v. *Skelos*, 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018) (quoting *United States* v. *Barnes*, No. S9 04 CR 186, 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008)). Courts have been careful to ensure "'[R]ule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule] 16.'" *Barnes*, 2008 WL 9359654, at *2 (quoting *United States* v. *Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995)).

To ensure that the balance struck by the Federal Rules of Criminal Procedure is preserved, the Supreme Court has articulated that a Rule 17(c) subpoena is only proper where: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id.* at *2 (quoting *Nixon*, 418 U.S. at 699-700; 94 S.Ct. at 3103). Here, the Requests do not identify specific items of admissible evidence, and instead, call for all documents reflecting broad categories of legal analysis and advice provided to the FTX Debtors by Fenwick. Accordingly, the Motion should also be denied in its entirety for failure to comply with Rule 17(c).

**CONCLUSION**

For the foregoing reasons, this Court should deny Bankman-Fried's Motion or, in the alternative, issue a protective order prohibiting the disclosure of the privileged material called for in the Requests, with the exception of documents responsive to Request 3 that concern any entity other than FTX US, documents responsive to Request 2 that concern the formation and incorporation of North Dimension Inc., and documents responsive to Request 8 that concern (i) the Intercompany Treasury Management and Loan Agreement, (ii) the Intercompany Treasury Management and Subordination Agreement, and (iii) the Payment Agent Agreement, dated June 1, 2019.

Dated: New York, New York
      June 9, 2023

Respectfully,

*/s/ Nicole Friedlander*
Steven R. Peikin
Nicole Friedlander
Shane R. Yeargan
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000
*Counsel for Third-Party Movant FTX Debtors*