

COHEN & GRESSER LLP

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

July 22, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

  Re: *United States v. Samuel Bankman-Fried*, S5 22 Cr. 673 (LAK)

Dear Judge Kaplan:

  On behalf of our client, Samuel Bankman-Fried, we write in response to the Government's letter filed Thursday evening regarding Mr. Bankman-Fried's communications with a reporter for the *New York Times* and seeking an order prohibiting certain "extrajudicial statements by parties and witnesses" pursuant to SDNY Local Rule 23.1(h).  ECF No. 176.

  The Government has taken a set of circumstances where nothing improper or impermissible occurred and has unfairly recast the events as a nefarious attempt by Mr. Bankman-Fried to "discredit" Caroline Ellison and "taint" the jury pool.  But Mr. Bankman-Fried did nothing wrong.  A reporter contacted Mr. Bankman-Fried and asked if he wanted to respond to an article about Ms. Ellison that had been in process for months, for which the reporter already had other sources, and which was about to be published.  Mr. Bankman-Fried spoke to the reporter and shared certain documents that he had obtained prior to his arrest, and that were not produced in discovery, in an effort to give his side of the story about topics that have already been reported in the media.

  It is not hyperbole to say that there has been a deluge of media coverage of Mr. Bankman-Fried's case in the last several months, including more than 1 million news articles, YouTube videos, and podcasts about FTX and Alameda Research since November 2022.  Among them have been over 33,000 news stories mentioning Ms. Ellison and over 150,000 stories mentioning our client, including several articles discussing their relationship and describing Ms. Ellison's personal writings.  These articles have reported that Ms. Ellison's writings contain her "raw reflections on SBF" and note her "personal and professional

The Honorable Lewis A. Kaplan
July 22, 2023
Page 2

resentment" towards him.[1]  The Government does not claim that Mr. Bankman-Fried was the source for those articles, which appear to be describing some of the same documents at issue here and which predated the article published on Thursday by almost two months.  Hence, we vigorously contest the Government's allegation that Mr. Bankman-Fried attempted to taint the jury pool or influence a witness, or that the Government has been prejudiced in any way.

To the contrary, none of what occurred was improper.  Mr. Bankman-Fried did not violate the protective order in this case, nor did he violate his bail conditions, nor did he violate any law or rule governing his conduct.  Rather, Mr. Bankman-Fried was exercising his rights under the First and Sixth Amendments to respond to an inquiry from the media, which for months has continuously written—almost uniformly negatively—about him and the subject matter of his case.  This toxic media environment has been created and fostered in multiple fora by many of Mr. Bankman-Fried's detractors—most notably, the current CEO of the FTX Debtor entities, John J. Ray III, who has routinely (and gratuitously) attacked and vilified Mr. Bankman-Fried in his public comments and filings in the FTX bankruptcy proceedings.  Mr. Bankman-Fried, who has asserted his innocence despite these public attacks, has a right to counter that public narrative by making fair comment in the media.

Nevertheless, to avoid further distraction and collateral litigation as the parties meet the requirements of the scheduling order issued by the Court and prepare for trial, the defense is willing to agree to the relief requested.  We respectfully request that any such relief, however, should apply not just to Mr. Bankman-Fried, but equally to all "parties and witnesses" – namely, the Government and all potential witnesses in this case.  This would include all current and former employees of FTX, Alameda Research, and the FTX Debtor entities, including John Ray.

1. <u>Media Context</u>

The Government's claim that Mr. Bankman-Fried has somehow attempted to interfere with a fair trial is erroneous.  The Government itself has been the source of numerous media stories through its court filings, press conferences, and its own disclosures to the press, including touting to the *New York Times* "the mountain of evidence [which] ranks among the largest ever collected in a white-collar securities fraud case prosecuted by the federal authorities in Manhattan."[2]  Indeed, the Government complains that the documents shared by Mr. Bankman-

---

[1] *See, e.g.*, David Yaffe-Bellany and Matthew Goldstein, *Emails, Chat Logs, Code and a Notebook: The Mountain of FTX Evidence*¸ N.Y. Times (May 23, 2023), *available at* https://www.nytimes.com/2023/05/23/technology/ftx-evidence-sam-bankman-fried.html; Kevin Dugan, *What Secrets Did Caroline Ellison Keep In Her Diary?* NY MAGAZINE INTELLIGENCER (May 23, 2023) *available at* https://nymag.com/intelligencer/2023/05/what-secrets-did-caroline-ellison-keep-in-her-diary.html.

[2] *See, e.g.*, David Yaffe-Bellany and Matthew Goldstein, *Emails, Chat Logs, Code and a Notebook: The Mountain of FTX Evidence*¸ N.Y. Times (May 23, 2023), *available at* https://www.nytimes.com/2023/05/23/technology/ftx-evidence-sam-bankman-fried.html.

