

**The New York Times
Company**

David McCraw
Senior Vice President &
Deputy General Counsel

T 212 556 4031

mccraw@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

August 2, 2023

**<u>BY HAND</u>**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   <u>*United States v. Samuel Bankman-Fried*, 22-cr-673 (LAK)</u>

Dear Judge Kaplan:

I write on behalf of The New York Times Company ("The Times")
concerning the Court's current interim order limiting what trial
participants can say to journalists and its consideration of a further
restraining order. (*See* Government Letter, July 20, 2023, Dkt. No. 176.)
We believe that any such order must follow the standards set out in two
provisions of S.D.N.Y. Local Criminal Rule 23.1 in order to adequately
protect the public's First Amendment right to receive information about a
financial scandal that stripped billions of dollars from the economy and
harmed innumerable members of the public.

The Second Circuit has long recognized that gag orders on trial
participants affect not just the rights of the participants but also the First
Amendment rights of the public and news organizations to receive
information. *In re Dow Jones & Co.*, 842 F.2d 603, 607-08 (2d Cir. 1988)
(First Amendment "unwaveringly protects the right to receive information
and ideas" in various contexts, including information about federal
corruption case); *United States v. Corbin*, 620 F. Supp. 2d 400, 411-412
(E.D.N.Y. 2009) (recognizing the First Amendment limits on gag orders).
Accordingly, press organizations have been permitted to challenge gag
orders on trial participants when there are participants willing to speak to
the press. *Dow Jones*, 842 F.2d at 607-08 (finding that "news agencies

have standing to appeal [judge's] order restraining speech of the trial
participants" where prior press contact by parties establishes that parties
are likely interested in communicating with press in future); *Brown v
Damiani*, 228 F. Supp. 2d 94, 97 (D. Conn. 2002) ("potential recipients of
speech restrained by a judicial gag order have standing to challenge such
an order").

Two provisions of Local Criminal Rule 23.1 are implicated when an order
limiting speech is directed at both lawyers and non-lawyers, and the rules
set different standards. First, Rule 23.1(a), which governs orders directed
at counsel, states:

> It is the duty of the lawyer or law firm, and of non-lawyer
> personnel employed by a lawyer's office or subject to a lawyer's
> supervision, private investigators acting under the supervision of a
> criminal defense lawyer, and government agents and police
> officers, not to release or authorize the release of non-public
> information or opinion which a reasonable person would expect to
> be disseminated by means of public communication, in connection
> with pending or imminent criminal litigation with which they are
> associated, *if there is a substantial likelihood that such
> dissemination will interfere with a fair trial or otherwise prejudice
> the due administration of justice.* (emphasis added)

Second, Rule 23.1(h), in relevant part, addresses the speech rights of non-
lawyers who are trial participants. It states:

> The court . . . may issue a special order governing such matters as
> extrajudicial statements by parties and witnesses *likely to interfere
> with the rights of the accused to a fair trial by an impartial jury.*
> (emphasis added)

In other words, restraints on counsel are premised on the need to broadly
provide for a fair trial and the administration of justice. Restraints on non-
lawyers are justified in more limited circumstances, specifically, when the
"rights of the accused" may be harmed by out-of-court statements.

Cases dealing with attorney speech have fleshed out the analysis to be
done by the Court before imposing restrictions on speech. The Court is to

determine "whether there is a reasonable likelihood that pretrial publicity will prejudice a fair trial." *Dow Jones*, 842 F.2d at 610; *see also Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991) ("We agree with the majority of the States that the 'substantial likelihood of material prejudice' standard constitutes a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials."). In assessing the need for a restraint, the Court looks to the nature and extent of press coverage and "whether other available remedies would effectively mitigate the pretrial publicity." *Dow Jones*, 842 F.2d at 610-11 ("[E]ach [alternative] must be explored and ultimately rejected as inadequate—individually and in combination—as a remedy for pretrial publicity before a restraining order is entered"); *see also United States v. Salameh*, 992 F.2d 445, 447 (2d Cir. 1993) ("[T]he limitations on attorney speech should be no broader than necessary to protect the integrity of the judicial system and the defendant's right to a fair trial."). Among the alternatives courts should consider to maintain a fair trial are the use of screening questionnaires for jurors and a thorough and searching voir dire. *Corbin*, 620 F. Supp. 2d at 408.

We would also note that the courts have recognized that, when it comes to limiting speech of trial participants, non-lawyers stand in a different position from lawyers. As set out in *United States v. Gotti*, No. 04-cr-690 (SAS), 2004 U.S. Dist. LEXIS 24192 at *12-13 (S.D.N.Y. Dec. 3, 2004): "[A] court's inherent authority over trial participants, including witnesses, should be exercised with restraint. Unlike attorneys, trial witnesses . . . are not officers of the court and cannot, therefore, be said to have bargained away any portion of their First Amendment rights in exchange for the privilege of practicing law. It follows that a court may abridge a witness's First Amendment rights only when absolutely necessary to ensure the accused's right to a fair trial."). *See also United States v. Whitehead,* No. 22-cr-693 (LGS)*,* 2023 U.S. Dist. LEXIS 29602 at *4-5 (S.D.N.Y. Feb. 22, 2023) (declining to restrain non-lawyer trial participant where defendant has failed to show less-extreme measures would be ineffective to protect proceeding).

As your Honor noted at last week's conference, any order limiting communication with the press necessarily requires a balancing of First Amendment rights and the need to assure a fair trial and effective administration of justice. (July 26, 2023 Conference Transcript at p. 35.)

Both of the relevant provisions of Rule 23.1 attempt to do just that by eschewing blanket gag orders. They limit any restraints to those statements that, upon a proper showing by the movant, either pose "a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice due administration of justice" (Rule 23.1(a) for lawyers) or are "likely to interfere with the rights of the accused to a fair trial by an impartial jury" (Rule 23.1(h) for nonlawyers). We note that the Court struck the limiting "fair trial" language from the Government's proposed order (Dkt. 179-1) in granting its current interim order. (July 26, 2023 Conference Transcript at p. 33 (eliminating the words "anything about the case which could interfere with a fair trial"). But the "fair trial" limiting clauses found in Rule 23.1 are critical to protecting the First Amendment rights of the public and press to receive information and should be included in any restraint imposed going forward.

In its letter to the Court of July 28, 2023, the Government acknowledges correctly that a defendant has a right to speak to the press but proposes that defendants are limited to statements defending themselves. (Government Letter, Dkt. 184, at p. 11.) That is not the standard, whether one looks to the First Amendment or Rule 23.1(h). While the current round of motion practice was prompted by a Times article about Caroline Ellison, and the Government argues that the article was part of Defendant's effort to interfere with the trial, that overlooks the public's legitimate interest—independent of this prosecution—in Ms. Ellison and her activities at her cryptocurrency trading firm. She has confessed to being a central participant in a financial scheme that defrauded investors of billions of dollars—a scheme that was not detected by government regulators and law enforcement agencies until the public's money had disappeared. It is not surprising that the public wants to know more about who she is and what she did and that news organizations would seek to provide to the public timely, pertinent, and fairly reported information about her, as The Times did in its story. It may well be, of course, that the parties will choose not to speak to the press in the future, but Rule 23.1 provides the appropriate safeguards and balancing of interests if they choose to do so. We respectfully ask that any such restraints be imposed only as permitted by the First Amendment and Rule 23.1(a) and (h).

4

We thank the Court for its consideration.

Respectfully submitted,

David McCraw

cc: All Counsel of Record (via Email)