# MILLER KORZENIK SOMMERS RAYMAN LLP

THE PARAMOUNT BUILDING • 1501 BROADWAY, SUITE 2015 • NEW YORK, NY 10036
TEL 212-752-9200 • FAX 212-688-3996 • WWW.MKSR.LAW

August 3, 2023

<u>VIA EMAIL</u>

Hon. Lewis A. Kaplan
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re: <u>United States v. Samuel Bankman-Fried, 22-cr-673 (LAK)</u>

Your Honor:

  I write on behalf of documentary filmmaker Nanette Burstein and production company Propagate Content LLC ("Propagate") to respectfully object to the Temporary Order Governing Extrajudicial Statements entered by the Court in this proceeding (Docket No. 180) and to the potential entry of a permanent restraining order.  The First Amendment standards applicable to gag orders on trial participants, as well as the applicable standards under Local Criminal Rule 23.1, have been fully set out by counsel for the New York Times in their August 1, 2023 letter (Docket No. 187), and Propagate and Burstein join in the Times' arguments.  The purpose of this letter is to address several additional points of law and to explain the particular impact that the Temporary Order is having, and will continue to have, on the First Amendment rights of Burstein and Propagate in particular.

  Burstein – an award-winning director and producer – is making an in-depth, feature-length investigative documentary for Propagate, an award-winning content studio, concerning FTX, the events that gave rise to Sam Bankman-Fried's arrest, and the eventual outcome of his criminal cases.  The documentary will not be released until after the completion of both of his trials and therefore cannot affect the outcome of those trials.  Rather, the film – which will be unbiased and objective, and will include interviews with people with differing perspectives on FTX and on Mr. Bankman-Fried – will be exclusively of historical and documentary value.  The documentary was to have begun filming this week, and Mr. Bankman-Fried had agreed to be interviewed.  That plan has now been derailed – at least temporarily, and perhaps permanently, depending on the outcome of these proceedings – by the government's request for a gag order, even though the documentary poses no danger of interfering in any way with the criminal proceedings.

  For the reasons set forth below, Burstein and Propagate respectfully oppose the entry of any further speech-restrictive orders in this matter and request that, if any such continuing order is entered, the order should at least be narrowed to make clear that speech that will not affect the outcome of the criminal proceedings is not encompassed within the scope of the order.  In addition, while Burstein and Propagate take no position in general regarding the government's request to remand Mr. Bankman-Fried to custody, we do request that the Court take into account

that remanding him on the basis of his contacts with journalists also raises serious First Amendment concerns and would have adverse implications for journalists' ability to communicate with other criminal defendants in the future.

**The Press Has Standing To Challenge The Gag Order Notwithstanding Defendant's Consent To The Order**

The First Amendment protects "the rights of potential recipients of speech," including the press, "to challenge the abridgment of that speech." In re Dow Jones & Co., 842 F.2d 603, 607-08 (2d Cir. 1988). Accordingly, as set forth in the Times' letter, courts in this Circuit routinely permit media entities to challenge gag orders imposed on trial participants.

The standing of media entities to challenge the order here is not affected by the fact that Mr. Bankman-Fried has consented to the entry of the order in question. In In re Dow Jones, the Second Circuit found that the news agencies challenging a gag order had standing because they "are in fact potential recipients of speech by, inter alia, defense counsel and defendants," even though five of the seven defendants argued in favor of the gag order, where there had been "extensive – pre-restraining order – extrajudicial statements by all of these individuals" and "were they not restrained, such persons would [] be willing speakers." In re Dow Jones, 842 F.2d at 607-8. Other courts have reached similar conclusions. See United States v. Wecht, 484 F.3d 194, 203 (3d Cir. 2007), as amended (July 2, 2007) ("the consent of the parties to an order limiting speech is irrelevant to third-party standing analysis as long as the third party can demonstrate that an individual subject to the order would speak more freely if the order is lifted or modified"); cf. Overbey v. Mayor of Baltimore, 930 F.3d 215, 228 (4th Cir. 2019) (rejecting argument that police brutality claimants who voluntarily entered into settlements that restricted their ability to speak to news media were not "willing speakers" and holding that "[f]or the purposes of constitutional standing, a person qualifies as a willing speaker if she would be willing to provide information on a matter of public significance to the news media but chooses not to because she does not want to violate a settlement agreement with the government").

Here, Mr. Bankman-Fried is clearly a "willing speaker" within the meaning of the above-cited cases: he apparently has willingly spoken with numerous journalists since his arrest, and he had agreed to speak with Ms. Burstein for the documentary. The only reason he cannot do so now is that the Temporary Order has been entered. His submission to the Court makes clear that he has agreed to the imposition of a speech-restrictive order merely to avoid "the additional burden of collateral litigation" and in the hope that that Court will view the order as the "'least restrictive' method to address the Government's concerns" and therefore deem it a sufficient alternative to granting the government's motion to remand him to custody. See Docket No. 185 at p. 2. The fact that Mr. Bankman-Fried has consented to a speech-restrictive Order under these circumstances does not change the fact that, but for the Order and the underlying threat of remand, he would remain willing to speak to the press in general and to the filmmakers in particular. The filmmakers therefore have standing to challenge the Order.

