ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **<u>SUPERSEDING INDICTMENT</u>** |
| v. | S6 22 Cr. 673 (LAK) |
| SAMUEL BANKMAN-FRIED, a/k/a "SBF," | |
| Defendant. | |

## <u>Overview</u>

1.      From at least in or about 2019, up to and including in or about November 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, who founded and controlled the cryptocurrency exchange FTX.com ("FTX") and the quantitative cryptocurrency trading firm Alameda Research ("Alameda"), defrauded FTX customers, FTX investors, and lenders to Alameda.  Exploiting the trust of FTX customers, BANKMAN-FRIED misappropriated and embezzled FTX customer deposits, and used billions of dollars in stolen funds for a variety of purposes, including, among other things, to enrich himself; to support the operations of FTX; to fund speculative venture investments; to help fund over a hundred million dollars in campaign contributions to Democrats and Republicans to seek to influence cryptocurrency regulation; and to pay for Alameda's operating costs.  BANKMAN-FRIED also made, and conspired with others to make, false and fraudulent statements and representations to FTX's investors and Alameda's lenders, including by providing false financial information to those investors and lenders.

2.      In or about early November 2022, after SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, had embezzled and used billions of dollars in customer deposits, a substantial number of FTX customers began seeking to withdraw their funds from FTX.

BANKMAN-FRIED falsely reassured FTX customers about the safety of their funds in order to slow their withdrawals and retain their money, and conspired to and did make false statements to Alameda's lenders to prevent them from recalling millions of dollars in loans that Alameda owed.

### BANKMAN-FRIED's Fraud on FTX's Customers and Money Laundering

3.    SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, represented himself as the figurehead of a trustworthy and law-abiding segment of the cryptocurrency industry that was focused not only on profits, but also on investor and client protection.  Likewise, in public statements, including in testimony before the United States Senate, BANKMAN-FRIED represented that FTX had a focus on "consumer protection," that FTX had adopted "principles for ensuring investor protections on digital asset-platforms," including "avoiding or managing conflicts of interest," and that "as a general principle FTX segregates customer assets from its own assets across our platforms."  BANKMAN-FRIED further burnished his image by spending millions of dollars to promote FTX, and its sister company FTX.US, as safe places to invest in cryptocurrency, through celebrity endorsement deals, television advertisements, and other high-profile promotions.

4.    Despite the representations that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, made and caused to be made, FTX was not focused on investor or client protection, nor was it the legitimate business that BANKMAN-FRIED claimed.  Contrary to BANKMAN-FRIED's promises to FTX customers that the exchange would protect their interests and segregate their assets, BANKMAN-FRIED routinely misappropriated, commingled, and embezzled FTX customer deposits to use for his and Alameda's private spending.

5.    As part of this scheme, to promote the interests of FTX and Alameda and to lobby for favorable government regulation, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant,

used stolen customer funds in part to make campaign contributions, and made the contributions in the names of straw donors to conceal the source of the funds. As recently as late 2022, BANKMAN-FRIED boasted about FTX's profits and portrayed himself as a savior of the cryptocurrency industry, making venture investments and acquisitions purportedly to assist struggling industry participants, and making lavish federal campaign contributions and lobbying members of Congress and other high-level government officials to promote cryptocurrency regulation that would favor his business and personal interests. In fact, as BANKMAN-FRIED well knew, FTX's finances contained a multi-billion-dollar deficiency caused by his own misappropriation of customer funds from the exchange, and yet he continued through FTX's collapse in November 2022 to use misappropriated customer funds to pay for his investments, acquisitions, and campaign contributions.

6.      SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and, at his direction, others working at Alameda, misappropriated FTX customer funds through two primary means. First, at BANKMAN-FRIED's direction, FTX told customers to deposit funds into bank accounts controlled by Alameda. Alameda regularly took customer funds from those bank accounts, transferred the funds to other bank accounts under Alameda's control, and used or spent the funds. As a result of the spending of customers' deposits, FTX and Alameda had a multi-billion-dollar deficit of customer funds. Second, BANKMAN-FRIED and others secretly introduced special features into FTX's computer code, which permitted Alameda to spend and withdraw unlimited amounts of money from FTX. While BANKMAN-FRIED publicly and repeatedly asserted that Alameda did not have privileged access to FTX, BANKMAN-FRIED directed his co-conspirator, Gary Wang, to alter FTX's computer code to allow Alameda to accrue a negative balance on FTX's exchange. That modification to FTX's code, along with others implemented at BANKMAN-

FRIED's direction, made Alameda's account unlike those of other customers, and gave Alameda improper preferential access to the detriment of FTX customers.  While FTX typically would have automatically liquidated a client's account once its negative balance exceeded the amount of any posted collateral, net of fees, FTX permitted Alameda to maintain a negative balance, draw on a multi-billion-dollar line of credit, borrow funds from FTX without sufficient collateral, evade auto-liquidation, and withdraw funds from the exchange.  Over time, BANKMAN-FRIED directed that Alameda's credit limit be raised so high that, in practice, Alameda was permitted to draw on FTX accounts funded by customer assets on an unlimited basis—in amounts that exceeded FTX revenue and tapped into customer funds.

