UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
UNITED STATES OF AMERICA                     :
:
          - v. -                             :          S6 22 Cr. 673 (LAK)
:
SAMUEL BANKMAN-FRIED,                         :
:
               Defendant.                    :
:
------------------------------------------------------------X

THE GOVERNMENT'S REQUESTS TO CHARGE

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Nicolas Roos
Danielle Kudla
Samuel Raymond
Thane Rehn
Danielle R. Sassoon
Assistant United States Attorneys
          -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                  :

UNITED STATES OF AMERICA      :

                                  :

      - v. -                      :                S6 22 Cr. 673 (LAK)

                                  :

SAMUEL BANKMAN-FRIED,      :

                                  :

              Defendant.       :

                                  :

------------------------------------------------------------X

<u>REQUESTS TO CHARGE</u>

       Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the Government respectfully requests that the Court include the following in its charge to the jury.

## TABLE OF CONTENTS

REQUEST NO. 1:    General Requests.................................................................................................1

REQUEST NO. 2:    Summary of the Indictment................................................................................2

REQUEST NO. 3:    Multiple Counts ...................................................................................................3

REQUEST NO. 4:    Conspiracy and Substantive Crimes Explained...................................................4

REQUEST NO. 5:    Counts 1 and 3 – Wire Fraud – General Instruction............................................6

REQUEST NO. 6:    Counts 1 and 3 – Wire Fraud – Elements...........................................................7

REQUEST NO. 7:    Counts 1 and 3  – Wire Fraud – First Element – Existence of a Scheme ............8

REQUEST NO. 8:    Counts 1 and 3 – Wire Fraud – Second Element – Intent ..................................12

REQUEST NO. 9:    Counts 1 and 3 – Wire Fraud – Third Element – Interstate Wire........................16

REQUEST NO. 10:    Counts 1 and 3 – Wire Fraud – Willful Causation.............................................18

REQUEST NO. 11:    Counts 1 and 3 – Wire Fraud – Aiding and Abetting.........................................19

REQUEST NO. 12:    Counts 2 and 4 – Conspiracy to Commit Wire Fraud........................................22

REQUEST NO. 13:    Counts 2 and 4 – Conspiracy to Commit Wire Fraud – Elements .....................23

REQUEST NO. 14:    Counts 2 and 4 – Conspiracy to Commit Wire Fraud – First Element - Agreement...........................24

REQUEST NO. 15:    Counts 2 and 4 – Conspiracy to Commit Wire Fraud – Second Element – Membership ..................27

REQUEST NO. 16:    Count 5 – Conspiracy to Commit Securities Fraud – General Instruction and Elements ...................30

REQUEST NO. 17:    Count 5 – Conspiracy to Commit Securities Fraud – Existence of Agreement ..................................31

REQUEST NO. 18:    Count 5 – Conspiracy to Commit Securities Fraud –  Object Elements ...........32

REQUEST NO. 19:    Count 5 – Conspiracy to Commit Securities Fraud –  Object – First Element...................................33

REQUEST NO. 20:    Count 5 – Conspiracy to Commit Securities Fraud –  Object – Second Element .....................36

REQUEST NO. 21:    Count 5 – Conspiracy to Commit Securities Fraud –  Object – Third Element ..................................37

REQUEST NO. 22:    Count 5 – Conspiracy to Commit Securities Fraud – Membership.....................38

REQUEST NO. 23:    Count 5 – Conspiracy to Commit Securities Fraud – Overt Act .........................39

REQUEST NO. 24:    Count 6 – Conspiracy to Commit Commodities Fraud – Elements ....................41

REQUEST NO. 25:    Count 6 – Conspiracy to Commit Commodities Fraud – Existence of Agreement...........................42

REQUEST NO. 26:    Count 6 – Conspiracy to Commit Commodities Fraud – Object Elements..........................................43

REQUEST NO. 27:    Count 6 – Conspiracy to Commit Commodities Fraud – Object - First Element................................44

REQUEST NO. 28:    Count 6 – Conspiracy to Commit Commodities Fraud – Object – Second Element...........................46

REQUEST NO. 29:    Count 6 – Conspiracy to Commit Commodities Fraud – Object – Third Element ............................48

REQUEST NO. 30:    Count 6 – Conspiracy to Commit Commodities Fraud – Membership..................49

REQUEST NO. 31:    Count 6 – Conspiracy to Commit Commodities Fraud – Overt Act .....................50

REQUEST NO. 32:    Count 7 – Conspiracy to Commit Money Laundering – General Instruction ......51

REQUEST NO. 33:    Count 7 – Conspiracy to Commit Money Laundering – Elements.......................52

REQUEST NO. 34:    Count 7 – Conspiracy to Commit Money Laundering – First Element.................53

REQUEST NO. 35:    Count 7 – Conspiracy to Commit Money Laundering – Concealment Elements ..................................54

REQUEST NO. 36:    Count 7 – Conspiracy to Commit Money Laundering – Concealment – First Element.............................55

REQUEST NO. 37:    Count 7 – Conspiracy to Commit Money Laundering – Concealment – Second Element ................57

REQUEST NO. 38:   Count 7 – Conspiracy to Commit Money Laundering – Concealment – Third Element ..................... 58

REQUEST NO. 39:   Count 7 – Conspiracy to Commit Money Laundering – Concealment – Fourth Element ................. 59

REQUEST NO. 40:   Count 7 – Conspiracy to Commit Money Laundering – $10,000 Transaction Elements .................... 62

REQUEST NO. 41:   Count 7 – Conspiracy to Commit Money Laundering – $10,000 Transaction – First Element ........... 63

REQUEST NO. 42:   Count 7 – Conspiracy to Commit Money Laundering – $10,000 Transaction – Second Element ....... 64

REQUEST NO. 43:   Count 7 – Conspiracy to Commit Money Laundering – $10,000 Transaction – Third Element ......... 65

REQUEST NO. 44:   Count 7 – Conspiracy to Commit Money Laundering – Membership ................................................. 66

REQUEST NO. 45:   Conscious Avoidance ............................................................................................................................ 67

REQUEST NO. 46:   Coconspirator Statements .................................................................................................................... 70

REQUEST NO. 47:   Presence of Counsel .............................................................................................................................. 71

REQUEST NO. 48:   Venue ..................................................................................................................................................... 72

REQUEST NO. 49:   False Exculpatory Statements .............................................................................................................. 74

REQUEST NO. 50:   Destruction of Evidence ....................................................................................................................... 75

REQUEST NO. 51:   Other Acts Evidence ............................................................................................................................. 76

REQUEST NO. 52:   Variance in Dates .................................................................................................................................. 77

REQUEST NO. 53:   Cooperating Witnesses ......................................................................................................................... 78

REQUEST NO. 54:   Non-Prosecution Agreement ................................................................................................................ 81

REQUEST NO. 55:   Immunized Witnesses ........................................................................................................................... 82

REQUEST NO. 56:   Expert Witness ...................................................................................................................................... 83

REQUEST NO. 57:   Law Enforcement Witnesses ................................................................................................................ 84

REQUEST NO. 58:   Preparation of Witnesses ...................................................................................................................... 85

REQUEST NO. 59:   Uncalled Witnesses – Equally Available To Both Sides ...................................................................... 86

REQUEST NO. 60:   Other Individuals Not on Trial ............................................................................................................ 87

REQUEST NO. 61:   Defendant's Testimony ......................................................................................................................... 88

REQUEST NO. 62:   Defendant's Right Not to Testify ......................................................................................................... 89

REQUEST NO. 63:   Particular Investigative Techniques Not Required ............................................................................... 90

REQUEST NO. 64:   Use of Evidence Obtained Pursuant to Searches ................................................................................ 91

REQUEST NO. 65:   Use of Charts and Summaries .............................................................................................................. 92

REQUEST NO. 66:   Stipulations ........................................................................................................................................... 93

REQUEST NO. 67:   Transcripts ............................................................................................................................................. 94

REQUEST NO. 68:   Redactions ............................................................................................................................................. 95

REQUEST NO. 69:   Concluding Remarks ............................................................................................................................. 96

REQUEST NO. 1:   General Requests

The Government respectfully requests that the Court give its usual instructions to the jury on the following matters:

a.  Function of Court and Jury.

b.  Indictment Not Evidence.

c.  Statements of Court and Counsel Not Evidence.

d.  Rulings on Evidence and Objections.

e.  Burden of Proof and Presumption of Innocence.

f.  Reasonable Doubt.

g.  Government Treated Like Any Other Party.

h.  Definitions, Explanations, and Example of Direct and Circumstantial Evidence.

i.  Inferences.

j.  Credibility of Witnesses.

k.  Jury's Recollection Controls.

l.  Right to See Exhibits and Have Testimony Read During Deliberations.

m.  Sympathy: Oath of Jurors.

n.  Punishment is Not to Be Considered by the Jury.

o.  Verdict of Guilt or Innocence Must Be Unanimous.

1

<u>REQUEST NO. 2:</u>   <u>Summary of the Indictment</u>

The defendant, SAMUEL BANKMAN-FRIED, has been charged in what is called an Indictment.  An Indictment is simply an accusation.  It is not evidence.  The Indictment contains seven counts, or charges.  In a few moments, I will instruct you on each of these charges in more detail.  At the outset, however, let me instruct you that in your deliberations and in reaching your verdict, you must consider each count separately.  You must return a separate verdict as to each count.

Count One charges the defendant with committing wire fraud on customers of FTX by misappropriating those customers' deposits.  Count Two charges the defendant with conspiring to commit wire fraud on customers of FTX by misappropriating those customers' deposits.  Count Three charges the defendant with committing wire fraud on lenders to Alameda Research by providing false and misleading information to those lenders.  Count Four charges the defendant with conspiring to commit wire fraud on lenders to Alameda Research by providing false and misleading information to those lenders.  Count Five charges the defendant with conspiring to commit securities fraud by providing false and misleading information to FTX's investors.  Count Six charges the defendant with conspiring to commit fraud on customers of FTX in connection with the purchase and sale of cryptocurrency and cryptocurrency swaps by misappropriating those customers' deposits. Count Seven charges the defendant with conspiring to commit money laundering in order to conceal and disguise the nature, location, source, ownership, and control of proceeds of the wire fraud on FTX's customers.

<u>REQUEST NO. 3:</u>   <u>Multiple Counts</u>

Each count charges a different crime.  You must consider each count of the Indictment separately, and you must return a separate verdict as to each Count.  The case on each count stands or falls upon the proof or lack of proof with respect to that count.  Except in one respect that I will explain to you in a few minutes when I discuss Count Seven, your verdict on one count should not control your decision as to any other count.  I am now going to discuss the counts of the Indictment.

Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 3-8.

3

<u>REQUEST NO. 4:</u>   <u>Conspiracy and Substantive Crimes Explained</u>

As I have told you, Counts Two, Four, Five, Six, and Seven of the Indictment each charge the defendant with the crime of conspiracy.  The other counts—Counts One and Three—charge what we call substantive crimes.  The crime of conspiracy is different from a substantive crime. A conspiracy charge, generally speaking, alleges that two or more persons agreed together to accomplish some unlawful objective. The focus of a conspiracy count, therefore, is on whether there was an unlawful agreement. A substantive count, on the other hand, charges a defendant with the actual commission or attempted commission, or with causing someone else to engage in certain actions necessary for the actual commission, of an offense. A substantive offense therefore can be committed by a single person. It need not involve any agreement with anyone else.

A conspiracy to commit a crime is an entirely separate and different offense from a substantive crime, the commission of which may be an objective of a conspiracy. And since the essence of the crime of conspiracy is an agreement or an understanding to commit a crime, it does not matter if the crime that was the objective of the conspiracy was ever actually committed. In other words, if a conspiracy exists and certain other requirements are met, the conspiracy is punishable as a crime even if its purpose is not established or accomplished. Consequently, in a conspiracy charge, there is no need to prove that the crime or crimes that were the objective or objectives of the conspiracy actually were committed. By contrast, conviction on a substantive count requires proof that the crime charged actually was committed or attempted, but it does not require proof of an agreement.

With respect to the substantive counts, you should be aware also that there are three alternative theories on the basis of which you may find a defendant guilty. While I am going to explain these three theories in more detail, I want to take a very brief moment to outline them

briefly. The first theory is that the defendant committed a substantive crime charged in the Indictment. The second theory is that the defendant, with criminal intent, willfully caused someone else to engage in certain actions that resulted in the commission of a substantive crime charged in the indictment. I am going to refer to both of those two theories that I just outlined for you as involving a claim that a defendant is guilty of a crime as a principal. The third theory is that someone other than the defendant committed a crime charged in the indictment and the defendant aided and abetted the commission of that crime. I will refer to that theory as a claim that the defendant is guilty of a crime as an aider and abettor.

