UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                                              :

UNITED STATES OF AMERICA          :

                                         :        S6 22 Cr. 673 (LAK)
      v.                                :

SAMUEL BANKMAN-FRIED,           :

                            Defendant.    :
------------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF SAMUEL BANKMAN-FRIED'S MOTION TO EXCLUDE TESTIMONY FROM GOVERNMENT EXPERT PETER EASTON**

 

**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, NY 10022
Phone: (212) 957-7600

*Attorneys for Samuel Bankman-Fried*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

I. Professor Easton Should Not Be Permitted To Present Opinion Testimony for Which No Basis Has Been Disclosed and That Is Outside His Expertise. ......................... 3

II. Professor Easton Should Not Be Permitted To Present a Factual Narrative that Should be Presented Through Percipient Witnesses and Documentary Evidence.............. 5

III. Professor Easton Should Not Be Permitted To Present Readouts from FTX's Database Without Any Proffered Expertise in Financial Databases. ................................. 8

CONCLUSION..................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1995) ...................................................................................................4

*In re Elysium Health-ChromaDex Litig.*,
    17-CV-7394 (LJL), 2022 WL 421135 (S.D.N.Y. Feb. 11, 2022) ............................................8

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136, 118 S.Ct. 512 (1997).......................................................................................10

*King v. Wang*,
    No. 14-CV-7694 (LJL), 2021 WL 5237195 (S.D.N.Y. Nov. 9, 2021).....................................4

*LinkCo, Inc. v. Fujitsu Ltd.*,
    No. 00-CV-7242 (SAS), 2002 WL 1585551 (S.D.N.Y. July 16, 2002) ...................................5

*Pretter v. Metro N. Commuter R.R. Co.*,
    No. 00-CV-4366 (JSR), 2002 WL 31163876 (S.D.N.Y. Sept. 30, 2002) ................................5

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004).....................................................................................5

**Other Authorities**

Fed. R. Crim. P. 16 .........................................................................................................................3

Fed. R. Evid. 702 ...........................................................................................................................5

Samuel Bankman-Fried respectfully submits this memorandum of law in support of his *Daubert* motions to exclude from trial testimony from Government Expert Peter Easton.

## INTRODUCTION

The claimed expert opinions of Government accounting expert, Professor Peter Easton, should be excluded in their entirety for either (i) failing to disclose *any* bases or reasons for the claimed opinion; (ii) drawing conclusions outside of Professor Easton's expertise; or (iii) constituting impermissible expert narration of purported evidence that, if admissible, the Government should be required to present through percipient witnesses and documentary evidence.

The Government's August 16, 2023, expert disclosures identify Professor Easton as an expert in "financial analysis, accounting, and financial tracing" and set forth nine opinions that the Government expects to elicit from Professor Easton at trial. (Lisner Decl. Ex. 1 ("Easton Disclosure").)

In his first opinion, the Government expects that Professor Easton will testify "concerning the manner in which [FTX] customer deposits and withdrawals were processed." (*Id.* at § B.1.) In addition to constituting impermissible expert narration (discussed below), this opinion further states that Alameda, as a recipient of fiat deposits, was required to maintain fiat currency in its accounts in an amount equal to FTX's ledger entry for the fiat@ftx.com account. (*Id.* ("The negative balance in the fiat@ftx.com account was treated as a liability of Alameda Research because Alameda Research was supposed to have an equal amount of fiat currency held in its accounts.").) Professor Easton's disclosure, however, nowhere identifies the basis for, or performs any analyses concerning, this assertion. Nor does Professor Easton's proffered qualifications identify any expertise of Professor Easton in financial regulations that would be

1

required to determine whether Alameda was required to maintain a specified amount of customer fiat in its account at a given time.

