

**COHEN & GRESSER LLP**

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

August 30, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:  *United States v. Samuel Bankman-Fried*, S6 22 Cr. 673 (LAK)

Dear Judge Kaplan:

    On behalf of our client, Samuel Bankman-Fried, we respectfully submit this letter in response to the Government's three submissions to the Court dated August 29, 2023 (ECF Nos. 237, 238 & 239).

    At the present time, the defense is unable to adequately prepare for trial and prepare the defense, which is a violation of Mr. Bankman-Fried's Sixth Amendment rights. The path the Government has chosen to take inevitably leads to inadequate representation which cannot be remedied as long as Mr. Bankman-Fried is incarcerated without internet access. There are millions of pages of documents, many of which have only recently been produced. The defendant is being wrongly deprived of his right to counsel and this violation must be remedied.

    To detail just a few of the problems: (1) The Government has failed to provide Mr. Bankman-Fried with regular and reliable access to the discovery despite its promises to do so, (2) the internet access provided to Mr. Bankman-Fried two days a week is woefully inadequate and is actually often not available, and (3) the ability of counsel to consult with and discuss the defense with Mr. Bankman-Fried has proven to be cumbersome, time consuming and not productive.

    And this is just the tip of the iceberg. This is a document-heavy case and Mr. Bankman-Fried is entitled to defend himself. The Government pretending that his current circumstances are not interfering with his right to counsel is false. We implore the court to allow Mr. Bankman-Fried access to counsel and the material which can be accomplished by allowing him to be released in the custody of his parents subject to severe constraints. Nothing short of that will suffice.

**I.      Release Under Section 3142(i) Is Necessary for Mr. Bankman-Fried to Prepare His Defense.**

The Government's most recent plan to provide discovery access to Mr. Bankman-Fried while he is detained at the Metropolitan Detention Center (MDC) remains entirely inadequate. (ECF No. 238). As stated in defense counsel's previous letters (ECF Nos. 210 & 228), the volume and complexity of the discovery in this case is unique. Mr. Bankman-Fried requires consistent access to an internet-enabled computer to review the monumental amount of discovery in his case and participate in his own defense. The Government acknowledged this reality at the hearing on its motion for detention, even proposing that Mr. Bankman-Fried be held in Putnam County Correctional Facility where Mr. Bankman-Fried could purportedly possess a "laptop that is enabled for internet-based discovery review." Tr. 8/11/2023 Conf. at 6; *see also id.* ("The goal would be to implement features similar to the laptop that the defendant currently is able to use -- namely, one that would only permit access to the defense's Relativity database and to the AWS database.") But the Government now asks the Court to essentially ignore its previous representations around what Mr. Bankman-Fried would, it conceded, practically need to prepare for trial, and instead accept the half-measures that it proposes. Because the Government's current discovery proposals are insufficient to allow Mr. Bankman-Fried to realistically prepare for trial, he seeks temporary release from detention pursuant to 18 U.S.C. § 3142(i).

The Government's plans for providing Mr. Bankman-Fried access to discovery have followed a pattern—they have made numerous promises that have never materialized and the partial measures they have taken have not worked in practice. The Government's current proposal for access to discovery consists of: (1) the provision of an air-gapped laptop to Mr. Bankman-Fried at MDC during visiting hours, so long as an attorney is present; and (2) transport to the 500 Pearl Street cellblock two days per week, where he has been promised access to an internet-enabled laptop. The Government touts these as significant accommodations to Mr. Bankman-Fried; in truth, they amount to far less than what was promised him at the hearing on remand, even assuming they are adequately implemented.

*First*, the provision of an air-gapped laptop to Mr. Bankman-Fried during MDC visiting hours in no way "moots" Mr. Bankman-Fried's "chief complaint" around access to discovery. (ECF No. 238 at 2). As defense counsel has noted time and again, the utility of an offline-only laptop is severely limited where, as here, one is dealing with millions upon millions of discovery documents. The Government itself has conceded it would take "at least weeks" (and in light of recent productions, presumably longer) to load the discovery material onto a hard drive, and that in any case such documents would not be searchable, and may not even be readable, on an air-gapped laptop. Tr. 8/11/2023 Conf. at 42. Moreover, Mr. Bankman-Fried is entirely unable to access the AWS database from an air-gapped laptop, putting this key source of information wholly out of reach.

