N8M4BANA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                          22 Cr. 673 (LAK)(SN)

SAMUEL BANKMAN-FRIED,

                                       Arraignment
            Defendant.
------------------------------x

                                       New York, N.Y.
                                       August 22, 2023
                                       9:15 a.m.

Before:

                     HON. SARAH NETBURN,

                                      U.S. Magistrate Judge

                        APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
DANIELLE KUDLA
DANIELLE SASSOON
THANE REHN
NICOLAS ROOS
    Assistant United States Attorneys

COHEN & GRESSER LLP
    Attorneys for Defendant
BY:  MARK S. COHEN
     CHRISTIAN R. EVERDELL


Also Present:

Luke Booth, FBI
Kristin Allain, FBI

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

1            (Case called)
2            MS. KUDLA:  Good morning, your Honor.  On behalf of
3    the United States, you have AUSAs Danielle Kudla, Danielle
4    Sassoon, Nick Roos, Thane Rehn, and we are joined at counsel
5    table by case agents from the FBI, Luke Booth and Kristin
6    Allain.
7            THE COURT:  Thank you.  Good morning.
8            And for the defense?
9            MR. COHEN:  Good morning, your Honor.  Mark Cohen,
10   Cohen & Gresser for the defendant, Samuel Bankman-Fried.  Good
11   morning, your Honor.
12           MR. EVERDELL:  Good morning, your Honor.  Christian
13   Everdell for the defendant, Samuel Bankman-Fried.
14           THE COURT:  Good morning.
15           And good morning, Mr. Bankman-Fried.  My name is Judge
16   Netburn.
17           We are here to arraign you on the superseding
18   indictment, which I have before me.
19           Have you received a copy of the sixth superseding
20   indictment?
21           Can I ask you to move the microphone so I can hear
22   you.
23           THE DEFENDANT:  Yes.
24           THE COURT:  Thank you.
25           Have you had an opportunity to review it with your

1   lawyers?

2           THE DEFENDANT:  Yes.

3           THE COURT:  I just want to quickly go over the counts.

4           You are charged in Count One with wire fraud on
5   customers of FTX.  That count is brought under Title 18 of the
6   United States Code, Section 1343 and 2.

7           Count Two charges you with conspiracy to commit wire
8   fraud on customers of FTX.  That count is brought under Title
9   18 of the United States Code, Section 1349.

10          Count Three charges you with wire fraud to lenders to
11  Alameda Research.  That count is also brought under Title 18 of
12  the United States Code, Section 1343 and 2.

13          Count Four charges you with conspiracy to commit wire
14  fraud on lenders to Alameda Research.  That count is brought
15  under Title 18 of the United States Code, Section 1349.

16          Count Five charges you with conspiracy to commit
17  securities fraud on investors in FTX.  That count is brought
18  under Title 18 of the United States Code, Section 371.

19          Count Six charges you with conspiracy to commit
20  commodities fraud on customers of FTX in connection with
21  purchases and sales of cryptocurrency and swaps.  That count is
22  brought under Title 18 of the United States Code, Section 371.

23          Finally, Count Seven charges you with conspiracy to
24  commit money laundering in violation of Title 18 of the United
25  States Code, Section 1956(h).

1           You have the right to have me read this entire
2    indictment to you if you would like, but you can waive that
3    right.
4           Would you like me to read it to you?
5           THE DEFENDANT:  No, thanks.
6           THE COURT:  How do you plead to the charges?
7           THE DEFENDANT:  Not guilty.
8           THE COURT:  I will enter a plea of not guilty on your
9    behalf.
10           Any further applications from the government?
11           MS. KUDLA:  Your Honor, we move to exclude time
12    between now until the trial date, which Judge Kaplan told the
13    parties would be on October 3, and it is on the public docket
14    as October 2.
15           THE COURT:  Thank you.
16           Any objection from defense counsel?
17           MR. COHEN:  No, your Honor.
18           We have a couple matters we would like to raise with
19    the Court.
20           THE COURT:  Hearing no objections on the speedy trial
21    exclusion, I'll exclude time until October 3 and note the error
22    on the docket with respect to the trial date.
23           Yes, Mr. Cohen.
24           MR. COHEN:  Your Honor, there's two topics we'd like
25    to raise today relating to our client being held at the MDC.

My partner, Mr. Everdell, raised the first topic relating to access, and then there's some medical issues I'd like to raise with the Court.

THE COURT:  With respect to the medical issues, if you'd rather raise them at sidebar if they are personal, I'm happy to entertain that.

MR. COHEN:  Thank you, your Honor.  They are the subject of a public court order, so we can discuss them in court.

THE COURT:  Very well.  I'll hear from your colleague first.

MR. EVERDELL:  Thank you, your Honor.

