

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 15, 2023

**By ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Samuel Bankman-Fried,* S6 22 Cr. 673 (LAK)

Dear Judge Kaplan:

    The Government respectfully submits this letter to note its objections to the defendant's proposed voir dire. (Dkt. 273). The Government generally requests that, in addition to any voir dire preferred by the Court, the Court use the voir dire proposed by the Government, which includes standard, neutral, and appropriate questions. By contrast, the defendant's proposed voir dire contains numerous unnecessary and time-consuming questions, often soliciting open-ended discussion, as well as questions that are repetitive, prejudicial, and argumentative.

    The Government specifically objects to Questions 1 through 9 in Section A of the defendant's proposed voir dire, which go well beyond what is necessary to ensure that the right to a fair trial is not prejudiced by pretrial publicity. The defense requests numerous open-ended questions about what opinions potential jurors have formed about the case, the defendant, and the defendant's companies, and asks whether potential jurors can "completely ignore" what they have previously seen. This is unnecessarily intrusive, and goes beyond the purpose of voir dire, which is to ensure that jurors can be fair and impartial irrespective of their prior experience, whether that be, for example, exposure to press about the case, a previous incident as a crime victim, or a career in cryptocurrency. As the Second Circuit has explained, jurors are qualified to serve where "although they had heard of the case through media reports, they nevertheless believed they could reach a verdict based solely on the evidence presented to them in the courtroom." *United States v. Stevens*, 83 F.3d 60, 66 (2d Cir. 1996) (explaining that this is all "the law requires"); *see also United States v. Zichettello*, 208 F.3d 72, 106 (2d Cir. 2000) (similar). And the Second Circuit has noted that "thorough selection procedures" that go "far beyond the minimum constitutional requirements" include asking potential jurors "whether they had heard anything about the case," the "source of that information," and "whether they could nonetheless render a fair and impartial verdict based only on the evidence presented in court." *United States v. Rahman*, 189 F.3d 88, 121 (2d Cir. 1999) (internal quotation marks omitted); *see also id*. (explaining that under *Mu'Min v. Virginia*, 500 U.S. 415, 425 (1991), "while questioning prospective jurors individually about the

specific contents of any news reports they may have seen might assist counsel in exercising peremptory challenges, the Constitution requires only that the Court determine whether they have formed an opinion about the case").

Asking repeated questions about the substance of opinions previously formed about the case or the defendant would unnecessarily derail jury selection and risk greatly lengthening the jury selection process. And questions such as whether a potential juror can "completely ignore" information to which they have been previously exposed invites confusion and the disqualification of potentially qualified jurors. As the Supreme Court has held: "Under the constitutional standard . . . '[t]he relevant question is not whether the community remembered the case, but whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant.'" *Mu'Min*, 500 U.S. at 430 (quoting *Patton v. Yount*, 467 U.S. 1025, 1035 (1984)). Therefore, "answers to questions about content alone, which reveal that a juror remembered facts about the case, would not be sufficient to disqualify a juror." *Id*; *see also Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961) ("It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."); *Knapp v. Leonardo*, 46 F.3d 170, 176 (2d Cir. 1995) ("[T]he Constitution does not require ignorant jurors, only impartial ones."). It is likewise inappropriate to suggest to potential jurors that press coverage, or anything else, has given the Government an unfair advantage or to intimate that the Government should be subject to a heightened burden of proof by asking: "If you were a juror on this case, would you agree that Samuel Bankman-Fried would be starting off a little bit behind or that the Government might have a little head start?" Such a question is especially unjustifiable here, where the defendant has played an active hand in fomenting press coverage about himself and the case, both before and after his arrest.

The Government also specifically objects to the defendant's proposed questions in Section C about effective altruism. These questions are a thinly veiled attempt to advance a defense narrative that the defendant was simply "amassing wealth" in order to "improve the world." Dkt. 273 at 3. The Government moved *in limine* to preclude evidence about the defendant's commission of prior good acts to disprove his guilt. (Dkt. 204 at 54-56). Whether or not the defense can establish an admissible purpose for the defendant's purported philanthropic commitments, voir dire is not the appropriate forum to suggest to the jury that the defendant was simply a good guy who wanted to make the world a better place. *See, e.g.*, *United States v. Stedman*, No. 21 Cr. 383 (BAH), 2023 WL 3303818, at *3 (D.D.C. May 8, 2023) ("[A] negative factor in jury selection relates to attorney use of voir dire to systematically indoctrinate jurors by creating doubts about the credibility of opposition witnesses, or construing the evidence or the law in a manner to favor their side of the case[.]" (citing Reid Hastie, *Is Attorney-Conducted Voir Dire an Effective Procedure for the Selection of Impartial Juries?*, 40 AM. U. L. REV. 703, 705 (1991))).

The Government further objects to the defendant's proposed questions in Section D about political donations and lobbying, which are irrelevant. The Government has not suggested, and does not intend to argue, that it is improper, standing alone, to donate large amounts of money to political candidates or to do so to advance one's interests. Instead, the Government seeks to admit evidence that the defendant made such donations using stolen customer funds, that he directed others to make donations on his and Alameda's behalf in order to conceal the source of the funds, and that he did so to burnish his image and improve FTX's regulatory prospects. Asking potential

jurors' general views on political giving would invite a sideshow that has no bearing on whether jurors can be fair and impartial in evaluating the defendant's guilt of the charged crimes.

Finally, the Government objects to the defendant's proposed questions in Section E about ADHD as irrelevant and prejudicial. The defense is foreclosed from raising a mental disease, defect, or condition defense—no notice of such a defense under Federal Rule of Criminal Procedure 12.2 was provided by the Court-imposed deadline. (Dkt. 173). Telling the jury that the defendant has ADHD would serve only to improperly cast the defendant at the outset of the trial in a sympathetic light. For this reason, as the Government moved *in limine* (Dkt. 204 at 56-57), information about the defendant's mental health—whether about his diagnosis of ADHD or depression—has no proper place at trial and the defense should also be precluded from mentioning it in opening statement.

The Government is also wary of the Court suggesting to the jury that the defendant's "physical behavior, body language, or eye contact" are a product of ADHD. The defendant is currently taking medication for his ADHD, which should effectively manage any symptoms. Moreover, the description of the potential visible symptoms of ADHD is both vague and expansive, and invites the defendant to disrupt the trial under the guise of exhibiting symptoms of ADHD. This is of particular concern given the defendant's prior efforts to use behavioral eccentricity to his advantage. The *New York Times*, for example, reported in May 2022 that the defendant stated: "I think it's important for people to think I look crazy." *See, e.g.*, *A Crypto Emperor's Vision: No Pants, His Rules*, New York Times, https://www.nytimes.com/2022/05/14/business/sam-bankman-fried-ftx-crypto.html.  Moreover, even if such questions were otherwise proper, the defense has not adequately substantiated the defendant's diagnosis or its symptoms. Thus far, the defense has submitted only a letter from a psychiatrist (in connection with the defense's request for a medical order to the MDC) who was employed by the defendant as "FTX's in-house coach," and whom other witnesses have described as liberally dispensing prescriptions to FTX employees, including for Adderall. For all these

reasons, the Court should not adopt the proposed questions in Section E.

                Respectfully submitted,

                DAMIAN WILLIAMS
                United States Attorney for the
                Southern District of New York

By:    s/ Danielle R. Sassoon
        Danielle R. Sassoon
        Nicolas Roos
        Danielle Kudla
        Samuel Raymond
        Thane Rehn
        Assistant United States Attorneys
        (212) 637-1115

Cc: Counsel of Record (via ECF)