

COHEN & GRESSER LLP

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

October 2, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

  Re: *United States v. Samuel Bankman-Fried*, S6 22 Cr. 673 (LAK)

Dear Judge Kaplan:

  On behalf of our client, Samuel Bankman-Fried, we write to respectfully submit this letter in opposition to the Government's letter motion *in limine* requesting to elicit testimony from (*i*) FTX customer witnesses regarding their understanding of how FTX would or would not use their assets; (*ii*) FTX investor witnesses regarding their understanding of alleged representations about FTX's role as a custodian of customer funds; and (*iii*) alleged co-conspirator witnesses regarding their interpretation of statements made by Mr. Bankman-Fried. ECF No. 301.

  The Government's motion should be denied as to all three categories. *First*, the motion is premature. Decisions on specific testimony from specific witnesses relating to their individual understanding of specific statements or aspects of their relationship with FTX or Mr. Bankman-Fried cannot be decided in the abstract.

  *Second*, even on a more complete record, the motions would fail on their merits. As set forth below, with respect to customer witnesses, the Government asks the Court to permit percipient witnesses to offer their own opinions and interpretations on issues that the jury must evaluate from the objective perspective of a reasonable person. As to investor witnesses, the Government's chose to seek permission to elicit testimony from fact witnesses with respect to materiality only *after* moving successfully to exclude defense expert testimony that would bear on the same subject, leaving the defense in a situation the Second Circuit has characterized as "untenable." And as to alleged co-conspirator testimony, the Government's request is premature not only because it is overly vague but also because none of the requisite evidentiary and factual foundations exist and it is unclear whether they ever will be.

The Honorable Lewis A. Kaplan
October 2, 2023
Page 2

*Third,* if the Court rules (now or during trial) that any of the proffered categories of testimony can be admitted, the defense should be permitted to cross-examine the witnesses, including as to the basis and credibility of their understanding and interpretation of statements allegedly made by Mr. Bankman-Fried.

1. *The Government's Motion Should Be Denied as Premature.*

The Government's motion is premature and is devoid of the detail on which its requests could plausibly be based. As the Court noted in ruling on prior motions *in limine*, "[a]dmissibility ultimately must turn on characteristics of the particular items of evidence and the purposes for which they are offered." ECF No. 289 at ¶ 7. The Government seeks permission to elicit testimony concerning various witnesses' understandings of various statements described in broad terms, without indicating what statements will be at issue and what questions the witnesses will be asked. The Court should not rule on these issues in the abstract.

With respect to customer testimony, for example, the Government states that customers will testify about that they understood "FTX would custody their assets." They will further testify that their understanding was based upon, among other things, public statements by Mr. Bankman-Fried, the witnesses' "knowledge of FTX advertisements," and "their understandings about the defendant's putative pro-regulatory and pro-transparency stance." ECF No. 301 at 2-3. The Court should not rule at this stage that all such testimony would be admissible based on these descriptions.

As to investors, the Government asserts that these witnesses should be allowed to testify about their understanding of FTX's representations concerning its treatment of customer deposits as a way to "prove the materiality of these representations." *Id.* at 4. But, as discussed below, whether an alleged misrepresentation was material must be assessed on the basis of how a reasonable investor would understand the statement in the context of the overall message and how mainstream investors would weigh the information provided.

Finally, the Government states that it will call witnesses who have entered guilty pleas or been granted trial immunity to testify "regarding their understanding of the meaning of statements and instructions given to them by the defendant." ECF No. 301 at 4. In support, it cites decisions involving co-conspirator testimony on the meaning of ambiguous phrases and slang terms. Again, the Court and defense are left to guess about what statements and instructions will be at issue.

Even if it would be proper for these categories of witnesses, who will otherwise be testifying as percipient fact witnesses, to address these broadly described topics (and it would not be, as argued below), rulings on the admissibility of such testimony must turn on the "characteristics of the particular items of evidence" and the specific context in which the testimony would be elicited. ECF No. 289 at ¶ 7.

To the extent the Government seeks an advance ruling that unspecified witnesses may offer opinion testimony by lay witnesses pursuant to Rule 701, the Court should not entertain any such ruling unless and until the Government attempts to lay the appropriate foundation on an individualized basis.

2.      *Customer Witness Testimony*

The Government seeks permission to elicit testimony from FTX customers regarding their individual "expectations and understandings" that FTX would hold deposited funds for them, purportedly to show these customers' understandings of their relationship with FTX and their view that unspecified statements regarding "custody" of assets were material misrepresentations. ECF No. 301 at 2-3. Such testimony should be precluded as irrelevant.

