N9SIBANC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                             22 Cr. 673 (LAK)

SAMUEL BANKMAN-FRIED,

                                      Conference
               Defendant.

------------------------------x

                                    New York, N.Y.
                                    September 28, 2023
                                    10:00 a.m.

Before:

                   HON. LEWIS A. KAPLAN,

                                    District Judge

                      APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
DANIELLE KUDLA
SAMUEL RAYMOND
DANIELLE RENEE SASSOON
NATHAN M. REHN
    Assistant United States Attorney

COHEN & GRESSER LLP
    Attorneys for Defendant
BY:  MARK S. COHEN
     CHRISTIAN R. EVERDELL


Also Present:

LUKE BOOTHE, Case Agent

          (Case called)

DEPUTY CLERK:  Government, are you ready?

MS. KUDLA:  We are, your Honor.

DEPUTY CLERK:  Please put your appearances on the record.

MS. KUDLA:  Your Honor, on behalf of the United States, you have AUSAs Danielle Kudla, Danielle Sassoon, Sam Raymond, Nathan Rehn, and we're joined at counsel's table by Case Agent Luke Boothe.

THE COURT:  Good morning.

DEPUTY CLERK:  Defendant, are you ready?

MR. COHEN:  Morning, your Honor.  Mark Cohen and Chris Everdell of Cohen & Gresser for the defendant.

THE COURT:  Good morning.  I read all your letters, but I am happy to hear from you, Mr. Cohen.

MR. COHEN:  Your Honor, would you like me to go to the podium?

THE COURT:  Yes, I would please.

MR. COHEN:  Your Honor, this has been briefed before your Honor.  I know you are familiar with the issues and background, so I will be brief.  I would just like to make two points for your Honor to consider.  We are making an application under 3142(i) for temporary release.  At our prior proceedings your Honor indicated we could make one at the appropriate time, and we think this is the appropriate time.

1            That brings me to my first point, your Honor.  A lot
2   of -- not a lot of, but all of the prior litigation was in what
3   I could call the pretrial period.  The application we are
4   making now, your Honor, is for our client to receive temporary
5   release during the trial.  And we would submit that as a
6   practical matter, it is a different scenario given both the
7   nature and complexity of this case, but also the fact that we
8   will now be on trial.  Just the way it works, it is how it is,
9   but as a practical matter we will have almost no time to speak
10  to our client before court, during the lunch hour, and after
11  court, at 4:30, he will be taken down to the MDC.  So, if
12  during the trial day, there is a complex financial document
13  entered -- and there are many in this case, your Honor, there
14  are 1,300 exhibits and some of them involve not just documents
15  but spreadsheets with pages and cells upon cells -- we won't
16  have the ability to speak about it with our client.  We won't
17  have the ability to speak about such information the next day.
18            THE COURT:  How many of the 1,300 were not produced in
19  discovery until September 8?
20            MR. COHEN:  Well, that is true, your Honor.  But
21  certainly --
22            THE COURT:  May I have an approximation?
23            MR. COHEN:  I'm sorry?
24            THE COURT:  May I have at least an approximation?
25            MR. COHEN:  I'm sorry?

|   |   |
|---|---|
| 1 | THE COURT:  It is a serious question. |
| 2 | MR. COHEN:  I didn't hear you, your Honor.  I'm sorry. |
| 3 | THE COURT:  May I have at least an approximation? |
| 4 | MR. COHEN:  Of? |
| 5 | THE COURT:  How many of the 1300 -- |
| 6 | MR. COHEN:  They were all produced, your Honor. |
| 7 | THE COURT:  They were produced. |

THE COURT:  So, you have had them for periods, but certainly not in all cases, equal to seven and a half months before.

MR. COHEN:  Sure.  But as your Honor knows, there is a difference between having 1,300 out of millions and knowing these are the exhibits that the government plans to seek to rely upon, seek to offer in evidence subject to your Honor's rulings.  And so, we think that the trial period is different as a practical matter.  It is different in terms of how we would be able to meaningfully represent our client and just given the reality of the way the BOP rules work -- and we are not faulting them for it -- we would not be able to meaningfully confer with our client.

