

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 13, 2023

**By ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Samuel Bankman-Fried,* **S6 22 Cr. 673 (LAK)**

Dear Judge Kaplan:

The Government respectfully submits this letter in opposition to the defendant's October 12, 2023 motion *in limine*, Dkt. No. 321. The defendant's motion should be denied. First, the defendant makes a number of incorrect arguments about the law regarding the Government's theories of wire fraud alleged in the Indictment, and the defendant's attempts to seek reconsideration of the Court's prior rulings on these issues should be rejected. Second, to the extent that the defendant seeks to cross-examine witnesses about their understanding of representations made by the defendant and his agents, including representations in the FTX Terms of Service, at least where the witness saw those representations and there is therefore some foundation for relevant testimony, the Government does not generally object to this topic of cross-examination, although it may object to the form or foundation for certain questions. Third, the Government should be permitted to offer testimony from witnesses regarding their understanding of and reaction to representations made by the defendant and his agents, which is not lay opinion testimony.

    I.    *The Defendant's Arguments About the Applicable Law for the Counts Alleging Wire Fraud on Customers Are Incorrect*

As an initial matter, the defendant is simply wrong that Counts One and Three of the Indictment rest solely on a misappropriation theory. As the Government has explained, repeatedly, the evidence establishes that the defendant committed fraud against FTX customers and investors through both misappropriating their funds *and* by making material misrepresentations and omissions. Dkt. No. 302 at 2, 3 (citing *Spira v. Nick,* 876 F. Supp. 553, 558 (S.D.N.Y. 1995)).[1] There is thus no basis to preclude or limit any evidence about FTX's customers' reasonable

---

[1] Indeed, the evidence has already established such material misrepresentations. *E.g.* GXs 863, 866; Tr. 87:15–89:25 (defendant's false statements on Twitter about FTX's assets convinced former FTX customer Marc-Antoine Julliard not to withdraw funds on November 6 or 7, 2022).

interpretations of statements made by the defendant and his agents, insofar as that evidence is relevant to show that the statements had a "natural tendency to influence, or [were] capable of influencing," the customers' decisions with respect to their FTX deposits. *Neder v. United States*, 527 U.S. 1, 16 (1999); *see also United States v. Gramins*, 939 F.3d 429, 444-45 (2d Cir. 2019).

With respect to the Government's theory that the defendant and his co-conspirators misappropriated FTX's customers' funds, the defendant suggests that to establish misappropriation, the Government must establish a "violation of the terms of a contract," here the FTX Terms of Service. Dkt. No. 321 at 3. That is incorrect: misappropriation occurs when a party breaches a "fiduciary duty or similar relationship of trust and confidence," which includes not just a "trustee and trust beneficiary," but also several other relationships such as when a beneficiary "entrust[s] the fiduciary with custody over property." *United States v. Chestman*, 947 F.2d 551, 569 (2d Cir. 1991).

Such relationships are not defined solely through a "written contract." *E.g. Carpenter v. United States*, 484 U.S. 19, 27 (1987) ("even in the absence of a written contract, an employee has a fiduciary obligation to protect confidential information obtained during the course of his employment." (citations omitted)); *United States v. Mahaffy*, 693 F.3d 113, 127 (2d Cir. 2012) (in a case alleging misappropriation of company information, considerations include whether a firm regarded "information … as confidential and treated it as such"). The Government's evidence has already shown that the defendant authorized statements, beyond the Terms of Service, that indicate his own acknowledgement that FTX had such a relationship of trust with its customers. *E.g.* GX 900 (ad featuring Tom Brady and Gisele Bundchen ending with a slide that FTX was "The most trusted way to buy & sell" various digital assets); GX 850 (defendant's Tweet that "backstopping customer assets" was "primary"). There will be additional evidence of such statements introduced over the course of the trial. That means that customers relying on such statements were in no way doing so "unilaterally." *Chestman*, 947 F.2d at 567. Additionally, testimony from the defendant's own employees regarding what they understood about the company's treatment of customer deposits is highly relevant to the nature of the relationship between FTX and its customers.

