

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 19, 2023

**By ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Samuel Bankman-Fried,* S6 22 Cr. 673 (LAK)

Dear Judge Kaplan:

    The Government respectfully submits this letter regarding potential jury instructions in this case. First, the Government requests an instruction that a defendant's intent to repay misappropriated or fraudulently obtained funds is not a defense. Second, to the extent that the defendant seeks to introduce any evidence or argument regarding his moral or political beliefs, the Government may request an instruction that it is not a defense if a defendant, acting with intent to defraud, was motivated in his conduct by his beliefs. Third, the Government notes that its previously filed request to charge contained a proposed instruction regarding disclaimers in contracts, which is now even more appropriate following the testimony of Can Sun. (Dkt. 214, at 35). The Government respectfully submits that the evidence at trial supports the inclusion of this instruction, which is in accordance with the law in this Circuit.

    In addition to the above, the Government respectfully submits that certain instructions in the defendant's request to charge (Dkt. 215) are legally erroneous, likely to confuse the jury, or both. The Government also notes that it may seek additional instructions to address any new issues or arguments raised in the defense case.

    **A.  The Government Requests an Instruction That Intent to Repay Is Not a Defense**

    Over the course of the trial, the defense has attempted to introduce evidence and argument to suggest that the defendant's misappropriation of FTX customer funds was not criminal because he believed that he would ultimately be able to repay customers, either by growing FTX's business, by making successful investments, or by some other means designed to cover customer withdrawals. (*E.g.*, Tr. 49:9-16 (defense opening arguing that defendant believed that the money would be paid back); Tr. 54:7-10 (arguing that defendant did not intend to do harm because he wanted to "repay customers")). As this Court noted previously, "it is immaterial as a matter of law whether the defendant intended to repay the misappropriated funds because the offense is 'complete' where, as alleged here, there is an 'immediate intent to misapply and defraud.'" *United*

*States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), 2023 WL 4194773, at *9 (S.D.N.Y. June 27, 2023). Accordingly, there is a factual predicate for a "no ultimate harm" instruction along the lines that the Second Circuit has repeatedly affirmed. *See United States v. Lange*, 834 F.3d 58, 79 (2d Cir. 2016) ("A 'no ultimate harm' instruction given by the district court is proper where (1) there was sufficient factual predicate to necessitate the instruction, (2) the instruction required the jury to find intent to defraud to convict, and (3) there was no evidence that the instruction caused confusion."). The Government's prior request to charge includes a clear and detailed instruction to the jury that it must find intent to defraud to convict. (Dkt. 214 at 12-14). Thus, the Government requests the addition of a "no ultimate harm" instruction, as warranted by the arguments made in the defense opening and the facts that the defense has repeatedly sought to elicit through cross-examination of witnesses.

The Government requests that the Court provide the following instruction, which is adapted from the instructions affirmed in *Lange*, as well as in *United States v. Koh*, 199 F.3d 632, 641 (2d Cir. 1999), and *United States v. Berkovich*, 168 F.3d 64, 67 (2d Cir. 1999):

> You are instructed that a belief by the defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money or property does not warrant a finding by you that the defendant acted in good faith. No amount of honest belief on the part of the defendant that the scheme would ultimately make a profit for customers or lenders would excuse fraudulent actions or false representations by him to obtain money or property.

**B. The Government Requests an Instruction That It Is Not a Defense if a Defendant Was Motivated by his Moral or Political Beliefs to Break the Law**

The defendant has in certain public statements emphasized his philosophy of so-called "effective altruism" to argue that his business decisions were motivated by a desire to do good in the world. Any such arguments are not a defense to fraud or other criminal charges, as courts have repeatedly recognized. Similarly, any argument that the defendant lacked wrongful intent because he subscribed to an idiosyncratic philosophy about the morality of lying and stealing, and placed a greater premium on his subjective conception of the long-term good, would be irrelevant to the *mens rea* for wire fraud. *See, e.g.*, *United States v. Edwards*, 101 F.3d 17, 19 (2d Cir. 1996) (affirming the following jury instruction given by district court: "There was talk here of motive by the defendant. The motive that defendant had or claimed to have had for committing a crime charged is irrelevant to his guilt or non-guilt. Whether this defendant committed acts in order to further a political goal or for a similar reason, for his personal gain or for the gain of somebody else, doesn't excuse his acts if he committed them and violated the law."); *see also United States v. Gatto*, 986 F.3d 104, 133 (2d Cir. 2021) (Lynch, J., concurring in part) ("Such a 'Robin Hood' defense – that the defendants were essentially robbing the rich to help the poor – is of course also not a legal defense."); *United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005) ("A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants."). To the extent that the defense case attempts to argue that the defendant was motivated by his moral and political beliefs, or that he did not believe he was engaged in wrongdoing because he was using customer funds for altruistic purposes, or any other similar

suggestion, the Government will request that the Court provide the jury with the following instruction:

> Proof of bad motive is not required to convict. And good motive alone is not a defense. You have heard evidence that the defendant was motivated by his personal philosophical or moral outlook. If you find that the defendant intended to defraud others in order to achieve those aims, his asserted philosophical or other motive for those actions does not excuse his acts and is not a defense to the crimes charged in the Indictment.

