

**COHEN & GRESSER LLP**

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

October 24, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:  *United States v. Samuel Bankman-Fried*, S6 22 Cr. 673 (LAK)

Dear Judge Kaplan:

      On behalf of our client, Samuel Bankman-Fried, we respectfully write to object to certain of the Government's proposed jury instructions, ECF No. 214, and in to respond to the objections and additional instructions set forth in the Government's letter of October 19, 2023 (the "October 19 Letter"). ECF No. 326.

      *1.*      *Instructions on "Intent" for Wire Fraud on Customers Charge*

      The Government's October 19 Letter raises several issues relating to the proposed instructions for the intent element of the charge of wire fraud on customers. In addition, the defense objects to certain aspects of the Government's proposed instructions on this issue.

      <u>"No Ultimate Harm" and Good Faith.</u> The Government seeks a "no ultimate harm" instruction on the ground that an "intent to repay" customers is not a defense. ECF No. 326 at 102. Such an instruction is proper only where the defendant contemplates "some immediate loss to the victim," but not where the defendant believed in good faith that victims would "*never*" be harmed. *United States v. Rossomando*, 144 F.3d 198, 201 (2d Cir. 1998) (emphasis in original). It is the defense's contention that Mr. Bankman-Fried believed that customers would not be harmed at all because the use of customer deposits was permissible and consistent with the rights and obligations comprising the FTX-customer relationship.[1] Thus, instructing the jury that an "intent to repay" would not negate the requisite mens rea would be a non-sequitur, because it presupposes an intent to steal from customers, which Mr. Bankman-Fried did not possess. Such

---

[1] For the sake of clarity, we note that the Government's original proposed instructions already include essentially the same instruction proposed in their October 19 Letter. ECF No. 214 at 13-14.

The Honorable Lewis A. Kaplan
October 24, 2023
Page 2

an unwarranted and improper instruction would also effectively thwart a key theory of the defense.

In its ruling on the Government's motion *in limine* to preclude evidence and argument regarding Mr. Bankman-Fried's "intent to repay," ECF No. 204 at 41, the Court ruled to exclude evidence that the defendant "intended to steal funds and give them back," but denied the Government's motion without prejudice as to "evidence and argument probative of [the Defendant's] alleged good-faith belief that FTX and Alameda's handling of customer assets was permitted by law and under the Terms of Service." ECF No. 289 at 11-12. Accordingly, the Government's objection to the defense's proposed instruction regarding Mr. Bankman-Fried's "good faith with respect to the use of customer funds" is misplaced. ECF No. 326 at 5; ECF No. 215 at 12. Mr. Bankman-Fried is entitled to have the jury consider whether he acted in good faith on this core question, and the Government's effort to foreclose that defense through the jury charge is improper.

The Government's original proposed jury instruction on the intent element of the wire fraud counts also included the following: "even if the defendant believed that the victims would ultimately lose money, or that they would ultimately not suffer financial loss, that is no defense if the defendant intended immediate or temporary financial or property loss to another." ECF No. 214 at 12. This instruction would be improper for the same reason as the more fulsome "no ultimate harm" instruction.

At a minimum, if the Court decides to include a "no ultimate harm" charge, the defense respectfully requests that the Court add the following language, which the Second Circuit has approved to ensure the jury clearly understands that they cannot "convict [defendant] unless he intended to cause loss to someone." *United States v. Berkovich*, 168 F.3d 64, 67 (2d Cir. 1999)

> As a practical matter, then, in order to sustain the charges against the defendant, the government must establish beyond a reasonable doubt that he knew that his conduct as a participant in the scheme was calculated to deceive and, nonetheless, he associated himself with the alleged fraudulent scheme for the purpose of causing some loss to another.

*Id. See also United States v. Finazzo*, 682 F. App'x 6, 9 (2d Cir. 2017) (holding "no ultimate harm instruction" was proper "where the district court clarified immediately thereafter that the Government was still required to establish that [the defendant] engaged in the alleged fraudulent scheme for the purpose of causing some loss to another").

Further, if the Court decides to include part or all of the Government's proposed instruction for the intent element of wire fraud on customers, the defense objects to including the following phrase in the description of good faith: "[If] the defendant in good faith believed that he was entitled to take the money or property from the victim, even though that belief was mistaken . . ." We respectfully submit that the phrase "entitled to *take*" in this instruction

presupposes that money or property was "taken," and could steer the jury toward a finding of fraudulent intent even if Mr. Bankman-Fried believed in good faith that customer assets and property were not being embezzled or misappropriated.

The defense respectfully submits that its proposed instruction regarding good faith is more consistent with precedent, less likely to confuse or prejudice the jury, and more instructive under the circumstances of this case.

