U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 24, 2023

**By ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Samuel Bankman-Fried,* S6 22 Cr. 673 (LAK)

Dear Judge Kaplan:

      The Government respectfully submits this letter in response to the defendant's revised requests to charge (Dkt. 327 and 327-1), which contain numerous proposed instructions that are inconsistent with the law, would be likely to confuse the jury, and should not be included in the Court's charge. More generally, the Government submits that wherever there is a difference between the Government's request and the defense request, the Government's proposal more accurately captures the applicable law than the defendant's proposal. Because the Government has submitted its own proposed jury charges and understands that the Court will hold a charge conference, the Government does not offer a line-by-line response or objection to the defendant's requests, but instead seeks to draw the Court's attention to principal substantive areas of the defendant's revised requests that the Government believes are either contrary to or materially misstate applicable law, or are particularly likely to mislead or confuse the jury.

Defense Request No. 2: The Defendant's Proposed Added Language Is Confusing

      In his proposed Defense Request No. 2, "Crimes Defined by Statute Only," the defendant now includes the sentence "A witness's stated feeling or belief as to what the law should or should not have prohibited is not sufficient to convict anyone of any charge." (Dkt. 327-1 ("Deft. Redline") at 7). That sentence is not found in Judge Oetken's charge in *United States v. Danilovich*, 12 Cr. 171, which is the only precedent that the defendant cites. Moreover, there has not been any trial testimony in which a witness has expressed a belief about what the law "should or should not have prohibited." Thus, the defendant's proposed instruction does not appear to serve any purpose other than to improperly suggest that the jury should disregard testimony in which the defendant's victims and employees have explained their understanding of how the defendant's business operated and treated customer funds. That testimony did not involve witness beliefs about the law, but witness beliefs about the facts, which were based on the defendant's own representations and course of conduct.

In addition to the flaws in the defendant's proposed revision to this instruction, the entire instruction that crimes are defined by statute only is unnecessary. The same idea is fully captured in the Government's request to charge, which makes clear that the jury must find that the Government has proven each of the elements of each charged crime in order to convict. But if the Court were to give the defendant's requested instruction modeled on *Danilovich*, it should not include the extraneous and potentially confusing language about witness beliefs that is proposed in the defendant's revised request to charge.

Defense Request No. 5: The Defendant's Revised Proposed Jury Instruction on Misappropriation Is Legally Erroneous and Confusing

Prior to trial, both parties submitted a request to charge the jury that contained a definition of "misappropriation" drawn from applicable case law. The Government proposed a definition of "misappropriation" as "the fraudulent appropriation to one's own use of money or property that was entrusted to one's care by someone else." (Dkt. 214 at 8). The defendant proposed a substantively identical definition. (Dkt. 215 at 11 (defining misappropriation as "the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another")). Both parties' proposed definitions were drawn from the definition given by the Supreme Court in *Carpenter v. United States*, 484 U.S. 19, 27 (1987). The Government's proposed instruction provided further explanation to the jury of this concept, modeled closely on this Court's instructions in *United States v. Gatto*, No. 17 Cr. 686 (LAK) (S.D.N.Y. Oct. 1, 2018) and *United States v. Blaszczak*, No. 17 Cr. 357 (LAK) (S.D.N.Y. Apr. 27, 2018), and other precedent in this District. (*See* Dkt. 214 at 8-10).

In his revised request to charge, the defendant has deleted the language from *Carpenter* that he previously proposed as a definition of misappropriation, and has instead proposed an instruction that is unprecedented, legally wrong, and likely to confuse and mislead the jury about the applicable law. (Deft. Redline at 13-15). In particular, the defendant proposes to improperly focus the jury's attention on the FTX terms of service to the exclusion of other evidence in the case, and erroneously suggests that the defendant is guilty of the misappropriation of customer deposits only if the jury finds a violation of the terms of service. That is simply wrong as a matter of law. As the Government has previously briefed, a wire fraud charge does not require a breach of contract; indeed, the Supreme Court in *Carpenter* expressly upheld application of a wire fraud misappropriation theory "even in the absence of a written contract." 484 U.S. at 27. (*See also* Dkt. 322 (Government letter containing additional authority on this issue)). Nor would some form of warning or waiver contained in a contract provide a defense to otherwise material misrepresentations. *United States v. Weaver*, 860 F.3d 90, 97 (2d Cir. 2017). Thus, the defendant's attempt to reduce the evidence in this case to the FTX terms of service should be rejected. The jury may consider all the representations, omissions, and actions of the defendant and his agents to determine whether he breached a "fiduciary duty or similar relationship of trust and confidence," which includes a relationship in which another person "entrust[s] the fiduciary with custody over property." *United States v. Chestman*, 947 F.2d 551, 569 (2d Cir. 1991).

