

COHEN & GRESSER LLP

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

October 25, 2023

VIA ECF

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:  *United States v. Samuel Bankman-Fried*, S6 22 Cr. 673 (LAK)

Dear Judge Kaplan:

On behalf of our client, Samuel Bankman-Fried, we respectfully submit this letter in support of Mr. Bankman-Fried's request for admission of extrinsic evidence of four prior inconsistent statements by Gary Wang and Nishad Singh pursuant to FRE 613(b).  The parties have met-and-conferred on this issue and have been unable to reach agreement.

**Background**

Mr. Bankman-Fried seeks to elicit testimony from FBI Special Agents Luke Booth ("Booth") and Kristin Allain ("Allain") (together, the "FBI Agents") regarding interviews they attended with Gary Wang and Nishad Singh in November and December 2022 and January 2023.

At trial on October 6, counsel for Mr. Bankman-Fried on two occasions directed Mr. Wang's attention to certain statements he had given to the FBI in interviews on November 17, 2022 and December 7, 2022.  Mr. Bankman-Fried's counsel specifically asked Mr. Wang whether reference to notes that the FBI Agents had prepared on Form 302 refreshed his recollection of his statements to the FBI Agents at those interviews.  On each of these occasions, Mr. Wang denied having made or claimed not to recall having made the statements recorded in the Form 302.

At trial on October 17, counsel for Mr. Bankman-Fried on two occasions directed Mr. Singh's attention to certain statements he had given to the FBI in interviews on January 4, 2023 and January 19, 2023.  Mr. Bankman-Fried's counsel specifically asked Mr. Singh whether reference to notes that the FBI Agents had prepared on Form 302 refreshed his recollection of his

The Honorable Lewis A. Kaplan
October 25, 2023
Page 2

statements to the FBI Agents at those interviews. On each of these occasions, Mr. Singh denied having made or claimed not to recall having made the statements recorded in the Form 302.

On October 21, Mr. Bankman-Fried's counsel advised the Government that it would seek to introduce evidence of Mr. Wang's and Mr. Singh's prior inconsistent statements, either through a stipulation or by calling the FBI Agents to testify. Mr. Bankman-Fried's counsel provided the Government with a draft stipulation and, in the alternative, asked the Government to accept service of subpoenas directed to the FBI Agents. The Government declined to agree to a stipulation.

**Legal Standard**

Rule 613 of the Federal Rules of Evidence provides that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Fed. R. Evid. 613(b).

**Discussion**

Mr. Bankman-Fried is entitled to introduce extrinsic evidence of Mr. Wang's and Mr. Singh's inconsistent statements into evidence under Rule 613. For each of these statements, Mr. Bankman-Fried has met the four requirements set forth in this Court's ruling in *United States v. Ghailani*, 761 F. Supp. 2d 114, 117-118 (S.D.N.Y. 2011).

    **A. Wang's and Singh's Testimony Meet Each of the *Ghailani* Factors**

        a. <u>Wang's and Singh's Prior Statements Were Inconsistent with Trial Testimony</u>

Following the Court's guidance in *Ghailani*, the first factor the Court must consider is whether the proffered statements are in fact inconsistent with the testimony sought to be impeached. *Ghailani*, 761 F. Supp. 2d at 117–18. The statements that Mr. Wang and Mr. Singh gave on the record at trial were inconsistent with their prior statements to the Government and the FBI.

            i. *Wang's Statement Regarding "Allow Negative"*

In the FBI Agents' typed notes from an interview with Mr. Wang on November 17, 2022, Mr. Wang stated as follows:

> The allow negative flag was added to ALAMEDA as part of their role as a market maker.

GX 3585-009, at 3 (not admitted into evidence). However, when asked at trial whether he recalled telling prosecutors on November 17 that "the allow-negative flag was added to Alameda

as part of their role as a market maker," and whether the above-quoted notes refreshed his recollection, Mr. Wang responded, "**I mean -- I don't remember if I said exactly this or not.**" Trial Tr. 485:4-25 (emphasis added). On redirect, the Government attempted to rehabilitate Mr. Wang's answer by asking if "market making [was] the only purpose that these special features were used for?" to which Mr. Wang responded, "No." Trial Tr. 611:17-23. However, the Government did not specifically ask about the allow negative function, or why it was added to Alameda's account on FTX.

