# EXHIBIT A

```
                                                                  1

                      UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
       ------------------------------x
                                              20-CR-440(AMD)
       UNITED STATES OF AMERICA,
                                              United States Courthouse
                                              Brooklyn, New York

                -against-                     August 24, 2023
                                              10:30 a.m.
       RICHARD GARY,

                 Defendant.

       ------------------------------x

                 TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
                    BEFORE THE HONORABLE ANN M. DONNELLY
                         UNITED STATES DISTRICT JUDGE

       APPEARANCES

       For the Government:        BREON S. PEACE, ESQ.
                                  UNITED STATES ATTORNEY
                                  Eastern District of New York
                                  271 Cadman Plaza East
                                  Brooklyn, New York 11201
                                  BY:  ANDREW GRUBIN, ESQ.
                                  Assistant United States Attorney

       For the Defendant:         FEDERAL DEFENDERS OF NEW YORK
                                  One Pierrepont Plaza
                                  Brooklyn, New York 11201
                                  BY:  KANNAN SUNDARAM, ESQ.


       Also Present:              JENNIFER BAUMANN, USPO


       Court Reporter:            AVERY N. ARMSTRONG, RPR, NYRCR
                                  Phone:  718-613-2419
                                  Fax:    718-613-2639
                                  Email:  Aarm.edny@gmail.com


       Proceedings recorded by mechanical stenography.  Transcript
       produced by computer-aided transcription.
```

1              (In open court.)
2              THE COURTROOM DEPUTY:  This is criminal cause for
3     sentencing, docket number 20-CR-440, USA versus Richard Gary.
4              Counsel, state your appearance, Government first.
5              MR. GRUBIN:  Good morning, Your Honor.
6              Andrew Grubin for the Government and...
7              MS. BAUMANN:  Jennifer Baumann on behalf of the
8     probation department.
9              Good morning, Your Honor.
10             THE COURT:  Good morning.
11             MR. SUNDARAM:  Kannan Sundaram, Federal Defenders of
12    New York for Mr. Gary.
13             THE COURT:  Good morning.  Good morning, Mr. Gary.
14             THE DEFENDANT:  Good morning.
15             THE COURT:  All right.  Just a reminder to both
16    sides, make sure your microphones are on.  Don't talk too
17    fast.
18             Okay.  So this is a sentencing proceeding.  Mr. Gary
19    pled guilty before Judge Mauskopf back in October of 2020, to
20    the only count of an indictment that charges him with
21    receiving approximately 481 counterfeited United States postal
22    money orders with a total purported value of $480,038 with the
23    intent that they will be used as true and genuine in violation
24    of 18 U.S.C. Section 473.
25             I'm going to go over the materials that I have

1    reviewed in preparation for the sentencing.  I've obviously

2    read the presentence investigation report, as well as the

3    recommendation from probation as to sentence.

4            I'm assuming you have that, Mr. Sundaram; is that

5    right?

6            MR. SUNDARAM:  Yes.

7            THE COURT:  The Government has it, too?

8            MR. GRUBIN:  Yes, Your Honor.

9            THE COURT:  Okay.  Oh, you know what, I just want to

10   ask a technical question.  I just want to see the parties at

11   the side.  No need for the court reporter.  Just for a second.

12           (Whereupon, an off-the-record discussion was held at

13   this time.)

14           THE COURT:  All right. And I've received the

15   objections from the Government and from Mr. Sundaram, to

16   aspects of the presentence investigation report.  There was

17   also an addendum addressing the Government's objections from

18   probation.

19           I did review the transcript of the plea before Judge

20   Mauskopf, and then I also reviewed the recommendations or the

21   positions of each party on what the sentence should be.  And

22   Mr. Sundaram's submission included a transcript of a

23   sentencing proceeding before Judge Amon, which I also read.

24           I also neglected to ask Mr. Sundaram, does Mr. Gary

25   have family in the courtroom?

