# EXHIBIT C

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

February 14, 2024

<u>Via E-mail</u>

Linda Richenderfer, Esq.,
   Office of the United States Trustee,
     J. Caleb Boggs Federal Building,
       844 King St., Ste. 2207, Lockbox 35,
        Wilmington, DE 19801.

      Re:     *In re FTX Trading Ltd., et al.*, No. 22-11068 (JTD)

Dear Ms. Richenderfer:

        I write as counsel to FTX Trading Ltd. ("<u>FTX Trading</u>") and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 proceedings (the "<u>Chapter 11 Cases</u>"), in response to the letter, dated February 6, 2024 (the "<u>Letter</u>"), from certain holders of FTX.com Preferred Equity[1] requesting that the U.S. Trustee form an official committee to represent FTX.com Preferred Equity Holders (an "<u>Equity Committee</u>") pursuant to sections 1102(a)(1) and (2) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>").

        The Debtors have considered the request to form an official Equity Committee carefully in light of the applicable legal standard, the balance sheet of the Debtors, and the current circumstances of the Chapter 11 Cases. Based on that review, the Debtors urge the U.S. Trustee not to appoint an Equity Committee at this time.

        The Requesting Parties' core argument in favor of appointment of an Equity Committee is that "the prospect for meaningful recovery by FTX.com Preferred Equity Holders has improved." (Letter at 2.) This is false. But even if it were true, a claim of improved chances at a residual distribution does not provide the basis for appointment of an Equity Committee. To obtain the appointment of an Equity Committee, the Requesting Parties must establish that (i) "there is a *substantial likelihood* that [equity] will receive a

---

[1]    Those holders of FTX.com Preferred Equity are referred to as the "Requesting Parties" and are identified as various funds managed by the three entities identified in Annex A to the Letter. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Letter.

SDNY_NATIVE_00010060

Linda Richenderfer, Esq.                                                                                    -2-

*meaningful distribution* . . . under a strict application of the absolute priority rule;" and (ii) that equity holders "are unable to represent their interests in the bankruptcy case without an official committee." *Exide Techs.* v. *State of Wis. Invest. Bd.*, 2002 WL 32332000, at *1 (D. Del. Dec. 23, 2002) (emphasis added).  The Requesting Parties must establish these threshold elements before any other factors may be considered, particularly because the appointment of an Equity Committee would be futile if Equity Holders have little hope of recovery or are already represented. *Id.*  The Requesting Parties' burden of proof is a heavy one; the "appointment of an additional committee is considered 'extraordinary relief' and should be 'the rare exception.'"  *In re Spansion, Inc.*, 421 B.R. 151, 156 (Bankr. D. Del. 2009) (internal citations omitted).

Here, the request to appoint an Equity Committee should be denied because the Requesting Parties have not satisfied their burden with respect to either requirement. As explained below, the Debtors are deeply insolvent and expect to remain so for the duration of the Chapter 11 Cases.  There is no reasonable possibility that the Preferred Equity would be entitled to any recovery, never mind a "substantial likelihood" of a "meaningful" one.    In addition, FTX.com Preferred Equity Holders are adequately represented by both counsel to the Requesting Parties and the Debtors themselves. Accordingly, this is not "the rare exception" contemplated by *In re Spansion* and there is no cause for the "extraordinary relief" of an Equity Committee at this time.

### I.      Any Meaningful Recovery for Equity Holders is Unlikely

The Debtors are deeply insolvent and expect to remain so.  As a result, it is impossible for the Requesting Parties to show that they are "substantial[ly] likel[y]" to receive a "meaningful distribution" under a strict application of the absolute priority rule, *id.* at *1, and their request for an Equity Committee must be denied.  "[T]he test for insolvency turns on a comparison between the debtor's debts and the 'fair valuation' of its property." *See In re SunEdison, Inc.*, 556 B.R. 94, 103-04 (Bankr. S.D.N.Y. 2016).  To conclude that the Debtors are "hopelessly insolvent," the U.S. Trustee "need not conduct an exhaustive valuation" of the Debtors; it need only determine whether the Debtors "*appear*[] *to be* hopelessly insolvent." *See In re SunEdison, Inc.*, 556 B.R. at 103–04 (emphasis in original).  Because these Debtors are "hopelessly insolvent," appointing an Equity Committee is "unjustified"—its members have no economic interest in the case. *See Exide Techs.*, 2002 WL 32332000, at *1.

