**VICTIM IMPACT STATEMENT OF INTERVENORS FTX TRADING LTD., WEST REALM SHIRES INC., ALAMEDA RESEARCH LLC, ALAMEDA RESEARCH LTD AND THEIR SUBSIDIARIES AND AFFILIATES**



March 20, 2024

Judge Lewis A. Kaplan
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York  10007-1312

Re:  <u>United States of America v. Samuel Bankman-Fried</u> (S6 22 Cr. 673 (LAK))

Dear Judge Kaplan,

I am the Chief Executive Officer of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, "<u>FTX</u>") in the chapter 11 cases (the "<u>Chapter 11 Cases</u>") now pending before Judge John T. Dorsey of the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").  I write on behalf of FTX and its millions of creditor-victims to correct material misstatements and omissions in the sentencing submission made to this Court by Mr. Bankman-Fried.

As set forth more fully below, Mr. Bankman-Fried contends in his sentencing submission that, based on a mischaracterization of statements made in the Chapter 11 proceedings by representatives of the FTX debtors, the "*harm to customers, lenders, and investors is zero,*" because "[t]he money was there—not lost," and that FTX was solvent at the time that the Chapter 11 petition was filed.[1]  As the lead professional of a very large team who has spent over a year stewarding the estate from a metaphorical dumpster fire to a debtor-in-possession approaching a confirmed plan of reorganization that will return substantial value to creditors, I can assure the Court that each of these statements is categorically, callously, and demonstrably false.

The value we hope to return to creditors would not exist without the tens of thousands of hours that dedicated professionals have spent digging through the rubble of Mr. Bankman-Fried's sprawling criminal enterprise to unearth every possible dollar, token or other asset that was spent on luxury homes, private jets, overpriced speculative ventures, and otherwise lost to the four winds.  And even taking into account the potential for achieving anticipated recovery levels, which is by no means assured, customers still will never be in the same position

---

[1]  Samuel Bankman-Fried's Sentencing Memorandum, *U.S.* v. *Samuel Bankman-Fried*, 1:22-cr-00673-LAK, 18 (S.D.N.Y. Feb. 27, 2024) (ECF No. 407) (emphasis in original).



they would have been had they not crossed paths with Mr. Bankman-Fried and his so-called brand of "altruism."

**Background and Independence of Current Management**

I was appointed as CEO by Mr. Bankman-Fried during the early morning hours of November 11, 2022 (the "Petition Date") by his execution and delivery of the Omnibus Corporate Authority attached to this letter as Exhibit A (the "Authorization").

I have over three decades of experience in complex multi-national restructurings and asset recovery exercises, first as a lawyer, as both external and internal counsel, and then leading the restructuring and asset recovery efforts as the senior business person.  Among the matters I have led include Enron, Nortel Networks US, Overseas Shipholding Group and Residential Capital.

I report to an independent and experienced board of directors comprised of Matthew A. Doheny, Rishi Jain, Matthew R. Rosenberg and Mitchell I. Sonkin, each of whom have decades of experience in complex restructurings and asset recovery exercises involving such companies as MBIA, Residential Capital, Covanta Energy, USG, Yellow Corporation, and Nortel Networks US, as well as the Honorable Joseph J. Farnan, Jr. (Ret.), the former chief judge of the United States District Court for the District of Delaware and former United States Attorney for the District of Delaware (collectively, the "Board").  Prior to the Petition Date, neither I nor any of the Board members had any connection with FTX, Mr. Bankman-Fried, or any of the other leaders of the FTX Group.  Judge Dorsey has repeatedly found that both I and the Board are independent and highly qualified to lead FTX.

