# Exhibit B

# Statement 109

## Olsen, Wendy (USANYS)

**From:**
**Sent:** Monday, March 25, 2024 3:41 PM
**To:** Olsen, Wendy (USANYS); USANYS-FTXVictims
**Subject:** [EXTERNAL] Victim impact statement - United States v. Samuel Bankman-Fried, a/k/a "SBF," 22 Cr. 673 (LAK)

Dear Ms. Wendy Olsen Clancy,

My name is ▮▮▮▮▮ and I am writing to submit my victim impact statement regarding the case United States v. Samuel Bankman- Fried, a/k/a "SBF," 22 Cr. 673 (LAK).

I am among the international creditors of FTX.com, having invested about 48 SOL on the platform. I selected FTX as a custodial platform because of their duties to perform identity checks and enforcing sanctions, which was a key aspect at the beginning of the Ukraine war. It's quite the irony that after getting pushed into a custodial platform due to sanctions enforcement, said custodial platform has now failed.

Mr. Bankman-Fried and his team took insane levels of risk, trying to paint a crypto dream that just didn't end up being real. On one hand, the FTX platform was incredible, with a really clean customer-facing interface, flawless customer-facing reports down to 8 decimals, a very transparent borrowing/lending platform, a knowledgeable customer service, and nice crypto-related perks through FTT. On the other hand, though, he and his team did misappropriate customer funds, took risky bets with them, did questionable political donations, and he must be held accountable for that.

As I did not personally invest more than I could afford to lose, I don't feel grief for Mr. Bankman-Fried. However, other customers invested significant portions of their life savings, and no form of punishment against Mr. Bankman-Fried will bring back those losses. Still, he does not appear to me as a threat to society, as long as he is kept away from positions with financial exposure. I respectfully ask the court to still allow him a second chance at life in a couple years, so that he can redeem himself.

I do, however, have deep concerns about the current plan for the distribution of customer assets. As is, the bankruptcy law requires liabilities to be dollarized as of the petition date. And, while I do understand that the legal process must follow standards, this comes at a very steep disadvantage for the customers. I would like to point to the "civil rehabilitation" model that is being applied to the MTGOX hack case in Japan. This model provides a legal framework to allow distributing excess assets surpassing the initial dollarized value to customers, enabling a far more equitable distribution of assets than the current plan offers.

Ultimately, we got incredibly lucky that the market conditions would allow every customer to be made whole and even receive partial capital gains on top. In the end, the customers may get away with a blue eye. In that spirit, Mr. Bankman-Fried's sentencing should also balance justice with the potential for rehabilitation.

Thank you for allowing me the opportunity to share my experience and for considering the impact of this case on its victims. Please let me know if there are any further actions I should take, or any additional information needed.

Sincerely,

# Statement 110

## Olsen, Wendy (USANYS)

| | |
|---|---|
| **From:** | |
| **Sent:** | Monday, March 25, 2024 3:43 PM |
| **To:** | Olsen, Wendy (USANYS) |
| **Cc:** | Joseph@moskowitz-law.com; Rejane@moskowitz-law.com |
| **Subject:** | [EXTERNAL] Victim Impact Statements, Carlos Soler |

Sincerely Judge Kaplan,

Hello, I am        a young man from Spain who has never been involved in processes like this, excuse me for not knowing how to proceed in the terms you refer to.

My case with FTX came when I learned about the exchange for the motorcycle racer Valentino Rossi, the Mercedes Formula One team and for the Super Bowl advertising event, since it gave me a lot of confidence and knowing that it was the second exchange in the world, I decided to trust this platform. Upon learning that it offered an 8% APY return and being so well known and represented by previous respectable personalities and companies, I deposited an amount in Bitcoin that I had been acquiring with my savings for a year and a half. My partner also did it, who did the same thing as me, thinking at some point we could start a business together between the two of us, what we most want. Since the FTX bankruptcy happened, this has been a difficult process in my life and that of my partner. The option of losing everything in this way was not understood in my mind. I could not imagine all the corruption that exists around this case from FTX. We are stuck waiting for us to see some light in this process, where today our savings would have multiplied by 4 and the debtors want to pay a part of the asset and at the asking price, that is not fair and makes you feel very badly. I think this process needs time and to really understand how something like this could have been done to so many people and not expect a fair sentence.

I wanted to thank you, since you are the person who has to defend my interests and those of so many citizens who believe in justice, I have always defended that the truth justifies a just cause, because I give you support with this letter to find that truth and justice is done. I ask that at least 80% of what was mine be returned to the current price of the asset, it would be a good reward after this process that is desperate and has taken away the hope and savings of a young couple with ambition.

Thank you so much,
All the best,

March, 25, 2004,

# Statement 111

**Olsen, Wendy (USANYS)**

| | |
|---|---|
| **From:** | |
| **Sent:** | Monday, March 25, 2024 3:55 PM |
| **To:** | Olsen, Wendy (USANYS) |
| **Subject:** | [EXTERNAL] victim impact statement |

Greetings,

I'm ▮▮▮▮▮▮▮▮ victim of FTX, I live in Italy and English is not my native language.
I am writing this victim impact statement to express the profound drama I have experienced and am still trying to deal with.

Having already experienced the Celsius platform being blocked, I funneled all my remaining funds to FTX.com because it seemed like the most legitimate platform.

That November 10th was my birthday, and it was the day I experienced the worst nightmare of my life. The anguish of not being able to go back and make other choices spilled over into my marriage, I couldn't find the courage to face my husband because I felt guilty for the choices I had made.
Over time I understood, thanks to the support of a psychologist, that it wasn't me who was wrong.

Too many deceptions behind a corrupt society from the beginning.

Following with difficulty, due to the language, the actions to recover creditors' assets, other unclear and incomprehensible actions come to light even by those who play the role of creditors' defenders.

The proposal to compensate victims on the basis of 100% of the value at the date of the bankruptcy is not law or fair.

Now to my loss, of the value of the petition of $ 69,415.23, is added the increase in the market for which I exposed myself through a well-considered investment decision to hold bitcoin, and which to date 25 March 2024, the current real value of my stolen goods has increased to more than $170,000.

Compensation at market values should be a priority as the assets were, are and remain the property of the users.

FTX customers need your intervention as John Ray is running FTX as SBF did and stealing our crypto coins and paying us petition date prices.
The petition date valuation is not law as he describes in his victim statement letter. For property which we own John Ray must return the current value by law.

This is shown with the Genesis in kind settlement.

I trust that your action will lead to justice for those like me who have been harmed.

Sincerly,

▮▮▮▮▮▮▮▮

# Statement 112

## Olsen, Wendy (USANYS)

| | |
|---|---|
| **From:** | |
| **Sent:** | Monday, March 25, 2024 4:47 PM |
| **To:** | USANYS-FTXVictims; Olsen, Wendy (USANYS); joseph@moskowitz-law.com; rejane@moskowitz-law.com |
| **Subject:** | [EXTERNAL] Victim impact statement |
| **Attachments:** | FTX victim impact statement.pdf |

Dear all,

Please find attached, as well as in the body of the email below, my victim impact statement. Please keep my name and email address redacted, for privacy reasons.

### FTX victim impact statement

To whom it may concern:

I am an experienced finance professional and a long-time bitcoin holder, which I consider part of my long-term structural asset allocation. In early 2021 I decided to do some shorter-term trading on top of long-term holding. I chose FTX as the primary venue for this activity, for several reasons:

- It had both spot and futures markets with good liquidity
- It had good banking arrangements providing excellent fiat on/off ramps on all major currencies
- It had very low or zero trading fees if you held its exchange token (FTT)
- It had a lending/borrow market for all assets and cash
- It had good features such as cross margining
- and above all it had a very professional image.

The last bit is the most crucial. The exchange founder, Sam Bankman-Fried (SBF), seemed genuine, super smart and successful, with a top tier traditional finance background and education pedigree. He was the ambassador of the crypto world to the traditional finance world, giving legitimacy to the space and making it more trustworthy, particularly as he was the strongest advocate for more regulation. All the big market making firms and funds in the space considered it among the safest, if not the safest.

I was a very happy user of FTX, I liked the interface and its features including cross margining, securities lending and borrowing, the low/no trading cost as maker, being able to use it as a hub for fiat on/off ramp, and crypto cross exchange transfers. I ended up buying and holding some of their FTT token, which offered some advantages as a user of the exchange.

In March 2022, responding to a promotion of getting VIP status after depositing more than $1m in FTX, I deposited a very large part of my long-term bitcoin holdings, which at the time was more than $1m. This goes against the mantra of self-custody ("not your keys, not your coins"), but I considered FTX the safest place out there, especially given SBF's political connections and his aggressive push for more regulation. So, to a certain extent I considered it a diversification in my otherwise self-custody setup. I could get hacked for example and would have no recourse. But FTX was a multi-billion institution, and I was KYC'd, so I would have recourse to all legal avenues in case of any hacking etc.

The subsequent drama with the collapse of Luna and 3AC in the summer of 2022, with SBF/FTX appearing as the very well capitalized superpower bailing out other troubled entities further solidified the perception of

security and trust on FTX, as he was likened to the JP Morgan of the crypto space. When Celsius went under, there were concerns about BlockFi. I had money on BlockFi and withdrew most of it. Then FTX acquired BlockFi and the panic subsided which made me conclude at the time that a) withdrawing money from BlockFi was unnecessary and b) FTX was ultimately the best crypto asset custodian.

On Nov 6th I saw CZ's tweet about getting ready to sell FTT. I expected the value of FTT to drop. I held some FTT for the advantages it offered to using FTX and I expected a price impact for the token, but did not have any concerns about the solvency of the exchange.

The tweets from SBF and CZ the next day seemed to indicate a fight between them was happening, which maybe was short-term damaging for prices, but again, nothing indicating solvency issues. I considered withdrawing everything, but was still reassured by SBF's blatant lies, that all deposits are covered 1 to 1, etc. Even if the business had issues, even if its profitability was in question, it was so strongly capitalized that presented no risk for depositors. My blind spot was not expecting SBF to be lying so brazenly and publicly.

By the time it became clear that SBF was lying and deposits weren't in fact safe, it was obviously too late to withdraw. I felt physically sick as a large part of my long-term savings seemed to have vanished. For several days I couldn't sleep and felt depressed. The psychological impact was enormous. There was a feeling of betrayal from the collapse of trust, a sense of helplessness. I felt ashamed for having trusted SBF, I should know better.

Or should I? I trusted SBF and FTX precisely because of their pro-regulation stance. Precisely because all the mainstream media praised them, celebrities, politicians, academics, major VC funds. This was not some obscure fly-by-night operation, but crypto becoming mainstream. Or so we were led to believe.

The irony of this, adding insult to injury, is that most of the discussions around me about FTX after the bankruptcy were blaming the victims that should know better. In fact, most people conflated the FTX collapse with the collapse of crypto asset values, and the comments I was hearing were along the lines of "well, it was to be expected, if you invest in crypto, you should expect to lose it all anyway". I had the displeasure of listening to unfiltered commentary of this sort, given that I generally keep my entire crypto related investment activity to myself, precisely for this reason.

Fast forward to the present and the fallacy of this conflation couldn't be more apparent, given that the value of the bitcoin I had deposited at FTX has more than quadrupled since the time of FTX's bankruptcy.

As the market recovered in the months following the bankruptcy filing, there was a bittersweet feeling. On the one hand, the initial shock dissipated, as time heals all wounds. The fact that assets were found and the expected recovery increased over time was obviously positive.

But on the other hand, almost in lockstep with the market recovery was the expectation of receiving a reduced amount of my actual bitcoins back, if the debtors are successful in having a plan approved that returns only the dollarized value as of petition date.

As far as I am concerned, if this happens, I have lost the majority of my assets held at FTX. Similarly to any of the other investment assets I hold, be it stocks or property or any other asset. If someone steals something and then delivers a fraction of it, I am not "made whole". And if this becomes the public perception, it will hurt almost the same as the initial victim blaming and attribution to riskiness of investing in crypto. Completely missing the point, diverting the blame from the thieves, calling the theft a victimless crime when it's anything but that, and failing to deliver moral justice.

If the debtors have their way and settle our claims with dollarized values as of petition date, this is what the story will have been: A scammer presents themselves as a legitimate custodian of certain assets. Uses

promotions and public stunts to attract such assets. I deposit such asset. The scammer sells them, depressing their price on a relative basis, and then gambles and buys other assets with some of the proceeds. The gambles don't work, and he files for bankruptcy, further depressing my asset's value, temporarily. Then prices recover, so he can pay back the depressed value. At the end I have lost most of my assets.

What should happen instead, is an acknowledgement of the contract as described in FTX's own Terms of Service, honouring the property rights to our assets, and then seek to return them to the fullest extent possible, before paying other stakeholders. Adversary Proceedings have already been filed by other creditors, and I maintain hope that they will be successful, allowing this sad story to at least have a partially happy end.

Sincerely yours,

[Name Withheld]

# Statement 113

## Olsen, Wendy (USANYS)

**From:**
**Sent:** Monday, March 25, 2024 6:51 PM
**To:** USANYS-FTXVictims; Olsen, Wendy (USANYS)
**Cc:** joseph@moskowitz-law.com; rejane@moskowitz-law.com
**Subject:** [EXTERNAL] FTX Victime Impact Statement of Hemantkumar R Patel
**Attachments:** FTX Victim Statement.docx

Dear Sir and Madam,

Please note and acknowledge my attached statement.

Thank you very much.



To:
USANYS.FTXVictims@usdoj.gov
Wendy.Olsen@usdoj.gov

Copy:
joseph@moskowitz-law.com
rejane@moskowitz-law.com

Monday, 25 March 2024

## Victim Impact Statement of ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### 1.   Introduction:

I'm ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ invested my life
saving on the FTX.com platform. Like my Husband, ▮▮▮▮▮▮▮▮▮▮ I was
attracted by the fact that the platform promised to make donations to charities and
the press gave rave reviews about the company. Before the public revelation of the
FTX fraud, Sam Bankman-Fried was often portrayed in the press in a highly positive
light, particularly as a rising star within the cryptocurrency industry.

