UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America<br><br>v.<br><br>Samuel Bankman-Fried<br><br>Defendant. | Case No. 1:22-cr-00673-LAK<br><br>**THIRD-PARTY MOVANTS FTX DEBTORS' AND FTX DIGITAL MARKETS' VERIFIED PETITION FOR ANCILLARY PROCEEDINGS PURSUANT TO 21 U.S.C. § 853(n)** |

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") and FTX Digital Markets Ltd. ("FTX Digital") respectfully submit this petition for an ancillary proceeding pursuant to 21 U.S.C. § 853(n) and Rule 32.2 of the Federal Rules of Criminal Procedure, and assert their superior interest to specific property subject to this Court's *Preliminary Order of Forfeiture/Money Judgment* [D.I. 423] dated March 28, 2024 (the "Preliminary Forfeiture Order") in the above-captioned matter.

I.   **Procedural History**

On August 14, 2023, Samuel Bankman-Fried was charged in a seven-count Superseding Indictment (the "Indictment") with wire fraud (Counts One and Three), conspiracy to commit wire fraud (Counts Two and Four), conspiracy to commit securities fraud (Count Five), conspiracy to commit commodities fraud (Count Six), and conspiracy to commit money laundering (Count Seven). Counts One through Five and Seven of the Indictment included forfeiture allegations. *See* Superseding Indictment, *United States* v. *Bankman-Fried*, No. 22-cr-673 (S.D.N.Y. Aug. 14, 2023), ECF No. 202.

On November 2, 2023, Bankman-Fried was found guilty of Counts One through Seven, and on March 29, 2024 the Court entered the Preliminary Forfeiture Order, attached hereto as Exhibit A, pursuant to which the United States seeks to "forfeit all right, title and interest of [Bankman-Fried] in the Specific Property[1] as (i) proceeds traceable to the commission of the offenses charged in Count One through Five of the Indictment, that the Defendant personally obtained and/or controlled; and/or (ii) property involved in the offense charged in Count Seven of the Indictment." *Id.* at 4.

Pursuant to the Preliminary Forfeiture Order, a Money Judgment was entered against Bankman-Fried in the amount of $11,020,000,000. The Preliminary Forfeiture Order provides that all Specific Property forfeited to the United States shall be applied towards satisfaction of the Money Judgment. 21 U.S.C. § 853(n) requires that prior to entering a final order of forfeiture, third-party interests in the Specific Property must be adjudicated. *See, e.g., United States* v. *Wolf*, 375 F. Supp. 3d 428, 435 (S.D.N.Y. 2019). Under 21 U.S.C. § 853(n)(6)(A), either the Debtors or FTX Digital or both have a superior interest in the Specific Property as set out below,[2] and it cannot be forfeited to the United States.

---

[1] The "Specific Property" collectively comprises (i) items (b)-(j) listed in the Indictment; (ii) the $605,694,411.59 realized from the interlocutory sale of shares of stock of Robinhood Markets Inc., listed in item (a) in the Indictment; and (iii) items 1-261 of Exhibit A to the Preliminary Forfeiture Order.

[2] The only items of Specific Property in which FTX Digital claims an interest, pursuant to the Global Settlement Agreement between the Debtors and FTX Digital, attached hereto at Exhibit B, are the funds formerly held in accounts at Farmington State Bank d/b/a "Moonstone Bank" and at Silvergate Bank, all in the name of "FTX Digital Markets," comprising items (c)-(g) of the Indictment. *See* FTX Digital Global Settlement Agreement, *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del. Jan. 24, 2024), ECF No. 6365-1.