Fried include Ms. Ellison's descriptions of "feeling overwhelmed by her job at Alameda." ECF No. 176 at 1. Yet, the S5 Indictment itself is the source for some of the quotes in Thursday's article on this very topic. *See* S5 Indictment ¶ 53 ("On or about November 6, 2022, BANKMAN-FRIED sent CC-1 a screenshot of a message from Ellison that read, in part: 'I just had an increasing dread of this day that was weighing on me for a long time, and now that it's actually happening it just feels great to get it over with one way or another.'). Hence, it is hard to see the basis for the Government's claims that Mr. Bankman-Fried has somehow "discredited" Ms. Ellison or "tainted" the jury pool.

By contrast, the Government has stood silent as John Ray has routinely made disparaging statements in the FTX bankruptcy proceedings and in other public comments discrediting Mr. Bankman-Fried, which have been repeated in pervasive media coverage. To give just a few examples:

- "The advisors are not the villains in these cases. The villains are being pursued by the appropriate criminal authorities[.]" Bankr. Dkt. 511 ¶ 9.

- Accusing Mr. Bankman-Fried of "repeatedly, pervasively, and often persuasively, lying to stakeholders and the customers and creditors in order to maintain the digital con game." Ex. 13 (Excerpt of Apr. 12, 2023 Hear'g Tr., In re FTX Trading Ltd., Case No. 22-11068 (JTD) (Bankr. D. Del.)) at 9:5-8.

- Asserting that the failures that occurred at FTX were due to "hubris, incompetence, and greed." Bankr. Dkt. 1242-1 at 7.

Mr. Ray's repeated *ad hominem* attacks on Mr. Bankman-Fried—which have very little do with his role recovering assets for FTX creditors and seem more directed towards publicly vilifying Mr. Bankman-Fried—have, along with other negative coverage, created a toxic media environment that has left Mr. Bankman-Fried with little choice but to respond.

2. <u>Contact with the Reporter</u>

It was in the context of this hyper-toxic media environment that Mr. Bankman-Fried agreed to speak to the reporter. The reporter contacted Mr. Bankman-Fried about a story he was working on concerning Ms. Ellison and asked Mr. Bankman-Fried if he wished to respond. Mr. Bankman-Fried ultimately agreed to speak to the reporter and invited him for a visit at his parents' home pursuant to the procedures outlined in the bail conditions imposed by this Court. This visit was far from secret. Mr. Bankman-Fried followed all conditions and procedures under the bail conditions for receiving visitors, including having a security guard screen the reporter for prohibited electronic devices and entering the reporter's name on the visitor log. During their meeting, Mr. Bankman-Fried showed the reporter certain documents, none of which were part of the materials produced by the Government in discovery, as the Government concedes.

The Government contacted defense counsel in the evening of July 17, 2023 and advised that they had been informed that a *New York Times* reporter would be publishing an article about Ms. Ellison, and that they had reason to believe that Mr. Bankman-Fried was the source of underlying documents. The Government noted that if the documents were derived from the discovery, that would be a violation of the protective order entered in this case and asked defense counsel to respond. Defense counsel immediately conferred with Mr. Bankman-Fried who confirmed that he had shown certain documents to the reporter that he had acquired from a source other than the Government's productions (and prior to receiving any discovery), and that he had not shared any discovery materials. Defense counsel independently verified that the documents were not part of the discovery and therefore did not implicate the protective order. Defense counsel contacted the prosecutors the following day and reported these findings and offered to provide copies of the documents to the Government's filter team so that it could verify that the documents were not part of the discovery provided to the defense.

The story ran on Thursday. Overall, it was favorable to Ms. Ellison and negative towards Mr. Bankman Fried. Mr. Bankman-Fried was clearly not the only source of information for the article, which refers to multiple sources. Among other things, the article strongly indicates that Government employees or agents were also sources for the article because it includes the reported fact that "[p]rosecutors are expected to begin preparing at least some witnesses in August" citing "two people with knowledge of the matter" and describes other documents reportedly "seen" by "two people" who spoke with the *New York Times*.

3. <u>The Government's Assertions of "Harassment" and "Prejudice" Are Erroneous</u>.

The defense vehemently denies that Mr. Bankman-Fried attempted to "harass," "discredit" or even "cast [Caroline Ellison] in a poor light," as the Government claims. Mr. Bankman-Fried did not seek out the *New York Times*. The reporter approached our client for comment on a story in progress. The story implicated Mr. Bankman-Fried as much as it did Ms. Ellison, and our client agreed to provide his perspective. Mr. Bankman-Fried showed the reporter the materials referenced in the Government's letter, which the Government concedes were not produced in discovery, solely for the purpose of responding to the reporter regarding the story for which the reporter already had alternate sources.

"In the context of general public awareness" and prior news reporting of Ms. Ellison's prior romantic relationship with Mr. Bankman-Fried, the disclosure of the specific materials cited in the *New York Times* article are unlikely to result in any prejudice or tainting of the jury pool. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1046, 111 S. Ct. 2720, 2730 (1991). Indeed, up until this point, the Government has shown little concern for pretrial publicity regarding its witnesses, belying its now-proffered concern for witnesses potentially being deterred by the specter of publicity. The Government itself disclosed Ms. Ellison's status as a cooperating witness before it would typically do so: it did not object to the Court's unsealing of her allocution and has referenced her expected testimony in multiple submissions to the Court

regarding bail conditions and in other legal motions. The Government has put Ms. Ellison front and center in the public domain, thereby creating the circumstances in which Ms. Ellison's writings would be considered newsworthy. There is no dispute that she will testify at trial, that her credibility will be challenged, and that she will be examined regarding her prior writings (presumably by both the Government as well as the defense).