**The Order Prevents Communication With The Filmmakers Even Though The Rationale Behind The Order Does Not Apply To Them**

The government initially sought the entry of a gag order "because of a substantial likelihood that the defendant's extrajudicial comments will undermine a fair trial by tainting the jury pool and chilling the testimony of prospective trial witnesses." Docket No. 176 at p. 3. The Court ultimately entered the Temporary Order preventing the parties, their attorneys, and their agents from discussing with the media "anything about the case," with certain limited exceptions such as assertions of innocence. Docket No. 180. Notably, the Court struck from the Temporary Order the government's language limiting the prohibition to speech about the case "which could interfere with a fair trial." Id.

The net result is that the parties are now barred from speaking with the filmmakers about the case, even though doing so could not possibly interfere with a fair trial, taint the jury pool, or chill the testimony of prospective witnesses because the documentary will include reporting on the outcome of Mr. Bankman-Fried's criminal cases and therefore cannot and will not be completed and released until after the conclusion of those cases. The Temporary Order is thus harming the filmmakers' First Amendment right to receive information while providing no countervailing benefit. The harm to the filmmakers will become permanent if a further speech-restrictive order is entered. In addition, the entry of a further injunction will deprive the public of the ability to ultimately learn valuable information about FTX and Mr. Bankman-Fried (both positive and negative) and his alleged role in a massive and high-profile financial fraud, again with no countervailing benefit.

**The Temporary Order is Overbroad**

Even if the disclosure of information regarding the case to the filmmakers could somehow interfere with a fair trial – which it could not, for the reasons set forth above – the Temporary Order still prevents far more speech than necessary to achieve that goal for at least two reasons.

First, the removal of the phrase "which could interfere with a fair trial" from the Temporary Order undermines the very rationale for entering the Order in the first place. Rather than a targeted restriction on speech that could interfere with a fair trial, the Temporary Order now imposes a broad restriction on any speech at all about the case, regardless of the speech's potential impact. As the Times points out in its letter, the relevant provisions of Local Criminal Rule 23.1 specifically focus on the "fair trial" issue, and the relevant case law in the Second Circuit likewise emphasizes the centrality of the fair trial question to any analysis of whether a gag order is permissible.

Second, the documentary will cover matters that predate and have nothing to do with the events at issue in the criminal proceedings, but the Temporary Order is so broadly worded that Mr. Bankman-Fried and other willing speakers are likely to be deterred from discussing even those matters with the filmmakers for fear of violating the Order's amorphous prohibition on speech "intended to influence public opinion regarding the merits of the case." To the extent that "influenc[ing] public opinion" is the concern here, that concern can be addressed by less drastic

3

alternatives such as a thorough voir dire of prospective jurors. See In re Dow Jones, 842 F.2d at 610-11 ("before entering an injunction against speech [a judge must] explore whether other available remedies would effectively mitigate the prejudicial publicity . . . [s]ome combination of preventive measures short of a restraining order usually achieves this goal").

Thus, while Burstein and Propagate believe that no permanent speech restrictions at all should be ordered here, at the very least any continuing restraints on speech should be expressly limited to speech that could interfere with a fair trial and should specify that communications with the media about matters unrelated to the specific issues in the criminal cases are not prohibited.

### Remanding Mr. Bankman-Fried Would Also Raise First Amendment Concerns

Finally, while the question of whether to revoke Mr. Bankman-Fried's bail involves numerous legal and factual disputes as to which Burstein and Propagate take no position, we do wish to note that revoking a defendant's bail based on his communications with the media also raises serious First Amendment concerns. As Mr. Bankman-Fried points out in his submission to the Court (Docket No. 185 at pp. 14-16) and in the accompanying affidavit of Laurence Tribe (Docket No. 185-1 at par. 7-15), criminal defendants have a First Amendment right to speak to the press that goes beyond merely asserting their innocence. And, as previously noted, the corollary of a defendant's right to speak is the right of recipients such as the filmmakers to receive that speech. In re Dow Jones, supra; see also Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 756 (1976) ("where a [willing] speaker exists, as is the case here, the protection afforded [by the freedom of speech] is to the communication, to its source and to its recipients both.") Remanding Mr. Bankman-Fried as punishment for exercising his right to speak to the press would, in addition to the direct effect on Mr. Bankman-Fried, send a chilling message to other defendants who might wish to speak with members of the news media, including documentary filmmakers such as Burstein and Propagate. And, of course, remanding Mr. Bankman-Fried would have the practical effect of making it much more difficult for the filmmakers to speak with him, thereby harming their First Amendment right to receive information from a willing speaker.

### Conclusion

In summary, Burstein and Propagate respectfully request that the Temporary Order be dissolved and that no further speech-restrictive orders be entered. At the very least, if the Court intends to enter a further order, Burstein and Propagate respectfully request that any such order include the previously omitted "fair trial" language and make clear that the order does not apply to speech not directly related to the matters at issue in the criminal cases.

Respectfully submitted,

/s/ Matthew A. Leish

cc: Attorneys of Record (via email)