7.      SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, used the billions of dollars in misappropriated FTX customer deposits to finance exorbitant spending unrelated to the operation of the FTX platform.  Among other things, BANKMAN-FRIED used FTX customer funds to pay for his own personal expenses, real estate in The Bahamas, speculative venture investments, a wide-ranging political influence operation, and to repay Alameda's lenders.

8.      For instance, at the direction of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, FTX used customer funds to help purchase more than $200 million of real estate properties in The Bahamas.  BANKMAN-FRIED also used FTX customer funds to make billions of dollars of investments for his own interest and the interests of his businesses.  BANKMAN-FRIED took steps to conceal that these investments and expenditures were funded by transfers originating with Alameda, and therefore funded with FTX customer funds.  For example, BANKMAN-FRIED directed Caroline Ellison, a longtime associate and co-conspirator in the fraudulent scheme, to change the name of Alameda entities that were funding venture capital investments by FTX so that it would not be apparent that the money was coming from Alameda.

Similarly, BANKMAN-FRIED personally borrowed more than $1 billion from Alameda and oversaw similar borrowing by other FTX executives, which was then principally used to make investments in the name of BANKMAN-FRIED and his associates, rather than in the name of Alameda. This conduct served to conceal the close connection to Alameda, as well as the criminal source of some of the funds.

9.      As noted above, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, also used misappropriated customer money to help fund over $100 million in political contributions in advance of the 2022 election. At BANKMAN-FRIED's direction, and to conceal the source of the funds used for the contributions, some of the political contributions were made in the names of FTX executives, including Nishad Singh. To conceal the fact that the Alameda account containing FTX customer deposits was a source of the donations, BANKMAN-FRIED directed that money from the Alameda account be wired to these executives' personal bank accounts, and that these executives then make donations in their own names. By directing donations through Singh and another FTX executive, BANKMAN-FRIED was able to evade restrictions on certain types of political contributions, and thereby maximize FTX's political influence. He leveraged this influence, in turn, to lobby Congress and regulatory agencies to support legislation and regulation he believed would make it easier for FTX to continue to accept customer deposits and grow, which would, in turn, allow the misappropriation scheme to continue. BANKMAN-FRIED also used these connections with politicians and government officials to falsely burnish the public image of FTX as a legitimate exchange.

10.     In or about June 2022, the cryptocurrency markets experienced a downturn. As a result of the market downturn, Alameda faced demands for repayment from multiple third-party cryptocurrency lenders on substantial outstanding loans. Alameda lacked the funds to repay these

lenders. Rather than allow Alameda to default on its loans, which would have jeopardized the survival of both Alameda and FTX, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, authorized Alameda to draw down billions of dollars in customer assets from FTX and to use those assets to repay Alameda's lenders. The billions of dollars that BANKMAN-FRIED caused Alameda to draw from FTX was funded with misappropriated customer assets and greatly exceeded FTX's revenue, liquid capital, and available funds under FTX's peer-to-peer lending program. BANKMAN-FRIED was able to divert billions of dollars in FTX customer funds to Alameda without being detected because of the features that he had directed be built into FTX's code and software in order to benefit Alameda. As he authorized the misappropriation of these funds, BANKMAN-FRIED falsely assured the public that FTX was a safe platform that properly maintained customer assets.

11.    Even after SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, had misappropriated billions of dollars of FTX customer funds to repay Alameda's lenders, BANKMAN-FRIED continued to cause even greater amounts of FTX customer money to be used for discretionary investments, charitable contributions, and political donations, including by directing that Alameda continue to draw on its line of credit on FTX.

**BANKMAN-FRIED's Fraud on FTX's Investors and Alameda's Lenders**

12.    SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, made materially false and fraudulent statements and representations to FTX's investors, in connection with sales of FTX stock to investors from 2019 through 2022. When raising capital from investors in FTX, BANKMAN-FRIED deceived those investors about the exchange's relationship with Alameda, and about the safety of the exchange more generally. He deliberately concealed the fact that he controlled FTX and Alameda, and that he used each entity to prop the other up, notwithstanding

6

conflicts of interests and outright lies to the contrary. Additionally, in the course of audits of FTX's financial statements, BANKMAN-FRIED and those acting at his direction misled auditors and omitted material information about FTX customers, including Alameda, and about the commingling of customer assets with Alameda funds, as well as Alameda's enormous line of credit on the exchange. As a result of those false statements and omissions to the auditors, FTX received false and inaccurate audited financials, which were then used to falsely reassure investors that FTX had proper risk management controls and systems for storing customer assets.