Now, for the sake of convenience, in organizing my instructions to you, I'm going to instruct you first with respect to the two counts that charge substantive crimes, Counts One and Three. I will instruct you initially on the first two theories of liability, namely, that the defendant is guilty as a principal of the substantive crimes charged in the Indictment either because he committed the substantive crimes or because he, with criminal intent, caused someone else to commit the substantive crimes. I then will instruct you on the third theory of liability—that is, the alternative theory that the defendant is guilty as an aider and abettor. Finally, I will instruct you on the conspiracy counts.

Adapted from the charges of the Honorable Lewis A. Kaplan in
United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018)

<u>REQUEST NO. 5:</u>   <u>Counts 1 and 3 – Wire Fraud – General Instruction</u>

As I said, Counts One and Three charge SAMUEL BANKMAN-FRIED with committing wire fraud.  Count One charges that from in or about 2019 up to and including in or about November 2022, the defendant devised and participated in a scheme to defraud customers of FTX by misappropriating those customers' deposits.  Count Three charges that from in or about June 2022, up to and including in or about November 2022, the defendant devised and participated in a scheme to defraud lenders to Alameda Research by providing false and misleading information to those lenders about Alameda Research's financial condition.

Adapted from the charges of the Honorable Lewis A. Kaplan in
<u>United States</u> v. <u>Gatto</u>, 17 Cr. 686 (Oct. 1, 2018)

REQUEST NO. 6:   Counts 1 and 3 – Wire Fraud – Elements

To sustain its burden of proof with respect to the offense charged in Counts One and Three, the Government must prove beyond a doubt the following three elements:

First, that there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises.

Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud.

Third, that in execution of that scheme, the defendant used or caused the use of interstate wires.

I will discuss each in turn.

> Adapted from the charges of the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018) and United States v. Blaszczak, 17 Cr. 357 (Apr. 27, 2018); See Sand, Modern Federal Jury Instructions, Instr. 44-3.

> Willfulness is not an element of wire fraud, but for the reasons outlined below, the Government does not object to instructing the jury that willfully means to act voluntarily and with a wrongful purpose.

<u>REQUEST NO. 7:</u>   <u>Counts 1 and 3  – Wire Fraud – First Element – Existence of a Scheme</u>

The first element the Government must prove beyond a reasonable doubt is that there was a scheme or artifice to defraud the victims of money or property by false or fraudulent pretenses, representations, or promises.

A scheme or artifice to defraud is a plan, device, or course of action to obtain money or property by means of false or fraudulent statements, representations, promises, or pretenses.

A statement or representation is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.  A statement may also be false if it contains half-truths, conceals material facts, or is ambiguous or incomplete in a manner that makes what is said, or represented, misleading or deceptive. The deception need not be based upon spoken or written words alone. The arrangement of the words, the circumstances in which they are used, or the defendant's conduct may convey the false and deceptive appearance. If there is deception, the manner in which it is accomplished does not matter.

Statements, representations, promises, or pretenses is fraudulent if it was made falsely and with intent to deceive.

As is pertinent here with respect to the alleged wire fraud on customers of FTX, a "scheme to defraud" also includes a scheme to fraudulently embezzle or fraudulently misappropriate property belonging to another.  The words "embezzle" and "misappropriate" mean the fraudulent appropriation to one's own use of money or property that was entrusted to one's care by someone else. Money or property is entrusted to a defendant's care when the business he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust. Where the scheme to defraud involves fraudulently embezzling or misappropriating money

8

or property, as it is for Count One, the Government is not required to show that the defendant made a misrepresentation or false statement.

A scheme to defraud need not be shown by direct evidence, but may be established by all the circumstances and facts in the case.

The false or fraudulent statement, representation, promise, or pretense must relate to a material fact or matter. A material fact is one that would be expected to influence, or that is capable of influencing, the decision of a reasonable person. The same principle applies to fraudulent misappropriation, meaning that misappropriation of property is material if the disclosure of the misappropriation would be expected to influence, or is capable of influencing, the decision of a reasonable person.

You have heard evidence that after customers and lenders transferred money to FTX and Alameda Research, respectively, the defendant engaged in conduct, made tweets and other public statements, and provided financial information, which the Government claims were false or misleading. It is not necessary for the Government to prove that a false or fraudulent representation or statement was made prior to a customer's or lender's decision to part with money or property. Rather, if after having obtained money or property, the defendant devises or participates in a fraudulent scheme to deprive the alleged victim of that money or property by keeping the money or property through making a subsequent false or fraudulent representation as to a material fact, that is sufficient to establish the existence of a scheme to defraud. It is not necessary for the Government to prove that the scheme to defraud actually succeeded, that any particular person actually relied upon a statement or representation, or that any victim actually suffered damages as a consequence of any false or fraudulent representations, promises, or pretenses. Nor do you need to find that the defendant profited from the fraud or realized any gain. You must concentrate on

9

whether there was such a scheme, not the consequences of the scheme, although proof concerning accomplishment of the goals of the scheme may be persuasive evidence of the existence of the scheme itself. In determining whether a scheme to defraud existed, it is irrelevant whether a victim might have discovered the fraud if he, she, or it had looked more closely or probed more extensively. A victim's negligence or gullibility in failing to discover a fraudulent scheme is not a defense to wire fraud.

If you find the Government has sustained its burden of proof that a scheme to defraud, as charged, did exist, you should next consider the second element.

> Adapted from the charges of the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018) and United States v. Blaszczak, 17 Cr. 357 (Apr. 27, 2018), and the charge of the Honorable Jesse M. Furman in United States v. Avenatti, 19 Cr. 374 (Feb. 1, 2022); see Sand, Modern Federal Jury Instructions, Instr. 44-4.

> While fraud "in most circumstances requires a false representation of a material fact, there is no such requirement under the mail and wire fraud statutes" when the scheme alleges "embezzlement by a fiduciary." Spira v. Nick, 876 F. Supp. 553, 558 (S.D.N.Y. 1995) (Kaplan, J.) (citing United States v. Altman, 48 F.3d 96, 101 (2d Cir. 1995)); see Altman, 48 F.3d at 101 ("By embezzling the estate funds with which he was entrusted as a fiduciary, Altman effectuated a scheme to defraud within the meaning of the mail fraud statute."); Carpenter v. United States, 484 U.S. 19, 27 (1987) ("The concept of 'fraud' includes the act of embezzlement, which is 'the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another.'" (quoting Grin v. Shine, 187 U.S. 181, 189 (1902))); United States v. Chestman, 947 F.2d 551, 568-69 (2d Cir. 1991) (defining a "fiduciary or similar relationship of trust and confidence").

> "In general, a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." Neder v. United States, 527 U.S. 1, 16 (1999) (cleaned up). However, the "common-law requirements of 'justifiable reliance' and 'damages' … plainly have no place in the federal fraud statutes." Id. at 24-25.

The proposed instruction about retaining money or property is adapted from the charge of the Honorable Denis R. Hurley in <u>United States</u> v. <u>Schneider</u>, 02 Cr. 128, 2002 WL 34348617 (Oct. 23, 2002). <u>See also United States</u> v. <u>Gole</u>, 158 F.3d 166, 168 (2d Cir. 1998) (scheme to defraud where the defendant "intentionally misrepresented his income in order to retain pension overpayments").

<u>REQUEST NO. 8:</u>   <u>Counts 1 and 3 – Wire Fraud – Second Element – Intent</u>

The second element that the Government must prove beyond a reasonable doubt is that the defendant participated in the scheme to defraud knowingly, willfully and with specific intent to defraud.

To act "knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

To act "willfully" means to act voluntarily and with a wrongful purpose.

"Intent to defraud" means to act knowingly with the specific intent to deceive, for the purpose of causing some financial or property loss to another. The Government need not prove that any intended victim was actually harmed, including actually financially harmed. Thus, even if the defendant believed that the victims would not ultimately lose money, or that they would ultimately not suffer financial loss, that is no defense if the defendant intended immediate or temporary financial or property loss to another. Where some financial loss is contemplated, even temporarily, by the defendant, the fact that the defendant believes the victim will ultimately suffer no loss is no excuse to the crime. Additionally, the Government need not prove that the intent to defraud was the only intent or even primary intent of the defendant. A defendant may have the required intent to defraud even if the defendant was motivated by other lawful purposes as well.

To participate in a scheme means to engage in it by taking some affirmative step to help it succeed. Merely associating with people who are participating in a scheme is not participation. It is not necessary that the defendant originated the scheme to defraud. It is sufficient if you find that a scheme to defraud existed, even if someone else originated it, and that the defendant, while aware of the scheme's existence, knowingly and willfully participated in it with intent to defraud. Nor is it required that the defendant participated in or had knowledge of all of the operations of the

12

scheme. The responsibility of the defendant is not governed by the extent of his participation.  It is not necessary that the defendant have participated in the alleged scheme from the beginning. A person who comes in at a later point with knowledge of the scheme's general operation, although not necessarily all of its details, and who knowingly and willfully acts in a way to further its goals, becomes a participant in the scheme and is legally responsible for all that may have been done in the past in furtherance of the criminal objective and all that is done subsequently.  Even if the defendant participated in the scheme to a degree less than others, he nevertheless is equally guilty as long as the defendant knowingly and willfully participated in the scheme to defraud with knowledge of its general scope and purpose and with specific intent to defraud.

Because an essential element of wire fraud is the intent to defraud, it follows that good faith on the part of a defendant is a complete defense to the charge of wire fraud.  An honest belief in the truth of the representations made or caused to be made by a defendant is a complete defense, however inaccurate the statements may turn out to be. Similarly, if the defendant in good faith believed that he was entitled to take the money or property from the victim, even though that belief was mistaken, then you must find him not guilty even if others were injured by the defendant's conduct.  The defendant has no burden to establish good faith.  The burden is on the government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt. However, in considering whether or not the defendant acted in good faith, you are instructed that an honest belief on the part of the defendant, if such a belief existed, that ultimately everything would work out does not necessarily mean that the defendant acted in good faith. If the defendant knowingly and willfully participated in the scheme with the intent to deceive for the purpose of depriving a victim of money or property, even if only for a period of time, then no amount of

honest belief on the part of the defendant that customers or lenders ultimately would be benefited will excuse false representations that a defendant made.

Direct proof of knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent.  Such direct proof is not required.  Instead, the ultimate facts of knowledge and intent, though subjective, may be established by circumstantial evidence, based upon a person's words, his conduct, his acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them. You may also infer, but are not required to infer, that people intend the natural and probable consequences of their actions. Accordingly, when the necessary result of a scheme is to injure others, fraudulent intent may be inferred from the scheme itself. As I instructed you earlier, circumstantial evidence, if believed, is of no less value than direct evidence.

> Adapted from the charges of the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018).
>
> The applicable *mens rea* for wire fraud is "specific intent to harm or defraud the victims of the scheme."  United States v. Rybicki, 354 F.3d 124, 150 (2d Cir. 2003). The word "willfully" appears nowhere in the text of the wire fraud statute. See United States v. Gole, 21 F. Supp. 2d 161, 167-68 (E.D.N.Y. 1997) ("'Willfully' appears nowhere in the mail fraud statute, and the Second Circuit has expressly held that the only scienter requirement for a violation of § 1341 is that the acts proscribed be carried out 'knowingly.'"); United States v. Blagojevich, 794 F.3d 729, 739 (7th Cir. 2015) ("The wire-fraud statute requires a specific intent to defraud but not willfulness or any other proxy for knowledge of the law."); United States v. Dockray, 943 F.2d 152, 156 (1st Cir. 1991) (holding that "willfulness" is "not synonymous with the intent to defraud requirement in the mail and wire fraud statutes"); United States v. DiRoberto, 686 F. App'x 458, 461 (9th Cir. 2017) ("The mail and wire fraud statutes do not require proof of willfulness."). While the Government does not object to the inclusion of the word in the Court's charge, the definition of willfulness given to the jury should

14

be: "To act willfully means to act voluntarily and with a wrongful purpose." See United States v. Avenatti, No. 19 Cr. 374 (JMF) (Jan. 24, 2022) (Tr. at 1738); United States v. Middendorf, No. 18 Cr. 36 (JPO) (Feb. 11, 2019) (Tr. at 3459).  The definition of willfulness used in some cases, which defines the term as "to act with knowledge that one's conduct is unlawful and with intent to do something the law forbids" or "with the bad purpose to disobey or disregard the law" is inappropriate for a fraud prosecution. See United States v. Porcelli, 865 F.2d 1352, 1358 (2d Cir. 1989) (rejecting due process claim that defendant "had no notice that his conduct was illegal" because "[t]he specific intent required under the mail fraud statute is . . . not the intent to violate a statute"); United States v. Weiss, 930 F.2d 185 (2d Cir. 1991) (in mail fraud prosecution, affirming preclusion of defendant's testimony regarding whether he "intended to commit a crime" because it was "not relevant" and "not dispositive of any element of the charges").

See United States v. Technodyne LLC, 753 F.3d 368, 385 (2d Cir. 2013) ("It is commonplace that the law recognizes that there may be multiple motives for human behavior; thus, a specific intent need not be the actor's sole, or even primary, purpose.").