More broadly, however, many of Professor Easton's "opinions" simply narrate the Government's allegations with no apparent expert analysis to purportedly assist the jury. Specifically, the Government intends to elicit testimony from Professor Easton concerning, *inter alia*, (1) how FTX received customer deposits and accounted for such deposits internally; (2) how FTX deposits of fiat currency were received in bank accounts belonging to FTX, Alameda and North Dimension and commingled with funds belonging to Alameda; (3) how Alameda withdrew funds from those accounts such that the customer fiat deposits remaining in those accounts were smaller than Alameda's fiat liability reflected in FTX's accounting database; (4) how a portion of the fiat liability was transferred within FTX's database in or around August 2022; (5) how Alameda accrued a large negative balance on FTX by withdrawing billions of dollars from the exchange to pay its lenders and, despite the large negative balance, its accounts were not liquidated; (6) how Alameda's large negative balance was also due to borrowing through FTX's spot margin borrowing program and Alameda's use of FTT as collateral in the program; (7) how Alameda borrowed from third-party lenders between 2019 and 2022, including the amounts, counterparties, terms and repayment of the loans; (8) how Alameda used funds from customers and non-customer sources, and (9) Alameda's combined balance on FTX.com as of approximately November 2022.  (*See id.* at § B.1-9.)

With the potential exception of FTX database readouts, for which Professor Easton proffers no qualifications to perform, the jury can understand all these topics without the aid of an expert.  The Government should be required to prove its factual narrative by presenting admissible documentary evidence and testimony from percipient witnesses, not by substituting in

an expert witness with no first-hand knowledge of the facts at issue and no proffered expert analyses to aid the jury's understanding.

As further explained below, Mr. Bankman-Fried respectfully requests that Professor Easton's proposed testimony be excluded from trial in its entirety.

**ARGUMENT**

I.  **Professor Easton Should Not Be Permitted To Present Opinion Testimony for Which No Basis Has Been Disclosed and That Is Outside His Expertise.**

Professor Easton should not be permitted to testify that Alameda was required to maintain in its accounts fiat currency in an amount equal to a ledger entry on FTX's systems that (for a time) tracked customer deposits. (*See id.* at § B.1.) With no basis for the claimed opinion contained anywhere in the Government's disclosure for Professor Easton, the opinion should be excluded from trial for the Government's failure to satisfy Federal Rule of Criminal Procedure 16's disclosure requirements and Professor Easton's inability to support the opinion with anything more than his say so.

Rule 16 is clear that the Government is required to disclose to the defense "the bases and reasons for" all expert opinions it expects to present at trial. Fed. R. Crim. P. 16(a)(1)(G)(iii); *see also* Fed. R. Crim. P. 16 Advisory Committee notes ("[P]erhaps most important, the requesting party is to be provided with a summary of the bases of the expert's opinion."). Here, there can be no dispute that the Government's disclosure of Professor Easton's expected testimony does not disclose *any* basis for his apparent conclusion that Alameda was required to maintain fiat currency in its account equal to FTX's ledger entry for customer deposits. For this reason alone, Professor Easton's opinion concerning Alameda's purported cash maintenance requirement should be excluded.

3

Separate from failing to meet Rule 16's disclosure obligations, however, the Government cannot be permitted to present its take on a contested issue in this matter as established fact through the *ipse dixit* of an expert.  Courts applying *Daubert* and Rule 702 are clear that an expert's say so is insufficient to admit expert opinion at trial.  *See, e.g.*, *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability.  Under *Daubert*, that's not enough.").  "The trial court's gatekeeping function requires more than simply taking the expert's word for it."  *King v. Wang*, No. 14-CV-7694 (LJL), 2021 WL 5237195, at *20 (S.D.N.Y. Nov. 9, 2021) (quoting Fed. R. Evid. 702's Advisory Committee notes (internal quotation marks omitted) and excluding proffered expert opinion).  Here, the wholesale absence of any basis for the opinion prevents the Court from assessing (and the defense from challenging) Professor Easton's opinion on this issue in any way.