The Honorable Lewis A. Kaplan
August 30, 2023
Page 3

Mr. Bankman-Fried also requires limited internet access in order to look up relevant context for evidence online, draft and edit work product analyzing the documents and data, and quickly share these documents and analyses with his attorneys. The Government tries to handwave away some of these concerns by saying that Mr. Bankman-Fried and his attorneys can simply collaborate "through the exchange of hard drives." (ECF No. 238 at 5). But it is far from clear that such "exchanges" will be remotely practicable. Defense counsel previously sent Mr. Bankman-Fried two hard drives at MDC with certain key discovery materials that arrived on August 22 and August 24. It is now a week after the initial hard drive arrived at MDC and he still has yet to receive it or be able to review any of the information on it. We expect this pattern to repeat with future hard drives.

In any case, it is telling that the Government now portrays the provision of an air-gapped laptop to Mr. Bankman-Fried as a significant accommodation and essentially special treatment, when it is no more than what the Court presumed would be provided, at a minimum, to Mr. Bankman-Fried during his detention at MDC. *See* Tr. 8/11/2023 Conf. at 40-41 ("I understand that he could have a dedicated laptop at the MDC, which would be retained in the visiting room area, to which he would have access very liberally -- nine, ten, eleven, twelve hours a day.") That this absolute baseline provision of discovery access has yet to be put into place nearly three weeks after Mr. Bankman-Fried was remanded—and with only four and a half more weeks until trial—demonstrates why Mr. Bankman-Fried cannot rely on the Government's representations of discovery access.

*Second*, the Government's proposal to transport Mr. Bankman-Fried to the 500 Pearl Street cellblock two days per week and give him limited access to an internet-enabled laptop for six hours at a time does not compensate for Mr. Bankman-Fried's otherwise severe lack of access to discovery and means to collaborate with his attorneys. Nor have the cellblock visits been anything like the boon to trial preparation that the Government makes them out to be. As the defense already noted to the Court (ECF No. 228 at 2), during two visits to the cellblock last week, the internet connection was down for over half of the visit—rendering the purpose of the visit largely moot—and slow for the remainder of the time. The computer battery also cannot be charged in the cellblock, an issue the Government proposes to address with a new battery that should last "approximately four hours" (ECF No. 238 at 5)—substantially short of the six-hour length of the cellblock visits. Moreover, when Mr. Bankman-Fried previously handed documents to BOP staff that he intended to review in the cellblock, the documents were never produced to him during his visit. Given these problems, it is hardly "remarkable" that Mr. Bankman-Fried did not wish to go through this process yet again in the absence of some assurance that such visits could actually be productive. But even if the Government's promises to address these issues are borne out, the cellblock visits can at best provide only a small fraction of the internet-enabled discovery access that Mr. Bankman-Fried requires to prepare for trial.

Mr. Bankman-Fried is facing a lengthy trial on serious, complex charges which will begin in just under five weeks and has spent the past three weeks pressing the Government to

The Honorable Lewis A. Kaplan
August 30, 2023
Page 4

provide the access to discovery that it had represented he would have. Time and again the Government's promises around providing him bona fide access to discovery have proven empty, and even if the Government's discovery proposals were fully and effectively put into place, they would not provide the consistent access to cloud-based search that he needs to effectively prepare. As the Court acknowledged at the hearing on remand, where, as here, the situation with access to discovery in detention cannot be effectively worked out, there is a "remedy of last resort" under 18 U.S.C. § 3142(i). Tr. 8/11/2023 Conf. at 41. Section 3142(i) provides that:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C.A § 3142(i).

The defense submits that the remedy of temporary release of Mr. Bankman-Fried is necessary and appropriate at this juncture to enable him to prepare for trial. In *United States v. Stephens*, the district court determined that obstacles in arranging legal calls with a defendant during the COVID-19 pandemic were sufficient to support pretrial release of the defendant to prepare his defense. 447 F. Supp. 3d 63, 67 (S.D.N.Y. 2020); *see also United States v. Persico*, No. S 84 CR 809 (JFK), 1986 WL 3793, at *1 (S.D.N.Y. Mar. 27, 1986) (discussing cases granting temporary pretrial release where "effective preparation of a defense might have been impossible in the short time available before the commencement of trial."). The near-impossibility of preparing for trial renders Mr. Bankman-Fried's release similarly appropriate.