We feel we must raise what we consider to be serious Sixth Amendment issues with our client's access to the discovery in this case.  As things stand now, there is no way for him to effectively prepare his defense and participate in his defense.

Mr. Bankman-Fried was remanded by Judge Kaplan on August 11.  He's been housed at the MDC since then, which means he has not had access to the discovery for 11 days.  It's only about six weeks from trial, and he has now had close to two weeks of time where he's had no access to the discovery.  The discovery in this case, your Honor, is extraordinarily voluminous.  The only way to review it is online through a searchable database.  In fact, it's so voluminous the

government has said that they have really no way of putting this full discovery on hard drives to provide it to the defendant in the MDC. Because it's so voluminous, the process of doing that would take weeks at best. Given the closeness of the trial date, that's an impracticability. We have to do this online. It's the only way for our client to have access to the discovery that he needs to be able to prepare for trial.

Your Honor, the solutions, if that's what they can be called, that we've been offered up to this point, have been one fiction after another. The first so-called plan was to have the client detained at Putnam Correctional Facility, which is a state facility, not a BOP facility, because I guess the government has some indication maybe that he can have an internet-enabled laptop at Putnam. That was an impossibility from the beginning. That was quickly told, as soon as that was raised, that that wasn't an option.

The next plan after that was to somehow convince the MDC to allow our client to have an internet-enabled computer inside the MDC so he can review the discovery while he was detained in the MDC. That, of course, was also an impossibility. That's not going to happen. We know this now. That's not going to be the solution, and it never really was going to be the solution.

Now the plan is to have our client produced to the cellblock here, at the 500 Pearl Street courthouse, twice a

1  week so that he can be given an internet-enabled computer with
2  limited access to just the internet that houses the discovery
3  platform and another piece of the discovery that is housed
4  solely online.  And that can happen twice a week.  Apparently
5  from maybe 9:00 to 3:00 p.m., he will have access to this
6  laptop.  That is supposed to start today.
7  	But, your Honor, that just meant that his access to
8  discovery went from seven days a week unlimited access to two
9  days a week, and not even full days, two days a week in a case
10 where we're talking about millions and millions of pages of
11 discovery, terabytes of data, all of which need to be reviewed
12 online.
13 	Your Honor, furthermore, even if he's able to work
14 with this laptop and actually look at the data and look at the
15 discovery twice a week for a limited amount of time, there is
16 no way for him to effectively communicate his thoughts, his
17 analysis, his work product on that discovery to his lawyers.
18 We may be allowed to sit across from him in the cellblock and
19 hear what he has to tell us.  Apparently, he's going to have
20 access to paper and pencils, so he can hold something up to the
21 glass, I guess, something written, but this is not sufficient.
22 He needs to be performing analyses on this data and drafting
23 work product that we can actually review and discuss and
24 analyze ourselves.  It's going to be no substitute.  It's
25 simply insufficient for him to be able to write some random

1   note down and for us to be sitting across from him where we
2   don't even get full access to him.
3           Your Honor, this is --
4           THE COURT:  Can I interrupt for one second.
5           I'm obviously new to this case, so I don't know what
6   accommodations have been discussed up until now, and maybe what
7   I'm saying is a crazy thing.  Does he have to be in a cellblock
8   when he's here?  Has there been a discussion as to whether or
9   not a "war room" might be made available?
10          MR. EVERDELL:  Your Honor, I'm glad you raised it,
11  because that's exactly the solution we proposed, that he be
12  able to be produced to the war rooms, the proffer rooms in 500
13  Pearl Street, five days a week, not two days a week, so that we
14  can sit next to him with our own computers and be able to share
15  work product in some way.
16          THE COURT:  I'll give you an opportunity to speak.
17          MR. EVERDELL:  That was rejected. So we are left with
18  what we have now, which is inadequate by a long stretch.  It's
19  unacceptable, it's insufficient, and it's not fixable.  This
20  cannot work as it currently is.  There has to be a solution
21  where he can review discovery more than twice a week for half a
22  day.  If he is going to continue to be housed at MDC, there has
23  to be a solution at MDC because what we have now is not
24  sufficient.  It is a major Sixth Amendment issue.  It means he
25  cannot help prepare his defense, and we will be left with a

situation where our client's Sixth Amendment constitutional rights are being violated six weeks before trial, and he will be unable to effectively participate and prepare his defense.

THE COURT: Thank you.

MR. COHEN: Your Honor, if I might take up the medical topics.

THE COURT: Can I actually let the government respond on this before we take that up.

MR. COHEN: Sure.

MS. KUDLA: Your Honor, on the discovery issues, these are issues that have been briefed fully before Judge Kaplan on August 18, both by the government and defense counsel. Judge Kaplan issued an order yesterday denying the defense counsel's request, so there's no need for this Court to delve into these issues at this time.