*First*, the Government should not be granted blanket permission to have customers explain the materiality of statements by Mr. Bankman-Fried regarding the treatment of customer assets. "Because the applicable materiality test is an objective one, evidence of the idiosyncratic and erroneous belief of" a counterparty is "irrelevant." *United States v. Litvak*, 889 F.3d 56, 59 (2d Cir. 2018) ("*Litvak II*"). Thus, the "subjective perspective of the victim" is not the appropriate yardstick for measuring materiality, particularly where the witness's own view of the legal relationship with a commercial counterparty may be mistaken. *Id.* at 59. In those circumstances, the relevance (if any) of a customer's testimony is easily outweighed by its potential to confuse the jury and waste time. *Id.*

None of the authorities cited by the Government permitted the introduction of testimony similar to that at issue here in analogous contexts (each case involved insider trading prosecutions under the misappropriation theory). In *United States v. Chestman,* the evidence included simple facts and the substance of certain statements by the defendant, but not testimony regarding victims' understanding of those statements. 947 F.2d 551, 567 (2d Cir. 1991). In *United States v. Mahaffy*, the court reviewed testimony of representatives of various brokerage houses about their own confidentiality practices – not interpretations of allegedly fraudulent statements provided by others. 693 F.3d 113, 125-27 (2d Cir. 2012). And in *Carpenter v. United States*, the Court discussed evidence of a newspaper's "official policy and practice" regarding misappropriated information, rather than victim testimony regarding whether they believed they were in a custodial or fiduciary relationship with a commercial counterparty. 484 U.S. 19, 23 (1987).

The Government's reliance on *Commodity Futures Trading Comm'n v. McDonnell*, 332 F. Supp. 3d 641 (E.D.N.Y. 2018) is also misplaced. The Government asserts that the court in *McDonnell* "permitted customers of *United States v. Litvak*, 889 F.3d 56, 59 (2d Cir. 2018) ("*Litvak II*"), a cryptocurrency exchange" to testify about certain alleged misstatements of the defendant. ECF 301 at 3 (citing *McDonnell* at 682). The cited statement was a single line of trial testimony in an 87-page opinion – testimony the admissibility or probative value of which

the court did not cite or discuss in its legal analysis. In addition, the court in *McDonnell* held, among other things, that whether a statement was a misrepresentation "should be viewed through the eyes of an objectively reasonable person who would interpret the overall message." *Id.* at 718. Nothing about that holding or the decision supports permitting the Government to poll victims at trial on their personal understandings of statements by Mr. Bankman-Fried and FTX.

*Second*, the Government seemingly wants evidence regarding how customers (and other putative victims) understood the relationship they chose to enter with FTX to be admissible only if offered by the Government but excluded if offered by the defense. Having previously argued that it is irrelevant whether customers were "negligent, gullible, or insufficiently vigilant," ECF No. 289 ¶ 9, the Government now insists that testimony that customers' beliefs and their understanding – whether correct or incorrect – of alleged statements by Mr. Bankman-Fried is "directly relevant" to a critical issue. The Government cannot have it both ways.

*Third,* at a minimum, if the Court permits the Government to elicit testimony of customers' personal understandings and beliefs, the defense must be allowed to probe the nature, basis, and factual accuracy of those views. *Cf. United States v. Litvak*, 889 F.3d 56, 59 (2d Cir. 2018) ("*Litvak II*") ("Materiality cannot be proven by the mistaken beliefs of the worst informed trader in a market.); *United States v. Frenkel*, 682 F. App'x 20, 22–23 (2d Cir. 2017) (rejecting the view that materiality must be assessed "from the subjective perspective of the victim").

3. *Investor Witness Testimony*

The Government requests to permit FTX investors "to testify regarding their understanding of representations made by the defendant and his employees about FTX's role as a 'custodian' of its customer's funds," which the Government asserts is "a term that was used in multiple FTX investor pitches, along with similar statements." ECF No. 301 at 4. The Government intends to offer such testimony to "prove that there is a substantial likelihood that a reasonable investor would find the misrepresentation important in making an investment decision." *Id.* (quoting *United States v. Gramins*, 939 F.3d 429, 445 (2d Cir. 2019)).