That brings me to my second point, your Honor.  I only have two.  My second point is a structural one.  If you read the government's letter, in essence, they are arguing that were a defendant who is either detained to begin with or remanded on some grounds, it is almost as if 3142 can never be granted

1    because of the reasons he was detained in the first place.  And
2    that can't be why the rule is here.  The rule exists for a
3    reason.  We have a case here that is somewhat unusual, your
4    Honor.  We have no risk-of-flight issues, never have.
5              THE COURT:  Well, you know, I have wondered about
6    that.  The closer we get to trial, the more I am wondering
7    about that.  Your client, in the event of conviction, could be
8    looking at a very long sentence.  And I gather he is 31 years
9    old and if things begin to look bleak -- and maybe he feels
10   that is true now, maybe he doesn't, I am not going to
11   speculate -- but if that were to happen, and if he had the
12   opportunity, maybe the time would come where he would seek to
13   flee.
14             MR. COHEN:  I understand that, your Honor.  But we
15   have nothing in the record before your Honor to suggest that.
16   There has been no issue with any of the prior conditions
17   relating to transportation or flight.  He did come to the
18   United States voluntarily in an expedited extradition
19   procedure, which is the opposite of fleeing, when he was facing
20   the same charges that carry these consequences.  I understand
21   it is different, your Honor, on trial, and I take your Honor's
22   point.  But we have a situation here where if a defendant can't
23   be released on the conditions we proposed or any ones further
24   that the Court might want us to have, he really can't be
25   released.  It's as if the government is saying, once you are

1  remanded under 3148 or 3141, 3142(i) is a nullity.  That can't
2  be why it's here.
3           So, for those reasons and for the reasons in our
4  papers, we specifically waited, your Honor, to ask for this as
5  a trial release.  Obviously, there has been litigation before
6  your Honor.  Your Honor was kind enough to tell us we could do
7  this on August 11 where you remanded.
8           THE COURT:  I am committed to a fair trial.  You
9  better believe that.
10          MR. COHEN:  Right.  And so, again with respect to the
11 government, the cases that they cite talk about high-level
12 policy, and we are not debating high-level policy here.  We are
13 making a very practical application, your Honor, that without
14 this, we just will not meaningfully be able to confer with our
15 client and have him participate in his defense under the unique
16 facts of this case.  So that is our application.
17          THE COURT:  Thank you.
18          Ms. Kudla?
19          MS. KUDLA:  Your Honor, the defendant has not met his
20 burden of establishing that release for trial is necessary for
21 the preparation of the defense.  3142(i) has a specific
22 standard that needs to be met and it hasn't here.  The
23 defendant is not pro se; he is represented by a team of highly
24 skilled attorneys and paralegals and highly skilled experts.
25          I want to touch on a couple of the points regarding

preparation for trial and then also during trial with respect to the 3500 material that has been in the defendant's possession for, at the time of start of trial, three weeks with his legal counsel.  They are not going in cold here.  That 3500 material contained detailed statements about witnesses and exhibits that were shown to the witnesses during these meetings.  He has been in possession of the government's exhibits for a lengthy period of time along with a witness list that has been since modified since it was first produced.  During this three-week period of time that the defendant has had all of this material, he has had access to confer with his counsel seven days a week, if so desired, at the MDC.  They have had ample opportunity to prepare for trial.  And during trial, the defendant will have access to an air-gapped laptop with any materials of counsel's choosing to allow him to review materials while witnesses are on the stand.  Then therefore several days in this trial schedule -- that is unique -- where the Court will not be sitting in addition to weekend times that allow for uninterrupted periods of consultation with the defendant and his counsel and experts, if so desired.

So, on those points, your Honor, we believe that the defendant certainly has an ample opportunity to meaningfully prepare his defense and assist his counsel.  I am happy to address any questions that the Court has regarding current detention procedures and discovery or anything else in the

1    papers that the Court would like.

2              THE COURT:  What is the government's current estimate
3    of when we finish this trial?  Recognizing that we have one
4    short week scheduled, and that the rest of the weeks we are
5    putting in four days.  And by "finished," I mean verdict.