There is thus no basis to exclude evidence or provide any limiting instruction about evidence of customers' beliefs regarding their understanding and interpretation of how their deposits would be handled by FTX, in the context of the statements which the defendant authorized about how FTX would treat their assets. Nor is there any basis to treat the Terms of Service as the only relevant evidence of the nature of the relationship of trust between FTX and its customers. Indeed, the Second Circuit recently reversed a district court's granting of a Rule 29 motion in a wire fraud case where the defendants had argued that their misappropriation of funds received pursuant to a contract was not criminal if they had fulfilled the literal terms of their "contractual bargain." *United States v. Jabar*, 19 F.4th 66, 79 (2d Cir. 2021). The Second Circuit held that the district court should not have overturned the jury's verdict, which took into account the overall pattern of the "defendants' fraudulent acts with respect to the rest of the bargain." *Id.*

Certainly, a defendant is entitled to present a defense, but only if it has a foundation in the evidence, *see United States v. Kwong*, 69 F.3d 663, 667-68 (2d Cir. 1995), and as long as it does not fail as a matter of law, *see United States v. Bakhtiari*, 913 F.2d 1053, 1057 (2d Cir. 1990). While the Government does not object to the defendant's offering disclaimers in the Terms of

Service in an effort to argue that a relationship of trust between FTX and its customers did not exist, the defense should not be permitted to suggest or argue that such disclaimers defeat the Government's misappropriation theory as a matter of law or render the defendant's false and misleading statements about how FTX would treat customer assets immaterial. *United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017) ("a disclaimer of reliance on certain representations" does not "mean that the oral representations were immaterial or without tendency to influence").[2]

Furthermore, as the Court previously held, there is no basis to allow the testimony of Lawrence Akka. Dkt. No. 287 at 2 (Akka's proposed "testimony plainly is inadmissible under Rule 702 as it invades the province of the Court to instruct the jury on the law"). Nothing in the defendant's letter disturbs the Court's conclusion: issues of law, including foreign law, are for the Court, not for the jury. Fed. R. Crim. P. 26.1.

Finally, as the Court held in its prior Order, the defendant's request for a proposed jury charge on foreign law[3] is not ripe, and if the defendant seeks such a charge the Government requests the opportunity to respond. The evidence at trial does not currently warrant any such instruction, as the Government's misappropriation theory alleges fraud on the basis of the overall "relationship of trust and confidence" between the defendant and FTX customers, *Chestman*, 947 F.2d at 569, and the Terms of Service, which have not even been introduced into evidence yet, are expected to be just one of many pieces of evidence regarding that relationship.

> II.  *The Government Does Not Object to Cross-Examination Regarding How Witnesses Understood Their Relationship With FTX*

The defendant argues that he has not been granted sufficient latitude to cross-examine witnesses about their understanding of how their deposits would be treated. Dkt. No. 321 at 1-2. But the Government has not objected to his efforts at cross-examination on these topics. The defense has asked, without objection, numerous questions to "flesh[] out" its theories. Consistent with the law, the Government *has* objected to the defense's frequent questions that simply reiterate testimony from direct examination or that "go beyond the subject matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611(b); *United States v. James*, 712 F.3d 79, 103 (2d Cir. 2013) ("A district court should afford wide latitude to a defendant in a criminal case to cross-examine government witnesses, but it does not follow, of course, that the Confrontation Clause prevents a trial judge from imposing *any* limits on defense counsel's inquiry in cross-examining a prosecution witness." (citation omitted)).

The defendant next asserts that he "should be permitted to question the Government's witnesses as to [FTX's] Terms of Service." Dkt. No. 321 at 3. Again, the Government has no objection to cross-examination of witnesses about whether they reviewed FTX's Terms of Service, and has not objected when such questions have been addressed to witnesses who can provide relevant testimony. *E.g.* Tr. 96:18-24 (cross-examination of Marc-Antoine Julliard on whether he

---

[2]  The Government has proposed an appropriate instruction to the jury regarding the limits of the relevance of such evidence. *See* Dkt. No. 214 at 35.