### C. The Government's Requested Instruction Regarding Disclaimers Is Warranted by the Facts

In its request to charge, the Government proposed the following instruction concerning disclaimers:

> In considering whether a statement or omission was material, let me caution you that a clause in an investment contract or a disclaimer cannot render any misrepresentation, including any oral misrepresentation, immaterial as a matter of law.

(Dkt. 214, at 35).

The Government notes that this instruction is particularly warranted in light of certain arguments made by the defense and by the evidence introduced in the case to date. Specifically, in its opening statement, the defense highlighted certain language from the FTX terms of service relating to margin trading and margin loans, in an apparent attempt to suggest that these terms authorized the defendant's actions. (Tr. 44:8-11). The defense then attempted to cross-examine former FTX general counsel Can Sun on this same provision during trial today. While being cross-examined by the defense, Mr. Sun indicated that this provision was "drafted mostly for disclaimer purposes" and that there were more detailed policies and representations regarding margin trading, liquidation, and margin loans that were made by FTX and the defendant elsewhere. (Tr. 1984).

Accordingly, this instruction is fully warranted by the facts and to prevent any confusion by the jury that it should evaluate the defendant's conduct solely in terms of whether it constituted a violation of the FTX terms of service. While the terms of service are certainly part of the overall body of actions, representations, and omissions made by the defendant and his co-conspirators, the jury will not be asked to evaluate whether there was a violation of the terms of service or to interpret the effect of particular provisions of the terms of service. *See United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017) (distinguishing criminal cases under mail and wire fraud statutes from civil fraud actions and noting that "fraudsters may not escape criminal liability for lies told to induce gullible victims to make worthless investments by inducing them to sign a contract containing disclaimers of reliance"). In light of the fact that the discussion of disclaimers came up in the context of FTX's terms of service, the Government would not object to a disclaimer instruction narrowed to "a clause in the terms of service or a disclaimer."

### D. The Government Objects to the Following Legally Incorrect Statements of Law in the Defendant's Proposed Jury Instructions

In the defendant's August 21, 2023, proposed jury instructions (*see* Dkt. 215), he proposed several statements of law that are not legally correct or are otherwise unnecessary, confusing, or particularly in comparison with the instructions proposed by the Government. Accordingly, the Government objects to the following parts of the defendant's proposed instruction:

First, on pages 10 and 14 of the defendant's requests he proposes instructing the jury that "[p]roperty does not include intangible interests such as the right to control the use of one's assets, nor does it include potentially valuable economic information that a person might consider valuable in deciding how to use his or her assets." (Dkt. 215 at 10, 14). It is unnecessary to instruct the jury that property does not include "intangible interests such as the right to control" because as the Court previously held, the fraud charges in this case are not based on a right-to-control theory, *see United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), 2023 WL 4194773, at *9 (S.D.N.Y. June 27, 2023), and the Government does not intend to argue that victim customers or lenders were deprived of the right to control the use of their assets. Rather, the Government's allegation, as the trial has made clear, is that the defendant took victims' money and property. The Government's proposed instructions would explicitly focus the jury on the "money or property" object, and do not use a "right to control" theory, and therefore are appropriate based on the facts of the case. *Compare United States v. Barbera*, No. 21 Cr. 154 (JGK), 2023 WL 6066249, at *1 (S.D.N.Y. Sept. 18, 2023) (rejecting the defendant's challenge to wire fraud jury instructions based on *Ciminelli* where the instruction "did not use a right to control theory" and "limited the object of the fraud to the traditional property concept of money or property"), *with United States v. Hild*, No. 19 Cr. 602 (RA), 2023 WL 5928350, at *13 (S.D.N.Y. Sept. 12, 2023) (describing right to control language in jury charge but finding its inclusion harmless). In addition to being unnecessary, such an instruction would undoubtedly confuse the jury, which, not being charged with knowing developments in the law of wire fraud generally, would have no understanding of the irrelevant concept of the right to control.