"Willfully." The Government objects to the defense's proposed instruction on the mens rea requirement for the wire fraud charges. ECF No. 326 at 5. Specifically, the Government argues that the term "willfully" does not belong in the charge, at least insofar as it is defined to include terms such as "purposely violated an obligation that prohibited use" or "acted with knowledge that [his] conduct was unlawful, and with intent to do something the law forbids." *Id.* In the context of the wire fraud charges, the defense continues its proposed instruction and particularly objects to an instruction that defines willfulness (which appears throughout the Government's proposed wire fraud instruction, ECF No. 214 at 12-14)) as "to act voluntarily and with a wrongful purpose," but does not specify purpose was to deprive customers of some financial or property right. *See United States v. Carlo*, 507 F.3d 799, 801 (2d Cir. 2007) (a wire fraud conviction requires proof of a "specific intent to obtain money or property by means of a fraudulent scheme that contemplated harm to the property interests of the victim").

   2.   The Government's Proposed Instruction Regarding Mr. Bankman-Fried's "Moral or Political Beliefs"

Citing "certain public statements" by Mr. Bankman-Fried, the Government asks the Court to instruct the jury that it is not a defense "that the defendant was motivated by his personal philosophical or moral outlook." ECF No. 326 at 2-3. The defense does not intend to offer evidence of Mr. Bankman-Fried's morals or political beliefs as an indication that he acted out of "good motive," so such an instruction is unnecessary.

   3.   The Government's Proposed Instructions Regarding Disclaimers

In connection with the materiality element in the charge of conspiracy to commit securities fraud, the Government's original proposed charge included an instruction "that a clause in an investment contract or a disclaimer cannot render any misrepresentation . . . immaterial as a matter of law." ECF No. 214 at 35. The Government's October 19 Letter argues that this instruction is "particularly warranted" now in light of testimony and statements in the defense's opening regarding language in the Terms of Service governing margin trading and margin loans.

Respectfully, we submit that the Court should reject the proposed instruction and the Government's arguments. The proposed instruction is unnecessary for its stated purpose. The Government asserts that the instruction is "particularly warranted" in light of references in the

The Honorable Lewis A. Kaplan
October 24, 2023
Page 4

defense opening to portions of the Terms of Service relevant to margin trading and margin loans in its opening. *Id.* (citing Trial Tr. 44:8-11). But the opening merely noted that portions of section 16 of the Terms of Service, which address margin trading and margin loans, could impact "whether the customer taking the margin loan had sufficient security or collateral." Trial Tr. 12-14. Nothing in the defense's opening creates a need to clarify for the jury that "disclaimers" in the Terms of Service do not render misrepresentations immaterial.

The Government notes that Can Sun testified on section 16 of the Terms of Service), which he characterized as being drafted "mostly for disclaimer purposes. *Id.* 1984. Although section 16 does include risk disclosures, it also includes substantive terms relating to margin maintenance requirements and the obligation to repay debt incurred to other customers through margin trading. GX 558 at 16-19. These requirements cannot plausibly be characterized as disclaimers, and an instruction that substantive provisions do not "render any misrepresentation . . . immaterial" would serve only to confuse the jury.

The authority cited by the Government, *United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017), is also inapposite. *Weaver* held that contractual "disclaimers of reliance" would not render immaterial prior misrepresentations by the defendant. The reasoning of that decision does not support an instruction to jurors regarding substantive provisions in the Terms of Service.

  4. *The Government's Proposed Instruction Regarding the Object Element of the Commodities Fraud Conspiracy Charge*

An essential element of commodities fraud is that the fraud was conducted "in connection with" a commodities transaction. 17 C.F.R. § 180.1(a)l 7 U.S.C. § 9(1). In the Government's proposed charge, the jury could find the requisite connection solely from evidence of a "some nexus or relation between" the allegedly fraudulent conduct and a swap or contract of sale of a commodity, or evidence that the fraudulent conduct "touched upon" a commodities transaction. ECF NO. 214 at 46. The law requires more. The alleged fraud must be "integral to" a commodities transaction, rather than merely "incidental." *Sec. and Exch. Comm'n v. Zandford*, 535 U.S. 813, 820, 122 S.Ct. 1899, 1903 (2002). The Government's proposed instruction – that the requisite connection exists where this is "some nexus or relation" between the fraud and a commodities transaction, or if the conduct merely "touched upon" such a transaction – is clearly insufficient.