Tellingly, the defendant does not cite any precedent for his newly discovered argument that the jury must find a violation of the terms of service to convict on the wire fraud counts. Instead, he cites *Carpenter* and *Chestman*, but as noted, both of those cases held that a contractual

relationship is not required to find a defendant guilty on a misappropriation theory. He also cites a civil case dealing with the enforceability of an arbitration clause in a website's terms of service, which simply has nothing to do with the legal standard applicable to the crime of wire fraud charged here. (*See* Deft. Redline at 11 (citing *Carpenter*, *Chestman*, and *Meyer v. Uber Techs.*, 868 F.3d 66, 75 (2d Cir. 2017))).

To be clear, the Government does not disagree that the terms of service are a relevant piece of evidence for the jury to consider, along with the other evidence in the case, in determining whether the defendant committed fraud. But, as noted above, the law is clear that it is the defendant's overall course of conduct with respect to his customers that the jury should consider, and that he can be convicted of fraud on his customers even if there were disclaimers or other language in the terms of service that purportedly covered his conduct.[1] *See Weaver*, 860 F.3d at 97 (noting that "although the contractual disclaimers were relevant to the jury's determination of Weaver's guilt, they did not render extra-contract misrepresentations immaterial as a matter of law"). Accordingly, the Government has proposed an instruction regarding contractual disclaimers that accords with the Second Circuit's holding in *Weaver*. (Dkt. 326 at 3).

The defendant's revised proposed instruction is additionally wrong and confusing in its characterization of the property interest at issue in this case. (*See* Deft. Redline at 15 (proposing to instruct the jury that "the Government must have proven beyond a reasonable doubt that under English law the Terms of Service created a property interest")). The Indictment alleges, and the facts at trial have proven, that FTX customers entrusted the defendant with their deposits and that he misappropriated those deposits. (Dkt. 202 ¶ 17). This theory is fully in line with *Carpenter*, *Chestman*, and other misappropriation cases, as explained in the Government's request to charge. (Dkt. 214 at 8-9). Indeed, the defendant's proposal appears to confuse the property element— unquestionably satisfied by the money and cryptocurrency that was the object of the defendant's scheme—with the scheme to defraud element, as to which the question is whether the defendant misappropriated that money or property or obtained it through misrepresentations. The customers had a property interest in the money and cryptocurrency they deposited with FTX, and there is no additional need to ground their property interest in a contractual right found in the FTX terms of service, as the defendant's new proposed instruction seeks to do.

The defendant's proposed instruction goes even further astray in inviting the jury to speculate about the application of English law to these questions, without even providing an instruction as to what English law says about them. As the Government has repeatedly explained, it would be improper to instruct the jury regarding English law, as this case is governed by the federal wire fraud statute and is not a case alleging breach of contract. But even if the defendant wanted such an instruction, he has not proposed one. Instead, he proposes an instruction that refers to English law without even attempting to identify what the applicable English legal standard

---

[1] The evidence introduced at trial also rebuts the defendant's factual claims about the terms of service, as multiple witnesses have testified that the provisions cited in the defense opening statement did not explain the defendant's use of customer funds. (*See, e.g.*, Tr. 1468 (Nishad Singh testimony that the missing customer money was not explained by FTX's spot margin system); Tr. 1962 (Can Sun testimony that the "theoretical argument" that the margin system explained the missing funds was "not supported by the facts")).

would be. That would leave the jury with no guidance whatsoever as to how to resolve this case, which suggests that the defendant's real goal is to confuse the jury. The Court should reject the defendant's proposed instruction and provide the standard legal instructions used in the past by this Court and others in misappropriation cases, as proposed in the Government's request to charge.