### ii. Wang's Statement Regarding Stablecoin Conversion

The FBI Agents' typed notes from a December 7, 2022 interview with Mr. Wang provided as follows:

> BANKMAN-FRIED implemented the allow negative flag in august of 2019. He did this because when converting between stablecoins ALAMEDA needed to withdraw stablecoins from the FTX platform, convert them, then re-deposit them back on FTX. **This was part of ALAMEDA's market making function.**

GX-3585-025, at 7 (not admitted into evidence) (emphasis added). However, when asked at trial whether Mr. Wang had told prosecutors on December 7 that the allow-negative flag was necessary for converting between stablecoins and "was a part of Alameda's market-making functions," and when asked whether the above-quoted notes refreshed his recollection, Mr. Wang responded, "**I don't know if I used those exact words or not. I may have said market making. I may have also said for the functionality of the exchange.**" Trial Tr. 487:13-23 (emphasis added).

### iii. Singh's Statement Regarding "Haziness" Around Events in June and July 2022

Special Agent Booth's typed notes from a January 4, 2023 interview of Mr. Singh provided as follows:

> **SINGH had a surprising amount of haziness when trying to recall events in June and July of 2022**, and sometimes could not come up with a specific memory to support the things he understood to have happened.

GX 3501-021, at 17 (not admitted into evidence) (emphasis added). However, when asked at trial whether Mr. Singh recalled telling prosecutors on January 4 that he had a "surprising amount of haziness" when trying to recall events in June and July 2022, and when asked whether the above-quoted notes refreshed his recollection, Mr. Singh responded, "**I still don't remember having said it specifically about June or July of 2022, but I could believe that I did**," and "**The transcript or, I guess, the notes themselves don't actually refresh my recollection.**" Trial Tr. 1532:14-24 (emphasis added).

> iv. *Singh's Statement Regarding Home Purchase.*

Special Agent Allain's typed notes from a January 19, 2023 interview of Mr. Singh provided as follows:

> **There were points along the way when SINGH had pit in his stomach and felt things were wrong, but the purchase of the home was not one of those times.** SINGH also did not feel like that when he treated the transfers from ALAMEDA as loans without questioning further.

GX 3501-028, at 9 (not admitted into evidence) (emphasis added). However, when asked at trial whether Mr. Singh recalled telling prosecutors on January 19 that there were, "points along the way when you had a pit in your stomach and felt things were wrong but the purchase of the home was not one of those times," and when asked whether the above-quoted notes refreshed his recollection, Mr. Singh responded, "**Not really**." Trial Tr. 1613:5-10 (emphasis added). When asked whether he had previously denied describing the home purchase in this way, Mr. Singh responded, "**Not that I recall**." Trial Tr. 1615:14-24.

\* \* \* \* \*

It is "well settled" that statements "need not be diametrically opposed" to be inconsistent. *United States v. Trzaska*, 111 F.3d 1019, 1024 (2d Cir. 1997). "[D]irect contradiction is not essential." § 6203 Scope, 28 Fed. Prac. & Proc. Evid. § 6203 (2d ed.) Instead, the inconsistency requirement under Rule 613(b) is met "if there is any variance between the statement and the testimony that has a reasonable bearing on credibility." *United States v. Preldakaj*, 456 F. App'x 56, 58 (2d Cir. 2012) (internal quotations and citations omitted). Moreover, because an "unwilling witness often takes refuge in a failure to remember," a trial court's hands should not be "tied where a witness does not deny making the statements nor the truth thereof but merely falsifies a lack of memory." *United States v. Insana*, 423 F.2d 1165, 1169-1170 (2d Cir. 1970). Inconsistency "can be found in changes in positions implied through silence or a claimed inability to recall." *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987).