1   MR. SUNDARAM: Yes. In the -- seated on the bench
2   is his son, also named Richard, and next to him is Charles
3   Marcus who is a long-time friend of Mr. Gary's and also one of
4   the sureties on the bond.
5   THE COURT: All right. Good morning to you.
6   MR. MARCUS: Good morning, Judge.
7   THE COURT: All right. I've kind of gone back and
8   forth between what I have.
9   Did the parties agree that I have all the relevant
10  material?
11  MR. GRUBIN: Yes, Your Honor.
12  MR. SUNDARAM: Yes.
13  THE COURT: Mr. Sundaram, I know you and Mr. Gary
14  have reviewed the presentence report and discussed it; is that
15  correct?
16  MR. SUNDARAM: Yes.
17  THE COURT: And is either side seeking an
18  evidentiary hearing on any issue? From the Government?
19  You're not seeking an evidentiary hearing?
20  MR. GRUBIN: No, Your Honor.
21  MR. SUNDARAM: No.
22  THE COURT: All right. So what I'm going to do is
23  go over the calculation of the advisory guideline range.
24  There's a fairly, I think, interesting and somewhat
25  complicated issue about the loss. I think this is largely an

1  academic discussion, but I am required to calculate the
2  guideline range, so I'll go through that.  And if the parties
3  want to be heard on it further, I'll hear them.
4         But for this crime, there is a base offense level of
5  seven, according to probation.  Probation has added an
6  18-point adjustment, because the offense involved counterfeit
7  money orders with a total value of $4,800,380 (sic) which
8  represents intended loss.  Probation also added two points
9  because a substantial part of the scheme was committed from
10 outside of the United States.  There are additional two points
11 added because the offense involved possession and trafficking
12 of an authentication feature which is a hologram watermark.
13 Probation subtracted two points because Mr. Gary was a minor
14 participant in the offense.  And so that leaves an adjusted
15 offense level of 27.
16        So I don't know how much time you all want to spend
17 on this, but there is -- starting with this question of what
18 the appropriate base level should be.  Probation calculated
19 the base offense level at seven, under Section 2B1.1 of the
20 guidelines, and then the Government takes the position that
21 the loss -- the Section 2B5.1 should apply.
22        2B5.1 applies to counterfeit bearer obligations of
23 the United States, while 2B1.1 applies to larceny,
24 embezzlement, and other forms of theft, offenses involving
25 stolen property, property damage or destruction, fraud and

1  deceit, forgery, and offenses involving altered or counterfeit
2  instruments other than counterfeit bearer obligations of the
3  United States.
4          I think probation has the better argument here
5  because of the nature of what postal money orders are.
6  They're like checks, and they're usually made out to a
7  specific payee, and so I think that is a better fit.  So I
8  adopt probation's view of what the starting offense level
9  should be.
10         The next question is this question of loss, and the
11 Government and probation part company on how much an
12 adjustment there should be.  The Government -- probation takes
13 the position that the intended loss here should be calculated,
14 and that should be calculated based on not only what was
15 recovered when Mr. Gary was arrested, but with the amount, in
16 money orders, over the years, that he was involved in this
17 scheme.  It's complicated also by the fact that nobody seems
18 to dispute that Mr. Gary says he didn't know that the money
19 orders were counterfeit until 2018.  And the Government takes
20 a position that the calculation is just what he had, which was
21 $408,000.
22         Layered on top of all this is the Supreme Court's
23 decision in Kisor, K-I-S-O-R, against Wilkie, W-I-L-K-I-E
24 which is a 2019 case where the Supreme Court held that the
25 Courts have to limit analysis to the text of the guidelines,

1    rather than the comments, and they can look only to the
2    comments when the text of the guidelines is ambiguous.  And
3    Judge Amon had the opportunity to consider this recently.  And
4    this is all on the subject of whether intended loss is
5    something that courts should consider.  Intended loss is
6    mentioned in the comments.  Judge Amon said that the idea that
7    loss means intended loss rather than actual loss is not the
8    kind of ambiguity that the Supreme Court in Kisor was talking
9    about.
10           I think Judge Amon's reasoning is correct for a lot
11   of the reasons, the practical reasons that she cited in that
12   opinion.  And then the other issue here is that the --
13   nobody's identified any actual loss.  And so, as I said, this
14   is largely an academic discussion, in my view, because I don't
15   think this is a guidelines sentencing case.  I think it's more
16   of a statutory 3553(a) analysis.  But for whatever it's worth,
17   I think under Kisor, this idea of intended loss, at least for
18   purposes of the guidelines, it adds something that the
19   guidelines themselves don't say.  Obviously, a court can
20   consider what a defendant's intended loss was in considering
21   the statutory factors.  But I don't think, for purposes of the
22   guidelines themselves, that that's what we should do.
23           So, in my view, the -- well, I should just ask.  I
24   think the answer is no.  I don't think the Government can
25   prove actual loss, can you?