Contrary to the Requesting Parties' assertions, the Debtors cannot pay and have never anticipated paying *all* creditors in full, as would be required before holders of FTX.com Preferred Equity receive a distribution.  The Debtors have stated that, if a number of material assumptions are realized, the Debtors currently forecast that they will be able to repay the petition time losses of allowed non-insider customer claims and third-party general unsecured claims.  The Debtors have stated this is an objective, not a guarantee. And to accomplish that objective, the Debtors have identified several hurdles.  Foremost

SDNY_NATIVE_00010061

Linda Richenderfer, Esq.                                                                    -3-

among these hurdles is that government entities with approximately $17 billion of claims against the Debtors must voluntarily subordinate those claims in a plan of reorganization to customers and general unsecured creditors, on the theory that customers and creditors are victims of fraud and should come first as a matter of inter-creditor priorities.  Of course, governmental subordination is *voluntary*; the government entities are not required by the Bankruptcy Code to subordinate their valid creditor claims.  If they do not, then those claims would rank *pari passu* with customer and general unsecured creditor claims.  Either way—subordinated or not—the government claims are still claims that are senior to FTX.com Preferred Equity and, therefore, no distributions will be available to holders of equity interests in accordance with the absolute priority rule.  Figure 1 depicts the Debtors' current projected recovery analysis, based on assets and estimated claims as of December 31, 2023 and assuming a Plan Effective Date of July 31, 2024.



*Figure 1*

As Figure 1 makes clear, there is no reasonable basis to conclude that Preferred Equity holders will receive a meaningful recovery in these Chapter 11 Cases. The Debtors project that they will have, at most, $13.7 billion in projected assets to pay $31.4 billion in projected claims—even if the Debtors succeed in reducing its claims pool as projected.

Put another way, the Debtors must satisfy claims equal to approximately 215% of the high end of their range of projected available assets ($29.4 billion) before *any* payments to Preferred Equity holders could be made in accordance with the absolute

SDNY_NATIVE_00010062

Linda Richenderfer, Esq.                                                                                    -4-

priority rule—even if the Debtors are successful over time in reducing customer and general unsecured claims as currently projected.  The numbers presented in Figure 1 are not conjecture.  Rather, they represent the best understanding of Debtors' and their professionals after more than a year continuous analysis and case experience.

The governmental claims may be contested, at least in part, but many are viable claims.  For example, the CFTC has filed a $8.7 billion claim against FTX Trading and its affiliated Debtors and recently settled analogous claims against Binance Holdings Limited and affiliates in arm's-length negotiations for almost $3 billion.

On the asset side of the Debtors' balance sheet, there is limited potential for "upside" at this point in these Chapter 11 Cases.  The Debtors are in the process of liquidating all their non-cash holdings and will continue to do so.  The Debtors anticipate that approximately $8.3 billion of their estate already will be in cash on the plan effective date.  The remaining assets—including venture investments, litigation claims, certain restricted or other special Digital Assets, and potentially the proceeds of asset seizures by the U.S. Department of Justice in connection with criminal proceedings—constitute only about one-third of the Debtors' estate by value, and will be converted to cash as promptly after plan effectiveness as reasonably possible.  In short, the Debtors have visibility over their financial circumstances at this point in the Chapter 11 Cases and there is simply no scenario where the Debtors anticipate having enough assets to provide Preferred Equity or any other shareholders "a meaningful distribution under the plan."  (Letter at 5.)