**FTX Bankruptcy Recoveries and the Bankman-Fried Sentencing Memorandum**

On February 27, 2024, Mr. Bankman-Fried filed his sentencing memorandum (the "Bankman-Fried Sentencing Memorandum").  A central focus of the Bankman-Fried Sentencing Memorandum (and of many of its exhibits) is on the loss caused by Mr. Bankman-Fried's crimes because, as I understand the criminal sentencing guidelines, the larger the loss, the longer the potential sentence.  As such, Mr. Bankman-Fried takes issue with the loss calculation and baldly asserts:

- "[T]he most reasonable estimate of loss is zero."  (*Id.* at 17)

- "[T]he company was solvent at the time of the bankruptcy petition."  (*Id.* at 18)

- "The money was there—not lost."  (*Id.*)

- "*The harm to customers, lenders, and investors is zero.*"  (emphasis in original) (*Id.*)



- "FTX US and FTX.com were solvent as of the petition date." (*Id.* at 19)

- "[T]he correct loss is zero." (*Id.*)

To support these statements, Mr. Bankman-Fried relies on the transcript of a hearing before the Bankruptcy Court on January 31, 2024, describing it as one at which "debtor's counsel in the consolidated FTX and Alameda bankruptcy proceeding stated in summary that customers and creditors who can prove their losses are expected to get back all their money," and on misinterpretations of materials prepared and publicly released at my direction.[2] These statements are adopted and repeated in materials prepared and submitted by certain of Mr. Bankman-Fried's supporters.[3]

All of these statements are both reckless and false. Mr. Bankman-Fried cites 14 lines of the transcript from the January 31, 2024 Bankruptcy Court hearing and three news reports of the hearing.[4] However, Mr. Bankman-Fried ignores pages and pages of important commentary, qualifications, and caveats from that hearing (transcript attached as Exhibit B). Yet, even assuming that all of the contingencies standing between the creditors and the anticipated recovery are resolved favorably, and we certainly hope they will be, Mr. Bankman-Fried's victims will *never* be returned to the same economic position they would have been in today absent his colossal fraud.

Indeed, even the best conceivable outcome in the Chapter 11 proceeding will not yield a true, full economic recovery by all creditors and non-insider equity investors as if the fraud never happened. As to creditors, the Bankruptcy Code provides that each creditor's claim must be valued as of the Petition Date. In other words, a victim who had bitcoin on the FTX exchange on November 11, 2022 will receive, as the Bankruptcy Court has determined, a distribution based on the value of the claim on that date, which is approximately 400% lower than the value today. Because the value of certain cryptocurrencies has risen sharply since the petition was filed, many of Mr. Bankman-Fried's victims are extremely unhappy with the "petition date value" provided for under the law. Instead, they believe they should receive something closer to today's value for their Petition Date cryptocurrency deposits or the cryptocurrency reflected in their Petition Date account statements. Unfortunately, due to "back door" borrowing (theft) by Alameda at Mr. Bankman-Fried's direction, those account statements were incorrect—the FTX debtors did not possess the crypto that customers assumed was held in their accounts as of the Petition Date.

---

[2] *Id.*

[3] *See, e.g.*, *id.*, Ex. A-6.

[4] *See, e.g.*, *id.* at 17, 21.



As such, a current value approach to customer claims is not an option in this case. Focusing on bitcoin, by way of example, when I took over as CEO, there were only 105 bitcoins left on the FTX.com exchange, against customer entitlements of nearly 100,000 bitcoins. Why were the bitcoins missing? A jury has concluded beyond a reasonable doubt that Mr. Bankman-Fried stole them and converted them into other things. For that reason, they are not available to be returned in-kind to his victims.

Mr. Bankman-Fried also ignores the fact that his companies raised nearly $2 billion from the cash sale of preferred stock to non-insiders and over $100 million from the cash sale of common stock to non-insiders. Even if non-governmental creditors are paid in full at Petition Date value because the IRS, CFTC and other governmental creditors agree to subordinate their claims, any material return to stockholders is highly unlikely.

Mr. Bankman-Fried simply ignores the many achievements of the estate's team of professionals that are the real reason why assets are available to provide some measure of recovery to his victims, including for example:

- The filing of the Chapter 11 petitions (which Mr. Bankman-Fried contends should never have happened) invoked the protection of the automatic stay, and its recognition throughout most of the world helped stop the damage brought about by the disastrous collapse caused by Mr. Bankman-Fried's crimes (Transcript of Hearing Before the Honorable John T. Dorsey at 20, *In re FTX Trading Ltd., et al*, 22-bk-11068 (JTD) (Bankr. D. Del. Jan. 31, 2024) [D.I. 6908] ("January 31 Tr.")).