Here's a summary of how the media generally depicted him and his business
endeavours: My husband and I discussed the following and were very impressed
with the reports.

   1.   Wunderkind of Crypto: Sam Bankman-Fried was frequently hailed as a
wunderkind or prodigy in the world of cryptocurrency. He was often praised for his
rapid ascension in the finance and crypto industries at a relatively young age.
   2.   Philanthropic and Ethical: Many articles focused on his commitment to
"effective altruism," a philosophy and social movement that uses evidence and
reasoning to determine the most effective ways to benefit others. Bankman-Fried
was reported to have pledged to give away the majority of his wealth over his lifetime
to effective charities, which garnered him considerable admiration.
   3.   Innovative Entrepreneur: The press often highlighted his innovative
approach to cryptocurrency trading and his role in founding FTX, a cryptocurrency

exchange that rapidly grew to be one of the largest and most influential in the space. His ventures were portrayed as cutting-edge and contributing significantly to the crypto industry's development.

4.     Influential Figure: Bankman-Fried was frequently cited as one of the most influential figures in the cryptocurrency world. His opinions and statements on market trends, cryptocurrency regulation, and the future of finance were widely reported and analysed.

5.     Political Donor: His role as a significant political donor in the United States was also a subject of interest. Reports often covered his contributions to political campaigns and his advocacy for cryptocurrency-friendly regulation, painting him as a key player at the intersection of finance, technology, and politics.

6.     Public Persona: Bankman-Fried's public persona was often described as unassuming and relatable, especially noting his casual dress style and approachable demeanour, which stood in contrast to the traditional image of financial moguls.

My husband and I found it easy to relate to this character and completely trusted him to lead an ethical, philanthropic enterprise. This was my biggest mistake of our life.

## 2.     Impact Description:

•     Financial Impact:

I liquidated £125,000 from my pension pot which a very significant amount. i had around 250 SOLANA and other coins.

I had intended to use some of the growth monies to pay as a private patient for my knee surgery, house repairs, travel to Australia to see my friend's widow (after his funeral) and to help our son with the deposit for his house. None of this has been possible.

•     Emotional and Psychological Impact:

When I discovered on TV, of the fraud incurred by Sam Bankman-Fried and his FTX colleagues, I was shocked. My husband did not leave my bed for two days and I had to care for him and I was very concerned about his physical and mental health. I suffered from severe emotional distress, anxiety about my funds, a complete loss of trust, and like my husband, I too became very angry at myself for being so stupid and gullible. Other psychological effects included loss of sleep (and both of us would often be awake till very late going over the things) and loss of interest in family matters as we were both very embarrassed with out decision to invest and hold tokens on FTX. My husband has have to return to work at the ages of 69 years : despite his back and emotional problems.

•     Physical Impact:

My knee problems worsened and my physio and doctors told me that the pain was related to my physical conditio and emotional state which like my husband's was swinging from anger to depression to tears. This physical health issues and related stress-related conditions that have arisen since the FTX collapse and I'm in constant pain with mood swings which affects my relationships with my children and husband

•     Future Concerns

I have lost the trust of my family including children. I invested such a large sum when they had advised me not to. I also lost self-esteem and lost confidence to self-invest or manage my pension and investments. This resulted in losses of over £80,000 as I was not monitoring our portfolios due to being suddenly scared to check the websites. We were both suddenly averse to all things related to investments.

I have deep concerns about my future security and do not trust the investment institutions or the press. I feel I'm a victim, and have constant fears about financial security and have serious trust issues.

3.   **Supporting Documentation**: I'm trying to access my portal and in due course I'm happy to be fully transparent about my claim.

4.   **Conclusion:**

**I do not want cash. I want all my tokens back.**

I have suffered financially as well as due to stress and psychological reasons. Sam Bankman-Fried has betrayed our trust and destroyed our retirement. As my husband has had to go back to work our retirement is curtailed. I would not accept an apology from the thief and he should be imprisoned for the rest of his natural life.

Yours sincerely,

# Statement 114

**Olsen, Wendy (USANYS)**

| | |
|---|---|
| **Sent:** | Monday, March 25, 2024 11:09 PM |
| **To:** | Olsen, Wendy (USANYS) |
| **Cc:** | Joseph@moskowitz-law.com; Rejane@moskowitz-law.com |
| **Subject:** | [EXTERNAL] Victim Impact Statement on FTX Case and Sam Bankman-Fried Sentencing |

*Please redact my name on my email address or anywhere that shows my name for privacy concern, otherwise please ignore the email*

To Whom it may concern,,

I am writing this victim impact statement to express the profound and devastating impact that the collapse of FTX has had on my life and the lives of my loved ones. As someone who has been trading on FTX since July 2021, I worked day and night for 20 hours a day wishing a better life for my family but FTX and Mr Sam robbed me and my entire family, but I have experienced significant financial and emotional turmoil due to the inability to withdraw my funds from the platform. For a long time, I have been the financial backbone for both my own family and my wife's family. The failure of FTX has not only affected my financial stability but has also caused a ripple effect of suffering and hardship for those I care for deeply.

The Withdrawal problem has already happened since December 2021, in which I only granted a small amount of withdrawal being processed even though I already have a large amount of balance in my FTX account. Lots of my withdrawal just claimed to be processing by their customer services but not being done for months, in example with their reason was the network congestion due to new year and chinese new years months later. Due to those failed withdrawals, I have faced numerous challenges:

- I contracted COVID-19 and had to endure self-isolation without adequate welfare support.
- I was unable to pay for my sister's heart surgery and her ongoing medical expenses, leaving her health and future in jeopardy.
- I struggled to cover my brother's college admission fees and tuition, putting his education at risk.
- My wife and I were forced to halt our fertility treatments after 8 years of marriage without a child, dashing our hopes of starting a family.
- Plans to purchase a new car and house were abruptly halted, despite having already paid booking fees and down payments, jeopardizing our future plan and losing money due to those non refundable fees and payments.
- Our mental health has deteriorated, with both my wife and I experiencing severe depression, requiring psychiatric help, and nearly costing us our marriage.

The bankruptcy of FTX, precipitated by the alleged misdeeds of Mr. Sam Bankman-Fried and other convicted defendants, has left us in a state of constant anxiety. In my experiences, the FTX runs poorly by them and they took advantage of my inexperience in the world of cryptocurrency to not giving my withdrawal for their own benefits. The fear of losing our assets and the reality of our poor financial condition have only exacerbated our mental anguish.

In addition to the emotional toll, I have been forced to work tirelessly, both day and night, to provide for my family. This extreme stress and exhaustion have further compromised my health.

Your Honor, the consequences of FTX's collapse are far-reaching and deeply personal. I implore the court to consider the severe impact this has had on my family and me as you deliberate on the appropriate course of justice.

Respectfully,

# Statement 115

## Olsen, Wendy (USANYS)

**From:**
**Sent:** Monday, March 25, 2024 12:09 PM
**To:** Olsen, Wendy (USANYS)
**Cc:** Joseph@moskowitz-law.com; Rejane@moskowitz-law.com; Jose Ignacio Portela
**Subject:** [EXTERNAL] JOSE IGNACIO PORTELA ID account FTX  67413369

Honorable Judge Wendy Olsen,

I am writing to you as a creditor of FTX with regards to the ongoing proceedings. I would like to bring to your attention several important facts that you are likely already aware of:

1. It has come to light that the law firm Sullivan and Cromwell had knowledge of Alameda's backdoor privileges. This information has been confirmed by insiders within FTX.

2. The FTX estate currently holds 41.1 million Solana tokens, which rightfully belong to FTX creditors. These tokens were initially planned to be sold at a price of $60 each. However, considering the current market value of $187 per token, it is clear that creditors would be at a significant disadvantage if they were sold at the lower price.

3. Distinguished professors at Penn University have uncovered evidence of lies and misrepresentations made by Sullivan and Cromwell to the Commodity Futures Trading Commission (CFTC). This raises serious concerns about the integrity of the legal advice provided by the firm.

4. Furthermore, it has come to our attention that the FTX estate intends to compensate us with BTC at a value of $16,000, along with other tokens at a lower price. Given the volatile nature of cryptocurrency markets, it is highly likely that the value of BTC will increase significantly by the time the payment is made. This would result in a substantial loss for creditors who would receive a significantly lower value than what they are entitled to.

In light of these facts, I respectfully request that the court thoroughly examines the actions of Sullivan and Cromwell, as well as the proposed compensation plan by the FTX estate. It is crucial that the interests of FTX creditors are protected and that a fair and just resolution is reached.

Thank you for your attention to this matter.

Sincerely,



# Statement 116

**Olsen, Wendy (USANYS)**

| | |
|---|---|
| **From:** | ████████████████ |
| **Sent:** | Monday, March 25, 2024 12:45 PM |
| **To:** | USANYS-FTXVictims; Olsen, Wendy (USANYS) |
| **Cc:** | joseph@moskowitz-law.com; rejane@moskowitz-law.com |
| **Subject:** | [EXTERNAL] USA v. Samuel Bankman-Fried, Case No. 22-cr-673 (LAK) - Victim Impact Statement of ████████████ |
| **Attachments:** | 20240325_████ VictimImpactStatement_Signed-WithExhibits.pdf |

Dear Sirs and Mesdames,

I am a customer of FTX Trading Ltd. who has suffered pecuniary loss in the bankruptcy of the said company caused by the Defendant's fraudulent conduct.

I submit herewith my Victim Impact Statement ahead of the sentencing hearing on March 28, 2024 in *United States of America v. Samuel Bankman-Fried*, Case No. 22-cr-673 (LAK).

By my Victim Impact Statement, I request entry of an Order pursuant to 18 U.S.C. § 3663A obliging the Defendant to make restitution of digital assets to identifiable customers of FTX Trading Ltd. who suffered loss of digital assets in the bankruptcy of the said company caused by his fraudulent conduct.

Kind regards,

████████████

███████████████████████
███████████████████████
███████████████████████
███████████████████████

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 22-cr-673 (LAK) |
| SAMUEL BANKMAN-FRIED, | |
| Defendant. | **Hearing Date: March 28, 2024 at 09:30 a.m. (ET)** |

## VICTIM IMPACT STATEMENT



*Customer of FTX Trading Ltd. who has suffered pecuniary loss in the bankruptcy of the said company caused by the Defendant's fraudulent conduct*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | THE FTX TERMS OF SERVICE AND RELIANCE PLACED ON FTX TRADING LTD. | 4 |
| A. | The FTX Terms of Service | 4 |
| B. | Digital assets placed in the custody of FTX Trading Ltd. | 5 |
| III. | THE OFFENSE CONDUCT | 5 |
| IV. | LOSS CAUSED BY THE DEFENDANT | 6 |
| A. | Loss of digital assets caused by the Defendant to customers of FTX Trading Ltd. | 6 |
| B. | Particular loss caused to me by the Defendant | 7 |
| V. | RESTITUTION ORDER | 7 |
| A. | Fungibility of digital assets substantially obviates the requirement for tracing | 7 |
| B. | The number of identifiable victims is not so large as to make restitution impracticable | 8 |
| C. | There are no complex issues of fact related to the cause or amount of victims' losses | 8 |
| VI. | RELIEF REQUESTED | 9 |
| VII. | CONCLUSION | 9 |

## I.   INTRODUCTION

*"Those who know Sam know he was vindicated in January 2024, when the FTX bankruptcy estate announced that it could 'cautiously predict' exactly what Sam had been saying since November 2022: customers AND general unsecured creditors with allowed claims will eventually be paid in full".*

*"[T]he company was solvent at the time of the bankruptcy petition. The money was there—not lost. The harm to customers, lenders, and investors is zero."*

Marc L. Mukasey *et al.*, Attorneys for Samuel Bankman-Fried[1]

1. By reason of the Defendant's fraudulent conduct, I have suffered pecuniary loss in the bankruptcy of FTX Trading Ltd. comprising loss of the following digital asset holdings[2] which I entrusted to the said company's custody in reliance on representations made in the applicable FTX Terms of Service:

   (a) 273. 37327843 ETH, i.e. the native token of the proof of stake-secured Etherium network created by hard fork at the September 2022 Etherium Merge;

   (b) 454. 47038161 SOL, i.e. the native token of the Solana network; and

   (c) 273. 37327843 ETHW, i.e. the native token of the proof of work-secured legacy Etherium network which continues to operate following the September 2022 Etherium Merge.

---

[1] Marc L. Mukasey *et al.*, Samuel Bankman-Fried's Sentencing Memorandum, February 27, 2024, Case No. 22-cr-00673 (LAK), Document 407, pages 12 and 26.

[2] The digital asset holdings as stated in this paragraph are evidenced in the email dated March 28, 2023 from Kroll Restructuring Administration to the writer and titled "FTX - Your Scheduled Claim Information and Unique Customer Code", a copy of which is annexed as **Exhibit A** hereto. See further footnote 6 and **Exhibit C** hereto.

2. In the bankruptcy proceeding pertaining to FTX Trading Ltd., Case No. 22-11068-JTD, FTX Trading Ltd. has persistently refused to return *in specie* customers' digital assets notwithstanding that the latter self-evidently are not property of its bankruptcy estate. FTX Trading Ltd. instead purports to "value" customers' digital assets in U.S. dollars using calculations based on the deeply depressed November 2022 petition date market prices and to retain customers' digital assets for itself. For example, the current market price of SOL is about $190, but in the bankruptcy proceeding FTX Trading Ltd. has been permitted to "value" customers' SOL retained in its custody at $16.25[3]. By this means, FTX Trading Ltd., enabled by the Defendant's fraudulent conduct and aided and abetted by the U.S. Bankruptcy Court, misappropriates more than 91% of the value of the SOL tokens I and other customers of FTX Trading Ltd. entrusted to its custody. FTX Trading Ltd meanwhile has purported, likewise aided and abetted by the U.S. Bankruptcy Court, to sell substantially all customer-owned digital assets in its custody and to retain for its own use most of the corresponding sale proceeds.