2

## II. The Property

The Specific Property seized by the United States and subject to the Preliminary Forfeiture Order falls into the following six categories:

1. Property formerly held in an account in the name of Emergent Fidelity Technologies ("Emergent") and proceeds from the interlocutory sale of shares of the stock of Robinhood Markets Inc. ("Robinhood") formerly held in the name of Emergent, comprising item (b) of the Indictment and item 1 of Exhibit A to the Preliminary Forfeiture Order;

2. Funds formerly held in accounts at Farmington State Bank d/b/a "Moonstone Bank" and at Silvergate Bank in the name of "FTX Digital Markets," comprising items (c)-(g) of the Indictment;

3. Monies, assets, and funds formerly held in Binance.com and Binance.us accounts (collectively, the "Binance Accounts") in the name of Alameda Research Ltd. ("Alameda") and Evergreen North Enterprises, Inc., comprising items (h)-(j) of the Indictment and items 2-255 of Exhibit A to the Preliminary Forfeiture Order;

4. Aircraft including: (i) a Bombardier Global 5000 BD-700-1A11 Aircraft Bearing Registration Number N410AT and Manufacturer Serial Number 9295, and related maintenance logs and engine logs, and (b) an Embraer Legacy EMB-135BJ Aircraft Bearing Registration Number C6-BDE and Manufacturer Serial Number 14500967, comprising items 256 and 257 of Exhibit A to the Preliminary Forfeiture Order;

5. Funds formerly held in an account at Signature Bank in the name of Bankman-Fried and Luk Wai Chan, comprising item 258 of Exhibit A to the Preliminary Forfeiture Order; and

6. Political contributions made by Bankman-Fried, Ryan Salame, and Nishad Singh that are traceable to the wire fraud and wire fraud conspiracy offenses charged in Counts One through Four of the Indictment or property involved in the money laundering offense charged in Count Seven of the Indictment, comprising items 259-261 of Exhibit A to the Preliminary Forfeiture Order.

## III. The Debtors and/or FTX Digital Have a Superior Right to the Specific Property

Following the entry of a preliminary order of forfeiture, any person other than the defendant with an interest in property which has been ordered forfeited to the United States may petition the court for a hearing to adjudicate the validity of that alleged interest. 21 U.S.C. § 853(n)(2). If the court determines that the petitioner has established, by a preponderance of the

evidence, a legal right, title, or interest in the property that "renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property," then the court "shall amend the order of forfeiture in accordance with its determination." 21 U.S.C. § 853(n)(6)(A).

With respect to each of the six categories of Specific Property ordered forfeited to the Government in this matter, the right, title or interest was vested not in the Defendant but in the Debtors or FTX Digital, as discussed herein, and/or the Debtors or FTX Digital have a right, title or interest that is (and was) superior to Bankman-Fried's right, title or interest at all relevant times. As established at trial, all of the Specific Property was held in the name of a Debtor entity or FTX Digital, and/or was funded entirely by Debtor assets. *See, e.g.*, Bankman-Fried Trial Tr. at 1740:16-23; 1748:4-11; 1862:7-12; 1863:2-17; 1865:13-21; 1866:25-1867:7; 1867:13-20; 1868:1-22, No. 22-cr-673, *United States* v. *Bankman-Fried* (S.D.N.Y. 2023) ("Bankman Fried Trial Tr.").

Moreover, the Specific Property is property of the estate pursuant to Section 541(a) of the Bankruptcy Code, and/or, with respect to the funds formerly held in the accounts registered in the name of FTX Digital, property of FTX Digital pursuant to the Global Settlement Agreement between the Debtors and FTX Digital. Section 541(a) defines estate property to include "all legal or equitable interests of the debtor in property as of the commencement of the case" "wherever located and by whomever held."[3] The definition of

---

[3] Property of the estate also includes property recoverable using the avoidance power of the trustee. 11 U.S.C. § 541(3). Property recoverable using the avoidance power is broadly understood as "property that *would* have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier* v. *I.R.S.*, 496 U.S. 53, 58 (1990) (emphasis added).

estate property in the Bankruptcy Code is "construed expansively." *MacArthur Co.* v. *Johns-Manville Corp.*, 837 F.2d 89, 92 (2d Cir. 1988) (citing *United States* v. *Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983)).  Courts have held that the scope of estate property even extends to property nominally held in the name of another when the Debtor funded the acquisition of the property.  *See, e.g.*, *In re Dordevic*, 67 F.4th 372, 387 (7th Cir. 2023) (finding that turnover was appropriate where the debtor contributed all the funding for a property interest, although the property interest was itself held nominally by another person).  To the extent there are any questions as to the definition or disposition of estate property, the bankruptcy courts are the appropriate forum to resolve such issues.  *See, e.g.*, *In re Texaco Inc.*, 109 B.R. 609, 610 (S.D.N.Y. 1989) ("It is within the Bankruptcy Court's traditional jurisdiction to determine all matters relating to property in which the debtor has any interest."); *In re Cont'l Airlines*, 138 B.R. 442, 445 (D. Del. 1992) ("The determination of what constitutes property of the bankruptcy estate is inherently an issue to be determined by the bankruptcy court.") (citation omitted).