In light of this, it is difficult to see what additional taint there is that has not already been invited by the Government. Furthermore, the notion that this one story had any effect—let alone the dramatic effect asserted by the Government—on the overall fairness of the upcoming trial should not be credited. To the extent this is a concern, the Court has already indicated that it will conduct a robust *voir dire* that will eliminate any potential jurors who believe they are biased due to the media coverage of this case.

4. Mr. Bankman-Fried Has a Right to Respond to Press Inquiries.

Mr. Bankman-Fried's right to candidly respond to press inquiries directly implicates his rights under the First and Sixth Amendments. *See Gentile,* 501 U.S. at 1043 (a defense does "not begin inside the courtroom door" and one "cannot ignore the practical implications of a legal proceeding" for the accused); *see also id.* at 1058 ("[I]n some circumstances press comment is necessary to protect the rights of the client[.]"). In light of these constitutional rights, courts have recognized that "gag orders" of the sort sought by the Government are only appropriate where there is "a threat of clear and present danger to the impartiality and good order of the courts." *Id.* at 1039. No such threat exists here.

The Government's reliance on *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S. Ct. 1507, 1522 (1966) is misplaced. That case highlighted the negative impact unfettered media reporting of a criminal case can have on the ability to hold a fair trial. Restricting Mr. Bankman-Fried's ability to respond with candor to articles already being written about him and his case—many of which portray him in a negative light—would only *heighten* the prejudice resulting from the extensive media attention on this case. *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 611-12 (2d Cir. 1988) is also inapposite. *Dow Jones* involved multiple defendants, each of which voluntarily agreed to the imposition of a restraining order following "escalating publicity duels" including prosecutors and defense counsel.[3] *Id.* at 605. Here, Mr. Bankman-Fried stands alone. All other indicted alleged co-conspirators have accepted guilty pleas and will not face a jury trial.

---

[3] The other case cited by the Government, *United States v. Brown*, 218 F.3d 415, 428 (5th Cir. 2000), likewise involved additional defendants in a related case whose interests were protected by the restraining order. *Id.* at 419.

5. <u>In the Interest of Avoiding Collateral Litigation, the Defense Will Consent to the Government's Requested Relief</u>.

The Government concedes that the prohibitions of SDNY Local Rule 23.1(a) "apply only to the conduct of lawyers and their agents." ECF No. 176 at 3. The Government nevertheless seeks an order pursuant to SDNY Local Rule 23.1(h) prohibiting "extrajudicial statements by parties and witnesses" that are likely to interfere with the right to a "fair trial by an impartial jury." *Id*. Rule 23.1 exists to prevent individuals from affirmatively seeking out the media for purposes of disparaging a witness. As discussed above, Mr. Bankman-Fried did not seek out the journalist or plot to influence anyone. Rather, he responded with candor to a press inquiry to counter a "wave of publicity he perceived as. . . injuring his [ ] reputation in the community." *Gentile*, 501 U.S. at 1043.

Nevertheless, given the timetable in which submissions will be due to the Court from both parties beginning on August 14, 2023, we believe that collateral litigation about these issues should be avoided. The defense therefore agrees to the relief requested. We respectfully request that any such relief, however, should apply equally to all "parties and witnesses" – namely, the Government and all potential witnesses in this case. This would include all current and former employees of FTX, Alameda Research, and the FTX Debtor entities, including John Ray.

6. <u>Modification of Mr. Bankman-Fried's Bail Conditions Is Unwarranted</u>.

To the extent the Court is considering modifying Mr. Bankman-Fried's bail conditions, such modification is unnecessary because the order the Government seeks, and to which the defense consents (for the purposes of avoiding unnecessary collateral litigation), is the "least restrictive condition" that will adequately address the Government's concerns. "Under the Bail Reform Act, courts are required to release a defendant 'subject to the least restrictive further condition, or combination of conditions, that [it] determines will reasonabl[y] assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Rains*, No. 22-CR-18 (NSR), 2022 WL 4534540, at *1 (S.D.N.Y. Sept. 28, 2022) (quoting 18 U.S.C. § 3142(c)(1)(B)). The Government itself states that the order it requests is "the least restrictive alternative for ensuring a fair trial." ECF No. 176 at 4. We respectfully submit that nothing more is required and will be prepared to address the Court's questions about bail at the upcoming conference.

Respectfully submitted,

  /s/ Mark S. Cohen
Mark S. Cohen
Christian R. Everdell
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor

The Honorable Lewis A. Kaplan
July 22, 2023
Page 7

                                                           New York, New York  10022
                                                         (212) 957-7600
                                                       mcohen@cohengresser.com
                                                     ceverdell@cohengresser.com

cc:    All counsel of record (via ECF)