13.     SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, also conspired with others to make and made false and fraudulent representations to Alameda's lenders in order to prevent them from recalling loans and to obtain new loans. Although BANKMAN-FRIED had caused Alameda to repay lenders using FTX customer funds in the summer of 2022, Alameda still had at least hundreds of millions of dollars in outstanding loans, and had to provide financial information to its creditors to keep those loans. BANKMAN-FRIED directed Ellison to devise a way to mislead those creditors about the money Alameda had "borrowed" from FTX, as well as about the substantial personal loans Alameda had made to FTX executives, and together, BANKMAN-FRIED and Ellison provided false and misleading financial statements to creditors. As a result of the false information, Alameda's lenders did not recall loans and issued new loans to Alameda.

## **BANKMAN-FRIED's Lies During FTX's Collapse**

14.     In or about November 2022, as a result of negative news on the Internet, FTX customers began withdrawing their funds from FTX. In an effort to tamp down the concerns about FTX and stop or slow withdrawals, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, posted a series of false and misleading tweets, including tweets representing that customer assets

7

were secure. Ultimately, however, FTX ceased allowing customers to make withdrawals, leaving those customers with billions of dollars in losses, and Alameda did not repay hundreds of millions of dollars to its lenders.

15.     On November 11, 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, resigned from FTX. FTX and approximately one hundred affiliated entities, including Alameda, filed for Chapter 11 bankruptcy protection.

## STATUTORY ALLEGATIONS

### COUNT ONE
### (Wire Fraud on Customers of FTX)

The Grand Jury charges:

16.     The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

17.     From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, BANKMAN-FRIED, along with others, engaged in a scheme to defraud customers of FTX by misappropriating those customers' deposits, and using those deposits to pay expenses and debts of Alameda to make investments, and for other purposes.

(Title 18, United States Code, Sections 1343 and 2.)

8

## COUNT TWO
### (Conspiracy to Commit Wire Fraud on Customers of FTX)

The Grand Jury further charges:

18.    The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

19.    From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

20.    It was a part and object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, BANKMAN-FRIED agreed with others to defraud customers of FTX by misappropriating those customers' deposits and using those deposits to pay expenses and debts of Alameda, and to make investments, and for other purposes.

(Title 18, United States Code, Section 1349.)

9

## COUNT THREE
### (Wire Fraud on Lenders to Alameda Research)

The Grand Jury further charges:

21.     The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

22.     From at least in or about June 2022, up to and including in or about November 2022, in the Southern District of New York and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, BANKMAN-FRIED, along with others, engaged in a scheme to defraud, including through the use of interstate wires, lenders to Alameda by providing false and misleading information to those lenders regarding Alameda's financial condition so that the lenders would not recall loans and would extend new loans.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR
### (Conspiracy to Commit Wire Fraud on Lenders to Alameda Research)

The Grand Jury further charges:

23.     The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

24.     From at least in or about June 2022, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a

"SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Sections 1343.

25.     It was a part and object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, BANKMAN-FRIED agreed with others to defraud, including through the use of interstate wires, lenders to Alameda by providing false and misleading information to those lenders regarding Alameda's financial condition so that the lenders would not recall loans and would extend new loans.

(Title 18, United States Code, Section 1349.)

## COUNT FIVE
### (Conspiracy to Commit Securities Fraud on Investors in FTX)

The Grand Jury further charges:

26.     The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

27.     From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and

Title 17, Code of Federal Regulations, Section 240.10b-5.

28.     It was a part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly, would and did, directly and indirectly, by the use of a means and instrumentality of interstate commerce, and of the mails and of a facility of a national securities exchange, use and employ, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, to wit, BANKMAN-FRIED agreed with others to engage in a scheme to defraud investors in FTX by providing false and misleading information to those investors regarding FTX's financial condition and the relationship between FTX and Alameda.

Overt Act

29.     In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere: SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, communicated with FTX investors in a manner that contained materially false information about FTX's financial condition.

(Title 18, United States Code, Section 371.)

## COUNT SIX
## (Conspiracy to Commit Commodities Fraud on Customers of FTX in Connection with Purchases and Sales of Cryptocurrency and Swaps)

The Grand Jury further charges:

30. The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

31. From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, commodities fraud, in violation of Title 7, United States Code, Sections 9(1) and 13(a)(5), and Title 17, Code of Federal Regulations, Section 180.1.