See United States v. Jabar, 19 F.4th 66, 77 (2d Cir. 2021) ("Proof of actual injury to the victim is not required . . . .").

See United States v. Calderon, 944 F.3d 72, 90 (2d Cir. 2019) ("A 'no ultimate harm' instruction advises the jury that where some immediate loss to the victim is contemplated by a defendant, the fact that the defendant believes (rightly or wrongly) that he will ultimately be able to work things out so that the victim suffers no loss is no excuse for the real and immediate loss contemplated to result from defendant's fraudulent conduct.").

<u>REQUEST NO. 9:</u>   <u>Counts 1 and 3 – Wire Fraud – Third Element – Interstate Wire</u>

The third and final element that the Government must establish beyond a reasonable doubt is that one or more interstate or foreign wires were used in furtherance of the scheme to defraud. An "interstate wire" means a wire that passes between two or more states. A "foreign" wire means a wire that travels internationally. Examples of wires include telephone calls and messages, communications over the internet, commercials on television, and financial wires between bank accounts.

A wire communication need not itself be fraudulent.  Indeed, it may be completely innocent, as long as it was made in furtherance of the fraudulent scheme.  To be in furtherance of the scheme, the wire communication must further or assist in some way in carrying out the scheme to defraud.  A wire communication can also include a communication made after a victim's funds were obtained if the communication was designed to lull the victim into a false sense of security, to postpone his or her complaint to the authorities, or to keep the money obtained from the scheme.

It is not necessary for the defendant to have been directly or personally involved in a wire communication, as long as the wire was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating. In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be used by others. The wire communication requirement can be satisfied even if the wire communication was done by the person being defrauded or some other innocent party. When one does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires reasonably can be foreseen, even though not actually intended, then he causes the wires to be used. Thus, there is no requirement that the defendant specifically authorize others to make a communication by wire.

Finally, if you find that a wire communication was reasonably foreseeable and that the interstate or foreign wire communication charged in the indictment took place, then this element is satisfied even if it was not foreseeable that the wire communication would cross state lines.

> Adapted from the charges of the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018); see Sand, Modern Federal Jury Instructions, Instr. 44-5.

> The lulling instruction is adapted from the charge of the Honorable Judge John G. Koeltl in United States v. Dunseath, 98 Cr. 493 (Apr. 14, 1999), and from United States v. Jergensen, 797 F. App'x 4, 6 (2d Cir. 2019), which affirmed the use of the lulling instruction given by the district court.

17

REQUEST NO. 10:  Counts 1 and 3 – Wire Fraud – Willful Causation

Now, as I instructed you earlier, the Government's second theory of liability on the substantive wire fraud counts, Counts One and Three, is that the defendant is guilty of the substantive crimes charged in those counts as a principal because he possessed the requisite criminal intent and willfully caused someone else to engage in actions necessary to commit the crimes. So I am now going to take a minute to discuss what it means for a defendant to be guilty as a principal through willful causation in the context of this case.

It is the law of the United States "that whoever willfully causes an act to be done which, if directly performed by that person, would be an offense against the United States, is punishable as a principal." So what does the term "willfully caused" mean? It does not mean that the defendant must physically have committed the crime or supervised or participated in the actual criminal conduct charged in the Indictment. Rather, anyone who causes the doing of an act which if done by him directly would render him guilty of an offense against the United States is guilty as a principal.  Accordingly, one who intentionally causes someone else to make false or fraudulent statements or representations, or who intentionally causes someone else to fraudulently embezzle or fraudulently misappropriate property belonging to another is guilty as a principal if the Government proves that the person who causes the making of that false or fraudulent representation, or who causes the fraudulent embezzlement or misappropriation, acted knowingly, willfully, and with the specific intent to defraud and satisfies the other elements of wire fraud that I have described to you. This is so even if the individual that was caused to make the false statement, or embezzled or misappropriated property, had no criminal intent.

Adapted from the charges of the Honorable Lewis A. Kaplan in
United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018).

18

REQUEST NO. 11:  Counts 1 and 3 – Wire Fraud – Aiding and Abetting

I will now explain the third theory of liability on the substantive wire fraud counts, Counts One and Three, the aiding and abetting theory, in greater detail. It is unlawful for a person to aid, abet, counsel, command, induce, or procure someone else to commit an offense. A person who does that is just as guilty of the offense as someone who actually commits it. Accordingly, for any substantive count in the Indictment, you may find the defendant guilty on that count if you find that the Government has proved beyond a reasonable doubt that another person actually committed the crime and that the defendant aided, abetted, counseled, commanded, induced, or procured the commission of that crime.

In order to convict the defendant as an aider and abettor, the Government must prove beyond a reasonable doubt two elements. First, it must prove that a person other than the defendant, and other than a person the defendant willfully caused to take actions necessary for the commission of the crime, as I have described that concept to you previously, committed the crime charged. Obviously, no one can be convicted of aiding or abetting the criminal acts of someone else if no crime was committed by the other person in the first place. Accordingly, if the Government has not proved beyond a reasonable doubt that a person other than the defendant committed the substantive crime charged in the Indictment, then you need not consider the second element under this theory of aiding and abetting. But if you do find that a crime was committed by someone other than the defendant, or someone he willfully caused to take actions necessary for the commission of the crime, then you must consider whether the defendant aided or abetted the commission of that crime.

Second, in order to convict on an aiding and abetting theory, the Government must prove that the defendant willfully and knowingly associated himself in some way with the crime, and

that he willfully and knowingly engaged in some affirmative conduct or some overt act for the specific purpose of bringing about that crime. Participation in a crime is willful if done voluntarily and with a wrongful purpose. The mere presence of a defendant in a place where a crime is being committed, even coupled with knowledge that a crime is being committed, is not enough to make the defendant an aider and abettor. Similarly, a defendant's acquiescence in the criminal conduct of others, even with guilty knowledge, is not enough to establish aiding and abetting. An aider and abettor must know that the crime is being committed and act in a way that is intended to bring about the success of the criminal venture. To determine whether the defendant aided and abetted the commission of the crime, ask yourself these questions:

Did the defendant participate in the crime charged as something that the defendant wished to bring about?

Did he knowingly associate himself with the criminal venture?

Did he seek by his actions to make the criminal venture succeed?

If he did, then the defendant is an aider and abettor. If, on the other hand, your answer to any of these questions is no, then the defendant is not an aider and abettor.

There is a subtle difference between a defendant willfully causing someone else to take actions necessary for the commission of a crime as opposed to aiding and abetting someone else to commit a crime. If this question comes up in your deliberations, you should think of it in terms of the difference between causing someone to do something versus facilitating or helping someone to do it. If you are persuaded beyond a reasonable doubt that the defendant willfully caused someone else to take actions necessary for the commission of either of the substantive wire frauds charged in the Indictment, you should convict him as a principal on that count. If, on the other hand, you are persuaded beyond a reasonable doubt that the defendant, with the knowledge and

intent that I described, sought by his actions to facilitate or assist that other person in committing the crime, then he is guilty as an aider and abettor. One important difference between willfully causing and aiding and abetting another person to commit a crime, as I instructed you earlier, is that with respect to willful causation, the Government need not prove that the defendant acted through a guilty person. With respect to aiding and abetting, however, the Government must prove beyond a reasonable doubt that someone else committed the crime charged with the requisite intent. If you find beyond a reasonable doubt that the Government has proved that another person actually committed one or more of the substantive crimes charged in Counts One and Three and that the defendant aided or abetted that person in the commission of that offense, you should find that defendant guilty of that substantive crime on an aiding and abetting theory. If, however, you do not so find, you may not convict the defendant of that crime on the basis of an aiding and abetting theory.

Adapted from the charges of the Honorable Lewis A. Kaplan in
United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018).

REQUEST NO. 12:  Counts 2 and 4 – Conspiracy to Commit Wire Fraud

I will now turn to the conspiracy charges, and specifically the charge of conspiracy to commit wire fraud, which is the crime charged in Counts Two and Four of the Indictment. As I told you, a conspiracy is a kind of a criminal partnership -- a combination or agreement of two or more persons to join together to accomplish some unlawful objective. Count Two charges that the defendant conspired with others to commit wire fraud against FTX's customers by misappropriating their deposits.  Count Four charges that the defendant conspired with others to commit wire fraud against lenders to Alameda Research by making false and fraudulent statements, representations, and promises to those lenders.

Adapted from the charges of the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018).

22

REQUEST NO. 13:  Counts 2 and 4 – Conspiracy to Commit Wire Fraud – Elements

In order to sustain its burden of proof with respect to the conspiracy charged in Counts Two and Four, the Government must prove beyond a reasonable doubt each of two elements:

First, it must prove the existence of the conspiracy charged in the count of the Indictment.

Second, it must prove that the defendant knowingly and willfully became a member of, and joined in, the conspiracy.

Adapted from the charges of the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018).

<u>REQUEST NO. 14:</u>  <u>Counts 2 and 4 – Conspiracy to Commit Wire Fraud – First Element - Agreement</u>

Starting with the first element, a conspiracy is a combination, an agreement or an understanding of two or more people to accomplish by concerted action a criminal or unlawful purpose. Counts Two and Four charge that the criminal or unlawful purpose was to commit wire fraud.

To establish a conspiracy, the Government is not required to show that two or more persons sat down around a table and entered into a solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and setting forth the details of the plans and the means by which the unlawful project is to be carried out, or the part to be played by each conspirator. Your common sense will tell you that when people, in fact, undertake to enter into a criminal conspiracy, much usually is left to unexpressed understanding. Conspirators do not usually reduce their agreements to writing or acknowledge them publicly, nor do they broadcast their plans. From its very nature, a conspiracy almost invariably is secret in its origin and in its execution. It is sufficient if two or more persons in some way or manner come to a common understanding to violate the law. Express language or specific words are not required to indicate that someone has joined in a conspiracy.

Because conspiracy by its very nature is characterized by secrecy, it is rare that a conspiracy can be proved by direct evidence of that explicit agreement. You may infer the existence of a conspiracy from the circumstances and the conduct of the persons involved. The adage "actions speak louder than words" may be applicable here. Usually, the only evidence available with respect to the existence of a conspiracy is that of disconnected acts on the part of the alleged individual co-conspirators. When taken together and considered as a whole, however, such acts may show a conspiracy or agreement as conclusively as would direct proof. In determining whether a

24

conspiracy actually existed, you may consider all the evidence of the acts, conduct, and statements of the alleged conspirators and the reasonable inferences to be drawn from those matters.

As I instructed you earlier, the essence of the crime of conspiracy is an agreement or an understanding to commit a crime. So it does not matter if the crime, the commission of which was the objective of the conspiracy, ever was committed. A conspiracy to commit a crime is an entirely separate and distinct offense from the actual commission of the illegal act that is the object of the conspiracy. The success or failure of a conspiracy is not material to the question of guilt or innocence of an alleged conspirator.

Now, each of the conspiracies charged in Counts Two and Four allegedly had one objective - that is, each conspiracy had a single illegal purpose, according to the allegations of the Indictment, that the conspirators are alleged to have hoped to accomplish – that was, respectively, to commit wire fraud against FTX customer and against Alameda Research lenders. I explained the elements of wire fraud to you already in charging you on Counts One and Three. You will apply those instructions when you consider whether the Government has proved beyond a reasonable doubt that the conspiracies charged in Count Two and Four existed. However, because Counts Two and Four charge conspiracies, the Government does not need to prove that anyone committed the substantive crime of wire fraud. It need prove beyond a reasonable doubt only that there was an agreement to do so.

The Indictment charges that the conspiracy charged in Count Two lasted from at least in or about 2019 through at least in or about November 2022, and the conspiracy charged in Count Four lasted from at least in or about June 2022 through at least in or about November 2022. It is not necessary for the Government to prove that the conspiracy lasted throughout the entire period alleged, but only that it existed for some time within that time frame.

25

In sum, in order to find that the conspiracies charged in Counts Two and Four existed, the Government must prove beyond a reasonable doubt that there was a mutual understanding, either spoken or unspoken, between two or more people to commit wire fraud.

> Adapted from the charges of the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018), and in United States v. Jones, 17 Cr. 791 (Dec. 16, 2019).

26

REQUEST NO. 15:  Counts 2 and 4 – Conspiracy to Commit Wire Fraud – Second Element – Membership

If you conclude that the Government has proved beyond a reasonable doubt that the conspiracy charged in Count Two and/or Count Four existed, you next must determine whether the defendant willfully joined and participated in the conspiracy with knowledge of its wrongful purpose, and with an intent to aid in the accomplishment of its unlawful objective -- that is, the commission of wire fraud. The Government must prove beyond a reasonable doubt that the defendant knowingly, willfully, and with specific intent to defraud entered into the conspiracy. "Knowingly" and "willfully" have the same meanings here as I described earlier with respect to the second element of substantive wire fraud.