But even if Professor Easton had disclosed a basis for the opinion—which he did not—Professor Easton is not qualified to present at trial an opinion regarding what FTX was required or not permitted to do with customer fiat deposits.  Professor Easton is a professor of accounting.  (Easton Disclosure at 1.)  Neither the Government's disclosure, nor Professor Easton's *curriculum vitae* proffer any qualifications relevant to construing FTX's Terms of Service or opining whether any financial regulations support the opinion.[1]

Accordingly, Professor Easton's opinion that Alameda was required to maintain in its account fiat currency equal to an accounting entry in FTX's systems should be excluded.  (*See id.* at § B.1.)  And any request by the Government to supplement Professor Easton's disclosure

---

[1] To the extent that Professor Easton's opinion is based on a source other than a contract or regulation (*e.g.*, public statements made by FTX), such sources are likely evidence that the jury is capable of understanding without an expert's assistance and for which expert testimony must be excluded, as discussed in Section II below.

4

should be denied as futile; Professor Easton would be unqualified to render the opinion. Should the Court, however, be inclined to permit the Government to attempt to cure the deficiencies in Professor Easton's disclosure, the defense respectfully asks that the Government be required to do so in advance of trial and that the defense be provided a reasonable opportunity to oppose its admission or disclose expert rebuttal testimony if it wishes.

## II. Professor Easton Should Not Be Permitted To Present a Factual Narrative that Should be Presented Through Percipient Witnesses and Documentary Evidence.

Professor Easton's opinions constitute an impermissible factual narrative that does no more than repeat the Government's theory of the case without any proffered, admissible analysis to aid the jury. The Government should be held to its obligation to prove the facts it alleges against Mr. Bankman-Fried through admissible documents and testimony from percipient witnesses. Professor Easton's narration should be excluded from trial.

Rule 702 limits expert testimony to testimony based on "the expert's scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a). This requirement "ensures that expert witnesses will not testify about 'lay matters which a jury is capable of understanding and deciding without the expert's help.'" *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (Kaplan, J.) (quoting *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989)). Courts have found that factual narratives presented by an expert do not satisfy this requirement and must be excluded. *See Rezulin*, 309 F. Supp. 2d at 541; *see also Pretter v. Metro N. Commuter R.R. Co.*, No. 00-CV-4366 (JSR), 2002 WL 31163876, at *2 (S.D.N.Y. Sept. 30, 2002) (expert may "only testify about the underlying facts if he was actually bringing to bear his scientific expertise. . . ."). Rather, such a narrative, "to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence." *Rezulin*, 309 F. Supp. 2d at 551; *see also LinkCo, Inc. v. Fujitsu Ltd.*, No. 00-CV-7242 (SAS),

5

2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (to the extent an expert's testimony is based on "examination of documents, computer files, deposition transcripts and exhibits and other relevant sources of information," "testimony by fact witnesses familiar with those documents would be far more appropriate and renders the expert witness's secondhand knowledge unnecessary for the edification of the jury.") (citation and internal quotation marks omitted and alterations adopted).

As summarized above, Professor Easton's proffered "opinions" largely narrate the Government's allegations with little, if any, purported analyses or enunciation of specialized knowledge to aid the jury's understanding of evidence presented at trial. By way of example, Professor Easton's first opinion proposes to cover that "FTX.com received customer deposits principally in two ways: (i) in the form of deposits of fiat that were processed through bank accounts in the names of Alameda Research, North Dimension, FTX Trading, and FTX Digital Markets; and (ii) in the form of deposits of cryptocurrency that were processed through cryptocurrency wallets owned by FTX." (Easton Disclosure at § B.1.) This does no more than narrate the Government's indictment, a portion for which no expert testimony is required to understand. The problem pervades Professor Easton's entire disclosure. As the below illustrative comparisons make clear, Professor Easton's proposed "opinions" amount to little more than a one-to-one reading of the Government's "speaking indictment" (S5 Indictment, ECF No. 115).