The Government's reliance on *United States v. Dupree* to preemptively counter any release under Section 3142(i) is misplaced. Unlike Mr. Bankman-Fried, the defendant in *Dupree* "had adequate time—nearly fourteen months—since the original indictment was returned to prepare for trial." *United States v. Dupree*, 833 F. Supp. 2d 241, 248 (E.D.N.Y. 2011). The original indictment for Mr. Bankman-Fried was returned less than 10 months ago and the government did not start producing discovery until February. More critically, the *Dupree* court found that the defendant's release was not "necessary" because the MDC agreed to make extraordinary arrangements for the defendant, beginning four weeks before his trial, to allow him extensive access to his counsel and a computer to prepare for trial—including "access to an attorneys' visiting room with a computer that can read DVDs from 9:00 a.m. to 3:30 p.m., with or without counsel, beginning on November 7, 2011 and until the start of trial on December 5, 2011."

Four weeks before Mr. Bankman-Fried's trial, the Government and the MDC continue to deny Mr. Bankman-Fried necessary access to his discovery materials. In light of these concerns, Mr. Bankman-Fried's release under Section 3142(i) is appropriate. Mr. Bankman-Fried is of course willing to work closely with the Government on crafting conditions of temporary release

that would address any reasonable concerns around safety of the community during any such periods of temporary release.

### II. Mr. Bankman-Fried's Disclosures Regarding his Reliance on an Advice of Counsel Defense Are Sufficient.

The Government believes it is entitled to information about our defense well before it has advised us of the scope and extent of their case. That simply is not the law. In an attempt to circumvent the ordinary process associated with prosecutions, the Government is seeking to solicit information to which it is not yet entitled. Once the Government fully produces its discovery to the defendant, we will advise the Government of the nature of its defense in connection with the clear participation by counsel.

As the Government concedes, courts have recognized that evidence of the involvement of attorneys in the allegedly inculpatory events at issue is relevant to whether a defendant acted in good faith and thus did not possess the requisite intent. *See* ECF No. 239 at 4 (citing *United States v. Tagliaferri*, No. 13 Cr. 115 (RA) (S.D.N.Y. June 26, 2014), Trial Tr. at 84-85)[1]; *Howard v. S.E.C.*, 376 F.3d 1136, 1147 (D.C. Cir. 2004). In *Tagliaferri*, Judge Abrams permitted "the defendant to elicit testimony that attorneys were involved in the transactions [and] . . . to argue that this involvement affected [the defendant's] state of mind, thus bearing on whether he acted with fraudulent intent." *Tagliaferri* 6/26/14 Trial Tr. at 83-84; *see also id.* at 84 ("[T]he defendant may argue that attorneys who drafted or reviewed documents related to the charged transactions did not inform him of the illegality of his receiving fees or that formal disclosure of them was required, and that the defendant took comfort in the attorney silence.").

The defense will, of course, provide whatever detail the Court requires. However, at this stage, we respectfully submit that the parties should confer following defendant's pre-trial disclosures on September 18, 2023 and submit a proposal to the Court in advance of the final pre-trial conference regarding any outstanding issues at that time. The cases the Government cites to suggest that more extensive disclosures are required now are inapposite because none ordered the defendant to make such detailed disclosure before the Government disclosed its witness and exhibit lists. *United States v. Ash*, No. 19 Cr. 780, ECF Nos. 90 & 105 (S.D.N.Y. Nov. 15, 2021) (ordering disclosure eleven days before trial, three days *after* the government's proposed witness and exhibit lists were due); *United States v. Scali* No. 7:16-CR-00466. 2018 WL 461441 at *8 and ECF Nos. 120 and 123 (S.D.N.Y. January 18, 2018) (ordering disclosure of materials related to advice of counsel defense more than a month *after* the government's and defendant's proposed exhibit lists were due);[2] *United States v. Rubin/Chambers, Dunhill Ins.*

---

[1] The Government in its letter cited the trial transcript from *Tagliaferri* for June 24, 2014. This appears to be a clerical error and we believe the Government intended to cite the June 26, 2014 *Tagliaferri* trial transcript.