THE COURT: Interesting.

Mr. Everdell, are you aware of that?

MR. EVERDELL: Your Honor, yes, I'm aware of this. We have brought this issue before the Court, before Judge Kaplan, but we have not yet --

THE COURT: I'm sure you know that typically magistrate judges don't review district judge's decisions on appeal.

MR. EVERDELL: Yes, I do, your Honor. I'm simply making a record of the fact that the solution that is in place

Case 1:22-cr-00673-LAK   Document 251   Filed 09/05/23   Page 10 of 13     10
N8M4BANA

now is inadequate.  If we have to raise these issues again before Judge Kaplan, we can and we will.  But we felt that we needed to make a record at this time that the solution that is currently in place is not acceptable and, we believe, is a violation of our client's Sixth Amendment rights.

THE COURT:  OK.  Understood.  I appreciate you making the record.  I'll be sure to convey it to Judge Kaplan, but I think, in light of the fact he issued a ruling yesterday on this topic, I don't think it's really my place to reconsider the issue.

MR. EVERDELL:  I understand, your Honor.

THE COURT:  Thank you.

Mr. Cohen, did you want to raise some medical issues?

MR. COHEN:  Yes, your Honor.  There are three topics that I would like to raise.

My client takes Adderall, which helps him focus.  This is prescribed.  He takes Emsam, which is also prescribed for a medical condition.  And like many people in the world, he follows a vegan diet.  His bail was revoked on August 11.  Judge Kaplan issued an order on August 14 requiring the Bureau of Prisons to provide both medications to my client.  He has not received his Adderall at all in the last 11 days.  He received some doses of Emsam.  He has a couple left.  He is fearful that they will run out.  Notwithstanding a court order, notwithstanding multiple requests by our client and counsel, he

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

is not getting one of the medications he needs to help focus six weeks before trial.  He's on a limited supply of the other medication.

Notwithstanding multiple requests for a vegan diet, he continues to be served a flesh diet.  Because he is following his principles, he's literally now subsisting on bread and water, which are the only things he's served that he can eat, and sometimes peanut butter.

We have a client facing trial, a five-week trial, coming up in six weeks in one of the most complex cases in this courthouse, who is being housed on a subsistence bread-and-water diet, being denied medication to focus.  Your Honor, that's outrageous, and it needs to be remedied.

THE COURT:  I will certainly look into this issue right away, and hopefully we'll have a resolution before the day is over.

With respect to the vegan diet, I don't know enough about BOP offerings.  I'm reasonably confident that they provide vegetarian offerings, but vegan offerings may be something that is unavailable.  I hope that sort of accommodation is a reasonable compromise position.

MR. COHEN:  All they provided him was the flesh meal that every other --

THE COURT:  I understand.  But I'm saying as a solution to the problem, a vegan diet may not be available, but

1   I presume that a vegetarian one is.  So I'll look into both of
2   those issues right away.
3            Anything the government has to say on these topics?
4            MS. KUDLA:  Your Honor, a note on the medical issues
5   raised by counsel.  Judge Kaplan entered an order on August 14.
6   This is the first time that we are hearing any notice from
7   counsel regarding the medication issues with that, so we have
8   not had an opportunity to look into this or raise it with the
9   BOP.
10            The government did raise the no-flesh diet with the
11  BOP several days ago at counsel's request.
12            THE COURT:  And have you heard back from them on that
13  topic?
14            MS. KUDLA:  We have not heard back from the BOP on
15  that topic.
16            THE COURT:  OK.  I assume they will answer my inquiry
17  quickly, so I'll reach out to them when we adjourn.  All right.
18            MR. EVERDELL:  Your Honor, I'm sorry.
19            THE COURT:  Yes.
20            MR. EVERDELL:  I do believe we did raise the fact that
21  he was not getting his Adderall with the government.  I can't
22  point to a specific email or time, but I believe we had that
23  discussion.  I felt like I had to say that for clarity's sake,
24  because I don't think this is the first time this issue has
25  been raised with the government.

|   |   |
|---|---|
| 1 | THE COURT:  I'll make sure it's addressed right away. |
| 2 | Do I need any more information other than that it's Adderall |
| 3 | and Emsam?  I don't know if I need dosages or anything like |
| 4 | that.  I assume if I ask the Bureau of Prisons to look into it, |
| 5 | they will consult with -- |
| 6 | MR. COHEN:  I don't have Judge Kaplan's order with me, |
| 7 | but it's in the order, your Honor. |
| 8 | THE COURT:  OK.  I can find that. |
| 9 | Anything further from defense? |
| 10 | Anything further from the government? |
| 11 | MS. KUDLA:  No, your Honor. |
| 12 | THE COURT:  Thank you, everybody.  We are adjourned. |
| 13 | (Adjourned) |