In addition to being premature as discussed in Section 1 above, the Government notably chose to seek testimony as to what investors would have found material *after* successfully moving to exclude defense expert testimony on the same subject. *See* ECF No. 287 at ¶ 5 (excluding expert testimony by Dr. Peter Vinella, Ph.D.); *see also* ECF No. 275 at 32-33 (arguing that Dr. Vinella's proposed testimony would be relevant to "the materiality of alleged misrepresentations to consumers, lenders, and investors"). In so doing, the Government would put the defense in precisely the position that the Second Circuit called "untenable" in *Litvak*, 808 F. 3d at 183-84 ("*Litvak I*"). The Second Circuit held that excluding defense expert testimony that would counter the government's arguments as to what a reasonable investor would have found material would leave the defendant "only with the 'victims' of his conduct as sources of potential testimony on this issue, an odd limitation where the jury is to evaluate materiality in an

objective manner." *Id.*; *see also Gramins*, 939 F. 3d at 447 (noting that in *Litvak I*, "the district court's evidentiary ruling" to exclude defense expert testimony as to industry practices relevant to what would be material to market participants, "unfairly tipped the scales against the defense's theory of materiality").

The Court should not endorse the Government's gamesmanship in raising this issue only after testimony from the defense's expert on the same issue was excluded. The Government's request to elicit such testimony from investors should therefore be denied.

To the extent that the Court allows the Government to elicit testimony from investor witnesses about their expectations as to how FTX would operate as a custodian, and those expectations are portrayed as those of a "reasonable" investor, the defense should be permitted to cross-examine those witnesses on the basis for their views and their reasonableness and credibility, and to test those views against measures of materiality common in the industry. *See Gramins*, 939 F.3d at 448 (explaining that "a counterparty witness's 'idiosyncratic and erroneous belief . . . is not probative of the views of a reasonable, objective investor,'" and is "therefore irrelevant to materiality under the objective, 'reasonable investor' standard"); *Litvak II*, 889 F.3d at 69 (holding that investors' "own point of view" regarding materiality should be credited only where there is "a nexus between a particular trader's viewpoint and that of the mainstream thinking of investors in that market.").

### 4. *Alleged Co-Conspirator Witness Testimony*

The Government seems permission to elicit testimony from alleged co-conspirator witnesses "regarding their interactions and conversations with the defendant, including their understanding of the meaning of statements and instructions given to them by the defendant." ECF No. 301 at 4. As with the other requests in the Government's letter motion *in limine*, this request should be denied as premature.

This aspect of the motion is premature for a second reason, as well. To the extent that the Government seeks to elicit testimony from alleged co-conspirators concerning hearsay statements under Fed. R. Evid. 801(d)(2)(E), the request cannot be adjudicated based on the vague information in the Government's request, which fails to establish the foundation for admissibility as non-hearsay. *See United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993) (citing *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S. Ct. 2775, 2778 (1987)).

In any event, while it is unclear what exactly the Government is requesting here, the cases the Government relies upon address circumstances where co-conspirators were using coded and ambiguous language in the course of the conspiracy, and co-conspirator witnesses testified as to the meaning of that language as used in the conspiracy. *See* ECF No. 301 at 4-5. In each of the Government's cases, the court allowed co-conspirator testimony to explain the meaning of a cryptic or coded expression or a phrase that, in the context of the conspiracy, referred to something other than that phrase's common meaning. *See United States v. Rowland*,

The Honorable Lewis A. Kaplan
October 2, 2023
Page 6

826 F. 3d 100, 115 (2d Cir. 2016) (e.g., "this arrangement" as a reference to a sham job); *United States v. Borrero*, 630 F. App'x 20, 23 (2d Cir. 2015) ("getting busy" as "slang" for home invasion); *U.S. v. Yannotti*, 541 F.3d 112, 126 (2d Cir. 2008) ("points" as a reference to interest in a loansharking scheme).

Here, by contrast, there is presently no allegation or evidence that Mr. Bankman-Fried used coded language or any other form of expression that would be fundamentally unclear to the jury absent an explanation from an alleged co-conspirator witness as to the meaning of certain language in the context of the alleged conspiracy.

In the alternative, to the extent that the Government is permitted to elicit information from alleged co-conspirator witnesses concerning their interpretation of "statements" or "instructions" made by Mr. Bankman-Fried, the defense should be permitted to cross examine the witnesses as to their interpretation and probe the basis and credibility of their testimony.

Respectfully submitted,

/s/ Mark S. Cohen
Mark S. Cohen
Christian R. Everdell
S. Gale Dick
Sharon L. Barbour
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, New York  10022
(212) 957-7600
mcohen@cohengresser.com
ceverdell@cohengresser.com
sgdick@cohengresser.com
sbarbour@cohengresser.com

cc:   All counsel of record (via ECF)