6              MS. KUDLA:  Your Honor, may I have a brief moment to
7    consult with my team?

8              Your Honor, obviously the government does not know the
9    defense case.  But for our case, focusing there, in light of
10   the October period of time when we are not sitting, we
11   anticipate the government's case in chief will be four to
12   five weeks, which takes us into that first week of November.

13             THE COURT:  And I am going to address the same
14   question now, to Mr. Cohen.

15             MR. COHEN:  Yes, your Honor.  Well, I think our case
16   is maybe a week, a week and a half.  Things have gotten
17   streamlined recently.

18             THE COURT:  Yes.  So, what I am gathering is that
19   everybody is confident we finish before Thanksgiving, probably
20   at least a week before Thanksgiving.

21             MR. COHEN:  Yes, your Honor.  And I should say that's
22   if we put on a case at all.

23             THE COURT:  Pardon?

24             MR. COHEN:  I should say that is if the defense puts
25   on a case at all.

THE COURT:  Of course.  Look, we all understand the realities of how trials unfold.

All right.  Anything else, Ms. Kudla?

MS. KUDLA:  Nothing further from the government, your Honor.

THE COURT:  OK.  I thank you both.

First of all, I actually see precious little that has changed since I ruled on this previously and since I ruled -- excuse me, since the Court of Appeals ruled.  That said, I acknowledge to a degree the point that Mr. Cohen makes, having been a trial lawyer for quite a few years before I came here.  Ideally, whether a civil case or a criminal case, the lawyer wants access to the client whenever there is a witness on the stand and vice versa; by the way, the client to the lawyer, the client's access is sometimes welcomed by counsel and sometimes not so much.  I have been in that position too.  And in the best of all possible worlds, that's possible.  They want to talk about what the implications for the defense are while the witness is not finished on cross-examination.  I understand that.  The need for that to happen in real time while the witness is on the stand or in very close proximity to that depends an awful lot on the extent of the discovery before trial.  And here, there have been mountains of it, and the defense has had access to these materials for extensive periods during much of which the defendant was not in detention.  He

1   has been in detention less than two months and the Bureau of
2   Prisons has made extraordinary accommodations for him to
3   consult with counsel and to have access to the discovery.  So,
4   while I acknowledge the point Mr. Cohen makes, and it has some
5   validity, it is not a lay down hand if this were a poker game.
6   It is something to talk about, it has some validity, but it
7   does not necessarily take the hand.
8            It is relevant also to say that while this case
9   involves subjects that, to the lay world, are pretty arcane,
10  whether you define that in terms of cryptocurrencies or simply
11  in terms of finance, it is by no means unique in presenting
12  problems.  The issues in this case are pretty straightforward.
13  Was there fraud or wasn't there?  I just chose that one to
14  avoid giving a whole catalog on the seven counts, but they are
15  pretty straightforward.  I understand the evidence can be
16  complex but there are other complex cases that don't involve
17  such subjects that are nevertheless very challenging for
18  lawyers and clients alike to defend where the client is
19  detained.  There are drug conspiracy cases with hundreds or
20  thousands of hours of audio and surveillance tapes, often in
21  foreign languages, and the case for a detained defendant having
22  real time access to the lawyer during the examination of
23  witnesses in those circumstances is not different in kind than
24  it is in this case.  And other examples could probably be
25  articulated.

1          So, I am really not entirely persuaded by the argument
2     Mr. Cohen makes for the need for what I am going to
3     characterize as real time access to the client.  But I
4     nonetheless am going to go as far as I can see going in order
5     to accommodate the defendant's concern.  I have a little chart
6     with the scheduled trial days.  It is probably not long enough,
7     and I will ask John Hamil to give it to counsel and we will
8     mark it as Court Exhibit XX just to make sure it is of record.
9     And it indicates the days we are sitting through November 9.  I
10    understand that it may go another week or so beyond.  And there
11    are shaded entries for the days we are sitting and white
12    entries for the days we are not.  Now, on all the white days
13    counsel have access to their client at the MDC for the hours
14    indicated which, according to the Bureau of Prisons, is
15    seven hours on weekend days and longer on weekdays, of which
16    there are six in this period of six weeks.
17         Now in addition to this, I will order that the
18    defendant be produced in the cell block on the fourth floor at
19    approximately 7 a.m. every morning of the trial subject to this
20    caveat:  The production requirement will be only on those days
21    where there was testimony the day before and there will be
22    testimony on the day on which he is produced.  So, in other
23    words he would not be produced on October 10, which is a
24    Tuesday.  The defense will have had the whole weekend to
25    consult, but he will be produced on the 11th before anybody