[3]  Notably, the defendant cited no foreign law sources in his proposed request to charge. Dkt. No. 215.

had reviewed the Terms of Service), Tr. 1230 (cross-examination of Zac Prince about whether BlockFi had reviewed the Terms of Service). And if Government witnesses refer to the Terms of Service as a factor in their decision-making, cross-examination on the specifics of what the witnesses relied on is of course permissible.

Finally, the defendant "anticipates asking witnesses who were customers and investors of FTX and lenders to Alameda questions designed to elicit testimony about the factors they considered material." Dkt. No. 321 at 4. Again, the Government does not generally object to cross-examination of customers about their decision to deposit funds on FTX, or cross-examination of investors regarding the factors that contributed to their decision to invest in FTX. However, the Government may of course object to the form of certain questions, including questions that seek to embed legal conclusions by using the word "material." *See* Tr. 292-96 (cross-examination of investor witness Matt Huang on decision to invest, largely without objection by the Government). As discussed in more detail below, direct and cross-examination on how investors understood the defendant's representations is proper. What would be improper would be questions meant to suggest that investors were negligent or that they should have done more diligence before investing.

> III. *Investor Testimony Regarding Their Understanding of the Defendant's Representations Is Proper*

The defendant asserts that portions of witness Matt Huang's testimony was inadmissible without him having been noticed and qualified as an expert, which he was not, and requests that the Government be precluding from eliciting similar testimony. But Mr. Huang did not provide expert testimony; instead, he offered his understanding of the defendant's representation that FTX was "the custodian for customer deposits," Tr. 273:9-16, and how that representation was a factor in his decision to invest in FTX. Tr. 274:18-21, 282:18-22. That is testimony as to his expectations and understandings, which, as the Government argued in its September 30 letter, is admissible and is not expert testimony. The Second Circuit's decision in *Gramins* is instructive. There, the Second Circuit affirmed the admissibility of testimony about the "expectations of broker-dealer employees purporting to act in a 'broker' capacity." 939 F.3d at 450. There was no suggestion that these witnesses, who testified about their expectations using "industry jargon," *id.* at 449, could only do so if qualified as experts.

As the Court stated during trial on October 13, testimony about witness expectations based on widely used terms in the relevant industry is not "the subject of scientific or technical" expertise. Tr. 1183:1-2. Indeed, testimony from market participants is essential for the jury to understand "whether a misrepresentation has been made," which "depends on the 'overall message' and the 'common understanding' of the information conveyed." *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 717-18 (E.D.N.Y. 2018). On cross-examination the defense has itself elicited testimony about the "understanding" of market participants of certain terms. *E.g.* Tr. 1244:16-17 (stating during the cross-examination of Zac Prince, "I'm not holding you to a technical definition. I want to get your understanding.").

The defendant cites *United States v. Litvak*, 889 F.3d 56, 69 (2d Cir. 2018), which held that testimony from a market participant with an "indisputably idiosyncratic and unreasonable

viewpoint" was inadmissible. But the Second Circuit also recognized that, in the typical case, evidence of the "individual views of a counterparty trader may usually be relevant to the nature of the market involved and to the beliefs of a reasonable investor." *Id.* That is exactly the nature of the testimony on these topics that will be offered by the Government, and the defense is free to cross-examine investor witnesses in an attempt to show that their views were somehow idiosyncratic or were not those of a reasonable investor. But the Court should deny the defendant's motion seeking to preclude any testimony on these subjects, and allow upcoming Government witnesses to testify about their interpretation of his representations, both on direct and cross-examination.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:   /s  Thane Rehn
Danielle R. Sassoon
Nicolas Roos
Danielle Kudla
Samuel Raymond
Thane Rehn
Assistant United States Attorneys
(212) 637-2354

Cc: Counsel of Record (via ECF)