Second, the next sentence in the defendant's proposed charge is factually and legally baseless. Specifically, the defendant proposes on pages 10 and 11 to instruct the jury that: "If you find that FTX customers, after depositing funds with FTX, received a credit to transact on the FTX exchange and therefore received the right to withdraw an equivalent amount of funds at a later time upon request, that is insufficient to establish that they were deprived of property." (Dkt. 215 at 10-11). As a threshold matter, that proposal is untethered to the facts of the case. There has been no testimony or evidence during the trial that after depositing funds, customers "received a credit to transact" or that their property right was limited to a "right to withdraw an equivalent amount." Where there is no basis in evidence for a theory, the defendant is "not as a matter of law entitled to an instruction specifically apprising the jury of that theory." *United States v. Evangelista*, 122 F.3d 112, 117-18 (2d Cir. 1997). Moreover, that instruction is legally incorrect. The requirement that a defendant devise a scheme to obtain money or property is satisfied "where a defendant fraudulently obtains the *use* of another person's money or property for a period of time, using it for his own personal profit, and depriving the owner of the ability to do so," regardless of "whether temporarily … or permanently." *United States v. Males*, 459 F.3d 154, 158-59 (2d Cir. 2006) (emphasis in original). Thus, it is incorrect as a matter of law—and common sense—that as long

as a victim receives a credit and a right to withdraw, he or she has not been deprived of money or property. Indeed, a credit to obtain funds at a later date, if such funds are ultimately available, is clearly not the same, or as valuable, as the money or property itself, as is illustrated by the result when FTX's customers, not knowing that their money had been spent, sought to withdraw their deposits.[1]

Third, parts of the defendant's proposed instructions on wire fraud misstate the applicable *mens rea* requirements. The applicable *mens rea* for wire fraud is "specific intent to harm or defraud the victims of the scheme." *United States v. Rybicki*, 354 F.3d 124, 150 (2d Cir. 2003). The word "willfully" appears nowhere in the text of the wire fraud statute. *See United States v. Gole*, 21 F. Supp. 2d 161, 167-68 (E.D.N.Y. 1997) ("'Willfully' appears nowhere in the mail fraud statute, and the Second Circuit has expressly held that the only scienter requirement for a violation of § 1341 is that the acts proscribed be carried out 'knowingly.'"); *United States v. Blagojevich*, 794 F.3d 729, 739 (7th Cir. 2015) ("The wire-fraud statute requires a specific intent to defraud but not willfulness or any other proxy for knowledge of the law."); *United States v. Dockray*, 943 F.2d 152, 156 (1st Cir. 1991) (holding that "willfulness" is "not synonymous with the intent to defraud requirement in the mail and wire fraud statutes"); *United States v. DiRoberto*, 686 F. App'x 458, 461 (9th Cir. 2017) ("The mail and wire fraud statutes do not require proof of willfulness."). As a result, several aspects of the proposed defense instruction on page 11 and 12 of their requests are wrong or may confuse the jury, including that the defendant is not guilty unless he "purposefully violated an obligation that prohibited use" or acted "with knowledge that [his] conduct [was] unlawful, and with intent to do something the law forbids." (Dkt. 215 at 11-12). If the Court is inclined to instruct the jury on willfulness, the Government requests the willfulness instruction set forth on pages 14 and 15 of its requests to charge. (*See* Dkt. 214 at 14-15).

Fourth, the Government opposes the specific example of good faith cited in the defendant's requests at page 12, that if the defendant "acted in good faith with respect to the use of FTX customer funds and with the belief that as a business matter, FTX would be able to cover all customer withdrawal requests, he did not act with specific intent to defraud." This would be likely to confuse the jury about whether a belief that customers could be repaid after their property is wrongfully taken is a defense (it is not).

Fifth, as set forth in the Government's prior briefing, the Government opposes a generalized presence of counsel instruction such as the one offered by the defendant at page 13 of his requests. The Government respectfully submits that the Court should give the Government's requested charge on this issue. (*See* Dkt. 214 at 71).

Finally, the defendant proposed an instruction on bias of witnesses, including relating to an interest in the outcome of the case. In the event the defendant testifies, the Government submits that the instruction should be given in a way that does not suggest that the defendant has a motive to falsely testify based solely on his interest in the outcome of the case. *United States v. Solano*,

---

[1] A popular movie from the 1990s illustrates the point: a briefcase, once filled with money, is not the same as a briefcase later filled with IOUs. *See* DUMB & DUMBER (1994), available at https://www.youtube.com/watch?v=7GSXbgfKFWg (rejecting suggestion by actor Jim Carrey's character that "IOUs" are "as good as money").

966 F.3d 184, 197 (2d Cir. 2020) (holding that it was error for the district court to instruct that "any" witness with an interest in the outcome of the case, which included the defendant, necessarily has a "motive to testify falsely").

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney for the
        Southern District of New York

By:   /s Thane Rehn
        Danielle R. Sassoon
        Nicolas Roos
        Danielle Kudla
        Samuel Raymond
        Thane Rehn
        Assistant United States Attorneys
        (212) 637-2354

Cc: Counsel of Record (via ECF)