Indeed, the Supreme Court has specifically cautioned that the "in connection with" requirement not be "stretched beyond reason" when applied to "the fraudulent use of money," *United States v. O'Hagan*, 521 U.S. 642, 657, 117 S.Ct. 2199, 2210 (1997), and that the requirement would not be satisfied by evidence supporting the Government's theory here, namely, "theft of cash or securities in an investment account," *Zandford*, 535 U.S. at 820, 122 S.Ct. at 1903, or the "embezzle[ment] [of] cash" from a customer. *O'Hagan*, 421 U.S. at 656,

The Honorable Lewis A. Kaplan
October 24, 2023
Page 5

117 S.Ct. at 2209. *See* Omnibus Reply Brief in Support of Defendant's Pretrial Motions, ECF No. 158 at 28-32.

The defense also objects to the Government's proposed charge because it makes no mention of the Commodities Exchange Act's ("CEA") territoriality requirement. As a general matter, the CEA does not apply to a fraudulent or manipulative scheme that is "predominantly foreign." *Prime Int'l Trading v. BP P.L.C.*, 937 F.3d 94, 107 (2d Cir. 2019). The statute reaches extraterritorial conduct relating to swaps specifically, but only where the fraud has a "direct and significant connection" with U.S. commerce. 7 U.S.C. § 2(i).

Because the Government's proposed instruction regarding the object elements of the Commodities Fraud charge misstates the "in connection with requirement" and is silent on the territoriality requirement, the defense respectfully suggests that the Court should give Mr. Bankman-Fried's Amended Proposed Instruction on these issues. ECF No. 327 at 30-34.

     5.     *The Government's Additional Arguments*

          a.     <u>Right to Control</u>

The Government's October 19 Letter objects to the defense's proposed instruction that property "does not include intangible interests such as the right to control the use of one's assets … or potentially valuable economic information." ECF No. 326 at 4. The Government argues that the instruction is unnecessary because of the Court's ruling declining to dismiss the substantive and conspiracy wire fraud charges. The Court's pretrial ruling was based on allegations in the S5 Indictment that the objectives of the charged frauds were, among other things, to take "money" deposited by customers and retain "hundreds of millions of dollars in loans." ECF No. 167 at 26, 27. Respectfully, the defense submits that the requested instruction is still relevant and necessary to ensure the jury is able to properly assess whether the proof at trial establishes that the alleged fraud on customers and lenders relates to a property interest that is cognizable under the federal fraud statutes.

          b.     <u>Involvement of Counsel</u>

The Government's October 19 Letter opposes a "generalized" involvement of counsel instruction on unspecified grounds. ECF No. 215 at 13. Instead, the Government asks the Court to give its own, equally generalized charge. ECF No. 214 at 71.

The defense retains, for record purposes, its objection to instructing the jury regarding the involvement of counsel on a standalone basis as rather than within the instructions regarding any particular count, but will not address that issue here. However, the Government's proposed instruction is deficient. It states only that the involvement of lawyers "does not constitute a defense to any charge in this case." *Id.* But the involvement of counsel can be relevant to a defendant's intent even without a formal advice of counsel defense. ECF No. 246 at 29-31. The

The Honorable Lewis A. Kaplan
October 24, 2023
Page 6

Court has noted that "lawyer presence, involvement, or advice known to the defendant at the time of his alleged misconduct might have a real bearing on whether he acted with or without fraudulent intent." ECF No. 303 at 9.

The record includes testimony regarding involvement of lawyers in structuring loans from Alameda to FTX executives, drafting the Terms of Service, and other issues. *See, e.g.,* Trial Tr. 324:24-325:18, 577:10-15, 1460:1-6, (founder loans); 1908:16-21 (Terms of Service); 1975:3-8 (efforts to obtain licenses because "FTX was unregulated at the time"). Consistent with the Court's order and prior briefing, we respectfully submit that the defense's proposed instruction regarding the involvement of counsel is appropriate.

      c.    <u>Witness Bias</u>

Finally, the Government proposes that, if Mr. Bankman-Fried testifies, the defense's proposed "witness bias" instruction be given "in a way that does not suggest that the defendant has a motive to false testify based solely on hits interest in the outcome of the case." ECF No. 326 at 5. The defense removed the standalone witness bias instruction from its Amended Proposed Requests to Charge. *See* ECF No. 327-1 at 50. To the extent the Government's concern is implicated by other instructions regarding witnesses, the defense has no objection to its request.

          /s/ Mark S. Cohen
Mark S. Cohen
Christian R. Everdell
S. Gale Dick
Sharon L. Barbour
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, New York  10022
(212) 957-7600
mcohen@cohengresser.com
ceverdell@cohengresser.com
sgdick@cohengresser.com
sbarbour@cohengresser.com

cc:    All counsel of record (via ECF)