<u>Defense Request No. 6: The Defendant's Revised Proposed Jury Instruction on Lender Fraud Misstates the Facts Alleged in the Indictment</u>

The defendant has also added new language to his proposed request on Count Three of the Indictment that misstates the nature of the alleged fraud on lenders and attempts to reduce the alleged lender fraud to being derivative of the alleged customer fraud. Specifically, the defendant's new instruction inaccurately states that "the claim of lender fraud is based on failure to disclose the improper borrowing by Alameda," and that the jury "must acquit" if it finds that the Government has not proven that Alameda's borrowing from FTX was "improper." That is incorrect. Count Three charges the defendant with "providing false and misleading information to those lenders regarding Alameda's financial condition." (Dkt. 202 ¶ 22). If the defendant concealed Alameda's borrowing from FTX from lenders, that would be false and misleading, and would give lenders an inaccurate view of Alameda's financial condition, regardless of whether the borrowing from FTX was "improper." Nor are the allegations in the Indictment limited to that particular provision of false and misleading information regarding Alameda's financial condition; rather, as the evidence at trial has shown, there were multiple additional ways in which the defendant conspired to mislead lenders, including by providing them with financial information that inaccurately characterized short-term liabilities as long-term liabilities, that understated Alameda's overall liabilities, and that omitted Alameda's large loans to the defendant and other insiders. The jury could convict based on those misrepresentations and omissions without even considering the concealment and misrepresentation of Alameda's borrowing from FTX. Thus, the defendant's attempt to conflate Count Three with Count One is incorrect, and the Court should not include the defendant's newly requested language.

Next, the defendant's proposed instruction injects additional confusion by proposing to instruct the jury that it "must acquit" the defendant if it finds that he "believed that the financial statements provided to the lenders was consistent with the balance sheet required by the lenders." (Deft. Redline at 20). That is wrong for three reasons. First, the defendant's proposed instruction is ambiguous at best, and misleading at worst. For instance, if Alameda's lenders requested a balance sheet that showed that Alameda was financially healthy, and the defendant provided them with a balance sheet that falsely indicated Alameda's financial health, this would be "consistent" with what the lenders required, but obviously fraudulent. That would be a basis to convict, not acquit. Second, only one lender witness testified at this trial, and the defense has generally not adduced evidence about what balance sheet Alameda's lenders "required." Third, to the extent that the defense is simply requesting a good faith instruction about what the defendant believed, the Government submits that the Court should provide a general instruction that good faith is a defense, rather than an instruction that attempts to characterize the facts of this case one way or another. The Government's request to charge includes such a good faith instruction. (Dkt. 214 at 13).

<u>Defense Request No. 9: The Defendant's Proposed Addition to His Instruction on Securities Fraud Is Unsupported by the Record</u>

The defendant's revised request to charge proposes a new sentence to the instruction on securities fraud, which states that the materiality of a misrepresentation should not be evaluated by reference to the "idiosyncratic views of an individual investor." (Deft. Redline at 29-30). The defendant draws this language from *United States v. Litvak*, 889 F.3d 56, 69 (2d Cir. 2018), but there is nothing in the record in this case that would support the inclusion of such an instruction here. There has been no evidence presented to suggest that the views of the investors who have testified were "idiosyncratic," and presenting such an instruction without evidentiary support risks jury confusion. The Government's request to charge accurately informs the jury that it must evaluate materiality from the point of view of a reasonable investor, and nothing further is required. (Dkt. 214 at 35).

<u>Defense Request No. 10: The Defendant's Revised Proposed Jury Instruction on Commodities Fraud Is Legally Erroneous and Confusing</u>

The defendant has taken his initial proposed instruction for the conspiracy to commit commodities fraud offense in violation of the Commodities Exchange Act ("CEA") and its implementing regulation Rule 180.1, which included irrelevant and confusing language about the "in connection with" element of that crime, and revised the instruction to include legally erroneous and confusing statements about both the "in connection with" element and the territorial applicability of the offense. The Court should reject his instruction entirely.