Mr. Wang's and Mr. Singh's denials of having made, or proclaimed inability to recall having made, the above-noted statements go to their credibility in the case. The two statements from Mr. Wang concern whether Alameda's so-called "special privileges" on the FTX exchange were in fact related to a market-making function—a critical point that goes to Mr. Bankman-Fried's state of mind regarding the privileges. As a cooperating witness, Mr. Wang may feel pressured or incentivized to minimize an innocent explanation for special codebase features that benefited Alameda, and thus feign a lack of recollection around having previously said that the allow negative function was used for market making, and that stablecoin conversion—which required allow negative—was a market making function. Mr. Wang should not be allowed to amend his statements regarding these key points on the stand and leave the jury with the

impression that he never viewed the allow negative code as connected to Alameda's market making function.

The two prior statements that Mr. Singh claims not to recall go even more directly to his lack of credibility in the case. First, Mr. Singh claimed not to recall having said that he had a "surprising amount of haziness" specifically around events that occurred in June and July 2022. But events in June and July 2022 are critical to this case. Mr. Singh testified, for instance, that in June 2022 he worked on a project to calculate Alameda's balances. He described his work on this project at length and in detail to the jury, including specific conversations with Mr. Bankman-Fried and Gary Wang. Trial Tr. 1346:8-1351:5. Mr. Singh also testified regarding the fiat@ bug fix in June 2022. 1353:3-18; 1358:14-1359:20. These detailed recollections are at odds with his prior declaration that he had a "surprising amount of haziness" around the events of that month. As a cooperating witness, Mr. Singh may feel obliged to support the Government's narrative around events in June 2022, even though he had previously claimed to have a "hazy" memory of that specific time period.

Second, Mr. Singh claimed not to recall telling the Government and the FBI on January 19 that, although there were times that Mr. Singh "**had [a] pit in his stomach and felt things were wrong, [] the purchase of the home was not one of those times.**" Here, the "purchase of the home" refers to Mr. Singh's purchase of a $3.7 million house on Orcas Island in October 2022, using FTX funds. Trial Tr. 1604:6-21. Mr. Singh's January 19 statement to the FBI that purchasing this home didn't feel "wrong" is diametrically opposed to his statement to the FBI five days later on January 24 that the home purchase was "egregious," and his statement at trial that the home purchase was "egregious, unnecessary, and selfish." Trial Tr. 1615:14-20. When asked on cross-examination whether he had previously denied that the home purchase was egregious, Mr. Singh responded, "Not that I recall." *Id*. Mr. Singh appears to have potentially changed his tune regarding whether the purchase of the Orcas Island home felt "wrong" to him out of concern for not appearing sufficiently cooperative with the Government. But even putting that concern aside, the state of mind that Mr. Singh testified to at trial—that purchases after September 2022, like the Orcas Island home were "egregious"—plainly does not align with what he previously told the Government about it not feeling "wrong" to purchase a $3.7 million home with FTX funds just a few weeks before FTX filed for bankruptcy. This flip-flopping testimony goes directly to Mr. Singh's credibility before the jury.

      b. <u>Wang and Singh Were Given an Adequate Opportunity to Explain Their Prior Statements</u>

The second factor the Court must consider is whether the party seeking to offer extrinsic evidence of a prior inconsistent statement has laid a proper foundation for doing so by affording (a) the witness an opportunity to explain or deny the prior inconsistent statement and (b) the opposite party an opportunity to question the witness about it. *Ghailani*, 761 F. Supp. 2d 114, 118 (S.D.N.Y. 2011).