1           MR. GRUBIN:  No, Your Honor.
2           THE COURT:  Okay.  So I don't think I've missed
3  anything here.  But you can all -- Mr. Sundaram, do you have
4  anything to add to this?
5           MR. SUNDARAM:  No, I don't.
6           THE COURT:  Don't want to snatch defeat from the
7  jaws of victory?
8           MR. SUNDARAM:  Exactly.  Yes, that's the phrase I
9  was looking for.
10          THE COURT:  So I think the appropriate thing to do
11 is start with a base level of seven, add nothing for loss,
12 decrease -- I agree that with probation also that the
13 defendant is eligible for that 2-point deduction for a minor
14 role in the offense given the factual circumstances of this
15 case, and then four points are added which the parties agree
16 on too because the offense was committed outside of the U.S.
17 and two, because of that authentication feature.  And then
18 take off two points for acceptance of responsibility which
19 leaves a total offense level of seven, and a guideline range
20 of zero to six months.  I think the math is correct on that.
21 And I say that because my law clerk did it.  So if you had
22 left it to me, I would not have gotten it right.
23          MS. BAUMANN:  Just to add, I'm following along with
24 Your Honor.  That's the calculation I came up with, as well.
25          THE COURT:  Okay.  Good.  All right.  Great.

1               So with those adjustments, I otherwise accept the
2    probation report.  And I should also add which I didn't
3    before, under probation's calculation, the guideline range,
4    because Mr. Gary has a Criminal History Category of I, the
5    guideline range is, under probation's calculation is 51 to
6    63 months.  So, with those modifications, I accept the
7    probation report.
8               Anybody -- I know -- I think this is over at least
9    somebody's objection.  Is there anything else that you want to
10   say about that?
11              MR. GRUBIN:  No, Your Honor.  I'll just say for the
12   record, the only thing -- the Government would disagree on the
13   application of Kisor, but I don't think there's a need to
14   speak on that.
15              THE COURT:  All right.  Anything else you want to
16   say, Mr. Sundaram, on that subject?
17              MR. SUNDARAM:  No.  I'm going to also quit while I'm
18   ahead.
19              THE COURT:  All right.  So I have -- as I said
20   before, I have reviewed the sentencing submissions, and I'll
21   hear from the parties in the following order:  First, from
22   Mr. Sundaram, if there's anything else that you wish to say,
23   then from the Government, and then Mr. Gary, if you have
24   anything you want to say, I'll hear from you.
25              MR. SUNDARAM:  So with respect to the appropriate

1   sentence, I guess in this case, other than the unaccustomed
2   position of agreeing with the guidelines as a starting point.
3   But, either way, I think this case is -- even just putting the
4   guidelines aside, is a case where I don't think --
5   respectfully disagree with the Government that a custodial
6   sentence is necessary.
7           I mean, the Court has already discussed minor role.
8   And I think I agree with probation that the minor role factor
9   is also important in terms of the 3553 as a mitigating factor.
10  There's clearly no need to incarcerate Mr. Gary to protect the
11  public.  He's been on supervision for about four years now,
12  without incident, except for some occasional drug treatment
13  issues which he's gotten under control to his credit.  And he
14  had no prior issues with the criminal justice system for, you
15  know, 50 years.  He's now about to turn 54.  So, you know, I
16  think it boils down to whether incarceration is necessary for
17  punishment.
18          And, again, I think for somebody of his age to have
19  a felony record and to have been under supervision for this
20  long and possibly to be under additional supervision if the
21  Court imposes it, I think that's an adequate punishment and
22  should not be ignored.
23          In terms of rehabilitation and the need for, you
24  know, correctional assistance, medical assistance, for reasons
25  that have already been discussed, that it would be counter to