The Requesting Parties further speculate that "[a]bsent substantive consolidation," the Equity Holders might be entitled to some "meaningful" equity value specific to FTX Trading.[2]  This is incorrect as well.  FTX Trading was the owner and operator of the FTX.com exchange and is directly liable for the substantial majority of creditor claims, including all FTX.com customer claims, substantial general unsecured claims and the primary governmental claims (including being a named defendant in the CFTC's $8.7 billion claim).  Yet FTX Trading has only a portion of the Debtors' consolidated assets, and its balance sheet consists chiefly of intercompany claims against other Debtors that, absent substantive consolidation, would be subject to significant unclean hands and other defenses.  In other words, FTX Trading is not suddenly rendered solvent if the Debtors could and did resolve it on a stand-alone basis.  Even standing alone, FTX Trading's liabilities render it at least as hopelessly insolvent as the consolidated Debtors, if not more.  Of course, any Preferred Equity Holder (or group of holders) that disagrees will have the right to contest substantive consolidation at the plan confirmation hearing.

---

[2]     The Requesting Parties erroneously refer to FTX Trading Ltd. as "FTX.com."

Linda Richenderfer, Esq.                                                                              -5-

Ultimately, it is highly unlikely that the Equity Holders will be entitled to any distribution under a plan in any scenario. The U.S. Trustee must therefore decline to appoint an Equity Committee at this time.

## II.    The Requesting Parties Are Adequately Represented

Even assuming *arguendo* that the Equity Holders could be entitled to a meaningful distribution—they cannot—no Equity Committee is necessary because the Preferred Equity Holders are adequately represented by both the Requesting Parties and the Debtors.

The Requesting Parties "consist of multiple entities" who claim to hold, in the aggregate, approximately 23.9% of FTX.com Preferred Equity. These equity holders are an organized ad hoc group including well-capitalized and sophisticated investment firms, and are represented by Debevoise & Plimpton LLP, a large New York law firm. In fact, Mr. Levinson who submitted the Letter, signed a non-disclosure agreement with the Debtors and has been receiving periodic financial information on behalf of an ad hoc group of other Preferred Equity Holders for over a year. In view of their organization, sophistication, and significant equity holdings, there is no reason to believe the Requesting Parties cannot themselves prosecute the interests of Preferred Equity Holders without an official Equity Committee at the Debtors' expense.

Courts routinely find there is adequate representation where, as here, there is an ad hoc group of shareholders that is "well organized, well represented by counsel, and adequate to the task of representing its interests without 'official' status." *In re Spansion*, 421 B.R. at 163. Because all holders of FTX.com Preferred Equity are identically situated in terms of payment priority, any benefit the Requesting Parties obtain in advancing their own interests necessarily flows to all other Equity Holders.[3] Accordingly, there is no need for an Equity Committee to duplicate work the Requesting Parties will capably perform themselves.

In addition, the Debtors' Board of Directors and management team have a fiduciary duty to maximize the value of Debtors' enterprise for the benefit of all stakeholders and are cognizant of Preferred Equity Holders' interests. *See Commodity Futures Trading Comm'n* v. *Weintraub*, 471 U.S. 343, 355 (1985) (noting that once a company becomes insolvent, directors continue to owe fiduciary duties to equity holders and that, for debtors in possession, officers are expected to carry out the fiduciary

---

[3]    Insofar as the Requesting Shareholders are concerned bearing the upfront costs of work for the benefit of Preferred Equity Holders, they are free to recruit additional equity holders to spread those costs and later seek recoupment under section 503(b)(3)(D) of the Bankruptcy Code. *See In re N.W. Corp.*, 2004 WL 1077913, at *2–3 (Bankr. D. Del. May 13, 2004).

SDNY_NATIVE_00010064

Linda Richenderfer, Esq.                                                                          -6-

responsibilities of a trustee); *In re Eastman Kodak Co.*, 2012 WL 2501071, at *2 (Bankr. S.D.N.Y. June 28, 2012) ("[T]he existence of a functioning board of directors supports the inference that equity's interests will be adequately represented notwithstanding the absence of an official equity committee."); *Spansion*, 421 B.R. at 163 (holding that an ad hoc committee of equity holders failed to show that they were not adequately represented absent appointment of an official equity committee, and observing that "[i]t is expected that management would normally represent, among other interests, the interests of equity security holders") (citing *Edison*, 1996 WL 534853, at *4).