- Achievement in a contested litigation to have customer claims valued as of the Petition Date, not the date of confirmation of a plan of reorganization (currently estimated to be in the second half of 2024) (*Id.* at 26). This was the subject of the bulk of the hearing on January 31, 2024, when the court ruled in FTX's favor. (*Id.* at 128-131). Absent this relief, recovery rates would have been substantially lower.

- Turnover litigation, and the threat of such litigation, has resulted in the recovery of hundreds of millions of dollars of improper transfers made at the direction of Mr. Bankman-Fried. (*Id.* at 20-21).

- As a result of a policy I implemented at the direction of the Board to cooperate with governmental investigations, there have been no criminal indictments of any FTX corporate entities. (*Id.* at 21). If Mr. Bankman-Fried had remained in control, it is difficult to imagine that the corporate entities would not have been charged criminally.

- Settlements were achieved with the representatives of FTX estate that filed for insolvency protection in Australia and The Bahamas. (*Id.* at 22).



Among the many other important contingencies, caveats, and qualifications that Mr. Bankman-Fried ignores, all of which must be resolved favorably to achieve our anticipated recovery levels, are the following:

- We are working on a coordinated distribution scheme that will funnel over $1 billion in value seized by prosecutors to victims of Mr. Bankman-Fried's crimes. (*Id.* at 21). The success of this effort is critical to achieving our goals.

- Recoveries to customers and creditors depends entirely on the voluntary subordination of over $9 billion in governmental claims for fines and penalties otherwise payable as a result of Mr. Bankman-Fried's crimes. (*Id.* at 21). If such claims are subordinated, they will remain claims and are not expected to recover at all, which completely destroys Mr. Bankman-Fried's assertions of solvency.

- Recoveries to customers and creditors depend entirely on consensual settlements of litigations with the CFTC, SEC and IRS. (*Id.* at 22). These settlements relate to claims well in excess of $10 billion. Those settlements have not yet been achieved and even if achieved in no way mean that Mr. Bankman-Fried's crimes caused zero harm.

- We must achieve victory in future litigation over confirmation of the plan of reorganization, including on the issue of whether customers have a property interest in the cryptocurrencies that appeared in their account records as of the Petition Date (and if so, what that property interest means in a circumstance where the crypto assets generally did not exist at FTX at that time, due to Mr. Bankman-Fried's crimes).

- The statements about payments of claims of customers and creditors in full is always caveated by the word "allowed" (*see id.* at 24). The expectation is that allowed claims will be paid in full if all of the hard work described above pays off (*Id.* at 24). The question remains, though, how one takes a filed claim and turns it into an allowed claim. One must first start at the total dollar amount of claims filed. That number is $23.6 quintillion dollars. (*Id.*). One quintillion is one billion billions. It is the number 1 followed by 18 zeros. The task of addressing filed claims and reducing them to their proper and "allowed" amount is monumental. Mr. Bankman-Fried assumes this is a breeze. He is wrong—very wrong.

   Mr. Bankman-Fried continues to live a life of delusion. The "business" he left on November 11, 2022 was neither solvent nor safe. Vast sums of money were stolen by Mr. Bankman-Fried, and he was rightly convicted by a jury of his peers. That things that he stole, things he converted into other things, whether they were investments in Bahamas real estate, cryptocurrencies or speculative ventures, were successfully recovered through the enormous efforts of a dedicated group of professionals (a group unfairly maligned by Mr. Bankman-Fried



and his supporters) does not mean that things were not stolen.  What it means is that we got some of them back.  And there are plenty of things we did not get back, like the bribes to Chinese officials or the hundreds of millions of dollars he spent to buy access to or time with celebrities or politicians or investments for which he grossly overpaid having done zero diligence.  The harm was vast.  The remorse is nonexistent.  Effective altruism, at least as lived by Samuel Bankman-Fried, was a lie.