3. The contention of the Defendant's attorneys that customers of FTX Trading Ltd. who entrusted the company with custody of their digital assets, whom the Defendant defrauded, "will eventually be paid in full" seamlessly continues the same egregious dishonesty as that characterizing the fraudulent conduct by which the Defendant caused FTX Trading Ltd. to collapse. The Defendant's attorneys' contentions that the company "was solvent at the time of the bankruptcy petition" and that harm to customers "is zero" is an egregious and intolerable provocation to customers of FTX Trading Ltd. who lost digital assets in the company's collapse and subsequent bankruptcy.

4. 18 U.S. Code § 3663A requires a sentencing court to order restitution of property in case of offenses committed by fraud or deceit in which an identifiable victim has suffered a pecuniary loss: 18 U.S.C. § 3663A(c)(1)(A)(ii) and 18 U.S.C. § 3663A(c)(1)(B). The provision does not apply in case of offenses committed by fraud or deceit in case the court finds, from facts on the record, that the number of identifiable victims is so large as to make restitution impracticable, or that determining complex issues of fact related to the cause or amount of victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process: 18 U.S.C. § 3663A(c)(3).

5. In the present case, 18 U.S. Code § 3663A(a)(1) requires the Court to order restitution *in specie* to identifiable customers of FTX Trading Ltd. who have suffered loss of digital assets entrusted to the custody of FTX Trading Ltd.

6. With respect to identifiable customers of FTX Trading Ltd. who have suffered loss of digital assets entrusted to the custody of FTX Trading Ltd., all conditions required for 18 U.S. Code § 3663A to apply and operate are present. In particular –

[3] Document 6851 in U.S. Bankruptcy Court in the District of Delaware Case Nr. 22-11068-JTD read in conjunction with Document 5202 and 6797 in the same matter. Document 5202 is FTX Trading Ltd.'s Motion to Estimate Claims based on Digital Assets filed on December 27, 2023, available at https://restructuring.ra.kroll.com/FTX/Home-DocketInfo?DockRelatedSearchValue=900807-5202. In the latter document, see Exhibit 1, "Digital Assets Conversion Table", at item 380 on page 9. Document 6797 is the Amended Notice of Agenda for Hearing Scheduled for January 31, 2024 at 10:30 A.M. (ET) filed on January 31, 2024, available at https://restructuring.ra.kroll.com/FTX/Home-DownloadPDF?id1=MzA1NTc4Mg==&id2=-1. Document 6851 comprises "Minute Entry Re: 6797; Estimation Hearing Held Re: Digital Assets (Part 1) (5202); estimation motion (5202) is GRANTED" filed on January 31, 2024, accessible at https://restructuring.ra.kroll.com/FTX/Home-DocketInfo by using the search term "6851".

(a) Enforcement of such a restitution order would not involve tracing of digital assets to find specifically identifiable units of the same because digital assets are fungible in the same sense that U.S. dollars are fungible, i.e. digital asset units generally are not associated with a unique identifier.

(b) While the number of the Defendant's victims is very large, few such victims are identifiable because, in the bankruptcy proceeding pertaining to FTX Trading Ltd., claim schedules are enciphered such that affected customers of FTX Trading Ltd. are not identifiable except to the extent that such a customer has declared himself in relation to a specific claim, e.g. by filing a Victim Impact Statement in the present proceeding[4].

(c) There are no complex issues of fact for the Court to determine related to the cause, or the amount, of losses of digital assets suffered by the relatively few identifiable customers of FTX Trading Ltd. In each case, the relevant cause of the losses is Defendant's fraudulent conduct, and, in each case, the amount of the losses is 100% of the relevant customer's digital assets as recorded in the published bankruptcy claim schedules.

(d) As 18 U.S. Code § 3663A relevantly is concerned with an order for *restitution of property lost in consequence of an offense*, as distinct from an order to pay compensatory damages, the restitution order cannot consider compensatory damages issues, such as questions as to remoteness of consequential damages, or questions as to whether a victim has made reasonable efforts to mitigate damage arising from loss of digital assets, e.g. by selling a claim in the bankruptcy of FTX Trading Ltd. and reinvesting the proceeds.

7. In particular, pursuant to 18 U.S. Code § 3663A the Court should make an order which obliges the Defendant to make restitution to me of the following digital assets:

   (a) 273. 37327843 ETH;

   (b) 454. 47038161 SOL; and

   (c) 273. 37327843 ETHW.

## II.  THE FTX TERMS OF SERVICE AND RELIANCE PLACED ON FTX TRADING LTD.

### A.  The FTX Terms of Service

8. Under the FTX Terms of Service, FTX Trading Ltd. specifically recognized that a customer's digital assets held on account with the company remain the customer's property, shall not be lent to FTX Trading Ltd, and may at any time be withdrawn by the customer.

9. According to clause 8.2.6 of the FTX Terms of Service dated May 13, 2022[5], being the version applicable on the bankruptcy petition date:

> 8.2.6    All Digital Assets are held in your Account on the following basis:
>
> (A)    Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading. As the owner of Digital Assets in your Account, you shall bear all risk of loss of such Digital Assets. FTX Trading shall have no liability for fluctuations in the fiat currency value of Digital Assets held in your Account.

---

[4] See footnote 2, above, and **Exhibit A**.

[5] A copy of the FTX Terms of Service date May 13, 2022 is annexed as **Exhibit B** hereto.

(B)     None of the Digital Assets in your Account are the property of, or shall
        or may be loaned to, FTX Trading; FTX Trading does not represent or
        treat Digital Assets in User's Accounts as belonging to FTX Trading.

(C)     You control the Digital Assets held in your Account. At any time,
        subject to outages, downtime, and other applicable policies (including
        the Terms), you may withdraw your Digital Assets by sending them to a
        different blockchain address controlled by you or a third party.

## B.  Digital assets placed in the custody of FTX Trading Ltd.

10. In January 2021 I contracted with FTX Trading Ltd. to use its trading platform at ftx.com subject to
contractual terms and conditions set out in the FTX Terms of Service. For this purpose, FTX Trading
Ltd. opened for my use a trading account in my name ("the Trading Account").

11. I entrusted FTX Trading Ltd. with substantial digital assets which it held in custodial wallets
associated with the Trading Account. In the Customer Claim Form dated February 26, 2024[6], FTX
Trading Ltd. admits, and I agree[7], that the three most significant cryptocurrency balances
associated with the Trading Account are as follows:

| Blockchain | Cryptocurrency | Quantity |
|---|---|---|
| Etherium | ETH | 273.37327843 |
| Solana | SOL | 454.47038161 |
| Etherium PoW | ETHW | 273.37327843 |

## III.  THE OFFENSE CONDUCT

12. In his former capacity as CEO of FTX Trading Ltd., the Defendant fraudulently misappropriated a
substantial proportion of customer assets in FTX Trading Ltd.'s custody. According to the company's
present CEO, John J. Ray III, the Defendant used software to conceal the fraud. The Defendant used
most of the misappropriated assets to finance trading and investment activities conducted in part
by another company under his direct control, Alameda Research LLC. The latter activities included
purchase of other assets such as 40,500,000 locked SOL tokens and a stake of approximately 8% in
a company active in artificial intelligence, Anthropic PBC. In a related aspect, the Defendant used
value derived from misappropriated customer assets as collateral to support the market price of

---

[6] Customer Claim Form dated February 26, 2024 issued to the writer by Kroll Restructuring Administration acting on
behalf of FTX Trading Ltd., a copy of which is annexed as **Exhibit C** hereto (excluding its attachment, namely the
Objection noted at page 8 of the form). I earlier had filed a Customer Claim Form dated September 29, 2023, likewise
attaching an Objection; see Michael Andrew Lusk, *Objection to the Motion of Custodians and Debtors dated
December 27, 2023 to Estimate Claims Based on Digital Assets (Doc 5202)* filed on January 12, 2024 as Doc. 5684 in
Case Nr. 22-11068-JTD. Available at https://restructuring.ra.kroll.com/FTX/Home-DownloadPDF?id1=MjYyNTkxNA==&
id2=-1. The Objection dated September 29, 2023 is annexed as Exhibit 2-2-(a) at PDF pages 71–74 of the last
mentioned document.

[7] The instructions at page 1 of the Customer Claim Form state: "If you do NOT agree with ... the type or nature of the
Customer Claim set forth below [i.e. 'a General Unsecured claim in an Undetermined Amount'], assert the quantity of
fiat [i.e. fiat currency, e.g. U.S. dollars] or coins [i.e. digital assets, e.g. ETH, SOL, or ETHW] you held as of the date the
case was filed in the rightmost column of the below charts". In the rightmost column of the chart under the heading
"Asserted Crypto" at page 2 of the Customer Claim Form (**Exhibit C**) appear digital asset quantities identical to the
corresponding scheduled quantities. As stated in the Objection attached to Customer Claim Form, the basis for my
disagreement with the schedule is that I am the owner of the digital assets held in the Trading Account, and the latter
must immediately be returned to me because they do not form part of FTX Trading Ltd.'s bankruptcy estate.

FTX Trading Ltd.'s exchange token, FTT, which substantially supported the respective market capitalizations of FTX Trading Ltd. and Alameda Research LLC. The Defendant used further misappropriated customer assets then valued at about $100,000,000 to buy influence with U.S. legislators during the 2022 U.S. election cycle by personally making political "donations" to members of both major U.S. political parties. The Defendant used still further misappropriated customer assets to buy a lavish residential compound in the Bahamas.

13. Contrary to the protestations of the Defendant's attorneys[8], there is nothing "altruistic", "moral" or "philanthropic" about the Defendant's criminal conduct. The opposite is true. The Defendant's manifold offenses plentifully evidence pathological self-centeredness and lack of a moral compass. In absurdly asserting that harm to customers "is zero", the sentencing memorandum filed on his behalf eloquently expresses the Defendant's pathological denial of the harm he caused to customers of FTX Trading Ltd. Beyond remorselessness, the Defendant expressly denies the reality of the destruction he left in his wake.

## IV.    LOSS CAUSED BY THE DEFENDANT

### A.  Loss of digital assets caused by the Defendant to customers of FTX Trading Ltd.

14. In November 2022 the Defendant publicly provoked Binance's then CEO, Changpeng Zhao, prompting the latter to publish information about the Defendant's fraudulent conduct. In consequence, public confidence in FTX Trading Ltd., Alameda Research LLC, and the FTT-token rapidly collapsed. In direct breach of subclause 8.2.6(C) of the FTX Terms of Service, the Defendant then caused FTX Trading Ltd. to freeze customers' accounts, thereby denying withdrawal of either digital assets or fiat currency. Following the Defendant's resignation as CEO, FTX Trading Ltd. filed for bankruptcy protection in the U.S.

15. FTX Trading Ltd. customer accounts remain frozen even today because, in defiance of customers' strenuous objections[9] and in direct breach of subclause 8.2.6(B) of the FTX Terms of Service, the company fraudulently contends that its bankruptcy estate extends to customers' digital assets and assets traceable to the same – which it manifestly does not. FTX Trading Ltd. fraudulently characterizes its customers as unsecured creditors in relation to the customers' digital assets in the company's custody. It claims that its customers are entitled to receive only – after unknown years of delay – a U.S. dollar-denominated payment equivalent to the deeply depressed petition date market value of their digital assets stolen by the company.

16. The circumstances mentioned at paragraph 15, above, are well known to the U.S. Bankruptcy Court. The latter nevertheless has permitted FTX Trading Ltd. to sell customers' digital assets and assets traceable to the same without competitive bidding to favored buyers at deeply discounted prices which nevertheless are multiples higher than the said deeply depressed petition date prices. In effect, the U.S. Bankruptcy Court is facilitating a bankrupt corporation's theft from non-U.S. individuals and entities of digital assets worth billions of dollars, and corrupt sale of the latter to favored U.S. venture capital firms. As a conspicuous display of public-private piracy, the episode is comparable to various Western governments' ongoing collaboration with commercial banks they

---

[8] Marc L. Mukasey *et al.*, *op. cit.* footnote 1, pages 9–11.

[9] See, for example, Michael Andrew Lusk, *Objection to the Motion of Custodians and Debtors dated December 27, 2023 to Estimate Claims Based on Digital Assets (Doc 5202)* filed on January 12, 2024 as Document 5684 in Case Nr. 22-11068-JTD. Available at https://restructuring.ra.kroll.com/FTX/Home-DownloadPDF?id1=MjYyNTkxNA==&id2=-1.

license to confiscate assets worth billions of dollars from Russian individuals and entities. As the corrupt sales of digital assets stolen from customers of FTX Trading Ltd. meanwhile are far advanced, customers no longer have any realistic prospects of success in obtaining restitution *in specie* of their digital assets from the bankrupt company.

17. By contrast, FTX Trading Ltd. proposes to repay its customers – eventually – 100% of fiat-currency, e.g. U.S. dollars or Euro, which customers held on account with the company.

18. The Defendant's criminal conduct precipitated and cannot be separated from the unbroken chain of loss to customers of FTX Trading Ltd. enumerated at paragraphs 14 – 16, above. It is notable that the Defendant himself engaged in related public-private piracy by using stolen customer assets to finance personal "donations" to a broad array of U.S. legislators.

### B. Particular loss caused to me by the Defendant

19. Acting in direct contravention of subclause 8.2.6(B) of the FTX Terms of Service, FTX Trading Ltd. fraudulently contends in its bankruptcy that it owns the digital assets I entrusted to its custody. Correspondingly, FTX Trading Ltd. claims that I am an unsecured creditor who has a U.S. dollar-denominated claim of only $353,663.01, being the petition date market value of the said digital assets. As noted at paragraph 15, above, despite my strenuous protests the U.S. Bankruptcy Court has permitted FTX Trading Ltd. to sell my digital assets to favored buyers at deeply discounted prices which nevertheless are multiples higher than the said super-low petition date prices. As noted at paragraph 18, above, the Defendant's fraudulent conduct precipitated and cannot be separated from the continuing fraudulent conduct of FTX Trading Ltd., currently aided and abetted by the U.S. Bankruptcy Court.