    Amending the Preliminary Forfeiture Order to provide for the return the Specific Property to the Debtors and/or FTX Digital will benefit all the creditors and stakeholders in the Debtors' Chapter 11 bankruptcy proceedings and FTX Digital's liquidation in The Bahamas, including victims of Bankman-Fried's crimes.  Over the past eighteen months, the Debtors have worked, and continue to work, in close coordination with the Government.  As recently noted in the Report of Robert J. Cleary, the Independent Examiner appointed in the Debtors' Chapter 11 cases, the Debtors "responded to more than 400 requests for documents and information from the [U.S. Attorney's Office for the Southern District of New York] . . . produced almost 4.5 million

pages of documents and the Amazon Web Services FTX Group[4] database . . . [and] responded to over 300 requests from other federal government and law enforcement agencies, as well as over 100 requests from state and local government and law enforcement agencies." Report of Robert J. Cleary, Examiner at 62-63, *In re FTX Trading*, No. 22-11068 (Bank. D. Del. May 23, 2024), ECF No. 15545.  In conjunction with these investigative efforts, the Debtors have "helped governmental authorities seize assets beyond the reach of the Debtors that might ultimately be the source of incremental recovery for FTX creditors," and "encouraged the potential distribution by the Debtors to creditors of assets forfeited in criminal proceedings against Mr. Bankman-Fried and others."  Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading at 61, *In re FTX Trading*, No. 22-11068 (Bank. D. Del. May 22, 2024), ECF No. 15521 ("Disclosure Statement"), attached hereto as Exhibit C.  Many of those assets were secured directly by the Debtors, while others, including those identified in the Preliminary Forfeiture Order, were secured by the Government.

As with the assets secured directly by the Debtors, the Debtors have a superior interest to Bankman-Fried with respect to the Specific Property identified in the Preliminary Forfeiture Order.  With respect to the accounts identified in items (c)-(g) of the Indictment, the Debtors and/or FTX Digital have a superior interest to Bankman-Fried.  Pursuant to 21 U.S.C. § 853(n)(6), the Preliminary Forfeiture Order should be amended to exclude each of these categories of Specific Property and to provide for their return to the Debtors and/or FTX Digital, to allow them to be distributed for the benefit of the Debtors' creditors and Bankman-Fried's victims pursuant to the Debtors' Plan of Reorganization.

---

[4]  The term "FTX Group" means, collectively, the Debtors and all affiliates of the Debtors that have not filed voluntary Chapter 11 petitions in the United States under the Bankruptcy Code.

1. **Property formerly held in an account in the name of Emergent and proceeds from the interlocutory sale of shares of the stock of Robinhood formerly held in the name of Emergent, comprising item (b) of the Indictment and item 1 of Exhibit A to the Preliminary Forfeiture Order;**

The shares of Robinhood stock and other funds formerly held in the name of Emergent (and the proceeds thereof) represent assets of Alameda and its affiliated Debtors, and the Debtors' interests in those assets were at all relevant times superior to any interests of Bankman-Fried.

As established at trial, although the shares of Robinhood stock were held in the name of a different entity—Emergent—the funds used to purchase the shares came entirely from Debtor Alameda.  Bankman-Fried Trial Tr. at 1741:9-13 ("[T]here was a transfer out of Alameda Research of $491 million to Sam Bankman-Fried and $54.6 million to Gary Wang.  This amount was exactly equal to the amount that was used to purchase Robinhood shares.").  The additional funds held in accounts in the name of Emergent can likewise be traced back to transfers from Alameda, which made numerous transfers totaling tens of millions to Emergent throughout 2022.