32. It was a part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly, would and did, directly and indirectly, use and employ, and attempt to use and employ, in connection with a swap, a contract of sale of a commodity in interstate commerce, and for future delivery on and subject to the rules of a registered entity, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 180.1, by: (a) using and employing, and attempting to use and employ, a manipulative device, scheme, and artifice to defraud; (b) making, and attempting to make, an untrue and misleading statement of a material fact and omitting to state a material fact necessary in order to make the statements made not untrue and misleading; and (c) engaging, and attempting to engage in an act, practice, and course of business, which operated and would operate as a fraud and deceit upon a person, in violation of Title 7, United States Code, Sections 9(1) and 13(a)(5), to wit, BANKMAN-FRIED agreed with

others to defraud customers of FTX trading or intending to trade cryptocurrencies, futures, options, swaps, and derivatives by misappropriating those customers' deposits and using those deposits to pay expenses and debts of Alameda, and to make investments, and for other purposes.

## Overt Act

33.     In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere: in or about June 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others misappropriated FTX customer deposits in order to, among other things, satisfy loan obligations owed by Alameda Research.

(Title 18, United States Code, Section 371.)

## COUNT SEVEN
## (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

34.     The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

35.     From at least in or about 2020, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1957(a).

36.     It was a part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, in an offense in and affecting interstate and foreign commerce, knowing that the property involved in a financial transaction, to wit, one or more monetary transfers, represented the proceeds of some form of unlawful activity,

14

would and did conduct and attempt to conduct such a financial transaction, which in fact involved the proceeds of specified unlawful activity, to wit, the wire fraud alleged in Count One of this Indictment, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

37.     It was a further part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, within the United States, would and did knowingly engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and that was derived from specified unlawful activity, to wit, the wire fraud alleged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATION

38.     As a result of committing the offenses alleged in Counts One, Two, Three and Four of this Indictment, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses, and the following specific property:

a.     55,273,469 shares of the stock of Robinhood Markets Inc. from Account Number 499-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," held in the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023;

b.     $20,746,713.67 in United States currency formerly on deposit in Account Numbers 499-30500 and 429-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," held in

the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023;

        c.    $49,999,500 in United States currency formerly on deposit in Account Number 9000-1924-02685 at Farmington State Bank d/b/a "Moonstone Bank" held in the name of "FTX Digital Markets," seized by the Government on or about January 4, 2023;

        d.    $5,322,385.32 in United States currency formerly held on deposit in Account Number 0000005090042549 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

        e.    $719,359.65 in United States currency formerly on deposit in Account Number 0000005090042556 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

        f.    $1,071.83 in United States currency formerly on deposit in Account Number 0000005090042564 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

        g.    $94,570,490.63 in United States currency formerly on deposit in Account Number 0000005091010037 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 19, 2023;

        h.    Any and all monies, assets, and funds contained in Binance account number 94086678;

        i.    Any and all monies, assets, and funds contained in Binance.us account number 35000066; and

        j.    Any and all monies, assets, and funds contained in Binance.us account number 35155204.

        39.    As a result of committing the offenses alleged in Count Five of this Indictment, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

40.     As a result of committing the offense alleged in Count Seven of this Indictment,

SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, shall forfeit to the United States,

pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal,

involved in said offense, or any property traceable to such property, including but not limited to a

sum of money in United States currency representing the amount of property involved in said

offense, and the following specific property:

a.     55,273,469 shares of the stock of Robinhood Markets Inc. from Account Number 499-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," held in the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023;

b.     $20,746,713.67 in United States currency formerly on deposit in Account Numbers 499-30500 and 429-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," held in the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023;

c.     $49,999,500 in United States currency formerly on deposit in Account Number 9000-1924-02685 at Farmington State Bank d/b/a "Moonstone Bank" held in the name of "FTX Digital Markets," seized by the Government on or about January 4, 2023;

d.     $5,322,385.32 in United States currency formerly held on deposit in Account Number 0000005090042549 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

e.     $719,359.65 in United States currency formerly on deposit in Account Number 0000005090042556 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

f.     $1,071.83 in United States currency formerly on deposit in Account Number 0000005090042564 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

g.     $94,570,490.63 in United States currency formerly on deposit in Account Number 0000005091010037 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 19, 2023;

h.     Any and all monies, assets, and funds contained in Binance account number 94086678;

i.     Any and all monies, assets, and funds contained in Binance.us account number 35000066; and

j.      Any and all monies, assets, and funds contained in Binance.us account number 35155204.

41.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third person; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

8/14/2023

DAMIAN WILLIAMS
United States Attorney