A defendant's participation in the conspiracy may be established by independent evidence of his own acts or statements, as well as those of the other alleged conspirators, and the reasonable inferences that may be drawn from it. Now, science has not yet devised a manner of looking into a person's mind and knowing what the person is thinking. To make that determination, you may look to the evidence of certain acts alleged to have taken place by or with the defendant or in his presence. As I instructed you earlier with respect to determining a defendant's knowledge and intent, you may consider circumstantial evidence based upon the defendant's outward manifestations, his words, his conduct, his acts, and all of the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom.

To become a member of the conspiracy, the defendant need not have known the activities of each and every other member. Moreover, the defendant does not need to be fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.

Nor is it necessary that the defendant receive any monetary benefit from participating in the conspiracy, or that the defendant have a financial stake in the outcome, so long as he, in fact, participated in the manner in which I have described.  Although proof of a financial interest in the outcome or another motive is not essential, if you find that the defendant had such an interest or other motive, that's a factor you may consider in determining whether the defendant was a member of the conspiracy. The presence or absence of motive is, however, a circumstance that you may consider as bearing on the intent of the defendant.

The duration and extent of the defendant's participation has no bearing on the issue of a defendant's guilt. Each member of a conspiracy may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, others play only minor parts in a conspiracy. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw the defendant within the ambit of a conspiracy. Moreover, the defendant need not have joined the conspiracy at the outset. He may have joined at any time, and if he joined, still will be held responsible for the acts done before or after he joined.

I want to caution you, however, that the mere association by one person with another does not make that person a member of the conspiracy even when coupled with knowledge that a conspiracy is taking place. Similarly, mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place, is not sufficient to support a conviction.  In other words, knowledge without participation is not enough. What is necessary is that the defendant participated in the conspiracy with knowledge of the unlawful purpose of the conspiracy, in this case, to commit wire fraud, and with an intent to aid in the accomplishment of its unlawful objective.

In sum, the defendant, with an understanding of the unlawful nature of the alleged conspiracy, must intentionally have engaged, advised or assisted in the conspiracy for the purpose

28

of the illegal undertaking. A defendant thereby becomes a knowing and willing participant in the lawful agreement: in other words, a defendant thereby becomes a conspirator.

A conspiracy, once formed, is presumed to continue until either its objectives are accomplished or there is some affirmative act of termination by its members. So, too, once a person is found to be a member of a conspiracy, that person is presumed to continue being a member in the venture until the venture is terminated, unless it is shown by some affirmative proof that the person withdrew and disassociated himself from it. You may find that the conspiracy existed even if there were changes in personnel or activities over time, so long as you find that at least two of the conspirators continued to act for the duration of the conspiracy for the purpose charged in the Indictment, that is, committing wire fraud.

> Adapted from the charges of the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018) and in United States v. Jones, 17 Cr. 791 (Dec. 16, 2019).

<u>REQUEST NO. 16:</u>  <u>Count 5 – Conspiracy to Commit Securities Fraud – General Instruction and Elements</u>

      Count Five charges SAMUEL BANKMAN-FRIED with conspiring to commit securities fraud.

      In order to sustain its burden of proof with respect to the conspiracy allege in Count Five, the Government must prove beyond a reasonable doubt each of the following three elements:

      *First*, that there was an agreement or understanding to accomplish the unlawful objective alleged in Count Five of the Indictment, specifically securities fraud;

      *Second*, that the defendant knowingly and willfully became a member of and joined the conspiracy;

      *Third*, that at least one person who was a member of the conspiracy committed some overt act in furtherance of the conspiracy.

      Adapted from the charges of the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Blaszczak</u>, 17 Cr. 357 (Apr. 27, 2018).

REQUEST NO. 17:   Count 5 – Conspiracy to Commit Securities Fraud – Existence of Agreement

The first element that the Government must prove beyond a reasonable doubt is that two or more persons entered into an agreement to commit securities fraud.  I have already instructed you on what it means to enter an agreement to accomplish the unlawful objective of a conspiracy, and those instructions apply to Count Five.

As I explained earlier, the object or objective of a conspiracy is the illegal goal the co-conspirators agree or hope to achieve.  Count Five of the Indictment charges that the object (or illegal goal) of the conspiracy was committing securities fraud.

> Adapted from the charge of the Honorable Lewis A. Kaplan in United States v. Blaszczak, 17 Cr. 357 (Apr. 27, 2018).

<u>REQUEST NO. 18:</u>   <u>Count 5 – Conspiracy to Commit Securities Fraud –  Object Elements</u>

I will now instruct you on the elements of the object of the conspiracy charged in Count Five.  As I explained to you previously, with respect to a conspiracy, the Government must prove that the defendant agreed with his co-conspirators to commit the objective of the conspiracy, here securities fraud, but it need not prove that the securities fraud was actually committed or accomplished.

Securities fraud has the following three elements:

*First*, that in connection with the purchase or sale of securities, the defendant did any one or more of the following: (a) employed a device, scheme, or artifice to defraud; or (b) made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading; or (c) engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit upon a purchaser of the securities.

*Second*, that the defendant acted knowingly, willfully, and with an intent to defraud; and

*Third*, that in furtherance of the fraudulent conduct, there occurred at least one use of any means or instruments of transportation or communication in interstate commerce, or the use of the mails, or the use of any facility of any national securities exchange.

> Adapted from the charges of the Honorable Edgardo Ramos in <u>United States</u> v. <u>Milton</u>, 21 Cr. 478 (Sept. 12, 2022); the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Blaszczak</u>, 17 Cr. 357 (Apr. 27, 2018); and the Honorable Paul G. Gardephe in <u>United States</u> v. <u>Tuzman</u>, 15 Cr. 536 (Dec. 22, 2017).

<u>REQUEST NO. 19</u>:   <u>Count 5 – Conspiracy to Commit Securities Fraud –  Object – First Element</u>

The first element of securities fraud is that, in connection with the purchase or sale of securities, the defendant did any one or more of the following: employed a device, scheme, or artifice to defraud; made an untrue statement of material fact, or omitted to state a material fact which made what was said, under the circumstances, misleading; or engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller of securities.

In proving a fraudulent act, it is not necessary for the Government to prove that all three types of unlawful conduct were part of the conspiracy's object. Any one will be sufficient to satisfy this element of the offense. You must, however, be unanimous as to which type of unlawful conduct was the alleged object of the conspiracy.

I will now explain a number of terms used in this provision.

A "device, scheme, or artifice to defraud" is merely a plan to accomplish a fraudulent objective. A "scheme to defraud" is a pattern or course of conduct concerning a material matter designed to deceive a person.

A statement, representation, claim, or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made. A representation or statement is fraudulent if it was made with the intent to deceive. A statement may also be false if it contains half-truths or if it conceals material facts in a manner that makes what is said or represented deliberately misleading.  This includes statements that may be literally true but that nevertheless create a materially misleading impression.

To establish that the conspiracy's objective included the first element of securities fraud, you must find that the defendant agreed to participate in fraudulent conduct that was "in connection

33

with" a purchase or sale of securities. The Government alleges that the agreed-upon fraudulent conduct was in connection with the purchase and sale of stock shares of FTX, which were also referred to at trial as "equity" in FTX, and which are "securities" within the meaning of federal law. The requirement that the fraudulent conduct be "in connection with" a purchase or sale of securities is satisfied so long as there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities. Fraudulent conduct may be "in connection with" the sale or purchase of securities if you find that the fraudulent conduct touched upon a securities transaction.  The fraudulent or deceitful conduct alleged need not relate to the investment value of the securities involved.

You need not find that the defendant actually participated in any specific purchase or sale of a security if you find that the defendant participated, or agreed to participate, in the fraudulent conduct that was "in connection with" a "purchase or sale" of securities. It is not necessary for you to find that the defendant was or would be the actual seller of the securities. It is sufficient if the misrepresentation or omission of material fact involved the purchase or sale of securities.

By the same token, the Government need not prove that the defendant agreed to personally make a misrepresentation or omit a material fact. It is sufficient if the Government establishes that the defendant intended to cause the statement to be made or the fact to be omitted.

With regard to the alleged misrepresentations and omissions, you must determine whether the statements were true or false when made and, in the case of alleged omissions, whether the omissions were misleading.

If you find that the Government has established that the statement the defendant agreed to make was false or a statement was omitted, rendering the statements that were made misleading, you must next determine whether the device, scheme, statement, half-truth, or omission was

34

material under the circumstances.  Material information in this context is information that a reasonable investor would have considered important in making an investment decision in light of the total mix of information publicly available.

In considering whether a statement or omission was material, let me caution you that a clause in an investment contract or a disclaimer cannot render any misrepresentation, including any oral misrepresentation, immaterial as a matter of law.

In considering whether a statement or omission was material, let me caution you that it is not a defense if the material misrepresentation or omission would not have deceived a person of ordinary intelligence. Once you find that the offense involved the making of material misrepresentations or omissions of material facts, it does not matter whether any of the victims involved were careless, gullible, or even negligent, or that they might have uncovered the scheme on their own had they probed more deeply, because the law protects the gullible and unsophisticated as well as the experienced investor.

Nor does it matter whether the unlawful conduct was or would have been successful, or whether the defendant profited or would have profited as a result of the alleged scheme. Success is not an element of the offense. If, however, you find that the defendant expected to or did profit from the scheme, you may consider that in relation to the element of intent, which I will discuss in a moment.

> Adapted from the charges of the Honorable Edgardo Ramos in United States v. Milton, 21 Cr. 478 (Sept. 12, 2022); and the Honorable Paul G. Gardephe in United States v. Tuzman, 15 Cr. 536 (Dec. 22, 2017).

<u>REQUEST NO. 20:</u>  <u>Count 5 – Conspiracy to Commit Securities Fraud – Object – Second Element</u>

The second element of securities fraud is that the defendant participated in the scheme to defraud knowingly, willfully, and with the intent to defraud.

I have already instructed you on the meaning of the terms "knowingly" and "willfully" and you should apply those definitions here.

In the context of securities laws, "intent to defraud" means to act knowingly and with the intent to deceive. Since an essential element of securities fraud is intent to defraud, good faith, as I have previously defined that term, is a complete defense to a charge of securities fraud. My prior instructions concerning good faith apply with equal force here.

> Adapted from the charges of the Honorable Edgardo Ramos in <u>United States</u> v. <u>Milton</u>, 21 Cr. 478 (Sept. 12, 2022); and the Honorable Paul G. Gardephe in <u>United States</u> v. <u>Tuzman</u>, 15 Cr. 536 (Dec. 22, 2017).

> <u>See</u> <u>United States</u> v. <u>Litvak</u>, 808 F.3d 160, 178 (2d Cir. 2015) (intent element for securities fraud is "intent to deceive, manipulate or defraud" not "intent to harm"); <u>United States</u> v. <u>Kaiser</u>, 609 F.3d 556, 569 (2d Cir. 2010) (holding that willfulness for purposes of Title 15 securities fraud "do[es] not require a showing that a defendant had awareness of the general unlawfulness of his conduct, but rather, that he had an awareness of the general wrongfulness of his conduct").

<u>REQUEST NO. 21</u>:  <u>Count 5 – Conspiracy to Commit Securities Fraud –  Object – Third Element</u>

The third element of securities fraud is that the defendant knowingly used or caused to be used at least one instrumentality of interstate commerce, such as an interstate telephone call, a use of the mails, or an interstate transaction in furtherance of the scheme to defraud or the fraudulent conduct.

The Government need not prove that a defendant was directly or personally involved in the use of an instrumentality of interstate commerce. If the defendant was an active participant in the scheme and took steps or engaged in conduct that he knew or could reasonably foresee would naturally and probably result in the use of an instrumentality of interstate commerce, this element would be satisfied. Nor is it necessary that the communication did or would contain a fraudulent representation. The use of the mails or instrumentality of interstate commerce need not be central to the execution of the scheme or even be incidental to it. All that is required is that the use of the mails or instrumentality of interstate commerce bear some relation to the object of the scheme or fraudulent conduct.

Moreover, the actual purchase or sale of a security need not be accompanied by the use of the mails or an instrumentality of interstate commerce, so long as the mails or instrumentality of interstate commerce are used in furtherance of the scheme and the defendant is still engaged in actions that are part of a fraudulent scheme when the mails or the instrumentalities of interstate commerce are used.

Adapted from the charge of the Honorable Paul G. Gardephe in <u>United States</u> v. <u>Tuzman</u>, 15 Cr. 536 (Dec. 22, 2017).

37

<u>REQUEST NO. 22:</u>  Count 5 – Conspiracy to Commit Securities Fraud – Membership

I have defined for you the elements of securities fraud, which was the object of the conspiracy charged in Count Five.  The second element of Count Five is that the defendant knowingly and willfully joined and participated in the conspiracy to commit securities fraud.  I have already instructed you on the meaning of the terms "knowingly" and "willfully," and what it means for a defendant to knowingly and willfully become a member of and join a conspiracy.  You should apply those instructions here.

>Adapted from the charge of the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Blaszczak</u>, 17 Cr. 357 (Apr. 27, 2018).