6

- *Compare* Easton Disclosure at § B.1 ("FTX.com received customer deposits principally in two ways: (i) in the form of deposits of fiat that were processed through bank accounts in the names of Alameda Research, North Dimension, FTX Trading, and FTX Digital Markets. . . . When fiat deposits were made by customers, they were recorded as a negative entry in FTX's transaction database in the account fiat@ftx.com and were recorded as a positive credit in the customer's accounts.") *with* S5 Indictment ¶ 21 ("Once the North Dimension bank account was opened, FTX directed customer dollar deposits to the North Dimension account. Thereafter, when FTX customers deposited or withdrew fiat currency, Alameda personnel, who maintained control over the North Dimension account . . . manually credited or subtracted the customer's FTX account with the corresponding amount of fiat currency on an internal ledger system.").

- *Compare* Easton Disclosure at § B.2 ("Customers' funds deposited in the form of fiat were not held in segregated bank accounts for the benefit of those customers. Instead, funds received into accounts in the names of FTX, Alameda Research, and North Dimension were commingled with other funds belonging to or in the possession of Alameda Research.") *with* S5 Indictment ¶ 22 ("FTX never held customer funds in dedicated accounts for the benefit of customers or segregated from Alameda's assets. . . . Alameda commingled FTX customer funds with Alameda assets.").

- *Compare* Easton Disclosure at § B.5 ("Alameda Research accrued a large negative balance on FTX.com by withdrawing billions of dollars from the exchange. Alameda Research accrued a multi-billion-dollar negative balance in its primary account info@alameda-research.com and subaccount info@alameda-research.com/b_1_part_1. Notwithstanding the substantial negative balance in Alameda Research's subaccounts, the accounts were not liquidated.") *with* S5 Indictment ¶ 24 ("FTX permitted Alameda to maintain a negative balance, draw on a multi-billion-dollar line of credit, borrow funds from FTX without sufficient collateral, evade auto-liquidation, and withdraw funds off the exchange.").

Further, Professor Easton's disclosure does not purport to explain helpful specialized knowledge to aid the jury for any of his nine opinions. Instead, each opinion simply narrates a portion of the Government's factual theory and concludes by saying that the testimony will be based on a combination of documents produced in the case. (*See, e.g.,* Easton Disclosure at § B.1 ("the manner in which customer deposits and withdrawals were processed will be based

on explanatory documents provided on FTX's website, documents shared with investors and auditors, and from a review of bank and FTX database records.").  Nothing in Professor Easton's disclosure addresses how Professor Easton would provide insights that the jury cannot readily understand by reviewing the same documents and from hearing testimony from, *inter alia*, FTX employees (including the Government's cooperating witnesses) involved in managing FTX's website, its finances, its relationships with investors and auditors, its bank accounts and its database, should the Government elect to present such evidence.[2]  *See In re Elysium Health-ChromaDex Litig.*, 17-CV-7394 (LJL), 2022 WL 421135, at *29 (S.D.N.Y. Feb. 11, 2022) (excluding expert's summary of clinical study because it did "not say anything that a jury could not understand for itself simply by reading the study's abstract, or by hearing testimony from two of the study's authors," who the court presumed could be offered as fact witnesses).

Accordingly, the Government should not be permitted to present through Professor Easton a factual narrative that the jury can understand without an expert's assistance and that the Government is obligated to prove through percipient witnesses and admissible documentary evidence.

### III. Professor Easton Should Not Be Permitted To Present Readouts from FTX's Database Without Any Proffered Expertise in Financial Databases.

Professor Easton's disclosed opinions rely, in part, on his review of records from FTX's database.[3]  Indeed, some of his opinions could have *only* been derived from FTX's database.  (*See* Easton Disclosure at § B.9 ("As of approximately November 2022, Alameda

---

[2] The remainder of Professor Easton's opinions rely on similar sources and should be excluded on the same basis.