[2] The defense can provide copies of the relevant dockets and scheduling orders of the cases cited here upon request.

*Serv's*, 828 F.Supp.2d 698, 711 (S.D.N.Y. 2011) (ordering disclosure in advance of final pretrial conference, which occurred more than a month after the Government's final witness and exhibit lists were due); *see also United States v. Rubin/Chambers, Dunhill Ins. Serv's*, Case No. 09 Cr. 1058, ECF No. 164 & 267 (scheduling orders). Here, per the Court's scheduling order, the Government's exhibit and witness lists are not due until September 8, and Mr. Bankman-Fried is not required to provide a witness or exhibit list until September 18. ECF No. 173. It would therefore be unreasonable and impractical to require him to make detailed disclosures at this stage.

The defense's proposal accords with the approach in *United States v. Rubin*, on which the Government relies. In *Rubin*, the Court denied the Government's request for detailed notice of materials related to an advice of counsel defense six weeks in advance of trial, and instead required the parties to confer in advance of the final pretrial conference. *United States v. Rubin/Chambers, Dunhill Ins. Serv's*, 828 F.Supp.2d 698, 711 (S.D.N.Y. 2011). The Court specifically held that the Government's concerns regarding potential evidentiary disputes were unwarranted, holding that "any outstanding issues or disputes related to . . . advice of counsel defenses can be resolved at the final pre-trial conference." *Id.* That is what we propose to do here.

### III. The Court Should Preclude Late-Produced Discovery.

With regard to the defendant's motion *in limine* to exclude late-produced discovery, the Government's position seems to be that as long as it disclosed that it would be producing discovery late, then it is free to do so well beyond its promised deadlines with no consequences, even up to just a few weeks before trial. That cannot be so. The Government controlled the timing of when to bring this case, not the defense. The Government is in this position because it rushed to charge Mr. Bankman-Fried before it had collected, or even requested, the relevant documents and was therefore not prepared to provide discovery in a timely fashion. The defendant is entitled to timely production of discovery so that he can have a meaningful opportunity to review it before trial.

The Government's lengthy explanations for why it produced documents so late are of no consequence. ECF No. 237 at 4-5. The defense does not doubt that the Slack archives from Gary Wang's laptop took a long time to convert into a readable format, and that the delay in producing the documents from Google was due to an error by Google, and that document returns from third-party subpoenas continue to flood in even to this day. *Id.* But that does not mean that the defendant should bear the consequences of late production. If the Government cannot provide the discovery until the eve of trial, the Court can and should preclude the Government for introducing this evidence.

The defense takes issue with several of the assertions made by the Government. First, the Government downplays the production of roughly 4 million pages of Google documents on

The Honorable Lewis A. Kaplan
August 30, 2023
Page 7

August 23 by stating that it consisted of documents from Mr. Bankman-Fried's own Google accounts to which he already had access. That is inaccurate. The production included thousands of documents from Mr. Bankman-Fried's Alameda Google account, to which he lost access after the bankruptcy. Second, the Government gives the impression that the production on August 25 was almost entirely duplicative of the August 23 production. While the defense acknowledges that the production included a filtered set of the Google documents produced on August 25, it also contained over 1 million pages of additional discovery, most of it from the FTX Debtor entities. That is still a prohibitively large amount of discovery to review just a few weeks before trial.

Finally, the Government incorrectly places blame on the defense for not objecting at the June 15, 2023 conference about the status of discovery. ECF No. 237 at 4. But the defense did object in its letter of June 5, 2023, submitted before the conference. ECF No. 153. In that letter, we noted that "late production of such voluminous and important discovery will impact the preparation of the defense" and indicated that we reserved the right to "move the Court to preclude the Government from using evidence produced too close to trial." *Id.* At the time of the conference, we did not know that the Government would produce such voluminous discovery so close to the trial. As such, the remedy we previewed in June is now appropriate.

Respectfully submitted,

/s/ Mark S. Cohen
Mark S. Cohen
Christian R. Everdell
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, New York 10022
(212) 957-7600
mcohen@cohengresser.com
ceverdell@cohengresser.com

cc:   All counsel of record (via ECF)