Case 1:22-cr-00673-LAK   Document 310   Filed 10/03/23   Page 12 of 14       12
N9SIBANC

gets on the witness stand on the morning and he won't be produced on Friday because the next trial day is Monday and there is plenty of opportunity.  Now, I say 7 o'clock, we all understand that the vagaries of demands on the marshal service and traffic in New York and all of that may mean some days it will be 6:45 and some days it will be 7:20.  But, the outlines are what I have said.

And so, I think this fully accommodates the defense concern, which I think is exacerbated, not willfully, but out of desire to do the best job possible, that they have a full opportunity to consult with Mr. Bankman-Freid before the next day's testimony.  So it will be in the morning, not in the evening because of the need to get him back to the MDC promptly in the evening.  That is what I am going to do.

Now of course, if the defense doesn't want him produced, they need to notify the marshals well in advance because deputies are being called in to do this duty at the crack of dawn and I don't want to see this abused.  So, we have to have a little consideration for the people who have to do the work.  And I am not suggesting anybody has not had that consideration, but we just need to.

John Hamil has indicated I may have misspoken.  He will be produced Friday mornings if there has been testimony on Thursdays.  The order will be clear.

OK.  I think that takes care of that.  And in light of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   that, I am going to deny the application.  I am not saying that
2   I would have granted it had I not been able to make that
3   accommodation and I am not ruling one way or the other on the
4   government's point that 3145(a)'s standards haven't been met
5   here.  In any case, I don't have to reach that right now.  We
6   will get to that another day.
7            Now, there is one other thing I wanted to raise with
8   counsel.  Well, first of all, is anything unclear about that?
9   I may not have been perfectly lucid, but I think I was.
10           The other thing I want to raise, let me inquire of the
11  government.  I received from the government yesterday two
12  applications for orders of immunity which I haven't signed.
13  Now does defense know the witnesses, the names of those
14  persons, or do we have to talk about this in the abstract?
15           MR. REHN:  Yes, your Honor.  They are on the
16  government's witness list, and we have produced 3500.
17           THE COURT:  OK.  Thank you.  I would have assumed so.
18           MR. COHEN:  Your Honor, we don't know which ones.
19           OK we now know.
20           THE COURT:  What I would appreciate is knowing from
21  the defense is whether it is the defense position that before
22  signing an order of immunity it is necessary for me to have the
23  witness invoke the Fifth Amendment in court, out of the
24  presence of the jury of course, and if so, what the authority
25  for that is.

N9SIBANC

1           Do you have a view on that, folks?
2           MR. COHEN:  Your Honor, would we be able to get back
3   to the Court on that by today?
4           THE COURT:  Yes.  OK, fine.  Anything else this
5   morning?
6           MR. COHEN:  Yes, your Honor.  I have an unrelated
7   scheduling issue I would like to raise with the Court.
8           THE COURT:  OK.
9           MR. COHEN:  When the schedule was first set, we had no
10  court on October 13.
11          THE COURT:  Yes.
12          MR. COHEN:  I now have to be in Brooklyn at 2:30 on
13  the 13th before Judge Garaufis where I am the court monitor for
14  the firefighter's case.  There are about two people there
15  including city officials.  I was hoping we could set a half day
16  on the 13th if that is OK with the Court.
17          THE COURT:  Yes.  Well, what time do you need to be
18  out?
19          MR. COHEN:  I need to be in Brooklyn by 2:30.
20          THE COURT:  So, one o'clock maybe?
21          MR. COHEN:  12:30.
22          THE COURT:  Just remind me when the day comes.
23          MR. COHEN:  Thank you.
24          THE COURT:  OK.  Anything else?  Thank you, folks.
25          (Adjourned)