    A. *"In Connection With" Instruction*

The defendant's request to charge asks for an instruction that:

> the phrase "in connection with" is not limitless and does not convert every instance of alleged fraudulent conduct that happens to involve commodities into a violation of the federal commodities fraud laws. For purposes of Count Six, the Government must prove beyond a reasonable doubt a fraud that is "integral"—and not merely incidental—to a purchase or sale of a commodity, or integral to a swap. (Deft. Redline at 36).

While the Government agrees that the jury should be instructed on the "in connection with" requirement, the defendant's proposed instruction would improperly constrain the jury's understanding of this language. The defendant's proposal is not found in the statute itself or its implementing regulation. 7 U.S.C. § 9(1); 17 C.F.R. § 180.1, but rather seeks to elaborate on *dicta* in the Supreme Court's decision in *S.E.C. v. Zandford*, 535 U.S. 813 (2002), and the Second Circuit's decision in *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated*, 547 U.S. 71 (2006), in a way that undermine the Supreme Court's holding. Indeed, the Supreme Court has held that Section 10(b) of the parallel Securities Exchange Act "should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes." *Zandford*, 535 U.S. at 819. Notably, the defendant cites no jury charge that instructed the jury with

the additional language sought by the defendant. The Government's proposal (Dkt. 214 at 46) provides a more accurate description of the law, and is consistent with precedent in this District, *see United States v. Milton*, No. 21 Cr. 478 (ER) (S.D.N.Y. Sept. 12, 2022); *Blaszczak*, No. 17 Cr. 357 (LAK) (S.D.N.Y. Apr. 27, 2018); *United States v. Tuzman*, No. 15 Cr. 536 (PGG) (S.D.N.Y Dec. 22, 2017).[2]

On top of this, the defendant's proposed instruction goes on to include inaccurate or confusing statements of the law. First, he proposes to instruct the jury that "the 'in connection with' requirement would not be satisfied if the alleged misappropriation was complete before any actual or contemplated commodities transaction took place." (Deft. Redline 36). Next, he requests that the Court charge the jury that the "in connection with" element is not met if he merely "embezzle[d] assets, including commodities, from a client's account, even if that client account is used to trade commodities," and that the "in connection requirement" would not be satisfied by evidence that a defendant misappropriated a customer's funds and used them to trade commodities. (Deft. Redline at 36-37).

Those proposed instructions fail to account for the fact that the Indictment charges the defendant with defrauding customers who were "trading *or intending to trade* cryptocurrencies, futures, options, swaps, and derivatives." (Dkt. 202 ¶ 32 (emphasis added)). The defendant can in fact be properly convicted for making false statements to induce customers to send money to FTX to try to purchase cryptocurrency, even if he misappropriated or embezzled their funds before the contemplated purchases took place. *Jing v. Sun*, No. 21 Civ. 2350 (GRB) (AYS), 2022 WL 1505950, at *19 (E.D.N.Y. Jan. 4, 2022) (holding "in connection with" element met when defendant's statements "were made to entice Plaintiffs to send money . . . for the intended purchase of Bitcoin").

In fact, multiple cases have recognized that it is commodities fraud to embezzle funds which were intended to be used to purchase commodities. *See, e.g.*, *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 363 (S.D.N.Y. 2011) ("in connection with" requirement "can be satisfied . . . where the plaintiffs part with money intending that it be invested in securities, only to have the person to whom that money is entrusted steal it"); *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 719 (E.D.N.Y. 2018) ("Misappropriation of customer funds constitutes fraud that violates Section 6(c)(1) of the Act and Regulation 180.1(a)."). That is particularly true where, as here, the evidence demonstrates that some of the funds the defendant misappropriated were themselves commodities. *CFTC v. Reynolds*, No. 19 Civ. 05631 (MKV), 2021 WL 796683, at *2 (S.D.N.Y. Mar. 2, 2021) (entering default judgment where *inter alia* defendants were charged with "misappropriating the Bitcoin that was entrusted to them"); (*see also*, *e.g.*, Tr. 1715:12-13 (Peter Easton testimony that "Alameda Research used customer crypto funds to pay for the expenditures")). Similarly, the defendant's assertion that the "in connection" element is not met by misappropriating customer's funds and using them to trade commodities is wrong. *Zandford*, 535 U.S. at 822 (element met when "scheme to defraud and the sale of securities coincide"); *S.E.C. v. Dorozhko*, 574 F.3d 42,