Here, counsel for Mr. Bankman-Fried laid a proper foundation for Mr. Wang's and Mr. Singh's prior inconsistent statements by affording them an opportunity to explain or deny the statements and allowing the Government to question Mr. Wang and Mr. Singh about their statements. Counsel asked Mr. Wang and Mr. Singh whether they had spoken about the issues in their above-quoted statements, and guided Mr. Wang and Mr. Singh by pointing them to their statements to the FBI. Trial Tr. Counsel also specifically brought up for Mr. Wang's and Mr. Singh's review copies of the Form 302s containing the relevant prior statements in question. Trial Tr. 484:4-485:22; 486:14-487:20; 1531:6-1532:13; 1611:11-1612:9. *See United States v. Amato*, No. 03-CR-1382 (NGG), 2006 WL 1891113, at *5 (E.D.N.Y. June 27, 2006) (witness had an opportunity to explain or deny prior statement because the attorney, "in using the 302's to refresh [the witness's] recollection of the meeting made maximal use of the agents' notes on cross-examination."); *cf. United States v. Block*, 1:16-cr-00595-JPO (S.D.N.Y.), ECF No. 134, at 1289:2-9 (witness had an adequate opportunity to explain or deny a prior statement where there were specific references to the FBI interview, even where the "actual 302 or the FBI notes were not used and placed in front of the witness.")

Because Mr. Bankman-Fried's counsel provided Mr. Wang and Mr. Singh, as well as the Government, with more than sufficient opportunity to deny or explain the prior inconsistent statements, a proper foundation has been laid under FRE 613(b).

c. <u>The Proposed Extrinsic Evidence is Competent and Otherwise Admissible</u>

Mr. Bankman-Fried's proposed extrinsic evidence is competent and otherwise admissible. The evidence has no unfairly prejudicial effect given that the FBI Agents will testify only regarding the specific prior statements made by Mr. Wang and Singh referenced in the above-quoted notes. Furthermore, these statements have significant probative value. With respect to Mr. Wang, these statements will elucidate Mr. Wang's thinking regarding the potential legitimate business functions for the "allow negative" codebase function. With respect to Mr. Singh, the statements will provide context to the jury regarding Mr. Singh's recollection of events in June and July 2022, and will help the jury understand the nature of Mr. Singh's reaction in September 2022 after learning about Alameda's borrows and whether it was appropriate after that time to use FTX funds. As in *Amato*, the admission of FBI agents' testimony on the interviews with Mr. Wang and Mr. Singh is relevant, competent, and appropriate. *See Amato*, 2006 WL 1891113, at *7; *see also Block*, 1:16-cr-00595-JPO (S.D.N.Y.), ECF No. 134, at 1289 & ECF No. 138, at 1622 (approving stipulation as to FBI 302s).

d. <u>Wang's and Singh's Inconsistent Testimony Concerns a Material Issue</u>

Finally, the testimony in question from Mr. Wang and Mr. Singh concerns material, rather than collateral, issues. *Ghailani*, 761 F. Supp. 2d at 118. Evidence that Mr. Wang believed that "allow negative" was a market-making function or related to Alameda's market-

The Honorable Lewis A. Kaplan
October 25, 2023
Page 7

making on FTX undermines the testimony from Mr. Wang as well as Mr. Singh and supports Mr. Bankman-Fried's good faith belief that there were legitimate business reasons for implementing the allow negative function.  Evidence that Mr. Singh had a "surprisingly hazy" recollection of events in June and July 2022, which included key events concerning the discovery of the fiat@ bug and Alameda's borrows, undermines his current testimony, as does Mr. Singh's current claim that purchasing a multi-million dollar home in October 2022 with FTX funds was "egregious" when he previously viewed it as not "wrong."  *See* 1 McCormick On Evid. § 49 (8th ed.)  ("[T]he matter is non-collateral and extrinsic evidence consequently admissible if the matter itself is relevant to a fact of consequence on the historical merits of the case. When the fact is logically relevant to the merits of the case as well as the witness's credibility, it is worth the additional court time entailed in hearing extrinsic evidence.")

For the reasons stated above, the defense respectfully requests that the Court grant its request for admission of extrinsic evidence of four prior inconsistent statements by Gary Wang and Nishad Singh and authorize proposed subpoenas to the FBI Agents to give testimony.

Respectfully submitted,

*/s/ Mark S. Cohen*
Mark S. Cohen
Christian R. Everdell
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, New York  10022
(212) 957-7600
mcohen@cohengresser.com
ceverdell@cohengresser.com

cc:   All counsel of record (via ECF)