1   that important goal.  And that purpose, I think, is often not
2   discussed enough.  But it's just as important as punishment.
3   And, in this case, I think it would be overly punitive to
4   incarcerate Mr. Gary, given his medical condition.
5           In addition to the ones that have been really
6   highlighted for the Court in a memorandum by probation, his
7   spinal stenosis is very significant, as well.  He has a very
8   difficult time walking.  And even in the BOP facilities that
9   supposedly provide medical care and have hospitals with them,
10  my office's experience, especially in this past year, is that
11  they're not adequately tending to people's medical needs.  So
12  for that, I would just highlight that, as well, in addition to
13  what I've already submitted in writing and ask the Court to
14  impose a sentence that does not have custody.
15          THE COURT:  Okay.  Is there anything you want to add
16  to your submission?
17          MR. GRUBIN:  Unless Your Honor has questions, no.
18          THE COURT:  No, I don't, but thank you.
19          All right.  Mr. Gary, is there anything you want to
20  say?
21          THE DEFENDANT:  I've been thinking over the years.
22  And, yeah, I'm very remorseful of my part in this situation.
23  And I've been working hard over the last almost four years to
24  get myself back on track --
25          THE COURT:  Mr. Gary, I'm so sorry to interrupt you.

1   Do you mind turning on your microphone?
2               THE DEFENDANT:  Oh, I thought it was on already.
3               THE COURT:  I heard you, but I just want to make
4   sure the court reporter can get everything.
5               THE DEFENDANT:  Yes.  I'm very sorry in my role in
6   this situation.  And I've been working very hard over the last
7   four years to get myself back into being a productive member
8   of this society.  And, so far, I feel good about the direction
9   I've been going into in the last four years.
10              THE COURT:  What do you feel has changed?
11              Are you doing something new that you weren't doing
12  before?
13              THE DEFENDANT:  Part-time work, monthly work for two
14  different companies and going to the CSEDNY for treatment.
15  That's been really, really good for me.
16              THE COURT:  Are you still involved in treatment?
17              THE DEFENDANT:  Yes.
18              THE COURT:  And how long have you been in treatment?
19              THE DEFENDANT:  Almost two years.
20              THE COURT:  And what is it that you find helpful
21  about the -- I mean, obviously, the treatment aspect.  But
22  what else?  What do you find helpful?
23              I'm always interested to hear what people find
24  helpful about the programs.
25              THE DEFENDANT:  The camaraderie with the groups, you

1  know, how we can share informations and talk about our
2  problems which is usually something I can't do outside of
3  court, because, you know, everybody is living their lives.  So
4  it's usually hard.  So going there once a week has been a big
5  help for me.
6              THE COURT:  I'm sure it's helpful to the other
7  participants in the program.
8              THE DEFENDANT:  Yes.
9              THE COURT:  I interrupted you.
10             Anything else that you wanted to say?
11             THE DEFENDANT:  No, no.  Thank you.
12             THE COURT:  All right.  Well, as Courts do in every
13 case in imposing sentence, I am required, and I did, calculate
14 the appropriate advisory guidelines range.  But, as I said
15 before, I think the guidelines are a place to begin.  But, in
16 my view, this is not a guidelines case.  And so, obviously, in
17 that situation, and in every situation, I also considered the
18 statutory factors in 18 U.S.C. Section 3553(a), and the point
19 of that is to make sure the sentence imposed is sufficient,
20 but not greater than necessary to comply with the purposes of
21 sentencing.
22             Those purposes include the need that the sentence
23 reflect the seriousness of the crime, that it promote respect
24 for the law, that it be fair and just, that it act as a
25 deterrent to Mr. Gary, but to anybody else who would think

1  about doing the same thing, that the public be protected from
2  future crimes by the defendant, and that the defendant receive
3  any rehabilitation that he might need.
4           And I've also considered the need to avoid
5  unwarranted sentencing disparities.  I also have considered
6  the details of the offense, as well as Mr. Gary's
7  characteristics and his history.  And because, you know, this
8  case was reassigned to me, I took some special care to make
9  sure I was acquainted with not just the case but with
10 Mr. Gary's background and characteristic.
11          I don't think there's any question that this is a
12 serious case, and it's a serious offense, and it's spread over
13 a considerable period of time.  And while the Government
14 couldn't identify a particular loss, certainly the potential
15 for loss and the intended loss, at least by whoever was
16 running this, was certainly considerable.
17          On the positive side, though, Mr. Gary took
18 responsibility immediately for his role in this.  He was
19 cooperative with the Government.  I think 54 is young.  But it
20 is true that to start out at 54 with -- it's clearly an
21 aberration in your life because you've never had any
22 involvement with the criminal justice system.
23          I also, you know, in terms of rehabilitation, taking
24 control of your problem with drugs is all part of that.  And
25 so I take that into account, too.  I also consider that