          The Requesting Parties do not dispute that the Debtors have discharged their duty to maximize the value of the estate and will continue to do so for the duration of these Chapter 11 Cases.  The Debtors have been led by John J. Ray III as Chief Executive Officer since the petition date, who replaced Sam Bankman-Fried and his cadre of criminal insiders with disinterested professionals.  The Debtors, their fully independent joint Board of Directors and their professionals have worked tirelessly for over a year to bring order to chaos, and the results to date have been extraordinarily positive for stakeholders.

          To be sure, "the duty to maximize estate value does not" automatically "equate to adequate representation of equity's interests."  *See Spansion*, 421 B.R. at 163 (but denying motion for appointment of equity committee).  But here, the record of the Chapter 11 Cases is replete with evidence that the Debtors have been and continue to work to maximize the value of the Debtors' estates for the benefit of all stakeholders—which include Preferred Equity Holders.  That Preferred Equity Holders will not be entitled to distributions under the Debtors' plan is a function of the dire situation facing these Debtors when the Chapter 11 Cases were commenced, not inadequate representation.

### III.     No Other Factor Warrants Appointment of an Equity Committee

          Given that the Requesting Parties cannot carry their burden on either of the two key statutory elements, it is unnecessary for the U.S. Trustee to consider other factors, such as cost.  In any event, those factors weigh against the appointment of an Equity Committee.

          If the threshold requirements were met, then "courts employ a balancing test to weigh the cost of an equity committee versus the 'concern for adequate representation.'"  *In re Williams Commc'n Group, Inc.*, 281 B.R. 216, 220 (Bankr. S.D.N.Y. 2002) (denying motion to appoint equity committee).  The Requesting Parties cite cases correctly noting that "[a]dded cost *alone* does not justify the denial of appointment of an additional committee *where it is warranted*."  *In re Enron Corp.*, 279 B.R. 671, 694 (Bankr. S.D.N.Y. 2002) (emphasis added).  But the Requesting Parties have not shown that an Equity Committee is warranted.  The necessity of incurring added costs must be balanced against "the facts and circumstances of th[e] case," including the fact that the Debtors remain insolvent and the Debtors are on a path to confirmation of a plan of

SDNY_NATIVE_00010065

Linda Richenderfer, Esq.                                                                               -7-

reorganization to return value to victims in 2024.  The request to appoint an Equity Committee at this late stage is detrimental to all stakeholders.

        Appointment of an Equity Committee now risks delaying the successful resolution of these complex Chapter 11 Cases, and will undoubtedly result in significant administrative expenses that will drain estate resources otherwise available to more senior creditors.

        Furthermore, although these Chapter 11 Cases are indeed large and complex, the spotlight under which these cases are being conducted ensure that every Preferred Equity Holder has notice of these Chapter 11 Cases and had the ability to participate, if desired, without the creation of an official Equity Committee.  *See In re Williams*, 281 B.R. at 223 (noting that "not every case with a large number of shareholders will require an official equity committee"); *In re Eastman Kodak Co.*, 2012 Bankr. LEXIS 2944, 2012 WL 2501071 (Bankr. S.D.N.Y. June 28, 2012); *In re SunEdison*, 556 B.R. at 103 (denying committee appointment in complex case).

*          *          *

        In sum, the Requesting Parties' request is entirely premised on mere speculation regarding the likelihood of recovery on FTX.com Preferred Equity in these Chapter 11 Cases, and unfounded assertions regarding the adequacy of their representation. Section 1102 demands much more.  Accordingly, the Debtors respectfully submit that the request to appoint an Equity Committee be denied.

        The Debtors appreciate the opportunity to respond to the Requesting Parties and welcome any questions, comments, concerns or thoughts the U.S. Trustee may have regarding this issue or the information contained in this letter.  The Debtors respectfully request that this letter and the views expressed herein be maintained as confidential.

        Sincerely,

        Andrew G. Dietderich

cc:    John J. Ray, III (FTX)
       Brian D. Glueckstein (Sullivan & Cromwell LLP)