FTX was run for its very short existence by Mr. Bankman-Fried with hubris, arrogance, and a complete lack of respect for the basic norms of the law, which is all the more inexcusable given his privileged upbringing.

**Mr. Bankman-Fried's Strategy of Misdirection and Deceit**

On March 15, 2024, the prosecutors who convicted Mr. Bankman-Fried filed their sentencing memorandum.  I will refrain from repeating the many good arguments and points the government made in that submission, which quite accurately portrays what occurred at FTX, and address only two Google documents created by Mr. Bankman-Fried in the weeks following the filing of the Chapter 11 petition.  These documents clearly show that Mr. Bankman-Fried was willing to consider *any* narrative, including wildly conflicting narratives, that could potentially save him from this day of reckoning.  On the one hand, he considered a "blame the lawyers and restructuring professionals" strategy:

- "Focus almost exclusively on the fact that we could give value back to customers and the Chapter 11 team is destroying it" (Bankman-Fried Sentencing Memorandum, Ex. C, at 2.)

- "Radical honesty on Twitter–just explain exactly what happened, in detail a) Include gory details, both about what happened, and about the lawyer fuckups afterwards" (*Id.*)

- "Go strong with a message of 'I have funding ready to make customers whole, if only the Chapter 11 team would care about customers'" (*Id.*)

- "Go with the 'the lawyers were in a shitty situation and I really feel bad about that; and like most people do, they reacted poorly to difficult circumstances'" (*Id.*)

- "Focus almost exclusively on the fact that we could give value back to customers and the Chapter 11 team is destroying it" (*Id.*)

- "Focus on the fact that the Chapter 11 team has no idea how to run FTX, it's colonial, run by a cartel of lawyers" (*Id.*)

- "Enemies:…John Ray" (*Id.* Ex. D, at 2-3)



Yet, in the very same document, he also considered the *exact opposite approach*:

- "Go strong with the message I'm really glad the Chapter 11 team has stepped in, they're great, and even better I have funding that can help make customers more whole while the Chapter 11 team does what is needed to clean things up." (*Id.* Ex. C, at 2.)

We all now know that Mr. Bankman-Fried chose to blame it on the Chapter 11 team. Certain members of academia and other persons, in an effort to support Mr. Bankman-Fried, have repeated these false narratives to elevate Mr. Bankman-Fried's standing before this Court and in the public at the expense of victims and dedicated professionals who have tirelessly worked to rectify the harm caused. Rather than embrace those who have been charged with cleaning up his mess, in the weeks following the petitions, Mr. Bankman-Fried actively worked to hinder the preservation of assets by, for example, transferring assets to The Bahamas as part of his self-professed strategy to win a battle to deprive the Bankruptcy Court of jurisdiction and by requesting reinstatement of his credentials to access the FTX systems. This is in stark contrast to the often repeated theme that if only we would have engaged with Mr. Bankman-Fried, the creditors would have been better off. Only by cutting off Mr. Bankman-Fried was the Chapter 11 team able to stop the bleeding. Of this, I have no doubt.

The restructuring professionals worked tirelessly in the months following the collapse to institute governance, controls and to preserve and protect assets. I can clearly reflect on that time and I am quite confident that but for the work of a very large team of dedicated individuals, billions of dollars would have been lost or stolen and the recoveries to customers would be a fraction of their expected recovery. I make this statement not to curry sympathy or thanks, but to accurately report on the reasons why the FTX debtors may soon be in a position to compensate victims for some of the losses caused by Mr. Bankman-Fried.

There should be no delusion that because assets have increased in value or that the professionals have been able to recover funds and assets taken or stolen from the estate, that there was no need for the Chapter 11 cases. It is because of the Chapter 11 cases that we had assets which could rebound in value, and the court process that allowed the estate to chase wrongdoers that now enables the distribution of monies to customers. And make no mistake; customers, non-governmental creditors, governmental creditors, and non-insider stockholders have suffered and continue to suffer.

Respectfully yours,

John J. Ray III