20. As explained at paragraphs 1 and 18, above, the pecuniary loss caused to me due to and seamlessly flowing from the Defendant's fraudulent conduct comprises loss of the following digital assets:

    (a) 273. 37327843 ETH;

    (b) 454. 47038161 SOL; and

    (c) 273. 37327843 ETHW.

## V.  RESTITUTION ORDER

21. There is no reasonable basis for the Court to find any fact which could preclude the requirement to make an order pursuant to 18 U.S. Code § 3663A obliging the Defendant to make restitution of digital assets to customers of FTX Trading Ltd. who suffered loss caused by his fraudulent conduct.

### A. Fungibility of digital assets substantially obviates the requirement for tracing

22. With a possible minor exception, enforcement of a restitution order under 18 U.S. Code § 3663A would not involve tracing of digital assets to facilitate identification and restitution of uniquely identifiable digital token units. This is because digital assets are fungible in the same sense that U.S. dollars are fungible, i.e. digital asset units generally are not associated with a unique identifier. As with the centralized operation of the SWIFT messaging network with respect to interbank transfer of fiat currencies (e.g. interbank transfer of U.S. dollars, Yen, or Euros, which generally are created via a currency expansion mechanism in the course of commercial banks "lending"), decentralized operation of the software applications which generate the blockchains of the most

important digital assets (e.g. BTC, ETH, and SOL) records the history of transactions without attaching unique identifying information to individual tokens or parts thereof.

23. An exception to this principle is found in a minor class of digital assets known as non-fungible tokens forms. Each such asset comprises a uniquely identifiable token, which often is associated with a unique artefact such as a collectible artwork. A non-fungible token is comparable to a printed U.S. Federal Reserve Note, being a currency unit incorporating a unique serial number. Execution of a restitution order made under 18 U.S. Code § 3663A in respect of a non-fungible token necessarily would involve identification of the token concerned. In the present case, few if any identifiable victims of the Defendant's fraudulent conduct are impacted by loss of a non-fungible token.

## B. The number of identifiable victims is not so large as to make restitution impracticable

24. While the number of the Defendant's victims is very large, relatively few such victims are *identifiable*. That is because, in the FTX T bankruptcy proceedings, identities of affected customers are not disclosed in the published claim schedules. Instead, individual scheduled claims are identified by an 8-digit "Unique Customer Code". For example, my claim against FTX Trading Ltd. is identified by Unique Customer Code "00455405" (see footnote 2 and **Exhibit A** hereto).

25. Consequently, the number of *identifiable* victims of the Defendant's fraudulent conduct corresponds to the relatively small number of FTX Trading Ltd. customers who file a sufficiently documented Victim Impact Statement in the present criminal proceeding or who non-anonymously made a sufficiently documented filing in a corresponding bankruptcy proceeding.

26. It is entirely practicable for the Court to make an order under 18 U.S. Code § 3663A requiring the Defendant to make restitution of digital assets to the relatively few *identifiable* victims of his fraudulent conduct.

## C. There are no complex issues of fact related to the cause or amount of victims' losses

27. It is not necessary for the Court to determine complex issues of fact related to the cause, or the amount, of losses of digital assets suffered by the relatively few identifiable customers of FTX Trading Ltd. In each relevant case, the cause of the losses is, or substantially includes, Defendant's fraudulent conduct. In each relevant case, the amount of the losses is 100% of the relevant FTX Trading Ltd. customer's digital assets as stated in the bankruptcy claim schedules and related correspondence issued by Kroll Restructuring Administration (see footnote 2 and **Exhibit A**; footnote 6 and **Exhibit C** hereto).

28. 18 U.S. Code § 3663A relevantly is concerned with an order for *restitution of property lost in consequence of an offense*, and not with an order to pay compensatory damages. It follows that, in making the statutory restitution order, the Court should not consider compensatory damages issues, such as questions as to remoteness of consequential damages, or questions as to whether a victim has made reasonable efforts to mitigate damage arising from loss of digital assets, e.g. by selling a claim in the bankruptcy of FTX Trading Ltd. and reinvesting the proceeds.

## VI.    RELIEF REQUESTED

29. By this Victim Impact Statement, I request entry of an Order pursuant to 18 U.S.C. § 3663A obliging the Defendant to make restitution of digital assets to identifiable customers of FTX Trading Ltd. who suffered loss of digital assets in the bankruptcy of the said company caused by his fraudulent conduct.

30. In particular, the order should oblige the Defendant to make restitution to me of the following digital assets corresponding to my claim in the bankruptcy of FTX Trading Ltd. identified by Unique Customer Code ▇▇▇▇▇▇

    (a)  273. 37327843 ETH;

    (b)  454. 47038161 SOL; and

    (c)  273. 37327843 ETHW.

## VII.    CONCLUSION

31. For the reasons set forth herein, I request the Court to grant the relief sought at paragraphs 29–30 of this Victim Impact Statement.

Dated:        March 25, 2024

▇▇▇▇▇▇▇▇▇▇▇▇

## EXHIBIT A

**FTX Scheduled Claim Information and Unique Customer Code**

**From:**
**Sent:** Tuesday, 28 March 2023 23:35
**To:**
**Subject:** FTX - Your Scheduled Claim Information and Unique Customer Code

<u>YOUR UNIQUE CUSTOMER CODE(S) AND SCHEDULED CLAIM INFORMATION IS AT THE
BOTTOM OF THIS EMAIL.</u>

YOU ARE RECEIVING THIS EMAIL BECAUSE YOU HAVE BEEN IDENTIFIED AS A CUSTOMER
WITH A NET POSITIVE ACCOUNT BALANCE AS OF NOVEMBER 11, 2022 OF ONE OR MORE OF
THE DEBTORS IN THE CHAPTER 11 CASES OF FTX TRADING LTD. AND CERTAIN OF ITS
AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION PENDING IN THE UNITED STATES
BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE AND JOINTLY ADMINISTERED
UNDER THE CASE NUMBER 22-11068. YOU HAVE BEEN LISTED IN ONE OR MORE OF THE
DEBTORS' SCHEDULES AND STATEMENTS.

On March 14 and 15, 2023, the FTX Trading Ltd. and certain of its affiliated debtors and debtors-in-
possession (collectively, the "<u>Debtors</u>") filed their schedules of assets and liabilities and statements
of financial affairs (the "<u>Schedules and Statements</u>").

*Pursuant to the Final Order (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in
Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or
Withhold Certain Confidential Information of Customers and Personal Information of Individuals on a
Final Basis and (III) Granting Certain Related Relief* [D.I. 545], customer names and addresses in the
Schedules and Statements are redacted. With respect to Schedules E/F – which identify creditors of
the Debtors with non-priority unsecured claims (including customers with a net positive account
balance as of November 11, 2022) – in an effort to redact customer names and addresses, the
Debtors have identified each customer with a net positive account balance as of November 11, 2022
by a unique customer code (a "<u>Unique Customer Code</u>"). Your Unique Customer Code and an
excerpt of your scheduled claim(s) are at the bottom of this email.

<u>PLEASE BE ADVISED THAT THE COURT HAS NOT YET SET A DEADLINE FOR SUBMITTING
PROOFS OF CLAIMS OR INTERESTS AGAINST THE DEBTORS. WHEN THE COURT SETS A
DEADLINE, ALL KNOWN CREDITORS, INCLUDING ALL CUSTOMERS IDENTIFIED ON THE
SCHEDULES AND STATEMENTS, WILL BE PROVIDED NOTICE OF THE DEADLINE AND
INSTRUCTIONS ON HOW TO SUBMIT PROOFS OF CLAIM OR INTERESTS.</u>

<u>PLEASE BE FURTHER ADVISED THAT RECEIPT OF THIS EMAIL AND A UNIQUE CUSTOMER
CODE ONLY INDICATES THAT YOU HAD ONE OR MORE CLAIM(S) LISTED ON ONE OR MORE OF
THE DEBTORS' SCHEDULES AND STATEMENTS. PROVISION OF A UNIQUE CUSTOMER CODE IS
NOT AN ADMISSION BY THE DEBTORS OF THE VALIDITY OF SUCH CLAIM(S) OR A WAIVER OF</u>

**ANY DEFENSES THERETO. THE DEBTORS HEREBY INCORPORATE BY REFERENCE THE
GLOBAL NOTES ATTACHED TO EACH OF THE DEBTORS' SCHEDULES AND STATEMENTS AND
RESERVE ALL RIGHTS.**

To view all of the Debtors' Schedules and Statements, as well as the Global Notes, please visit
https://restructuring.ra.kroll.com/FTX and navigate to the "Schedules & SOFA" page under "Quick
Links." Standalone excerpts of the customer data can be found under "Customer Schedules."

**Your Unique Customer Code is**

**Your claim(s) were scheduled on the Schedules and Statements of FTX Trading Ltd. as:**

**AMPL[0.0119358065309251]
ETH[273.3732784383107000]
ETHW[273.3732784383107000]
LINK[0.0000000068199500]
SOL[454.4703816153915344]
USD[8.7422792167571577]
USDT[2.5473758900000000]**

## EXHIBIT B

**FTX Terms of Service date May 13, 2022**

## FTX TERMS OF SERVICE

Date: May 13, 2022

The following terms and conditions of service, together with any other documents expressly incorporated herein, (collectively, the **"Terms"**) constitute an agreement between you (**"you"**, **"your"** or **"User"**) and FTX Trading Ltd, a company incorporated and registered in Antigua and Barbuda (company number 17180) (**"FTX Trading"**, **"we"**, **"our"** or **"us"**), or a Service Provider in respect of a Specified Service, and apply to your use of:

(A) the Exchange and any Specified Service that may be offered to you by a Service Provider (collectively, the **"Platform"**), as a User to buy, sell, exchange, hold, stake, lend, borrow, send, receive or otherwise transact in (together, **"transact in"**) or list Digital Assets;

(B) the FTX Application Programming Interface (**"API"**); and

(C) any other services offered through the FTX website (ftx.com) (the **"Site"**) or any Mobile Application,

(together, the **"Services"**).

By registering for a Platform account (**"Account"**) or using the Services, you agree that you have read, understand and accept the Terms, including our Privacy Policy, Security Policy and Fee Schedule, and you acknowledge and agree that you will be bound by and comply with the Terms. Do not proceed with registering for an Account, or using the Services, if you do not understand and accept the Terms in their entirety.

Section 21 (*Right to change, suspend or discontinue Services*) and Section 22 (*Updates to Terms*) set out the terms on which we may, from time to time, change, suspend, or discontinue any aspect of the Services and amend any part of the Terms.

Our Services are not offered to Restricted Persons (as defined in Section 3.3.1(A) below) or persons who have their registered office or place of residence in the United States of America or any Restricted Territory (as defined in Section 3.3.1(A) below).

FTX Trading's relationship with you under the Terms is as a trading platform provider only. FTX Trading does not act as principal or counterparty with respect to trades entered into on the Platform. Notwithstanding the foregoing:

(A) FTX Trading may act as a counterparty for limited trades made for the purpose of liquidating fees collected on User trades; and

(B) Affiliates of FTX Trading may execute trades on the Platform provided, however, that such Affiliates shall not be afforded any priority in trade execution.

Save in certain limited circumstances set out in Section 38.13 (*Exception to arbitration*), Section 38.12 (*Arbitration*) requires all Disputes to be resolved by way of legally binding arbitration on an individual basis only and not as a claimant or class member in a purported class or representative action. There is no judge or jury in arbitration and court review of an arbitration award is limited.

The laws of some jurisdictions may limit or not permit certain provisions of the Terms, such as arbitration, indemnification, the exclusion of certain warranties or the limitation of certain liabilities. In such a case, such provisions will apply only to the maximum extent permitted by the laws of such jurisdictions.

In the Terms, unless the context otherwise requires, the definitions and rules of interpretation set out in Schedule 1 shall apply.

1. **STRUCTURE OF TERMS**

1.1    The Terms comprise:

1.1.1    the general terms and conditions set out above, in Sections 1 (*Structure of Terms*) to 38 (*General*), and in Schedule 1 (*Definitions and Interpretation*), which

apply generally to you, your registration and use of an Account, and your use of the Services **("General Terms")**;

1.1.2     the policies, schedules and other documents of FTX Trading and its Affiliates incorporated by reference into the Terms, including our Privacy Policy, Security Policy and Fee Schedule **("FTX Policies")**; and

1.1.3     the terms and conditions set out in each Service Schedule, which shall also apply to the Specified Service referred to therein.

1.2     To the extent there is any conflict or inconsistency between the modules of the Terms, such conflict or inconsistency shall be resolved in the following order of precedence, unless a term or condition set out in a document of lower precedence is expressly identified as taking precedence over a document of higher precedence: General Terms, Service Schedules, Fee Schedule, Privacy Policy, Security Policy and other FTX Policies.

1.3     **IMPORTANT:** You acknowledge and agree that any Specified Service referred to in a Service Schedule shall be provided to you by the Service Provider specified in that Service Schedule. In such case, the Specified Service shall be provided to you on and subject to the Terms, with references in these General Terms to "FTX Trading" (or "we", "our" or "us") being read as references to the Service Provider specified in the Service Schedule, unless the context provides otherwise, and under no circumstances shall any other person, including any Affiliate of the Service Provider, be liable to you for the performance of any of the Service Provider's obligations under the Terms.

2.     **RISK DISCLOSURES**

Before beginning to use the Services, you should ensure you have read and understand (and you represent and warrant that you have read and understand) the following risk disclosures and the risk disclosures set out in the Service Schedules. You should note that this is not an exhaustive list of all of the risks associated with Digital Assets and the Services.

2.1     **No advice and no reliance**

2.1.1     FTX Trading does not advise on the merits of any particular transaction, trading risks, or tax consequences, and FTX Trading does not provide any other financial, investment, taxation or legal advice in connection with the Services. To the extent that we or our representatives provide market commentary, or any other information, the act of doing so is incidental to your relationship with us and such information should not be construed as investment or financial advice. Any decision by you to use the Services and transact in Digital Assets is your own independent decision. You represent that you are not relying on any communication (written or oral) by us as investment advice or as a recommendation to use the Services and transact in Digital Assets. FTX Trading will not be liable for any loss suffered by you or any third party.