The Debtors coordinated with the Government to facilitate the interlocutory sale of the Robinhood shares with the aim of preserving the shares' value for the benefit of the Debtors' creditors and Bankman-Fried's victims.  The Interlocutory Sale Order itself acknowledges the Debtors' interest by requiring the United States Marshals Service to provide reasonable notice to the Debtors prior to conducting an interlocutory sale of the Robinhood shares, and recognized only three other parties as having expressed or asserted an interest in the shares:  Bankman-Fried, BlockFi Inc. ("BlockFi") and Emergent.  *See* Interlocutory Sale Order at ¶ 2, *United States* v. *Bankman-Fried*, No. 22-cr-673 (S.D.N.Y. Sept. 1, 2023), ECF No. 242.

Any interest Bankman-Fried had in the Robinhood shares has been forfeited. With respect to the other three parties, during a March 14, 2023 hearing in Emergent's

7

Chapter 11 case, Emergent, BlockFi, and the Debtors discussed their respective claims to the Robinhood shares in the context of the forfeiture proceeding. Judge Dorsey instructed the parties: "these parties clearly have some interest superior to the Government[']s, so go back from whence you came, and figure out who amongst you is the one who owns them." Emergent Hearing Tr. at 5:19-22, *In re Emergent Fidelity Technologies Ltd.*, No. 23-10149 (Bankr. D. Del. Mar. 14, 2023), ECF No. 82. The Debtors have done exactly that.

The Debtors have entered into a settlement with BlockFi and its affiliated debtors, attached hereto as Exhibit D, which has been approved by the Debtors' and BlockFi's respective bankruptcy courts and provides that BlockFi has waived any and all claims, arguments, defenses, and rights to the Robinhood shares and has agreed to cooperate with the Debtors' efforts to secure the return of these assets to the Debtors.[5] The Debtors also have engaged in discussions with Emergent regarding a potential resolution pursuant to which Emergent would acknowledge the Debtors' superior interest in the Robinhood shares and other funds held in the Emergent account and waive any potentially competing claims without the need for further litigation.[6]

---

[5] To resolve this and other disputes between the Debtors and BlockFi, and to ensure the return of this property to the Debtors, the Debtors agreed to give BlockFi secured claims against Alameda totaling $250,000,000 as well as a general unsecured claim against Alameda totaling $439,319,866, and a customer claim against FTX Trading totaling $185,196,611. *See* BlockFi Global Settlement Agreement at 3, *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del. Mar. 25, 2024), ECF No. 10331-1.

[6] For avoidance of doubt, the Debtors dispute the assertions of interest in this property set forth in the petitions filed by Emergent and Emergent's Joint Liquidators, *United States* v. *Bankman-Fried*, No. 22-cr-673 (S.D.N.Y. June 13, 2024), ECF Nos. 446-47, and will respond to those assertions at the appropriate time, should those petitions not be dismissed.

2. **Funds formerly held in accounts at Farmington State Bank d/b/a "Moonstone Bank" and at Silvergate Bank in the name of "FTX Digital Markets," comprising items (c)-(g) of the Indictment.**

The funds formerly held in the accounts registered in the name of FTX Digital are not, and have never been Bankman-Fried's assets, and the interests of the Debtors and/or FTX Digital in those funds were at all relevant times superior to any interests of Bankman-Fried.

FTX Digital was founded in the Bahamas in November 2020, after which time FTX Trading and affiliated entities transferred approximately $143 million into FTX Digital's bank accounts at Farmington State Bank d/b/a "Moonstone Bank" and Silvergate Bank. After extensive negotiations, the Debtors and FTX Digital have reached an agreement regarding the disposition of the funds held in the FTX Digital accounts. *See* FTX Digital Global Settlement Agreement at 2, 15, *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del. Jan. 24, 2024), ECF No. 6365-1.