REQUEST NO. 23:  Count 5 – Conspiracy to Commit Securities Fraud – Overt Act

The third and last element with respect to Count Five is that the Government must prove beyond a reasonable doubt that at least one of the coconspirators, not necessarily the defendant, committed at least one overt act in furtherance of the conspiracy. In other words, there must have been something more than an agreement, some overt step or action must have been taken by at least one of the conspirators in furtherance of the conspiracy. The overt act element, to put it another way, is a requirement that any agreement in relation to Count Five went beyond the mere talking stage, the mere agreement stage.

I will note that this overt act element applies to this Count – Count Five – as well as Count Six, but does not apply to the other conspiracy charges in Counts Two, Four, and Seven.

It is not required or necessary for the Government to prove any particular overt act. It is enough if the Government proves at least one overt act was committed in furtherance of the conspiracy regardless of whether it's alleged in the Indictment. Although you must find unanimously that some overt act in furtherance of the conspiracy has been proved, you do not have to be unanimous as to which act. Similarly, you need not find that the defendant committed the overt act. It is sufficient for the Government to show that one of the alleged conspirators knowingly committed an overt act in furtherance of the conspiracy, since such an act becomes, in the eyes of the law, the act of all the members of the conspiracy.

You should bear in mind that the overt act standing alone may be an innocent lawful act. Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting a conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act which in and of itself is criminal or constitutes an objective of the conspiracy.

39

Adapted from the charges of the Honorable Lewis A. Kaplan in
United States v. Blaszczak, 17 Cr. 357 (Apr. 27, 2018) and the
Honorable J. Paul Oetken in United States v. Parnas, 19 Cr. 725
(JPO) (Oct. 13, 2021).

REQUEST NO. 24:  Count 6 – Conspiracy to Commit Commodities Fraud – Elements

Count Six charges SAMUEL BANKMAN-FRIED with conspiring to commit commodities fraud.

In order to sustain its burden of proof with respect to the conspiracy allege in Count Six, the Government must prove beyond a reasonable doubt each of the following three elements:

*First*, that there was an agreement or understanding to accomplish the unlawful objective alleged in Count Six of the Indictment, specifically commodities fraud;

*Second*, that the defendant knowingly and willfully became a member of and joined the conspiracy;

*Third*, that at least one person who was a member of the conspiracy committed some overt act in furtherance of the conspiracy.

> Adapted from the charges of the Honorable Lewis A. Kaplan in United States v. Blaszczak, 17 Cr. 357 (Apr. 27, 2018).

41

<u>REQUEST NO. 25:</u>  <u>Count 6 – Conspiracy to Commit Commodities Fraud – Existence of Agreement</u>

The first element that the Government must prove beyond a reasonable doubt is that two or more persons entered into an agreement to commit commodities fraud.  I have already instructed you on what it means to enter an agreement to accomplish the unlawful objective of a conspiracy, and those instructions apply to Count Six.

As I explained earlier, the object or objective of a conspiracy is the illegal goal the co-conspirators agree or hope to achieve.  Count Six of the Indictment charges that the object (or illegal goal) of the conspiracy was committing commodities fraud.

Adapted from the charges of the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Blaszczak</u>, 17 Cr. 357 (Apr. 27, 2018).

<u>REQUEST NO. 26:</u>  Count 6 – Conspiracy to Commit Commodities Fraud – Object Elements

I will now instruct you on the elements of the object of the conspiracy.  As I explained to you previously, with respect to a conspiracy, the Government must prove that the defendant agreed with his co-conspirators to commit the objective of the conspiracy, here commodities fraud, but it need not prove that the commodities fraud was actually committed or accomplished.  Commodities fraud has the following three elements:

*First*, the defendant did any one or more of the following: (a) employed a manipulative device, scheme, or artifice to defraud; or (b) made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading; or (c) engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit.

*Second*, the scheme, untrue statement, act, practice, or course of conduct was in connection with a swap,  or a contract of sale of any commodity in interstate commerce.

*Third*, that the defendant acted knowingly, willfully, and with an intent to defraud.

> Adapted from the charge of the Honorable Edmond E. Chang in <u>United States</u> v. <u>Smith</u>, 19 Cr. 669 (N.D. Ill. July 28, 2022) pursuant to the cognate offense 18 U.S.C. § 1348(1) and from the Honorable Jack B. Weinstein's statement of the elements in <u>Commodity Futures Trading Comm'n</u> v. <u>McDonnell</u>, 332 F. Supp. 3d 641, 717 (E.D.N.Y. 2018)

<u>REQUEST NO. 27:</u>  <u>Count 6 – Conspiracy to Commit Commodities Fraud – Object - First Element</u>

The first element of commodities fraud is that the defendant did any one or more of the following: employed a manipulative device, scheme, or artifice to defraud; made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading; or engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit.

In proving a fraudulent act, it is not necessary for the Government to prove all three types of unlawful conduct. Any one will be sufficient to satisfy this element of the offense. You must, however, be unanimous as to which type of unlawful conduct was the alleged object of the conspiracy.

The terms used in this provision are the same used in the securities fraud count, Count Five. The definitions I provided you when instructing you on the first element of securities fraud apply here as well.

As I previously told you, a scheme to defraud, false statement, misleading omission, or deceptive act, practice, or course of conduct must be material under the circumstances. In this context, materiality means the scheme, statement, omission, act, practice, or course of conduct must have the natural tendency to influence or be capable of influencing the actions of a person who was a target of the scheme, statement, omission, act, practice, or course of conduct. In the context of a commodities fraud, it is not necessary that the victim was actually deceived or lost money or property as a result of the deceptive conduct so long as there is proof that the scheme was at least capable of affecting the victim's conduct or decision in the market in a manner that could lead either to some gain for the wrongdoer or some harm to the victim.

44

Adapted from the charge of the Honorable Jeffrey Meyer in <u>United States</u> v. <u>Flotron</u>, 17 Cr. 220 (D. Conn. Apr. 24, 2018) pursuant to the cognate offense 18 U.S.C. § 1348(1).  <u>See</u> <u>also</u> <u>Loginovskaya</u> v. <u>Batratchenko</u>, 764 F.3d 266, 272 (2d Cir. 2014) ("courts have looked to the securities laws when called upon to interpret similar provisions of the Commodity Exchange Act.").

REQUEST NO. 28:   Count 6 – Conspiracy to Commit Commodities Fraud – Object – Second Element

The second element of commodities fraud is that the defendant and his co-conspirators committed their conduct in connection with a "swap," or contract of sale of a "commodity" in interstate commerce.

Let me define those terms for you.

A "commodity" is a good, article, service, right, or interest in which contracts for future delivery are dealt.  A "contract for future delivery," which is also called a "futures contract," is an agreement to buy or sell a particular commodity at a specific price in the future. A virtual currency or cryptocurrency may qualify as a "commodity."

A "swap" is an agreement between two parties to exchange payments with each other based on the value of one or more rates, commodities, indices, or other financial or economic interests. A "swap" transfers between the two parties, in whole or in part, the risk of changes in value of the things underlying the swap, without actually exchanging those things. In determining whether a financial contract, agreement, or transaction qualifies as a "swap," you may consider whether the arrangement is commonly known as or referred to as a "swap."

The requirement that the fraudulent conduct be "in connection with" a "swap," or contract of sale of a "commodity" is satisfied so long as there was some nexus or relation between the allegedly fraudulent conduct and the swap or contract of sale of a commodity. Fraudulent conduct may be "in connection with" if you find that the fraudulent conduct touched upon a swap or contract of sale of a commodity.  Statements directed to the general public which affect the public's interest in these products are made in connection with them.  The fraudulent or deceitful conduct need not relate to the value of the swap or contract of sale of a commodity.  It is also not necessary for you to find that the defendant was or would be the actual seller of the swap or commodity.

46

Adapted from the definitions of "commodities" and "swaps" as defined in 7 U.S.C. § 1a(9). Courts have repeatedly held that virtual currencies qualify as "commodities." <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Reed</u>, No. 20 Cr. 500 (JGK), 2022 WL 597180, at *4 (S.D.N.Y. Feb. 28, 2022) ("under the plain language of the CEA, cryptocurrencies fall within the definition of commodities"); <u>Commodity Futures Trading Comm'n</u> v. <u>Gelfman Blueprint, Inc.</u>, No. 17-7181 (PKC), 2018 WL 6320656, at *8 (S.D.N.Y. Oct. 16, 2018) ("Virtual currencies such as Bitcoin are encompassed in the definition of 'commodity' under Section 1a(9) of the Act"). Therefore, it is appropriate to instruct the jury that a virtual currency may be a "commodity."

REQUEST NO. 29:   Count 6 – Conspiracy to Commit Commodities Fraud – Object – Third Element

The third element of commodities fraud is that the defendant participated in the scheme to defraud, false statement, misleading omission, or deceptive act, practice, or course of conduct knowingly, willfully, and with the intent to defraud.

I have already instructed you on the meaning of the terms "knowingly" and "willfully" and you should apply those definitions here.  With respect to the term "intent to defraud," I previously defined that term in connection with my instructions for Count Five, and you should apply those instructions here.

> See Loginovskaya v. Batratchenko, 764 F.3d 266, 272 (2d Cir. 2014) ("courts have looked to the securities laws when called upon to interpret similar provisions of the Commodity Exchange Act"); Commodity Futures Trading Comm'n v. Oystacher, 203 F. Supp. 3d 934, 950 (N.D. Ill. 2016) (applying the *scienter* standard for securities fraud to Rule 180.1).

48

<u>REQUEST NO. 30:</u>  <u>Count 6 – Conspiracy to Commit Commodities Fraud – Membership</u>

I defined for you the elements of commodities fraud, which was the object of the conspiracy charged in Count Six. The second element of Count Six is that the defendant knowingly and willfully joined and participated in the conspiracy to commit commodities fraud.  I have already instructed you on the meaning of the terms "knowingly" and "willfully," and what it means for a defendant to knowingly and willfully become a member of and join a conspiracy.  You should apply those instructions here.

Adapted from the charge of the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Blaszczak</u>, 17 Cr. 357 (Apr. 27, 2018).

<u>REQUEST NO. 31:</u>  Count 6 – Conspiracy to Commit Commodities Fraud – Overt Act

The third and last element with respect to Count Six is that the Government must prove beyond a reasonable doubt that at least one of the coconspirators, not necessarily the defendant, committed at least one overt act in furtherance of the conspiracy. I instructed you on the requirements of the "overt act" element when I instructed you on Count Five, and you should apply those instructions here.

Adapted from the charge of the Honorable Lewis A. Kaplan in
<u>United States</u> v. <u>Blaszczak</u>, 17 Cr. 357 (Apr. 27, 2018).

REQUEST NO. 32:   Count 7 – Conspiracy to Commit Money Laundering – General Instruction

Count Seven charges SAMUEL BANKMAN-FRIED with conspiring to commit money laundering. Specifically, Count Seven charges the defendant with conspiring to commit money laundering from in or about 2020 through in or about November 2022, by agreeing to launder the proceeds of the wire fraud charged in Count One.

REQUEST NO. 33:  Count 7 – Conspiracy to Commit Money Laundering – Elements

To sustain its burden of proof with respect to the offense charged in Count Seven, the Government must prove beyond a doubt the following four elements:

*First*, that two or more persons entered into an unlawful agreement to participate in money laundering; and

*Second*, that the defendant knowingly and willfully entered into the agreement.

In other words, the elements of the conspiracy charged in Count Seven are the same elements the Government is required to prove with respect to the conspiracies alleged in Count Two and Count Four—namely, the existence of an agreement to violate the law and knowing and willful entry of the considered defendant into that agreement. The difference is that the object or objective of those counts was committing wire fraud, while the object or objective here is committing money laundering.

Adapted from the jury charges of the Honorable Loretta A. Preska
in United States v. Adelekan, 19 Cr. 291 (LAP) (Oct. 26, 2021).

52

<u>REQUEST NO. 34:</u>  <u>Count 7 – Conspiracy to Commit Money Laundering – First Element</u>

The first element that the Government must prove beyond a reasonable doubt is that two or more persons entered into an agreement to commit money laundering.  I have already instructed you on the elements of a conspiracy charge generally and those instructions apply to Count Seven.

As I explained earlier, the object or objective of a conspiracy is the illegal goal the co-conspirators agree or hope to achieve.  Count Seven of the Indictment charges that there were two objects (or illegal goals) of the conspiracy.  As I told you before, you do not need to find that the defendant actually committed the objects of a charged conspiracy, but only that he agreed with others to commit at least one of the objects.  The first object of the conspiracy alleges that the defendant agreed to commit money laundering by engaging in financial transactions that involve the proceeds of the wire fraud, in order to conceal or disguise the nature, location, source, ownership, or control of proceeds of the wire fraud.  I will refer to this object as "concealment" money laundering.  The second object of the conspiracy alleges that the defendant agreed to commit money laundering by engaging in monetary transactions greater than $10,000 involving the proceeds of the wire fraud.