[3] The Government's disclosures refer to "FTX's transaction database" and "FTX's accounting database."  (*See* Easton Disclosure at § B.1.)  It is unclear if the disclosures are referring to a single database, or two or more databases.  To the extent the Court is inclined to permit Professor Easton's testimony in its entirety at this stage, we respectfully request that the Court order the Government to clarify which databases Professor Easton has relied on and produce such databases to the defense to the extent they have not previously been produced.

Research's combined balance on FTX.com, including in all info@alameda-research.com accounts and the ftx_fiat_old balance, was approximately in excess of negative $10 billion.")). But as the Court is aware from various discovery-related issues, the FTX database is an enormous and complex database custom built by FTX, which must be reviewed in conjunction with FTX's Python codebase, also custom developed by FTX. Nowhere, however, does Professor Easton's expert disclosure indicate that he has any expertise concerning financial databases or Python coding. Accordingly, Professor Easton's testimony arising from and concerning the FTX database must be excluded as outside of his expertise.

Querying and pulling data from the FTX database requires expertise in financial database architecture and operations, as well as associated database computer coding.[4] While Professor Easton is proffered as an expert in "financial analysis, accounting, and financial tracing," (*id.* at 1), nothing in his expert disclosure indicates that Professor Easton has any expertise in financial databases, their architecture, or their operations. Nor do his website profiles indicate any such expertise.[5] And none of Professor Easton's publication titles address financial databases. (*See* Easton Disclosure, Appx. A.) Moreover, the Government has access through its cooperating witnesses to the very individuals who created, operated and maintained the database and its associated coding (Gary Wang and Nishad Singh), making Professor Easton's designation in this regard particularly curious. (*See, e.g.,* Singh Plea Hearing Tr. at 28:13-18, ECF No. 102 ("I became the head of engineering at FTX, where I was responsible for coding, other aspects of FTX's platform. . . .").)

---

[4] For this reason, the defense disclosed a financial database expert to address issues concerning the FTX database, including data outputs from it.

[5] *See* Cornerstone Research (https://www.cornerstone.com/experts/peter-easton/); Brattle Group (https://www.brattle.com/experts/peter-easton/); Mendoza College of Business (https://mendoza.nd.edu/mendoza-directory/profile/peter-easton/).  (All accessed on Aug. 24, 2023.)

9

With no relevant expertise apparent, Professor Easton's testimony concerning FTX's database and data outputs therefrom must be excluded as insufficiently connected to his expertise.  *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 519 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Should the Government claim in opposition that Professor Easton's apparent lack of database credentials is irrelevant because Professor Easton is qualified to opine on accounting data that was pulled from the database by others, the defense requests that Professor Easton provide reasonably in advance of trial the data pulled for him by others from the database on which his testimony will rely, including the coding used to obtain it from the FTX database.

**CONCLUSION**

For the reasons set forth above, Mr. Bankman-Fried respectfully requests that Professor Easton's proposed expert testimony be excluded in its entirety.

Dated:  August 28, 2023
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*/s/ Mark S. Cohen*
　　　　　　　　　　　　　　　　　　　　　Mark S. Cohen
　　　　　　　　　　　　　　　　　　　　　Christian R. Everdell
　　　　　　　　　　　　　　　　　　　　　David F. Lisner
　　　　　　　　　　　　　　　　　　　　　Sri K. Kuehnlenz
　　　　　　　　　　　　　　　　　　　　　**COHEN & GRESSER LLP**
　　　　　　　　　　　　　　　　　　　　　800 Third Avenue, 21st Floor
　　　　　　　　　　　　　　　　　　　　　New York, NY  10022
　　　　　　　　　　　　　　　　　　　　　Phone:  (212) 957-7600
　　　　　　　　　　　　　　　　　　　　　mcohen@cohengresser.com
　　　　　　　　　　　　　　　　　　　　　ceverdell@cohengresser.com
　　　　　　　　　　　　　　　　　　　　　dlisner@cohengresser.com
　　　　　　　　　　　　　　　　　　　　　skuehnlenz@cohengresser.com

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Samuel Bankman-Fried*