---

[2] Indeed, in *Tuzman*, Judge Gardephe's instruction made precisely the opposite point of that made in the defendant's request: "Fraudulent conduct may be 'in connection with' the purchase or sale of securities if you find that the alleged conduct 'touched upon' a securities transaction." No. 15 Cr. 536 (PGG), Dkt. 706 at Tr. 7206.

46 (2d Cir. 2009) ("close temporal proximity" of deception to trading of securities and "cohesiveness of the scheme" suggest that the deception "was part of a single scheme to commit securities fraud."); (*see also* Tr. 654, 652 (Caroline Ellison testimony that the defendant told her "that FTX [customer funds] would be a good source of capital" for Alameda Research "[i]n order to do more trades or just have the ability to do whatever valuable things came up")).

   *B. Extraterritoriality Instruction*

Though the Government did not initially provide an instruction regarding this issue, the Government has no objection to an instruction as follows:

> Additionally, as to Count Six, the Government must also prove a sufficient relationship between the offense and the United States. The Government may satisfy this burden in two ways.
>
> One way the Government may prove a sufficient connection to the United States is by showing that some conduct relevant to the offense charged in Count Six occurred in the United States. It is not necessary that all or most of the conduct relevant to those crimes happened in the United States, although the conduct in the United States must be more than incidental to the scheme. The Government also does not have to prove that the defendant was ever in the United States, just that conduct relevant to the offenses occurred in the country.
>
> A second way the Government may prove a sufficient connection to the United States is by showing that some conduct relating to swaps had a direct and significant effect on, or connection with, commerce in the United States. Here, there is no need for any conduct to have occurred in the United States. All the Government needs to prove is that the offense involved conduct that had an effect on, or connection with, commerce in the United States, and that the effect or connection was direct and significant. In assessing this issue, you may also consider whether conduct in furtherance of the crime charged in Count Six caused trading, money transfers, and communications to occur in the United States, or otherwise affected commerce in the country. In proving the existence of a connection to the United States, it is not necessary to prove both conduct in, and an effect on, the United States. Either will be sufficient to satisfy the Government's burden.

This instruction is consistent with 7 U.S.C. § 2(i), the statutory provision pertaining to swaps, and Rule 180.1, the CFTC's rule pertaining to commodities. As the Court held in denying the defendant's motion to dismiss, the "focus of the CEA is rooting out manipulation and ensuring market integrity." *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), 2023 WL 4194773, at *11 (S.D.N.Y. June 27, 2023) (citations omitted). The Court properly held there that the Indictment

adequately alleged a domestic application of the statute because the fraud was committed "in the United States," was "directed at U.S. customers," and was committed through "a U.S.-based social media platform." *Id.*; *see also In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 267 (2d Cir. 2023) (proper domestic application of the statute where "plaintiffs also allege domestic conduct by the defendants that violated the CEA").

Indeed, the Government's evidence has shown an abundance of domestic conduct by the defendant in connection with the sale of cryptocurrencies. Among other things, the defendant made false statements to induce customers to use FTX while in the United States and through Twitter (Tr. 1682), he did so to induce customers including those in the United States like BlockFi to trade cryptocurrencies on FTX (Tr. 1223-24), he diverted customer cryptocurrency to repay U.S.-based lenders including BlockFi (Tr. 1770), he diverted customer fiat currency which had been intended to purchase cryptocurrency from U.S.-based bank accounts (Tr. 657), and he used some of that misappropriated money to pay for stock in a U.S. company (Tr. 1740).