1  Mr. Gary is struggling with some serious health concerns, and
2  I take that into account, as well.
3          So applying those statutory factors, I don't think
4  that an incarceratory sentence would serve the purposes of
5  sentencing, and so therefore, I impose a sentence of
6  time-served, with two years of supervised release.  The
7  conditions of the release are a search condition, and that is
8  layed out in probation's recommendation.  I can read it.  I'm
9  required to put it on the record, but Mr. Sundaram, have you
10 and Mr. Gary discussed it?
11          MR. SUNDARAM:  I did discuss the recommendation with
12 him.  I don't remember if I specifically went over the search
13 condition.  But he's reviewed all the documents, including the
14 presentence report and the recommendation.
15          THE COURT:  All right.  Do you want me -- it is
16 layed out in there.
17          Do you want to consult with him and see if you want
18 me to read it into the record?
19          MR. SUNDARAM:  Sure.
20          (Pause in the proceedings.)
21          THE COURT:  I probably spent more time asking the
22 question than if I had just read it.  You know what I'm going
23 to do, let me just read it.  It is -- I'm, in part,
24 summarizing.
25          This condition, Mr. Gary, requires that you submit,

1   not just yourself, but your property, your house, residence,
2   vehicle, any kind of electronic communications or data
3   storage, computers, or office to a search by probation.  If
4   you fail to submit to a search under this condition, this
5   could be grounds for a revocation of release.
6           You have to warn anybody else who's on the premises
7   that they might be subject to searches pursuant to this
8   condition.  An officer may conduct a search pursuant to this
9   condition only when there's reasonable suspicion that Mr. Gary
10  has violated a condition of supervised release and that the
11  places to be searched contain evidence of the violation.  A
12  search has to be done in a reasonable way and at a reasonable
13  time.
14          There's also a $100 special assessment.
15          And there are no counts to dismiss, are there?
16          MR. GRUBIN:  No, Your Honor.
17          THE COURT:  All right.  So I think what that leaves
18  is for me to advise Mr. Gary of his right to appeal.  You did
19  agree, I think, as part of that plea agreement, not to appeal
20  your sentence, as long as I impose a term of imprisonment
21  57 months or shorter.  I've clearly done that.  But you can
22  still appeal if you believe that your guilty plea was unlawful
23  or involuntary or if there was some fundamental defect in the
24  proceedings that you didn't waive when you pled guilty.
25          Any notice of appeal has to be filed within 14 days

1    of the filing of the entry of judgment or within 14 days of
2    the filing of a notice of appeal by the Government.  If you
3    ask, the Clerk will prepare and file a notice of appeal for
4    you.  If you can't afford to pay for an appeal or for an
5    appellate lawyer, you have the right to apply for leave to
6    appeal in forma pauperis.  That means that you can apply to
7    have the Court waive the filing fee.  You can also apply for
8    court-appointed counsel.
9              I did sign a preliminary order of forfeiture, and so
10   I think I just have to pronounce that on the record.
11             Anything else that I forgot to do?
12             MR. GRUBIN:  Just that.  No, Your Honor.
13             THE COURT:  All right.  Anything else from
14   probation?
15             MS. BAUMANN:  No, Your Honor.
16             THE COURT:  Anything from the defense?
17             MR. SUNDARAM:  No, thank you.
18             THE COURT:  All right.  Mr. Gary, I wish you
19   continued success in your recovery.
20             THE DEFENDANT:  Thank you.
21             THE COURT:  And good luck to you.
22             THE DEFENDANT:  Thank you.
23             (Whereupon, the matter was concluded.)
24                       *     *     *     *     *
25

*AVERY N. ARMSTRONG, RPR*
I certify that the foregoing is a correct transcript from the
record of proceedings in the above-entitled matter.
/s/ Avery N. Armstrong         September 2, 2023