2.1.2     You accept the risk of trading Digital Assets. In entering into any transaction on the Platform, you represent that you have been, are, and will be solely responsible for making your own independent appraisal and investigations into the risks of such transaction and the underlying Digital Asset. You represent that you have sufficient knowledge, market sophistication, professional advice and experience to make your own evaluation of the merits and risks of any transaction entered into on the Platform or any underlying Digital Asset.

2.1.3     FTX Trading is not your broker, intermediary, agent, or advisor and has no fiduciary relationship or obligation to you in connection with any trades or other decisions or activities effected by you using the Services.

2.2     **Digital Asset transfers and volatility**

2.2.1     Trading in Digital Assets can be extremely risky and volatile. Digital Assets may have unique features that make them more or less likely to fluctuate in value.

Factors beyond FTX Trading's control, such as regulatory activity or unexplainable price volatility, may affect market liquidity for a particular Digital Asset. Blockchain networks may go offline as a result of bugs, Forks (as defined in Section 17 below), or other unforeseeable reasons. As a general matter, you should not engage in active trading on the Platform if you have limited trading experience or low risk tolerance. Speculating on the value of Digital Assets is high risk and you should never trade more than you can afford to lose.

2.2.2   Understanding Digital Assets requires advanced technical knowledge. Digital Assets are often described in exceedingly technical language that requires a comprehensive understanding of applied cryptography and computer code in order to appreciate the inherent risks. The listing of a Digital Asset on the Platform does not indicate FTX Trading's approval or disapproval of the underlying technology of any Digital Asset and should not be used as a substitute for your own understanding of the risks specific to each Digital Asset. We provide no warranty as to the suitability of the Digital Assets traded under the Terms and assume no fiduciary duty to you in connection with such use of the Services.

2.2.3   You accept all consequences of sending Digital Assets to an address off the Platform. Digital Asset transactions may not be reversible. Once you send Digital Assets to an address, you accept the risk that you may lose access to your Digital Assets indefinitely. For example, an address may have been entered incorrectly and the true owner of the address may never be discovered, or an address may belong to a person that will not return your Digital Assets or may return your Digital Assets but first require action on your part, such as verification of your identity or compensation.

## 2.3   Supply and value of Digital Assets

2.3.1   The value of Digital Assets may be derived from the continued willingness of market participants to exchange Digital Assets for fiat currency and other Digital Assets, which may result in the permanent and total loss of value of a particular Digital Asset should the market for that Digital Asset disappear.

2.3.2   You acknowledge and agree that Digital Assets and/or Services (in whole or in part) available in one jurisdiction may not be available for trading, use or access, as applicable, in another.

## 2.4   Margin trading

2.4.1   Margin trading is HIGH RISK. As a borrower, you may sustain a total loss of Digital Assets, fiat currency and E-Money (as defined in Section 8.3.2 below (collectively, **"Assets"**) in your Account, or owe Assets beyond what you have deposited in your Account. When you lend Assets to other Users, you risk the loss of an unpaid principal if the borrower defaults on a loan and liquidation of the borrower's Account fails to raise sufficient Assets to cover the borrower's debt.

## 2.5   Complex products

2.5.1   Trading of complex products, including but not limited to Futures Contracts, Options Contracts, and MOVE Volatility Contracts (each as defined in the Service Schedules) (collectively, **"Complex Products"**), may not be suitable for all Users. Complex Product trading is designed to be utilised only by sophisticated Users, such as active traders employing dynamic strategies. You should use extreme caution when trading Complex Products and only trade them if you understand how they work, including but not limited to the risks associated with margin trading, the use of leverage, the risk of shorting, and the effect of compounding and market volatility risks on leveraged products.

2.5.2   Complex Product trading entails significant risk, and you may feel the effects of losses immediately. Complex Product trading requires initial posting of collateral to meet initial margin requirements. If movements in the markets for a Complex

Product or the underlying Digital Asset decrease the value of your position in such Complex Product, you may be required to have or make additional collateral available as margin to ensure that maintenance margin requirements are met. If your Account is under the minimum margin requirements, your position may be liquidated at a loss, and you may lose all of your Assets in your Account. If there are any additional deficits in your Account, you will also be liable for all such deficits.

2.5.3 USERS WHO DO NOT UNDERSTAND LEVERAGE OR MARGIN TRADING, OR DO NOT INTEND TO ACTIVELY MANAGE THEIR PORTFOLIO, SHOULD NOT ENGAGE IN COMPLEX PRODUCT TRADING.

2.5.4 FTX TRADING AND ITS AFFILIATES DO NOT TAKE ANY RESPONSIBILITY WHATSOEVER FOR ANY LOSSES OR DAMAGE INCURRED AS A RESULT OF YOUR USE OF ANY COMPLEX PRODUCT TRADING SERVICES OFFERED ON THE PLATFORM OR YOUR FAILURE TO UNDERSTAND THE RISKS ASSOCIATED WITH COMPLEX PRODUCT TRADING.

### 2.6 Blacklisted addresses and forfeited Assets

2.6.1 FTX Trading reserves the right to "blacklist" certain addresses and freeze associated Assets (temporarily or permanently) that it determines, in its sole discretion, are associated with illegal activity or activity that otherwise violates the Terms **("Blacklisted Addresses")**. In the event that you send Assets to a Blacklisted Address or receive Assets from a Blacklisted Address, FTX Trading may freeze such Assets and take steps to terminate your Account.

2.6.2 In certain circumstances, FTX Trading may deem it necessary to report such suspected illegal activity to applicable law enforcement agencies and other Regulatory Authorities, and you may forfeit any rights associated with your Assets, including the ability to redeem or exchange your Digital Assets for other Digital Assets or fiat currency. FTX Trading may also freeze Assets held in your Account in the event that we receive a related order or request from a legal or Regulatory Authority.

### 2.7 Software protocols and operational challenges

2.7.1 The software protocols that underlie Digital Assets are typically open source projects or are otherwise operated by third parties, which means that: (i) the operations, functionalities, development and control of such Digital Assets and their underlying networks are outside of FTX Trading's control; and (ii) such software protocols are subject to sudden and dramatic changes that might have a significant impact on the availability, usability or value of a given Digital Asset.

2.7.2 You are aware of and accept the risk of operational challenges that may impact the Services. The Platform may experience sophisticated cyber-attacks, unexpected surges in activity or other operational or technical difficulties that may cause interruptions to the Services. You understand that the Services may experience operational issues that lead to delays. You agree to accept the risk of transaction failure resulting from unanticipated or heightened technical difficulties, including those resulting from sophisticated attacks. You agree not to hold FTX Trading liable for any related losses.

2.7.3 You understand that the technology underlying Digital Assets is subject to change at any time, and such changes may affect your Digital Assets stored on the Platform. You are fully responsible for monitoring such technological changes and understanding their consequences for your Digital Assets.

2.7.4 Users conduct all trading on their own account and FTX Trading does not take any responsibility for any loss or damage incurred as a result of your use of any Services or your failure to understand the risks associated with Digital Assets use generally or your use of our Services.

2.7.5 Digital Assets depend on the availability and reliability of power, connectivity, and hardware. Interruption or failure of any of these things may disrupt the networks on which the Digital Assets rely or your ability to access or transact in Digital Assets.

## 2.8 Compliance

You are responsible for complying with all Applicable Laws. You agree that FTX Trading is not responsible for determining whether or which laws and regulations may apply to your transactions, including but not limited to tax laws and regulations. You are solely responsible for reporting and paying any taxes arising from your use of the Services.

## 2.9 Legislative and regulatory changes

Legislative and regulatory changes or actions at the domestic or international level may adversely affect the use, transfer, ability to transact in, and value of Digital Assets, or your access to, and our ability to provide, the Services. You acknowledge and accept the risks that such changes may bring and that FTX Trading is not liable for any adverse impact that you may suffer as a result.

## 2.10 No deposit protection

Neither Digital Assets nor any fiat currency or E-Money held in your Account is eligible for any public or private deposit insurance protection.

## 2.11 Digital Asset Distributions not supported

Certain Digital Assets are built on protocols that support Digital Asset Distributions (as defined in Section 17.4 below), including, but not limited to, Forks (as defined in Section 17.1 below), Staking Rewards (as defined in Section 17.4 below) and Airdrops (as defined in Section 17.4 below). FTX Trading is not obligated to support any such Digital Asset Distributions for Users. If you hold these Digital Assets in your Account, you thereby forfeit the ability to claim any Digital Asset Distributions from FTX Trading. If you hold Digital Assets with proof-of-stake or delegated proof-of-stake consensus algorithms, FTX Trading may in its sole discretion stake these Digital Assets without any obligation to distribute Staking Rewards to you. Staking may subject your Digital Assets to additional risks and FTX Trading is not liable for losses you may incur related to staking.

## 2.12 Reliance on third parties

Your use of the Services and the value of certain Digital Assets may rely on the acts of third parties or the fulfilment of related obligations by third parties. FTX Trading is not responsible for the acts or omissions of such third parties.

## 3. APPLICABLE LAWS AND REGULATIONS

### 3.1 Compliance with Applicable Laws

3.1.1 You agree and understand that by opening an Account and using the Services in any capacity, you shall act in compliance with all Applicable Laws. Failure to do so may result in the suspension of your ability to use the Services or the closure of your Account.

3.1.2 Without limitation to the above, your access to and use of your Account and the Services, and the receipt of any fee discounts and rebates, is subject to your continued compliance with all Applicable Laws, including the rules and directions of any applicable Regulatory Authority and, without limitation, all applicable tax, anti-money laundering (**"AML"**) and counter-terrorist financing (**"CTF"**) laws and regulations.

3.2     **AML and CTF procedures**

Our AML and CTF procedures are guided by all applicable rules and regulations regarding AML and CTF. These standards are designed to prevent the use of the Platform for money laundering or terrorist financing activities. We take compliance very seriously and it is our policy to take the necessary steps that we believe appropriate to prohibit fraudulent transactions, report suspicious activities, and actively engage in the prevention of money laundering and terrorist financing, any related acts that facilitate money laundering, terrorist financing or any other financial crimes.

3.3     **Export controls**

3.3.1   The Services are subject to all applicable export control restrictions and, by using the Services, you represent that your actions are not in violation of such export control restrictions. Without limiting the foregoing, you may not use the Services if:

(A)     you are in a prohibited jurisdiction as set forth at Location Restrictions (**"Restricted Territories"**);

(B)     you are a member of any sanctions list or equivalent maintained by the United States government, the United Kingdom government, the European Union, the Singapore government, or The Bahamas government (**"Restricted Persons"**);

(C)     you intend to transact with any Restricted Territories or Restricted Persons;

(D)     you are located, incorporated or otherwise established in, or a citizen or resident of a jurisdiction where it would be illegal under Applicable Law for you (by reason of your nationality, domicile, citizenship, residence or otherwise) to access or use the Services; or

(E)     the publication or availability of the Services in the jurisdiction in which you are based is prohibited or contrary to local law or regulation or could subject FTX Trading to any local registration or licensing requirements.

3.3.2   We may, in our sole discretion, implement controls to restrict access to and use of the Services in any of the Restricted Territories or in any of the circumstances referred to in Section 3.3.1 above. If we determine that you are accessing or using the Services from any Restricted Territory, or any of the circumstances referred to in Section 3.3.1 above apply, we may suspend your ability to use the Services or close your Account at our discretion.

4.      **ELIGIBILITY**

4.1     In order to be eligible to open an Account or use the Services (and to enter into the Terms), you must meet (and you represent and warrant that you do meet) the following eligibility criteria:

4.1.1   If you are an individual, you must be at least 18 years of age, have the capacity to accept the Terms, and not have been previously suspended or removed from access to the Services or any other service or product offered by FTX Trading or any of its Affiliates, and are otherwise eligible to use the Services under Applicable Law.

4.1.2   If you are registering to use the Services on behalf of a legal entity, then:

(A)     you must be duly authorised by such legal entity to act on its behalf for the purpose of entering into the Terms;

(B)     the legal entity must be duly organised and validly existing under the laws of the jurisdiction of its organisation; and

(C)     the legal entity must not have been (and each of its Affiliates must not have been) previously suspended or removed from access to the

Services or any other service or product offered by FTX Trading or any of its Affiliates and must be otherwise eligible to use the Services under Applicable Law.

4.1.3    You have not: violated; been fined, debarred, sanctioned, the subject of economic sanctions-related restrictions, or otherwise penalised under; received any oral or written notice from any government concerning actual or possible violation by you under; or received any other report that you are the subject or target of sanctions, restrictions, penalties, or enforcement action or investigation under, any Applicable Law (including but not limited to AML, CTF, anti-corruption, or economic sanctions laws).

4.1.4    You do not have your registered office or place of residence in the United States of America or any Restricted Territory.

4.1.5    You are not a Restricted Person nor are you a resident of a Restricted Territory; and

4.1.6    You will not be using the Services for any illegal activity including, but not limited to, those Restricted Activities listed in Section 13 below.

4.2    If we determine that you do not fulfil any of the above criteria, then we may suspend your ability to use the Services or close your Account at our discretion.

## 5.    REGISTRATION PROCESS; IDENTITY VERIFICATION

5.1    When registering your Account, you must provide complete, accurate, up-to-date and not misleading information for all required elements on the registration page, including your full legal name. You also agree to provide us, when registering an Account and on an ongoing basis, with any additional information we request for the purposes of identity verification and the detection of money laundering, terrorist financing, fraud, or any other financial crime, including without limitation a copy of your government issued photo ID or evidence of residency such as a lease or utility bill. You permit us to keep a record of such information and authorise us to make any enquiries, directly or through third parties that we consider necessary to verify your identity or protect you and/or us against fraud or other financial crime, and to take any action we reasonably deem necessary based on the results of such inquiries. When we carry out these enquiries, you acknowledge and agree that your personal information may be disclosed to credit reference and fraud prevention or financial crime agencies and that these agencies may respond to our inquiries in full.