FTX Digital is subject to a liquidation proceeding in the Bahamas, and the Global Settlement Agreement also represents the successful outcome of months-long negotiations between the Debtors and the Joint Official Liquidators of FTX Digital over commitments to coordinate the insolvency proceedings and maximize recoveries for creditors. Following the return of these funds, and upon the confirmation of the Debtors' Plan of Reorganization, the funds held in these accounts will be distributed to creditors by FTX Digital in accordance with the stipulated property allocation in the Global Settlement Agreement between the Debtors and FTX Digital. *See* FTX Digital Global Settlement Agreement at 13, 15; *Id.* at Exs. A, C.

3.  **Monies, assets, and funds formerly held in the Binance Accounts in the name of Alameda and Evergreen North Enterprises, Inc., comprising items (h)-(j) of the Indictment and items 2-255 of Exhibit A to the Preliminary Forfeiture Order.**

The monies, assets, and funds formerly held in the Binance Accounts represent assets of Alameda and its affiliated Debtors, and the Debtors' interests in the monies, assets and funds in the Binance Accounts were at all relevant times superior to any interests of Bankman-Fried.

Each of the Binance Accounts was funded, controlled by, and used solely for the benefit of Alameda and its affiliated Debtors. *See*, *e.g.*, Disclosure Statement app. C at 11; Report of Robert J. Cleary, Examiner at 172-73. With respect to the two Binance.us accounts (Acct. Nos. 35000066 and 35155204), those accounts were explicitly registered in the name of Debtor Alameda and were used by Alameda for trading and investment activities. With respect to the Binance.com account (Acct. No. 94086678), although that account was nominally registered to Evergreen North Enterprises Inc., a shell company nominally owned by Luk Wai Chan, a senior FTX Group employee, that account was similarly used by Alameda and its affiliated Debtors for trading and investment activities. *See*, *e.g.*, Bankman-Fried Trial Tr. at 1764:4-1765:6.

The Debtors have worked to recover Debtor assets held in accounts at several other third-party cryptocurrency exchanges in addition to the Binance Accounts. *See* Disclosure Statement at 63; Report of Robert J. Cleary, Examiner at 168-176. Many of these accounts holding Debtor assets were similarly registered in the names of non-Debtor entities or individuals associated with the Debtors. *See*, *e.g.*, *In re FTX Trading*, No. 22-11068 (Bank. D. Del. Apr. 10, 2023), ECF No. 1245 (Order granting Debtors' motion for turnover of Debtor assets held in certain OKX and OkCoin accounts, including accounts registered in the names of

Debtor entities as well as in the names of non-Debtor entities or individuals associated with the Debtors); Disclosure Statement at 56.

> **4. Aircraft including: (i) a Bombardier Global 5000 BD-700-1A11 Aircraft Bearing Registration Number N410AT and Manufacturer Serial Number 9295, and related maintenance logs and engine logs, and (ii) an Embraer Legacy EMB-135BJ Aircraft Bearing Registration Number C6-BDE and Manufacturer Serial Number 14500967, comprising items 256 and 257 of Exhibit A to the Preliminary Forfeiture Order.**

The Bombardier Global 5000 (the "Global") and Embraer Legacy (the "Legacy," and, together with the Global, the "Planes") represent assets of Alameda and its affiliated Debtors, and the Debtors' interests in the Planes were at all relevant times superior to any interests of Bankman-Fried.

Beginning in early 2022, Bankman-Fried and other senior FTX Group employees expressed a desire to acquire private planes, but noted concerns about the potential reaction if their ownership of those planes were publicly known.[7] To obscure the acquisition of the Planes, on February 1, 2022, Trans Island Airways—a charter company that had prior dealings with the FTX Group—entered into a letter of intent to purchase the Global for $15.9 million at the direction of senior FTX Group employees. On February 2, 2022, Debtor Alameda wired a $500,000 deposit directly to the Global's escrow agent, and on March 3, 2022, Ryan Salame caused another $15.4 million of Alameda funds to be transferred to the escrow agent to complete the purchase of the Global. The Debtors thus paid the entire $15.9 million purchase price of the Global. In addition, on August 16, 2022, Debtor Alameda transferred $11,545,000 to the

---

[7] Additional detail and supporting documentation regarding the Debtors' ownership of the Planes is more fully set forth in the Debtors' Objection to the Motion of Island Air Capital and Paul F. Aranha for Relief From the Automatic Stay, to the Extent Applicable, and Related Relief, *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del. Oct. 5, 2023), ECF No. 3002, attached hereto as Exhibit E, as well as the Debtors' supporting declaration thereto.