There are two lines for Count Seven for you to fill in on the verdict form.  The first line asks whether the defendant is guilty of the first object of the conspiracy and the second line asks whether the defendant is guilty of the second object of the conspiracy.  In order to find the defendant guilty of either object, there must be unanimous agreement on that object.  With that in mind, I will now proceed to discuss the elements of each form of money laundering.

Adapted from the jury charges of the Honorable Loretta A. Preska
in <u>United States</u> v. <u>Adelekan</u>, 19 Cr. 291 (LAP) (Oct. 26, 2021).

<u>REQUEST NO. 35:</u>  <u>Count 7 – Conspiracy to Commit Money Laundering – Concealment Elements</u>

I will instruct you on the elements of the first object of the conspiracy, which is concealment money laundering.  As I explained to you previously, the Government must prove that the defendant agreed with his co-conspirators to commit the objective of the conspiracy, but it need not prove that money laundering was actually committed or accomplished.

Concealment money laundering has the following elements:

*First*, that the defendant conducted (or attempted to conduct) a "financial transaction," which must in some way or degree have affected interstate or foreign commerce;

*Second*, that the financial transaction at issue involved the proceeds of specified unlawful activity, which here was a wire fraud scheme;

*Third*, that the defendant knew that the financial transaction involved the proceeds of some form of unlawful activity; and

*Fourth*, that the defendant knew that the transaction was designed in whole or in part either to conceal or disguise the nature, location, source, ownership or control of the proceeds of the unlawful activity.

If you find beyond a reasonable doubt that the defendant agreed with at least one other person to commit concealment money laundering, then the concealment money laundering object of Count Seven would be proved.  However, if you find that the Government has not met its burden to prove that the defendant agreed with at least one other person to commit concealment money laundering, then the object would not be proved.

> Adapted from the jury charges of the Honorable Loretta A. Preska in <u>United States</u> v. <u>Adelekan</u>, 19 Cr. 291 (LAP) (Oct. 26, 2021); and from Sand et al., <u>Modern Federal Jury Instructions</u>, Instr. 50A-8.

<u>REQUEST NO. 36:</u>   <u>Count 7 – Conspiracy to Commit Money Laundering – Concealment – First Element</u>

The first element of concealment money laundering is that the defendant conducted a financial transaction.

The term "conducts" includes the action of initiating, concluding, or participating in initiating or concluding a transaction.

The term "financial transaction" means (1) a transaction involving a financial institution – including a bank – which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree, or (2) a transaction which involves the movement of funds by wire or other means and in any way or degree affects interstate or foreign commerce.

A "transaction involving a financial institution" includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock, or any other payment, transfer, or delivery by, through or to a financial institution by whatever means.

The term "funds" includes any currency, money, or other medium of exchange that can be used to pay for goods and services, including digital or cryptocurrency.

Interstate commerce includes any transmission or transfer between persons or entities located in different states, and foreign commerce means the same thing, except it is between a person or entity in the United States and a person or entity in a foreign country. The involvement in interstate or foreign commerce can be minimal, and the Government satisfies its burden if it proves any effect or involvement, regardless of whether it was beneficial or harmful. It is also not necessary for the Government to show that the defendant actually intended or anticipated an effect on interstate or foreign commerce by his actions or that commerce was actually affected. All that

is necessary is that the natural and probable consequences of the acts the defendant agreed to take

would affect interstate or foreign commerce.

> Adapted from the jury charges of the Honorable Jesse M. Furman in United States v. Chastain, 22 Cr. 305 (JMF) (Apr. 25, 2023), the Honorable Loretta A. Preska in United States v. Adelekan, 19 Cr. 291 (LAP) (Oct. 26, 2021); and from Sand et al., Modern Federal Jury Instructions, Instr. 50A-8.

> See United States v. Ulbricht, 31 F. Supp. 3d 540, 570 (S.D.N.Y. 2014) (digital currency constituted "funds" within the meaning of the money laundering statute); United States v. Budovsky, No. 13 Cr. 368 (DLC), 2015 WL 5602853, at *13 (S.D.N.Y. Sept. 23, 2015) (same).

<u>REQUEST NO. 37:</u>  <u>Count 7 – Conspiracy to Commit Money Laundering – Concealment – Second Element</u>

The second element of concealment money laundering is that the financial transactions must involve the proceeds of "specified" unlawful activity.  Here, the "specified" unlawful activity is the wire fraud scheme charged in Count One, and I instruct you, as a matter of law, that the term "specified unlawful activity" includes wire fraud.

The term "proceeds" means any property, or any interest in property, that someone acquires or retains as profits resulting from the commission of the specified unlawful activity.

> Adapted from the jury charges of the Honorable Jesse M. Furman in <u>United States</u> v. <u>Chastain</u>, 22 Cr. 305 (JMF) (Apr. 25, 2023), and the Honorable Loretta A. Preska in <u>United States</u> v. <u>Adelekan</u>, 19 Cr. 291 (LAP) (Oct. 26, 2021); and from Sand et al., <u>Modern Federal Jury Instructions</u>, Instr. 50A-8.

57

<u>REQUEST NO. 38:</u>  <u>Count 7 – Conspiracy to Commit Money Laundering – Concealment – Third Element</u>

The third element of concealment money laundering is that the defendant knew that the financial transactions at issue involved the proceeds of some form, though not necessarily which form, of unlawful activity. If you find beyond a reasonable doubt that the defendant committed the wire fraud offense I have instructed you on in Count One, and he knew that the proceeds came from that activity, that is sufficient for you to find that the defendant believed that the proceeds came from unlawful activity. Keep in mind, however, that it is not necessary for the defendant to believe that the proceeds would come from wire fraud specifically. It is sufficient that the defendant believed that the proceeds would come from some unlawful activity.

> Adapted from the jury charges of the Honorable Jesse M. Furman in <u>United States</u> v. <u>Chastain</u>, 22 Cr. 305 (JMF) (Apr. 25, 2023), and the Honorable Ronnie Abrams in <u>United States</u> v. <u>Rahmankulov</u>, 20 Cr. 652 (Aug. 22, 2022); and from Sand et al., <u>Modern Federal Jury Instructions</u>, Instr. 50A-9.

> <u>See</u> <u>United States</u> v. <u>Diggles</u>, 928 F.3d 380 (5th Cir. 2019) (holding knowledge funds came from unlawful activity satisfied when defendant was perpetrator of underlying crime); <u>United States</u> v. <u>Chon</u>, 713 F.3d 812, 820 (5th Cir. 2013) (same); <u>United States</u> v. <u>Bohn</u>, 281 F. App'x 430, 441 (6th Cir. 2008) ("Because we have already determined that the circumstantial evidence was sufficient to show that [the defendant] knew about the mail fraud scheme, it follows that the evidence was also sufficient to show that [he] knew that the money was from some form of unlawful activity); <u>United States</u> v. <u>Martinelli</u>, 454 F.3d 1300, 1311 (11th Cir. 2006) (holding that the defendant simply had to know the funds were derived from the specified unlawful activity of mail fraud).

REQUEST NO. 39:  Count 7 – Conspiracy to Commit Money Laundering – Concealment – Fourth Element

The fourth element that the Government must establish beyond a reasonable doubt for purposes of the concealment object of Count Seven concerns the purpose of the transaction. Specifically, the Government must prove beyond a reasonable doubt that the defendant agreed to conduct financial transactions with knowledge that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity. The Government need not prove that the intent to conceal or disguise was the only or even primary purpose of the defendant, as long as it was an intent of the defendant.

As I have previously instructed, to act knowingly means to act purposely and voluntarily and not because of a mistake, accident, or other innocent reason. That is, the acts must be the product of the defendant's conscious objective. To prove that an act is done knowingly for the purposes of this element, the Government is not required to prove that the defendant knew that his acts were unlawful. If you find that the evidence establishes beyond a reasonable doubt that the defendant knew of the purpose of the particular transaction in issue and that he knew that the transaction was either designed to conceal or disguise the true origin or ownership of the property in question, then this element is satisfied. However, if you find that the defendant knew of the transaction, but did not know that it was either designed to conceal or disguise the true origin of the property in question, but, instead, thought that the transaction was intended to further the innocent transaction, you must find that this element has not been satisfied and find the defendant not guilty.

For the fourth element to be satisfied, the defendant or the coconspirator need not know which specified unlawful activity he or she was agreeing to help conceal. Such person need only

59

know that a purpose of the financial transaction was concealing the nature, location, source, ownership, or control of the funds.

Conduct that is sufficient to establish an intent to conceal includes, but is not limited to, engaging in convoluted financial transactions, inter-company transfers with no clear purpose, transactions consummated with unusual secrecy, depositing ill-gotten funds into another's bank accounts, using interest-free loans, and using third parties' names to conceal the real owner of the relevant funds. Intent to disguise or conceal the true origin of the property need not be the sole motivating factor for the transactions, and the Government need not prove with regard to any single transaction that the defendant removed all trace of his involvement with the money or property.

> Adapted from the jury charges of the Honorable Jesse M. Furman in United States v. Chastain, 22 Cr. 305 (JMF) (Apr. 25, 2023); and from Sand *et al.*, Modern Federal Jury Instructions, Instr. 50A-10.

> See United States v. Willey, 57 F.3d 1374, 1386 (5th Cir. 1995) ("in order to establish the design element of money laundering, it is not necessary to prove with regard to any single transaction that the defendant removed all trace of his involvement with the money…").

> See United States v. Technodyne LLC, 753 F.3d 368, 385 (2d Cir. 2013) ("It is commonplace that the law recognizes that there may be multiple motives for human behavior; thus, a specific intent need not be the actor's sole, or even primary, purpose.").

> See United States v. Bikundi, 926 F.3d 761, 784 (D.C. Cir. 2019) ("hallmarks of an intent to conceal" include engaging in "convoluted financial transactions and inter-company transfers with no clear purpose"); United States v. Turner, 400 F.3d 491, 497 (7th Cir. 2005) ("certain types of transactions may be indicative of a design to conceal" such as "transactions surrounded in unusual secrecy, structured transactions, depositing ill-gotten funds into another's bank accounts, using third parties to conceal the real owner, or engaging in unusual financial moves which culminate in a transaction" or "convoluted, seller-financed and interest-free loan").

> See United States v. Knapp, 120 F.3d 928, 931 (9th Cir. 1997) ("As to money laundering, the government is not required to prove that the defendant knew that his acts or omissions were unlawful.");

60

<u>United States</u> v. <u>Lonich</u>, 23 F.4th 881, 898 (9th Cir. 2022) ("To prove that an act is done knowingly, the government is not required to prove that the defendant knew that his or her acts were unlawful.").

REQUEST NO. 40:  Count 7 – Conspiracy to Commit Money Laundering – $10,000 Transaction Elements

The second object of Count Seven is engaging in monetary transactions over $10,000 in property derived from specified unlawful activity.  The elements of this object are as follows:

*First*, the defendant was a United States person or in the United States and engaged in a monetary transaction with a value greater than $10,000.

*Second*, the defendant knew the property involved in the transaction was criminally derived property.

*Third*, the property involved in the transaction was actually derived from specified unlawful activity.

If you find beyond a reasonable doubt that the defendant agreed with at least one other person to engage in monetary transactions over $10,000 in property derived from specified unlawful activity, then the second object of Count Seven would be proved.  However, if you find that the Government has not met its burden to prove that the defendant agreed with at least one other person to engage in monetary transactions over $10,000 in property derived from specified unlawful activity, then the object would not be proved.

> Adapted from United States v. Carucci, 364 F.3d 339, 343 (1st Cir. 2004) ("To establish a violation of 18 U.S.C. § 1957, the government must prove that (1) the defendant engaged or attempted to engage in a monetary transaction with a value of more than $10,000; (2) the defendant knew that the property involved in the transaction had been derived from some form of criminal activity; and (3) the property involved in the transaction was actually derived from specified unlawful activity."). See also United States v. Moparty, 11 F.4th 280, 298 (5th Cir. 2021) (adopting an alternative three-element formulation). The Modern Federal Jury Instructions use a five-element formulation for this offense. See Sand et al., Modern Federal Jury Instructions, Instr. 50A-26. While substantively the same, the three-element formulation is shorter and easier to understand.

REQUEST NO. 41:   Count 7 – Conspiracy to Commit Money Laundering – $10,000 Transaction – First Element

The first element of this object is that the defendant was a United States person or in the United States and agreed to engage in a monetary transaction with a value greater than $10,000.

A "United States person" is a citizen or national of the United States.

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "interstate or foreign commerce" means commerce between any combination of states, territories or possessions of the United States, or between the United States and a foreign country.

You must find that, had the object of the conspiracy been completed, the transaction would have affected interstate commerce in some way, however minimal.  As I explained earlier, the effect on interstate commerce can be established in several ways, including, but not limited to that the source of the funds used in the transaction affected interstate commerce, or that the transaction itself involved an interstate transfer of funds.

The amount or value of the "financial transaction" must be greater than $10,000.