By contrast, the defendant's proposed instruction misstates the applicable legal standard. His instruction erroneously focuses on whether fraudulent or manipulative conduct was "predominantly foreign," ignoring the Second Circuit's holding that "substantial domestic contacts" suffice for a domestic application of the parallel Securities Exchange Act. *Giunta v. Dingman*, 893 F.3d 73, 82-83 (2d Cir. 2018). The defendant also improperly seeks to instruct the jury that the Government must meet the standard described in 7 U.S.C. § 2(i) "beyond a shadow of a doubt." That is not the Government's burden. *E.g. Thornburg v. Mullin*, 422 F.3d 1113, 1130 (10th Cir. 2005) (prosecutor's "state[ment] [to the jury] that 'beyond a reasonable doubt' does not mean beyond 'a shadow of a doubt or all doubt' was not a constitutional violation" because it was not misleading); *United States v. Balogun*, 463 F. App'x 476, 481 (6th Cir. 2012) (affirming conviction where court instructed jury that "[p]roof beyond a reasonable doubt does not mean . . . beyond a shadow of a doubt, which is not a phrase that we use in court").

<u>Defense Request No. 15: The Defendant's Proposed Jury Instruction on Cooperating Witness Testimony Omits Important Legal Context</u>

The Government objects to the defendant's proposed instruction regarding "cooperating witness testimony" in that it omits a key section from *United States v. Amanat*, No. 15 Cr. 536 (PGG) (S.D.N.Y. Dec. 22, 2017), the case the defendant cites for support. Specifically, the defendant's proposed instruction omits the following instruction from *Amanat*:

> You should be aware that it is not unusual for the government to rely on the testimony of witnesses who admit to participating in criminal activity. The government must take its witnesses as it finds them, and frequently the government must use such testimony in criminal prosecutions because otherwise it would be difficult or impossible to detect and prosecute wrongdoers. For this reason, the law allows the use of cooperating witness testimony, and you may consider the testimony of these witnesses in determining whether the government has met its burden of proving [the defendant's] guilt beyond a reasonable doubt.

Without this language, the instruction would be unbalanced and improperly advance defense advocacy. By contrast, the Government's proposed cooperating witness instruction, Request No. 53, while advising caution in evaluating cooperator testimony, also appropriately protects against the potential of unfair and improper inferences being drawn by the fact of the Government's use of the testimony of cooperating witnesses.

<u>Defense Request No. 17: The Defendant's Proposed Jury Instruction on Other Acts Evidence Is Inaccurate</u>

The Government objects to the defendant's proposed inclusion of "on earlier occasions" when describing the time period of the "other acts." Such a reference is vague and unsupported by the record, which establishes that misconduct applicable to this instruction, namely bribery and conspiring to make unlawful campaign contributions, occurred during the time period of the Indictment from at least in or about 2019, up to and including in or about November 2022. (Tr. 832-833 (describing timing of bribe payments to unfreeze Alameda trading accounts as "November 2021"), Tr. 1421-1422 (describing the timing of political donations funded by Alameda and routed through Nishad Singh as occurring into the fall of 2022).) The Government also objects to the defendant's proposed reference to "evidence of prior incarceration" because there is no evidence in the record to support such statement.

Although the parties' requests are otherwise substantially similar (*compare* Gov't Request No. 51 (Dkt. 214 at 76) *with* Deft. Redline Request No. 17 (Dkt. 327-1 at 51)), the Government's proposed jury instruction appropriately identifies the specific misconduct that should be considered as "Other Acts" evidence and identifies the specific purpose for which such evidence may be considered. These narrowly tailored instructions are warranted to minimize any risk of confusion regarding the "Other Acts" evidence that is applicable and the purpose for which it can be considered. Based on the Court's prior rulings and the evidence introduced at trial, the Government proposes the following additions to insert in the blank spaces in Request No. 51:

> Now, you also heard evidence that the defendant engaged in misconduct that is not charged in this Indictment, including <u>bribery and conspiring to make unlawful campaign contributions</u>. He is not on trial for committing those acts. Accordingly, you may not consider the evidence of other uncharged bad acts as a substitute for proof that he committed the crimes with which he is charged here. Nor may you consider that evidence as proof that he has a criminal personality or bad character. The evidence was admitted for limited purposes, and you may consider it for those purposes alone.
>
> More specifically, you may consider the evidence you have heard regarding <u>bribery</u> for its relevance to <u>the defendant's relationship of trust and confidence between the defendant and Ms. Ellison, as well as its relevance to his motive for committing the charged crimes</u>. You may consider the evidence you have heard regarding <u>conspiring to make unlawful campaign contributions</u> as relevant to <u>the</u>

> defendant's relationship of trust with Nishad Singh and Ryan Salame. You may also consider the evidence of campaign contributions as direct evidence of the charged wire fraud scheme on FTX customers, as it pertains to allegations about how the defendant spent allegedly misappropriated customer funds, and as direct evidence of the charged money laundering conspiracy, as it pertains to the allegation that the defendant engaged in financial transactions that were allegedly designed to conceal the nature, location, source, ownership, or control of criminal proceeds.

Defense Request No. 23: The Defendant's Proposed Jury Instruction on Missing Witnesses Is Unsupported by the Trial Record

A missing witness charge permitting the jury to infer that the testimony of an unproduced witness would have favored one party is appropriate only "if production of the witness is 'peculiarly within [the] power' of the other party." *United States v. Rabbani*, 382 F. App'x 31, 41 (2d Cir. 2010) (quoting *United States v. Nichols*, 912 F.2d 598, 601 (2d Cir.1990)). Here, there is no basis in the record to support the defendant's proposed "Missing Witness" instruction. (Deft. Redline at 64). The Government's proposed instruction, Request No. 59 (Dkt. 214 at 86), appropriately addresses uncalled witnesses that were equally available to both sides.

Defense Request No. 24: The Defendant's Proposed Jury Instruction on the Involvement of Counsel Creates a Risk of Jury Confusion

The Government objects to the defendant's proposed request regarding the involvement of counsel. The proposed instruction improperly instructs the jury that it may consider "whether a lawyer's presence, involvement, or advice known to Mr. Bankman-Fried gave him comfort that he was acting properly" when determining whether the defendant "acted in good faith."

First, even if there were a factual basis to draw an inference about the defendant's reaction to the presence or involvement of counsel, such an instruction would still be nothing more than defense argument, and unsurprisingly was not given in the two jury charges that the defendant cites in support. *See United States v. Milton*, No. 21 Cr. 478 (ER) (S.D.N.Y. Sept. 12, 2022); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. May 23, 2022 and October 24, 2022).

Second, there is insufficient evidence in the record for an instruction regarding a lawyer's advice, because the evidence is insufficient to support that the defendant "'honestly and in good faith sought the advice of counsel,' 'fully and honestly laid all the facts before his counsel,' and 'in good faith and honestly followed counsel's advice.'" *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017). To the contrary, FTX's general counsel, Can Sun, testified that at the time he approved the loan structure for certain founder loans, he "had no idea that customer funds were being used." (Tr. 1948). Moreover, Sun testified that when he first learned of the FTX customer deposit shortfall in November 2022, he advised the defendant that "there was no legal justification for the funds being missing and taken by Alameda." (Tr. 1960). And Sun provided limited to no testimony regarding legal advice concerning FTX auto-deletion policies. (Tr. 1991-93). As a result, the defendant's reliance on *United States v. Tagliaferri,* No. 13 Cr. 115 (RA) (S.D.N.Y.

June 24, 2014), Trial Tr. at 84-85, for such an instruction is misplaced, and the instructions should not be given.

          Respectfully submitted,

          DAMIAN WILLIAMS
          United States Attorney for the
          Southern District of New York

By:   /s Thane Rehn
          Danielle R. Sassoon
          Nicolas Roos
          Danielle Kudla
          Samuel Raymond
          Thane Rehn
          Assistant United States Attorneys
          (212) 637-2354

Cc: Counsel of Record (via ECF)