5.2    In certain circumstances, we may require you to submit additional information about yourself, your business, your source of wealth, or your transactions, provide records, and complete other verification steps (such process, **"Enhanced Due Diligence"**).

5.3    You represent and warrant that any and all information provided to us in connection with registering your Account, using the Services, pursuant to the Terms or otherwise is complete, accurate, up-to-date and not misleading in any respect. If any such information changes, it is your obligation to update such information as soon as possible and provide such updates to us.

5.4    Your access to the Services and the limits that apply to your use of the Services may be altered as a result of information collected about you on an ongoing basis.

5.5    If any (or we suspect that any) of the information that you have provided to us is not complete, accurate, up-to-date or misleading in any respect, or you fail to provide updates to any information that you have provided to us to ensure that it is complete, accurate, up-to-date and not misleading in any respect on a timely basis, we may suspend your ability to use the Services or close your Account at our discretion.

5.6    We reserve the right to maintain your Account registration information after you close your Account for business and regulatory compliance purposes, subject to Applicable Laws.

6.     **YOUR ACCOUNT; SECURITY OF USER INFORMATION**

6.1    You may access your Account (and the Services) directly via the Site, via a Mobile
       Application or by such other mode of access (including but not limited to through the APIs)
       as FTX Trading may prescribe from time to time, using the account names, User IDs,
       passwords, and other security features (**"User Credentials and Security Passwords"**)
       made available to you by FTX Trading for the purposes of enabling you to access your
       Account (and the Services). You are responsible for maintaining the confidentiality and
       security of any and all User Credentials and Security Passwords, which includes the
       enabling of all relevant security features. You are responsible for keeping your email
       address up to date in your Account profile.

6.2    You are only permitted to access your Account using your own User Credentials and
       Security Passwords. You must ensure that your Account is not used by any other third
       party and you must not share your User Credentials and Security Passwords with any third
       party. You are solely responsible for all activity on your Account.

6.3    You agree to notify FTX Trading immediately if you become aware of any breach of
       security, loss, theft or unauthorised use of your User Credentials and Security Passwords,
       or unauthorised use of the Services via your Account, or any other breach of security
       regarding the Services. FTX Trading will not be liable for any loss or damage arising from
       your failure to protect your Account or your User information. It is important that you
       regularly check your Account balance and your transaction history to ensure any
       unauthorised transactions or incorrect transactions are identified and notified to us at the
       earliest possible opportunity.

6.4    FTX Trading reserves the right to suspend your ability to use the Services or close your
       Account if we suspect that the person logged into your Account is not you or we become
       aware of or suspect that there has been any breach of security, loss, theft or unauthorised
       use of your User Credentials and Security Passwords.

6.5    In order to access your Account (and the Services) you must have the necessary
       equipment (such as a computer or smartphone) and access to the Internet. You are solely
       responsible for your own hardware used to access the Services and are solely liable for the
       integrity and proper storage of any data associated with the Services that is stored on your
       own hardware. You are responsible for taking appropriate action to protect your hardware
       and data from viruses and malicious software, and any inappropriate material. Except as
       provided by Applicable Law, you are solely responsible for backing up and maintaining
       duplicate copies of any information you store or transfer through our Services. Neither FTX
       Trading nor any other Indemnified Party shall be liable to you: (i) in the event that your
       hardware fails, is damaged or destroyed or any records or data stored on your hardware
       are corrupted or lost for any reason; (ii) for any damage or interruptions caused by any
       computer viruses, spyware, or other malware that may affect your computer or other
       equipment, or any phishing, spoofing, or other attack; or (iii) for your use of the Internet to
       connect to the Services or any technical problems, system failures, malfunctions,
       communication line failures, high internet traffic or demand, related issues, security
       breaches or any similar technical problems or defects experienced.

7.     **ORDER BOOK AND CONVERT**

7.1    FTX Trading operates Order Books on which Orders may be placed by Users to be
       matched with the Orders of other Users. The Order types that FTX Trading may offer from
       time to time in its sole discretion include but are not limited to "market" ,"limit", "stop-loss
       limit", "stop-loss market", "trailing stop" and "take profit limit" orders. FTX Trading may
       issue trading rules from time to time that apply to Orders placed on the Order Book, in
       addition to these General Terms.

7.2    The Convert function on the Platform also allows you to submit instructions ("**Convert
       Instructions**") to exchange (buy or sell) one spot Asset for another. Each Convert
       transaction is subject to the applicable Exchange Rate quoted for the given transaction and
       the applicable time limts for such quote. The **"Exchange Rate"** means the price of a given
       Digital Asset as quoted on your "Wallet" page on the Site or any Mobile Application. The

Exchange Rate is stated either as a "Buy Price" or as a "Sell Price", which is the price at which you may buy or sell the Asset, respectively.

7.3 The Exchange Rate quoted will depend on market conditions, and you are under no obligation to execute a Convert transaction at any Exchange Rate quoted to you. You acknowledge that the Buy Price Exchange Rate may not be the same as the Sell Price Exchange Rate at any given time, and that there may be a 'spread' to the quoted Exchange Rate. You agree to accept the Exchange Rate when you authorise a Convert transaction.

7.4 We do not guarantee the availability of any Exchange Rate and we do not guarantee that you will be able to buy and/or sell your Assets using Convert or on the Order Book at any particular price or time.

7.5 You are solely responsible for accurately entering any Order or Convert Instruction, including but not limited to all the necessary information in order to enable us to carry out any Order or Convert Instruction. FTX Trading is not obliged to verify the accuracy or completeness of any such information, Order or Convert Instruction.

7.6 You agree that any Order or Convert Instruction received or undertaken through your Account shall be deemed to be final and conclusive, and that FTX Trading may act upon such Order or Convert Instruction. We shall not be under any obligation to verify the identity or authority of any person giving any Order or Convert Instruction or the authenticity of such Order or Convert Instruction.

7.7 Your Orders and Convert Instructions shall be irrevocable and unconditional and shall be binding on you, and such Orders and Convert Instructions may be acted or relied upon by us irrespective of any other circumstances. As such, once you give any Order or Convert Instruction, you have no right to rescind or withdraw such Order or Convert Instruction without our written consent.

7.8 Each of your Orders and Convert Instructions shall not be considered to be received by FTX Trading unless and until it has been received by FTX Trading's server. FTX Trading's records of all Orders and Convert Instruction shall be conclusive and binding on you for all purposes.

7.9 Under no circumstances shall any of the Indemnified Parties be responsible or liable to you for any Losses suffered or incurred by you or any other person arising from any of the Indemnified Parties relying or acting upon any Order or Convert Instruction which is given or purported to be given by you, regardless of the circumstances prevailing at the time of such Order or Convert Instruction.

7.10 You hereby authorise FTX Trading to credit or debit (or provide settlement information to third parties for the purposes of the third party crediting or debiting) your Assets from your Account in accordance with your Orders and Convert Instructions. We reserve the right not to effect any transaction if you have insufficient Assets in your Account.

8. **ACCOUNT FUNDING**

8.1 **Funding - General**

8.1.1 In order to fund your Account and begin transacting in Digital Assets using the Platform, you must first procure Digital Assets (or deposit Digital Assets that you already own into your Account) and/or load fiat currency into your Account.

8.1.2 You should be aware that FTX Trading: (i) may not support the loading into and/or storing of fiat currency in your Account in all jurisdictions; and (ii) does not support the use of all fiat currencies. A partial list of fiat currencies supported by FTX Trading can be found here. This list may be amended from time to time by FTX Trading at its sole discretion.

8.1.3 Any available Assets held in your Account is available to be locked and used as collateral for margin trading, or to fund trades, in relation to any Services or part thereof offered through the Platform by FTX Trading or its Affiliates.

8.2     **Digital Assets**

8.2.1   The Platform supports deposits and withdrawals of certain Digital Assets, including certain U.S. Dollar-pegged stablecoins (each a **"USD Stablecoin"**). You may deposit Digital Assets that you already own into your Account by generating an address within your Account and sending your Digital Assets to such address, after which they should appear in your Account balance (USD Stablecoins will appear in your "USD Stablecoins (USD)" balance).

8.2.2   You may purchase Digital Assets in exchange for certain supported fiat currencies (depending on your location) by linking a valid payment method to your Account. In such circumstances, you authorise us to debit the relevant amount of fiat currency using your selected payment method(s) to complete your purchase.

8.2.3   The Platform enables you to exchange one Digital Asset for another Digital Asset, send Digital Assets to and receive Digital Assets from other Users of the Services, or third parties outside of the Platform (where permitted by FTX Trading in its sole discretion).

8.2.4   You may sell Digital Assets in exchange for certain supported fiat currencies (depending on your location). In such circumstances, you authorise us to debit your Account and to send instructions to credit your selected payment method(s) in settlement of sell transactions.

8.2.5   FTX Trading makes no representations or warranties regarding the amount of time, transaction fees or other requirements that may be required to complete the transfer of your Digital Assets to or from a third party wallet or other source and for said Digital Assets to become available in your Account.

8.2.6   All Digital Assets are held in your Account on the following basis:

(A)     Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading. As the owner of Digital Assets in your Account, you shall bear all risk of loss of such Digital Assets. FTX Trading shall have no liability for fluctuations in the fiat currency value of Digital Assets held in your Account.

(B)     None of the Digital Assets in your Account are the property of, or shall or may be loaned to, FTX Trading; FTX Trading does not represent or treat Digital Assets in User's Accounts as belonging to FTX Trading.

(C)     You control the Digital Assets held in your Account. At any time, subject to outages, downtime, and other applicable policies (including the Terms), you may withdraw your Digital Assets by sending them to a different blockchain address controlled by you or a third party.

8.2.7   FTX Trading is under no obligation to issue any replacement Digital Asset in the event that any Digital Asset, password or private key is lost, stolen, malfunctioning, destroyed or otherwise inaccessible.

8.2.8   It is your responsibility to ensure that you send all Digital Assets, to the correct address provided for that particular Digital Asset, including with respect to any Digital Assets that you send to the Platform. If you send a Digital Asset to an address that does not correspond to that exact Digital Asset (such as an address not associated with your Account or the specific Digital Asset sent), such Digital Asset may be lost forever. By sending any Digital Assets to the Platform, you attest that you will only send a supported Digital Asset to the Platform wallet address provided to you. For example, if you select an Ethereum Platform wallet address to receive funds, you attest that you are initiating an inbound transfer of Ethereum alone, and not any other forms of Digital Assets. You agree that FTX Trading incurs no obligation whatsoever with regards to sending unsupported Digital Assets to an address provided to you on the Platform. Similarly, if you

send a Digital Asset from your Account to an external address that does not correspond to that exact Digital Asset, such Digital Asset may be lost forever.

8.2.9   You assume all liability for any Losses incurred as a result of sending Digital Assets to an incorrect address (such as typos, errors, copy-paste attacks, or an address not associated with your Account, or an address not associated with the specific Digital Asset). You are solely liable for verifying the accuracy of any external wallet address, and the identity of the recipient. All outbound transfers of Digital Assets cannot be reversed once they are broadcast to the underlying blockchain network. FTX Trading does not control any blockchain network and cannot guarantee that any transfer will be confirmed or transferred successfully by the network. FTX Trading is not responsible for any losses or for taking any actions to attempt to recover any lost, stolen, misdirected or irrecoverable Digital Assets. If the Digital Assets are recoverable, we may in our sole discretion attempt to recover them, but such recovery efforts are in no way guaranteed. Please be aware that if you attempt to deposit ETH to your Account by sending it via a smart contract, your ETH may not be automatically credited, and may take time to recover, and may not be recovered at all.

8.2.10  When you elect to transfer Digital Assets from your Account to a third party wallet address or other location, it is always possible that the party administering the new location may reject your transfer or that the transfer may fail due to technical or other issues affecting the Platform. You agree that you shall not hold FTX Trading liable for any damages arising from a rejected or failed transfer.

8.2.11  You hereby represent and warrant to us that any Digital Assets used by you in connection with the Services (including any Digital Assets used to fund your Account) are either owned by you or that you are validly authorised to carry out transactions using such Digital Assets, and that all transactions initiated with your Account are for your own Account and not on behalf of any other person.

8.2.12  It is your responsibility entirely to provide us with correct details of any withdrawal address. We accept no liability resulting in you or any third party not receiving Digital Assets withdrawn by you due to you providing incorrect, erroneous, incompatible or out-of-date details.

## 8.3    **Fiat currency**

8.3.1   Where specified on the Site or in a Service Schedule, and depending on your location, the Platform may support various fiat currencies for deposit, withdrawal, and/or trading, using wire transfers, credit cards, or other appropriate methods.

8.3.2   Once we receive fiat currency that you load into your Account, we may issue you with an equivalent amount of electronic money (**"E-Money"**), denominated in the relevant fiat currency, which represents the fiat currency that you have loaded. This amount will be displayed in your Account.

8.3.3   E-MONEY IS NOT LEGAL TENDER. FTX TRADING IS NOT A DEPOSITORY INSTITUTION AND YOUR E-MONEY IS NOT A DEPOSIT OR INVESTMENT ACCOUNT. YOUR E-MONEY ACCOUNT IS NOT INSURED BY ANY PUBLIC OR PRIVATE DEPOSIT INSURANCE AGENCY.

8.3.4   E-Money held in your Account will not earn any interest. Your Account may hold E-Money denominated in different currencies and we will show the E-Money balance for each currency that you hold.

8.3.5   You may purchase Digital Assets by using E-Money credited to your Account (depending on your location). To carry out a Digital Asset purchase using E-Money, you must follow the relevant instructions on the Site. You authorise us to debit E-Money from your Account to complete your purchase. Although we will attempt to deliver Digital Assets to you as promptly as possible, E-Money may be debited from your Account before Digital Assets are delivered to your Account.

8.3.6    You may sell Digital Assets in exchange for certain fiat currencies (depending on your location). To carry out a Digital Asset sale, you must follow the relevant instructions on the Site. You authorise us to debit Digital Assets from your Account and send instructions to credit your Account with the relevant amount of fiat currency. Once we receive the fiat currency, we will issue you with an equivalent amount of E-Money denominated in the relevant fiat currency.