11

Legacy's escrow agent, representing the entire purchase price of the Legacy. The Debtors thus paid a total of $27,445,000 to purchase the Planes.

In addition to selecting the Planes and paying their entire purchase price, the Debtors also incurred extensive renovation costs to satisfy the whims of Bankman-Fried and other senior FTX Group executives. For example, more than $4 million in Debtor funds were transferred to Paul Aranha, owner of Trans Island Airways, for purported upgrades to the Planes and other related invoices, including nearly $1.3 million for Wi-Fi upgrades, approximately $900,000 for interior renovations and "Aircraft Bed Systems," and $975 for "Board Game Purchases for SBF for Airplane."

Notwithstanding that the Government had specifically identified the Legacy as property potentially subject to forfeiture, Aranha had continued to hold the Legacy in The Bahamas and had refused to return it to the United States. The Debtors and the Government spent many months negotiating with Aranha to secure the Legacy's return to the United States, and as part of a resolution designed to avoid further expense and to maximize value for the Debtors' creditors and Bankman-Fried's victims, the Debtors and the Government agreed to a Stipulation and Order whereby Aranha would return the Legacy to the United States and consent to an interlocutory sale of the Planes in exchange for being reimbursed for certain out-of-pocket expenses associated with maintaining the Planes post-petition and returning the Legacy to the United States. *See* Stipulation and Order, No. 22-cr-673, *United States* v. *Bankman-Fried* (S.D.N.Y. 2023), ECF. 417 (Ex. F). As the Government acknowledged in that Stipulation and Order, the only parties other than the Debtors that have expressed a potential interest in the Planes are Bankman-Fried and Salame (both now convicted) and Aranha (or his affiliated

entities). None of those other asserted interests is valid, and the Debtors have a superior interest in the Planes (or the proceeds of the interlocutory sales thereof).[8]

    5. **Funds formerly held in an account at Signature Bank in the name of Bankman-Fried and Luk Wai Chan, comprising item 258 of Exhibit A to the Preliminary Forfeiture Order.**

The funds formerly held in the Signature Bank account represent assets of Alameda and its affiliated Debtors, and the Debtors' interests in those funds were at all relevant times superior to any interests of Bankman-Fried.

Based on information available to the Debtors, although this Signature Bank account was nominally registered to Bankman-Fried and Luk Wai Chan, this account was funded entirely by Debtor Alameda. Specifically, the Debtors' records reflect transfers from Alameda to this Signature Bank account of $5 million on May 2, 2022, $5 million on May 17, 2022 and $10 million on June 29, 2022, and evidence introduced at trial reflects an additional four transfers totaling $16 million from Alameda to the Signature Bank account, which Bankman-Fried then used to make political contributions. *See, e.g.*, Bankman-Fried Trial Tr. at 1863:2-6 ("So what's shown here is four wires sent on August 15, 2022 and October 3, 2022, totaling $16 million, from Alameda Research's Silvergate account to Samuel Bankman-Fried's Signature Bank account, and then the ultimate political contribution sent on August 16th and October 3rd of 2022."). Additionally, Debtor records indicate that numerous FTX Group employees received account statements for this account, belying any notion that this was a personal account.

---

[8]     For avoidance of doubt, the Debtors are not disputing that the Stipulation and Order provides for Aranha to be reimbursed for certain expenses from the proceeds of the interlocutory sales of the Planes.

13

6. **Political contributions made by Bankman-Fried, Ryan Salame, and Nishad Singh that are traceable to the wire fraud and wire fraud conspiracy offenses charged in Counts One through Four of the Indictment or property involved in the money laundering offense charged in Count Seven of the Indictment, comprising items 259-261 of Exhibit A to the Preliminary Forfeiture Order.**

The funds used for the referenced political contributions represent assets of Alameda and its affiliated Debtors, and the Debtors' interests in those funds were at all relevant times superior to any interests of Bankman-Fried.