> Adapted from the jury charges of the Honorable Loretta A. Preska in United States v. Adelekan, 19 Cr. 291 (LAP) (Oct. 26, 2021); and from Sand et al., Modern Federal Jury Instructions, Instr. 50A-27.

> There is no need to treat an effect on interstate commerce as a separate element because proof of an effect on interstate commerce is required by the definition of the term "monetary transaction." See Sand et al., Modern Federal Jury Instructions, Instr. 50A-27, Cmt.

REQUEST NO. 42:    Count 7 – Conspiracy to Commit Money Laundering – $10,000 Transaction – Second Element

The second element of this object is that the defendant knew the property involved in the transaction was criminally derived property.

"Criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense. The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

The Government must prove that the defendant knew the transaction involved criminally derived property.  However, the Government is not required to prove that the defendant knew the particular offense from which the criminally derived property was derived.

Adapted from Sand et al., Modern Federal Jury Instructions, Instr. 50A-28, 50A-30.

REQUEST NO. 43:   Count 7 – Conspiracy to Commit Money Laundering – $10,000 Transaction – Third Element

The third element of this object is that the property involved in the transaction was actually derived from specified unlawful activity. The term "specified unlawful activity" was defined previously, and that definition applies equally to this second object of the conspiracy charged in Count Seven.  Here too the "specified" unlawful activity is the wire fraud scheme charged in Count One, and I instruct you again, as a matter of law, that the term "specified unlawful activity" includes wire fraud.

Adapted from Sand et al., Modern Federal Jury Instructions, Instr. 50A-29.

65

REQUEST NO. 44:  Count 7 – Conspiracy to Commit Money Laundering – Membership

If you find that the Government has proved one or both objects of the money laundering conspiracy beyond a reasonable doubt, you should consider the second element.  The second element of Count Seven is that the defendant knowingly and willfully joined and participated in the conspiracy to commit money laundering.  I have already instructed you on the meaning of the terms "knowingly" and "willfully," and what it means for a defendant to knowingly and willfully become a member of and join a conspiracy.  You should apply those instructions here.

REQUEST NO. 45:  Conscious Avoidance
(If Applicable)

As I explained with respect to each count charged in the indictment, the Government is required to prove that the defendant acted knowingly. In determining whether a defendant has knowledge of a fact, you may consider whether that defendant deliberately closed his eyes to what otherwise would have been obvious.  As you all know, if a person is actually aware of a fact, then he knows that fact.  But the law also allows you to find that a defendant had knowledge of a fact when the evidence shows that he was aware of a high probability of that fact, but intentionally avoided confirming that fact. We refer to this concept, this notion of blinding yourself to what is staring you in the face as "conscious avoidance" or "willful blindness."

With respect to the substantive wire fraud crimes charged in Counts One and Three of the Indictment, in determining whether the Government has proven beyond a reasonable doubt that the defendant had knowledge or acted "knowing" that a certain thing was intended or would occur, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him.  One may not willfully and intentionally remain ignorant of a fact important to his conduct in order to escape the consequences of criminal law.  And a person cannot look at all sorts of things that make it obvious to any reasonable person what is going on and then claim in court that because he deliberately avoided learning explicitly what was obvious anyway, he did not actually know the incriminating fact.

Accordingly, if you find that the defendant was aware of a high probability of a fact, and that defendant acted with deliberate disregard of the facts, you may find that the defendant knew that fact.  However, if you find that the defendant actually believed that the fact was true, then you

67

may not find that he knew that fact. You must also remember that guilty knowledge may not be established by demonstrating that a defendant was merely negligent, reckless, foolish, or mistaken.

With respect to the conspiracy charges in Counts Two, Four, Five, Six, and Seven, "conscious avoidance," as I have described it, cannot be used as a basis for finding that the defendant knowingly joined the conspiracy. It is logically impossible for the defendant to agree to join the conspiracy unless he knows that the conspiracy exists. However, if you find that the defendant entered into such an agreement, in considering whether he knew the illegal object of the conspiracy, you may consider whether the defendant was aware of a high probability that facts were so, but took deliberate and conscious action to avoid confirming those facts. In other words, if you find beyond a reasonable doubt that the defendant deliberately avoided learning or confirming that the illegal object of the conspiracy, such as by purposely closing his eyes to it or intentionally failing to investigate it, then you may treat this deliberate avoidance of learning a fact as the equivalent of knowledge. If, however, the defendant actually believed that he was not a party to an illegal agreement, or if the defendant was merely negligent or careless with regard to what knowledge he had, he lacked the knowledge necessary to become a co-conspirator.

> Adapted from the charges of the Honorable Paul A. Crotty in United States v. Campo Flores, No. 15 Cr. 765 (Nov. 18, 2016) (conscious avoidance instruction affirmed at United States v. Campo Flores, 945 F.3d 687, 715 (2d Cir. 2019)), the Honorable Lewis A. Kaplan in United States v. Blaszczak, 17 Cr. 357 (Apr. 27, 2018), and from Sand, Modern Federal Jury Instructions, Instr. 3A and United States v. Goffer, 721 F.3d 113 (2d Cir. 2013).

> The Government "need not choose between an 'actual knowledge' and a 'conscious avoidance' theory." United States v. Ferguson, 676 F.3d 260, 278 (2d Cir. 2011). "A conscious-avoidance charge is appropriate when (a) the element of knowledge is in dispute, and (b) the evidence would permit a rational juror to conclude beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact."

<u>United States</u> v. <u>Hopkins</u>, 53 F.3d 533, 542 (2d Cir. 1995). A conscious avoidance instruction is appropriate in a conspiracy case to prove that the defendant had knowledge of the illegal object of the conspiracy.  <u>United States</u> v. <u>Reyes</u>, 302 F.3d 48, 55 (2d Cir. 2002) (discussing conscious avoidance in conspiracy cases and noting that "the jury may use the conscious avoidance doctrine to establish the defendant's knowledge of the aims of the conspiracy but, as just noted, may not use it to establish the defendant's intent to participate in the conspiracy").

A conscious avoidance instruction should include the "high probability" and actual belief language.  <u>See</u> <u>United States</u> v. <u>Feroz</u>, 848 F.2d 359, 360 (2d Cir. 1988) (per curiam).

REQUEST NO. 46:  Coconspirator Statements

Certain evidence was admitted during trial concerning acts and statements of others because such acts were committed and such statements were made by a person who, the Government claims, was also a co-conspirator of the defendant. The reason for allowing this evidence to be received against the defendant has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent of the other conspirators in carrying out the conspiracy. In determining the factual issues before you, you may consider against the defendant any acts or statements made by any of the people that you find, under the standards I have already described, to have been co-conspirators, even though such acts or statements were not made in his presence, or were made without his knowledge.

Adapted from the charges of the Honorable Lewis A. Kaplan in
United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018).

REQUEST NO. 47:  Presence of Counsel
(If Applicable)

You have heard evidence that FTX and Alameda Research had lawyers. A lawyer's involvement with an individual or entity does not itself constitute a defense to any charge in this case. The defense has not claimed, and cannot claim, that the defendant's conduct was lawful because he acted in good faith on the advice of a lawyer.

> Adapted from the charges of the Honorable Edgardo Ramos in United States v. Milton, No. 21 Cr. 478 (Sept. 12, 2022), and the Honorable Analisa Torres in United States v. Shea, No. 20 Cr. 412 (May 23, 2022).

71

REQUEST NO. 48:  Venue

In addition to all of the elements that I have described for you, you must separately decide whether an act in furtherance of each alleged crime occurred within the Southern District of New York.  The Southern District of New York includes Manhattan, the Bronx, and Westchester.  This requirement is called "venue."  Venue refers to the fact that the Government must prove that a charge was properly brought in this court as opposed to a different federal court.  You'll determine the satisfaction of the venue requirement separately for each count.

For the wire fraud charges in Counts One and Three, it is sufficient to establish venue if the defendant caused any interstate wire such as an e-mail, phone call, television or Internet broadcast, or financial transaction to be transmitted into or out of the district. The wire need not itself be criminal as long as it was transmitted or caused to be transmitted as part of the scheme. The act need not have been taken by the defendant so long as the act was part of the crime that you find he committed.

With respect to all of the other counts, which charge conspiracies – Counts Two, Four, Five, Six and Seven – it is sufficient for the Government to prove that some act in furtherance of the conspiracy occurred within the Southern District of New York.  In this regard, the Government does not have to prove that the crime itself was committed in this district or that the defendant himself was even present here.

As to the venue requirement alone, the Government's burden is to show that venue is proper by a preponderance of the evidence.  That is, the Government must show simply that it is more likely than not that venue is proper here.

> Adapted from the charges of the Honorable Lewis A. Kaplan in United States v. Dumitru, 18 Cr. 243 (Nov. 6, 2018), and of the Honorable Edgardo Ramos in United States v. Milton, 21 Cr. 478

(Sept. 12, 2022).  <u>See</u> <u>also</u> <u>United States</u> v. <u>Lange</u>, 834 F.3d 58, 72 (2d Cir. 2016) (venue proper where fraudulent communications were received).

REQUEST NO. 49:  False Exculpatory Statements
(If Applicable)

You have heard recordings or seen statements by the defendant, which are in evidence, in

which he claimed that his conduct was consistent with innocence and not guilt. The Government

claims that those statements in which he exonerated or exculpated himself were false.  If you find

that the defendant gave a false statement in order to divert suspicion from himself, you may infer

that the defendant believed that he was guilty. You may not, however, infer on the basis of this

alone that the defendant is, in fact, guilty of the crimes for which he is charged. Whether or not the

evidence as to a defendant's statements shows that the defendant believed that he was guilty, and

the significance, if any, to be attached to any such evidence, are matters for you the jury to decide.

> Adapted from the charges of the Honorable Lewis A. Kaplan in
> United States v. Blaszczak, 17 Cr. 357 (Apr. 27, 2018) and the
> Honorable Richard J. Sullivan in United States v. Brennerman, 17
> Cr. 337 (Dec. 6, 2017).

<u>REQUEST NO. 50:</u>  <u>Destruction of Evidence</u>
(If Applicable)

You have heard evidence that the defendant deleted, or caused to be deleted, certain communications sent and received over the messaging applications Signal and Slack. If you find that the defendant deleted communications, you may, but need not, infer that he believed that he was guilty. You may not, however, infer on the basis of this alone that the defendant is, in fact, guilty of the crimes for which he is charged. Whether or not the evidence as to a defendant's deletion of evidence shows that the defendant believed that he was guilty, and the significance, if any, to be attached to any such deletions, are matters for you the jury to decide.

> Adapted from the charge of the Honorable Paul G. Gardephe in <u>United States</u> v. <u>Tuzman</u>, 15 Cr. 536 (Dec. 22, 2017), as well as those charges approved of in <u>United States</u> v. <u>Scheibel</u>, 870 F.2d 818, 822 (2d Cir. 1989), <u>United States</u> v. <u>Howard</u>, 729 Fed. Appx. 181, 187 (3d Cir. 2018), and <u>United States</u> v. <u>Singleton</u>, 904 F.2d 37 (6th Cir. 1990).

<u>REQUEST NO. 51</u>:  <u>Other Acts Evidence</u>
(If Applicable)

Now, you also heard evidence that the defendant engaged in misconduct that is not charged in this Indictment including _____. He is not on trial for committing those acts. Accordingly, you may not consider the evidence of other uncharged bad acts as a substitute for proof that he committed the crimes with which he is charged here. Nor may you consider that evidence as proof that he has a criminal personality or bad character. The evidence was admitted for limited purposes, and you may consider it for those purposes alone.

More specifically, you may consider the evidence you have heard regarding _____ as relevant to _____.

Adapted from the charge of the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Dumitru</u>, 18 Cr. 243 (Nov. 6, 2018).

REQUEST NO. 52:  Variance in Dates

  As I have described the Indictment, you may have noticed that it refers to various dates or times.  It does not matter if the evidence you heard at trial indicates that a particular act occurred on a different date, and it is not essential that the Government prove that the charged offenses started and ended on any specific dates.  The law requires only a substantial similarity between the dates alleged in the indictment and the dates established by the evidence.

    Adapted from Sand, et al., Modern Federal Jury Instructions, Instr.
    3-12 and the charges of the Honorable Lewis A. Kaplan in United
    United States v. Jones, 17 Cr. 791 (Dec. 16, 2019).

<u>REQUEST NO. 53:</u>  <u>Cooperating Witnesses</u>

You have heard testimony from several government witnesses who testified that they, in fact, were involved in planning and carrying out some of the crimes charged in the indictment. There has been a whole lot said about these cooperating or accomplice witnesses in the summations of the attorneys and whether or not you should believe them. So let me talk to you about that.