8.3.7    You may redeem all or part of any E-Money held in your Account at any time subject to outages, downtime, and other applicable policies (including the Terms), by selecting the relevant option in the Site and following the instructions. Unless agreed otherwise, funds will be transferred to the bank account you have registered with us. You hereby represent and warrant that this bank account is your own, and that you have full control over it. It is your responsibility entirely to provide us with correct details of your withdrawal account. We accept no liability resulting in you not receiving any amounts withdrawn by you due to you providing incorrect or out-of-date details.

8.3.8    If the Terms are terminated, we may redeem any E-Money remaining in your Account and attempt to transfer the equivalent amount of fiat currency to the bank account you have registered with us. Prior to redeeming E-Money from your Account, we may conduct checks for the purposes of preventing fraud, money laundering, terrorist financing and other financial crimes, and as required by Applicable Law. This may mean you are prevented or delayed from withdrawing E-Money until those checks are completed to our reasonable satisfaction in order to comply with our regulatory requirements.

9.    **UNCLAIMED OR ABANDONED PROPERTY**

9.1    If FTX Trading is holding Assets in your Account (**"Unclaimed or Abandoned Property"**), and we are unable to contact you and have no record of your use of the Services for a prolonged period of time or your Account has been closed, Applicable Laws may require us to report such Unclaimed or Abandoned Property as unclaimed property to the applicable jurisdiction. If this occurs, FTX Trading will try to locate you using the details shown in our records in relation to your Account, but if FTX Trading is unable to locate you, we may be required to deliver any such Unclaimed or Abandoned Property to the applicable jurisdiction as unclaimed property. FTX Trading reserves the right to deduct a dormancy fee or other administrative charges from such Unclaimed or Abandoned Property, as permitted by Applicable Laws.

9.2    If FTX Trading is holding Unclaimed or Abandoned Property, and we are unable to contact you and have no record of your use of the Services for a prolonged period of time or your Account has been closed, and Applicable Laws do not require us to report such Unclaimed or Abandoned Property as unclaimed property to the applicable jurisdiction, then you acknowledge and agree that your Account may be transferred to FTX Trading, or an Affiliate of FTX Trading, as Trustee of the Unclaimed or Abandoned Property. FTX Trading or the Affiliate of FTX Trading (as applicable), as Trustee, will hold the Unclaimed or Abandoned Property on your behalf and shall, on demand, repay to you the Unclaimed or Abandoned Property subject to your payment of any dormancy fee or other administrative charges that the Trustee may deduct from the Unclaimed or Abandoned Property. If no such demand is made by you, the Trustee may pay the Unclaimed or Abandoned Property into court in the applicable jurisdiction in accordance with Applicable Laws.

9.3    If we receive legal documentation confirming your death or other information leading us to believe you have died, we will freeze your Account and during this time, no transactions may be completed until: your designated fiduciary has opened a new Account, as further described below, and the entirety of your Account has been transferred to such new account, or (ii) we have received proof in a form satisfactory to us that you have not died. If we have reason to believe you may have died but we do not have proof of your death in a form satisfactory to us, you authorise us to make enquiries, whether directly or through third parties, that we consider necessary to ascertain whether you have died. Upon receipt by us of proof satisfactory to us that you have died, the fiduciary you have designated in a

valid will or similar testamentary document will be required to open a new Account. If you have not designated a fiduciary, then we reserve the right to treat as your fiduciary any person entitled to inherit your Account, as determined by us upon receipt and review of the documentation we, in our sole and absolute discretion, deem necessary or appropriate, including (but not limited to) a will, a living trust or other similar documentation, or (ii) require an order designating a fiduciary from a court having competent jurisdiction over your estate. In the event we determine, in our sole and absolute discretion, that there is uncertainty regarding the validity of the fiduciary designation, we reserve the right to require an order resolving such issue from a court of competent jurisdiction before taking any action relating to your Account. Pursuant to the above, the opening of a new Account by a designated fiduciary is mandatory following the death of an Account owner, and you hereby agree that your fiduciary will be required to open a new Account in order to gain access to the contents of your Account.

## 10. DEBIT ACCOUNT BALANCE

10.1 If at any time your Account has a debit balance, you agree to pay us: (i) the applicable fees set out in the Fee Schedule; (ii) the total debit balance; and (iii) such other amounts specified in the Terms.

10.2 If you fail to pay such amounts, we may suspend your ability to use the Services or close your Account. We also reserve the right to debit your Account accordingly and/or to withhold amounts from fiat currency and Digital Assets that you may transfer to your Account.

10.3 If, after a demand is made by FTX Trading, you have not made payment of the outstanding debit balance by the time stated in the demand, then:

    10.3.1 you authorise us to sell any Digital Assets or redeem any fiat currency or E-Money in your Account to recover the outstanding debit balance;

    10.3.2 you agree to indemnify us and each other Indemnified Party against all Losses that we suffer or incur as a result of your not paying the outstanding debit balance; and

    10.3.3 you will be liable for all costs which we incur in relation to instructing a collection agency, law firm or other third party to assist with and advise on the collection of such outstanding debit balance (where applicable).

## 11. THIRD PARTY PERMISSIONS TO CONNECT TO OR ACCESS YOUR ACCOUNT

If you grant express permission to a third party to connect to your Account, either through the third party's product or through the Platform, you acknowledge that granting permission to a third party to take specific actions on your behalf does not relieve you of any of your responsibilities under the Terms. Further, you acknowledge and agree that you will not hold FTX Trading responsible for, and will indemnify FTX Trading from, any liability arising from the actions or inactions of such third party in connection with the permissions you grant.

## 12. ACCOUNT SUSPENSION AND CLOSURE; SERVICE SUSPENSION AND TERMINATION

12.1 FTX Trading may, in its sole and absolute discretion and at any time, without liability to you or any third party:

    12.1.1 refuse to let you open an Account, suspend your Account, or terminate your Account;

    12.1.2 decline to process any instruction or Order submitted by you; and/or

    12.1.3 limit, suspend or terminate your use of one or more, or part of, the Services.

12.2 Such actions will not relieve you from your obligations pursuant to the Terms.

12.3 Such actions may be taken as a result of a number of factors, including without limitation:

12.3.1   as a result of account inactivity, your failure to respond to customer support requests, our failure or inability to positively identify you;

12.3.2   as a result of a court order or your violation of Applicable Laws or the Terms; or

12.3.3   where we believe that a transaction is suspicious or may involve fraud, money laundering, terrorist financing or other misconduct.

12.4   If you do not agree with any actions taken by us under Section 12.1, then your sole and exclusive remedy is to terminate your use of the Services and close your Account. You agree that neither we nor any other Indemnified Party shall be liable to you or any third party for any Losses suffered as a result of any actions taken by us under Section 12.1.

12.5   Without limitation to the foregoing, we may temporarily suspend access to your Account in the event that a technical problem causes a system outage or Account errors until the problem is resolved.

12.6   Where required by Applicable Laws, we will notify you promptly if we have suspended processing your Orders or Convert Instructions and, if possible, provide our reasons for doing so and anything you can do to correct or remedy the matters giving rise to such suspension.

12.7   You may close your Account or terminate your access to and use of the Services at any time upon request to FTX Trading, in accordance with the Terms. In order to close your Account or terminate your access to and use of the Services, you should contact us for assistance. You may not close an Account if we determine, in our sole discretion, that such closure is being performed in an effort to evade a legal or regulatory investigation or to avoid paying any amounts otherwise due to FTX Trading or its Affiliates.

12.8   We encourage you to withdraw any remaining balance of Assets prior to issuing a request to close your Account. We reserve the right to restrict or refuse to permit withdrawals from your Account if:

12.8.1   your Account has otherwise been suspended or closed by us in accordance with the Terms;

12.8.2   to do so would be prohibited by Applicable Laws or court order, or we have determined that the Assets in your Account were obtained fraudulently; or

12.8.3   you have not completed the required identity verification procedure. You can check whether or not your identity has been verified by reviewing your verification status under the "Settings" section of your Account.

12.9   Upon closure or suspension of your Account, you authorise FTX Trading to cancel or suspend pending transactions.

12.10   Notwithstanding that you or FTX Trading closes or deactivates your Account or terminates or suspends your access to and use of any Services, or the termination or expiry of the Terms, you shall remain liable for all activity conducted with or in connection with your Account while it was open, and for all amounts due in connection with such activity.

## 13.   RESTRICTED ACTIVITIES

In connection with your use of the Services, you agree that you will not:

13.1.1   violate or assist any party in violating any Applicable Laws or any rule of any self-regulatory or similar organisation of which you are or are required to be a member through your use of the Services;

13.1.2   provide false, inaccurate, incomplete, out-of-date or misleading information;

13.1.3   infringe upon FTX Trading's or any third party's copyrights, patents, trademarks, or other intellectual property rights;

13.1.4   engage in any illegal activity, including without limitation illegal gambling, money laundering, fraud, blackmail, extortion, ransoming data, the financing of terrorism, other violent activities or any prohibited market practices;

13.1.5 distribute unsolicited or unauthorised advertising or promotional material, written media releases, public announcements and public disclosures, junk mail, spam or chain letters;

13.1.6 use a web crawler or similar technique to access our Services or to extract data;

13.1.7 reverse engineer or disassemble any aspect of the Site, the API, or the Services in an effort to access any source code, underlying ideas and concepts and algorithms;

13.1.8 perform any unauthorised vulnerability, penetration or similar testing on the API or Services;

13.1.9 take any action that imposes an unreasonable or disproportionately large load on our infrastructure, or detrimentally interfere with, intercept, or expropriate any system, data or information;

13.1.10 transmit or upload any material to the Site that contains viruses, Trojan horses, worms, or any other harmful or deleterious programs;

13.1.11 otherwise attempt to gain unauthorised access to or use of the Site, the API, other FTX Accounts, computer systems, or networks connected to the Site, through password mining or any other means;

13.1.12 transfer any rights granted to you under the Terms;

13.1.13 engage in any activity which, in our reasonable opinion, amounts to or may amount to market abuse including without limitation the carrying out of fictitious transactions or wash trades, front running or engaging in disorderly market conduct;

13.1.14 engage in any behaviour which is unlawful, violates the Terms, or is otherwise deemed unacceptable by FTX Trading in its sole discretion; or

13.1.15 assist, facilitate or encourage any third party in undertaking any activity otherwise prohibited by the Terms.

## 14. ELECTRONIC TRADING TERMS

14.1 FTX Trading may, in its sole discretion, choose to discontinue support for a currently listed or supported Digital Asset at any time, including without limitation where there are changes in the characteristics of such Digital Asset.

14.2 A transaction on the Platform may fail for several reasons including, without limitation, as a result of a change in prices, insufficient margin, or unanticipated technical difficulties. FTX Trading makes no representation or warranty that any transaction will be executed properly. Under no circumstances are we liable for any loss or injury suffered by a failure of a transaction to complete properly or in a timely manner. Further, we are in no way responsible for notifying you of a transaction failure, although you are able to see any such failures via your Account. You have full responsibility for determining and inquiring into the failure of any transaction which you initiate.

14.3 In the event that you receive any data, information, or software through our Services other than that which you are entitled to receive pursuant to the Terms, you will immediately notify us and will not use, in any way whatsoever, such data, information or software. If you request a withdrawal of Digital Assets and we cannot comply with it without closing some part of your open positions, we will not comply with the request until you have closed sufficient positions to allow you to make the withdrawal.

14.4 We may refuse to execute a trade or impose trade amount limits or restrictions at any time, in our sole discretion without notice. Specifically, we reserve the right to refuse to process, and the right to cancel or reverse, any transaction, as well as to revoke access to a User's deposit address on the Platform, where we suspect the transaction involves money laundering, terrorist financing, fraud, or any other type of crime or if we suspect the transaction relates to a prohibited use as stated in the Terms. FTX Trading reserves the

right to halt deposit activity at our sole discretion. A User may not change, withdraw, or cancel its authorisation to make a transaction, except with respect to partially filled Orders.

14.5 FTX Trading may correct, reverse, or cancel any trade impacted by an error in processing a User's transaction or otherwise. The User's remedy in the event of an error will be limited to seeking to cancel an Order or Convert Instruction or obtaining a refund of any amounts charged to the User. FTX Trading cannot guarantee such cancellations or refunds will always be possible.

14.6 Orders placed on the Order Book may be partially filled or may be filled by one or more Orders placed on the Order Book by other Users, depending on the trading activity on the Order Book at the time an Order is placed.

14.7 The Digital Assets available for purchase through the Platform may be subject to high or low transaction volume, liquidity, and volatility at any time for potentially extended periods. You acknowledge that while FTX Trading uses commercially reasonable methods to provide Exchange Rate information to you through the Platform, the Exchange Rate information we provide may differ from prevailing exchange rates made available by third parties. Similarly, the actual market rate at the time of your trade may be different from the indicated Exchange Rate. You agree that you assume all risks and potential losses associated with price fluctuations or differences in any actual versus indicated Exchange Rates.

## 15. STAKING

15.1 When you hold Digital Assets on the Platform you may be given the option to "stake" these assets via staking services provided by FTX Trading or its Affiliates. You are not required to stake any Digital Assets and you can opt out of any staking services (subject to applicable early withdrawal limits or penalties as specified on the staking page for such Digital Asset). If you stake your Digital Assets, FTX Trading or its Affiliate will facilitate the staking of such Digital Assets on your behalf. You agree and acknowledge that you have no right to any staking rewards whatsoever. FTX TRADING DOES NOT GUARANTEE THAT YOU WILL RECEIVE ANY STAKING REWARDS OVER TIME, INCLUDING THE DISPLAYED STAKING REWARDS RATES.

15.2 The tax treatment of staking Digital Assets is uncertain, and it is your responsibility to determine what taxes, if any, arise from the transactions. You are solely responsible for reporting and paying any applicable taxes arising from staking services and all related transactions, and acknowledge that FTX Trading does not provide investment, legal, or tax advice to you in connection with such election to participate. You should conduct your own due diligence and consult your advisors before making any investment decision including whether to participate in staking and related transactions.