The Debtors have closely coordinated with the Government to seek the return of more than 700 political contributions totaling more than $100 million made by Bankman-Fried, Salame, and Singh, including by discussing whether the Debtors or the Government were better positioned to pursue the recovery of particular contributions. *See*, *e.g.*, Disclosure Statement at 62; Government's Sentencing Memorandum at 109 n.15, *United States* v. *Bankman-Fried*, No. 22-cr-673 (S.D.N.Y. Aug. 28, 2023), ECF No. 410 ("The Government is also coordinating with the FTX Debtors, so that the estate retrieves some of the political contributions."). Although these contributions were nominally made by Bankman-Fried, Salame or Singh, they were all funded using Debtor assets, either directly or indirectly. *See, e.g.*, Bankman-Fried Trial Tr. at 1862:7-12 ("So on April 4, 2022, there was a $6 million wire sent from Alameda Research's Prime Trust account; on the same day, $6 million was then wired from Samuel Bankman-Fried's Prime Trust account to House Majority PAC.").

Some of these transfers were funded by purported "loans" from the Debtors, which Bankman-Fried, Salame and Singh never intended to repay. *See, e.g.*, Bankman-Fried Trial Tr. at 889:21-891:11; 1420:17-1422:5 ("There were political donations made in my name, using my bank account, so these did literally go through my bank account, the funds deposited straight from Alameda."); 2422:7-9. Salame and Singh also have pleaded guilty to violations of the Federal Election Campaign Act for their actions in using Debtor assets to fund political

14

contributions in their own name. Plea Tr. at 33, *United States* v. *Singh*, No. 22-cr-673 (S.D.N.Y. Feb. 28, 2023), ECF No. 102; Plea Tr. at 21-22, *United States* v. *Salame*, No. 22-cr-673 (S.D.N.Y. Sept. 7, 2023),ECF No. 283.

## IV.     Distribution of Funds to Creditors and Victims

For months, the Debtors have engaged extensively with governmental authorities to "coordinate asset recovery and asset forfeiture efforts in order to maximize recoveries for creditors and victims." Disclosure Statement at 61-62. As the Debtors' CEO John Ray described to this Court, "[t]he value we hope to return to creditors would not exist without the tens of thousands of hours that dedicated professionals have spent digging through the rubble of Mr. Bankman-Fried's sprawling criminal enterprise to unearth every possible dollar, token or other asset that was spent on luxury homes, private jets, overpriced speculative investments, and otherwise lost to the four winds," and the Debtors have been "working on a coordinated distribution scheme that will funnel over $1 billion in value seized by prosecutors to victims of Mr. Bankman-Fried's crimes." Victim Impact Statement of Intervenors FTX Trading Ltd., [et al] at 1, 5, *United States* v. *Bankman-Fried*, No. 22-cr-673 (S.D.N.Y. Aug. 28, 2023), ECF No. 415 ("Debtors' Victim Statement").

As Mr. Ray further articulated in the Debtors' Victim Statement, the total dollar amount of claims filed in the Debtors' Chapter 11 proceedings is $23.6 quintillion dollars, and "the task of addressing filed claims and reducing them to their proper and 'allowed' amount is monumental." Debtors' Victim Statement at 5. The Delaware bankruptcy court overseeing the Debtors' Chapter 11 proceedings already has resolved many such issues, and continues to address numerous additional disputes and competing claims involving the Debtors' creditors and other stakeholders, including with respect to the definition and disposition of estate property and

asserted interests as to certain of the Specific Property.  The bankruptcy court is the appropriate forum to resolve such issues, *see, e.g.*, *In re Texaco Inc.*, 109 B.R. 609, 610 (S.D.N.Y. 1989); *In re Cont'l Airlines*, 138 B.R. 442, 445 (D. Del. 1992), and the Debtors continue to work to resolve these issues to maximize and expedite recoveries for the creditors and other stakeholders in the Debtors' Chapter 11 cases—a group that is largely coextensive with the victims of Bankman-Fried's crimes.