Experience will tell you that the Government frequently must rely on the testimony of witnesses who participated in the criminal activity about which they testify at trials. For those very reasons, the law allows the use of this testimony. In fact, in federal court, the law is that the testimony of a cooperating witness, another phrase being "accomplice witness," in itself may be enough for a conviction if the jury believes it proves guilt beyond a reasonable doubt. So, the testimony of the accomplice or cooperating witnesses is properly before you. The Government argues, as it's entitled to do, that if such testimony could not be used, there would be many cases in which there was real guilt, and convictions could not be obtained. However, the testimony of cooperating or accomplice witnesses should be scrutinized with special care and caution because such witnesses may believe that it's in their interest to give testimony favorable to the Government. The fact that a witness is an accomplice can be considered by you in bearing on his or her credibility. It does not follow, however, that simply because a person has admitted to participating in one or more crimes, that he or she is incapable of giving you a truthful version of what happened. Like the testimony of any other witness, accomplice testimony should be given the weight that it deserves in light of the facts and circumstances before you, considering the witness's demeanor, candor, the strength, and accuracy of a witness's recollection, their background, and the extent to which the testimony they gave is corroborated or not corroborated by other evidence in the case.

78

You may consider whether an accomplice witness has an interest in the outcome, and, if so, whether that's affected his or her testimony.

You heard testimony about various agreements between the Government and the accomplice witnesses. I must caution you that it is no concern of yours why the Government made an agreement with a particular witness. Your sole concern is whether the witness has given truthful and accurate testimony here in this courtroom.

In evaluating the testimony of these witnesses, you should ask yourselves whether these witnesses would benefit more by lying or more by telling you the truth. Was their testimony made up in some way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did they believe that their interests would be best served telling you the truth? If you believe that a witness was motivated by hopes of personal gain, was the motivation one that would cause them to lie or one that would cause him to tell you the truth? Did the motivation color the witnesses' testimony? If you find that testimony by such a witness is false, you should reject it. If, however, after giving cautious and careful consideration to that testimony, and to the witness's demeanor, and the other things that I mentioned, and you're satisfied that the witness told you the truth, you should accept it as credible and act accordingly.

As with any witness, let me emphasize that the issue of credibility does not have to be decided on an all-or-nothing basis. Even if you find that a witness testified falsely in part, you still may accept any part of the testimony you find to have been credible.

Let me say a word about the guilty pleas: You have heard testimony from three witnesses who have pled guilty to charges that arise out of some of the facts that are at issue in this case. You are to draw no conclusions or inference of any kind about the guilt of the defendant on trial here from the fact that these witnesses pled guilty to similar or the same charges, including conspiracy

charges involving the defendant. The decisions of those witnesses to plead guilty were personal

decisions that they made about their own guilt. It cannot be used by you in any way as evidence

against or unfavorable to the defendant on trial here.

> Adapted from the charge of the Honorable Lewis A. Kaplan in
> <u>United States</u> v. <u>Blaszczak</u>, 17 Cr. 357 (Apr. 27, 2018).

REQUEST NO. 54:  Non-Prosecution Agreement
(If Applicable)

You have heard testimony from at least one witness who entered into a non-prosecution agreement with the Government arising out of facts that are at issue in this case. You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the defendant from the fact that a witness entered into such an agreement, even involving similar conduct. The decision of that witness to enter into that agreement and of the Government to enter into that agreement was a personal decision on the part of the Government and an exercise of the Government's lawful discretion in the case of the Government. It may not be used by you in any way for or against the defendant.

Adapted from the charge of the Honorable Lewis A. Kaplan in
United States v. Dumitru, 18 Cr. 243 (Nov. 6, 2018).

81

<u>REQUEST NO. 55:</u>  <u>Immunized Witnesses</u>
(If Applicable)

You have heard the testimony of witnesses who have testified under a grant of immunity from this Court, called formal immunity.  The testimony of such a witness may not be used against such witnesses in any criminal case except in a prosecution for perjury, giving a false statement, or otherwise failing to comply with the immunity order of this Court. You are instructed that the Government is entitled to call as a witness a person who has been granted immunity by order of this Court.  You should examine the testimony of such a witness to determine whether or not it is colored in any way to further the witness's own interests.  If you believe the testimony to be true, you may give it any weight you believe it deserves.

Adapted from the charge of the Honorable J. Paul Oetken in <u>United States</u> v. <u>Gabinskaya</u>, 12 Cr. 171 (Oct. 3, 2014).

REQUEST NO. 56:  Expert Witness

You heard the testimony of certain witnesses who I certified as experts. An expert is a witness who, by education or experience, has acquired knowledge in a specialized area.  Such witnesses are allowed to give their opinions as to relevant matters in which they profess to be an expert, and to give the reasons for their opinions.  Expert testimony is presented to you on the theory that someone who is experienced and knowledgeable in a field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing expert testimony, you may consider the expert's qualifications, the opinion given, the witness's reasons for testifying, as well as all the other considerations that ordinarily apply when you are deciding whether or not to believe a witness. You may give expert testimony whatever weight, if any, you find it deserves in light of all the evidence before you. You should not, however, accept a witness's testimony merely because he or she is an expert in a field. Nor should you substitute it for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you, the jury.

> Adapted from the charge of the Honorable Richard J. Sullivan in United States v. Brennerman, No. 17 Cr. 337 (Dec. 6, 2017), and from the Honorable J. Paul Oetken in United States v. Middendorf, No. 18 Cr. 36 (Feb. 1, 2022).

REQUEST NO. 57:  Law Enforcement Witnesses

You have heard the testimony of law enforcement witnesses and other Government employees.  The fact that a witness may be employed by the federal Government as a law enforcement agent or employee does not mean that his or her testimony is deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.  As with all other witnesses, it is up to you to decide, after reviewing all the evidence, what weight to give the testimony of law enforcement witnesses.

> Adapted from the charges of the Honorable Jesse M. Furman in United States v. Avenatti, No. 19 Cr. 374 (Feb. 1, 2022), and from the charge of the Honorable J. Paul Oetken in United States v. Matthews, 18 Cr. 124 (Sept. 24, 2018).

<u>REQUEST NO. 58:</u>  <u>Preparation of Witnesses</u>
(If Applicable)

You have heard evidence during the trial that some witnesses have discussed the facts of the case and their testimony with lawyers before the witnesses appeared in court. Although you may consider that fact when you evaluate a witness's credibility, I should tell you that there is nothing unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the Court's time. In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

Adapted from the charges of the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Gatto</u>, 17 Cr. 686 (Oct. 1, 2018).

<u>REQUEST NO. 59</u>:  <u>Uncalled Witnesses – Equally Available To Both Sides</u>

There are people whose names you have heard during the course of trial, but who did not appear here to testify.  I instruct you that each party had an equal opportunity, or lack of opportunity, to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence. The burden of proof remains at all times with the Government.

Adapted from the charges of the Honorable Lewis A. Kaplan in
<u>United States</u> v. <u>Gatto</u>, 17 Cr. 686 (Oct. 1, 2018).

86

<u>REQUEST NO. 60:</u>  <u>Other Individuals Not on Trial</u>

You may not draw any inference, favorable or unfavorable, toward the Government or the defendant from the fact that any person was not named as a defendant in this case, and you may not speculate as to the reasons why other people are not on trial before you now.  Those matters are wholly outside your concern and have no bearing on your function as jurors in deciding the case before you.

Adapted from the charges of the Honorable Lewis A. Kaplan in
<u>United States</u> v. <u>Gatto</u>, 17 Cr. 686 (Oct. 1, 2018).

<u>REQUEST NO. 61:</u>   Defendant's Testimony
(If Applicable)

As you saw, the defendant took the witness stand and testified.  I have already instructed you on how you should evaluate the credibility of the witnesses you have heard in this case.  You should evaluate the defendant's testimony the same way that you judge the testimony of the other witnesses in this case.

> <u>See</u> <u>United States</u> v. <u>Gaines</u>, 457 F.3d 238, 240 (2d Cir. 2006) ("[I]f the defendant has testified, the trial court should tell the jury to evaluate the defendant's testimony in the same way it judges the testimony of other witnesses."); <u>but</u> <u>see</u> <u>United States</u> v. <u>Solano</u>, 966 F.3d 184, 197 (2d Cir. 2020) (holding that it was error for the district court to instruct that "any" witness with an interest in the outcome of the case, which included the defendant, necessarily has a "motive to testify falsely").

REQUEST NO. 62:   Defendant's Right Not to Testify
(If Requested by the Defense)

The defendant did not testify.  Under our Constitution, a defendant never is required to testify or to present any evidence because it is always the Government's burden to prove a defendant guilty beyond a reason doubt. A defendant never is required to prove that he is innocent. You may not attach any significance to the fact that the defendant did not testify. You may not draw any adverse inference against the defendant because the defendant did not take the witness stand. You may not consider this in any way in your deliberations.

Adapted from the charges of the Honorable Lewis A. Kaplan in
United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018).

<u>REQUEST NO. 63:</u>  <u>Particular Investigative Techniques Not Required</u>
(If Applicable)

You have heard reference to certain investigative techniques that were used or not used by the Government in this case.  There is no legal requirement that the Government prove its case through any particular means.  While you are to carefully consider the evidence adduced by the Government, you are not to speculate as to why the Government used the techniques it did or why it did not use other techniques.

Adapted from the charges of the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Gatto,</u> 17 Cr. 686 (Oct. 1, 2018).

REQUEST NO. 64:  Use of Evidence Obtained Pursuant to Searches
(If Applicable)

You have heard testimony about evidence seized, pursuant to search warrants signed by a judge, from email accounts, Twitter accounts, and electronic devices.  Evidence obtained from these searches was properly admitted in this case and may properly be considered by you.  Indeed, searches of online accounts and electronic devices are entirely appropriate law enforcement actions. Whether you approve or disapprove of how it was obtained should not enter into your deliberations because I now instruct you that the Government's use of this evidence is entirely lawful.

Adapted from the charges of the Honorable Lewis A. Kaplan in
United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018).

<u>REQUEST NO. 65:</u>  <u>Use of Charts and Summaries</u>

There is evidence before you in the form of charts and summaries.  Those exhibits purport to summarize the underlying evidence that was used to prepare them. I admitted these charts and summaries into evidence in place of or in addition to the underlying documents that they represent in order to save time and avoid unnecessary inconvenience.  They are no better than the documents upon which they are based.  Therefore, you are to give no greater consideration to these charts or summaries than you would give to the evidence upon which they are based.  It is for you to decide whether they correctly present the information contained in the testimony and in the exhibits on which they were based.

> Adapted from the charges of the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Dumitru</u>, 18 Cr. 243 (Nov. 6, 2018), and the Honorable Jesse M. Furman in <u>United States</u> v. <u>Avenatti</u>, No. 19 Cr. 374 (Feb. 1, 2022).

<u>REQUEST NO. 66:</u>  <u>Stipulations</u>
(If Applicable)

You have heard some stipulations in this case. Generically speaking, there are two kinds.

A stipulation of fact is an agreement between the parties that a certain fact is true. You must regard such agreed-upon facts as true, but it is still for you to determine the weight to be given to that evidence, to that fact.

A stipulation of testimony is an agreement between the parties that, if called as a witness, the person would have given certain testimony. You must accept as true the fact that the witness would have given that testimony. However, it is for you to determine the weight to be given to that testimony.

Adopted from the charge of the Honorable Richard J. Sullivan in
<u>United States</u> v. <u>Brennerman</u>, 17 Cr. 337 (Dec. 6, 2017).

93

REQUEST NO. 67:  Transcripts

Audio and video recordings have been admitted into evidence and transcripts of those recordings were provided to use as aids. I instructed you then, and I remind you now, that the transcripts are not evidence.  The transcripts were provided only as an aid to you in listening to the recordings.   It is for you to decide whether the transcripts correctly present the conversations recorded on the recordings that you heard.

> Adopted from the charge of the Honorable Richard J. Sullivan in
> United States v. Brennerman, 17 Cr. 337 (Dec. 6, 2017).

94

REQUEST NO. 68:  Redactions
(If Applicable)

There are, among the exhibits received in evidence, some documents that are redacted.

"Redacted" means that part of the document or recording was taken out.  You are to concern

yourself only with the part of the item that has been admitted into evidence.  You should not

consider any possible reason why the other part of it has been deleted.

Adapted from the charges of the Honorable Jesse M. Furman in
United States v. Avenatti, No. 19 Cr. 374 (Feb. 1, 2022), and from
the charge of the Honorable Lewis A. Kaplan in United States v.
Sterling, S4 16 Cr. 488 (Apr. 3, 2017).

95

REQUEST NO. 69:  Concluding Remarks

The Government respectfully requests that the Court close by instructing the jurors regarding the selection of a foreperson, communications with the Court during deliberations, provision of copies of the Indictment and jury charge, and the procedures regarding requests for particular exhibits or testimony.

Dated: New York, New York
       August 21, 2023

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney
                                        Southern District of New York


                               By:     /s/ Nicolas Roos
                                        Nicolas Roos
                                        Danielle Kudla
                                        Samuel Raymond
                                        Thane Rehn
                                        Danielle R. Sassoon
                                        Assistant United States Attorneys
                                        Southern District of New York