## 16. MARGIN TRADING

16.1 This Section 16 applies only to the extent you are permitted to engage in margin trading on the Platform. Margin trading is prohibited in certain jurisdictions, and you may not be able to engage in margin trading on the Platform. We reserve the right to amend and/or remove margin trading functionality at any time.

16.2 Margin trading is HIGH RISK. As a borrower, you may sustain a total loss of Assets or owe Assets beyond what you have deposited to your Account. The high volatility and substantial risk of illiquidity in markets means that you may not always be able to liquidate your position. You agree to maintain a sufficient amount of Assets at all times to meet our margin requirements, as such requirements may be modified from time to time. If the value of the Assets in your Account falls below the margin maintenance requirement or we determine, in our sole discretion, that your Account appears to be in danger of defaulting on a loan, we may seize and/or liquidate any or all of your positions and Assets on any balance in your Account in order to reduce your leverage or settle your debt to other Users, in which case, you may sustain a total loss of all Assets in your Account. Our liquidation mechanism is described at https://help.ftx.com/hc/en-us/articles/360027668712-Liquidations. If, after your positions and Assets are liquidated, your Account still contains

insufficient Assets to settle your debts to other Users, you will be responsible for any additional Assets owed. Intentionally defaulting on a loan may result in our reporting your activities to authorities and/or in legal prosecution.

16.3    When you lend Assets to other Users, you risk the loss of an unpaid principal if the borrower defaults on a loan and liquidation of the borrower's Account fails to raise sufficient Assets to cover the borrower's debt. Although we take precautions to prevent borrowing Users from defaulting on loans, the high volatility and substantial risk of illiquidity in markets means that we cannot make any guarantees to any Users using the Services against default.

16.4    Under certain market conditions, it may become difficult or impossible to liquidate a position. This can occur, for example, if there is insufficient liquidity in the market or due to technical issues on the Platform. Placing contingent Orders, such as "stop-loss" or "stop-limit" Orders, will not necessarily limit your losses to the intended amounts, since market conditions may make it impossible to execute such Orders. In such an event, our backstop liquidity provider program may come into play, but there is no assurance or guarantee that any such program activities will be sufficient or effective in liquidating your position. As a result, you may lose all of your Assets or incur a negative balance in your Account. In addition, even if you have not suffered any liquidations or losses, your Account balance may be subject to clawback due to losses suffered by other Users.

16.5    The use of leverage can work against you as well as for you and can lead to large losses as well as gains. Users conduct all trading, margin trading, lending, and/or borrowing on their own account and we do not take any responsibility for any loss or damage incurred as a result of your use of any Services or your failure to understand the risks associated with margin trading on the Platform.

17.     **FORKS AND DISTRIBUTIONS**

17.1    As a result of the decentralised and open source nature of Digital Assets it is possible that sudden, unexpected, controversial or other changes (**"Forks"**) can be made to any Digital Asset that may change the usability, functions, compatibility, value or even name of a given Digital Asset. Such Forks may result in multiple versions of a Digital Asset and could lead to the dominance of one or more such versions of a Digital Asset (each a **"Dominant Digital Asset"**) and the partial or total abandonment or loss of value of any other versions of such Digital Asset (each a **"Non-Dominant Digital Asset"**).

17.2    FTX Trading is under no obligation to support a Fork of a Digital Asset that you hold in your Account, whether or not any resulting version of such forked Digital Asset is a Dominant Digital Asset or Non-Dominant Digital Asset or holds value at or following such Fork. Forks of Digital Assets can be frequent, contentious and unpredictable, and therefore cannot be consistently supported on the Platform. When trading or holding Digital Assets using your Account, you should operate under the assumption that the Platform will never support any Fork of such Digital Asset.

17.3    If FTX Trading elects, in its sole discretion, to support a Fork of a Digital Asset, it may choose to do so by making a public announcement through its Site or otherwise notifying customers and shall bear no liability for any real or potential losses that may result based on the decision to support such Fork or the timing of implementation of support. If FTX Trading, in its sole discretion, does not elect to support a Fork of a given Digital Asset, including the determination to support, continue to support, or cease to support any Dominant Digital Asset or Non-Dominant Digital Asset, FTX Trading assumes no responsibility or liability whatsoever for any losses or other issues that might arise from an unsupported Fork of a Digital Asset.

17.4    The Platform does not generally offer support for the distribution of Digital Assets based on a triggering fact or event, such as the possession of another Digital Asset (each an **"Airdrop"**), the provision of rewards or other similar payment for participation in a Digital Asset's protocol (**"Staking Rewards"**), or any other distributions or dividends that Users might otherwise be entitled to claim based on their use or possession of a Digital Asset outside of the Platform (collectively, **"Digital Asset Distributions"**). FTX Trading may, in

its sole discretion, elect to support any Digital Asset Distribution, but is under no obligation to do so and shall bear no liability to Users for failing to do so, or for initiating and subsequently terminating such support.

17.5 In the event of a Fork of a Digital Asset, we may be forced to suspend all activities relating to such Digital Asset (including trades, deposits, and withdrawals) on the Platform for an extended period of time, until FTX Trading has determined in its sole discretion that such functionality can be restored **("Downtime")**. This Downtime may occur at the time that a Fork of a given Digital Asset occurs, potentially with little to no warning. During such Downtime, you understand that you may not be able to trade, deposit, or withdraw the Digital Asset subject to such Fork. FTX Trading does not bear any liability for losses incurred during any Downtime due to the inability to trade or otherwise transfer Digital Assets.

## 18. **ATTACKS ON BLOCKCHAIN NETWORKS**

18.1 FTX Trading cannot prevent or mitigate attacks on blockchain networks and has no obligation to engage in activity in relation to such attacks. In the event of an attack, FTX Trading reserves the right to take (or to not take) actions, including, but not limited to, immediately halting trading, deposits and withdrawals for a Digital Asset if we believe that the Digital Asset's network is compromised or under attack. If such an attack caused the Digital Asset to greatly decrease in value, we may discontinue trading in such Digital Asset entirely.

18.2 Resolutions concerning deposits, withdrawals and User balances for a Digital Asset that has had its network attacked will be determined on a case-by-case basis by FTX Trading in its sole discretion. FTX Trading makes no representation and does not warrant the safety of the Services and you assume all liability for any lost value or stolen property.

## 19. **SITE; THIRD PARTY CONTENT**

19.1 FTX Trading strives to provide accurate and reliable information and content on the Site, but such information may not always be correct, complete, or up to date. You should always carry out your own independent appraisal and investigations in relation to such information and not rely on it in any way.

19.2 The Site may also contain links to third party websites, applications, events or other materials **("Third Party Content")**. Such information is provided for your convenience and links or references to Third Party Content do not constitute an endorsement by FTX Trading of any products or services. FTX Trading makes no representation as to the quality, suitability, functionality or legality of Third Party Content, or to any goods and services available from third party websites, and FTX Trading shall have no liability for any losses incurred as a result of actions taken in reliance on the information contained on the Site or in any Third Party Content.

19.3 We have no control over, or liability for, the delivery, quality, safety, legality or any other aspect of any goods or services that you may purchase from a third party (including other Users of the Platform). We are not responsible for ensuring that a third party buyer or seller you transact with will complete the transaction or is authorised to do so. If you experience a problem with any goods or services purchased from, or sold to, a third party purchased using Digital Assets in connection with the Services, you must resolve the dispute directly with that third party.

## 20. **AVAILABILITY**

20.1 We do not represent that you will be able to access your Account or the Services 100% of the time. Your Account and the Services are made available to you without warranty of any kind, either express or implied. There are no guarantees that access will not be interrupted, or that there will be no delays, failures, errors, omissions or loss of transmitted information. This could result in the inability to trade on the Platform for a period of time and may also lead to time delays. We may, from time to time, suspend access to your Account and the Services, for both scheduled and emergency maintenance.

20.2    You acknowledge and agree that neither FTX Trading nor any other Indemnified Party shall
        have any liability to you or any third party for the correctness, quality, accuracy, security,
        completeness, reliability, performance, timeliness, pricing or continued availability of the
        Services or for delays or omissions of the Services, or for the failure of any connection or
        communication service to provide or maintain your access to the Services, or for any
        interruption in or disruption of your access or any erroneous communications between FTX
        Trading (or any other Indemnified Party) and you, regardless of cause.

20.3    FTX Trading may determine not to make the Services, in whole or in part, available in
        every market, either in its sole discretion or due to legal or regulatory requirements. In
        addition, FTX Trading may determine not to make the Services, in whole or in part,
        available to you, depending on your location. If you travel to a Restricted Territory, our
        Services may not be available and your access to our Services may be blocked. You
        acknowledge that this may impact your ability to trade on the Platform and/or monitor any
        existing Orders or open positions or otherwise use the Services. You must not attempt in
        any way to circumvent any such restriction, including by use of any virtual private network
        to modify your internet protocol address.

## 21.    RIGHT TO CHANGE, SUSPEND OR DISCONTINUE SERVICES

21.1    We reserve the right to change, suspend, or discontinue any aspect of the Services at any
        time and in any jurisdiction, including hours of operation or availability of any feature,
        without notice and without liability. We may advise you of any such changes, suspensions
        or discontinuations via your Account or the other contact details that you have provided to
        us but shall have no obligation to do so.

21.2    If you do not agree with any change, suspension, or discontinuance of any aspect of the
        Services, then your sole and exclusive remedy is to terminate your use of the Services and
        close your Account. You agree that neither we nor any other Indemnified Party shall be
        liable to you or any third party for any Losses suffered as a result of any such changes,
        suspensions, discontinuations or decisions.

## 22.    UPDATES TO THE TERMS

22.1    We reserve the right to amend any part of the Terms, at any time, by posting the revised
        version of the Terms on the Site, with an updated revision date. The changes will become
        effective, and shall be deemed accepted by you, the first time you use the Services after
        the initial posting of the revised Terms and shall apply on a going-forward basis with
        respect to transactions initiated after the posting date. You acknowledge that it is your
        responsibility to check the Terms periodically for changes.

22.2    If you do not agree with any amendments to the Terms, your sole and exclusive remedy is
        to terminate your use of the Services and close your Account. You agree that neither we
        nor any other Indemnified Party shall be liable to you or any third party for any Losses
        suffered as a result of any amendment of the Terms.

## 23.    FEES

23.1    In consideration for the use of the Services, you agree to pay to FTX Trading the
        appropriate fees, as set forth in our Fee Schedule displayed on the Site ("Fee Schedule"),
        which FTX Trading may revise or update in its sole discretion from time to time. If you do
        not agree with any amendments to the Fee Schedule, your sole and exclusive remedy is to
        terminate your use of the Services and close your Account.

23.2    On request, FTX Trading may make available an alternative fee schedule ("Alternative
        Fee Schedule") to Users who satisfy certain criteria (such as in relation to trading volume),
        which are determined by FTX Trading in its sole discretion from time to time.

23.3    You authorise FTX Trading to deduct any applicable fees from your Account at the time
        you make a given transaction. Changes to the Fee Schedule or Alternative Fee Schedule
        are effective as of the date set forth in any revision and will apply prospectively from that
        date forward.

24.   **TAXES**

24.1   You will be able to see a record of your transactions via your Account which you may wish to use for the purposes of making any required tax filings or payments. It is your responsibility to determine what, if any, taxes apply to your activities on the Platform, and to collect, report, and remit the correct tax to the appropriate tax authority.

24.2   FTX Trading is not responsible for determining whether taxes apply to your transaction, or for collecting, reporting, or remitting any taxes arising from any transaction.

25.   **RIGHT TO USE SERVICES; API USE; THIRD PARTY APPLICATIONS**

25.1   **License**

25.1.1   FTX Trading grants you a limited, non-exclusive, non-sublicensable, and non-transferable license, subject to the Terms, to access and use the Services solely for approved purposes as determined by FTX Trading. Any other use of the Services is expressly prohibited. FTX Trading and its licensors reserve all rights in the Services, and you agree that the Terms do not grant you any rights in, or licenses to, the Services except for the limited license set forth above.

25.1.2   Except as expressly authorised by FTX Trading, you agree not to modify, reverse engineer, copy, frame, scrape, rent, lease, loan, sell, distribute, or create derivative works based on the Services, in whole or in part. If you violate any portion of the Terms, your permission to access and use the Services may be terminated pursuant to the Terms.

25.1.3   "FTX.com," "FTX" and all logos related to the Services are either trademarks, or registered marks of FTX Trading or its licensors. You may not copy, imitate, or use them without FTX Trading's prior written consent. All right, title, and interest in and to the Site and any Mobile Application, any content thereon, the Services, and any and all technology or content created or derived from any of the foregoing is the exclusive property of FTX Trading and its licensors.

25.2   **API use**

25.2.1   Subject to your compliance with the Terms and any other agreement which may be in place between you and FTX Trading relating to your use of the API, FTX Trading grants you a limited, revocable, non-exclusive, non-transferable, non-sublicensable license, to use the API solely for the purposes of trading on the Platform. You agree to not use the API or data provided through the API for any other purpose. You agree your access and use of the API shall be entirely at your own risk, and that FTX Trading will not be responsible for any liabilities that you incur as a result of the use of the API or actions you take based on the API.

25.2.2   FTX Trading may, at its sole discretion, set limits on the number of API calls that you can make, for example, to maintain market stability and integrity. You acknowledge and agree that if you exceed these limits, FTX Trading may moderate your activity or cease offering you access to the API (or any other API offered by FTX Trading), each in its sole discretion.

25.2.3   FTX Trading may immediately suspend or terminate your access to the API without notice if we believe you are in violation of the Terms or any other agreement which may be in place between you and FTX Trading related to your use of the API.

25.3   **Third Party Applications**

25.3.1   We offer our Services to users both directly and via third party websites, platforms, applications and other access portals (collectively, "**Third Party Portals**"). If you are accessing these Terms via a Third Party Portal, you agree (a) to comply with all applicable terms of service of such Third Party Portal, (b) that you are solely responsible for payment of any and all costs and fees