        As part of their efforts to facilitate an efficient, fair and effective distribution of assets, the Debtors have developed and implemented a Know-Your-Customer process to be employed in their Chapter 11 cases to ensure that Debtor assets are not distributed to any persons or entities "with whom it is illegal for a U.S. person to do business under the Office of Foreign Assets Control sanctions regulations and/or the list of Specially Designated Nationals and Blocked Persons."  Disclosure Statement at 118.  The Debtors' proposed Chapter 11 plan also includes an anti-double dip provision which will prevent claimants from pursuing duplicative claims for the same losses in different venues, thus promoting fair distribution.  *Id.* at 117. Distributing the value of the Specific Property to the more than 1 million victims of Bankman-Fried's criminal scheme is no small feat, and doing so through the Debtors' existing claims administration architecture and processes will maximize the funds available for distribution by minimizing the incremental administrative and professional costs.  The Global Settlement Agreement between the Debtors and FTX Digital ensures that distributions to creditors who are eligible to elect to have their claims adjudicated in FTX Digital's liquidation process in the Bahamas will be subject to the same processes, procedures, and safeguards as the Debtors' proposed Chapter 11 plan.

The Debtors also have continued to work towards achieving the best outcome for their creditors and Bankman-Fried's victims by negotiating with other third parties that have asserted potential interests with respect to certain of the seized assets. As noted above, the Debtors already have reached a settlement agreement with BlockFi in connection with the proceeds from the sale of the Robinhood shares and other assets held in the Emergent account. Disclosure Statement at 69-70. The Debtors have also successfully negotiated or are in the process of negotiating resolutions with certain other governmental creditors, including the United States Commodity Futures Trading Commission (the "CFTC") and the Internal Revenue Service, to ensure that the recoveries of the Debtors' creditors and Bankman-Fried's victims are not diminished. *Id.* at 9-10. The Debtors' contemplated resolution with the CFTC will enable the creation of a Supplemental Remission Fund pursuant to which additional funds will be distributed to victims and creditors, including "FTX.com customers, FTX.US customers, cryptocurrency lenders to Alameda, FTX DM for the benefit of Holders of Eligible DM Customer Entitlement Claims and other creditors agreed with the CFTC." *Id.* at 86-87.

Upon securing the return of the Specific Property in accordance with 21 U.S.C. § 853(n)(6)(A), the Debtors and FTX Digital will continue to work in close coordination with the Government and other authorities, as well as in consultation with other stakeholders, to distribute funds through a process that complies with applicable federal laws and regulations, furthers the aims of victim recovery, maximizes the funds available for distribution, and minimizes administrative and professional costs.

For the reasons stated above, the Debtors respectfully request that the Specific Property be returned and that this Petition be granted in its entirety, together with such other and further relief as this Court deems equitable and proper.

Dated: New York, New York
June 14, 2024

Respectfully submitted,

_/s/ Joel H. Cohen_

Stephanie G. Wheeler
Brian D. Glueckstein
Jacob M. Croke
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

*Counsel for Third-Party Petitioner*
*FTX Trading Ltd. and its affiliated debtors and*
*debtors-in-possession*

/s/  Michael Kendall
Michael Kendall
WHITE & CASE LLP
75 State Street
Boston, MA 02109
(617) 979 9300

*Counsel for Third-Party Petitioner*
*FTX Digital*

**DECLARATION PURSUANT TO 21 U.S.C. § 853(n)(3)**

I, John J. Ray III, Chief Executive Officer of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession, am authorized to make this declaration on behalf of the Debtors.

Pursuant to 21 U.S.C. § 853(n)(3), I declare under penalty of perjury that, to the best of my knowledge, information and belief, the foregoing is true and correct.

Executed on June 14, 2024

_____
John J. Ray III

1

## DECLARATION PURSUANT TO 21 U.S.C. § 853(n)(3)

I, Peter Greaves, Joint Official Liquidator of FTX Digital Ltd., am authorized to make this declaration on behalf of FTX Digital.

Pursuant to 21 U.S.C. § 853(n)(3), I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information and belief, the foregoing is true and correct.

Executed on June 14, 2024

_____
Peter Greaves

1